UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
SUSANNA MIRKIN and BORIS MIRKIN,                              :
individually and on behalf of all others similarly            :    18-cv-2949 (ARR) (RER)
situated                                                      :
                                                              :    NOT FOR ELECTRONIC
                    Plaintiffs,                               :    OR PRINT PUBLICATION
                                                              :
    -against-                                                 :    OPINION & ORDER
                                                              :
XOOM ENERGY, LLC and XOOM ENERGY                              :
NEW YORK, LLC,                                                :
                                                              :
                    Defendants.                               :
                                                              :
------------------------------------------------------------- X

ROSS, United States District Judge:

In September 2018, I granted defendants' motion to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Order, Sept. 21, 2018, ECF No. 24 ("Mot. to Dismiss Order"). Following my order, plaintiffs, Susanna Mirkin and Boris Mirkin, filed a motion to alter or amend the judgment so that they could be granted leave to file an amended complaint in response to the "perceived deficiencies" the court identified in their complaint. *See* Mem. Supp. Mot. to Alter or Amend J. 3, ECF No. 27. I denied plaintiffs' request after finding that plaintiffs had not demonstrated that they were entitled to the "extraordinary relief provided under either [Federal] Rule 59(e) or . . . 60(b)," and that, moreover, their proposed amendments would be futile, as they did not resolve the primary flaws in plaintiffs' theory of relief. Order 1, Nov. 2, 2018, ECF No. 30 ("Mot. to Alter or Amend Order").

Now, plaintiffs have filed a *second* motion seeking reconsideration of a prior decision made by the court; this time, they argue that the court's order denying their request to replead was erroneous because it failed to recognize the impact of plaintiffs' proposed amendments. *See* Mem.

1

Supp. Mot. for Reconsideration 3–4, ECF No. 33 ("Pls.' Mem."). Though this motion is nominally distinct from plaintiffs' first motion for reconsideration—in that it seeks reconsideration of the court's most recent decision, rather than an amendment to my initial decision dismissing their complaint—plaintiffs' motion rehashes the same arguments I previously rejected. This is not a winning strategy; plaintiffs' attempts to "relitigate an issue already decided" are insufficient as a matter of law to support their motion, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and they fail to identify any overlooked arguments or exceptional circumstances that would alter my conclusion that their proposed amendments would be futile. Thus, I deny the motion for reconsideration.

## BACKGROUND

I assume familiarity with the facts underlying the instant action, which were set forth in detail in the court's September 21, 2018 opinion and order. *See* Mot. to Dismiss Order 2–5. Plaintiffs commenced this action in April 2018, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Compl. ¶¶ 67–84, ECF No. 1-2. Their claims arise out of a March 2013 electricity sales agreement in which defendants, XOOM Energy, LLC and XOOM Energy New York, LLC, agreed to provide residential electricity services to plaintiffs at a fluctuating price that would be based on the defendants' "actual and estimated supply costs." *Id.* ¶¶ 21, 44, 47.

## STANDARD OF REVIEW

Motions for reconsideration are held to a strict standard, "and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. The party seeking reconsideration of a prior

decision may not simply "reargue the same points raised previously." *United States v. Gross*, No. 98 CR 0159 SJ, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) (citing *PAB Aviation, Inc. v. United States*, No. 98-CV-5952 JG, 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000)). The standard is designed to "ensure finality and to 'prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.'" *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

## DISCUSSION

### I. The motion for reconsideration is denied.

Plaintiffs filed the instant motion on November 19, 2018, seventeen days after I denied their motion to alter or amend my previous order. *See* Notice of Mot. for Reconsideration, ECF No. 32. Local Civil Rule 6.3 requires a motion to reconsider to be served within fourteen days of the court's decision. As plaintiffs point out in their reply brief, Local Civil Rule 6.4 provides that "the provisions of Fed. R. Civ. P. 6 shall apply" to the "computing [of] any period of time" unless the rules provide otherwise. Fed. R. Civ. P. 6, in turn, instructs litigants to "exclude the day of the event that triggers" the time period, and further provides that, in the event that the final day of a period falls on a Saturday, Sunday, or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." In this case, the period during which plaintiffs were required to file their motion began on November 3, 2018—the day after the court decided the prior motion—and concluded on the fourteenth day thereafter: November 16, 2018. Plaintiffs argue that the period concluded on Saturday, November 17, but that would only be accurate if the relevant time period began on November 4, and not on November 3. Because the rules provide that the day after the court's decision—in this case, November 3—is counted as the

first day of the fourteen-day time period, plaintiffs should have filed their motion on November 16, 2018—a Friday—rather than waiting until the following Monday to file their motion.

Even if plaintiffs' motion had been timely filed, however, I would still deny it because plaintiffs have not demonstrated that they are entitled to the "extraordinary remedy" of reconsideration. *Cordero v. Astrue*, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Furthermore, plaintiffs have not met the stringent standard of Fed. R. Civ. P. 60(b), which authorizes a court to grant relief from judgment in the event of, among other things, "mistake, inadvertence, surprise, or excusable neglect." *See Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010) ("An untimely motion for reconsideration is treated as a Rule 60(b) motion."); *see also In re Molycorp, Inc. Sec. Litig.*, No. 13 Civ. 5697 (PAC), 2016 WL 3002424, at *2 n.3 (S.D.N.Y. May 23, 2016) ("The standards governing a motion for relief from a final judgment under Fed. R. Civ. P. 60(b) are similarly exacting, as such relief 'is an extraordinary remedy that works against the interest of finality and should be applied only in exceptional circumstances.'" (quoting *In re Optionable Sec. Litig.*, No. 07 cv 3753 (PAC), 2009 WL 1653552, at *2 (S.D.N.Y. June 15, 2009))).

Plaintiffs' arguments for reconsideration do nothing more than express continued dissatisfaction with the court's conclusions. *See, e.g.*, *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) (holding that a motion for reconsideration will not be granted if the motion simply reargues "those issues already considered when a party does not like the way the original motion was resolved"). Plaintiffs argue that the court's prior order was flawed in two primary respects: first, because it found that "Plaintiffs' post-judgment request to replead was procedurally improper," and second, because it found "that even with the new allegations in the [amended complaint], Plaintiffs still failed to plead breach of contract." Reply Br. 1. Their arguments for

reconsideration are either irrelevant to the court's conclusion or are entirely repetitive of their previously asserted—and rejected—contentions.

First, plaintiffs argue that the court was wrong to conclude that their previous motion for reconsideration failed to meet the requirements of either Rule 60(b) or Rule 59(e) of the Federal Rules of Civil Procedure. The primary case on which they rely, however, is *Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011)—a case plaintiffs later concede that I followed in my prior decision. *See* Reply Br. 3–4. Specifically, as I noted in the November 2, 2018 order, the Second Circuit has held that courts must consider "the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." Mot. to Alter or Amend Order 3 (quoting *Williams*, 659 F.3d at 213. This is exactly what I did: I first considered whether plaintiffs had demonstrated that they were entitled to relief under the Federal Rules of Civil Procedure before considering the new allegations in their amended complaint and concluding that the new allegations would not have altered my prior decision. *Id.* This analysis not only closely follows the Second Circuit's directive in *Williams*, but it is also consistent with the analysis employed by other courts that have applied *Williams* in identical procedural postures. *See, e.g. Sahni v. Staff Attorneys Ass'n*, No. 14-CV-9873 (NSR), 2018 WL 654467, at *4–9 (S.D.N.Y. Jan. 30, 2018) (first considering whether plaintiff met the standard for relief under Rule 60 before considering whether amendment would be futile); *In re Molycorp, Inc. Sec. Litig.*, 2016 WL 3002424, at *3 (finding that "Plaintiffs do not articulate a valid ground for reconsideration," before concluding that the court "declines to exercise its discretion to grant leave to amend"); *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171–73 (S.D.N.Y. 2011) (same). Moreover, this analysis is consistent with post-*Williams* Second Circuit decisions. *See, e.g.*, *Smith v. Hogan*, 794 F.3d 249, 256 (2d Cir. 2015) (noting that plaintiff "was not entitled to replead at this stage of the case" because he had

not demonstrated that he was entitled to reconsideration); *Janese v. Fay*, 692 F.3d 221, 229 (2d Cir. 2012) ("Here, the District Court properly denied the motion to amend following its denial of the motion for reconsideration.").[1]

Dissatisfied with my conclusion that their proposed amendments would be futile, plaintiffs continue to argue that Fed. R. Civ. P. 15 generally favors amendment, and that the court's futility analysis did not consider the Second Circuit's "strong preference for resolving disputes on the merits." *See* Reply Br. 4 (quoting *Williams*, 659 F.3d at 212–13). Plaintiffs fail to acknowledge, however, that the *Williams* court also held that "Rule 15's liberality must be tempered by considerations of finality" where, as here, "a party does not seek leave to file an amended complaint until after judgment is entered." 659 F.3d at 213. *Williams* stands for the principle that "considerations of finality do not *always* foreclose the possibility of amendment," *id.* (emphasis added), and plaintiffs are right to acknowledge that, frequently, plaintiffs "will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies" before a court's order dismissing the case, Reply Br. 3 (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). However, the fact that plaintiffs are not entirely precluded from making a post-judgment amendment does not mean that a court *must* provide a plaintiff with leave to amend at all times. Indeed, "[t]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Janese*,

---

[1] To the extent that the language in *Smith* and *Janese*—Second Circuit cases which were decided after *Williams*—"may be read to be in tension" with *Williams*, I follow the path of the court in *Schwartz v. HSBC Bank USA, N.A.*, No. 14 Civ. 9525 (KPF), 2017 WL 2634180 (S.D.N.Y. June 19, 2017), *aff'd*, ___ F. App'x ___, No. 17-2212-cv, 2018 WL 4360896 (2d Cir. 2018), and acknowledge the "Circuit's more recent pair of precedents." *Id.* at *6 n.3. Moreover, my prior order explained in detail why plaintiffs' proposed amendments were futile even under a more expansive reading of *Williams*. *Cf. id.* ("[E]ven under Plaintiff's reading of *Williams*, Plaintiff's motion would still be denied: He has failed to demonstrate why granting him leave to replead with greater specificity is necessary to avoid a manifest injustice.").

692 F.3d at 229 (quoting *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991)).

Second, plaintiffs cite no facts or law that I overlooked when I concluded that plaintiffs' proposed amendments would be futile. Instead, plaintiffs argue that I did not place sufficient weight on new allegations they argue are more important than I found them to be. *See* Pls.' Mem. 6–7; Reply Br. 4. But this is not a basis for reconsideration; the fact that plaintiffs disagree with my conclusions does not entitle them to relief, since a motion for reconsideration is not intended to provide plaintiffs with a venue to reargue issues that have already been considered just because they are dissatisfied with the court's analysis. *See In re Houbigant, Inc.*, 914 F. Supp. at 1001.

As I explained in my previous order denying plaintiffs' motion to alter the judgment, I am not convinced that plaintiffs' new allegations regarding XOOM's electricity purchasing arrangements adequately demonstrate that defendants breached their agreement with plaintiffs. *See* Mot. to Alter or Amend Order 7.[2] As written in the electricity sales agreement between the parties, XOOM reserved the right to set fluctuating prices based on its consideration of *internal* factors: its own actual and estimated supply costs. The agreement does not commit XOOM to set prices based on external factors like "market rates," and plaintiffs' calculated "Market Supply Cost" includes criteria that do not appear on the face of the agreement between the parties. Plaintiffs acknowledge that the factors used to calculate the "Market Supply Cost" do not appear in the

---

[2] In my opinion dismissing plaintiffs' complaint, I observed that plaintiffs did not allege at that time how XOOM fills its supply costs. *See* Mot. to Dismiss Order 10. However, plaintiffs are wrong to suggest that their new allegation regarding XOOM's supply fulfillment mechanisms resolves all the concerns identified in my first order; indeed, as in *Hamlen v. Gateway Energy Services Corp.*, No. 16 CV 3526 (VB), 2017 WL 892399, at *4 (S.D.N.Y. Mar. 6, 2017), I noted that the electricity sales agreement defines XOOM's cost-setting obligations using a "non-exhaustive list of factors," and the agreement does not commit defendant to set prices based on market prices—even if plaintiffs are correct that wholesale market prices comprise one element of defendants' costs.

agreement, but they argue that they have adequately pled a breach of contract by introducing two new factual allegations in their complaint: (1) their claim that XOOM purchases its energy on the wholesale market; and (2) their conclusory statement that "more than 90% of Defendants' supply costs come from its purchase of wholesale energy on the open market." Reply Br. 4.[3] I read the contract differently: XOOM's promise to set prices in accordance with its "actual and estimated supply costs" allows XOOM to consider its own criteria—based on cost projections and financial models that reflect internal data specific to XOOM—when setting its electricity rates. Regardless of the method by which XOOM purchases its electricity, the electricity sales agreement reveals that XOOM's costs include a number of factors that are *not* exhaustively disclosed in the contract, and the agreement authorizes XOOM to use its discretion over time to set prices that are responsive to those costs.

Plaintiffs continue to assert that "[t]he factors [they] identify [in their Market Supply Cost] *are* XOOM's supply costs." Pls.' Mem. 4. But the sales agreement itself tells a different story; in the agreement, defendants provide a set of criteria, "which may include but not be limited to prior period adjustments, inventory and balancing costs," that make up the company's "actual and estimated supply costs." Compl., Ex. 1, at 1. Though plaintiffs argue in their proposed amendments that "these other cost factors cannot explain the drastic increases in XOOM's variable rate," Proposed Am. Compl. ¶ 46, ECF No. 27-1, they do not appear to account for "prior period

---

[3] Plaintiffs argue that XOOM's failure to dispute this allegation in their opposition to plaintiffs' motion for reconsideration is evidence that XOOM admits that it does in fact purchase its electricity on the wholesale market. *See* Reply Br. 1. This is not the case—the defendants' task at this stage of briefing was not to answer plaintiffs' allegations, but rather to explain why plaintiffs are not entitled to the extraordinary remedy of reconsideration. XOOM's failure to address the truth or falsity of this allegation is irrelevant to the core question here: whether plaintiffs have demonstrated that they are entitled to reconsideration of the court's previous order.

adjustments" into their Market Supply Cost calculations,[4] nor explain the basis for their assertion—aside from generalizations about the ESCO market—that the broader allegations they make about ESCOs are reflective of XOOM's behavior specifically.

Though the price of electricity purchased on the wholesale market may be one element of XOOM's costs, the fact that XOOM's prices do not rise and fall in tandem with wholesale costs—as reflected in plaintiffs' "Market Supply Cost"—does not demonstrate that XOOM has not considered other legitimate criteria that may impact its "actual and estimated" costs in setting its rates. Moreover, even if plaintiffs' allegations did demonstrate that XOOM was not adequately taking its "actual" supply costs into account when setting prices, plaintiffs have not sufficiently addressed defendants' contractual right to set prices based on its "estimated" supply costs—an even broader category of price-setting criteria that gives defendants additional discretion to consult its own internal data before setting prices. The single new case plaintiffs now cite—*Gonzales v. Agway Energy Services, LLC*, No. 5:18-cv-235 (MAD/ATB), 2018 WL 5118509 (N.D.N.Y. Oct. 22, 2018)—is not to the contrary. In that case, which was decided after plaintiffs filed their initial motion to alter my earlier judgment, the energy services company asserted that its prices would be based on "the cost of electricity" *in addition to* "other market-related factors." *Id.* at *1. As my two previous orders have explained in detail, this distinction in contractual language demonstrates the shortfalls in plaintiffs' theory of relief, and the arguments in their newest motion do not alter my conclusion.

## II. Plaintiffs must seek leave of court before filing additional motions in this case.

---

[4] Plaintiffs argue that "'prior period adjustments' should balance out over time, as adjustments are both positive and negative." Am. Compl. ¶ 46. However, they do not explain how long it takes for adjustments to "balance," nor assert that the short period of time during which plaintiffs purchased their electricity from XOOM—just six months—would have been enough time for such balancing to occur.

Plaintiffs have now had three opportunities to convince this court that defendants breached the terms of the electricity sales agreement between the parties. I agree with defendants that "Plaintiffs' only recourse at this time is through the appeal process." Defs.' Mem. 3, ECF No. 35. Plaintiffs may not use additional motions to continue to repeat arguments that have already been addressed and denied. As such, before filing any further motions in this case, plaintiffs must seek permission from the court.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to reconsider the courts' prior order denying their motion to alter or amend the judgment is denied.

So ordered.

Date: December 6, 2018 _____/s/_____
Brooklyn, New York Allyne R. Ross
United States District Judge