# Exhibit 1

```
 1                                    Volume I
                                      Pages 1 to 102
 2                                    Exhibits None
 3            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
 4
       - - - - - - - - - - - - - - - - -x
 5                                      :
       SUSANNA MIRKIN and BORIS          :
 6     MIRKIN, Individually and on      :
       Behalf of All Others              :
 7     Similarly Situated,               :  Civil Action
                 Plaintiffs,             :  No. 18 Civ. 2949
 8                                       :  (ARR)(RER)
             vs.                         :
 9                                       :
       XOOM ENERGY, LLC; and XOOM        :
10     ENERGY NEW YORK, LLC,             :
                 Defendants.             :
11     - - - - - - - - - - - - - - - - -x
12            VIDEOTAPED DEPOSITION OF DERYA ERYILMAZ,
       Ph.D., a witness called by the Defendant, taken
13     pursuant to the Federal Rules of Civil Procedure,
       before Alexander K. Loos, Registered Diplomate
14     Reporter and Notary Public in and for the
       Commonwealth of Massachusetts, at the Offices of
15     Veritext Legal Solutions, 101 Arch Street, Suite
       650, Boston, Massachusetts, on Tuesday, November 15,
16     2022, commencing at 10:25 a.m.
17     PRESENT:
18         Wittels McInturff Palikovic
               (By Steven L. Wittels, Esq.; Steven D.
19             Cohen, Esq. (Via videoconference); and
               Ethan D. Roman, Esq. (Via videoconference))
20             E-mail:  Slw@wittelslaw.com
                        Sdc@wittelslaw.com
21                      Edr@wittelslaw.com
               18 Half Mile Road
22             Armonk, NY 10504
23             914.775.8862
24             for the Plaintiffs.


                                                    Page 1
```

| | |
|---|---|
| 1 | Q.  Okay.  Are you offering any personal |
| 2 | interpretation of how the pricing terms of the sales |
| 3 | agreement -- let me rephrase it. |
| 4 | You're not offering a legal interpretation |
| 5 | of the sales agreement, right? |
| 6 | A.  No. |
| 7 | Q.  Okay.  Are you offering any opinion about |
| 8 | how the pricing terms of the sales agreement should |
| 9 | be interpreted? |
| 10 | A.  I guess as an energy economist, this -- you |
| 11 | know, there are terms in the -- in this contract |
| 12 | that only people who work a long time in the energy |
| 13 | industry -- like actual and estimated supply costs, |
| 14 | for example, is an industry-specific term. |
| 15 | So I am reading this as the contract says. |
| 16 | You know, based on actual and estimated supply |
| 17 | costs. |
| 18 | So my interpretation of that is the rates |
| 19 | should be according to this language.  And I guess I |
| 20 | know what it means to be looking at the supply cost, |
| 21 | and that's what I'm understanding. |
| 22 | Q.  Okay.  Are you offering an opinion about |
| 23 | what "based on" XOOM's actual and estimated supply |
| 24 | costs means? |

Page 34

```
 1       A.    I mean, "based on" means -- "based on
 2  actual and estimated supply costs" means very -- I
 3  mean to me, very close to -- the rate should be very
 4  close to XOOM's actual and estimated supply costs.
 5       Q.    Okay.  And what is that opinion based on?
 6       A.    That is based on the contract language that
 7  has, you know, "actual and estimated supply costs."
 8             And "supply costs" are very specific
 9  technical terms in the industry.  So by reading
10  this, the XOOM's rates should be very close to the
11  supply costs of -- supply costs that XOOM
12  calculates.
13       Q.    So to you, "based on" means very close to?
14       A.    Very close to.  At the -- yeah.  At the
15  minimum, very close to, yeah.
16       Q.    Does it -- it doesn't mean equal to?
17       A.    Very close to.  It may mean equal to, or
18  virtually -- virtually equal.
19       Q.    What does "virtually equal" mean?
20       A.    Very close to, I would say.  It should be
21  very close to XOOM's actual and estimated supply
22  costs.
23       Q.    Do you think this is a cost pass-through
24  contract?
```

Page 35

```
 1        Q.    Uh-huh.
 2        A.    Then we came up with an alternative method
 3   to show what the overcharges would look like if
 4   there was a margin considered.
 5        Q.    Uh-huh.
 6        A.    So that's the approach that we presented in
 7   method two.
 8        Q.    Uh-huh.
 9              But you believe, looking back at Exhibit 2,
10   the contract terms --
11        A.    Yes.
12        Q.    -- that an average customer would read the
13   pricing provision that's listed in the box at the
14   top of the document?
15        A.    Uh-huh.
16       *Q.    And would conclude that they are going to
17   get electricity from XOOM at cost?
18              MR. WITTELS:  Can you repeat the question?
19              Read back the question, please.
20              *(Record read)
21              MR. WITTELS:  Objection.
22              THE WITNESS:  Well, the customer will get
23   this agreement; and they would read that it would be
24   based on XOOM's actual and estimated supply costs,
```

Page 51

1   and they would assume it would be based on actual
2   and estimated supply costs.
3       But an average customer wouldn't know what
4   a "supply cost" means, but it's an
5   energy-industry-specific terminology.  So that's
6   what they -- from what they read, they would think
7   that they would be based on actual and estimated
8   supply costs, and they would -- that's what they
9   would be charged at.
10      BY MR. MATTHEWS:
11      Q.   And you think an average customer -- I'm
12  focused on the phrase "based on" -- would think that
13  "based on" means equal to?
14      MR. WITTELS:  Objection.  It's about ten
15  times you've asked it.
16      THE WITNESS:  As I mentioned before, I
17  think "based on" in this context is we are having a
18  cost, converting into a rate, so it should be very
19  close to -- to the -- to the actual and estimated
20  supply costs.
21      BY MR. MATTHEWS:
22      Q.   Converting it directly into a rate --
23      A.   Rate.
24      Q.   -- with no margin added, correct?

Page 52

```
 1        A.   Yes.  No margin, because it's not listed in
 2   this.
 3        Q.   You think that's what an average customer
 4   would believe reading that language?
 5        A.   In this context, in this contract, they
 6   would read this and think that it would be based on
 7   actual and estimated supply costs.
 8             MR. WITTELS:  Why are you laughing?  You
 9   can go to the court and laugh, too.  I don't think
10   you should be laughing at witnesses.
11             MR. MATTHEWS:  If this is the opinion that
12   they want to present in this case that "based on"
13   means equal to, they should say so.  I don't know
14   why that's difficult if that is the opinion that
15   they're advancing.
16             MR. WITTELS:  I think she's asked it --
17   answered your questions appropriately, and I don't
18   know why you're laughing.  But we'll see what the
19   court thinks.
20        BY MR. MATTHEWS:
21        Q.   Dr. Eryilmaz, you believe that an average
22   customer would read that language "based on actual
23   and estimated supply costs" and would believe that
24   XOOM's rate would be a direct conversion of its
```

Page 53

```
 1   actual and estimated supply costs into a rate with
 2   no margin added on top, correct?
 3           MR. WITTELS:  Objection.
 4           THE WITNESS:  An average customer would
 5   read this agreement, and they would say, "My" -- I
 6   mean, "I will be charged at actual and estimated
 7   supply cost."  That an average -- as I mentioned,
 8   "supply cost" is a very specific energy industry
 9   terminology, so an average customer may not be able
10   to interpret what the components of "supply cost"
11   is, and that is why, you know, I think, you know, an
12   average customer would just read it and say they
13   will be charged at actual and estimated supply cost
14   based on just reading that.
15           But they would be able to understand
16   comprehensively what an actual and estimated supply
17   cost mean?  Probably not, because the average
18   customer, or like a lay person, wouldn't know what
19   it means.  Only energy industry experienced people
20   can interpret that, in my opinion.
21       BY MR. MATTHEWS:
22       Q.  Do you think an average customer knows what
23   "based on" means?
24       A.  I mean in ordinary language, it may mean a
```

Page 54

```
1    COMMONWEALTH OF MASSACHUSETTS)
2    SUFFOLK, SS.                 )
3        I, Alexander K. Loos, RDR and Notary Public in
4    and for the Commonwealth of Massachusetts, do hereby
5    certify that there came before me on the 15th day of
6    November, 2022, at 10:25 a.m., the person
7    hereinbefore named, who was by me duly sworn to
8    testify to the truth and nothing but the truth of
9    her knowledge touching and concerning the matters in
10   controversy in this cause; that she was thereupon
11   examined upon her oath, and her examination reduced
12   to typewriting under my direction; and that the
13   deposition is a true record of the testimony given
14   by the witness.  I further certify that I am neither
15   attorney or counsel for, nor related to or employed
16   by, any attorney or counsel employed by the parties
17   hereto or financially interested in the action.
18       In witness whereof, I have hereunto set my hand
19   and affixed my notarial seal this 27th day of
20   November, 2022.
21   [signature]
22
23   Notary Public
24   Commission expires 5/5/28
```

Page 102