# MDM Declaration Exhibit A-03

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 2 of 27 PageID #: 2296

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
--------------------------------------------------X
DANIELLE BELL, individually and on behalf of
others similarly situated,

                              Plaintiffs,                 **DECISION & ORDER**
                                                          **(Motion #1)**
                    -against-
                                                          Index No.: 31168/2018
GATEWAY ENERGY SERVICES CORP.,

                              Defendant.
--------------------------------------------------X

EISENPRESS, J.

        The following papers were read on this motion by defendant Gateway Energy Services

Corporation pursuant to CPLR 3211(a)(1) and CPLR 3211(a)(7) for an Order granting defendant

summary judgment and dismissing plaintiff's Complaint:

                    Notice of Motion, Defendant's Memorandum of Law in Support
                    Lucks Affirmation in Support, Exhibits 1-5
                    Plaintiff's Memorandum of Law in Opposition
                    Shub Affirmation in Opposition, Exhibits 1-11
                    Defendant's Memorandum of Law in Reply
                    Affidavits of Service

        Upon the foregoing papers, this motion is determined as follows:

        Plaintiff Danielle Bell, a resident of New City, New York, commenced this putative class

action[1] by Summons and Verified Complaint dated March 1, 2018, alleging that defendant

Gateway Energy Services Corporation ("Gateway"), of Montebello, New York, overcharged her

and thousands of New York consumers for natural gas and/or electricity.  The Complaint alleges

that Gateway engaged in deceptive business practices to lure Bell and others into designating

Gateway as their supplier for natural gas and/or electricity in lieu of their local utility

_____

        [1]Plaintiff initially brought these claims as a putative federal class action (*see Bell v
Gateway Energy Servs. Corp.*, No. 17-CV-3893, 2017 WL 5956987 [SDNY 2017]).  The
Court dismissed that action for lack of federal subject matter jurisdiction (*see id.*, at \*3,
*citing Purdue Pharma LP v Kentucky*, 704 F3d 208, 213 [2d Cir 2013]; 28 USC § 1332[d]
[Class Action Fairness Act]).

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 3 of 27 PageID #: 2297

companies. The Complaint charges that those deceptive business practices violated General Business Law section 349 (First Cause of Action);[2] that Gateway's conduct – including what the Complaint denominates as Gateway's "exorbitantly" high energy-supply prices – breached Gateway's utility contracts with Bell and other customers (Second Cause of Action); that Gateway breached its implied covenant of good faith and fair dealing with Bell and other Gateway energy-supply customers (Third Cause of Action); and that Gateway, as a result of its conduct, was unjustly enriched at its customers' expense (Fourth Cause of Action). The Complaint seeks to certify a class of all similarly situated consumers, appoint Bell as class representative, and designate plaintiff's counsel as class counsel. The Complaint further seeks an award of compensatory damages, restitution, injunctive relief, attorney's fees, and the costs and expenses associated with prosecuting this action.

On April 2, 2018, pursuant to a Court-issued briefing schedule, Gateway filed this pre-answer Notice of Motion to dismiss plaintiff's Complaint pursuant to CPLR 3211(a)(1) and CPLR 3211(a)(7).[3] For the reasons set forth below, Gateway's motion is granted as to the Second, Third and Fourth Causes of Action, but denied as to the First Cause of Action alleging violation of General Business Law section 349. Accordingly, Gateway will be required to answer the Complaint, to the extent specified below.

---

[2] While plaintiff's papers assert that this action also alleges a violation of General Business Law section 349-d ("Energy Services Company Consumers Bill of Rights"), defendant correctly asserts that the Complaint does not interpose a section 349-d cause of action (Def's Reply Mem of Law, at 8 n14). Rather, the Complaint mentions only by way of introduction that "[t]his suit is brought pursuant to [General Business Law section] 349, [General Business Law section] 349-d, and the common law of New York" (Complaint, at ¶ 4). By its express terms, the Complaint's statutory cause of action purports to sound only under General Business Law section 349 (see id., at ¶¶ 48-59). Accordingly, this Decision takes no position on any section 349-d claim.

[3] Defendant thereafter moved by separate Notices of Motion to admit *pro hac vice* two attorneys appearing on defendant's behalf on the instant motion. This Court granted such admission applications by Order dated July 20, 2018 (see NYSCEF Docs. 42-43).

2

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 4 of 27 PageID #: 2298

1. **Background: Market Deregulation and Plaintiff's Complaint**

Starting in the 1980s, the Legislature authorized the New York State Public Service Commission ("PSC") to begin deregulating New York's retail energy market by requiring utilities to transport certain energy commodities owned or supplied by other companies (*see e.g. Rochester Gas & Elec. Corp. v Public Serv. Commn.*, 71 NY2d 313-320-522 [1988]; Public Service Law § 66-d). Starting in the 1990s, the PSC restructured the electric service provider industry by allowing independent energy service companies ("ESCOs"), such as Gateway, to supply energy to retail consumers and set rates by means separate from geographically-based local utility companies that, by law, must continue to deliver such energy even if such local utility does not supply the energy it delivers (*see id.*; General Business Law § 349-d[1][b]). This market-access policy changed New York's historical practice by which each residential customer previously received electricity and natural gas from a local utility company that supplied energy, delivered energy and charged the customer on a single bill for both supply and distribution (*see e.g. Retail Energy Supply Ass'n v Public Service Commn.*, 152 AD3d 1133, 1134 [3d Dept 2017], *lv granted sub nom. National Energy Marketers Assn. v New York State Public Serv. Commn.*, 31 NY3d 902 [Mar. 27, 2008]; *Progressive Mgmt. of N.Y. v Galaxy Energy LLC*, 51 Misc. 3d 1203, 1203 [Sup Ct Nassau Co 2016]).

The gravamen of plaintiff's Complaint is that Gateway used its "false promise of competitive rates based on market conditions in order to deceive [Bell and similarly situated] consumers into purchasing energy" from Gateway instead of local utilities, when in fact Gateway charged energy prices "substantially higher than rates charged by" local utilities and that bore "no relation to market rates or the wholesale cost of natural gas and electricity" (Complaint, at ¶ 14). Gateway's consumer-outreach practice, the Complaint asserts, was a "classic bait and switch deceptive scheme" by which "Gateway lure[d] consumers into switching to [Gateway's] natural gas and/or electricity supply service by offering teaser rates that [were] much lower than its regular rates" (*id.*, at ¶ 17), then raising rates far above market prices.

3

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 5 of 27 PageID #: 2299

The Complaint alleges that Gateway mailed Bell a letter in 2011 "enticing her to switch" to Gateway from her local natural gas and electricity provider, nonparty Orange and Rockland Utilities ("O&R") (Complaint, at ¶ 17).  Bell signed with Gateway an Enrollment Consent and began a Fixed-Rate Plan ("FRP") to purchase natural gas and electricity from Gateway, while also preserving her O&R utility-delivery service (*see id.*).  The Enrollment Consent included an "Account Breakdown" stating that "Our fixed-rate plans are intended to protect you from future price increases" (Def Exh. 2 [NYSCEF Doc. 11]), and indicating that Gateway's provision of electricity and natural gas supply services was subject to "New York Residential Terms and Conditions" ("Terms and Conditions") attached thereto (see *id.*).  Those Terms and Conditions provided that Bell's FRP, at its expiration, would roll over into a Variable-Rate Plan ("VRP") that she could cancel at any time and without penalty:

> "If you have chosen a Fixed-Rate Plan, your initial term ("Initial Term") is the term specified in your Enrollment Consent or, if no term is specified, 12 months.  We will send you a renewal notice between 30 and 60 days prior to the end of the Initial Term.  Your Fixed-Rate Plan shall then automatically renew for successive month-to-month periods (each a "Renewal Term") at our variable rate as described in the Price section below.  You may cancel your [V]ariable-[R]ate [P]lan at any time with no early termination fee"

(Def Exh. 2 [NYSCEF Doc. 11]).

In relation to Gateway's variable pricing for electricity and natural gas, the Terms and Conditions provided as follows:

> "***Variable-Rate Plan.***  The price you will pay for all natural gas and/or electricity under our Variable-Rate Plan is a rate we set each month based on our evaluation of market conditions.  Market conditions that we might consider include, among other items: the prevailing price of natural gas or electricity on the market, costs involved in moving the gas or electricity from the producer to your utility, our total acquisition costs for the electricity or natural gas (including, where applicable, transmission costs, storage costs, transportation costs and line losses) and the prevailing rates offered by your utility and other competitors"

(*id.*).  The Terms and Conditions also included a "No Warranties" clause in relation to pricing, which provided in relevant part:

4

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 6 of 27 PageID #: 2300

> "**No Warranties.** ... [W]e specifically disclaim any warranty or guaranty charged by us that the energy supplied pursuant to the Agreement will be lower than the price that you would have been charged by the utility or another ESCO"

(*id.*).  Gateway's Terms and Conditions also contained an integration clause stipulating that such Terms and Conditions, along with plaintiff's signed Enrollment Consent, "sets forth the entire agreement between the parties.  Any and all prior or contemporaneous agreements, understandings and representations between the parties, whether verbal or written, are superseded by this Agreement" (Exh. A, *id.*).

Bell renewed her Gateway FRP in May 2012 for a two-year term, subject to the same stipulations as the 2011 FRP, including the Terms and Conditions (*see* Def Exh. 4 [NYSCEF Doc. 13]).  When Bell's second FRP expired in December 2014, plaintiff renewed with Gateway for yet another two-year FRP (*see* Complaint, at ¶ 24; Exh. A [NYSCEF Doc. 2]).  Appurtenant to that renewal, Gateway mailed Plaintiff a letter on or about December 17, 2014, containing the Terms and Conditions (*id.*, at ¶¶ 20-21), which again were the same as for the 2011 FRP and 2012 FRP.

When Bell's third FRP expired and she did not renew or cancel, Gateway automatically switched Bell to a month-to-month VRP (Complaint, at ¶ 23), pursuant to the Terms and Conditions authorizing Gateway to switch FRP-expiring customers into a month-to-month VRP that the customer could cancel at any time and without penalty.

The Complaint further alleges that Gateway had enclosed with its December 2014 renewal a cover letter to Bell ("2014 communication") stating that:

> "Gateway remains dedicated to your complete satisfaction by providing you with *competitive energy prices*, attractive pricing plans, and excellent customer service"

(Complaint, at ¶ 25 [emphasis supplied in Complaint]) – a representation that, according to the Complaint, Gateway repeated in Gateway's letters to Bell explaining her utility rates under her 2014 FRP (*id.*; Exhs. B-1, B-2 [NYSCEF Docs. 3-4]).

5

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 7 of 27 PageID #: 2301

The Complaint avers that after paying variable rates in 2016 and 2017, Bell opted back into a Gateway FRP for several months before cancelling her Gateway service on May 18, 2017 (*see* Complaint, at ¶ 27; *see also* Def's Mem of Law, at 1 & n1).

Based on Gateway's 2014 communication purporting to assure "competitive energy prices," the Complaint asserts that Bell reasonably understood – and that any reasonable consumer likewise would understand – Gateway to promise that it would set natural gas and electricity supply rates that would be competitive based on market conditions (*see* Complaint, at ¶ 26). Instead, however, Plaintiff avers that during the 2016-2017 billing cycles in which Bell participated in Gateway's VRP,[4] Gateway's retail price for electricity per kilowatt-hour ("kWh") was consistently higher than O&R's retail price and the New York Independent System Operator ("ISO") all-in wholesale price, and in certain months was even double or triple those benchmark rates. For instance, Plaintiff asserts that during her April-May 2016 billing period under Gateway's VRP, Gateway's electricity-supply rate was $0.1239/kWh compared to $0.06197/kWh (for O&R) and $0.0445/kWh (for wholesale), and that this billing period reflected Gateway's lowest VRP electricity-supply rates during Plaintiff's participation in the VRP (*see id.*, at ¶ 28). Plaintiff further avers, for that same billing period, an even greater percentage disparity between Gateway's variable-rate price for natural gas per 100 cubic feet ("CCF") and O&R's retail price and the wholesale market. For instance, Plaintiff claims that during her April-May 2016 billing period under Gateway's VRP, Gateway's natural gas-supply rate was $0.73/CCF compared to O&R's $0.19716/CCF and the wholesale market's $0.303/CCF (*see id.*). The Complaint alleges corresponding disparities between Gateway utility-supply prices, on the one hand, and corresponding O&R and wholesale prices, on the other, for each

---

[4] The parties dispute the exact months during which plaintiff's VRP began and ended. While Bell asserts that her VRP extended from April 2016 to March 2017 (*see* Complaint, at ¶ 28), Gateway asserts that it charged Bell variable rates between January 2016 and March 2017 (*see* Def Mem of Law in Support, at 4-5 [NYSCEF Doc. 8]). For purposes of this motion, however, the Court need not determine with precision during which months of 2016 and 2017 Bell participated in Gateway's VRP.

6

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 8 of 27 PageID #: 2302

month that plaintiff participated in Gateway's VRP (*see id.*).

Based on the foregoing illustrative month-by-month comparative pricing data between Gateway, O&R and the wholesale market, the Complaint argues that the prices that Gateway charged plaintiff were not "competitive" as Gateway's 2014 communication indicated. Moreover, the Complaint asserts that Gateway's VRP prices did not fluctuate with market prices, and therefore Gateway's prices did not and could not reflect "market conditions" as Gateway's Terms and Conditions had promised (Complaint, at ¶¶ 33-35). Rather, the Complaint accuses Gateway of charging prices that are "unconscionably" high, knowingly misrepresenting its rate-setting policy to induce non-Gateway consumers to switch to Gateway, accruing to itself "outrageous profits" at consumer expense, and acting with "actual malice" or "wanton and willful disregard" for the consumers that Gateway serves (*id.*, at ¶ 37).

Styling her Complaint as a putative class action, plaintiff seeks to represent all of Gateway's New York customers whom Gateway charged variable rates for natural gas or electricity supply from 2014 to the present (Complaint, at ¶ 40). The Complaint charges that Gateway's representations concerning its utility-supply prices were false and misleading, in violation of General Business Law section 349 (*id.*, at ¶¶ 49-59 [First Cause of Action]). The Complaint contends that Gateway's VRP prices were far in excess of market prices and untethered to market conditions, and thus breached Gateway's consumer contracts (*id.*, at ¶¶ 60-66 [Second Cause of Action]). Finally, the Complaint avers that Gateway's conduct breached its implied covenant of good faith and fair dealing in performing its utility contracts (*id.*, at ¶¶ 67-72 [Third Cause of Action]), and that Gateway unjustly enriched itself at consumer expense (*id.*, at ¶¶ 73-76 [Fourth Cause of Action]).

### 2. **Party Contentions**

In support of its motion to dismiss, Gateway asserts that the Complaint fails to allege that Gateway did not apply what it deems the non-exclusive list of factors that the Terms and

Conditions specify for the setting and charging of variable energy prices. Nothing in the Complaint, Gateway argues, suggests that Gateway failed to consider market conditions such as wholesale prices and competitor prices, among numerous other criteria that the Terms and Conditions specify as factors in Gateway's VRP rate-setting. Gateway continues that the Complaint offers no non-conclusory factual assertions as to Gateway's VRP price setting that properly can form a basis to suggest that Gateway breached its contract, and that the Complaint's one-year comparison with a single wholesale price metric for natural gas and another single wholesale price metric for electricity impermissibly cherry picks and is insufficient to survive dismissal as a matter of law. Gateway further argues that the Complaint's characterizations of Gateway's promises do not arise from its electricity supply contract with plaintiff but rather from extraneous materials, or from plaintiff's subjective understanding that was not reasonable given the plain language of Gateway's Terms and Conditions. In support thereof, Gateway relies on the "No Warranties" provisions of the Terms and Conditions to disclaim any promise – or any reasonable interpretation of its VRP – that Gateway energy-supply prices necessarily would be lower than competitor ESCOs or local utility companies such as O&R.

Accordingly, Gateway asserts that the First Cause of Action (alleging violation of General Business Law section 349) and the Second Cause of Action (alleging breach of contract) must be dismissed. Gateway additionally argues as to plaintiff's statutory claim that Gateway's business practices were neither deceptive nor causally related to the injuries plaintiff claims. As to the character of those business practices, Gateway argues that language such as "competitive" is permissible puffery under General Business Law section 349 and thus not actionable. As to the alleged impact of those business practices, Gateway argues that the Complaint fails to allege that the Terms and Conditions governing VRP pricing induced plaintiff to switch from O&R to Gateway – indeed, the Complaint alleges that plaintiff was a Gateway FRP consumer for years before the VRP took effect – and thus plaintiff cannot show that any

8

Gateway statements concerning the VRP induced plaintiff to change energy providers. Gateway further argues that the Third Cause of Action (breach of implied covenant of good faith and fair dealing) and Fourth Cause of Action (unjust enrichment) are substantially duplicative of the contract claim and also devoid of non-conclusory factual allegations suggestive of bad faith or damages other than those allegedly arising in contract, and thus these causes of action also must be dismissed as a matter of law. In the alternative, Gateway argues that to the extent any of plaintiff's claims survive dismissal, plaintiff lacks standing to represent Gateway's VRP consumers from 2014 forward because plaintiff did not participate in Gateway's VRP until 2016.

In further support of the foregoing, Gateway attaches plaintiff's FRP contracts with Gateway of 2011 and her renewals of May 2012 and December 2014 (Def Exhs. 2-5 [NYSCEF Docs. 11-15]). These contracts, Gateway asserts, demonstrate that Bell did not participate in Gateway's VRP until 2016. They also show, Gateway contends, that Bell undertook and repeatedly continued her contractual relationship with Gateway based on fixed prices for electricity and natural gas, not variable prices. Accordingly, Gateway concludes that plaintiff cannot show that variable prices were relevant to her decision to switch to Gateway, and thus that plaintiff fails to state any adequate claim in relation thereto.

In opposition, plaintiff asserts that Gateway's failures to disclose that its VRP prices would not reflect wholesale price fluctuations, and in fact would be substantially higher than wholesale and competitor prices, constitute material omissions to her and other prospective consumers. Plaintiff claims that Gateway's Terms and Conditions misled plaintiff because Gateway does not determine its "variable rate ... by considering market conditions, contrary to [the] express terms" of Gateway's consumer agreement (Pl's Mem of Law in Opposition, at 7). Plaintiff derides Gateway's claim that Gateway complied with the contract by considering the enumerated factors but not necessarily abiding them: plaintiff argues that Gateway's assertion that it could merely "consider" these putative pricing factors, and thereby comply with the contract, is tantamount to conceding that Gateway engaged in deceptive business practices

9

(*see id.,* at 3 [Gateway "promises to consider market factors knowing full well that while it might *consider* such factor, its rate would nonetheless bear no relation to wholesale costs or competitor pricing"] [emphasis original]; NYSCEF Doc. 19).  Plaintiff also construes the Terms and Conditions to require Gateway to consider market conditions "exclusively" in its variable-price rate setting.  Plaintiff avers that Gateway offers no market-based justification for its prices, much less what plaintiff calls the "steep increase" in price from Bell's FRP to her VRP; and argues that Gateway cannot take defensive recourse in the disclaimer language of its Terms and Conditions.  Plaintiff also argues that the contract cause of action is not duplicative with the fair-dealing claim because Gateway allegedly used its rate-setting discretion in bad faith to set rates that bore no relation to wholesale costs or competitor pricing, thus frustrating Bell's reasonable expectations of her relationship with Gateway.  As to the Fourth Cause of Action for unjust enrichment, plaintiff argues that in the instant posture of a pre-answer motion to dismiss, defendant has not categorically confirmed the existence of a contract between the parties and thus plaintiff may plead in the alternative both the contract theory and the quasi-contract theory of unjust enrichment.  In support thereof, plaintiff cites a number of federal decisions in putative class actions that plaintiff construes to hold that ESCO pricing decisions substantially departing from ESCO consumer-inducement promises are privately actionable both in contract and under applicable consumer protection laws.

In reply, Gateway argues that plaintiff's cases mainly concern ESCOs that allegedly lured customers from local utilities with so-called teaser variable rates and other inducements; here, by contrast, plaintiff left O&R for Gateway and joined Gateway's FRP precisely to avoid variable rates, then repeatedly renewed her Gateway FRP plan and even briefly returned to Gateway's FRP after participating in a Gateway VRP for approximately a year.  Thus, Gateway asserts, Gateway's VRP promises did not induce and could not have induced plaintiff to sign with Gateway, thus defeating any plaintiff showing of causation.  Gateway also retorts that plaintiff failed to offer non-conclusory facts to suggest that Gateway did not apply the market factors

10

specified in the Terms and Conditions, and reminds that those market factors expressly were non-exclusive. As to plaintiff's argument that the unjust enrichment cause of action can survive notwithstanding plaintiff's claim for breach of contract, Gateway responds that "there is no risk in this case that Gateway will deny the existence of a contract [between Gateway and plaintiff]; Gateway's entire defense rests on the contention that its conduct was unambiguously permitted by Ms. Bell's contracts" (Def's Reply Mem of Law in Support, at 10-11).   Gateway further responds that plaintiff's unjust enrichment claim explicitly is styled as derivative of the contract cause of action and thus cannot survive (*id.*, at 11, *quoting* Complaint, at ¶ 74 ["Defendant has unjustly enriched itself and received a benefit *beyond what was contemplated in the contract*"] [emphasis original]).

### 3. **Analysis**

The proponent of a summary judgment motion must establish the claim or defense sufficient to warrant a Court directing judgment in its favor as a matter of law.   *See e.g. Giuffrida v. Citibank Corp.*, 100 NY2d 72 [2003], *citing Alvarez v. Prospect Hosp.*, 68 NY2d 320 [1986]).   On a CPLR 3211(a)(7) motion to dismiss for failure to state a cause of action, this Court must "accept the facts as alleged in the [C]omplaint as true, accord plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Kolchins v Evolution Markets, Inc.*, 31 NY3d 100, 105-106 [Mar. 29, 2018]; *511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151-152 [2002]; *Leon v Martinez*, 83, 87-88 [1994]).   Dismissal must be denied if from the pleadings' four corners "factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*Jennifer Realty*, 98 NY2d at 152, *quoting Polonetsky v Better Homes Depot*, 97 NY2d 46, 54 [2001]; *Guggenheim v Ginsburg*, 43 NY2d 268, 275 [1977]).   Thus, a complaint is legally sufficient "if the court determines that a plaintiff would be entitled to relief on any reasonable view of the facts stated" (*Dee v Rakower*, 112 AD3d 204, 207, *citing*

11

*Campaign for Fiscal Equity v State of New York*, 86 NY2d 307, 318 [1995]). "Whether a plaintiff can ultimately establish [his or her] allegations is not part of the calculus" (*id.*, quoting *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]). On a CPLR 3211(a)(1) motion to dismiss based on documentary evidence, dismissal is warranted "only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Jennifer Realty*, 98 NY2d at 152; *Leon*, 84 NY2d at 88; *see also Elow v Svenningsen*, 58 AD3d 674 [2d Dept 2009]).

Even in this pre-answer posture, however, the foregoing standards of liberality do not necessarily oblige this Court to defer blindly to a Complaint's subjective narrative. "Allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such [deference]" (*Maas v Cornell Univ.*, 94 NY2d 87, 91 [1999]; *Karakash v Trakas*, __ AD3d __, 2018 WL 3450202 [2d Dept, July 18, 2018]). Moreover, plaintiff's putative representation of a class of Gateway customers, and thus the Complaint's assertions on behalf of such proposed class, are not entitled to consideration in this pre-answer posture. On a CPLR 3211 motion to dismiss a putative class action complaint prior to class certification, the Court confines its review to the named plaintiff's individual claims without regard to the class that such plaintiff proposes to represent (*see e.g. Rapp v Dime Sav. Bank of N.Y.*, 64 AD2d 964, 965 [2d Dept 1978], *affd* 48 NY2d 658 [1979]; *see also Tepper v Cablevision Systems Corp.*, 19 AD3d 585, 586 [2d Dept 2005]). The procedural device of a putative class action "may not be used to bootstrap a plaintiff into standing which is otherwise lacking" (*Murray v Empire Ins. Co.*, 175 AD3d 693, 694 [1st Dept 1991]; *see Bouton v Van Buren*, 229 NY 17, 22 [1920]).

Accordingly, on this motion, this Court will confine itself to plaintiff's individual claims and determine whether, to that extent only, the Complaint states any cause of action as a matter of law; and, if so, whether documentary evidence conclusively defeats any such cause of action as a matter of law. The Court will take each of plaintiff's four causes of action in turn.

12

### A. <u>First Cause of Action: Deceptive Business Practices</u>

The Legislature deems unlawful "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service" (General Business Law § 349[a]); and authorizes a private right of action by "any person who has been injured by reason of any violation [thereof] ... to enjoin such unlawful act or practice [and to] recover [such person's] actual damages" incurred (*id.*, § 349[h]). Among the purposes of section 349 are to "ensure an honest marketplace" (*Karlin v IVF America, Inc.*, 93 NY2d 282, 287 [1999], *quoting* Mem of Gov Rockefeller, 1970 NY Legis Ann, at 472 [L 1970 ch 43]). As such, the statute's consumer-protection purpose is explicitly remedial, to provide redress for and thus disincentivize "consumer frauds at their incipiency" (*Karlin*, 93 NY2d at 290). Given the Legislature's remedial purpose in enacting section 349, judicial application of the statute "has been correspondingly broad" (*id.* [collecting cases]).

Courts, however, balance this statute's remedial intent and breadth with concern for risking an unintended "tidal wave of litigation against businesses" (*City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616, 621 [2009], *quoting Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 85 NY2d 20, 26 [1995]). To that end, and to avert undue "remoteness" between a plaintiff's claim and the allegedly deceptive business practice (*see Smokes-Spirits.Com, Inc.*, 12 NY3d at 621; *Blue Cross and Blue Shield of N.J., Inc. v Phillip Morris USA, Inc.*, 3 NY3d 200, 208 & n3 [2004] [collecting cases]), a plaintiff can prevail on a section 349(h) private cause of action only upon alleging and demonstrating that such plaintiff "suffered injury as a result of the [defendant business's allegedly] deceptive act" (*Stutman v Chemical Bank*, 95 NY2d 24, 29 [2000]). Moreover, the determination whether an alleged business practice is "deceptive" under section 349 is based on an objective inquiry of whether the business's alleged act or omission appears "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Smokes-Spirits.Com, Inc.*, 12 NY3d at 621; *Stutman*, 95

13

NY2d at 29; *Oswego Laborers' Local 214 Pension Fund*, 85 NY2d at 26); and whether such

alleged deception is "material" (*Oswego Laborer's Local 214 Pension Fund*, 85 NY2d at 26).  A

court may make the foregoing threshold determinations as a matter of law (*see id.*).

Liberally construing the Complaint and granting plaintiff the benefit of every favorable

inference, the foregoing principles defeat the branch of defendant's motion to dismiss plaintiff's

section 349 claim.  While the limitations period lapsed in 2014 to challenge Gateway's 2011

business practices in originally soliciting Bell to switch energy suppliers (*see* CPLR 214[2]

[three-year limitations period for liability created or imposed by statute]), each Gateway

solicitation to renew or continue Bell's consumer relationship with Gateway, whether under a

FRP or a VRP, is a separate "act" potentially subject to challenge under section 349.  Thus, this

action is timely based on Gateway's December 2014 communication.  Moreover, Gateway's

December 2014 communication with Bell – asserting that Gateway "remains dedicated to ...

providing you with competitive energy prices" – reasonably can be construed to apply as much

to Gateway's VRP as to Gateway's FRP.  This interpretation is at least plausible, for purposes

of this CPLR 3211(a) dismissal motion, from both the 2014 communication's plain language and

its context.  The 2014 communication accompanied the Terms and Conditions that, as Gateway

itself argues, expressly governed both the FRP Bell was extending in December 2014, and the

VRP that automatically would begin upon that FRP's expiration absent Bell's renewal or timely

cancellation.  Thus, while Gateway certainly is correct that its 2014 communication could not

have induced Bell to sign with Gateway in the first instance back in 2011, it does not

necessarily follow that Gateway's 2014 communication could not have influenced Bell to stay

with Gateway after expiration of the FRP then taking effect and then allow the expiring FRP to

roll over into a VRP – believing that Gateway VRP prices would remain "competitive."  Thus,

Gateway's argument that its "competitive energy prices" communication with Bell in December

2014 could not have caused Bell actionable damage under section 349 lacks merit.

The next issue is whether Gateway's 2014 communication was "likely to mislead a

14

reasonable consumer acting reasonably under the circumstances" (*Smokes-Spirits.Com, Inc.*, 12 NY3d at 621; *Stutman*, 95 NY2d at 29; *Oswego Laborers' Local 214 Pension Fund*, 85 NY2d at 26). Gateway asserts that no reasonable Gateway consumer, reading the price-setting factors that the Terms and Conditions specified, reasonably could be misled by Gateway's assertion that Gateway would provide "competitive energy prices." Gateway's argument, however, proves too much: it impermissibly would read Gateway's representation out of existence. *Lacoff v Buena Vista Publishing, Inc.* (183 Misc 2d 600 [Sup Ct NY Co 2000]), on which Gateway relies, is not to the contrary. *Lacoff* challenged under section 349 a book published commercially that purported to serve as a stock market investment guide, which volume the Court generally treated as constitutionally protected speech and thus generally exempted from section 349 protections. Moreover, contrary to Gateway's suggestion, the only language that the *Lacoff* Court deemed to be non-actionable puffery for section 349 purposes was certain language on the book cover (*i.e.* "How We Beat the Stock Market – And How You Can Too") and the book's references to a "secret recipe for investment success." (*Lacoff*, at 609). Much unlike Gateway's assertion of setting and charging "competitive" energy prices, the *Lacoff* phrases "Beat the Stock Market" and "investment success" did not reasonably suggest to consumers a comparative benchmark sufficiently capable of explication.

To be sure, Gateway offers federal authority for the proposition that an ostensible promise of "competitive energy prices" is not susceptible to quantification and thus is so vague as to constitute non-actionable puffery under section 349 (*see e.g. Mirkin v Viridian Energy, Inc.*, 2016 WL 3661106, at *6 [D. Conn. 2016] [applying New York law]). Nevertheless, the instant CPLR 3211(a) posture requires this Court to accord plaintiff the benefit of every favorable inference, and in that vein, susceptibility to quantification need not necessarily be exacting in order to be potentially actionable under section 349. Through that lens, it is at least arguable that a reasonable consumer could believe that Gateway was holding itself out to provide energy at prices per KwH (for electricity) or per CCF (for natural gas) – metrics that are

15

objectively quantifiable – that would be reasonably comparable to prices charged by competitors such as O&R, rather than twice or even three times as high as Bell alleges Gateway charged her during certain VRP billing periods.[5]   Neither is it necessarily dispositive that Gateway's 2014 communication, like Gateway's corresponding communications at the start of each of Bell's FRPs, narrated that FRPs "are intended to protect [purchasers] from future price increases" – thus implying that VRPs could well be higher than FRPs.  Even so, higher prices do not necessarily mean prices that are not "competitive," and it wouldn't necessarily be illogical for a reasonable consumer to read those assertions *in pare materia*.

Gateway also is incorrect that its Terms and Conditions (by setting forth the non-exclusive market factors by which Gateway would set VRP energy prices), and its "No Warranties" disclaimer (making no promise that Gateway variable rates "will be lower than the price that [the consumer] would have been charged by the utility or another ESCO"), necessarily bar plaintiff's section 349 claim.  Essentially, Gateway argues that the Terms and Conditions themselves comprise the totality of the "circumstances" under which this Court must apply the above reasonableness test.  Setting aside that Gateway offers no binding authority for this proposition, Gateway's own cases weigh against it.  Even where a section 349 defendant fully discloses the terms and conditions of commercial a transaction, a business communication "may be likely to mislead by virtue of the net impression it creates even though [it] also contains truthful disclosures" or accompanies truthful disclosures (*Mirkin*, *supra*, at *6; *quoting F.T.C. v Cyberspace.com LLC*, 453 F.3d 1196, 1200 [9th Cir 2006]).  Moreover, "an accurate disclaimer does not necessarily cure other potentially misleading statements or representations" such as those plaintiff alleges from Gateway (*id.* [collecting cases]).  Thus, while a finder of fact may consider Gateway's Terms and Conditions (including the disclaimer) as *potentially*

---

[5]By contrast, for example, Gateway's commitment to "excellent customer service," also conveyed in its 2014 communication, does not reasonably appear to be susceptible of quantification and thus would be non-actionable puffery.

influencing what a reasonable consumer would believe under the circumstances, it does not necessarily follow – and this Court therefore declines to hold – that the Terms and Conditions circumscribe the sole circumstances by which to assess the "net impression" that Gateway's communications created (*see id.*).

Neither is Gateway correct that plaintiff failed to allege damages and causation sufficient to maintain this cause of action (*see Stutman*, 95 NY2d at 29). Again, liberally construing the Complaint and according plaintiff the benefit of every favorable inference, the pleadings can be construed to allege that Gateway's 2014 communication induced plaintiff to expect that upon automatic conversion of her energy-supply service from a FRP to a VRP, Gateway's energy prices still would be "competitive." In this pre-answer posture, plaintiff is entitled to the further inference that she, as a putatively reasonable consumer, relied on this representation to allow her 2016-expiring FRP to roll over into the VRP under which Gateway ultimately charged her much higher and allegedly discompetitive utility rates – in derogation of her reasonable contrary expectations based on how she understood Gateway's representation. If so, then Gateway's 2014 communication to that effect would constitute a "material" statement bearing on consumer behavior, which section 349 seeks to protect from the vagaries of a potentially dishonest marketplace (*see Oswego Laborers' Local 214 Pension Fund*, 85 NY2d at 26).

Moreover, as Gateway correctly concedes, justifiable reliance is not a necessary element of a section 349 claim (*see e.g. Stutman,* 95 NY2d at 29; *Oswego Laborers' Local 214 Pension Fund*, 85 NY2d at 26). As the Court of Appeals instructed in distinguishing between reliance and causation for section 349 purposes, a consumer plaintiff "need not additionally allege that [such plaintiff] would not have entered into the [underlying business] transaction" but for the deceptive business practice alleged (*Stutman,* 95 NY2d at 30). Rather, for the instant CPLR 3211(a) purposes, the Complaint is minimally sufficient in alleging that Gateway's VRP charged Bell substantially more than she otherwise would have paid – whether under Gateway's FRP, with another ESCO, or with O&R. This Court liberally having credited the Complaint to plead

17

such damages and causation, whether or not based on justifiable reliance, "[n]othing more is required" to state a cause of action alleging "injury" under section 349(h) (*id.*).

As to Gateway's argument that plaintiff cannot maintain this cause of action on behalf of the putative class of New York energy consumers whom Gateway charged variable rates from 2014 forward (*i.e.* because plaintiff herself only paid variable rates starting in 2016), this argument is premature at this time. As noted above, in this CPLR 3211(a) posture, the Court must limit its review to the named plaintiff's individual claims (*see Rapp*, 64 AD2d at 965, *affd* 48 NY2d at 658; *Tepper*, 19 AD3d at 586). Moreover, Gateway has not yet answered the Complaint, and thus the time for plaintiff to move for (and thus Gateway's time to oppose) class certification has not yet begun (*see* CPLR 902). Even if this Court were to address this argument on the merits, the Court would decline to rule out class certification for all customers starting VRPs on or after 2014 – based on the instant record – because the 2014 communication arguably extended to both Gateway's FRP and Gateway's VRP. Moreover, as Gateway concedes, a class representative must represent only a "common or general interest" on behalf of the putative class, not necessarily the exact interest and posture as all other putative class members (*Rapp*, 64 AD2d at 965, *affd* 48 NY2d at 658).[6]

On the foregoing basis, defendant failed to carry its burden to demonstrate under CPLR 3211(a)(7) that the Complaint states no General Business Law section 349 cause of action , and defendant failed to carry its burden to demonstrate under CPLR 3211(a)(1) that documentary evidence submitted on the motion conclusively defeats that cause of action. Accordingly, the branch of defendant's motion that seeks to dismiss plaintiff's First Cause of Action is denied. In denying this branch of defendant's motion, however, the Court underscores that it takes no position in this pre-answer posture on the reasonableness of any belief or conduct that this

---

[6]Otherwise, Gateway's argument would frustrate if not defeat the certification of any class to challenge its VRP. In Gateway's logic, every FRP customer who later rolls into a VRP would be unable to represent other VRP customers, even as Gateway allegedly advertised, at the time of that FRP, "competitive" prices that Gateway would charge in that future VRP.

18

Decision liberally may impute to plaintiff.  Rather, the Court reserves any such determination – as it must – for the finder of fact.

### B. Second Cause of Action: Breach of Contract

"The essential elements for pleading a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of [its] contractual obligations, and damages resulting from the breach" (*Dee*, 112 AD3d at 208-209; *Elisa Dreier Reporting Corp. v Global Naps Networks, Inc.*, 84 AD3d 122, 127 [2d Dept 2011]; *Brualdi v IBERIA Lineas Aeraes de España, S.A.*, 79 AD3d 959, 960 [2d Dept 2010]).  Defendant concedes that a contract between Bell and Gateway existed, and defendant does not dispute that Bell performed the contract by paying for the electric and natural gas supply that Gateway sold her.

As to Gateway's alleged breach, the gravamen of plaintiff's argument is that Gateway breached its contractual obligations with plaintiff by failing to provide "competitive" energy prices based on "market conditions," in accordance with the VRP pricing specifications of the Terms and Conditions.  Defendant asserts, however, that "competitive" and other descriptive adjectives that plaintiff imputes to Gateway's contractual pricing obligations do not appear in the contract itself – and this Court is constrained to agree.  Plaintiff's contrary suggestion notwithstanding, Gateway's 2014 communication that plaintiff construes to promise "competitive" energy pricing is not part of Gateway's contract: rather, the contract is plaintiff's Enrollment Consent and the Terms and Conditions.

This Court is bound to apply well-settled principle of contract interpretation.  The Court of Appeals instructed in *Greenfield v Philles Records, Inc.* (98 NY2d 562, 586-587 [2002]):

> "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent (*see Slatt v Slatt*, 64 NY2d 966, 967 [1985], *rearg denied* 65 NY2d 785 [1985]). 'The best evidence of what parties to a written agreement intend is what they say in their writing' (*Slamow v Del*

*Col*, 79 NY2d 1016, 1018 [1992]. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms (*see e.g. R/S Assocs. v New York Job Dev. Auth.*, 98 NY2d 29, 32 [2002], *rearg denied* 98 NY2d 693 [2002]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]).

"Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide (*see W.W.W. Assoc.*, [77 NY2d] at 162).   A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' (*Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978], *rearg denied* 46 NY2d 940 [1979]).  Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity (*see e.g. Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 520 [1986]; *First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630, 638 [1968], *rearg denied* 22 NY2d 827 [1968])"

Plaintiff's argument that the Terms and Conditions are facially ambiguous lacks merit. The Terms and Conditions clearly stipulate that a VRP would take effect upon the expiration of Bell's latest FRP unless Bell renewed her FRP or discontinued her Gateway service, and that Bell could cancel such VRP at any time and without penalty.  As noted above, the Terms and Conditions further provide, clearly and unambiguously, that Bell's price for electricity and natural gas would be set each month "based on [Gateway's] evaluation of market conditions," and that Gateway had bounded discretion to determine those market conditions.  The contract expressly confers such bounded discretion to Gateway in setting monthly variable-rate prices ("Market conditions that we might consider include..."); the market factors that Gateway undertook to consider were expressly non-exclusive ("... among other items..."); and those market factors also were expansive beyond competitor prices ("... the prevailing price of natural gas or electricity on the market, costs involved in moving the gas or electricity from the producer to your utility, our total acquisition costs for the electricity or natural gas (including, where applicable, transmission costs, storage costs, transportation costs and line losses) and the prevailing rates offered by your utility and other competitors").

20

Given the contract's plain and clear language, the Complaint's failure to plead much less reasonably suggest that the contract was unconscionable, and this Court's conclusion that the subject contract is not ambiguous as matter of law, this Court is constrained to consider the contract within its four corners so as to vindicate the parties' contractual intent expressed thereby (*see Greenfield,* 98 NY2d at 586-587 [collecting cases]). That being so, and also noting the clear and explicit integration clause included among the Terms and Conditions, this Court is constrained to conclude that the "competitive pricing" language in Gateway's 2014 communication to Bell – on which plaintiff heavily relies – constitutes extrinsic evidence that this Court cannot consider on this contract cause of action (*see id.*). Neither can this Court substitute "its personal notions of fairness and equity" for the parties' bargained-for relationship, or inject into the contract the Court's own conclusions about what "competitive" energy pricing might be, as a substitute for the contract's terms (*id., citing Teichman,* 87 NY2d at 520; *Yellowstone Shopping Ctr.*, 21 NY2d at 638; *rearg denied* 22 NY2d at 827).

Based on the foregoing principles, and even construing the Complaint in the light most favorable to plaintiff and according plaintiff the benefit of every favorable inference, this Court concludes that the Complaint fails to offer any non-speculative facts to support its claim that Gateway breached its contract with Bell. The contract's plain language authorizes that Gateway may consider not only competitor and wholesale prices but also a slew of other economic factors that may affect the purchase, transport, storage and supply of the energy commodities that Bell opted to continuing purchase from Gateway at variable rates rather than at Gateway's fixed rates, or from another ESCO, or from O&R. The Complaint does not allege that Gateway failed to set the variable rates it charged Bell based on this contractual range of considerations.[7]

---

[7]Moreover, plaintiff's characterization of Gateway's argument – that Gateway hides behind the contract language's permissive "may consider" to suggest hypertechnically a bad-faith practice by which Gateway merely weighs competitor and wholesale prices but need not abide them in setting variable-rate prices – is wholly speculative. Rather, fairly construed, Gateway's argument – and the plain meaning of the contract – is that Gateway undertakes to set its variable-rate prices based on a non-exclusive list of market factors,

Accordingly, even were this Court to grant plaintiff the benefit of a liberal inference that Gateway VRP electricity and natural gas prices were not "competitive" with corresponding prices on the wholesale market or price that O&R charged its retail customers – an inference that itself would require extrapolating and bootstrapping from the Complaint's presentation of only one year of selective prices specified – it still would not necessarily follow that Gateway breached its contractual obligation to set variable-rate prices based on a contractual range of market conditions explicitly more expansive than those price-comparative metrics.

Based on the foregoing, the Complaint fails to plead adequately breach of contract sufficient to survive dismissal under CPLR 3211(a)(7). Accordingly, Gateway is entitled to dismissal of the Second Cause of Action sounding in breach of contract, and such branch of Gateway's motion is granted.

### C. Third Cause of Action: Duty of Good Faith and Fair Dealing

All contracts "imply a covenant of good faith and fair dealing in the course of [its] performance" (*Jennifer Realty*, 98 NY2d at 153; *Smith v General Acc. Ins. Co.*, 91 NY2d 648, 652-653 [1998]; *Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995]). "This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'" (*Jennifer Realty*, 98 NY2d at 153*, quoting Dalton*, 87 NY2d at 389; *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79, 87 [1933]). While the duties of good faith and fair dealing do not imply obligations "inconsistent with other terms of the contractual relationship" (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 304 [1983]), they do encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 69 [1978]; *see Jennifer Realty*, 98 NY2d at 153).

---

pursuant to which Gateway "may consider," among others, the enumerated list of market factors that includes competitor and wholesale prices.

22

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 24 of 27 PageID #:
2318

Notwithstanding the foregoing principles, a claim for breach of the duty of good faith and fair dealing that is duplicative of a breach of contract claim must be dismissed as such (*see* e.g. *Educational Center for New Americans, Inc. v 66th Ave. Realty Co.*, 131 AD3d 442, 443 [2d Dept 2015]; *Baer v Complete Off. Supply Warehouse Corp.*, 89 AD3d 877, 878 [2d Dept 2011]; *Barker v Time Warner Cable*, 83 AD3d 750, 752 [2d Dept 2011]).  The Complaint expressly pleads that the instant good faith claim arises from and is appurtenant to plaintiff's claim that Gateway breached its utility contract by setting excessively high variable-rate prices not commensurate with market conditions (*see* e.g. Complaint, at ¶ 71; *see also* Pl's Mem of Law in Opposition, at 22 [bad-faith claim predicated on Gateway allegedly charging "a rate divorced from the market conditions it promised" in contract]).  Moreover, while the Complaint uses words like "arbitrarily" and "unreasonably" to describe Gateway's rate-setting and prices, such allegations constitute "bare legal conclusions" unsupported by the documentary evidence adduced on this motion (*Maas,* 94 NY2d at 91).  Accordingly, even in this relatively liberal CPLR 3211(a) posture, such allegations "are not entitled to" deference (*id.*).

Plaintiff asserts that where a contract contemplates the exercise of discretion, the quintessence of good faith is that such discretion must be exercised in a manner that is neither arbitrary nor irrational.  This Court agrees (*see Dalton*, 87 NY2d at 389, *quoting Tedeschi v Wagner Coll.*, 49 NY2d 652, 659 [1980]), but plaintiff's pleading nevertheless is fatally insufficient and thus plaintiff's argument proves too much.  Given the contract's plain language expressly reserving bounded discretion to Gateway to set prices based on an expansive enumeration of market factors, the mere fact (if true) that Gateway's prices were substantially higher than competitor energy retailers and not varying in line with wholesale prices does not constitute a non-conclusory factual assertion that Gateway exercised its rate-setting discretion in a manner that is arbitrary or irrational.  Indeed, the Complaint does not plead as much.  Moreover, plaintiff would need to plead some additional facts, other than price alone, to suggest that Gateway invoked its rate-setting discretion by means that were arbitrary or irrational.  This

23

pleading failure renders this cause of action duplicative of the breach of contract action and thus must be dismissed as a matter of law.  Plaintiff's argument therefore also goes too far.  As noted above, plaintiff seeks to distinguish the contract claim for excessive *rates* from a bad-faith claim for arbitrary *rate-setting*, but pleads no additional facts relevant to Gateway's rate-setting but not the rates themselves, or any rational means by which to apply the record factual assertions to rate-setting in any non-duplicative way.  If this cause of action could withstand dismissal based on the instant pleading, then no good-faith claim ever could be redundant of a contract claim – which is not the law (*see Educational Center for New Americans, Inc.,* 131 AD3d at 443; *Baer,* 89 AD3d at 878; *Barker,* 83 AD3d at 752).

For the foregoing reasons, Gateway is entitled to dismissal of the Third Cause of Action, and this branch of Gateway's motion is granted.


### D. Fourth Cause of Action: Unjust Enrichment

"The essential inquiry in any action for unjust enrichment ... is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011], *quoting Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972]).  To state such a cause of action, the plaintiff must plead that the defendant was enriched at plaintiff's expense, and that "it is against equity and conscience to permit the defendant to retain what is sought to be recovered" (*Mandarin Trading Ltd.*, 16 NY3d at 182, *quoting Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2d Dept 2004]).

However, it is well settled that the "theory of unjust enrichment lies as a quasi-contract claim" (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]; *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 572 [2005]).  As such, unjust enrichment operates as an equitable claim "in the absence of an actual agreement between the parties concerned. Where the parties executed a valid and enforceable written contract governing a particular

24

Case 1:18-cv-02949-ARR-RER   Document 134-4   Filed 03/24/23   Page 26 of 27 PageID #: 2320

subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded" (*IDT Corp.*, 12 NY3d at 142, *quoting Clark-Fitzpatrick, Inc. v Long Island R. R. Co.*, 70 NY2d 382, 388 [1987]).

It is beyond cavil that a contract existed between Bell and Gateway governing the subject matter for which Bell claims Gateway's unjust enrichment at her expense. As such, and especially given that Gateway both concedes such contractual relationship and relies on it to defend this action, plaintiff's unjust enrichment theory is duplicative of the contract action. Accordingly, Gateway is entitled to dismissal of the Fourth Cause of Action, and this branch of Gateway's motion is granted.

All claims for relief not otherwise granted herein have been considered and are denied. In view of the foregoing it is hereby

**ORDERED** that defendant's motion (Sequence #1) pursuant to CPLR 3211(a)(1) and CPLR 3211(a)(7) is granted to the extent that the Second Cause of Action (breach of contract), Third Cause of Action (implied covenant of good faith and fair dealing) and Fourth Cause of Action (unjust enrichment) are dismissed; and it is further

**ORDERED** that counsel for plaintiff shall serve this Decision and Order, with Notice of Entry, on defendant by NYSCEF within seven days hereof; and it is further

**ORDERED** that defendant shall answer the Complaint, limited to the First Cause of Action (violation of General Business Law section 349), within 20 days after service of this Decision and Order on defendant in accordance herewith; and it is further

**ORDERED** that the parties are directed to appear for a Preliminary Conference in this matter on **WEDNESDAY, OCTOBER 24, 2018, at 9:45 a.m.**

The foregoing constitutes the Decision and Order of this Court on Motion #1.

25

INDEX NO. 031168/2018
RECEIVED NYSCEF: 09/13/2018

Dated:   New City, New York
         September 13, 2018

_____
HON. SHERRI L. EISENPRESS, A.J.S.C.

To:   All Counsel via NYSCEF

26