# MDM Declaration Exhibit A-06

```
 1
 2   UNITED STATES DISTRICT COURT
 3   EASTERN DISTRICT OF NEW YORK
 4   No. 18 Civ. 2949(ARR)(RER)
     - - - - - - - - - - - - - - - - - - - -x
 5
     SUSANNA MIRKIN and BORIS MIRKIN,
 6   Individually and on Behalf of All Others
     Similarly Situated,
 7
                    Plaintiffs,
 8
            -against-
 9
     XOOM ENERGY, LLC and XOOM ENERGY
10   NEW YORK, LLC,
11              Defendants.
12   - - - - - - - - - - - - - - - - - - - -x
13
        16 Court Street
14      Brooklyn, New York 11241
15      August 30, 2022
                                              1:28 PM
16
17      DEPOSITION of BORIS MIRKIN, a
18   Plaintiff in the above-entitled action,
19   held at the above time and place, taken
20   before SAMUEL HITTIN, a Shorthand Reporter
21   and Notary Public of the State of New
22   York, pursuant to the Federal Rules of
23   Civil Procedure, order and stipulations
24   between Counsel.
25              *    *    *
```

Page 1

```
 1
 2  APPEARANCES:
 3
      WITTELS, McINTURFF, PALIKOVIC
 4    Attorneys for Plaintiffs
      SUSANNA MIRKIN and BORIS MIRKIN
 5      295 Madison Avenue
        New York, New York 10017
 6      (914)775-8862
 7  BY:  STEVEN WITTELS, ESQ.
     AND: STEVEN COHEN, ESQ.
 8
 9
10  MCDOWELL HETHERINGTON, LLP
      Attorneys for Defendants
11    XOOM ENERGY, LLC AND XOOM ENERGY
      NEW YORK, LLC
12      1001 Fannin Street, Suite 2700
        Houston, Texas 77002
13      (713)337-5580
14  BY:  MATT MATTHEWS, ESQ.
15
16  ALSO PRESENT:
17    VERITEXT VIDEOGRAPHER
18    BY:  ZEF COTA
19
        *   *   *
20
21
22
23
24
25
                                              Page 2
```

```
 1
 2           STIPULATIONS
 3     IT IS HEREBY STIPULATED, by and among
 4  the attorneys for the respective parties
 5  hereto, that:
 6     All rights provided by the C.P.L.R.,
 7  and Part 221 of the Uniform Rules for the
 8  Conduct of Depositions, including the
 9  right to object to any question, except as
10  to form, or to move to strike any
11  testimony at this examination is reserved;
12  and in addition, the failure to object to
13  any question or to move to strike any
14  testimony at this examination shall not be
15  a bar or waiver to make such motion at,
16  and is reserved to, the trial of this
17  action.
18     This deposition may be sworn to by the
19  witness being examined before a Notary
20  Public other than the Notary Public before
21  whom this examination was begun, but the
22  failure to do so or to return the original
23  of this deposition to counsel, shall not
24  be deemed a waiver of the rights provided
25  by Rule 3116, C.P.L.R., and shall be
                                              Page 3
```

```
 1
 2  controlled thereby.
 3     The filing of the original of this
 4  deposition is waived.
 5     IT IS FURTHER STIPULATED, a copy of
 6  this examination shall be furnished to the
 7  attorney for the witness being examined
 8  without charge.
 9
10        *   *   *
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                              Page 4
```

```
 1
 2           THE VIDEOGRAPHER:  Good
 3  afternoon.  We are going on the record
 4  at 1:29 p.m. Eastern Daylight Time on
 5  August 30, 2022.
 6       This is media unit one of the
 7  video-recorded deposition of Boris
 8  Mirkin, taken by counsel for the
 9  defendant in the matter of Susanna
10  Mirkin and Boris Mirkin, et al., verse
11  XOOM Energy, LLC, and XOOM Energy New
12  York, LLC, filed in the United States
13  District Court of New York, Case
14  Number 18-CIV-2949.
15       The location of this deposition
16  is Veritext Brooklyn, 16 Court Street,
17  Brooklyn, New York.
18       My name is Zef Cota,
19  representing Veritext, and I am the
20  videographer.  The court reporter is
21  Samuel Hittin, from the firm Veritext.
22  I am not authorized to administer an
23  oath, I am not related to any party in
24  this action, nor am I financially
25  interested in the outcome.
                                              Page 5
```

**Page 6**

1
2        [Appearances inserted by court
3    reporter from previous witness's
4    transcript.]
5        MR. MATTHEWS: This is Matt
6    Matthews with the law firm of McDowell
7    Hetherington on behalf of the
8    defendants, XOOM Energy.
9        MR. WITTELS: Steven Wittels for
10   the plaintiff, Mirkins. I'm together
11   with my co-counsel, Steve Cohen --
12   Steven Cohen, from the law firm
13   Wittels, McInturff, Palikovic.
14       THE VIDEOGRAPHER: Counsel and
15   all present in the room have been
16   noted for the stenographic record.
17       Will the court reporter please
18   swear in the witness, and counsel may
19   proceed.
20
21   B O R I S  M I R K I N, the Witness
22   herein, having first been duly sworn by
23   the Notary Public, was examined and
24   testified as follows:
25   BY COURT REPORTER:

**Page 7**

1
2    Q.   Please state your name for the
3    record?
4    A.   Boris Mirkin.
5    Q.   Please state your address for
6    the record?
7    A.   1677 East 34th Street, Brooklyn,
8    New York 11234.
9    EXAMINATION BY
10   MR. MATTHEWS:
11   Q.   Mr. Mirkin, thank you for being
12   here this afternoon.
13   A.   Thank you.
14   Q.   My name is Matt Matthews, and I
15   represent the defendants in this case,
16   XOOM Energy and XOOM Energy New York.
17       Do you understand that?
18   A.   Yes, I do.
19   Q.   Okay. Great.
20       And before we dive in, I'll go
21   over some ground rules. I guess, the
22   first one, can you please state your full
23   name for the record.
24   A.   My name is Boris Mirkin,
25   M-I-R-K-I-N.

**Page 8**

1                 B. MIRKIN
2    Q.   All right. Thank you.
3        And, Mr. Mirkin, have you ever
4    been deposed before?
5    A.   Yes.
6    Q.   When was that?
7    A.   I worked as a police officer for
8    NYPD. I've done a few. It was part of my
9    job. Not in civil cases.
10   Q.   In criminal cases --
11   A.   Yes.
12   Q.   -- you've been deposed?
13   A.   Yes.
14   Q.   As a witness?
15   A.   As a -- how's it called? As a
16   complainant. As an arresting officer.
17   Q.   Understood.
18   A.   As a complainant.
19   Q.   Yes, sir.
20       And about how many times have
21   you had to give your deposition in
22   criminal matters?
23   A.   Probably five, six.
24   Q.   Okay. So you're somewhat
25   familiar with the process?

**Page 9**

1                 B. MIRKIN
2    A.   Somewhat.
3    Q.   Okay. But you've never given
4    your deposition in a civil case?
5    A.   No, never.
6    Q.   Okay. I'll go over some basic
7    rules, just to be sure we're all on the
8    same page for today.
9        You understand your testimony is
10   being provided under oath --
11   A.   Yes.
12   Q.   -- with the same sort of weight
13   and consequences as if you were in a
14   courtroom in front of a judge and a jury,
15   correct?
16   A.   Yes.
17   Q.   Okay. And you are doing a good
18   job at giving verbal responses so far to
19   my questions, which is, of course,
20   important so our court reporter can take
21   it down. So please keep that up. Okay?
22   A.   Okay.
23   Q.   You're also doing a good job of
24   letting me finish my questions, even if
25   I'm fumbling with it. Or if you're

3 (Pages 6 - 9)

**Page 18**

```
1        B. MIRKIN
2    A.  Always in Brooklyn.
3    Q.  Your current address is 1677
4  East 34th Street?
5    A.  Yes, it is.
6    Q.  How long have you lived at that
7  address?
8    A.  12 years.
9    Q.  And you and your wife own that
10 property, correct?
11   A.  I own it, because I bought the
12 house before I got married.
13   Q.  Understood.
14   A.  So, technically, it's on me.
15   Q.  Understood.
16       And have you ever owned any
17 other properties?
18   A.  No.
19   Q.  Have you ever -- during the time
20 that you've lived on 34th Street, have you
21 also rented any additional properties?
22   A.  No.
23   Q.  Let me -- may I see the
24 documents that you have there?
25   A.  Yes.  (Handing).
```

**Page 19**

```
1        B. MIRKIN
2    Q.  Thank you.  Do we have -- oh,
3  there we go.  Thank you.
4        Okay.  I'm going to hand you
5  back that stack, and at the top is
6  Exhibit 4, what was previously marked as
7  Exhibit 4.
8    A.  Okay.
9    Q.  Have you seen this document
10 before?
11   A.  Yes.
12   Q.  This is a new customer
13 enrollment for natural gas, with a
14 February 2013 date.  It's an e-mail.
15       Do you see that?
16   A.  Yes.
17   Q.  The Boris Mirkin that's listed
18 on here is not you, correct?
19   A.  It's not me.
20   Q.  Okay.  Is that a relative?
21   A.  Distant relative.
22   Q.  Distant relative.  Okay.
23       But this is never an address
24 you've lived at --
25   A.  No.  It's not me.  I never lived
```

**Page 20**

```
1        B. MIRKIN
2  on Staten Island.
3    Q.  Got it.
4        And you've never had natural gas
5  service from XOOM?
6    A.  No, never.
7    Q.  Okay.  Is it fair to say that
8  with respect to decisions about energy
9  supply in your household that -- that
10 you're in charge of that?
11   A.  Yes.
12   Q.  Okay.  You're the one who
13 primarily is responsible for shopping and
14 comparing rates?
15   A.  Yes.  Correct.
16   Q.  Okay.  And you may consult with
17 your wife before enrolling in a new plan,
18 but it's mostly something that you handle,
19 in terms of the selection of the company,
20 right?
21   A.  Yes.
22   Q.  And in terms of reviewing and
23 paying bills, that's something that is --
24 primarily what you take care of as well,
25 right?
```

**Page 21**

```
1        B. MIRKIN
2    A.  Yes.  Correct.
3    Q.  Who is your current electricity
4  supplier?  It's Con Ed?
5    A.  Con Edison, yes.
6    Q.  And it has been since 2016?
7    A.  I need to -- can I look --
8    Q.  Yes, sir.  There's a document --
9  you've got it in your hand there,
10 Exhibit 1.  And it shows a --
11   A.  2016, it looks like.
12   Q.  That document that you have in
13 your hand, Exhibit 1, is a Con Edison
14 document, or it has Con Edison's logo at
15 the top.  And it shows a list of ESCOs on
16 the right-hand side.
17       Do you see that?
18   A.  Yes.
19   Q.  And you have had service
20 agreements with each of those ESCOs for
21 electricity service?
22   A.  Yes.  Correct.
23   Q.  Have you ever had any contracts
24 for electricity supply from any other
25 ESCOs?
```

6 (Pages 18 - 21)

**Page 22**

```
1            B. MIRKIN
2     A.   Only those listed.
3     Q.   Only -- only the five listed?
4     A.   Only this, yes.  Five.
5          MR. WITTELS:  For electricity,
6     correct.
7     A.   Only this, yes.
8     Q.   Yes, sir.
9          So what it shows -- you seemed a
10    little bit confused by my last question.
11    Maybe not.  But what I meant was, in the
12    ESCO column, it lists, over time, in the
13    order in which you contracted with these
14    companies:  Energy Plus, Citizens
15    Choice --
16    A.   Yes.
17    Q.   -- XOOM, Viridian, and Reliant?
18    A.   Correct.
19    Q.   To the best of your knowledge,
20    those are the only five ESCOs that you've
21    ever contracted with for electricity
22    supply?
23    A.   Correct.  Yes.
24    Q.   Have you ever contracted with an
25    ESCO for natural gas supply?
```

**Page 23**

```
1            B. MIRKIN
2     A.   Yes, I also did.
3     Q.   Okay.  What ESCO was that?
4     A.   That was Citizens Choice.  There
5     were two.  One was Citizens Choice.  The
6     other one, I don't remember.
7     Q.   That's okay.  I'm just trying to
8     get your best testimony on things today.
9     If there's certain things you don't
10    remember or you don't know, that's
11    perfectly fine.
12         With respect to Citizens Choice
13    electricity service, the document that's
14    Exhibit 1 indicates that you had
15    electricity supply from Citizens Choice
16    from September of 2012 into January of
17    2013.
18         Do you see that?
19    A.   Yes, I see that.
20    Q.   And would that have been the
21    same period of time that you had natural
22    gas service with Citizens Choice,
23    roundabout?
24    A.   Not necessarily.  I don't
25    remember.  It was years ago.  Not
```

**Page 24**

```
1            B. MIRKIN
2     necessarily the same time period.  I don't
3     remember.
4     Q.   That's fine.
5          And you don't remember if it was
6     earlier or later?
7     A.   I don't remember.
8     Q.   Okay.  Your current supplier for
9     natural gas is National Grid?
10    A.   National Grid, yes.
11    Q.   Okay.  And it has been for many
12    years?
13    A.   National Grid?  Last time I used
14    an ESCO was early this year.
15    Q.   For natural gas?
16    A.   For natural gas, yes.
17    Q.   And which ESCO was that?
18    A.   I don't remember.
19    Q.   It's okay.
20    A.   All I remember is I switched
21    back to National Grid early this year.
22    Q.   Okay.
23    A.   I completely forgot the name.
24    There's so many names, so many companies.
25    Q.   That's okay.
```

**Page 25**

```
1            B. MIRKIN
2          Well, let's talk about XOOM --
3     A.   Yes.
4     Q.   -- which is the one we're here
5     to talk about today.
6          How did you first hear about
7     XOOM?
8     A.   I was shopping around for better
9     rates.  There were multiple ESCOs
10    available, and they had different offers.
11    And I found XOOM.  It seemed that their
12    rate was better than previous ESCO rates,
13    so I switched to XOOM.
14    Q.   Okay.  And you -- that shopping
15    and those comparisons that you were doing
16    were by comparing the rate that XOOM was
17    offering to your current -- your rate --
18    then current rate with Citizens Choice?
19    That was one part of it, right?
20    A.   Correct.
21    Q.   And the other part was to
22    compare the rates that were being offered
23    by other ESCOs, which you reviewed online?
24    A.   Correct.  Yes.
25    Q.   Did you speak with anyone on the
```

7 (Pages 22 - 25)

### Page 26

```
 1        B. MIRKIN
 2  telephone or in person with XOOM?
 3     A.   I believe I spoke to somebody,
 4  yes, to switch.  Yes, I spoke to somebody.
 5  I don't remember if in person or by phone,
 6  but I spoke to somebody.
 7     Q.   Okay.  Would it have been after
 8  you enrolled, there was a telephone call
 9  to confirm the details of your enrollment?
10          MR. WITTELS:  Objection.
11     Q.   Does that sound familiar?
12          MR. WITTELS:  Objection to form.
13          You can answer.
14     A.   That was, in order to switch to
15  XOOM, I spoke to somebody.
16     Q.   Okay.  I think we're saying the
17  same thing.  You went online and enrolled,
18  and then you spoke to someone with XOOM?
19     A.   I believe so, yes.
20     Q.   Okay.  When you enrolled with
21  XOOM -- let me hand you what I'm going to
22  mark as Exhibit 6 to your deposition.
23          [Whereupon, document was marked
24      as Defendants' Exhibit 6 for
25      identification, as of this date.]
```

### Page 27

```
 1        B. MIRKIN
 2     Q.   Do you remember receiving an
 3  e-mail -- this e-mail from XOOM?
 4     A.   Yes.  This is my e-mail.
 5     Q.   The e-mail address that's listed
 6  there under the billing info is your
 7  e-mail address?
 8     A.   It's mine, yes.
 9     Q.   Is that your phone number
10  as well?
11     A.   And my phone number, yes.
12     Q.   Okay.  The account was opened in
13  your wife's name?
14     A.   Correct.  Yes.
15     Q.   And why was that?
16     A.   At the time, she needed proof of
17  residence.
18     Q.   Got it.
19          At the time you enrolled with
20  XOOM, did you understand that your rate
21  would be a rate that could vary from month
22  to month?
23     A.   Yes.  The contract said so.
24     Q.   And if you look with me at
25  Exhibit 5 -- it's in the stack that you
```

### Page 28

```
 1        B. MIRKIN
 2  have in front of you.
 3     A.   Yes.
 4     Q.   Does Exhibit 5 appear to be the
 5  terms and conditions that you received
 6  from XOOM governing your electricity
 7  service?
 8     A.   Yes.
 9     Q.   And you're not contending in the
10  lawsuit that there's any other contract at
11  issue between you and XOOM, right?
12          MR. WITTELS:  Objection.
13     Q.   You can answer.
14          MR. WITTELS:  Do you understand
15      the question?
16     A.   That's the only contract?
17     Q.   That's what I'm getting at.
18  This is my only chance to talk to you, so
19  some of the questions -- I just -- you and
20  I have never spoken before, and I'm trying
21  to be sure I understand what your
22  contentions are in this lawsuit.  I think
23  I do, but sometimes I may just need to
24  confirm them.
25          So that's what I'm getting at.
```

### Page 29

```
 1        B. MIRKIN
 2  This Exhibit 5 is the only contract that
 3  you have had with XOOM, correct?
 4          MR. WITTELS:  Objection.
 5     A.   As far as I know, this is the
 6  only contract.
 7     Q.   Okay.  And in this case, you're
 8  alleging that XOOM breached this contract,
 9  right?
10     A.   Yes, I do.
11     Q.   Okay.  You're not alleging that
12  XOOM -- that a salesperson on the phone
13  lied to you about something, right?
14          MR. WITTELS:  Objection.
15          You can answer.
16          THE WITNESS:  I can answer?
17     A.   No, I'm not blaming any
18  salesperson.
19     Q.   Okay.  And you're not alleging
20  that there are any marketing materials
21  that were on the website or otherwise
22  shown to you that deceived you about
23  XOOM's rates?
24          MR. WITTELS:  Objection.
25          THE WITNESS:  I can still
```

8 (Pages 26 - 29)

```
1         B. MIRKIN
2   answer?
3   Q.   Yes.
4         MR. WITTELS:  Yeah, if you
5   remember.
6   A.   What was the question?
7         MR. MATTHEWS:  Could you read it
8   back for him?
9         [Whereupon, a portion of the
10  testimony was read back.]
11        MR. MATTHEWS:  Let me just ask
12  it again.
13  Q.   You're not alleging that XOOM
14  misrepresented anything to you in
15  marketing materials or on its website,
16  right?
17        MR. WITTELS:  Objection.
18        THE WITNESS:  I don't have to
19  answer?
20        MR. WITTELS:  No, you have to
21  answer.
22  A.   I'm only alleging that the
23  contract says that the cost or the rate
24  will be based on XOOM's actual and
25  estimated supply costs.  And that was not
                                    Page 30
```

```
1         B. MIRKIN
2   the case.
3   Q.   That's all I'm getting at.  I'm
4   not trying to trick you.  I just -- if we
5   go to trial, I don't want to show up and
6   you say, and then a door-to-door salesman
7   showed up and lied to me about this.
8   That's what I'm trying to figure out.
9         So your claim in this case is
10  about an alleged breach of the terms and
11  conditions that are Exhibit 5 to -- what
12  you have in front you, right?
13        MR. WITTELS:  Object to the form
14  of that question.
15        But you can answer it.
16        I mean, it's not a statement,
17  not a question.
18  A.   Yeah, I allege that the contract
19  wasn't followed properly or correct.
20  Q.   You're not alleging any sort of
21  verbal misrepresentations to you, though,
22  right?
23        MR. WITTELS:  Objection.
24  A.   Correct.  I don't.
25  Q.   Okay.  Great.
                                    Page 31
```

```
1         B. MIRKIN
2         The contract that you have in
3   front of you, Exhibit 5, it does not
4   contain a promise from XOOM that your
5   variable rates would beat the utility
6   rate, right?
7         MR. WITTELS:  Objection.
8         THE WITNESS:  Do I still have to
9   answer?
10        MR. WITTELS:  Yeah.  Unless I
11  tell you not to, you have to answer.
12  A.   It doesn't have any promise.  It
13  just -- it does say the rate will be based
14  on actual and estimated supply.  And I
15  understand that the word "based" -- "based
16  on" is synonymous to a promise.
17  Q.   Right.  But I'm asking a
18  different question, which is, the contract
19  didn't say, We promise that your rate will
20  be better than the utility rate --
21        MR. WITTELS:  Objection.
22  Q.   -- right?
23        MR. WITTELS:  Objection.
24  A.   As far as I understand, correct.
25  Yes.
                                    Page 32
```

```
1         B. MIRKIN
2   Q.   Okay.  And it didn't say that
3   the variable rate would be equal to or
4   better than rates charged by other ESCOs,
5   right?
6         MR. WITTELS:  Objection.  The
7   contract speaks for -- well, I don't
8   understand.  Double negatives.
9         Go ahead.  You can answer.
10  A.   Before switching to XOOM, I
11  compared rates.  So I switched for a
12  reason.  The rate that was promised was
13  lower than the previous ESCO.
14  Q.   The initial rate was?
15  A.   The initial rate was, yes.
16  Q.   But the contract doesn't promise
17  that the subsequent months' rates will be
18  better than other ESCO rates, right?
19        MR. WITTELS:  Objection.
20        THE WITNESS:  I should --
21        MR. WITTELS:  Yeah, it's a
22  follow-up.
23  A.   Right.
24  Q.   Okay.  The contract, as you
25  said, states that XOOM's monthly variable
                                    Page 33
```

```
1        B. MIRKIN
2   Q.  Or, well, it's -- you know that
3   an ESCO is not the same thing as the
4   utility, right?
5   A.  It didn't matter to me.  All
6   that matters is what rates I would get.
7   Private or semiprivate don't make a
8   difference.
9   Q.  Right.  But do you have an
10  understanding about how the utilities
11  rates are set?
12  A.  Not really.
13  Q.  Okay.
14  A.  No.
15  Q.  You were able to cancel the XOOM
16  contract at any time, right?
17  A.  If I wanted, I would be able to,
18  yes.
19  Q.  Without penalty?
20  A.  There would be no penalty, yes.
21  Q.  You did switch from XOOM to
22  Viridian in October of 2013, right?
23  A.  Yes, I did.
24  Q.  And why did you switch from XOOM
25  to Viridian?
                                    Page 38
```

```
1        B. MIRKIN
2   A.  After being a XOOM customer for
3   a while, I shopped around again for better
4   rates.  I wasn't too happy with XOOM's
5   rates, so I found another ESCO that
6   offered me a better price.
7   Q.  Right.
8       How did that go?
9   A.  I switched to Viridian, and I
10  used that ESCO for a while.  And I shopped
11  around again, and I switched again.
12  Q.  You ended up suing Viridian in a
13  putative class action like this, based on
14  its variable rates, right?
15  A.  Yes.
16  Q.  Okay.  Let's see.
17      Why did you decide to sue
18  Viridian?
19  A.  Their rates seemed to be not
20  competitive, so I got in touch with
21  attorneys.  And they advised me that I
22  could have a case, and I could represent
23  others also.
24  Q.  Got it.
25      And that was Mr. Wittels' firm
                                    Page 39
```

```
1        B. MIRKIN
2   and Daniel --
3   A.  Daniel Hymowitz.
4   Q.  -- Hymowitz?
5   A.  Yes.
6   Q.  To your knowledge, do you have
7   agreements with any other attorneys
8   related to this lawsuit against XOOM?
9   A.  No.  Same attorneys.
10  Q.  Got it.
11      You understand in this lawsuit
12  you're seeking to represent a class of
13  other XOOM customers?
14  A.  Yes, I am.  I know.
15  Q.  And you understand that as the
16  named plaintiff, you have a duty to
17  represent their interests as well as
18  yours, right?
19  A.  That's correct.  Yes.
20  Q.  And you understand that in
21  connection with doing that, you may have
22  to attend the trial, right?
23  A.  Yes.
24  Q.  And you don't have a problem
25  with that?
                                    Page 40
```

```
1        B. MIRKIN
2   A.  No problem.
3   Q.  And you understand that at the
4   end of the day, you may not be compensated
5   more than any of the other class members,
6   right?
7   A.  I understand that.
8   Q.  And you're willing to help your
9   attorneys through the end, regardless?
10  A.  Yes.  Correct.
11  Q.  Okay.  Mr. Mirkin, aside from
12  the lawsuit against XOOM and the lawsuit
13  against Viridian, what other lawsuits have
14  you been a party to?
15  A.  I had -- years ago, I had an
16  eviction case.
17  Q.  In that case, were you seeking
18  to evict someone, or were you being
19  evicted?
20  A.  I evicted somebody.
21  Q.  Okay.
22  A.  And I think I had another case,
23  just years ago, I may not have.
24  Q.  Okay.  The eviction proceeding,
25  you owned another property at some time?
                                    Page 41
```

## Page 42

```
 1        B. MIRKIN
 2   A.   It was a co-op apartment.
 3   Q.   Okay.  What was the address for
 4  that apartment?
 5   A.   The address was 1620 Avenue I,
 6  in Brooklyn.
 7   Q.   Thank you.
 8        Any other lawsuits that you
 9  recall?
10   A.   I think there was another one.
11  I just don't remember.  It wasn't
12  recently.  I don't remember.
13        [Whereupon, testimony continues
14  in confidential transcript.]
```

## Page 48

```
 1        B. MIRKIN
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12        [Whereupon, a short break was
13   taken.]
14        THE VIDEOGRAPHER:  We're back on
15   the record at 2:19 p.m.
16   Q.   Mr. Mirkin, you told me you
17  personally have never been a XOOM natural
18  gas customer, right?
19   A.   Correct.
20   Q.   Okay.  And you don't have any
21  personal knowledge about the variable
22  rates that XOOM charged natural gas
23  customers in New York, right?
24   A.   Correct.
25   Q.   Okay.
```

## Page 49

```
 1
 2        MR. MATTHEWS:  Subject to
 3   additional questions that were not
 4   permitted today, I will pass the
 5   witness.
 6        And I appreciate your time.
 7        THE WITNESS:  Okay.
 8        MR. WITTELS:  No questions,
 9   which is very rare for me.
10        MR. MATTHEWS:  Okay.  Thank you.
11        THE VIDEOGRAPHER:  We are off
12   the record at 2:20 p.m.  And this
13   concludes today's testimony given by
14   Boris Mirkin.
15
16        [TIME NOTED:  2:19 p.m.]
17
             _____
18             BORIS MIRKIN
19          _____
         SUBSCRIBED AND SWORN TO
20      BEFORE ME THIS _____
         DAY OF _____, 2022.
21
         _____
22        NOTARY PUBLIC
```

## Page 50

```
 1
 2           I N D E X
 3
      WITNESS      EXAMINATION BY     PAGE
 4
 5  BORIS MIRKIN    MATT MATTHEWS       7
 6
             E X H I B I T S
 7
 8  PLAINTIFF'S    DESCRIPTION       PAGE
 9  EXHIBIT 6 -   E-MAIL FROM XOOM    26
```

```
 1
 2        CERTIFICATION
 3
 4    I, Samuel Hittin, a Notary Public for
 5  and within the State of New York, do
 6  hereby certify:
 7    That the witness whose testimony as
 8  herein set forth, was duly sworn by me;
 9  and that the within transcript is a true
10  record of the testimony given by said
11  witness.
12    I further certify that I am not
13  related to any of the parties to this
14  action by blood or marriage, and that I am
15  in no way interested in the outcome of
16  this matter.
17    IN WITNESS WHEREOF, I have hereunto
18  set my hand this 6th day of September,
19  2022.
20
21
22     SAMUEL HITTIN
23
24      *   *   *
25
```

Page 51

```
 1
 2        ERRATA SHEET
        VERITEXT/NEW YORK REPORTING, LLC
 3
    CASE NAME: SUSANNA MIRKIN AND BORIS
 4      MIRKIN, ET AL VS. XOOM ENERGY,
        LLC, ET AL
 5  DATE OF DEPOSITION: AUGUST 30, 2022
    WITNESS' NAME: BORIS MIRKIN
 6
    PAGE/LINE(S)/   CHANGE      REASON
 7  ____/____/_____/_____
    ____/____/_____/_____
 8  ____/____/_____/_____
    ____/____/_____/_____
 9  ____/____/_____/_____
    ____/____/_____/_____
10  ____/____/_____/_____
    ____/____/_____/_____
11  ____/____/_____/_____
    ____/____/_____/_____
12  ____/____/_____/_____
    ____/____/_____/_____
13  ____/____/_____/_____
    ____/____/_____/_____
14  ____/____/_____/_____
    ____/____/_____/_____
15  ____/____/_____/_____
    ____/____/_____/_____
16  ____/____/_____/_____
    ____/____/_____/_____
17  ____/____/_____/_____
    ____/____/_____/_____
18  ____/____/_____/_____
19  _____
20     BORIS MIRKIN
21  SUBSCRIBED AND SWORN TO
    BEFORE ME THIS_____ DAY
22  OF_____, 2022.
23  _____
       NOTARY PUBLIC
24
    MY COMMISSION EXPIRES_____
25
```

Page 52

13 (Pages 51 - 52)