# MDM Declaration Exhibit A-14

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF NEW YORK

3     SUSANNA MIRKIN and BORIS MIRKIN,

4     Individually and on Behalf of All Others

5     Similarly Situated,

6          Plaintiffs,

7       vs.                No. 18 Civ. 2949(ARR) (RER)

8     XOOM ENERGY, LLC and XOOM ENERGY

9     NEW YORK, LLC,

10         Defendants.

11    ------------------------------x

12

13

14              VIDEOTAPED DEPOSITION OF

15               SEABRON ADAMSON

16            Tuesday, November 8, 2022

17                 10:06 a.m.

18                  Veritext

19               101 Arch Street

20          Boston, Massachusetts 02110

21

22

23

24              Laurie K. Langer, RPR

                                        Page 1

APPEARANCES

1
2
3  ON BEHALF OF THE PLAINTIFF(s):
4   BY: Steven L. Wittels, Esq.
5    Ethan D. Roman, Esq. (appeared via Zoom.)
6    Steven D. Cohen, Esq. (appeared via Zoom.)
7     WITTELS MCINTURFF PALIKOVIC
8     18 Half Mile Road
9     Armonk, New York 10504
10    (914) 319-9945
11    slw@wittelslaw.com
12
13 ON BEHALF OF THE DEFENDANT(s):
14   BY: Michael D. "Matt" Matthews, Jr., Esq.
15    MCDOWELL HETHERINGTON LLP
16    1001 Fannin Street, Suite 2700
17    Houston, Texas 77002
18    (713) 337-5580
19    matt.matthews@mhllp.com
20
21 ALSO PRESENT:
22   David C. Coleman
23   Shawn Budd, Videographer
24

Page 2

INDEX OF EXAMINATION

1
2
3  WITNESS:  Seabron Adamson
4  EXAMINATION                    PAGE NO.
5  By Mr. Matthews                    5
6  By Mr. Wittels                    138
7
8       INDEX TO EXHIBITS
9  NO.      DESCRIPTION          PAGE NO.
10 Exhibit 1  Expert Report of Derya        8
11          Eryilmaz and Seabron Adamson
12 Exhibit 2  Electricity Sales Agreement    12
13 Exhibit 3  Expert Report of David C.     47
14          Coleman
15 Exhibit 4  Rebuttal Report of David C.    48
16          Coleman
17 Exhibit 5  First Amended Class Action    113
18          Complaint
19 Exhibit 6  Market Supply Cost Build Up   114
20
21 (Original exhibits attached to original transcript)
22
23
24

Page 3

P R O C E E D I N G S

1
2
3       VIDEOGRAPHER:  Okay.  We are on the record.
4  This is the videographer speaking Shawn Budd with
5  Veritext Legal Solutions.  Today's date is November 8th,
6  2022 and the time is 10:06 a.m.
7       We are here in Boston, Massachusetts to take
8  the video deposition of Seabron Adamson in the matter of
9  Susanna Mirkin, et al, versus XOOM-Energy in New York,
10 LLC.
11      Will counsel please introduce themselves for
12 the record.
13      MR. WITTELS:  Steven Wittels.  Wittels
14 McInturff and Palikovic for the Plaintiffs and the
15 proposed class on behalf of the witness today,
16 Mr. Adamson.
17      Appearing by video are also for the
18 Plaintiffs in the proposed class Steven Cohen and Ethan
19 Roman.
20      MR. MATTHEWS:  My name is Matt Matthews, I'm
21 with the law firm of McDowell Hetherington and I
22 represent the Defendants XOOM Energy.
23      Also with me here today is David Coleman of
24 the NorthBridge Group who is, has been designated as a

Page 4

1  testifying expert for XOOM.
2       VIDEOGRAPHER:  The court reporter today is
3  Laurie Langer.  Will you please swear in the witness.
4
5
6       SEABRON ADAMSON,
7  having been satisfactorily identified by the production
8  of his driver's license, and duly sworn by the Notary
9  Public, was examined and testified as follows:
10
11
12      EXAMINATION
13
14 BY MR. MATTHEWS:
15  Q.  Good morning, Mr. Adamson.  How are you?
16  A.  Good morning.
17  Q.  Thank you for being here today.  Before we jump
18 in, I'll quickly go over ground rules.  I know you've
19 been deposed before, --
20  A.  Uh-huh.
21  Q.  -- I'm sure you're familiar with them.  But this
22 is not meant to be any sort of endurance test, anytime
23 you need a break just let me know, we can take a break.
24      With, you know, the same qualification you always

Page 5

2 (Pages 2 - 5)

1  case real quick.  In that case you were not offering a
2  legal interpretation of what the contract language
3  meant; right?
4     A.  No, I would not have offered a legal
5  interpretation.
6     Q.  And your interpretation of XOOM's contract
7  language here is similarly constrained.  You -- in the
8  sense that you are not offering a legal interpretation
9  here, either?
10       MR. WITTELS:  Objection.
11    Q.  Right?
12    A.  Yeah, I'm not offering a legal opinion, I think
13  as we discussed, yes.
14    Q.  Not to any greater degree than you did in the
15  Richards case?
16    A.  No.  Just not offering a legal opinion.
17    Q.  Okay.  Look if you would at Exhibit 2, which is
18  the sales agreement.
19    A.  Yep.
20    Q.  And you directed me to -- we talked about the
21  key, the critical --
22    A.  Uh-huh.
23    Q.  -- rate setting provision earlier.  And then you
24  directed me to a couple of others that you looked at,

Page 102

1  one being the price section.
2     A.  Uh-huh.
3     Q.  Do you remember that?
4     A.  Yes.
5     Q.  And then -- I'm not sure where it appears, but
6  you also pointed me to a provision about delivery
7  charges; do you remember that?
8        MR. WITTELS:  What -- what's the question
9  here that you're asking him, Matt?  I mean, what are you
10  asking?
11    A.  Sorry.  Can you repeat.
12    Q.  So you -- when I asked you earlier about your
13  interpretation of this contract, or your review of
14  it, --
15    A.  Uh-huh.
16    Q.  -- let's say, you -- you mentioned the rate
17  setting provision that's at the top of the table; yes?
18    A.  Uh-huh.  Yes.
19    Q.  And you mentioned the price section at the bottom
20  of page 1; yes?
21    A.  Yes.
22    Q.  And then you also mentioned some provision
23  related to delivery charges.
24    A.  Well, delivery charges, like, utility delivery

Page 103

1  charges are also discussed at the rate setting --
2     Q.  Okay.
3     A.  -- thing, just if you read the last sentence.  I
4  think what I was pointing to, just to cut the -- was --
5  there were things that came up was, it's under the title
6  thing.  And it says, "delivered to a location considered
7  the point of delivery," you know, I was just commenting
8  that point of delivery obviously depends for a customer,
9  depending on what utility serves them in the state.
10    Q.  Okay.  Got it.  Do you see the provision right
11  above that, the agency provision?
12    A.  Uh-huh.
13    Q.  Do you see the last sentence of that section,
14  "these services are provided on an arm's length basis
15  and market-based compensation is included in the price
16  noted above."
17       Did I read that correctly?
18    A.  Yes.
19    Q.  What does that sentence mean to you?
20    A.  "These services are provided on an arm's length
21  basis and market-based compensation is included in the
22  price noted above."  Well, where it says they have
23  energy, they have transportation, those of the LDU, the
24  transmission facilities and LDU have compensation that's

Page 104

1  market based.
2     Q.  Okay.  Do -- do you have any opinion about what
3  the price noted above refers to?
4     A.  In the -- in the price noted above and the price
5  related to the arranging for and contracting
6  transportation, that's one possibility.  No, I don't
7  have an express opinion about that.
8     Q.  Okay.  Fair enough.  So this agency section in
9  that sentence specifically are not something that you
10  considered in connection with your evaluation of whether
11  or not XOOM set its rates consistent with the terms of
12  the sales agreement?
13    A.  No.  This seems to be referencing to
14  you -- they're specifically allowed to buy the energy
15  and arrange it through the transmission and LDU systems.
16    Q.  Okay.  So it was --
17    A.  Which is not -- which is not, I don't think, very
18  controversial.
19    Q.  So that -- that market-based compensation was not
20  factored into your damage calculations either; right?
21    A.  No, because I focused on supply costs.  This I
22  kind of take as being, these services are provided on an
23  arm's length basis, marketplace compensation.
24    Q.  Okay.  Let's talk about Mr. Coleman's correlation

Page 105

27 (Pages 102 - 105)

1  their retail business.
2  Q.  Okay.  Well, I guess --
3  A.  For example, a bunch of the Texas companies have
4  retail supply businesses.  We did a little bit on that,
5  but not a major thing.  But a bunch of the Texas
6  companies had retail supply businesses that also had
7  substantial other businesses.
8  Q.  I think I understand what you're saying.  And you
9  didn't work for the retail side of their businesses, you
10  worked for the other side of their businesses?
11  A.  Or sometimes we would be hired on some kind of
12  corporate strategy type engagement, which might be
13  pretty broad.
14  Q.  Got it.  Okay.  I thank you for your time and
15  your patience with me.
16  MR. MATTHEWS:  I'll pass the witness.
17  A.  Thank you.
18  Q.  Yes, sir.
19
20         EXAMINATION
21
22  BY MR. WITTELS:
23  Q.  Mr. Adamson, I just really have one question for
24  you.  You were asked by counsel for XOOM about whether

Page 138

1  the company was able to make any profits on its fixed
2  rate customers; do you remember that question?
3  A.  Yeah.  Not in exact wording, but I remember the
4  question.
5  Q.  Yeah.  And did you ask me to, whether you could
6  go back and review your report when we had a break?
7  A.  Yeah, well -- yes, we were discussing the report.
8  Q.  And did you reread paragraph 57?
9  A.  Yes.
10  Q.  And does that answer the question of whether XOOM
11  made money and was profitable on its fixed rate
12  customers?
13  MR. MATTHEWS:  Objection.  Leading.
14  A.  Well, I just -- it just reminded me there was
15  a -- I had said that there was not a specific P&L, this
16  was a reference in the report to deposition testimony
17  from a XOOM witness about the profitability of this.
18  Q.  And what did your report find and state?
19  A.  I don't remember exactly how he worded it.  I
20  think there had been a, in the deposition there was a
21  question about, it was around, I don't have the
22  transcript in front of me, of course, of the deposition,
23  but it was something around the line of were -- were a
24  fixed rate -- were fixed rate customers profitable for

Page 139

1  XOOM or some broad question.
2  Q.  And the answer was?
3  A.  I believe he said yes, they were, they were both
4  profitable.  Both fixed rate and variable rate were
5  profitable.
6  Q.  Okay.  I have no further questions at this time.
7  Thanks.
8  MR. MATTHEWS:  Thanks very much.
9  A.  Thank you.
10  VIDEOGRAPHER:  The time is 2:39, we are off
11  the record.
12  COURT REPORTER:  And, Mr. Matthews, your
13  order?
14  MR. MATTHEWS:  My order is an expedited
15  transcript, just, I don't need any print copies.
16  Electronic only.  PDF exhibits.
17  COURT REPORTER:  Expedite by Friday?
18  MR. MATTHEWS:  Yes.
19  (Whereupon, the deposition concluded at
20  approximately 2:39 p.m.)
21
22
23
24

Page 140

CERTIFICATE

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, ss.

I, Laurie Langer, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am neither related to or employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

In witness whereof, I have hereunto set my hand and seal this 11th day of November, 2022.

NOTARY PUBLIC
Commission Expires
7/27/2023

Page 141

36 (Pages 138 - 141)

DEPOSITION ERRATA SHEET

1

2

3  Our Assignment No:  5544017

4  Case Caption:  Mirkin vs. XOOM Energy

5

6      DECLARATION UNDER PENALTY OF PERJURY

7      I declare under penalty of perjury that I have

8  read the entire transcript of my Deposition taken in the

9  captioned matter or the same has been read to me, and

10  the same is true and accurate, save and except for

11  changes and/or corrections, if any, as indicated by me

12  on the DEPOSITION ERRATA SHEET hereof, with the

13  understanding that I offer these changes as if still

14  under oath.

15      Signed on the_____day of_____2022

16

17  _____

18      SEABRON ADAMSON

19

20

21

22

23

24  Job No. HOU5544017

Page 142

---

1  Steven L. Wittels, Esq.

2  slw@wittelslaw.com

3          November 11, 2022

4  RE:   Mirkin, Susanna Et. Al. v. XOOM Energy, LLC And XOOM
   Energy New York, LLC

5  11/8/2022, Seabron Adamson (#5544017)

6      The above-referenced transcript is available for

7  review.

8      Within the applicable timeframe, the witness should

9  read the testimony to verify its accuracy. If there are

10  any changes, the witness should note those with the

11  reason, on the attached Errata Sheet.

12      The witness should sign the Acknowledgment of

13  Deponent and Errata and return to the deposing attorney.

14  Copies should be sent to all counsel, and to Veritext at

15  errata-tx@veritext.com.

16

17  Return completed errata within 30 days from

18  receipt of testimony.

19      If the witness fails to do so within the time

20  alloted, the transcript may be used as if signed.

21

22      Yours,

23      Veritext Legal Solutions

24

25

Page 144

---

1      DEPOSITION ERRATA SHEET

   Job No. HOU5544017

2  Page No.____ Line No. _____ Change to:_____

3  _____

4  Reason for change: _____

5  Page No.____ Line No. _____ Change to:_____

6  _____

7  Reason for change: _____

8  Page No.____ Line No. _____ Change to:_____

9  _____

10  Reason for change: _____

11  Page No.____ Line No. _____ Change to:_____

12  _____

13  Reason for change: _____

14  Page No.____ Line No. _____ Change to:_____

15  _____

16  Reason for change: _____

17  Page No.____ Line No. _____ Change to:_____

18  _____

19  Reason for change: _____

20  Page No.____ Line No. _____ Change to:_____

21  _____

22  Reason for change: _____

23  SIGNATURE:_____DATE:_____

24      SEABRON ADAMSON

Page 143

37 (Pages 142 - 144)