# Exhibit 45

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF NEW YORK
 3    SUSANNA MIRKIN and BORIS MIRKIN,
 4    Individually and on Behalf of All Others
 5    Similarly Situated,
 6           Plaintiffs,
 7       vs.                        No. 18 Civ. 2949(ARR) (RER)
 8    XOOM ENERGY, LLC and XOOM ENERGY
 9    NEW YORK, LLC,
10           Defendants.
11    --------------------------------x
12
13
14              VIDEOTAPED DEPOSITION OF
15                 SEABRON ADAMSON
16              Tuesday, November 8, 2022
17                   10:06 a.m.
18                    Veritext
19                101 Arch Street
20           Boston, Massachusetts 02110
21
22
23
24              Laurie K. Langer, RPR
```

Page 1

1   rate tied to the actual and estimated supply costs.
2         You know, when I buy a car from Ford I don't know
3   what Ford is making money off of it or not.  I say
4   they're selling me a car.  Right?  So, I mean, I think
5   people would probably think, yeah, companies are in
6   business to sell products, sometimes profitably,
7   sometimes not.  But, you know, the kind of on its face
8   provision says "supply costs."
9      Q.  Does -- to you does that mean to the exclusion of
10  all other considerations?
11        MR. WITTELS:  Objection.
12     A.  I'm not sure I understand your question.
13     Q.  Is it your opinion that the sales agreement, the
14  rate setting provision that we've been looking at
15  specifically, requires XOOM to consider its actual and
16  estimated supply costs when setting rates?
17        MR. WITTELS:  Objection.
18     A.  The contract says that the rate, we've read this,
19  is based on, I don't know what importance you're giving
20  to consideration.  It says it has to be based on the
21  actual and estimated supply costs.  What that says to me
22  is what's in the rate ought to be very closely tied to
23  supply costs and not include a lot of things that are
24  not related to supply costs.

Page 24

```
 1    speaking?
 2        A.   Almost 14 percent, I mean, it's not immaterial.
 3        Q.   Okay.
 4        A.   I don't know, I didn't write the word "generous."
 5        Q.   Those aren't your words?
 6        A.   No.
 7        Q.   Okay.  Do you recall the graph in Mr. Coleman's
 8    rebuttal report that shows gross margin for certain
 9    companies in the Dow Jones?
10        A.   Oh, the thing at the back?
11        Q.   Yes.
12        A.   Yes.  Is it possible we can flip to that?
13        Q.   Yes.
14        A.   Tell me what page it is.  Sorry.
15        Q.   It's at page 13.
16        A.   Oh, okay.
17        Q.   Yes?
18        A.   Okay.
19        Q.   Do you have an opinion about which of these are
20    unreasonable gross margins, if any?
21        A.   I mean, I --
22             MR. WITTELS:  Object.  Objection.
23        A.   I mean, as I understand it these are a summary of
24    things he got from Yahoo; right?  So these are
```

Page 121

1    historical numbers; correct?
2         I mean, I interpreted his as being a summary of
3    historical data.
4       Q.  I'm not sure, why are you referring to Yahoo?
5       A.  In Footnote 28.
6       Q.  I see.  From finance.yahoo.com?
7       A.  Yahoo.com is the website.
8       Q.  Yep.
9       A.  So I -- I interpreted this and, as a, a chart of
10   historical data for these other companies.
11      Q.  Right.  But the --
12      A.  I mean, that's how I interpreted it.  I hope I'm
13   right.
14      Q.  Yeah, you're right.
15          The gross -- the reported gross margins for these
16   companies that are part of the Dow Jones Industrial
17   Average; right?
18              MR. WITTELS:  Objection.
19      A.  That's what I took this data to be, as reported
20   historical data, yes.
21      Q.  Okay.  And my question is which of these gross
22   margins, if any, do you believe are unreasonable?
23              MR. WITTELS:  Objection.
24      A.  I didn't -- I haven't expressed any opinion on

Page 122

1    that.  I haven't looked at any of these companies and I
2    did -- this is -- they would have to account for what
3    those businesses are and what, like, contracts they
4    have, or sign.  I mean, these are -- I guess, Chevron is
5    at least an energy company.  I mean, most of these are
6    software companies, or J&J, or Salesforce.  I mean,
7    they're completely different businesses.  I don't -- I'm
8    not quite sure I understand the relevance, but.  I never
9    expressed any opinion about these data, which I assume
10   he has historical data.
11       Q.  And I guess is your answer it depends on the
12   business and the contracts whether or not a margin is
13   reasonable?
14       A.  To what extent the -- if there is to be a margin
15   is the margin charged under a contract would have to
16   refer to the contract.  I take these to be gross margins
17   reported for generally very large corporations which are
18   mixtures of businesses, contracts, in entirely different
19   business.
20           So, for example, Amgen, which I believe is a
21   biotech company, without knowing a huge amount about it.
22   I mean, that's a very different industry with huge R&D
23   costs.  Clearly the, the margins for an R&D oriented
24   company are going to be very different than for an ESCO.

Page 123

```
 1                         CERTIFICATE
 2

 3     COMMONWEALTH OF MASSACHUSETTS
 4     SUFFOLK, ss.
 5

 6        I, Laurie Langer, Registered Professional Reporter
       and Notary Public in and for the Commonwealth of
 7     Massachusetts, do hereby certify that the witness whose
       deposition is hereinbefore set forth, was duly sworn by
 8     me and that such deposition is a true record of the
       testimony given by the witness.
 9

10

          I further certify that I am neither related to or
11     employed by any of the parties in or counsel to this
       action, nor am I financially interested in the outcome
12     of this action.
13

          In witness whereof, I have hereunto set my hand and
14     seal this 11th day of November, 2022.
15

16

17

18                       NOTARY PUBLIC
                         Commission Expires
19                       7/27/2023
20

21

22

23

24

                                                     Page 141
```

Veritext Legal Solutions
346-293-7000