# Exhibit 46

```
                                        Volume I
                                        Pages 1 to 102
                                        Exhibits None
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x
                                  :
SUSANNA MIRKIN and BORIS          :
MIRKIN, Individually and on       :
Behalf of All Others              :
Similarly Situated,               :   Civil Action
          Plaintiffs,             :   No. 18 Civ. 2949
                                  :   (ARR)(RER)
     vs.                          :
                                  :
XOOM ENERGY, LLC; and XOOM        :
ENERGY NEW YORK, LLC,             :
          Defendants.             :
- - - - - - - - - - - - - - - - -x
```

VIDEOTAPED DEPOSITION OF DERYA ERYILMAZ, Ph.D., a witness called by the Defendant, taken pursuant to the Federal Rules of Civil Procedure, before Alexander K. Loos, Registered Diplomate Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Veritext Legal Solutions, 101 Arch Street, Suite 650, Boston, Massachusetts, on Tuesday, November 15, 2022, commencing at 10:25 a.m.

PRESENT:
    Wittels McInturff Palikovic
        (By Steven L. Wittels, Esq.; Steven D. Cohen, Esq. (Via videoconference); and Ethan D. Roman, Esq. (Via videoconference))
        E-mail:  Slw@wittelslaw.com
                Sdc@wittelslaw.com
                Edr@wittelslaw.com
        18 Half Mile Road
        Armonk, NY 10504
        914.775.8862
        for the Plaintiffs.

Page 1

1  Q.  Okay.  Are you offering any personal
2  interpretation of how the pricing terms of the sales
3  agreement -- let me rephrase it.
4      You're not offering a legal interpretation
5  of the sales agreement, right?
6  A.  No.
7  Q.  Okay.  Are you offering any opinion about
8  how the pricing terms of the sales agreement should
9  be interpreted?
10 A.  I guess as an energy economist, this -- you
11 know, there are terms in the -- in this contract
12 that only people who work a long time in the energy
13 industry -- like actual and estimated supply costs,
14 for example, is an industry-specific term.
15     So I am reading this as the contract says.
16 You know, based on actual and estimated supply
17 costs.
18     So my interpretation of that is the rates
19 should be according to this language.  And I guess I
20 know what it means to be looking at the supply cost,
21 and that's what I'm understanding.
22 Q.  Okay.  Are you offering an opinion about
23 what "based on" XOOM's actual and estimated supply
24 costs means?

Page 34

```
 1        Q.   Uh-huh.
 2        A.   Then we came up with an alternative method
 3   to show what the overcharges would look like if
 4   there was a margin considered.
 5        Q.   Uh-huh.
 6        A.   So that's the approach that we presented in
 7   method two.
 8        Q.   Uh-huh.
 9             But you believe, looking back at Exhibit 2,
10   the contract terms --
11        A.   Yes.
12        Q.   -- that an average customer would read the
13   pricing provision that's listed in the box at the
14   top of the document?
15        A.   Uh-huh.
16       *Q.   And would conclude that they are going to
17   get electricity from XOOM at cost?
18             MR. WITTELS:  Can you repeat the question?
19             Read back the question, please.
20             *(Record read)
21             MR. WITTELS:  Objection.
22             THE WITNESS:  Well, the customer will get
23   this agreement; and they would read that it would be
24   based on XOOM's actual and estimated supply costs,
```

Page 51

```
 1   and they would assume it would be based on actual
 2   and estimated supply costs.
 3          But an average customer wouldn't know what
 4   a "supply cost" means, but it's an
 5   energy-industry-specific terminology.  So that's
 6   what they -- from what they read, they would think
 7   that they would be based on actual and estimated
 8   supply costs, and they would -- that's what they
 9   would be charged at.
10          BY MR. MATTHEWS:
11     Q.   And you think an average customer -- I'm
12   focused on the phrase "based on" -- would think that
13   "based on" means equal to?
14          MR. WITTELS:  Objection.  It's about ten
15   times you've asked it.
16          THE WITNESS:  As I mentioned before, I
17   think "based on" in this context is we are having a
18   cost, converting into a rate, so it should be very
19   close to -- to the -- to the actual and estimated
20   supply costs.
21          BY MR. MATTHEWS:
22     Q.   Converting it directly into a rate --
23     A.   Rate.
24     Q.   -- with no margin added, correct?
```

Page 52

1  A.  Yes.  No margin, because it's not listed in
2  this.
3  Q.  You think that's what an average customer
4  would believe reading that language?
5  A.  In this context, in this contract, they
6  would read this and think that it would be based on
7  actual and estimated supply costs.
8  MR. WITTELS:  Why are you laughing?  You
9  can go to the court and laugh, too.  I don't think
10  you should be laughing at witnesses.
11  MR. MATTHEWS:  If this is the opinion that
12  they want to present in this case that "based on"
13  means equal to, they should say so.  I don't know
14  why that's difficult if that is the opinion that
15  they're advancing.
16  MR. WITTELS:  I think she's asked it --
17  answered your questions appropriately, and I don't
18  know why you're laughing.  But we'll see what the
19  court thinks.
20  BY MR. MATTHEWS:
21  Q.  Dr. Eryilmaz, you believe that an average
22  customer would read that language "based on actual
23  and estimated supply costs" and would believe that
24  XOOM's rate would be a direct conversion of its

Page 53

1  actual and estimated supply costs into a rate with
2  no margin added on top, correct?
3          MR. WITTELS:  Objection.
4          THE WITNESS:  An average customer would
5  read this agreement, and they would say, "My" -- I
6  mean, "I will be charged at actual and estimated
7  supply cost."  That an average -- as I mentioned,
8  "supply cost" is a very specific energy industry
9  terminology, so an average customer may not be able
10 to interpret what the components of "supply cost"
11 is, and that is why, you know, I think, you know, an
12 average customer would just read it and say they
13 will be charged at actual and estimated supply cost
14 based on just reading that.
15         But they would be able to understand
16 comprehensively what an actual and estimated supply
17 cost mean?  Probably not, because the average
18 customer, or like a lay person, wouldn't know what
19 it means.  Only energy industry experienced people
20 can interpret that, in my opinion.
21    BY MR. MATTHEWS:
22    Q.  Do you think an average customer knows what
23 "based on" means?
24    A.  I mean in ordinary language, it may mean a

```
 1    COMMONWEALTH OF MASSACHUSETTS)
 2    SUFFOLK, SS.                 )
 3         I, Alexander K. Loos, RDR and Notary Public in
 4    and for the Commonwealth of Massachusetts, do hereby
 5    certify that there came before me on the 15th day of
 6    November, 2022, at 10:25 a.m., the person
 7    hereinbefore named, who was by me duly sworn to
 8    testify to the truth and nothing but the truth of
 9    her knowledge touching and concerning the matters in
10    controversy in this cause; that she was thereupon
11    examined upon her oath, and her examination reduced
12    to typewriting under my direction; and that the
13    deposition is a true record of the testimony given
14    by the witness.  I further certify that I am neither
15    attorney or counsel for, nor related to or employed
16    by, any attorney or counsel employed by the parties
17    hereto or financially interested in the action.
18         In witness whereof, I have hereunto set my hand
19    and affixed my notarial seal this 27th day of
20    November, 2022.
21    [signature]
22
23    Notary Public
24    Commission expires 5/5/28
```

Page 102