

Michael D. "Matt" Matthews, Jr.
Partner
1001 Fannin Street, Suite 2400
Houston, TX 77002
Ph: 713.337.8879 // F: 713.333.8859
matt.matthews@mhllp.com

September 15, 2023

*Via CM/ECF*

The Honorable Ramon E. Reyes
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East, Room 1217S
Brooklyn, New York 11201

   Re:  *Mirkin, et al. v. XOOM Energy, LLC, et al.*; No. 18 Civ. 2949 (ARR) (RER)

Dear Judge Reyes:

I write pursuant to Part III.B of Your Honor's rules to request a pre-motion conference to discuss XOOM's planned motion to stay pending resolution of its Rule 23(f) petition seeking permission to appeal the class certification order.[1] *See* Doc. 152, Class Order; Rule 23(f) Petition, Ex. 1 hereto.

A stay is warranted because XOOM's petition raises substantial legal questions about the order, and the balance of hardships tilts in XOOM's favor. First, the order applied an incorrect legal standard, erring on the side of certification in contravention of Supreme Court and Second Circuit precedent. Second, the order's determination that commonality and predominance are satisfied is contrary to legal conclusions about XOOM's contract the Court made on summary judgment— conclusions that will necessarily require thousands of individualized rate-setting inquiries. Third, a stay is most efficient. Absent a stay, XOOM will have to produce broad class discovery and Plaintiff's counsel will commence the expensive and time-consuming class notice process, all before the Rule 23(f) petition is considered. And if the petition is granted and certification reversed, the parties' (and the Court's) efforts will have been for nothing. Fourth, without a stay, XOOM will be unfairly pressured to settle despite its meritorious legal positions due to the costs and risks inherent in litigating thousands of liability determinations over a ten-year period. That is precisely the kind of waste that Rule 23(f) was designed to prevent.

## **BACKGROUND**

Plaintiff Susanna Mirkin purchased variable-rate electricity from XOOM for six months in 2013. But she filed this action on behalf of consumers who purchased electricity or natural gas in seven electricity and eight gas zones across the state for four electricity products and two natural gas products for the last 10+ years. XOOM's rates varied monthly by commodity, utility zone, and product, so the 128+ month class the Court certified already involves 5,600+ rate-setting decisions, and each will require individual assessment to resolve Plaintiff's overcharge allegations.

Those individual inquiries are necessary due to the Court's interpretation of XOOM's contract on summary judgment. The contract stated that XOOM would charge a "variable rate . . . that may

---

[1] Rule 23(f) permits a district court to stay proceedings where a party seeks to appeal from an adverse class-certification decision.

September 15, 2023
Page 2



change on a monthly basis . . . based on XOOM's actual and estimated supply costs which may include . . . prior period adjustments, inventory and balancing costs," as well "market-based compensation." SJ Order, Doc. 151 at 2-3; 13. Under the Court's interpretation, "the process by which XOOM set rates is of central importance." *Id.* at 3. And while the Court acknowledged that "[t]he direct evidence demonstrates that XOOM decisionmakers clearly considered supply costs when setting rates," its interpretation demands more: "that [XOOM's] rates ***were determined*** by its actual and estimated supply costs." *Id.* at 15. Plaintiff therefore had the class-certification burden to present common proof as to how 44 different monthly rates were determined in 128 months. Plaintiff has no such proof. Further, deciding how those rates "were determined" will require assessment of documentary and testimonial evidence for each of thousands of rates.

Thus, although Plaintiff bore the burden to show that individual issues of fact do not predominate, she did not, and could not, meet that burden, as explained below and in the 23(f) petition.

## ARGUMENT

Courts consider four factors in deciding whether to stay proceedings pending interlocutory appeal: (1) likelihood of success on the merits, (2) irreparable harm to the applicant, (3) injury to other parties, and (4) the public interest. *U.S. SEC v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162-163 (2d Cir. 2012). The Second Circuit assesses these factors on a "sliding scale"—"more of one excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). A stay "should issue" where the movant shows even "some possibility of success" and "the balance of hardships tips decidedly in [its] favor." *Id.* at 335. Here, each of these factors weighs in favor of a stay.

**(1) XOOM Is Likely to Succeed on Appeal.**

"'The Second Circuit has long recognized that the "likelihood of success on the merits" that is required for . . . a stay can be satisfied if there are "serious questions" going to the merits of the dispute . . . .'" *New York Times Co. v. Dep't of Health & Hum. Servs.*, No. 20 CIV. 3063 (GWG), 2021 WL 235138, at *1 (S.D.N.Y. Jan. 25, 2021) (quoting, *inter alia*, *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). At a minimum, XOOM's Rule 23(f) petition raises "serious questions" about legal errors in the certification order.

First, the order cannot be reconciled with the Court's analysis and conclusions on summary judgment. Plaintiff's so-called common proof was a model presented by her experts, derived from XOOM's "rate-setting worksheets." *Id.* But as the Court recognized on summary judgment, those worksheets indisputably do ***not*** reflect all supply costs that XOOM was entitled to consider, including prior period adjustments. SJ Order at 4-5, 16-17. So, they cannot answer the central liability question as defined by the Court: whether "[XOOM's] rates ***were determined*** by its actual and estimated supply costs." *Id.* at 15. Many of those costs—and how they impacted each rate—can be assessed only with the benefit of testimony about XOOM's monthly rate-setting meetings at trial. *Id.* at 16. Of course, testimony about hundreds of rate-setting meetings over the course of 10+ years is not "common proof"; each rate must be examined individually for a potential overcharge, and there can be no "common" answer as to liability, let alone damages.



For example, the Court found that XOOM presented "ample" testimonial evidence that "prior period adjustments"—which XOOM was contractually entitled to consider—were factored into the variable rates XOOM charged. SJ Order at 16. The Court recognized that, though not reduced to a line-item on the rate-setting workbooks, the prior period adjustments and balancing costs were incorporated into the rates as part of XOOM's budgeting process. *Id.* at 16-17; *id.* at 6 (noting "the internal 'Total Cost' measure may not necessarily equal XOOM's 'actual and estimated supply costs'"). So, under Rule 23, Plaintiff had the burden to offer "evidentiary proof" that a factfinder could identify and assess the role those adjustments played in 5,600+ rates without looking at individual evidence. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). Again, Plaintiff offered no such evidence. Instead, the Court impermissibly reversed the burden of proof, finding commonality and predominance as to the class based on XOOM's failure to prove to the Court's satisfaction on summary judgment that Plaintiff's rates "were ***undoubtedly*** determined ***solely*** by its actual and anticipated supply costs." SJ Order at 14; Class Order at 13 n.6.

And critically, despite asserting an overcharge claim, Plaintiff offered no evidence of the rate that she or any other class member should have been charged under the contract—a necessary element for liability and damages under North Carolina's substantive law. Without knowing what each of the individual rates should have been, the factfinder cannot determine a "proportionate" margin, which the Court recognized was required for both liability and damages.[2]

Because these inquiries into XOOM's rate-setting process—which the Court found are central to this case—cannot be resolved "in one stroke," neither commonality nor predominance can be met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). The fact that Plaintiff was a customer for electricity only in a single ConEd zone for just *six months* underscores that class certification was in error. Certification changed the scope of this case by orders of magnitude. Now, instead of six mini-trials concerning whether Plaintiff's variable rates breached the contract, the Court will have to hold *5,600+*. *See Kiobel v. Royal Dutch Petroleum Co.*, No. 02 CIV. 7618 KMW HBP, 2004 WL 5719589, at *11 (S.D.N.Y. Mar. 31, 2004) (finding that the "multitude of [100+] mini-trials" necessary to establishing liability meant that "Rule 23(b)(3)'s predominance requirement ha[d] not been met" (citing, *inter alia*, *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)); *see Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 140 (2d Cir. 2001) (denying a stay but stating a stay is warranted where, as here, "the likelihood of error on the part of the district court tips the balance of hardships in favor of the party seeking the stay").

### (2) XOOM Will Be Irreparably Harmed Absent a Stay.

Although courts in this Circuit generally find that substantial litigation costs do not constitute irreparable harm, more than 5,600 mini-trials make this case extraordinary. Not only voluminous documentary evidence, but testimony from individuals who participated in each monthly rate-

---

[2] The Court concluded that XOOM was entitled to include a reasonable margin in its rates, but did not say what that "reasonable" margin is, or how it could be calculated other than to say that it should be "proportionate" to supply costs. *See* Class Order at 3; SJ Order at 13. That fact-intensive question therefore will need to be determined by the factfinder for all 5,600+ rates.

September 15, 2023
Page 4



setting meeting over more than a decade will be required. If the Second Circuit concludes the class should not have been certified, then the scope of the case and the burden on the parties will be thousands of times lighter, shifting the focus down to just six rates.

Absent a stay, XOOM will be forced to concurrently prepare a motion to decertify the class and exclude Plaintiff's experts, all without the benefit of the Second Circuit's guidance. That additional burden on XOOM (and Plaintiff and the Court) could be avoided entirely if district court proceedings are stayed. Finally, the burden of thousands of factual issues and correspondent discovery obligations will put undue pressure on XOOM to settle despite meritorious arguments against certification and the claims. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) ("[A] grant of class status can put considerable pressure on the defendant to settle, even when the plaintiff's probability of success on the merits is slight. . . . [A] grant of class status can propel the stakes of a case into the stratosphere. . . ."); *Sumitomo Copper*, 262 F.3d 140 (considering defendant's argument that class certification would be a death-knell for the case).

### (3) A Stay Will Not Substantially Injure Plaintiff.

A stay would impose no harm on Plaintiff or the class. If the Second Circuit rules for XOOM, Plaintiff will have avoided expenses of class notice, pretrial motions, and trial. If the Second Circuit rules against XOOM, neither Plaintiff nor the class will be harmed because prejudgment interest can adequately compensate for delay of any recovery. *See* NC Gen. Stat. § 24-5 (2022).

### (4) The Public Interest Favors a Stay.

Judicial economy weighs in favor of a stay because proceeding while the 23(f) petition is pending is likely to waste significant judicial resources. *See Estate of Heiser v. Deutsche Bank Tr. Co. Ams.*, No. 11 Civ. 1608 (AJN)(MHD), 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012) ("[C]onsiderations of judicial economy are frequently viewed as relevant to the public interest, and . . . they weigh against the investment of court resources that may prove to have been unnecessary."). Indeed, judicial economy is the reason that Rule 23(f) provides an opportunity for interlocutory appeal in the first place. *See, e.g.*, *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, No. 98-cv-1492, 2000 WL 1424931, at *2 (E.D.N.Y. Sept. 26, 2000) (noting that Rule 23(f) "was designed to accommodate the need for quick appellate review of class certification decisions"). Thus, the public interest weighs in favor of a stay.

## CONCLUSION

Because XOOM has raised substantial legal questions as to whether the Court's order granting class certification was erroneous, and because the balance of hardships tips decidedly in favor of a stay, XOOM requests a conference to discuss a motion to stay proceedings. *See In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (noting that the court had granted appellants' motion for stay pending resolution of interlocutory appeal from class-certification order); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 221 (2d Cir. 2008) (noting, in opinion decertifying class, that the court had stayed the proceedings below) (*partially abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).

September 15, 2023  
Page 5



                                      Respectfully submitted,

                                      Michael D. Matthews, Jr.

CC: All counsel of record (via CM/ECF)