# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
                                    )
SUSANNA MIRKIN, ET AL.,             )    1:18-cv-02949-ARR-RER
                                    )
                   Plaintiff,       )    Brooklyn, NY
                                    )    February 3, 2022
                   vs.              )
                                    )
XOOM ENERGY, LLC, ET AL.,           )
                                    )
                   Defendant.       )
```

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE RAMON E. REYES, JR
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (All present by video or telephone):

For the Plaintiff:          STEVEN DANA COHEN, ESQ.
                            STEVEN L. WITTELS, ESQ.
                            WITTELS MCINTURFF PALIKOVIC
                            18 Half Mile Road
                            Armonk, NY 10504

For the Defendant:          DIANE S. WIZIG, ESQ.
                            MICHAEL D. MATTHEWS, JR., ESQ.
                            MCDOWELL HETHERINGTON LLP
                            1001 Fannin Street
                            Suite 2700
                            Houston, TX 77002

ECR OPERATOR:               NO NAME PROVIDED


                        Rachel Wiley, CET**D-251
                            eScribers
                        7227 North 16th Street
                          Phoenix, AZ 85020
                          www.escribers.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.



Colloquy

```
1            THE COURT:  Good morning.  This is Magistrate Judge
2    Reyes.  We're holding a telephone conference in the case of
3    Mirkin v. XOOM, docket number 18-cv-2949.
4            Counsel for the plaintiffs, please state your name for
5    the record.
6            MR. STEVEN COHEN:  Steven Cohen for plaintiffs,
7    Wittels McInturff Palikovic.  Thank you, Your Honor.
8            MR. STEVEN WITTELS:  Good morning, Your Honor.  Steven
9    Wittels as well for the plaintiffs and the proposed class.
10           THE COURT:  Counsel for the defendants?
11           MS. DIANE WIZIG:  Good morning, Your Honor.  This is
12   Diane Wizig of McDowell Hetherington on behalf of the
13   defendants.  My colleague Matt Matthews is held up on another
14   hearing and will join us as soon as he can.  So we can go
15   forward.
16           THE COURT:  Okay.  So I see that plaintiffs filed a
17   motion to compel and there was an opposition to that.  Putting
18   that issue aside, why don't you give me an update on what's
19   going on in the case, Mr. Cohen.
20           MR. COHEN:  Well, the parties have held meet and
21   confers, and we're getting closer to starting depositions.  I
22   think in the most recent meet and confer there might be another
23   like a privilege-related issue that you might have to queue up
24   for the Court in the coming weeks.  So we'll go ahead and right
25   to the Court on that issue.
```

Colloquy

1      But otherwise things are moving along with regard to

2   discovery.  Defendants, I believe, have completed their

3   production, although they do owe us a supplemental privilege

4   log, which I believe they said is coming next week.  And yeah,

5   that's pretty much where things stand.

6      THE COURT:  Okay.  I'm looking at the docket sheet to

7   pull up the most recent case management plan.  There we go.

8   All right.  So you have currently the fact witness depositions

9   to be completed by March 28th.  Then your expert disclosures to

10  follow April 1, May 2.  Depositions of experts May 17th.

11     So this current dispute on the document production

12  with respect to these other folks and this privilege issue are

13  the only outstanding paper discovery issues that need to be

14  resolved prior to you rolling into your depositions, yes?

15     MR. COHEN:  Yes.  That's correct.

16     THE COURT:  Okay.  And I guess the dates for the

17  depositions and the expert disclosures may have to be moved

18  depending upon whether I grant the motion to compel.  Because

19  it --

20     MR. COHEN:  Right.

21     THE COURT:  -- would probably take a little bit of

22  time for the defendants to produce those records.

23     MR. COHEN:  That's correct, Your Honor.

24     THE COURT:  And this privilege issue, just preview it

25  for me.



Colloquy

1        MR. COHEN:  Basically, for the most part, is there're

2    documents that we believe that defendants are over withholding

3    where certainly there are a number of documents in their logs

4    where they're -- it's like an email with an attachment.  And

5    based on the description that we're being provided, we feel

6    that it's very likely that the attachment itself doesn't have

7    any legal advice, and that they basically could be producing

8    these documents with redactions or in part, at the very least.

9        Although it's possible, maybe some of these documents

10   shouldn't be considered privileged at all.  We've had meet and

11   confers with them and they have removed some documents from

12   their privileged logs, and that makes us suspicious that there

13   might be more that they're over withholding.

14       THE COURT:  How many documents are we talking about?

15       MR. COHEN:  About a dozen.

16       THE COURT:  Okay, good.  All right.  I'm not a big fan

17   of in-camera reviews, so with 12 documents, as long as we're

18   not each 1,000 pages, I wouldn't have a problem with that.  But

19   that's not my first preference.

20       So let's talk about this motion to compel.  And Mr.

21   Cohen can take the lead on this.  But the one question I have

22   is these other customers who became variable rate customers

23   during the class period, however they became variable rate

24   customers, were their variable rates calculated any differently

25   than the Mirkins?

Colloquy

1          MR. COHEN:  The answer to that, Your Honor, is no.

2     That they were calculated exactly the same way as the Mirkins'

3     variable rates.  The variable rates are consistent in the XOOM

4     plan.

5          THE COURT:  Ms. Wizig, is that correct?

6          MS. WIZIG:  Mr. Cohen is correct that XOOM sets its

7     variable rates for its New York customers the same in the sense

8     that the rate for each utility load zone is the same no matter

9     whether the customer began as fixed rate or variable rate.  If

10    they are being charged a variable rate, there is one rate that

11    is charged in that load zone.

12         THE COURT:  So if the class definition is all

13    customers who were charged a variable rate during the class

14    period, not exactly how it's worded, but that's if the class

15    definition, why does it matter how they became a variable rate

16    customer?  If once they were a variable rate customer, they're

17    being treated exactly as the Mirkins were, why does it matter

18    how they became a variable rate customer?

19         MS. WIZIG:  Sure.  So it's our position that it

20    matters the way they became a variable rate customer because

21    from the very fact that plaintiffs are looking for production

22    of exemplar contracts for those customers, that they received

23    different contracts.

24         The other reason we believe that they're differently

25    situated and aren't properly within the class definition is

Colloquy

1   because customers who enroll on a fixed rate or who enrolled

2   with a legacy company like Planet Energy would have different

3   expectations about their variable rates than a customer who

4   chose the variable rate from the outset.  And that's why we

5   reference the various other cases in which this has been an

6   issue and in which the original complaint, like the Mirkins'

7   complaint, contained a broad class definition.  But where those

8   plaintiffs quickly realized and conceded that the plaintiffs

9   how they enrolled -- or sorry class members, whether they

10  enrolled on a fixed rate at the outset or a variable rate at

11  the outset made a meaningful difference and limited either

12  their proposed class definition at cross certification or

13  settlement class.  So this is a pretty common distinction in

14  the variable rate class action.  And we believe that it's

15  inappropriate, that the breadth of the class definition in the

16  complaint is inappropriate.

17          THE COURT:  These other cases where the plaintiffs

18  changed their class definition, at what point was that?  And

19  did they seek the same type of discovery and get it only to

20  then change their class definition when they realized there was

21  a problem?  Or did they not seek that discovery and claims

22  change their class definition on their own because they

23  realized there was a problem?  What?

24          MS. WIZIG:  Sure.  It varies depending on the case.

25  So with respect to the Stanley case that plaintiffs cite in



Colloquy

1    their letter and that we cite in the body of our opposition,

2    that class was partially limited at the outset.  So the

3    complaint limited it with respect to the company that the

4    customer enrolled on.  They were only seeking to represent

5    customers of a legacy company -- or sorry, two legacy companies

6    called NYSEG Solutions and Energetix at the outset.

7            And then in the course of discovery, they did seek

8    discovery regarding customers who enrolled both ways, so

9    customers who enrolled with that legacy company variable at the

10   outset and customers who enrolled with the legacy company fixed

11   at the outset.  Based on that discovery, they limited their

12   settlement class to only customers like their named plaintiffs

13   who started fixed at the outset.

14           Similarly, with the Hamlin (ph.) case that was in the

15   Southern District of New York, that class started out with a

16   broad definition and that counsel and plaintiffs also pursued

17   broad discovery.  They pursued discovery about both customers

18   who enrolled fixed and customers who enrolled variable.  That

19   named plaintiff, Mr. Hamlin, was similarly situated to the

20   Mirkins.  He enrolled variable and in the end limited his

21   settlement class to customers like him who enrolled variable.

22           The Bell (ph.) case was a little bit different.  The

23   Bell case the original complaint was pleaded very broadly to

24   encompass all customers regardless of how they enrolled.  But

25   their motion for class certification, so not their settlement



Colloquy

1    motion, limited their class to customers just like Ms. Bell who

2    enrolled fixed and then went variable.

3              So it's a little bit all over the place, but both of

4    these pursued both types of discovery and then limited Ms. Bell

5    we objected on similar grounds here, just the inverse, and she

6    enrolled fixed and then went variable.  We only produced

7    information about customers like her.  And she acquiesced to

8    that definition in both discovery and her class certification

9    motion.

10             MR. WITTELS:  Judge, may I jump in?  This is Steven

11   Wittels.

12             THE COURT:  Sure.

13             MR. WITTELS:  Judge, I would argue to you that what

14   other plaintiffs did in other cases is irrelevant here because

15   A, we've got case law on the Second Circuit which says you

16   don't have to have the exact same case.  I mean, Stanley's

17   quite clear quoting that the Second Circuit says you don't need

18   (Indiscernible), you don't have to have identical injuries as

19   long as you have the same general of character.

20             And what defense counsel just cited actually argues in

21   favor of the discovery we're requesting, because as she pointed

22   out, most of these other cases -- and I don't have the facts of

23   those cases at our fingertips and we don't have the record in

24   those cases, we're just relying what counsel is saying -- both

25   cases seem to start broad, which is what our case is, all

Colloquy

1    variable rate customers.

2          And once you get to discovery, as long as you credit,

3    which we have, you're entitled to the discovery of the variable

4    rates for all the customers which we asked for and that they're

5    withholding.  Once you get that discovery, if you decide to

6    settle your case and make a class settlement motion, you might

7    temper down or restrict some of the class if you don't think

8    you can certify it or if you negotiate that -- we don't know

9    the reasons in those cases why the plaintiff's counsel didn't

10   include more.  Maybe that was a tradeoff in their negotiations.

11         But the point being is, are we entitled to the

12   discovery?  Are they withholding legit discovery?  And do they

13   have any case law to support?  And we have none, no case law

14   from defendants saying that it's improper to get variable rate

15   contracts when someone flips from a fixed rate or it comes from

16   a different company.  They've offered no authority that would

17   oppose our arguments.  And they're absolutely improperly

18   withholding this data.

19         We need to know this because we need to see whether in

20   fact there's any difference in the contracts.  We don't believe

21   there is, because as counsel just indicated, when they charge

22   variable rate customers they charge them under the same

23   process, whether they came originally variable or whether they

24   flipped from fixed.  So we don't think there's any sound reason

25   why this discovery shouldn't be produced.



Colloquy

1          THE COURT:  I don't necessarily disagree with you, Mr.

2    Wittels.  I was inquiring of those cases just to find out if

3    they are cases on point.  And if I --

4          MR. WITTELS:  Right.

5          THE COURT:  -- it matters to me what the judges did in

6    those cases whether there was a motion to compel, whether the

7    discovery was produced without that.  And so I just try to

8    figure it out.

9          MR. WITTELS:  Right.  I understand, Your Honor.

10         THE COURT:  Look, I think -- what's the saying?

11   Devil's in the details, right?  If in fact these other

12   potential class members once they became variable rate

13   customers were subject to the same treatment as the Mirkins

14   were, then they are similarly situated and are truly potential

15   class members.

16         I don't know that it's relevant how they became

17   members of the class coming from a fixed rate plan, coming from

18   another provider, supplier.  So I'm not going to limit the

19   discovery at this point.

20         So you're going to have to produce these documents and

21   data.  The question is how long do you need to do that and how

22   does it impact the schedule.  That's something you need to

23   think about and need to confer on?

24         MS. WIZIG:  Yes, Your Honor.  If you would allow us a

25   few days to talk to our clients and confer with plaintiffs on

Colloquy

1    how long it will take to gather those exemplar contracts and

2    the customer data, produce it, and then potentially need to

3    move out some of these dates accordingly, we would appreciate

4    that.

5              THE COURT:  Okay.  Why don't you do that, confer with

6    Mr. Cohen and Mr. Wittels, propose a revised schedule, and get

7    that to me by the end of next week, that work?  To the 11th, I

8    guess?

9              MR. COHEN:  Yeah, that works for plaintiffs.

10             THE COURT:  Okay.  That's what we'll do, then.  The

11   privilege issue, will resolution of that impact the schedule in

12   any meaningful way?

13             MR. COHEN:  Probably not, Your Honor.  I don't think

14   those documents would necessarily need to hold things up.

15             THE COURT:  Okay.  All right.  So key that up when you

16   will.  I won't press you on that.  Hopefully you can work it

17   out.  If not, send me motion whenever you ever want.

18             And I will look at the schedule that you submit.  And

19   why don't you -- well, no.  I was going to say why don't you

20   put a date for another conference in that schedule.  But I'd

21   rather see the schedule and then pick a date myself.  And we'll

22   put that on the docket and you'll see it.

23             MR. COHEN:  So should we leave that line for you to

24   fill in, basically?

25             THE COURT:  Yeah.  I don't know if I'll fill it in or



Colloquy

1   you'll just see -- on ECF you'll see the date appear when I

2   approve the schedule.  But yeah, leave it blank.

3            MR. COHEN:  Okay.  Thank you, Your Honor.

4            THE COURT:  All right.  Okay.

5            Anything else we need to discuss?

6            MR. COHEN:  Not from plaintiffs, Your Honor.

7            MS. WIZIG:  Not from defendants either, Your Honor.

8   Thank you.

9            THE COURT:  Okay.

10           Thank you, everyone.  Take care.

11           MR. COHEN:  Thank you.

12           MR. WITTELS:  Thank you, Your Honor.

13                   (Proceedings concluded.)

14                       *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25



1                    C E R T I F I C A T I O N

2

3           I, Rachel Wiley, court-approved transcriber, do hereby

4    certify the foregoing is a true and correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9                                              February 7, 2022

10   _____        _____

     Rachel Wiley, CDLT-251                  DATE

11

12

     eScribers, LLC
13   7227 North 16th Street
     Phoenix, AZ 85020
14   www.escribers.net

15

16

17

18

19

20

21

22

23

24

25

