# MDM Declaration Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated,

                *Plaintiffs*,

    -against-

XOOM ENERGY, LLC, and XOOM ENERGY NEW YORK, LLC,

                *Defendants*.

18-CV-2949 (ARR) (RER)

**OPINION & ORDER**

ROSS, United States District Judge:

In this putative class action, plaintiff Susanna Mirkin, a former residential electricity customer of defendants XOOM Energy, LLC, and XOOM Energy New York, LLC (collectively, "XOOM"), alleges she was charged exorbitant electricity rates in breach of the pricing terms contained in a contract for variable-rate energy service.[1] Plaintiff moves for an order certifying this case as a class action, appointing herself as class representative, and appointing the law firm Wittels McInturff Palikovic as lead class counsel. Pl.'s Mot. for Class Certification ("Pl.'s Mot."), ECF No. 131.[2] For the following reasons, the motion is granted.

---

[1] Susanna Mirkin originally sued alongside her husband, Boris Mirkin. However, after finding that Boris lacked a contractual relationship with XOOM sufficient to support standing, I granted summary judgment as to his claim and dismissed him from the case. Op. & Order 19–21, ECF No. 151; *Mirkin v. XOOM Energy, LLC*, No. 18-CV-2949 (ARR) (RER), 2023 WL 5200294 (E.D.N.Y. Aug. 14). The parties' arguments about whether Boris is a proper lead plaintiff are therefore moot.

[2] Plaintiff also moved for an order directing that notification of class action certification be made to the class at defendants' expense. Pl.'s Mot. 2. Because plaintiff withdrew that request in her reply, Pl.'s Reply Mem. of L. in Support Mot. for Class Certification ("Pl.'s Reply") 42 n.20, ECF No. 135, I do not address it herein.

## BACKGROUND[3]

XOOM is an independent energy service company ("ESCO") that offers an assortment of energy products to residential and commercial customers as an alternative to their local utilities. During the time period relevant to this lawsuit, XOOM's products included electricity and natural gas supply offered at either a variable or fixed rate. In May 2013, Susanna Mirkin began receiving residential electricity service from XOOM at a variable monthly rate pursuant to a form Electricity Sales Agreements ("ESA" or "contract"). Decl. of Steven L. Wittels in Opp'n to Mot. for Summ. J. ("Wittels MSJ Decl."), Ex. 1 ("Enrollment Email & ESA"), at 4–6, ECF No. 147-2. The ESA contained the following pricing term:

> Your rate for energy purchases will be a variable rate, per kWh, that may change on a monthly basis, plus taxes and fees, if applicable. Your monthly variable rate is **based on XOOM's actual and estimated supply costs** which may include but not be limited to prior period adjustments, inventory and balancing costs.

*Id.* at 4 (emphasis added). Plaintiff cancelled her service after six months. Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") ¶ 6, ECF No. 146-25 (filed under seal).[4]

XOOM used a standard agreement containing the "actual and estimated supply costs" language for New York residential and small business variable rate customers from 2013 to 2016 for both electricity and natural gas service. Decl. of Steven L. Wittels in Supp. of Mot. for Class Certification ("Wittels Class Certification Decl."), Ex. 11, ECF No. 133-11 (residential electricity contract); *id.* Ex. 12, ECF No. 133-12 (residential gas contract); *id.* Ex. 13, ECF No. 133-13

---

[3] The facts of this case are detailed in my prior opinion denying XOOM's motion for summary judgment, familiarity with which is assumed. I recount the facts necessary to resolve the present motion, drawing in large part on the factual record developed at summary judgment.

[4] Several of the documents cited herein have been filed under seal pursuant to a discovery confidentiality order, *see* ECF No. 48-1; they are hereby deemed unsealed to the extent that their contents are quoted or described in this order.

(commercial electricity contract); *id.* Ex. 14, ECF No. 133-14 (residential SimpleClean electricity contract); *id.* Ex. 15, ECF No. 133-15 (commercial SimpleClean electricity contract). The same contract term applied to two additional groups: (1) New York customers who signed up for fixed rate contracts but did not renew at a fixed rate upon expiration and (2) variable rate customers of Planet Energy, which XOOM acquired in 2013 to enter the New York market. Wittels Class Certification Decl., Ex. 3 ("Pl.'s Expert Report"), at 11–12, ECF No. 138-3 (filed under seal); *id.* Ex. 17, at 39:24–40:8, ECF No. 138-17 (filed under seal).

The question at the center of the suit is whether the variable rates XOOM charged its customers were "based on XOOM's actual and estimated supply costs." In my ruling on XOOM's motion for summary judgment, I determined that North Carolina law mandates a strict construction of the vague pricing term against the drafter such that the contract required the monthly variable rates to be determined *only* by XOOM's actual and estimated supply costs. Op. & Order 12. This does not mean that the rate must equal the supply costs, but that it must vary according to those costs. *Id.* at 13.

If the measure of actual and estimated supply costs were undisputed, the putative class would have a relatively straightforward case centered on three variables: the supply costs, the rate charged, and a reasonable margin.[5] However, the parties dispute what the supply costs are and whether it is possible to identify them. During discovery, XOOM produced rate-setting workbooks that its decisionmakers used to set rates at regular meetings. Those workbooks contain an internal cost calculation labeled "Total Cost" or "COGS," which is essentially the sum of the costs XOOM incurs when procuring energy on the wholesale market. Plaintiff says that "Total Cost" equals

---

[5] Plaintiff concedes that XOOM can charge at least a modest margin under the contract. *See* Op. & Order 6; Pls.' Mem. of L. in Opp'n to Mot. Summ. J. 7–9, ECF No. 147.

3

"supply cost," whereas XOOM says that "Total Cost" and "supply cost" are different. According to XOOM, the Total Cost figure contains most but not all the components that make up the "actual and estimated supply cost." Crucially, XOOM argues that the Total Cost does not include prior period adjustments—rate increases made over time to recover unanticipated costs—because prior period adjustments were included in the margin. (In XOOM's rate-setting workbooks, the Total Cost plus the margin equals the rate charged to the customer.) On this theory, prior period adjustments entered the margin via a separate budgeting process that set margin goals, which in turn helped guide rate-setting decisions across all of XOOM's products. Plaintiff's theory is that XOOM either did not incorporate prior period adjustments or other supply costs into the margin at all, or that XOOM's practice of raising New York rates based on losses in other markets was not permitted under the contract. In my decision on summary judgment, I determined that whether prior period adjustments were factored into the margin and whether prior period adjustments impacted plaintiff's rates are disputed questions of material fact. Op. & Order 17.

> Plaintiff moves to certify the following class:
>
> All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.
>
> Excluded from the Class are the officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest, all federal, state and local government entities and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

Pl.'s Mot. 2. Plaintiff estimates the class includes 80,000 to 110,000 people. Pl.'s Mem. of L. in Support Mot. for Class Certification ("Pl.'s Mem.") 12–13, ECF No. 137 (filed under seal).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), plaintiffs may sue on behalf of a class where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard," and the party seeking certification bears the burden of "affirmative[ly] demonstrat[ing] [her] compliance with the Rule—that is, [s]he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23's four requirements of numerosity, commonality, typicality, and adequate representation "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* at 349. A plaintiff must satisfy all four criteria of Rule 23(a) to obtain class certification.

A prospective lead plaintiff must also demonstrate compliance with one of the three requirements of Rule 23(b). *See id.* at 345. Here, plaintiff seeks certification under Rule 23(b)(3), which mandates "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The additional requirements of predominance and superiority restrict certification to cases where a class action would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quotation omitted).

Finally, in addition to these prerequisites, the Second Circuit recognizes in Rule 23 an implied standard of ascertainability, which demands that a class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). "Ascertainability requires only that a proposed class is defined using objective criteria that establish a membership with definite boundaries." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 716 (2d Cir. 2023) (quotation omitted). Ascertaining the class need not be an administratively easy task—"[t]he only relevant inquiry is whether determinations as to class membership are objectively *possible*." *Id.* at 717 (quotation omitted).

I may certify a class only if, "after a rigorous analysis," *Wal-Mart Stores*, 564 U.S. at 351 (quotation omitted), I find that the prerequisites of Rule 23(a) and Rule 23(b) have been satisfied by a "preponderance of the evidence," *Johnson v. Nextel Commc'ns., Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). The "rigorous analysis" will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores*, 564 U.S. at 351. The Second Circuit has clarified the permissible scope of merits determinations at the certification stage as follows:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement . . . .

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), *clarified on denial of reh'g*, 483 F.3d 70 (2d Cir. 2007).

Additionally, "the Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 392 (E.D.N.Y. 2022) (quotation and alteration omitted). Thus, district courts in this Circuit tend to err on the side of class certification, "for it is always subject to modification should later developments during the course of the trial so require." *Id.* (quoting *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 593 (S.D.N.Y. 2021)).

## DISCUSSION

### I. Plaintiff Has Satisfied the Requirements of Rule 23.

Plaintiff moves to certify a class defined as "[a]ll New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment." Pl.'s Mot. 2. XOOM opposes the motion, arguing that plaintiff fails to satisfy the requirements of Rule 23.

#### A. The Proposed Class is Ascertainable.

At the outset, XOOM argues that plaintiff's proposed class is not ascertainable because it relies on the subjective criterion of "equivalent language." Defs.' Opp'n to Mot. for Class Certification ("Defs.' Opp'n") 19–20, ECF No. 139 (filed under seal). XOOM warns that this definition will require individual determinations of class-member eligibility unless plaintiff provides an objective way of determining whether contract language is equivalent. *Id.* But the ascertainability inquiry is a "modest threshold requirement" that "will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). There is no fundamental indeterminacy in plaintiff's proposed

Case 1:18-cv-02949-ARR-JAM   Document 170-1   Filed 12/04/23   Page 9 of 20 PageID #: 7793

Case 1:18-cv-02949-ARR-RER   Document 152   Filed 08/31/23   Page 8 of 19 PageID #: 7150

class definition. XOOM attempts to find subjectivity in the phrase "equivalent language," but in context it is clear that "equivalent language" means a contract with the same pricing term promising a variable rate "based on XOOM's actual and estimated supply costs." The proposed definition establishes a membership with the following definite boundaries:

> (1) XOOM New York variable rate customers who originally signed up as variable rate customers between 2013 and February 10, 2016; (2) XOOM New York variable rate customers who originally signed up as XOOM fixed rate customers and who were rolled into a variable rate contract prior to 2021; and (3) Planet Energy New York customers who became XOOM variable rate customers in or around 2013.

Pl.'s Reply 25–26. Because the proposed class definition is not indeterminate, I find that plaintiff has satisfied Rule 23's implied ascertainability requirement.

### B. The Proposed Class is Sufficiently Numerous.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff's expert estimates that the proposed class consists of somewhere between 80,000 to 110,000 members, Pl.'s Expert Report ¶ 23(b), and XOOM does not dispute that joinder would be impracticable. Given the size of the proposed class, I find that the numerosity requirement has been satisfied. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (explaining Second Circuit presumption that numerosity is satisfied at forty members).

### C. Common Questions of Law or Fact Predominate Over Individual Questions.

*1. Commonality.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" depending upon "a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will

8

resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 349–50 (quotation omitted). Not all questions of law or fact need to be common—"for the purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359 (quotation and alterations omitted). I find that plaintiff presents at least two common questions, breach and damages, and thus that plaintiff has satisfied the Rule 23(a)(2) requirement.

Plaintiff argues that commonality is satisfied because the claims of the proposed class depend on the common contention that XOOM breached its form contract and because damages can be calculated with a common formula. Plaintiff's experts have developed two proposed damages models. The first compares XOOM's actual rate to its reported Total Cost, calculating damages as "the difference between the variable rates charged by XOOM and the Total Cost, multiplied by the total energy usage for the month." Pl.'s Expert Report ¶ 64. The second damages model assumes that XOOM was allowed to charge its variable rate customers the same margin it charged its fixed-rate customers, an approximately 19% markup. *Id.* ¶¶ 73, 76. This model calculates damages as the difference between the variable rates and the Total Cost plus the fixed-rate margin, multiplied by the total energy usage. *See id.* ¶¶ 64, 73. Plaintiff's experts estimate that the putative class was overcharged in total by approximately $55 million under the first damages model and $27.5 million under the second, and that Mrs. Mirkin was overcharged by approximately $85 under the first model and $36 under the second. *Id.* ¶¶ 65, 77; Wittels Class Certification Decl., Ex. 29 ("Pls.' Expert Rebuttal Report") ¶¶ 29–31, ECF No. 138-29 (filed under seal).

XOOM responds that the commonality requirement cannot be satisfied because plaintiff offers no common evidence capable of proving breach and damages. Essentially, XOOM's argument depends on one of the central summary judgment issues: whether plaintiff can identify

9

"actual and estimated supply costs," a necessary data point to establish liability and calculate damages. XOOM claims that plaintiff provides no way to measure the supply costs because XOOM's internal cost calculation—the Total Cost or COGS figure—does not incorporate prior period adjustments or balancing costs, which are both identified as supply costs in the contract. Next, XOOM claims that plaintiff fails to provide a model that would measure only damages attributable to her theory of liability, for essentially the same reason—failure to accurately identify supply costs or an appropriate margin.

Claims for breach of a form contract are particularly well-suited for class certification. *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." (quoting *Kleiner v. First Nat'l Bank of Atl.*, 97 F.R.D. 683, 692 (N.D. Ga. 1983))); *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 380 (S.D.N.Y. 2019); *Dover v. Brit. Airways, PLC (UK)*, 321 F.R.D. 49, 54 (E.D.N.Y. 2017); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013) (explaining that breach of contract cases "requir[ing] examination of individual contract language" are generally not amenable to class certification). The proposed class encompasses only individuals who entered a form contract containing identical pricing language. Central to the class's case is a common question undoubtedly capable of common resolution: whether XOOM's rates were set in breach of the common contract language. Indeed, XOOM's breach of contract defense relies on common proof—evidence of XOOM's process for determining the variable rate margin. And if XOOM is found to have breached the contract, the class would need a single damages model to apportion liability. I find that plaintiff has satisfied the "low hurdle" of the commonalty requirement. *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415,

10

424 (S.D.N.Y. 2014) (quotation omitted); *see also Claridge v. N. Am. Power & Gas, LLC*, No. 15-CV-1261 (PKC), 2016 WL 7009062, at *4 (S.D.N.Y. Nov. 30, 2016) ("The claims of the proposed class turn on the 'common contention' that [defendant] misleadingly described its method for calculating variable monthly rates, a claim that 'is capable of classwide resolution . . . .'" (quoting *Wal-Mart Stores*, 564 U.S. at 350)).

XOOM's arguments about the supply cost determination are well-taken but have little bearing on "the narrow question of whether there are questions of law or fact common to the class as a whole." *Dover*, 321 F.R.D. at 55 n.1. They are more relevant to Rule 23(b)(3)'s predominance requirement, to which I now turn given its relationship to commonality. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) (observing that "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions").

2. *Predominance*

A class may be certified under Rule 23(b) if both (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted). In other words, common issues must be more prevalent than individual issues. *Dover*, 321 F.R.D. at 57.

A common issue is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof," as opposed to individual issues, where "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 Newberg & Rubenstein on Class Actions § 4:50 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* at 453–44 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)).

As discussed above, there are two common issues in this lawsuit: breach and damages. Plaintiff argues that these common questions predominate over any individual questions. XOOM argues that plaintiff cannot answer the breach or damages using common proof because its actual and estimated supply costs include not only the internal Total Cost calculation, a number known and produced during discovery, but also prior period adjustments, a supply cost incorporated into rates on an ad hoc basis and not produced in discovery as a discrete number. XOOM claims that in the absence of a measurement for prior period adjustments, balancing costs, and inventory, plaintiff cannot prove breach or damages on a classwide basis, and a finding of predominance is therefore precluded. Plaintiff counters that XOOM's objection is a common defense and that its common proof does incorporate all supply costs referenced in the contract, and any variables left out were "not real supply costs." Pl.'s Reply 29. Besides the rate-setting numbers, plaintiff says the class's case would also rely on additional common proof such as the form contract, internal XOOM communications, discovery responses, business records, and witness testimony. Pl.'s

Mem. 35. In sur-reply, XOOM responds that the use of employee emails to demonstrate the rate-setting process is not common proof because any conclusions from the evidence would require individualized determinations of the impact of any action discussed in those communications. Consol. Reply in Supp. Mot. Summ. J. & Sur-Reply in Opp'n to Class Certification ("Defs.' Sur-Reply") 19, ECF No. 150 (filed under seal).

As discussed in my summary judgment decision, one of the central disputes of material fact is whether plaintiff's rate fluctuations were caused by permissible supply costs incorporated into the margin. Op. & Order 16–17. Specifically, I found that a reasonable jury could conclude that XOOM did not factor prior period adjustments into its margin or that XOOM's practice of adjusting the margin to cover cost overruns and meet revenue goals was not permitted under the contract. *Id.* at 17. I need not delve too far into the merits and decide at this stage how XOOM in fact set its rates, because that decision may be made by the factfinder at trial "in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. The central issue common to all class members is the constitution of supply costs, an issue the factfinder can resolve through witness testimony, expert testimony, and documents and communications related to the rate-setting process.[6] If the contract allowed XOOM to incorporate prior period adjustments and other supply costs into the margin, and they in fact did so consistent with the contract, the class will fail together. If XOOM did not incorporate prior

---

[6] In its sur-reply, XOOM points out that a consolidated quarterly financial statement attached as an exhibit to the Mirkins' summary judgment reply includes prior period adjustments as a component of a "gross margin analysis," and faults plaintiff for not finding further documents substantiating the role of prior period adjustments in rate-setting. Defs.' Sur-Reply 20 ("[I]f the Mirkins' experts truly could not identify any documents reflecting prior period adjustments, it is not because such documents did not exist or XOOM did not produce them."). It is unclear what if anything the financial statement means in the context of the parties' dispute, and, in any event, XOOM's blame seems entirely misplaced. XOOM bore the burden at summary judgment and thus had every reason to substantiate its motion with evidence reflecting the incorporation of prior period adjustments in its margins—and failed to do so.

13

period adjustments and other supply costs into the margin, or did so in violation of the contract, the class will prevail together. Either way, the outcome will be determined by common evidence, rather than evidence that differs between class members.

Having discussed breach, I turn to damages. The Second Circuit instructs that "courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *In re U.S. Foodservice Pricing Litig.*, 729 F.3d at 123 n.8. XOOM principally argues that plaintiff has failed to demonstrate that damages are susceptible of measurement across the entire class because she has not proposed a model that "measure[s] *only* those damages attributable to" her theory of liability. Defs.' Opp'n 25 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). According to XOOM, the two proposed models are inadequate because the first treats any rate higher than the Total Cost number as impermissible, and the second arbitrarily incorporates the margin charged on XOOM's fixed rate product. *Id.* at 26. XOOM may be correct that the first damages model fails to accurately measure the damages attributable to XOOM's alleged liability, given plaintiff's concession at summary judgment that XOOM could charge a reasonable margin under the contract. *See* Op. & Order 6. But the second model is entirely consistent with plaintiff's theory. Under *Comcast*, "[c]alculations need not be exact, but . . . any model supporting a plaintiff's damages case must be consistent with its liability case." 569 U.S. at 35 (citation and quotation omitted). Whether plaintiff's second model, which calculates damages based on rate, cost, and margin, is accurate depends on the accuracy of the inputs, namely the supply cost and margin. But XOOM does not dispute that the algorithm itself is faulty—any measure of damages in this case would undoubtedly be based on the rate, cost, and margin. Plaintiff has therefore proposed a damages model consistent with her theory of liability.

Because plaintiff has identified a damages model that would apply to each class member, I find that damages are capable of measurement on a classwide basis. The damages formula would of course yield individualized damages calculations, but this is no barrier to class certification. *Roach*, 778 F.3d at 408 ("The Supreme Court did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations.").

In sum, because plaintiff's theory of liability raises issues of breach and damages common to the class that can be proven with common evidence and which predominate over individualized issues, I find that plaintiff has satisfied the Rule 23(a) commonality and Rule 23(b) predominance factors.

### D. Plaintiff's Claims are Typical of the Class Claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement, which "tend[s] to merge" with the commonality requirement, *Wal-Mart Stores*, 564 U.S. at 349 n.5 (quotation omitted), "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quotation omitted). The standard is "not demanding." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 379 (S.D.N.Y. 2015).

XOOM does not seriously contest that plaintiff's claim is typical of other electricity customers, but instead argues that her claim is not typical of the claims of natural gas customers because plaintiff received only electric service.[7] Though XOOM's natural gas supply costs

---

[7] XOOM does assert that Susanna is not typical of electricity customers who were charged allegedly "exorbitant and unconscionable" rates because her rates were based on XOOM's actual and estimated supply costs. Defs.' Opp'n 31. I ignore this argument because the merits of

15

necessarily differ from its electricity supply costs, there is no question that the form contract contained identical language for electric and natural gas customers. *Compare* Wittels Class Certification Decl., Ex. 11, *with id.* Ex. 12. And XOOM does not claim that it used a different rate-setting process for its electric and natural gas customers. Because the electric and natural gas customer claims arise from the same rate-setting process and will rely on similar legal arguments to prove liability, I have no doubt that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)); *see also Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015) ("[T]he claims only need to share the same essential characteristics, and need not be identical . . . ." (quotation omitted)). I thus find that the typicality criterion is satisfied.

### E. Plaintiff and Her Counsel Will Fairly and Adequately Protect the Class.

Rule 23(a)(4) requires that the lead plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors generally inform whether a named plaintiff is an adequate representative: "(1) absence of conflict and (2) assurance of vigorous prosecution." *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019) (quotation omitted). The adequacy inquiry encompasses class counsel, requiring that plaintiff's attorneys are "qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quotation omitted).

XOOM argues that plaintiff is an inadequate class representative because she has "shown no sign" that she will oppose her husband's claim against XOOM even though it "cannot . . . be in

---

plaintiff's claim are separate from whether her claim is typical of the class. *See Dover*, 321 F.R.D. at 54.

the best interest of the putative class" to have a class representative who lacks standing to sue in the first place. Defs.' Opp'n 32–33. Even assuming Susanna's marital relationship to her original co-plaintiff posed a conflict, this argument is moot now that Boris has been dismissed from the case. XOOM offers no other justification for Susanna's purported inadequacy, and I see no reason why she is not an adequate plaintiff. Mrs. Mirkin sat for a deposition and responded to written discovery requests. In her deposition she appears knowledgeable of and invested in the case, and she has no apparent conflicts with the class she would be representing. In addition, her counsel are well-qualified and experienced in litigating class actions, including similar cases against ESCOs. I find that adequacy has been satisfied.

### F. A Class Action is Superior to Other Available Methods in this Case.

The second and final requirement of Rule 23(b)(3) is superiority, which requires a plaintiff to show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The following four factors are particularly useful guides: (1) class members' interests in individually controlling the litigation; (2) the extent and nature of any other litigation concerning the controversy; (3) the interest in concentrating the litigation in one forum; and (4) the potential difficulties in managing the suit as a class action. Fed. R. Civ. P. 23(b)(3).[8]

"As the Supreme Court has said, Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130 (citing

---

[8] Though Rule 23(b)(3) describes these factors as pertinent to both predominance and superiority, "most courts analyze the Rule 23(b)(3)(A) to (D) factors solely in determining whether a class suit will be a superior method of litigation." 2 Newberg and Rubenstein on Class Actions § 4:68 (6th ed.).

*Amchem Prods., Inc.*, 521 U.S. at 617). Such is the case here. According to plaintiff, she suffered damages of approximately $6 to $15 per month that she was a XOOM customer. Given the size of these claims, any individual class member would have very little interest in spending the time and resources to litigate a claim individually. Thus, it is not surprising that I am aware of no individual litigation already initiated against XOOM by anyone covered under the proposed class definition.

The only superiority ground that XOOM contests is the manageability factor. Without much elaboration, XOOM summarizes its complaints as: "problems with [plaintiff's] liability theory, damage model, and individual claims would pose insurmountable difficulties in managing a class action." Defs.' Opp'n 33 (internal quotation marks omitted). For the reasons stated in my discussion of the other certification requirements, I disagree. Plaintiff has established that the case hinges on issues of common proof and has presented an acceptable damages model, and XOOM's arguments about the problems with plaintiff's individual claims are without merit. XOOM has suggested no other reason a class action is not superior to an alternative in this case, and I see none. This case involves a large class with small individual claims that become significant only in the aggregate. The class action mechanism is meant for this very situation, and I find that a class action is superior to any alternative. *Amchem Prods., Inc.*, 521 U.S. at 617.

## CONCLUSION

For the foregoing reasons, I certify the following class:

All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.

Excluded from the Class are the officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest, all federal, state and local government entities and

any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

Based on their work performed in this action to date and experience handling class actions generally, and because I find their representation to be fair and adequate, I appoint Wittels McInturff Palikovic as lead class counsel. *See* Fed. R. Civ. P. 23(g). I appoint Susanna Mirkin as class representative.

Within 21 days, class counsel shall submit a proposed form of notice to class members and a proposed plan for distributing notice. *See* Fed. R. Civ. P. 23(c)(2)(B).

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:      August 31, 2023
            Brooklyn, New York