# MDM Declaration Exhibit D

# No. 23-1267

In the United States Court of Appeals
for the Second Circuit

**Susanna Mirkin,**

*Plaintiff–Respondent,*

v.

**XOOM Energy, LLC, and
XOOM Energy New York, LLC,**

*Defendants–Petitioners.*

ON PETITION FOR REVIEW FROM AN ORDER CERTIFYING CLASS ON AUGUST 31, 2023
BY THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK
CASE NO. 1:18-CV-02949
THE HONORABLE ALLYNE R. ROSS

**REPLY IN SUPPORT OF DEFENDANTS' PETITION
FOR PERMISSION TO APPEAL PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

Michael D. Matthews, Jr.
Diane S. Wizig
MCDOWELL HETHERINGTON LLP
1001 Fannin St., Suite 2400
Houston, Texas 77002
Telephone: 713-337-5580
matt.matthews@mhllp.com
diane.wizig@mhllp.com

James M. Chambers
MCDOWELL HETHERINGTON LLP
1000 Ballpark Way, Suite 209
Arlington, Texas 76006
Telephone: 817-631-7561
james.chambers@mhllp.com

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1
ARGUMENT .................................................................................................................... 3

I.  The District Court Joined Dozens of Others in Employing an Improper Class Certification Standard. ........................................................................................... 3

II. The District Court Erred in Favor of Certification on Commonality and Predominance. ....................................................................................................... 5

   A.  The District Court Ignored the Lack of Common Answers for How Prior Period Adjustments Impacted Variable Rates. ..................................... 5
   B.  Plaintiff Cannot Prove Any Overcharges Because She Has No Evidence of a "Reasonable" or "Proportionate" Margin. ............................................ 9

III. The Court Erred in Favor of Certification on Typicality. ......................................... 10

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*In re Cablevision Cons. Litig.*,
    10 Civ. 4992, 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014)..............................10

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013).................................................................................1, 6, 7, 10

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019).......................................................................10

*In re Petrobas Secs.*,
    862 F.3d 250 (2d Cir. 2017) ................................................................................4

*S.E.C. v. Kern*,
    425 F.3d 143 (2d Cir. 2005) ............................................................................2, 4

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    293 F.R.D. 287 (E.D.N.Y. 2013).......................................................................10

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
    262 F.3d 134 (2d Cir. 2001) ............................................................................3, 5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................................6

**Rules**

Fed. R. App. P. 32................................................................................................1

Fed. R. Civ. P. 23 .......................................................................1, 2, 4, 5, 6, 7, 10

iii

**INTRODUCTION**

Plaintiff's answer confirms the need for immediate review. Plaintiff acknowledges the district court's stated preference for class certification, and then asks this Court to believe it did not affect the outcome. But the district court expressly "err[ed] on the side of class certification," improperly shifting the burden to XOOM. That error impacted the commonality, predominance, and typicality analyses, and the Order must be reversed.

Plaintiff tries to evade these problems by saying XOOM's rate-setting process—for six products, in fifteen utility zones, over (now) 129 months—was "uniform." As the district court found, however, that process was "not so simple." The variable rates in fact *varied* by month, zone, and product. And they did so not according to a formula or equation but based on monthly discussions and complex considerations subject to varying documentary and testimonial evidence.

Plaintiff also acknowledges that, under the district court's contract construction,[1] XOOM could charge a "proportionate" and "reasonable" margin, but

---

[1] Plaintiff wrongly argues that XOOM is re-litigating the merits. XOOM only references the summary judgment order because the certification analysis was "draw[n] in large part on the factual record developed at summary judgment," A-2 n.3, and because the two orders directly conflict. Plaintiff's argument is based on the same incorrect assumption the district court made—that Rule 23's requirements can be adjudicated without *any* merits' consideration. The district court was *obligated* to consider the merits insofar as they overlap with Rule 23's requirements, *see Comcast*

1

then suggests a jury can decide what that margin should have been for 5,600+ rates[2]—all without any evidence of what the rate should have been, any "overcharge" measure, or the full universe of costs factored into each rate.

In short, Plaintiff's answer proves she lacks evidence from which a jury could conclude "in one stroke" what 5,600+ different rates should have been, as North Carolina substantive law and Rule 23 require. There is no common proof, no common answer, and therefore neither commonality nor predominance.

Nor is there a typical plaintiff. Susanna Mirkin, who paid for residential electricity in Brooklyn for just six months in 2013, cannot rely on the same evidence to prove her claim as a commercial gas customer in the Catskills in 2023.

The class should not have been certified and, given the looming trial for 5,600+ fact-intensive determinations with no relevant evidence of how to measure any alleged overcharge, the Court should grant immediate review.

---

*Corp. v. Behrend*, 569 U.S. 27, 34 (2013), and its failure to do so is error worthy of immediate review.

[2] Plaintiff does not deny that the district court's contract interpretation means a class trial will require 5,600+ unique factual determinations, each relying on different documentary and testimonial evidence. She has therefore "effectively concede[d]" the point. *S.E.C. v. Kern*, 425 F.3d 143, 152 (2d Cir. 2005). Plaintiff nonetheless urges the Court to ignore this problem because XOOM first raised it in a sur-reply. Of course, XOOM was given leave to file that sur-reply because Plaintiff made new arguments and attached *all* her substantive evidence in reply. XOOM's argument thus was and is properly raised.

2

## ARGUMENT

Plaintiff presents no meaningful counter to XOOM's showing that interlocutory review is warranted under *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001). Plaintiff does not suggest that a "general preference" for class certification is appropriate, or that correction of that erroneous yet pervasive standard is not "of fundamental importance to the development of class actions." *Id.* at 40. Plaintiff's proclamation that the district court's *stated preference* for certifying a class somehow did not affect its decision is belied by the Order itself. And as for XOOM's showing that the district court's commonality, predominance, and typicality determinations were so erroneous they would "be inevitably reversed by this Court on appeal after final judgment," *id.* at 139, Plaintiff answers with misdirection and misstatements.

**I.   The District Court Joined Dozens of Others in Employing an Improper Class Certification Standard.**

The district court's improper preference for class certification, an oft-repeated error in this Circuit, is the kind of legal issue "of fundamental importance to the development of class actions" warranting interlocutory review. *Sumitomo*, 262 F.3d at 40. Plaintiff tries to dismiss it as just "a single quote" that did not impact the analysis. That is disingenuous. The district court voiced that preference in multiple

3

quotations and its own words;[3] it was instead "preponderance of the evidence" mentioned only "in a single quote." A-6.

Nor was the stated preference for certification an empty pronouncement. Plaintiff says the district court "found that each Rule 23 requirement was supported by a preponderance of the evidence," but that is fiction. Neither those words nor any indication that the correct standard was applied appears on the pages Plaintiff cites (or anywhere else). The district court not only *said* it would "err on the side of class certification," A-7, but *did so* for commonality, predominance, and typicality.

Plaintiff also argues that the district court's reliance on "post-certification procedural tailoring" prohibited by *In re Petrobas Secs.*, 862 F.3d 250, 274 (2d Cir. 2017), did not affect the Order because the district court cited that case elsewhere when discussing ascertainability. *See* A-7. Of course, citation of *Petrobras* for an irrelevant principal plainly does not suggest the district court followed the admonition that "the possibility of post-certification procedural tailoring" not affect the Rule 23 analysis. *Petrobras*, 862 F.3d at 274. The district court's *stated* reliance on post-certification "modification," like its *stated* "preference" for certification,

---

[3] *See* A-7 ("'[T]he Second Circuit's general preference is for granting rather than denying class certification.'" (citation omitted)); *id.* ("[D]istrict courts in this Circuit tend to err on the side of class certification, 'for it is always subject to modification should later developments during the course of the trial so require.'").

4

contravenes binding precedent and warrants immediate review.[4]

## II. The District Court Erred in Favor of Certification on Commonality and Predominance.

Plaintiff does not dispute North Carolina's requirement that she present evidence of the rates XOOM should have charged or Rule 23's mandate to show she can prove that amount on a class basis. Instead, she summarily claims that the alleged overcharge in 5,600+ variable monthly rates can be established in one stroke. But Plaintiff, like the district court, does not actually grapple with the record or address her proposed damage model's failure to account for either (A) actual supply costs, including prior period adjustments, which undisputedly were not reflected in Plaintiff's partial proxy for supply costs (i.e., the rate-setting workbook estimates), or (B) the proportionate, reasonable margin the district court held XOOM was entitled to charge.

### A. The District Court Ignored the Lack of Common Answers for How Prior Period Adjustments Impacted Variable Rates.

Emblematic of the district court's preference for certification, it erroneously concluded that, while "XOOM's arguments about the supply cost determination are well taken, they have little bearing on the narrow question of whether there are

---

[4] All but one of the class decisions Plaintiff cites as "analogous" apply state procedural law rather than Rule 23, and none are on point. *See* Pl. Ans. 1 n. 1. Moreover, half the cases settled soon after certification—underscoring the need for interlocutory review here. *See Sumitomo*, 262 F.3d at 139.

5

questions of law or fact common to the class as a whole." That focus on common *questions* ignored the Supreme Court's requirement that a movant establish "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). The existence of common questions is insufficient. *Id.*

The district court even acknowledged XOOM's arguments about the individualized inquiries that each rate would require. *See* A-12 (noting XOOM's argument that, "in the absence of a measurement for prior period adjustments, balancing costs, and inventory, plaintiff cannot prove breach . . . classwide"); A-13 (noting XOOM's argument that "use of employee emails to demonstrate the rate-setting process is not common proof because any conclusions from the evidence would require individualized determinations of the impact of any action discussed in those communications"). The district court also recognized that the question of the extent to which XOOM incorporated supply costs into each rate was "relevant to Rule 23(b)(3)'s predominance requirement."

Despite these acknowledgements, the district court refused to take the requisite "close look" at the evidence and determine how common *answers* could be produced, even if it "require[d] inquiry into the merits of the claim." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Had it done so, it would have realized there is *no* evidence—common or otherwise—of what the variable rates should have been.

6

But rather than perform that analysis, the district court said it "need not delve too far into the merits and decide at this stage how XOOM in fact set its rates, because that decision may be made by the factfinder at trial 'in one stroke.'" A-13. In this regard, the Order not only contravenes *Comcast* but also impermissibly shifted the burden of proof onto XOOM. A-12–13, 15.

Plaintiff's answer fails entirely to grapple with these errors. It does not—because it cannot—justify the district court's *express* importation of the summary judgment burden into its class certification analysis when it impermissibly concluded that *XOOM* should have produced evidence to *disprove* predominance. *See* A-13, n.6. ("XOOM bore the burden at summary judgment and thus had every reason to substantiate its motion with evidence reflecting the incorporation of prior period adjustments in its margins—and failed to do so.").

Moreover, Plaintiff's repeated assertion that no documentary evidence of prior period adjustments exists is false: *Plaintiff* cited such evidence below to support her assertion that "[p]rior period adjustments were 'captured through the budgeting process . . . .'" *See id.*; *see also* A-13, 23–24. In fact, the district court acknowledged "ample" evidence showing XOOM's actual supply costs are not captured in Plaintiff's damage model. A-35. While Plaintiff now wants to ignore the documentary evidence because she failed to fully develop it or account for it in her model, Rule 23 and this Court's precedents prohibit that approach.

7

The truth, as Plaintiff emphasizes, is that there was no set formula, no standardized methodology, and nothing to neatly package all the data and evidence for the factfinder to determine what each of the 5,600+ rates should have been.

Plaintiff therefore hopes this Court will believe her unsupported claim that "XOOM set variable rates via a uniform process." That claim derives from a selective quotation of XOOM's statement below that, contrary to Plaintiff's suggestion, shows the variable rate-setting process is *not* subject to common proof:

> XOOM's standard variable rates were always determined by [:]
>
> (1) starting with supply cost estimates made in rate-setting workbooks,
>
> (2) *deciding whether prior period adjustments should be made to account for variations between previous supply cost estimates and the costs XOOM actually incurred*, and
>
> (3) *adding a margin that incorporated prior period adjustments, balancing costs, other costs* to supply energy to the customer, and XOOM's profit.

A-76 (emphasis added). This fact-intensive process produced rates that decidedly were *not* uniform because the margin incorporated varying costs each month, including prior period adjustments.

Because the district court overlooked the need for common *answers* and improperly shifted onto XOOM the evidentiary burden to find predominance

8

satisfied despite "ample" evidence to the contrary, the Petition should be granted.[5]

### B. Plaintiff Cannot Prove Any Overcharges Because She Has No Evidence of a "Reasonable" or "Proportionate" Margin.

Plaintiff admits that evidence of the correct margin is required to prove both liability and damages for her overcharge claim. Only one of her models included any markup at all—a 19% margin Plaintiff says XOOM charged its fixed-rate customers. But Plaintiff has no evidence to suggest that margin is either "reasonable" or "proportionate" as the district court said is required. Quite the opposite, her expert disclaimed opining as to a reasonable margin, and the evidence Plaintiff cites shows XOOM's fixed-rate margin was *not* constant or proportionate.

Although Plaintiff bizarrely denies it, her expert readily conceded that he was not offering an opinion on a reasonable margin:

```
Q. Are you offering an opinion about what is an
acceptable or appropriate, a reasonable margin
aside from just using XOOM's fixed rate margin
[as a "proxy of what might be an acceptable
margin"]?

A. We haven't offered that opinion, we don't
have any information to do that.
```

---

[5] Even if jurors could ignore this "ample" evidence to "conclude that XOOM did not factor prior adjustments into its margin or that XOOM's practice of adjusting the margin to cover cost overruns and meet revenue goals was not permitted under the contract," they could not do so in one stroke for the class. Instead, they would have to assess 5,600+ rates individually based on diverse documentary and testimonial evidence from a period spanning more than a decade.

9

A-50. Because Plaintiff has no evidence of a "reasonable" margin, she cannot show what her rates—or those of the class—should have been. *See* Pet., pp. 14, 17–18.

Nor is her fixed-rate proxy margin evidence that a "proportionate" margin can be measured. Indeed, "19%" is itself a distortion and does not reflect a "proportionate" margin. The table Plaintiff cites shows *annual averages* for margins on four products over a six-year period that visibly fluctuated. In other words, 19% is an average twice removed: it is an *average* of 24 annual *average* fixed-rate margins.

Thus, the lack of evidence or a model from which an overcharge for any one of the 5,600+ rates can be determined precluded certification as a matter of law.[6]

### III. The Court Erred in Favor of Certification on Typicality.

XOOM's Petition established that Rule 23's typicality requirement was not satisfied because Plaintiff relied on scattershot evidence of rate-setting that was largely focused on the 2014 Polar Vortex event and did not present *any* evidence as

---

[6] Although Plaintiff says her fixed-rate model "hews closely" to other cases where *Comcast* was satisfied, those cases support XOOM's position that her fixed-rate model cannot measure an overcharge. *See Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 276, 278 (E.D.N.Y. 2019) (noting courts reject pricing methodologies that "do not attempt to isolate the premium due only to the alleged[]" misconduct); *In re Cablevision Cons. Litig.*, 10 Civ. 4992, 2014 WL 1330546, at *13 (E.D.N.Y. Mar. 31, 2014) (damages model must be "capable of measur[ing] on a classwide basis"); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 305 (E.D.N.Y. 2013) (defendant had "not challenged [plaintiff's] methodology for calculating damages, which . . . w[as] 'single, uniform and purely mechanical'").

10

to what her variable rates *should have been* in 2013. In response, Plaintiff focuses on an entirely different typicality argument XOOM made below. So, it is uncontested for purposes of this Petition that "Susanna has no evidence that the modest margins included in her rate were made up in any part of 'non-supply cost criteria,'" as opposed to permitted supply costs like prior period adjustments, and therefore, "even if the Mirkins could prove that some class members could state a claim under the legal theory that survived dismissal, Susanna would 'not be a proper plaintiff' to pursue that theory." A-43. It is similarly uncontested that the district court *expressly* "ignore[d] this argument," improperly concluding "the merits of plaintiff's claim are separate from whether her claim is typical of the class." A-15–16, n.7. That too was reversible error. Pet., pp. 19–20.

## CONCLUSION

The Court should grant the Petition and permit interlocutory appeal.

Respectfully submitted,

McDowell Hetherington LLP

By: */s/ Michael D. Matthews, Jr.*
    Michael D. Matthews, Jr.

*Attorney for Defendants-Petitioners*
*XOOM Energy, LLC and*
*XOOM Energy New York, LLC*

11