# Exhibit 1

```
1                    UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3    SUSANNA MIRKIN, individually
     and on behalf of all others      Case No. 1:18-cv-02949-ARR-RER
4    similarly situated, et al,

5               Plaintiffs,           Brooklyn, New York
                                      October 17, 2023
6    v.

7    XOOM ENERGY, LLC, et al,

8               Defendants.

9
                      TRANSCRIPT OF PRE-MOTION HEARING
10              BEFORE THE HONORABLE RAMON E. REYES, JR.
                      UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12   For the Plaintiffs:             Steven L. Wittels, Esq.
                                     James Burkett McInturff, III,
13                                   Esq.
                                     Wittels McInturff Palikovic
14                                   18 Half Mile Road
                                     Armonk, NY 10504
15
                                     Ethan Roman, Esq.
16                                   Wittels McInturff Palikovic
                                     305 Broadway
17                                   Ste Floor 7
                                     New York, NY 10007
18
     For the Defendant:             Michael D. "Matt" Matthews, Jr.,
19                                   Esq.
                                     David Villarreal, Esq.
20                                   Diane S. Wizig, Esq.
                                     McDowell Hetherington, LLP
21                                   1001 Fannin Street
                                     Suite 2400
22                                   Houston, TX 77002

23                                   Federal Defender's Office
                                     271 Cadman Plaza East
24                                   Brooklyn, NY 11201

25   Clerk:                          M.V.
```

```
1    Court Recorder:              Electronic Sound Recording

2    Transcription Service:       Chris Hwang
                                  Abba Reporting
3                                 PO Box 223282
                                  Chantilly, Virginia  20153
4                                 (518) 302-6772

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25
```

1        (Call to order)

2            THE COURT:  Good afternoon, this is Magistrate Judge

3    Reyes.  We're holding a pre-motion conference by telephone in

4    Mirkin v. XOOM, docket number 18-CV-2949.

5            Who's on for the Plaintiffs?

6            MR. WITTELS:  Good afternoon, Your Honor, Steven

7    Wittels, together with Burkett McInturff and Ethan Roman.  Good

8    afternoon.

9            THE COURT:  Who's on for XOOM?

10           MR. MATTHEWS:  Hi, Your Honor, this is Matt Matthews

11   for XOOM.  And also with me are Diane Wizig and David

12   Villarreal.

13           THE COURT:  Okay, so XOOM wants to make a motion to

14   stay pending (indiscernible) of Ross' general class

15   certification, yeah?

16           MR. MATTHEWS:  Yes, Your Honor.

17           THE COURT:  Hi bar, yes?

18           MR. MATTHEWS:  It is.  There are a number of cases

19   that are cited in Plaintiff's brief in a footnote where

20   district courts have denied motions to stay, but you know, we -

21   - this case is different, presents different circumstances than

22   those cases, which didn't identify any important legal issue

23   that would have given the 2nd Circuit a reason to take up the

24   case under Sumitomo and all of those cases where just subject

25   to abuse of discretion was just -- if taken up by the Court

1     would be subject to *de novo* review.

2             There -- some of those cases that Plaintiff cites are

3     even more extraordinary where, one, the trial date had already

4     been set three months later.  The notice had already issued.

5             In another, the plaintiffs had said they were going

6     to pursue the individual claim regardless of the outcome of

7     23(f).

8             And in another, the Rolopark (phonetic) case, the 2nd

9     Circuit had previously denied three other 23(f) petitions from

10    RBS in companion cases.

11            So I think the -- I'm happy to go through some of the

12    arguments from our 23(f) petition if you like, but we believe

13    that this case does present some different issues than those

14    did.

15            And that XOOM has certainly presented what, you know,

16    the Court would refer to as serious questions about the merits

17    of this decision, satisfies the first factor, the likelihood of

18    success on the merits.  And --

19            THE COURT:  Have you identified any cases where a

20    23(f) stay has been granted a district court order or by the

21    circuit?

22            MR. MATTHEWS:  Yes, Your Honor.  They're just older

23    than Plaintiff cases.  That was the point Plaintiff was making

24    was that not that it never happens, but our cases are older

25    than theirs.

1          THE COURT:  I want to understand your argument of

2    common proof.

3          MR. MATTHEWS:  Sure.

4          THE COURT:  Alleged 5600 or whatever the number is

5    mini trials that will have to take place?

6          MR. MATTHEWS:  Yes, Your Honor.

7          THE COURT:  Is it that the proof with respect to

8    individual rate determinations is not common or proof I guess

9    between the rate determination not common?

10          MR. MATTHEWS:  Both.  So I'm happy to provide a

11    little bit more explanation on that.  So the -- our argument,

12    contrary to what Plaintiffs have argued, is not a challenge to

13    the Court's summary judgment contract interpretation.

14          I mean, we -- to be clear, we disagree with it, but

15    that's not -- the 23(f) petition is explicitly based on the

16    Court's contract interpretation of summary judgment.  It

17    explicitly assumes that construction.

18          And the Court's construction at summary judgment was

19    that XOOM's contract required that variable rates be determined

20    by XOOM's actual and estimated supply costs, each month, each

21    rate.

22          That is not an interpretation that either of the

23    parties put forward.  So the consequence of that interpretation

24    isn't something that the parties briefed in class -- in the

25    class cert. briefs.

1          So the -- that record I think and those arguments as

2    to what they contract interpretation would require at the trial

3    wasn't fully developed in the class cert. briefing.

4          But what it would require at trial if the contract

5    and the Court found at summary judgment that there are fact

6    questions about whether or not XOOM determined this rate based

7    on supply costs, not just considered them, but determined those

8    rates based on that, that means that each month, and there are

9    so far 129 months and counting in the class period, that there

10    will have to be a consideration of what XOOM did to set those

11    rates.

12          In New York, there are 40 different rates that were

13    set each month in the different utilities zones and different

14    pricing plans.  And there's, not contrary to Plaintiff's

15    assertion, that process was not uniform.

16          Each month, XOOM started with a spreadsheet that

17    included an estimate of rates, but what follows from that was a

18    series each month this happened a series of many meetings

19    between different individuals about market considerations,

20    different, you know, weather, different prior periods, whether

21    costs had been higher or lower during those prior periods.  And

22    the contract, as Your Honor probably knows, allowed XOOM to

23    include prior period adjustments in its rates.

24          There is evidence, both documentary and testimonial

25    evidence, that XOOM did consider prior period adjustments in

1    those rates, but they were not reflected in those spreadsheets.

2    Because they're not reflected in those spreadsheets, that means

3    that they will have to be considered through testimonial

4    evidence and other evidence like emails.

5            I'll give you an example.  In early 2014, Plaintiff

6    submitted this evidence in support of their summary judgment

7    argument.

8            There are emails reflecting that XOOM made

9    adjustments to its variable rates based on losses that it

10   incurred due to the polar vortex.  That happened at the

11   beginning of 2014.

12           Now that's a very specific consideration that only

13   applied during that limited time period.  There's no allegation

14   that XOOM for the 128 months that followed was factoring in

15   polar vortex pricing impacts into its variable rates.

16           So those sorts of considerations are going to have to

17   take place for each month in the class period for each of the

18   XOOM utility zones in New York, which as I said, it's 40

19   different rates.

20           The Plaintiff does not have any uniform proof to make

21   that showing.  It's going to be a month by month, rate by rate

22   consideration based on testimonial evidence and a variety of

23   documents.

24           THE COURT:  But the question that I had asked

25   originally was whether the -- a particular month rate

1    determination subject to common proof.

2              And I think whether it's different than the next

3    month's proof or the months after that, each individual month

4    is subject to common proof, whether it's testimony, emails,

5    spreadsheets.  You know, all of that evidence applies to that

6    month's rate determination (indiscernible).

7              MR. MATTHEWS:  Well, not necessarily.

8              THE COURT:  Oh.

9              MR. MATTHEWS:  Not necessarily because there are 40

10   different rates each month that are set in New York.  So the

11   rates that set in the Niagara utility zone is different from

12   that that's set in Con Ed.  The electricity rates in upstate

13   New York vary in ways that are different from those that would

14   be in the City.

15             THE COURT:  And they set the rates differently for

16   each of those -- the 40 different zones?

17             MR. MATTHEWS:  Correct.

18             THE COURT:  But looking at Niagara, Month 1, that's

19   subject to the same proof throughout, you know, so every class

20   member that had -- that's for that zone, same proof, right?

21             MR. MATTHEWS:  I guess my point is that there are 40

22   different zones.  So for a customer in any particular utility

23   zone, the rate will be the same for the group of customers that

24   are on the same plan in that same utility zone.

25             But there will be 40 different considerations each

1    month.  And there are 128 or 29 at this point months in the

2    class period.

3          THE COURT:  All right, continue.  Are there any other

4    issues you want to raise?

5          MR. MATTHEWS:  I'm sorry, Your Honor, I didn't catch

6    that last part?

7          THE COURT:  No, go ahead, go ahead.  I cut you off.

8    You were telling me why you should be making this motion.  Go

9    ahead.

10          MR. MATTHEWS:  Oh, okay, sure, anything else on the

11    individualized month to month considerations?

12          THE COURT:  No, I'm not sure I agree with you on the

13    ultimate point, but I don't need any more information now.

14          MR. MATTHEWS:  Okay, well, I guess just to sum up in

15    case I haven't been clear about that issue, it's within a

16    utility zone in a month, there would be common proof for the

17    customers within that utility zone for that month.

18          But the issue is that there are 40 different rates

19    across a variety of utility zones and there's not common proof

20    to show that in any one month.

21          And the evidence from month to month is also

22    individualized.  There's not common proof month to month about

23    how XOOM sets the rates.

24          That's, again as I said, not something that the

25    parties briefed because the Court's contract interpretation was

1   somewhat different than the parties argued.

2           And the Court, because it has found now that there

3   are fact questions about how XOOM determines its rate, that

4   determination's left for trial and it will require, as we said,

5   those individualized considerations within a month and from

6   month to month.

7           And that's where the 5,600 is the 40 times 128.  And

8   I guess I would also point out there -- it's not just the same

9   product in each month.  It's not just the, you know, we have 40

10  different electricity utilities.

11          The class that's been certified includes gas as well.

12  So the gas considerations are different than those that apply

13  for electricity.  And the supply costs that factor into that

14  price were different than the supply costs that factor into the

15  electricity rates.

16          THE COURT:  All right, anything else you need to let

17  me know?

18          MR. MATTHEWS:  Not on that issue.  That's one of the

19  issues addressed in the 23(f) appeal.  The other is our

20  contention that the Court applied a -- the wrong legal standard

21  by assuming a preference for class certification.

22          That, we believe, makes this appeal subject to *de*

23  *novo* review and all those 23(f) considerations I just went

24  through subject to a *de novo* review rather than abuse of

25  discretion.

1        With respect to any sort of negative impact on the

2   class, the class' contract claim, you know, we'll continue to

3   include pre-judgment interest if the case is stayed.

4        There's also, you know, as the case -- many cases

5   including some of Plaintiffs' cases recognize, there can be

6   potential confusion created if a notice goes out to the class

7   members, and then, the class decision is vacated or withdrawn.

8        The case -- there -- Plaintiffs' cases say that's not

9   a risk here because the Defendant hasn't pointed out any reason

10  why the class decision should be reversed, but I would, you

11  know, argue that we have done that here, so that that

12  consideration is a more meaningful one.

13       That you know, the other factor's judicial economy is

14  a public interest factor consideration.  And the harm to XOOM

15  from moving forward to prepare for, again, I said would be a

16  host of many trials covering 10 plus years involving, you know,

17  not just XOOM employees, but XOOM's efforts to find former

18  employees who were involved in those pricing decisions years

19  and years ago since that testimony will be key at trial.

20       THE COURT:  Mr. Wittels, do you want to respond or

21  someone else?

22       MR. WITTELS:  Your Honor, thanks.  If Mr. McInturff

23  would take the lead on that, if that's okay?

24       MR. MCINTURFF:  Sure.  Good afternoon, Your Honor,

25  this is Burkett McInturff on behalf of the Plaintiffs in the

1    class.

2            Just to respond briefly, this -- the Defendant's

3    application really runs head long into Judge Deary's well-

4    reasoned opinion in Price that, you know, we're aware Your

5    Honor's assigned to that case.

6            They -- in terms of likelihood of success on the

7    merits, with all due respect to my adversary, the theory that

8    is at issue in this case was briefed to the District Court.

9            Judge Ross considered our theory.  She considered our

10   damages model.  She endorsed it.  She found that the central

11   issue in the case is whether or not the Defendants' rate

12   setting process unfolded in the way that XOOM claims it

13   unfolds.

14           Critically, it's Plaintiffs' position that the

15   documentary evidence that was produced in the case, as well as

16   testimony, doesn't support that.  That in fact, the rate

17   setting process deviated substantially from the contract terms.

18           You know, most critically, the contract was

19   ultimately amended several years down the line to incorporate

20   its pricing strategies.

21           And at deposition, XOOM's witnesses admitted that

22   they actually never changed their conduct.  They just updated

23   the contract to make it more reflective of what they've been

24   doing all along.

25           Judge Ross understood that the challenge to XOOM's

1      pricing practices is a uniform challenge.  The Defendant raised

2      the 5,600 trials issue at class certification.  That was

3      considered and rejected by Judge Ross.  That's as to prong 1 of

4      the merits.

5             And as, excuse me, as Judge Deary noted in the Price

6      v. Progressive, that requires in order to satisfy that prong,

7      it requires a substantial showing that the district court's

8      decision is questionable.

9             XOOM has not done that.  They've not even come close

10     to doing that.  In fact, this type of action is well

11     established.  It's a breach of a form contract case against an

12     independent energy company.

13            There's at least four other class certification

14     rulings finding in favor, certifying the class on the exact

15     same claims, requiring the exact same type of factual analysis.

16            In fact, it wasn't cited in our letter, but there was

17     a decision denying class cert. in the District of Pennsylvania

18     that went up to the 3rd Circuit.

19            And the 3rd Circuit reversed the denial of the class

20     certification because it's -- we're fundamentally interpreting

21     a form contract that is given to consumers without their

22     ability to negotiate it, where this is a -- cases like these

23     raise questions of uniform conduct.

24            So XOOM has not come close to making the substantial

25     showing that the District Court's decision is questionable.

1    Again, that's why in the last 10 years, we haven't been able to

2    locate a single case that stayed a -- that stayed the

3    underlying district court case while there was a Rule 23(f)

4    petition pending.

5         XOOM cited the, if I'm pronouncing it right, <u>Petrobas</u>

6    case that was stayed.  That was actually stayed by the 2nd

7    Circuit.  So it's just incredibly rare that the district courts

8    will stay a case following a class certification ruling.

9         Here, in particular, I mean, the -- Judge Ross' class

10   certification ruling came just two weeks after a summary

11   judgment ruling.

12        We've now -- the Court as we put in our paper -- in

13   our papers, the Court had the benefit of hundreds and hundreds

14   of pages of briefing and evidence and was well within its

15   discretion to certify the class.

16        Concerning the other category of whether XOOM's

17   appeal raises a developing area of law that is critical to the

18   development of the law class actions, as Judge Deary noted in

19   <u>Price</u>, even -- and this is quoting <u>Sumitomo</u> at 262 F.3d at 140,

20   even "a novel legal question will not compel immediate review

21   unless it is of fundamental importance to the development of

22   the law of class actions."

23        The Defendants have raised an issue about whether or

24   not Judge Ross applied the wrong standard, but as set forth in

25   our response to their 23(f) petition, they show no proof that

1    this actually occurred.  They take a couple of snippets out of

2    context and ignore the Court's well-reasoned opinion.  So we

3    don't think that there's really any hope on the merits of the

4    23(f) petition.

5           And as for the other prongs, irreparable injury, harm

6    to the Plaintiffs and the public interest, the <u>Price</u> decision

7    is directly on point.  XOOM shows that it is -- that all three

8    of those criteria do not favor XOOM.  They, in fact, favor

9    Plaintiffs.

10          And I will note that we were able to work out a -- an

11   agreeable class notice program.  You know, the Defendants

12   aren't objecting to the notice program.

13          And so, we think that the correct path forward is for

14   Your Honor to deny any stay application, enter the order, which

15   is not objected to other than for the stay, and to allow us to

16   move this case forward to the notice process.

17          THE COURT:  While I'm skeptical where a stay is

18   appropriate here, I'll let XOOM make its motion.

19          MR. MATTHEWS:  Thank you, Your Honor.

20          THE COURT:  How many time do you need?

21          MR. MATTHEWS:  I'll do my best to change your mind.

22          THE COURT:  How much time do you need?

23          MR. MATTHEWS:  May we have until November the 3rd?

24          THE COURT:  That's fine.

25          Mr. McInturff, how much time do you need to oppose?

1        MR. MATTHEWS:  I'm also happy to, you know,

2   self-impose some page limits on the briefing to, you know,

3   we've already submitted a whole lot of briefing to the Court on

4   a variety of issues.  I think, you know, 10 or 15 pages is all

5   we need.  If, you know, for brief response and then, you know,

6   a reply of five pages.

7        THE COURT:  That's fine.  November 3rd for the

8   motion.

9        MR. MCINTURFF:  I think --

10        THE COURT:  How much time do you need to oppose?

11        MR. MCINTURFF:  Two weeks on the 17th?

12        THE COURT:  Okay.

13        MR. MATTHEWS:  With -- Your Honor, with Thanksgiving

14   following that next period, can we have until December the 1st

15   to reply?

16        THE COURT:  And the page limits, 15 pages for the

17   motion and opposition and five pages for the reply.

18        MR. MATTHEWS:  Thank you, Your Honor.

19        MR. MCINTURFF:  Your Honor, I apologize.  I didn't

20   hear.  Did you say 15 for the opposition?

21        THE COURT:  Yeah, do you need more than that?

22        MR. MCINTURFF:  No, no, I just couldn't -- there was

23   a -- I think someone was clearing her throat so I just couldn't

24   hear you.

25        THE COURT:  That was me, sorry, got a little cough.

1    All right, okay, anything else?

2              MR. MCINTURFF:  Well, Your Honor, we do have the

3    application for the notice plan that was ordered by Judge Ross

4    that we submitted.

5              Plaintiffs would ask that notwithstanding the

6    Defendants' request to brief the stay, that we go ahead and get

7    that so ordered and going because it's not -- notice wouldn't

8    have -- will not have gone out by the time the briefing is

9    concluded on the stay motion.  So, that way, at least, we're

10   not losing time while there's briefing.

11             MR. MATTHEWS:  Your Honor, this is Matt Matthews for

12   XOOM.  I think with the short briefing schedule that we've laid

13   out, I would ask that the Court consider the stay motion before

14   moving forward with the notice plan.  That's the whole point of

15   our request for a stay.

16             MR. MCINTURFF:  Sorry, I should clarify.  I mean, we

17   could hold notice itself in abeyance, but we don't need to wait

18   -- await the production of the class list or getting the

19   administrator going and the, you know, and the website getting

20   up and all of the -- or getting ready to go.  We don't need --

21   you know, we built in the notice order that we submitted to

22   Your Honor wouldn't have notice going out for at least 60 days

23   from now.

24             So there's quite a bit of work in the interim that

25   needs to occur.  And we could certainly get that work going

1    pending any ruling on a stay request.

2              THE COURT:  And the only --

3              MR. MCINTURFF:  That --

4              THE COURT:  The only work during that period of time

5    for XOOM is producing the class list?

6              MR. MCINTURFF:  That's -- that and, you know, some

7    minor approval, you know, making sure that there's no objection

8    to the website and finalized forms of notice, but that's not

9    material.

10             MR. MATTHEWS:  That's right, Your Honor.  I mean,

11   again, we would -- trying to kind of put a hold on additional

12   work.  That's the heart of the stay request.

13             THE COURT:  (Indiscernible.)

14             MR. MATTHEWS:  It's producing the class list and

15   taking a look at website for approval is what would be

16   required.

17             THE COURT:  Minimal.  All right, I'll approve the --

18   I'll approve that motion.  Number is it -- it's number 156 on

19   the docket if I'm not --

20             MR. MCINTURFF:  That is correct.  And there's a

21   proposed order that is 156-1.

22             THE COURT:  Yeah, okay.  I'll take care of that

23   offline.  All right, that's it?

24             MR. MATTHEWS:  That's it from XOOM, Your Honor.

25   Thank you.

1          THE COURT:  Okay.

2          MR. MCINTURFF:  That's it from Plaintiff.

3          THE COURT:  Thank you, folks.  Take care.

4          MR. MCINTURFF:  Thank you, Your Honor.

5          MR. MATTHEWS:  Oh, Your Honor?

6          THE COURT:  Yes.

7          MR. MATTHEWS:  I'm sorry, one clarification.  The

8   website would not go live until after the Court rules on the

9   stay order, correct?

10         I think the notice proposal that Plaintiff has

11  submitted would have the website going live.  Mr. McInturff's

12  correct that the notices wouldn't go out until the stay issue

13  is dealt with, but I think under the submitted order, the

14  website would go live.

15         MR. MCINTURFF:  We would agree to keep it in the

16  background.  The only reason the website goes live a few days

17  before notice is issued is so that Google has a chance to crawl

18  it, an index that says that it's searchable.

19         So we can -- we would hold that -- we would hold the

20  website in abeyance and then, you know, assuming the stay

21  motion is denied, we would sort of pick up from that point.

22         THE COURT:  Okay.

23         MR. MATTHEWS:  Understood.  So the website and the

24  notice would be held until the Court rules on the stay.

25         THE COURT:  Yes.

1          MR. MATTHEWS:  Thank --

2          MR. MCINTURFF:  But we'll just to be clear, we'll get

3    it ready like we'll get the notice.  So we'll work to get the

4    website ready to go and resolve any issues, so that assuming

5    the Court denies the stay, we'll then we'd be able to proceed,

6    you know, at deliberate speed.

7          THE COURT:  Okay.

8          MR. MATTHEWS:  Understood.

9          THE COURT:  All right, thank you.

10          MR. MATTHEWS:  Thank you.

11          MR. MCINTURFF:  Thank you, Your Honor.

12          MR. WITTELS:  Thank you.

13        (Proceedings concluded)

1          **CERTIFICATE**

2

3

4          I, Chris Hwang, court approved transcriber, certify

5     that the foregoing is a correct transcript from the official

6     electronic sound recording of the proceedings in the above-

7     entitled matter.

8

9

10

11

12

13     _____          November 1, 2023

14     Chris Hwang                    Date

15     Court Reporter

16

17

18

19

20

21

22

23

24

25