Exhibit 3

# No. 23-1267

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated,

*Plaintiff-Respondent*,

v.

XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,

*Defendants-Petitioners*.

ON PETITION FOR REVIEW FROM AN ORDER CERTIFYING CLASS ON AUGUST 31, 2023
BY THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK
CASE NO. 18 CIV. 2949
THE HON. ALLYNE R. ROSS PRESIDING

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE
TO FILE REPLY IN SUPPORT OF PETITION FOR PERMISSION TO
APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

Ethan D. Roman
J. Burkett McInturff
Steven L. Wittels
**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862

*Lead Class Counsel for Plaintiff and the Class*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................1

I.     XOOM MAKES NO ARGUMENT AS TO WHY THE COURT
SHOULD DEPART FROM THE FEDERAL RULES OF
APPELLATE PROCEDURE'S DISALLOWANCE OF REPLY
BRIEFS ................................................................................... 1

II.    IF THE COURT GRANTS XOOM'S MOTION, IT SHOULD
FURTHER CONSIDER PLAINTIFF'S BRIEF RESPONSE.................. 4

      A.    XOOM's Uniform Rate-Setting Process Is a Proper Basis
for Finding That the Common Question of XOOM's
Breach Can Be Answered "In One Stroke" ....................................4

      B.    Plaintiff's Damages Model Uses a Simple Formula to
Determine Classwide Damages Consistent with Her
Theory of Liability ........................................................................10

      C.    XOOM's Typicality Argument Is a Merits Argument
Based on Common Defenses .........................................................12

      D.    XOOM Wrongly Speculates That Courts In This Circuit
Are Applying the Incorrect Legal Standard for Rule 23 .............12

CONCLUSION ...................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Chavez v. Occidental Chem. Corp.*,
    35 N.Y.3d 492 (2020)..................................................................................3

*Collins v. Anthem Health Plans, Inc.*,
    880 A.2d 106 (Conn. 2005).........................................................................3

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ........................................................... 9, 10, 11, 15

*Galloway ex rel. Melissa Galloway Snell Living Tr. Dated May 1, 2018*
    *v. Snell*,
    885 S.E.2d 834 (N.C. 2023) .......................................................................7

*Gillis v. Respond Power, LLC*,
    677 F. App'x 752 (3d Cir. 2017)................................................................4

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) ...........................................................11

*In re Cablevision Cons. Litig.*,
    No. 10 Civ. 4992, 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014) ......................11

*In re Constar Int'l Inc. Sec. Litig.*,
    585 F.3d 774 (3d Cir. 2009) .....................................................................14

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ......................................................... 13, 16

*In re Petrobras Secs.*,
    862 F.3d 250 (2d Cir. 2017) .....................................................................15

*Johnson v. Nextel Commc'ns, Inc.*,
    780 F.3d 128 (2d Cir. 2015) ......................................................... 10, 13

*Pryce v. Progressive Cas. Ins. Co.*,
    No. 19 Civ. 1467 (RJD) (RER), 2022 WL 2467013
    (E.D.N.Y. June 10, 2022) ..........................................................................4

*Rodriguez v. Kaiaffa, LLC*,
 253 A.3d 13 (Conn. 2020) ...................................................................3

*S.E.C. v. Kern*,
 425 F.3d 143 (2d Cir. 2005) ................................................................8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 293 F.R.D. 287 (E.D.N.Y. 2013) .......................................................11

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
 262 F.3d 134 (2d Cir. 2001) .................................................. 3, 13, 15

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................. 5, 12, 13

*Whitlock v. FSL Mgmt., LLC*,
 No. 10 Civ. 562 (JHM), 2012 WL 2774446 (W.D. Ky. Dec. 21, 2012) ..............4

**Statutes**

N.Y. Gen. Bus. L. § 349 .......................................................................11

**Rules**

Conn. Prac. Book §§ 9-7–9-10 ..............................................................3

Fed. R. App. P. 5(b)(2) ...........................................................................1

Fed. R. App. P. 5(b)(3) ...........................................................................1

Fed. R. App. P. 27(a)(4) .........................................................................2

Fed. R. App. P. 28(c) ..............................................................................2

Fed. R. Civ. P. 23(a) ..............................................................................2

Fed. R. Civ. P. 23(b) ..............................................................................2

Fed. R. Civ. P. 23(f) ..................................................................... 1, 2, 4

N.Y. CPLR § 902 ...................................................................................3

## **INTRODUCTION**

Neither the Federal Rules of Appellate Procedure nor the Court's Local Rules authorize a petitioner to file a reply brief in support of a petition for permission to appeal. Yet XOOM does not even try to justify departing from those Rules and instead assumes that merely because reply briefs were permitted in a handful of other cases, one should be permitted here. Moreover, XOOM's proposed reply (ECF No. 28 at pp. 5–20, "Reply") is not a "reply" in any sense of the word; it simply rehashes XOOM's Rule 23(f) Petition (ECF No. 1, "Petition") and doubles down on XOOM's improper attempt to question the District Court's motives for its well-reasoned and amply supported findings of law and fact. XOOM's wish to have the last word is insufficient reason to depart from the clear briefing framework established by the Rules. XOOM's motion to file a reply should be denied.

## **ARGUMENT**

### I. **XOOM MAKES NO ARGUMENT AS TO WHY THE COURT SHOULD DEPART FROM THE FEDERAL RULES OF APPELLATE PROCEDURE'S DISALLOWANCE OF REPLY BRIEFS**

Federal Rule of Appellate Procedure 5 clearly lays out a ***two-step*** briefing process for a litigant seeking a discretionary appeal: the petitioner files its petition, and the respondent answers that petition. *See* Fed. R. App. P. 5(b)(2). Additional briefing is not authorized. *See* Fed. R. App. P. 5(b)(3) ("[t]he ***petition*** and ***answer*** will be submitted without oral argument" (emphasis added)).

1

By contrast, when reply briefs are authorized, the Rules are explicit. *See, e.g.*, Fed. R. App. P. 27(a)(4) ("Any reply to a response must be filed within 7 days[.]"); *see also* Fed. R. App. P. 28(c) ("The appellant may file a brief in reply to the appellee's brief."). Indeed, XOOM acknowledges that Rule 5 does not "expressly permit an opportunity to file a reply in support of a Rule 23(f) petition," ECF No. 28 at 1 ("Motion"). Nevertheless, XOOM casts Rule 5's silence (and a few reply briefs allowed in other cases) as grounds for proceeding with its unorthodox Motion. *Id.*

That is plainly incorrect, and XOOM's rationale is inadequate. Tellingly, XOOM does not even try to explain why a reply is necessary, or why deviating from Rule 5 is justified. This is because there is no such justification. XOOM's Reply is unnecessary because it simply rehashes and inflates an earlier refrain, namely XOOM's theory that the District Court's **stated and actual** application of the preponderance of the evidence standard was an abuse of discretion because the District Court supposedly revealed that its August 31, 2023 Opinion and Order Granting Plaintiff's Motion for Class Certification (ECF No. 152, "Order") was driven by a "preference" for class certification.

Yet XOOM does not—and cannot—dispute that the District Court conducted a 19-page "rigorous analysis" to ensure "that the prerequisites of Rule 23(a) and Rule 23(b) have been satisfied by a preponderance of the evidence." A-6 (quotation omitted). Nor can XOOM deny the 21-page factual analysis "detailed" in the

District Court's summary judgment opinion that was incorporated into the Order. A-2. Instead, XOOM's Reply seeks to amplify a few words from the Order into a question of "fundamental importance to the development of class actions" in this Circuit. Reply at 3 (quoting *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001)). Notably, XOOM's Reply, like its Petition, fails to marshal ***any*** case law in support of its attempt to stave off judgment on the merits by manufacturing an appellate issue where there is none. This is both telling and dispositive.

In short, given both this Court's and the Federal Rules' choice to define the briefing on a petition for interlocutory appeal to exclude a reply, and because XOOM's Reply does nothing more than repackage the Petition's arguments, the Motion should be denied.[1]

---

[1] XOOM also notably fails to explain why this Court should disregard the many other courts that certified classes of consumers in highly similar ESCO breach of contract cases. *See* Plaintiff's Opposition (ECF No. 23, "Opp'n") at 1–2. XOOM complains in a footnote that three of the four similar class certification opinions apply "state procedural law," Reply at 5, but ignores that those state procedures (New York's CPLR § 902 and Connecticut Practice Book §§ 9-7–9-10) closely track Rule 23. *See Chavez v. Occidental Chem. Corp.*, 35 N.Y.3d 492, 503 (2020) ("CPLR article 9 was modeled on similar federal law, specifically, Federal Rule[] of Civil Procedure 23."); *Rodriguez v. Kaiaffa, LLC*, 253 A.3d 13, 27 n.15 (Conn. 2020) ("Because our class certification requirements are similar to those embodied in rule 23 of the Federal Rules of Civil Procedure, and our jurisprudence governing class actions is relatively undeveloped, we look to federal case law for guidance . . . ." (quoting *Collins v. Anthem Health Plans, Inc.*, 880 A.2d 106, 114 (Conn. 2005))). Moreover, as the Third Circuit recognized in reversing a district court's refusal to

*footnote continued on next page*

3

## II. IF THE COURT GRANTS XOOM'S MOTION, IT SHOULD FURTHER CONSIDER PLAINTIFF'S BRIEF RESPONSE

### A. XOOM's Uniform Rate-Setting Process Is a Proper Basis for Finding That the Common Question of XOOM's Breach Can Be Answered "In One Stroke"
*(Responding to Petitioners' Point II.A, Reply at 5–9)*

The District Court made clear that "[t]he question at the center of this suit is whether the variable rates XOOM charged its customers were 'based on XOOM's actual and estimated supply costs.'" A-3. The District Court then found that the "central issue common to all class members" is which of XOOM's costs constitute "supply costs" under the contract, "an issue the factfinder can resolve through witness testimony, expert testimony, and documents and communications related to the rate-setting process." A-13. The District Court also correctly found that this question can be ***answered*** "in one stroke." *Id.* Nevertheless, XOOM's Reply

---

certify an ESCO breach of contract class action, "[b]ecause form contracts should be interpreted uniformly as to all signatories, . . . federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment." *Gillis v. Respond Power*, *LLC*, 677 F. App'x 752, 756 (3d Cir. 2017) (collecting cases). XOOM is also wrong to claim that because two of the four cases "settled soon after certification," that somehow underscores the need for interlocutory review. If that "theory carried the day," Rule 23(f) petitions "would be granted as a matter of course, since the certification of every class imposes at least some settlement pressure on defendants." *Pryce v. Progressive Cas. Ins. Co.*, No. 19 Civ. 1467 (RJD) (RER), 2022 WL 2467013, at *3 (E.D.N.Y. June 10, 2022); *see also Whitlock v. FSL Mgmt., LLC*, No. 10 Civ. 562 (JHM), 2012 WL 2774446, at *2 (W.D. Ky. Dec. 21, 2012) (settlement pressure following certification "does not demonstrate that [d]efendants face any different risk than any defendant to a class action faces.").

4

distorts the Order to claim that the District Court's "focus on common *questions* ignored the Supreme Court's requirement that a movant establish 'the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" Reply at 6 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original)). Not so.

In its Reply—as well as its opposition to class certification—XOOM admits that it employs a uniform rate-setting approach because it ***always*** set variable rates by:

(1) starting with supply cost estimates made in rate-setting workbooks,

(2) deciding whether prior period adjustments should be made to account for variations between previous supply cost estimates and the costs XOOM actually incurred, and

(3) adding a margin that incorporated prior period adjustments, balancing costs, other costs to supply energy to the customer, and XOOM's profit.

Reply at 8; Opp'n at 2–3.

At summary judgment, the District Court held that because XOOM's contract required it to "base" variable rate fluctuations on its supply costs, the contract "required the variation in the variable rates to be determined solely by XOOM's actual and estimated supply costs." A-33. Although XOOM could add a margin to its supply costs, any "margin would have to remain proportionate, but not equal to the supply costs over time." A-32. XOOM's predicament now is that the pricing

5

methodology it admittedly "always" used unmistakably violates the District Court's holding that the contract's pricing term permits only a consistent margin.

Because it likely saw the District Court's summary judgment ruling on the horizon, XOOM staked its defense of Class Members' common claim on the notion that XOOM somehow incorporated supply costs into its margin (separate from the "Total Costs" contained in its rate-setting workbooks, and undocumented in XOOM's files) and thus did not violate the District Court's proportionate margin construction of the contract.

At class certification, the District Court found that Plaintiff offered common proof that XOOM either did not actually incorporate supply costs into its margin, or that if it did, it disregarded those costs in favor of other considerations, notably its "revenue goals," in a way that breached the contract. A-13; *see also* A-36 ("it appears that XOOM's rate-setting decisionmakers were primarily concerned with meeting revenue goals"). As the Order makes clear, the question of whether XOOM's rate setting practices breached the contract is a question that can be *answered* "in one stroke." A-13.[2] Therefore, and as XOOM's admission about how

---

[2] XOOM's complaints about the distinction between "common questions" and "common answers," Reply at 6, misrepresent the record. The District Court found that the "common question" of breach was "undoubtedly capable of common *resolution*." A-10 (emphasis added). Similarly, if XOOM breached, Plaintiff's "single damages model" can apportion liability. *Id.*

it "always determined" its rates makes clear, this case presents a paradigmatic case for class treatment.

XOOM's Reply also claims that the District Court's Rule 23 commonality finding was an abuse of discretion because Plaintiff "suggests a jury can decide what that margin should have been for 5,600+ rates—all without any evidence of what the rate should have been, any 'overcharge' measure, or the full universe of costs factored into each rate." Reply at 2. To be sure, because the District Court found that the contract requires a consistent margin, A-32, XOOM is correct that the factfinder will determine what the proportionate margin should have been, *see Galloway ex rel. Melissa Galloway Snell Living Tr. Dated May 1, 2018 v. Snell*, 885 S.E.2d 834, 836 (N.C. 2023) (where a contract is ambiguous, its "effect is a factual question for the jury").[3] XOOM's "5,600+" rates claim is simply a red herring: the District Court's contract construction requires XOOM's margin to be proportionate across all "5,600+" rates, A-32, and the remaining question—whether XOOM properly included supposed additional supply costs in margin—is clearly a common one.

---

[3] Although at summary judgment the District Court found XOOM's contract was vague, not ambiguous, the District Court noted North Carolina courts "do not always distinguish ambiguity from vagueness, or interpretation . . . from construction." A-29 (citing 5 Corbin on Contracts § 24.3 (2023)).

Indeed, XOOM's fundamental misunderstanding of the Order is confirmed by its claim that the jury will not have "evidence of what the rate should have been." Reply at 2. XOOM is again incorrect. The District Court held that the contract requires XOOM's variable rates to have a proportionate margin. A-32–A-33. Once the jury decides that margin, the rate that "should have been" charged flows from the formula set forth in Plaintiff's damages model (the mechanics of which are undisputed). This is exactly how the jury will conclude "in one stroke" what each rate should have been. *See* A-14–A-15.[4]

XOOM's Reply similarly complains that "Plaintiff, like the district court, does not actually grapple with" XOOM's contention that some of its "actual supply costs, including prior period adjustments" were included in XOOM's margins. Nothing could be further from the truth. The District Court found that "a reasonable jury could conclude that XOOM did not factor prior period adjustments into its margin or that XOOM's practice of adjusting the margin to cover cost overruns and meet revenue goals was not permitted under the contract." A-13 (citing A-35–A-36).

---

[4] XOOM is also wrong to claim that "Plaintiff does not deny that the district court's contract interpretation will require 5,600+ unique factual determinations" and that she has thus "effectively concede[d]" the point. A-2 (citing *S.E.C. v. Kern*, 425 F.3d 143, 152 (2d Cir. 2005)). Plaintiff made no such concession. Plaintiff contends, and the District Court agreed, that common proof and Plaintiff's damages model preclude the need for individualized questions. *See* A-14 ("the outcome [of breach] will be determined by common evidence"); A-15 ("damages are capable of measurement on a classwide basis.").

8

Therefore, the common question of whether XOOM was contractually allowed to add these undocumented costs to margin predominates:

> If the contract allowed XOOM to incorporate prior period adjustments and other supply costs into the margin, and they in fact did so consistent with the contract, the class will fail together.  If XOOM did not incorporate prior period adjustments and other supply costs into the margin, or did so in violation of the contract, the class will prevail together.  Either way, the outcome will be determined by common evidence, rather than evidence that differs between class members.

A-13–A-14.  Indeed, and critically, XOOM's only merits defense here—claiming that this practice was contractually permitted—is itself a common defense. *See* A-12 (citing ECF No. 135 at 29).

These detailed findings expose the fallacy of XOOM's claim that it had been required to "*disprove* predominance."  Reply at 7.[5]

Moreover, XOOM incorrectly argues that the District Court shifted the burden of proof onto XOOM when it stated it "need not delve ***too far*** into the merits."  Reply at 7 (emphasis added).  As XOOM well knows, the District Court's merits inquiry must "'probe behind the pleadings' into issues that 'overlap with the merits of the plaintiff's underlying claim.'"  Petition at 13 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013)).  As shown above, the District Court did exactly that.

---

[5] XOOM also misrepresents the record when it claims there was ample evidence showing that XOOM incorporated supply costs into its margins.  As the District Court observed, XOOM failed to produce ***any*** "documentary evidence" identifying these additional so-called costs or how they impacted rates, and that none of the documents considered at rate-setting meetings mentioned these costs.  A-13; A-35.

*Comcast* does not require a finding that the class wins on the merits as XOOM's Reply incorrectly contends. *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) ("[I]n order to certify a class, the proponent of class certification need not show that the common questions will be answered, on the merits, in favor of the class." (quotation omitted)).

### B. Plaintiff's Damages Model Uses a Simple Formula to Determine Classwide Damages Consistent with Her Theory of Liability
*(Responding to Petitioners' Point II.B, Reply at 9–10)*

The District Court understood, described, and accepted Plaintiff's damages model as consistent with *Comcast* and its progeny. A-10; A-14–A-15. Specifically, for purposes of commonality the District Court found that Class Members would need only "a single damages model to apportion liability." A-10. For predominance, the Order found that Plaintiff's damages model, which incorporates XOOM's profitable and consistent fixed-rate margin, was "entirely consistent with Plaintiff's theory" under *Comcast*. A-14. The District Court further noted that "XOOM does not dispute that the algorithm itself is faulty—any measure of damages in this case would undoubtedly be based on the rate, cost, and margin." *Id.* Nevertheless, XOOM wrongly claims that Plaintiff's expert was required to supply the fixed

margin the factfinder will determine at trial.  Reply at 5, 9.[6]  Again, the District Court accepted Plaintiff's model as consistent with *Comcast*.  A-14.[7, 8]

XOOM cannot dispute this, which is why it concedes in a parting footnote that the jury can "conclude that XOOM did not factor prior adjustments into its margin or that XOOM's practice of adjusting the margin to cover cost overruns and meet revenue goals was not permitted under the contract."  Reply at 9 (quoting the District Court at A-13 without attribution).  XOOM claims that this cannot be done "in one stroke for the class," *id.*, but the District Court disagreed and its finding does not constitute an abuse of discretion, A-13.

---

[6] XOOM again distorts the record regarding Plaintiff's expert's testimony—the context clearly shows the expert simply lacked "XOOM's internal information" to provide an appropriate margin beyond the model's use of the fixed rate margin that XOOM concedes is profitable.  A-50–A-51; Opp'n at 20.

[7] This shows why XOOM's new complaint about the District Court's observation that XOOM's fixed rate products generally carried a 19% margin (without citing evidence showing otherwise) is inapposite.  Reply at 10.

[8] The footnoted case distinctions in XOOM's Reply at 10 plainly *support* Plaintiff.  The "price premium" referenced in *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019), is specific to proving damages under New York's General Business Law § 349: that is not at issue here.  The District Court found Plaintiff's damages model is capable of measuring classwide damages, A-14, which is consistent with *In re Cablevision Cons. Litig.*, No. 10 Civ. 4992, 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014).  And as the District Court noted, Plaintiff's damages methodology is a mechanical calculation "based on the rate, cost, and margin," A-14, like the one in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287 (E.D.N.Y. 2013).

### C. XOOM's Typicality Argument Is a Merits Argument Based on Common Defenses
*(Responding to Petitioners' Point II.B, Reply at 10–11)*

That Plaintiff's claims are typical is most evident from the fact that XOOM's merits defense against her claims is the exact same defense XOOM mounts against the Class. To wit, XOOM claimed (at summary judgment) that Plaintiff presented "no evidence that the modest margins included in her rates were made up in any part of 'non-supply cost criteria' as opposed to permitted supply costs like prior period adjustments." Reply at 11 (citing A-43). In its Reply XOOM again employs this uniform defense, claiming once more that the contract allowed it to include additional, undocumented supply costs in its margin. *Id.* And again, the District Court properly found that XOOM's merits argument was entirely "separate" from typicality because Plaintiff's theory of breach is ***identical*** to the classwide theory of breach. A-15–A-16.[9]

### D. XOOM Wrongly Speculates That Courts In This Circuit Are Applying the Incorrect Legal Standard for Rule 23
*(Responding to Petitioners' Point I, Reply at 3–5)*

The District Court clearly laid out the legal standard it followed in its Order: the moving party must satisfy Rule 23's requirements, A-5 (citing *Wal-Mart Stores,*

---

[9] XOOM's typicality argument also ignores its multiple admissions that it disregarded the contract by setting variable rates according to "pricing strategies" throughout the Class period; it cannot dispute this impacted Plaintiff's rates. Opp'n at 17.

*Inc. v. Dukes*, 564 U.S. 338, 350 (2011)), those prerequisites must be met by a preponderance of the evidence, A-6 (citing *Johnson v. Nextel Commc'ns., Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)), and district courts must conduct a rigorous Rule 23 analysis and resolve relevant factual disputes, *id.* (citing *Dukes*, 564 U.S. at 351; *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). The District Court then faithfully applied this framework in its 19-page Order, which also incorporated the detailed 21-page summary judgment order issued just two weeks earlier.

Because XOOM disagrees with the District Court's decision, it cherry-picks two quotes from the Order, misinterprets them as the District Court expressing a "preference" for certification, and conveniently concludes that these snippets somehow render moot the entirety of the Order's 19-page rigorous application of the Rule 23 criteria. Reply at 3–5. XOOM then goes even further, positing that the supposed "preference" it excavated highlights a legal issue "of fundamental importance to the development of class actions." Reply at 3 (quoting *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001)). But the words XOOM leans on do not bear XOOM's weight. To start, XOOM does not claim that the legal standard for Rule 23 motions is unsettled. Nor can it: there simply is no case law suggesting that courts in this Circuit disagree that each Rule 23 requirement must be met by a preponderance of the evidence, and XOOM's claim

13

that "dozens" of courts are applying the wrong standard is not serious. Moreover, XOOM's claim that the Order did not apply the preponderance of the evidence standard is patently conclusory: XOOM fails to note a single instance of the District Court's supposed "preference" changing any of its findings.

In fact, XOOM's argument is nearly identical to one rejected by the Third Circuit in *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009). In *Constar*, the special master's report and district court's order included language that it "adopted a liberal construction of Rule 23" and "that in a doubtful case . . . any error[,] if there is to be one, should be committed in favor of allowing a class action." *Id.* at 781 (alterations in original). Like XOOM, the *Constar* defendant seized on this language, claiming the legal standard was ignored. *Id.* But in *Constar*, like here, the special master further noted that "courts may approve class actions only after a rigorous analysis and findings that the class satisfies all the requirements of Rule 23," and then undertook that analysis. *Id.* at 782. The Third Circuit then found that the defendant's "characterization of the class certification standard applied by the District Court" was "misleading[]" and "incorrect." *Id.* The same result follows here. The District Court stated that a rigorous analysis must find all Rule 23 requirements met by a preponderance of the evidence, and then proceeded to conduct such an analysis and certify the Class.

Because the District Court applied the correct standard, XOOM's Petition and Reply fail to raise an issue of fundamental importance warranting interlocutory review under *Sumitomo*.

XOOM also claims that *In re Petrobras Secs.*, 862 F.3d 250 (2d Cir. 2017), "prohibited" district courts from relying on the potential for post-certification procedural tailoring in applying Rule 23. Reply at 4. To be sure, this Court held in *Petrobras* that consideration of such issues does not "attenuate the obligation to take a 'close look' at predominance when assessing the motion for certification itself." *Petrobras*, 862 F.3d at 274 (citing *Comcast*, 569 U.S. at 34). But *Petrobras* further "emphasize[d] that district courts are authorized to implement management strategies tailored to the particularities of each case," and those "options need not necessarily be exercised or even planned for prior to class certification." *Id.* Despite XOOM's hyperbole, the Order clearly demonstrates that the District Court took the required "close look" at predominance (and the other Rule 23 requirements) and found it satisfied by a preponderance of the evidence. A-11–A-15.[10]

XOOM's Petition and Reply fail to provide a single example of the District Court putting a thumb on the scale in favor of class certification as opposed to finding each Rule 23 requirement met by a preponderance of the evidence. XOOM's

---

[10] Plaintiff disagrees with XOOM's claim that the District Court cited *Petrobas* without understanding its holding on post-certification procedural tailoring. *See* Reply at 4.

speculation otherwise is simply an attempt to second-guess the District Court's findings—findings which can only be reversed for an abuse of discretion. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 31 (2d Cir. 2006).

## CONCLUSION

For the reasons stated above, this Court should deny XOOM's Motion for leave to file a reply, and if XOOM's Motion is granted, the Court should nevertheless deny its petition for interlocutory review pursuant to Rule 23(f).

Dated: October 12, 2023
      New York, New York

Respectfully submitted,

By: /s/ Ethan D. Roman
    Ethan D. Roman (ER-5569)
    J. Burkett McInturff (JM-4564)
    Steven L. Wittels (SW-8110)

**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
slw@wittelslaw.com

*Lead Class Counsel for*
*Plaintiff and the Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word limits of Fed. R. App. P. 5(c)(1) because it contains 3,955 words, excluding the parts of the document exempted by Fed. R. App. P. 5(c) and 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 12, 2023          By:   /s/ Ethan D. Roman
New York, New York                     Ethan D. Roman