McDowell Hetherington LLP

Matt Matthews, Jr., Partner
1001 Fannin Street, Suite 2700
Houston, TX 77002
Ph: 713.337.8879 // F: 713.333.8859
matt.matthews@mhllp.com

February 6, 2024

The Honorable Allyne R. Ross  *Via CM/ECF*
United States District Judge, Eastern District of New York

Re:   *Mirkin, et al. v. XOOM Energy, LLC, et al.*; No. 1:18-cv-02949-ARR-JAM

Dear Judge Ross:

We write at Judge Marutollo's direction to submit a joint letter on XOOM's decertification motion.[1]

**Defendants' Position**

Class certification is "inherently tentative." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978). As the Second Circuit recently held, "a significant intervening event is ***not*** required" for decertification because "district courts must ensure that a certified class satisfies Rule 23 throughout the litigation, and possess the authority to alter or decertify the class if that is no longer the case." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251 at 262 (2d Cir. 2021) (emphasis added, cleaned up). On a motion to decertify, the Rule 23 burden of proof remains with Plaintiff, *see id.*, and "a district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982). Here, decertification is necessary because Plaintiff cannot satisfy commonality or predominance in light of the Court's construction of XOOM's contract.

On summary judgment, the Court construed the contract to mean that XOOM's "monthly variable rates" would "be determined by XOOM's actual and estimated supply costs—and only those costs," but could include "a reasonable margin" that remained "proportionate" to those costs. Dkt. 151, SJ Order, at 12, 13. Neither party, however, had advocated for that exact construction and consequently neither side's briefing addressed its implications under Rule 23. Indeed, Plaintiff first implied that XOOM could charge a reasonable margin *after* class briefing closed. *See* Dkt. 152, Class Order, at 14. Thus, contrary to what Plaintiff says, XOOM's decertification motion is not a backdoor challenge to summary judgment or a rehash of arguments already raised. Rather, XOOM will present new arguments that rely on and explicitly assume the validity of the Court's contract construction.[2]

Fundamentally, the Court's contract construction means that *how* each rate was set is of central importance, and the class can remain certified only if Plaintiff has common evidence to establish and measure an overcharge for each of the thousands of variable rates in the class. But she does not even have such evidence for her individual claim. Under North Carolina's substantive law, an overcharge claim requires proof that "the amount charged by a defendant was *in excess*" of the amount that should have been charged. *Blalock Hardware Co. v. Seaboard Air Line Ry. Co.*, 86 S.E. 1025, 1026 (N.C. 1915). Plaintiff therefore will need to furnish proof to allow a factfinder to adjudicate the *existence* and *amount* of the alleged overcharge in her six rates to prevail on her individual claim. She has never tried. And the problem that this failure of proof creates is magnified thousands of times over for the class.

Plaintiff's original certification bid succeeded by relying on her experts' second damages model as common proof that every rate included an overcharge (*i.e.*, liability) and its amount (*i.e.*, damages). But a jury will never see that model for two reasons. First, it is inherently unreliable and thus inadmissible under Rule 702.[3] And second, even if admitted, it is inconsistent with the Court's contract construction

---

[1] The parties disagree on whether Judge Marutollo imposed an additional requirement that XOOM be given leave to move for decertification. *See* Ex. A (Transcript Excerpt, discussing joint letter requirement).

[2] XOOM disagrees with the Court's contract construction and will challenge it at the appropriate time.

[3] XOOM will file a motion to exclude Plaintiff's experts by the April 3rd deadline.

because it admittedly does not even try to account for three factors the Court said could "determine" XOOM's variable rates: (1) actual costs, including (2) prior period adjustments, and (3) a reasonable and proportionate margin. Plaintiff will be left with no methodology for determining liability or damages—which necessitates decertification. *See Price v. L'Oreal USA, Inc.*, 2021 WL 4459115 at 3–4 (S.D.N.Y. Sept. 29, 2021) (decertifying class because plaintiffs' damage model was no longer "consistent with plaintiffs' alleged injury") (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–35 (2013)).

Thus, "Rule 23(c)(1)(C) requires [the C]ourt[] to reassess" the class ruling at this juncture to "ensure continued compliance with Rule 23's requirements." *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014). That assessment will show that the "two common *questions*, breach and damages," Class Order at 9 (emphasis added), cannot support certification. Plaintiff has no common evidence from which a class proceeding could "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Absent proof (common or otherwise) of any alleged overcharges, Plaintiff simply cannot satisfy Rule 23, and decertification must follow.

### *Individualized Issues for Each of 5,800+ Rate-Setting Determinations Will Predominate*

Again, the Court construed XOOM's contract to mean every rate must "be determined by XOOM's actual and estimated supply costs—and only those costs." And while the Court acknowledged that "XOOM decisionmakers clearly considered supply costs when setting rates," it found fact questions about whether the supply costs *determined* any rate, leaving Plaintiff to prove rate-determination issues to the jury. XOOM sets four electricity rates in seven utility zones and two natural gas rates in eight utility zones monthly, meaning the Court's construction necessarily requires thousands of inquiries into whether each rate was determined by actual and estimated supply costs:

$$[(4 \text{ electricity products} \times 7 \text{ electricity utility zones}) + (2 \text{ gas products} \times 8 \text{ gas utility zones})]$$
$$\times 132 \text{ months} = \mathbf{5{,}808} \text{ rate decisions for the jury}$$

It is undisputed that none of these rates was set according to a formula or standardized methodology. Instead, each month, forty-four rates were set through an iterative process that took voluminous supply cost data from a variety of sources for a number of people to consider by applying their judgment to analyze and weigh it in ways that differed each month based on estimates about the coming month (*i.e.*, estimated supply costs) and adjustments for prior ones (*i.e.*, actual supply costs). There is simply no evidence that could enable a factfinder to decide, in one stroke, what "determined" each rate—much less to calculate an alternative rate that XOOM supposedly should have charged. *See White Indus., Inc. v. Cessna Aircraft Co.*, 845 F.2d 1497, 1502–03 (8th Cir. 1988) (affirming decertification based on predominance of individualized issues where fact questions varied by "geographic markets"). Quite the opposite, the evidence shows that XOOM's rate-setting factors—including actual supply costs, estimated supply costs, and prior period adjustments—differed by commodity, utility zone, product, and time. This problem is insurmountable for Plaintiff under Rule 23.

### *No Common Proof of How Actual Supply Costs Impacted Rates*

Rule 23 demands that Plaintiff present evidence to prove an overcharge on XOOM's 5,800+ rates "in one stroke" to satisfy commonality and predominance. *Dukes*, 564 U.S. at 350. In lieu of such common proof, Plaintiff has only ever offered damage models derived from XOOM's "rate-setting worksheets." But as the Court recognized on summary judgment, those worksheets reflect only XOOM's *estimated* supply costs. SJ Order at 4–5. They undisputedly do not reflect the *actual* supply costs that XOOM was entitled to, and did, consider, including prior period adjustments. *Id.*

The impact that actual costs can—and did—have on XOOM's variable rates is not hypothetical.

XOOM's expert will testify that setting rates based on both estimated supply costs for the upcoming month and actual costs from prior months (*i.e.*, prior period adjustments) is industry practice and that his statistical analysis of XOOM's variable rates corroborates that XOOM did consider actual costs. And as the Court recognized, XOOM has "ample" testimonial evidence that this is how it set its rates. *See* SJ Order at 16. The familiar example of XOOM's actual costs arising out of the 2014 Polar Vortex proves the point. That extreme weather event caused XOOM's actual costs to spike, and XOOM recovered those increased costs over time through prior period adjustments in subsequent rates. Yet, none of Plaintiff's evidence, including her damage model, accounts for those adjustments. Nor has she ever accounted for the fact that those increased actual costs in 2014 could not have affected the rates of Plaintiff in 2013—much less the vast majority of rates charged in the ten years since.

Not only are XOOM's actual supply cost considerations (including prior period adjustments) real, but they are also highly individualized. To establish whether any one rate was properly determined by actual supply costs, the parties will have to call one or more of the multiple witnesses from the rate-setting meeting in question to discuss any impact that actual supply costs had on the rate for the particular product and zone, including discussion of the rate-setting worksheet and other documentary evidence, for each of 5,800+ rates. The totality of XOOM's supply costs, and their impact on each rate, can be determined at trial only with voluminous product- and month-specific documentary and testimonial evidence. These individual determinations will easily overwhelm any common ones, requiring the class to be decertified. But Plaintiff's problems are even greater when it comes to margin.

*No Proof of a "Reasonable" or "Proportionate" Margin*
The Court rightly recognized that the accuracy of Plaintiff's damage model "depends on the accuracy of the inputs, namely the supply cost and margin." Class Order at 14. As discussed, Plaintiff's supply cost input is inaccurate because it ignores actual costs. And as for a margin input, one has never been offered. Plaintiff's experts candidly testified they were not offering (indeed, could not offer) any opinion on what a "reasonable" margin is. Their model uses fixed-rate margins as an illustration only. And even if they had intended those margins as a benchmark (which they admit they did not) the fixed-rate margins varied by product and month, meaning the illustrative margin inputs are not reasonable or proportionate. Because the fixed-rate margins clearly violate the Court's contract construction and are out-of-step with her overcharge theory, Plaintiff has not satisfied Rule 23. *See Comcast*, 569 U.S. at 33–35 (Rule 23(b)(3) demands a damage model consistent with the alleged injury).

In fact, Plaintiff has never purported to have any evidence—common or otherwise—of an appropriate margin. Nor can she suggest that XOOM's variable-rate margins were required to be identical for the 44 products included in the class. To the contrary, her experts' second model supports XOOM's position that margins can and should be product-specific. In addition, XOOM's decertification motion will present the Court with expert testimony, fact testimony, and documentary evidence showing that a single margin cannot be imposed class-wide. Rather, margins permissibly vary across commodities, products, and regions, even if the Court construes the contract to require margins to remain proportionate over time.

Plaintiff says her lack of evidence on margin is excusable because the jury can simply make up a margin it deems appropriate. That ignores not only her Rule 23 evidentiary burden, but also her burden of proof at trial. The jury must be presented with an evidentiary case; it cannot make up figures out of whole cloth based on irrelevant information. What admissible evidence will she put in front of the jury to establish a reasonable margin? Plaintiff cannot say. Her inability to show how she will prove her own claim, much less those of the class, means the class must be decertified.

**Plaintiff's Position**
Your Honor ruled on summary judgment on August 14, 2023 (ECF No. 151, "MSJ Order") and then certified the Class two weeks later on August 31 (ECF No. 152, "Class Order"). The record is unchanged since, as discovery closed in 2022. Rule 23 is also unchanged, and it is still true that "[c]laims for breach of a form contract are particularly well-suited for class certification." Class Order at 10. All that *has* changed is that after certification XOOM began to seek delay at every turn, including failed efforts to: (1) appeal the Class Order; (2) delay class notice; and (3) delay the Joint Pretrial Order (now due April 3). At Judge Marutollo's January 19 conference, after XOOM admitted to rebuffing Plaintiff's multiple settlement overtures, the Court ordered a March 21 settlement conference. When XOOM floated a decertification motion, Judge Marutollo intervened and ordered XOOM to submit this letter seeking Your Honor's permission to file its motion.[4] As set forth below, because the record is unchanged, a decertification motion is wasteful, causes further delay, and should not be authorized.

XOOM claims the Court's contract construction at summary judgment now requires decertification. But that construction came two weeks *before* the Class Order. In fact, the Court expressly relied on it in granting certification, stating that "[i]n my ruling on XOOM's motion for summary judgment, I determined that . . . the contract required the monthly variable rates to be determined *only* by XOOM's actual and estimated supply costs." *Id.* at 3 (emphasis in original). Yet XOOM now claims the Court overlooked its own ruling issued just two weeks prior. In other words, XOOM seeks to file an untimely reconsideration motion. *See* L. Civ. R. 6.3 (14-day limit); *see also Davis v. U.S. Dep't of Homeland Sec.*, 2013 WL 6145749, at *1 (E.D.N.Y. Nov. 2013) (Ross, J.) (A "party's failure to make a motion for reconsideration in a timely manner is by itself a sufficient basis for denial of the motion." (cleaned up)). Further, even if XOOM's decertification arguments were timely, *all* of them were previously made (and rejected) or were available earlier. This is not surprising—again, the record closed in 2022.

*No Change Exists That Justifies Reexamining Class Certification on the Eve of Trial*
A court "'may not disturb its prior [certification] findings absent some significant intervening event, or a showing of compelling reasons to reexamine the question.'" *Jin v. Shanghai Original, Inc.*, 2019 WL 11816612, at *2 (E.D.N.Y. July 10, 2019) (Ross, J.).[5] Absent that showing, "the factual underpinnings of a court's prior certification order are deemed to be the law of the case." *Stinson v. City of New York*, 2014 WL 4742231, at *2 (S.D.N.Y. Sept. 23, 2014) (cleaned up). Decertification is an "extreme step, particularly at a late stage in the litigation." *Zimmerman v. Portfolio Recovery Assocs., LLC*, 2013 WL 1245552, at *2 (S.D.N.Y. Mar. 27, 2013) (quotation omitted). "[T]he Court must take into consideration that an eve-of-trial decertification could adversely and unfairly prejudice class members, who may be unable to protect their own interests." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011)(cleaned up). Here, no compelling reasons exist for revisiting the certification decision.

For example, XOOM now claims "neither party" advocated for the "proportionate" margin contract construction and thus the Court was blind to the attendant Rule 23 implications. Not so. Plaintiff offered this *exact* construction at summary judgment, ECF No. 147 at 9, which XOOM's briefing

---
[4] XOOM suggests this letter's purpose is for XOOM to preview its arguments before filing its full motion. Plaintiff's understanding is that the motion must first be authorized. *See* ECF No. 179 at 15:8–16:25.
[5] On appeal, the Second Circuit held that significant intervening event is not required for "*sua sponte*" decertification, *Jin*, 990 F.3d 251 at 262 n.18, but "[b]ecause the issue of whether a significant intervening event or a similar type of showing might be appropriate when a defendant moves to decertify is not before us," the Circuit did not "address this issue" and noted that "like some district courts in this Circuit, other [circuit] courts have held that the defendant must show a sufficient change in law or circumstances." *Id.*

called a "capped" margin model *six* times, ECF No. 145-1 at 23, 25–26; ECF No. 149 at 3, 6. This is why a heading in the MSJ Order (p. 9) states that XOOM's contract "must be construed consistent with plaintiff's reading." (cleaned up). The Court then incorporated this construction into its Rule 23 findings. Class Order at 3. That XOOM disagrees is no basis for decertification, even if XOOM recasts old arguments as "new" ones that "assume the validity of the Court's contract construction."

*XOOM's Decertification Arguments Have Already Been Considered and Rejected*
The Court Already Held That the Constitution of XOOM's Supply Costs is a Class-Wide Issue
XOOM claims (again) that its practice of allegedly including (unsubstantiated) supply costs within its margin raises individual issues. But the Class Order rejected this exact claim. *See Id.* at 13 ("[H]ow XOOM in fact set rates" is a decision that "may be made by the factfinder at trial 'in one stroke.'"). The Court's ruling on this point was unmistakable:

> The central issue common to all class members is the constitution of supply costs, an issue the factfinder can resolve though [common proof]. If the contract allowed XOOM to incorporate prior period adjustments and other supply costs into the margin, and they in fact did so consistent with the contract, the class will fail together. If XOOM did not . . . , or did so in violation of the contract, the class will prevail together. Either way, the outcome will be determined by common evidence. . . .

*Id.* at 13–14; *see also id.* at 10 (XOOM's "defense relies on common proof—evidence of XOOM's process for determining the variable rate margin" and "if XOOM is found to have breached the contract, the class would need a single damages model to apportion liability.").

The record is clear: most aspects of XOOM's rate-setting process are "beyond peradventure." MSJ Order at 4. Only class-wide questions remain, including: (1) whether XOOM can "demonstrate that the ultimate rates were undoubtedly determined solely by its actual and anticipated supply costs," *id.* at 14, and (2) whether XOOM can "adequately explain why the fluctuations in plaintiffs' variable rate did not directly correspond to XOOM's internal COGS metric," *id.* at 15. To sidestep these class-wide questions, XOOM recycles old arguments, including the *twice* rejected claim that each rate must be examined individually. Class Order at 13–14; Case No. 23-1267 (2d Cir. 2023), ECF No. 1 at 15–17.[6]

XOOM also claims its rate-setting worksheets reflect only "*estimated*" costs that "ignore" actual costs, "including prior period adjustments," allegedly buried in XOOM's margins. XOOM tried that before as well. ECF No. 134 at 22–24. Again, the Court has already ruled that the composition of XOOM's supply costs is a common issue. Plaintiff appreciates that at trial XOOM will present its "ample" testimonial evidence that margins secretly contained supply costs (*see* MSJ Order at 16), just as Plaintiff will argue that these were not "real supply costs," Class Order at 12, and that there is "no documentary evidence" to support XOOM's claim, MSJ Order at 16; *see also* Class Order at 13 (the "jury could conclude that XOOM did not factor prior period adjustments into its margin or that XOOM's practice of adjusting the margin to cover cost overruns and meet revenue goals was not permitted . . . . [T]hat decision may be made by the factfinder at trial "in one stroke."). Plaintiff will also present the evidence that spurred the MSJ Order's observation that "it appears that XOOM's rate-setting decisionmakers were primarily concerned with meeting revenue goals, and that rates were set accordingly." *Id.* at 17.

---

[6] XOOM's cite of *White Indus.* is not on point. That class was decertified because "none of the distributors['] sales of . . . planes occurred in geographic competition with [plaintiff]." *Id.* at 1499. The *White* plaintiff also compared prices in the plaintiff's immediate geographic area to markets nationwide, which the court rejected. *Id.* at 1502–03. The class here is limited to New York customers with the same pricing term.

<u>The Factfinder Can Set a Reasonable Fixed Margin and Plaintiff's Experts Will Be Heard at Trial</u>
XOOM is wrong to again claim that Plaintiff cannot show breach and damages for her individual claim. The MSJ Order shows the delta between XOOM's rates and supply costs (p. 6).[7] The factfinder only needs to set the fixed margin, as where a contract lacks a term, the factfinder supplies it "in a way that honest, fair, and just persons would[.]" *Naphcare, Inc. v. Guilford Cnty.*, 2008 WL 4371770, at *7 (M.D.N.C. Sept. 18, 2008) (quotation omitted); *see also Recycling Equip., Inc. v. E Recycling Sys., LLC*, 2014 WL 6977766, at *5 (W.D.N.C. Dec. 9, 2014) ("The duty of good faith provides the missing terms of the agreement that necessarily flows from the parties' intentions."). Plaintiff offered an exemplar margin—XOOM's average (but still profitable) margin on its riskier fixed rate products.[8] Class Order at 9; ECF No. 132 at 21. The factfinder can adopt this margin, even if it is based on an average.

XOOM's complaint about the factfinder setting a margin for its "44 products" is just a repackaged version of its typicality argument, which the Court rejected because XOOM's form contract uses the same pricing term. *See* Class Order at 15 ("Though XOOM's natural gas supply costs necessarily differ from its electricity supply costs, there is no question that the form contract contained identical language[.]")[9] Further, "XOOM does not claim that it used a different rate-setting process for its [different] customers[,]" and because their "claims arise from the same rate-setting process and will rely on similar legal arguments to prove liability," there is "no doubt" they should be treated alike. *Id.* at 15–16. Moreover, XOOM's Total Costs, rates, and margins for these products are in the same workbooks, ECF No. 138-26, and all rates were set at the same meetings in the same way, ECF No. 134 at 9. XOOM did not vary the its form contracts and their legal operation likewise should not vary.

Similarly, XOOM repeats its claim that Plaintiff's experts will be excluded. *See* ECF No. 134 at 3 ("the contractual interpretation advanced by the Mirkins' experts is both inadmissible and legally baseless"). Yet the Court accepted Plaintiff's experts' second damages model, specifically finding that XOOM did not (and could not) dispute the model's "algorithm." Class Order at 14. Moreover, "rejection of expert testimony is the exception rather than the rule." *Fantasia Distrib., Inc. v. Cool Clouds Distrib., Inc.*, --- F. Supp. 3d ---, 2023 WL 6136628, at *3 (E.D.N.Y. Sept. 20, 2023) (quotation omitted). XOOM's citation to *Price* does not change this, as the model there included uncontested claims inconsistent with their theory of injury, thus failing *Comcast*. 2021 WL 4459115 at *4–6. Here, the Court found Plaintiff's model meets *Comcast*, Class Order at 14—and nothing has changed since. In sum, there is no reason to reconsider the certification order and XOOM's application should be denied.

**Proposed Briefing Schedule**
XOOM proposes the following schedule: XOOM's motion (25 pages) due March 1, 2024; opposition (25 pages) due March 29; reply (15 pages) due April 19.  Plaintiff does not believe XOOM should be given leave to file its motion. If the Court disagrees, Plaintiff asks that briefing be tied to the April 3 Joint Pretrial Order deadline, with shorter page limits: XOOM's motion (15 pages) due February 27; opposition (15 pages) due March 19; reply (10 pages) due April 2.

---

[7] XOOM's cite to the 1915 *Blalock* case adds nothing, as the plaintiff there presented "no evidence whatsoever" about a railroad rate. XOOM also raised this in its failed appeal. Case 23-1267, ECF No. 1 at 17.
[8] The average fixed rate margin is not, as XOOM claims "illustrative" nor do Plaintiff's experts "admit" this is not an acceptable benchmark.
[9] In reality, the number of products is 1—the same wholesale energy supplied by the utility at cost. Even a charitable view to XOOM provides a count of 2 products, electricity and natural gas, which again, Your Honor found no distinction between for purposes of class certification. Class Order at 15.

Respectfully Submitted,

| | |
|---|---|
| /s/ Michael D. Matthews, Jr. | /s/ J. Burkett McInturff |
| Michael D. Matthews, Jr. | Steven L. Wittels |
| Diane S. Wizig | J. Burkett McInturff |
| **MCDOWELL HETHERINGTON LLP** | Ethan D. Roman |
| 1001 Fannin Street, Suite 2400 | **WITTELS MCINTURFF PALIKOVIC** |
| Houston, Texas 77002 | 305 Broadway, 7th Floor |
| Tel: (713) 337-5580 | New York, New York 10007 |
| matt.matthews@mhllp.com | Telephone: (914) 775-8862 |
| diane.wizig@mhllp.com | Facsimile: (914) 775/8862 |
| | slw@wittelslaw.com |
| *Counsel for Defendants* | jbm@wittelslaw.com |
| | edr@wittelslaw.com |
| | |
| | *Class Counsel for Plaintiff and the Class* |