

April 1, 2024

**Via ECF**
The Honorable Joseph A. Marutollo
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Mirkin, et al. v. XOOM Energy, LLC, et al.*, No. 18 Civ. 2949 (ARR) (JAM)

Dear Judge Marutollo:

The parties write jointly under Your Honor's Rule V.B to request a conference on their dispute regarding Plaintiff's amended expert report and a short three-week extension of the Pre-Trial Order deadline to May 17, exclusive of *in limine* motions.  The parties' positions are outlined below.[1]

***Plaintiff and the Class's Position***: By April 19, 2024, Plaintiff's expert will amend and supplement his October 2022 report as required by Rule 26(e), which imposes a "duty to supplement" before the pretrial disclosure deadlines.  Pretrial disclosures are not yet due, and the amendment results from events that transpired ***after*** expert discovery closed.  Specifically, the amended report will account for (1) XOOM's March 1 production of three years of key data, (2) Judge Ross's August 2023 construction (for the first time) of the contract term at the center of this breach of contract case, and (3) the Second Circuit's December 2023 pronouncement that XOOM's contract affords no price-setting discretion.  These developments all necessarily affect Plaintiff's expert's analysis.  Only now (a month after XOOM's substantial data production) is Plaintiff's expert fully able to conform his report to account for these post-discovery events.

The procedural history of this action demonstrates that fact clearly.  First, since Judge Ross's summary judgment and class certification rulings last August, XOOM has delayed this case with re-briefing class certification and a related stay motion.  *See* ECF Nos. 153, 155, 166–76, 180; *Mirkin v. XOOM*, No. 23-1267 (2d Cir.) ECF Nos. 1, 23, 28, 33, 36.  Only in December 2023 was XOOM's attempt to appeal class certification put to rest, and the class notice period ended just last month.  Second, XOOM refused to provide the necessary data until March 1, making it impossible for Plaintiff's expert to account for it earlier.  Third, the alternative of submitting successive updated reports to account for Judge Ross's contract construction (August), the Second Circuit's ruling (December) and the data production (March) makes no sense for the parties or the Court.  Notably, efficiency was XOOM's grounds for withholding the data production until March 1.

On this record, it is plainly meritless for XOOM to claim that updating the report is an untimely "blank-check overhaul" in response to XOOM's criticisms.  XOOM consents to "updated calculations" from Plaintiff's expert, but the parties disagree about what this "update" permissibly

---

[1] Plaintiff requests that the conference be in person.  XOOM will travel to be in person as the Court prefers but, because XOOM does not believe this is a close call, suggests the fairer course is to summarily deny Plaintiff's request.

entails even though Judge Ross and the Second Circuit have now focused the legal parameters controlling the issues addressed in the report. Plaintiff's expert needs a mere three weeks to supply a supplemented report, yet XOOM insists on asking that Your Honor rule on this issue now without the benefit of reviewing the updated report. XOOM's preferred course will inevitably cause downstream disputes, as the Court would be ruling in the abstract.

Moreover, waiting three weeks for an amended report has little effect on the ongoing and extensive pre-trial work.[2] In fact, the parties have already made a schedule for completing all non-*in limine* tasks in short order, followed by motions *in limine* once this dispute is resolved. Indeed, irrespective of this dispute, due to the substantial work for the March 21 settlement conference and the significant undertaking of preparing for trial, the parties already agreed to a May 17 extension of the current pre-trial deadline, and therefore there is no "associated delay," as XOOM claims.

And, most significantly, there is ample good cause for Plaintiff's expert to amend his report to account for the key developments that arose ***after*** the close of expert discovery. Specifically, the Class purchased energy from XOOM under form contracts stating that variable rates were "based on XOOM's actual and estimated supply costs . . . ." Plaintiff alleges that XOOM breached by charging rates prohibited by its own contract. Before the August 2023 summary judgment ruling, the parties differed as to the contractual requirement of a rate "based on" XOOM's supply costs. Judge Ross's summary judgment ruling resolved the contract construction dispute and crystallized the key issues for trial. Expert discovery, however, had been completed in November 2022.

Plaintiff's expert's October 2022 report analyzes issues related to breach and damages and proposes two damages models reflecting alternate versions of what it means to charge a variable rate "based on" XOOM's supply costs. See **Ex. A** (expert report). One model does not afford XOOM a margin over supply costs, while the other model assumes margin is contractually permitted. *Id*. Nearly a year later, Judge Ross issued (1) her August 14, 2023 summary judgment finding that XOOM's contract was "vague" and construed it to allow a reasonable fixed margin over supply costs, ECF No. 151 at 12–13, and (2) her August 31 Order finding that Class Member claims shared common questions regarding the composition of XOOM's supply costs and the appropriate, fixed margin, ECF No. 152 at 9–10. Next, in December 2023, the Second Circuit clarified that whether ESCOs like XOOM have rate-setting discretion is a "dispositive question" and identified the very contract at issue in this case as an example where "the relevant agreement did not describe the monthly variable rate as being set according to the ESCO's discretion." *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 411 (2d Cir. 2023). Finally, on March 1, 2024, XOOM produced three years of data that informs both liability and damages.

Considering these events, an amended report is warranted, and it is certainly not the "do-over" XOOM complains about. XOOM is thus wrong to ask the Court to bar any amendment because expert disclosure closed in November 2022. The case law is overwhelmingly in Plaintiff's favor. To begin, "excluding expert testimony is a drastic remedy and should be used sparingly," because exclusion may "frustrate the Federal Rules' overarching objective of doing substantial justice to

---

[2] The joint three-week estimate assumes XOOM will timely cure a deficiency from its March 1 charging data production. Plaintiff raised this issue last Friday and defense counsel committed to work "expediently" to investigate the deficiency once additional information is provided, which Plaintiff intends to do early this week.

litigants." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 398–99 (S.D.N.Y. 2015) (cleaned up); *see also Torres v. Dematteo Salvage Co. Inc.*, No. 14 Civ. 774 (ADS) (AKT), 2016 WL 845326, at *3 (E.D.N.Y. Mar. 2, 2016) ("[T]he exclusion of expert testimony should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." (quotation marks omitted)). This is why Courts in this Circuit facing similar facts commonly permit amendment.[3]

The relevant cases examine several factors, including (1) the justification for the disclosure's timing; (2) the evidence's importance; (3) prejudice to the opposing party; and (4) the possibility of a continuance. *Anthem*, 660 F. Supp. 3d at 185. Here, all factors weigh in Plaintiff's favor.

***First***, amendment is plainly justified because it is prompted by events beyond Plaintiff's control that occurred ***after*** expert discovery closed. In fact, this same posture recently arose in the Southern District, and an amended report was allowed. *Anthem*, 660 F. Supp. 3d at 184–86. There, "[w]hile it is true that expert discovery was lengthy and this case has been pending for a long period of time, the timeliness of [plaintiff's] instant request [to amend expert report] is viewed in a distinct light given" the summary judgment opinion, particularly because "the request was made due to the Court's conclusions of law[.]" *Id.* In *Anthem*, "the lengthy and complex nature of this case [did] not supersede the substance of the intervening circumstances, including the [summary judgment opinion], and the preference for adjudications on the merits." *Id.* (citation omitted).

***Second***, the evidence XOOM seeks to preclude is critical. As described above, the amended expert report will conform to key aspects of Judge Ross's summary judgment and class certification decisions, intervening Second Circuit authority, and substantial new data. Precluding this testimony would ***inhibit***, rather than promote, the efficient conduct of trial.

***Finally***, XOOM faces little, if any, prejudice, and any prejudice can easily be cured with a continuance. In fact, as recently as January 11, 2024, XOOM's counsel claimed that "no pretrial order deadline exists," because the "case is not yet proceeding to trial, as no trial date has been set and substantive motion practice remains outstanding." ECF No. 177; *see also Torres*, 2016 WL

---

[3] *See, e.g.*, *Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169, 184–86 (S.D.N.Y. 2023) (permitting amended report due to post-discovery ruling); *SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, No. 21 Civ. 2857 (AT)(KHP), 2022 WL 2543788, at *4 (S.D.N.Y. July 7, 2022) (amending incomplete report); *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18 Civ. 5075 (LJL), 2020 WL 5646154, at *1–2 (S.D.N.Y. Sept. 22, 2020) (disclosing new opinion after expert discovery deadline); *Valassis Commc'ns, Inc. v. News Corp.*, No. 17 Civ. 7378 (PKC), 2020 WL 1982963, at *3 (S.D.N.Y. Apr. 24, 2020) (post-deadline amendment); *Torres*, 2016 WL 845326, at *4–7 (reopening expert discovery); *Pagliaro v. Stevens Transp., Inc.*, No. 10 Civ. 268 (RLE), 2011 WL 2671567, at *1 (S.D.N.Y. July 6, 2011) (collecting cases allowing correction of errors when preclusion is prejudicial). Courts outside this Circuit are in accord, especially when a summary judgment opinion is issued after the close of discovery. *See, e.g.*, *Oregon Potato Co. v. Kerry Inc.*, No. 20 Civ. 92 (JDP), 2022 WL 1153469, at *3 (W.D. Wis. Apr. 19, 2022) (permitting supplemental report following summary judgment ruling on available lost profit damages); *Boardwalk Apts., L.C. v. State Auto Prop. & Cas. Ins. Co.*, No. 11 Civ. 2714 (JAR), 2014 WL 2804002, at *3 (D. Kan. June 20, 2014) ("The purpose of supplementation was to allow [experts] an opportunity to revise their business income damages analysis to take into account the Court's summary judgment ruling . . . ."); *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 796 F. Supp. 2d 1341, 1350 (M.D. Fla. 2011) (allowing amended report "in light of the Court's [summary judgment] ruling"); *DNT, LLC v. Sprint Spectrum, LP*, No. 3:09 Civ. 21, 2010 WL 582164, at *6 (E.D. Va. Feb. 12, 2010) (allowing amended report "[b]ecause the Court's summary judgment ruling has removed certain [issues] from the case" making it " obviously necessary . . . to amend").

845326, at *4–5 (reopening discovery for disclosure of additional expert because though "discovery closed . . . no trial date has been set"); *Anthem*, 660 F. Supp. 3d at 186 (minimal prejudice from amending report after the close of expert discovery where no trial date set). XOOM falsely claims that an amended report will require redoing all pre-trial work. XOOM provides no support for this baseless position, which is belied by the approximately **4,000** documents (including families) put on its exhibit list. There is no reason XOOM would need to redo this over-inclusive list or add additional witnesses. XOOM likewise offers no reason why its Motion to Decertify would need to be redone. Accordingly, a brief continuance is readily available.

Moreover, XOOM can cure any minimal prejudice by deposing Plaintiff's expert. *Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 11 Civ. 715, 2013 WL 5771166, at *6 (D. Conn. Oct. 24, 2013) ("[C]ourts in the Second Circuit addressing this issue have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial." (citation omitted)); *Torres*, 2016 WL 845326, at *4–5 (same). While XOOM complains, it does not articulate any prejudice that cannot be cured. In sum, Plaintiff has shown good cause for an amended expert report, and the Court should be especially weary of employing XOOM's preferred "drastic remedy" of preclusion.

**XOOM's Position**: Plaintiff seeks leave to amend her expert report in unspecified ways **eighteen months** after the October 2022 deadline. Her request is subject to Rule 16's good cause standard, which she does not mention or satisfy. But under any standard, her request would be improper and highly prejudicial. XOOM already served its Motion to Decertify and prepared its related motion to exclude Plaintiff's experts. The parties also exchanged exhibit lists, witness lists, and deposition designations. That work will have to be redone if Plaintiff gets a late expert do-over. Indeed, Plaintiff admits the proposed amendment is meant to cure XOOM's leading argument for decertification: her damage models are inconsistent with Judge Ross's contract construction. That is a reason to grant XOOM's Motion to Decertify—not a reason to allow amended opinions that will require the Motion to be rewritten.

XOOM did not "withhold" a data supplement until March 1. The parties *agreed* in October 2023 that it would update its customer data production showing class members' most recent variable charges. *See* ECF 158. That production justifies only updated calculations under the experts' current damage models, not new models and opinions.[4] Plaintiff's other stated justifications—a 2023 Second Circuit decision discussing **2019** opinions, and Judge Ross's **August 2023** summary judgment order—are pretext. Those decisions are nothing new; both issued before the current pretrial deadlines were set at Plaintiff's insistence. The real reason for Plaintiff's request is that she finally realized what XOOM has been saying all along: her experts' models do not match her liability theory and the class should be decertified as a result. But at this stage, Plaintiff's sudden desire to overhaul her case theory cannot constitute good cause for untimely expert disclosures.

XOOM's arguments about Plaintiff's flawed expert opinions are not new. XOOM has raised them for seven months: in its September Rule 23(f) Petition, in its October motion to stay, in a January meet-and-confer, and in the January 19 Court conference, and most recently in its Motion to

---

[4] Plaintiff plans to have her experts update their calculations to account for the most recent customer billing data. That narrow aspect of Plaintiff's request alone is consistent with Rule 26(e)(2)'s duty to supplement and is thus undisputed.

Decertify served just *three weeks* before Plaintiff's request. Each time, Plaintiff scoffed at XOOM's arguments, insisting that Judge Ross's contract construction simply embraced Plaintiff's case theory. So now, after Plaintiff accelerated the case through class notice and pretrial exchanges by insisting that her expert's opinions fully align with the Court's proportionate-margin construction, she should not be allowed to restart expert discovery by taking the opposite position.

Allowing a belated, blank-check overhaul of Plaintiff's expert opinions would severely prejudice XOOM and cause significant delay. Summary judgment and class certification were decided on the existing reports, and XOOM has poured hundreds of hours (and hundreds of thousands of dollars) into preparing for trial on the current record since a Pretrial Order deadline was set at Plaintiff's insistence over XOOM's request to resolve its decertification and expert motions first. Plaintiff's counsel told your Honor then, in opposing XOOM's request to stay pretrial work, that they "disagree" with XOOM's expert arguments and that those arguments would simply "be part of an *in limine* motion[,]" filed with the Pretrial Order.  Ex. B, Jan. 19 Tr. at 9:6-9.

Then last week, just *three days* before the parties' agreed deadline to serve those *in limine* motions, Plaintiff told XOOM for the first time of her plan to amend and add to her expert opinions. What caused the change? Maybe XOOM's March 1 decertification motion finally convinced Plaintiff that her expert opinions will be excluded and decertification granted. *See* Decert. Mot., Ex. C. Or maybe she wanted to wait until after the Settlement Conference to admit her experts' deficiencies. But whatever the true cause, Plaintiff instead points to two opinions: (1) a Second Circuit decision discussing its opinion in this case *five years ago*, and (2) Judge Ross's contract construction issued nearly *eight months ago*. Plaintiff knew about those decisions when she insisted on proceeding to trial, arguing then that her experts were unassailable and decertification unwarranted. So, neither is the true cause—much less good cause—for her belated desire to restart expert discovery now.

The Second Circuit's *Martinez v. Agway* decision does not "pronounce" anything new about the contract in this case or represent "intervening authority" relevant to this dispute. It merely explains contract differences in two relevant cases: the 2019 order reversing dismissal in this case and a 2019 order affirming summary judgment in *Richards v. Direct Energy*. To lay the groundwork for analyzing Agway's contract, *Martinez* first makes the uncontroversial point that "the differences between the contractual language in *Mirkin* and that in *Richards* was critical to our decision to reverse in *Mirkin*." *Agway*, 88 F.4th at 411. And as to Judge Ross's contract construction, Plaintiff's suggestion that it now warrants her untimely do-over is contrary to the position she took in February to oppose XOOM's bid to decertify—arguing then that Judge Ross's contract construction was nothing new, but just an adoption of the interpretation Plaintiff always advanced:

> XOOM now claims "neither party" advocated for the "proportionate" margin contract construction and thus the Court was blind to the attendant Rule 23 implications. Not so. **Plaintiff offered this exact construction at summary judgment**, which XOOM's briefing called a "capped" margin model six times. This is why a heading in the MSJ Order (p. 9) states that **XOOM's contract "must be construed consistent with plaintiff's reading."** (cleaned up).

ECF 180 at 4–5 (emphasis added, citations omitted).[5] Plaintiff also defended her experts' models and opinions, insisting that their Model Two matches her theory of breach:

> XOOM repeats its claim that Plaintiff's experts will be excluded. . . . Yet **the Court accepted Plaintiff's experts' second damages model** . . . . [and] found Plaintiff's model meets *Comcast*. . . —**and nothing has changed since**.

*Id.* at 6 (emphasis added). Plaintiff has also consistently claimed that her Model Two is "relevant evidence" of a proportionate margin. *See* ECF 171, Pl. Opp. Stay at 12. So, her assertion now that the Court's August 2023 proportionate-margin construction is novel and inconsistent with her existing models directly contradicts what she has argued for seven+ months. Having defeated XOOM's Rule 23(f) Petition on those grounds, Plaintiff must be judicially estopped from now advancing an opposite argument. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001).

Because Plaintiff cannot justify her sharp 180, she is vague about the nature of her request and ignores applicable legal standards. Plaintiff seeks leave to amend her expert report nearly **eighteen months** after the deadline, so her cases discussing requests to strike expert reports filed *within* the expert discovery deadline are inapposite.[6] Plaintiff's attempt to change case theories by amending expert opinions years after the deadline—and after the opposing party has pointed out the opinions' flaws—runs afoul of three applicable Rules: (i) Rule 26, which permits supplements to account for "information that was previously unknown or unavailable to [the expert]," *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017); (ii) Rule 16, which requires "good cause," including the movant's diligence, *see Martins v. Sherwin-Williams Co.*, 2024 WL 641383 at *1 (Jan. 10, 2024); and (iii) Rule 37, which precludes untimely expert opinions "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Plaintiff cannot meet her burden under any Rule, much less all three. First, Rule 26's supplementation duty plainly does not apply to the disputed amendments because they are based on information previously known. *See Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) (Rule 26(e) "is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report."). Likewise, Rule 16 good cause is lacking as a matter of law because the new expert opinions are not based on new information. *See Canales v. United States*, 2021 WL 5830765, at *2 (E.D.N.Y. Dec. 8, 2021) ("[E]ach of the new reports presented new theories based on information that was available before the close of discovery. This precludes a finding of good cause."). Nor can Plaintiff claim diligence, even if Judge Ross's contract construction was new seven+ months ago. And with respect to Rule 37, the only one Plaintiff even mentions, "[p]ermitting the disclosing party to offer a new theory out of time when the responding party has demonstrated that the disclosing party's

---

[5] *See also, e.g.*, ECF 172-2, Pl. Rule 23(f) Answer at 19 (Model Two "yields precise damages under the District Court's proportionate-margin construction."); ECF 172-1, Oct. 27 Tr. at 12 (Plaintiff's counsel arguing that "Judge Ross considered our theory. She considered our damages model. She endorsed it."); ECF 171, Pl. Opp. Stay at 6 ("The Court Accepted Plaintiff's Damages Methodology and the Question of the Appropriate Margin Is for the Factfinder.").
[6] *Cf. Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 5646154 (S.D.N.Y. Sept. 22, 2020) (allowing opinions produced a week+ before the expert deadline); *Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, 2013 WL 5771166 (D. Conn. Oct. 24, 2013) (allowing a ***timely*** report with new theories when expert depositions were ongoing); *SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, 2022 WL 2543788 (S.D.N.Y. July 7, 2022) (addressing ***timely*** proposed amendment).

initial theory is incorrect," as here, cannot constitute substantial justification as it "would render the completeness requirements of Rule 26(a)(2)(B) meaningless." *Hines v. BMG Rts. Mgmt. (US) LLC*, 2023 WL 6214264, at *3 (S.D.N.Y. Sept. 25, 2023) (quotations omitted); *see* Ex. C.

Of course, Plaintiff cannot point to any case anywhere in which leave was granted to amend expert opinions more than a year, let alone eighteen months, after expert discovery closed.[7] Plaintiff also lacks a single case granting leave to amend an expert report after the Court certified a class relying on the opinions in that report. And Plaintiff certainly has not unearthed a case granting an untimely application to fix an expert's deficient damage models amid pretrial disclosures and after the opposing party filed a decertification motion premised on the models' deficiencies—because none exists. The prejudice to XOOM if Plaintiff's request is somehow granted would be enormous.

Accordingly, Plaintiff's request should be summarily denied and, in light of the associated delay, the parties' joint request to extend the Pretrial Order deadline to May 17 should be granted.

Thank you for the Court's consideration of this joint request.

Respectfully Submitted,

| | |
|---|---|
| */s/ Michael D. Matthews, Jr.* | */s/ Ethan D. Roman* |
| Michael D. Matthews, Jr. | Ethan D. Roman |
| Diane S. Wizig | Steven L. Wittels |
| **MCDOWELL HETHERINGTON LLP** | J. Burkett McInturff |
| 1001 Fannin Street, Suite 2400 | **WITTELS MCINTURFF PALIKOVIC** |
| Houston, Texas 77002 | 305 BROADWAY, 7TH FLOOR |
| Tel: (713) 337-5580 | NEW YORK, NY 10007 |
| matt.matthews@mhllp.com | Tel: (914) 775-8862 |
| diane.wizig@mhllp.com | edr@wittelslaw.com |
| | slw@wittelslaw.com |
| *Counsel for Defendants* | jbm@wittelslaw.com |
| | *Class Counsel for Plaintiff and the Class* |

cc: All counsel of record (via ECF)

---

[7] The few cases she cites that actually involve an opposed motion for leave to amend expert reports out of time addressed requests that—unlike her own—were promptly made. *See Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169 (S.D.N.Y. 2023) ("request was made approximately **one month** after the Court issued the Opinion[ that] foreclosed [plaintiff]'s prior damages theories" (emphasis added)); *Torres v. Dematteo Salvage Co. Inc.*, 2016 WL 845326 (E.D.N.Y. Mar. 2, 2016) (granting motion to allow new expert **one month** after deadline); *Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 1982963 (S.D.N.Y. Apr. 24, 2020) (granting motion filed **mere weeks** later); *Pagliaro v. Stevens Transp., Inc.*, 2011 WL 2671567 (S.D.N.Y. July 6, 2011) (request made **two months** after discovery closed).