# Exhibit 2

# Defendants' Trial Witness List

## XOOM's Witnesses[1]

**Jason Loehde**; Huntersville, North Carolina, c/o Michael D. Matthews, Jr., McDowell Hetherington LLP, 1001 Fannin, Suite 2400, Houston, Texas, 77002

Mr. Loehde served as XOOM's Director of Pricing and Structure (and later as its Senior Director of Pricing and Structure) from October 2011 until NRG acquired XOOM in June 2018. As the person in charge of XOOM's pricing function the entire time it operated in New York, Mr. Loehde was responsible for developing and maintaining the pricing models; managing the rate-setting process; and leading rate-setting meetings for the thousands of products XOOM sold, including in New York. Mr. Loehde remained involved in XOOM's rate-setting process after June 2018 as NRG's Director of Market Analysis & Pricing by providing review and feedback on proposed rates for XOOM's products.

Mr. Loehde will testify during XOOM's case-in-chief about XOOM's rate-setting process during his tenure with XOOM. His testimony will cover who participated, what preparation was done for rate-setting meetings (including with respect to the rate-setting workbooks and other analyses prepared for the meetings) what the rate-setting workbooks contained, and how rates ultimately were set. Mr. Loehde will also testify that XOOM's supply costs were always the starting point and foundation for all rate-setting decisions that XOOM made. Those supply costs included the estimated costs reflected in XOOM's rate-setting workbooks as well as its actual supply costs, including prior period adjustments and balancing costs, which were brought into consideration through the budget process. That process is reflected in such contemporaneous documents as Gross Margin Analyses, Degree Day Forecasts, Power Settlement documents, Scorecards, and striped sheets. Mr. Loehde will further testify about the various supply costs that XOOM incurred and considered, including how such costs differed between electricity and gas, clean and standard products, various zones, and across time; and he will explain why it could take XOOM a month or more to learn what its actual costs were for any given period, zone, or product. Finally, subject to XOOM's *in limine* motions, Mr. Loehde will explain why margins between fixed- and variable-rate products typically are very different, why margins for green products differ from those for standard products, and why the utility's regulated rates are not an appropriate comparator for XOOM's competitive variable rates.

    **Plaintiff's objections:**

    FRE 402/403 (relevance) to the extent Mr. Loedhe's testimony is not relevant to any claim/defense in view of the Court's order denying summary judgment.

    FRE 403 (duplicative) to the extent Mr. Loedhe's testimony is duplicative of other witnesses' testimony.

    FRE 801/802 (hearsay) to the extent Mr. Loedhe's testifies about statements made by others to prove the truth of the matter asserted in the statement.

---

[1] XOOM reserves the right to call any of Plaintiff's designated witnesses.

1

FRE 602 (lack of personal knowledge) to the extent Mr. Loedhe lacks personal knowledge of facts.

FRE 701 (expert opinion) to the extent Mr. Loedhe offers expert opinions.

FRE 901 (authentication) to the extent Mr. Loedhe relies on an unauthenticated document.

*In Limine* to the extent any portion of Mr. Loedhe's testimony is precluded by the Court's ruling on Plaintiff's anticipated motions *in limine.*

**Andrew Coppola**: Huntersville, North Carolina, c/o Michael D. Matthews, Jr., McDowell Hetherington LLP, 1001 Fannin, Suite 2400, Houston, Texas, 77002

Andrew Coppola served as Senior Vice President, Energy Supply and Pricing, from July 2012 through June 2018, when NRG acquired XOOM. His role involved directing and managing gas, power, and environmental supply procurement, mass-market and commercial pricing, gas and power load-forecasting, and competitive intelligence.

Mr. Coppola will testify during XOOM's case-in-chief about the components of XOOM's costs and pricing metrics, how costs were impacted by various factors including market conditions and weather, XOOM's recovery of actual costs once known, and how XOOM tracked and accounted for actual costs and settlements in its rate-setting process. He will also testify about XOOM's rates-setting process more broadly, including the facts that: XOOM's supply costs always were the starting point for rate-setting; rates were set by product, zone, and month; there was no formula for setting those rates; rates for New York residential and small commercial gas and electricity were not always set at the same meeting in a single month; and any apparent disparity between costs reflected in a rate-setting workbook and final rates could be attributable to a number of factors, including actual costs, prior period adjustments, and balancing costs. Mr. Coppola will further testify regarding the risks in serving variable-rate customers, including supply cost volatility and unpredictability for that customer segment.

**Plaintiff's objections:**

FRE 402/403 (relevance) to the extent Mr. Coppola's testimony is not relevant to any claim/defense in view of the Court's order denying summary judgment.

FRE 403 (duplicative) to the extent Mr. Coppola's testimony is duplicative of other witnesses' testimony.

FRE 801/802 (hearsay) to the extent Mr. Coppola testifies about statements made by others to prove the truth of the matter asserted in the statement.

FRE 602 (lack of personal knowledge) to the extent Mr. Coppola lacks personal knowledge of facts.

FRE 701 (expert opinion) to the extent Mr. Coppola offers expert opinions.

FRE 901 (authentication) to the extent Mr. Loedhe relies on an unauthenticated documents.

*In Limine* to the extent any portion of Mr. Coppola's testimony is precluded by the Court's ruling on Plaintiff's anticipated motions *in limine*.

**Tom Ulry**: Charlotte, North Carolina, c/o Michael D. Matthews, Jr., McDowell Hetherington LLP, 1001 Fannin, Suite 2400, Houston, Texas, 77002

Tom Ulry, XOOM's Chief Executive Officer from its inception in 2011 until NRG acquired XOOM in 2018, was hired to start XOOM. Mr. Ulry's testimony during XOOM's case-in-chief will concern XOOM's rate-setting process, including the consideration of both estimated and actual supply costs. He will testify that supply costs were the starting point and foundation for all rate-setting decisions that XOOM made. He will further testify that XOOM's rate-setting decisions were based on its estimated costs and its actual supply costs, including prior period adjustments and balancing costs.

**Plaintiff's objections:**

FRE 402/403 (relevance) to the extent Mr. Ulry's testimony is not relevant to any claim/defense in view of the Court's order denying summary judgment.

FRE 403 (duplicative) to the extent Mr. Ulry's testimony is duplicative of other witnesses' testimony.

FRE 801/802 (hearsay) to the extent Mr. Ulry testifies about statements made by others to prove the truth of the matter asserted in the statement.

FRE 602 (lack of personal knowledge) to the extent Mr. Ulry lacks personal knowledge of facts.

FRE 701 (expert opinion) to the extent Mr. Ulry offers expert opinions.

FRE 901 (authentication) to the extent Mr. Ulry relies on an unauthenticated document.

*In Limine* to the extent any portion of Mr. Ulry's testimony is precluded by the Court's ruling on Plaintiff's anticipated motions *in limine*.

**Ryan Park**: Houston, Texas, c/o Michael D. Matthews, Jr., McDowell Hetherington LLP, 1001 Fannin, Suite 2400, Houston, Texas, 77002

Ryan Park, XOOM's Director of Project Management for the Supply Team from April 2013 to September 2015, was responsible for daily operations of the product management team, including rate management, product development, competitive intelligence, and product research.

Mr. Park's testimony during XOOM's case-in-chief will concern XOOM's pricing process, including the frequency, length, format, and composition of rate-setting meetings. Mr. Park will also testify about XOOM's estimated supply costs reflected in spreadsheets prepared by Jason Loehde's pricing team and the composition of "margin" XOOM included on top of the estimated supply costs. Mr. Park will further testify to XOOM's actual costs and how prior period adjustments were made consistent with XOOM's right to recover its unexpected costs from prior months. Mr. Park will testify regarding the risk premium considered in connection with XOOM's variable rates and, subject to XOOM's *in limine* motions, he will testify that estimated supply costs for XOOM's fixed-rate products could be higher than that for variable-rate products because of the products' relative volatility and predictability. Finally, subject to XOOM's *in limine* motions, Mr. Park will testify regarding XOOM's consideration of its competitors' rates when setting fixed and introductory rates only.

**Plaintiff's objections:**

FRE 402/403 (relevance) to the extent Mr. Park's testimony is not relevant to any claim/defense in view of the Court's order denying summary judgment.

FRE 403 (duplicative) to the extent Mr. Park's testimony is duplicative of other witnesses' testimony.

FRE 801/802 (hearsay) to the extent Mr. Park testifies about statements made by others to prove the truth of the matter asserted in the statement.

FRE 602 (lack of personal knowledge) to the extent Mr. Park lacks personal knowledge of facts.

FRE 701 (expert opinion) to the extent Mr. Park offers expert opinions.

FRE 901 (authentication) to the extent Mr. Park relies on an unauthenticated documents.

*In Limine* to the extent any portion of Mr. Park's testimony is precluded by the Court's ruling on Plaintiff's anticipated motions *in limine*.

**Troy Chidester**: Huntersville, North Carolina, c/o Michael D. Matthews, Jr., McDowell Hetherington LLP, 1001 Fannin, Suite 2400, Houston, Texas, 77002

Troy Chidester was a data quality analyst in the product group and then Product Administrator for XOOM in 2013, and currently serves as XOOM's Product Portfolio Manager. Prior to the NRG acquisition in 2018, Mr. Chidester was present for rate-setting meetings and was responsible for updating rates on XOOM's website and with its billing function. He will testify during XOOM's case-in-chief about XOOM's pricing practices, including who attends rate-setting meetings, and how rates were set, including the consideration of supply costs. He will also testify that XOOM had and considered competitive intelligence only for fixed-rate products, not variable-rate products.

**Plaintiff's objections:**

FRE 402/403 (relevance) to the extent Mr. Chidester's testimony is not relevant to any claim/defense in view of the Court's order denying summary judgment.

FRE 403 (duplicative) to the extent Mr. Chidester's testimony is duplicative of other witnesses' testimony.

FRE 801/802 (hearsay) to the extent Mr. Chidester testifies about statements made by others to prove the truth of the matter asserted in the statement.

FRE 602 (lack of personal knowledge) to the extent Mr. Chidester lacks personal knowledge of facts.

FRE 701 (expert opinion) to the extent Mr. Chidester offers expert opinions.

FRE 901 (authentication) to the extent Mr. Chidester relies on an unauthenticated documents.

*In Limine* to the extent any portion of Mr. Chidester's testimony is precluded by the Court's ruling on Plaintiff's anticipated motions *in limine*.


**Leonard Gardner**: Houston, Texas, c/o Michael D. Matthews, Jr., McDowell Hetherington LLP, 1001 Fannin, Suite 2400, Houston, Texas, 77002

Leonard Gardner has been overseeing pricing for XOOM products, and approving the final rates, since NRG's acquisition in 2018, first as Senior Director of Portfolio Management at NRG and then as Vice President of Offer Pricing and Revenue Management.

Mr. Gardner will testify during XOOM's case-in-chief about the transition following NRG's acquisition, including with respect to adjustments made in connection with supply-cost inputs in the rate-setting worksheets that continue to be used to set rates for all XOOM products. Mr. Gardner also will testify about the rate-setting process following NRG's acquisition, including preparation for the meetings, the composition and format of rate-setting meetings, and the fact that rate-setting for XOOM products still begins with estimated supply costs and ends with the addition of a margin that is based on XOOM's actual supply costs, including prior period adjustments and balancing costs. Mr. Gardner will further testify regarding the various supply costs that XOOM incurred and considered, including how such costs differed between electricity and gas, clean and standard products, various zones, and across time; and he will explain why it could take XOOM a month or more to learn what its actual costs were for any given period, zone, or product. Finally, subject to XOOM's *in limine* motions, Mr. Gardner will explain why margins between fixed- and variable-rate products typically are very different, why margins for green products differ from those for standard products, and why the utility's regulated rates are not an appropriate comparator for XOOM's competitive variable rates.

5

**Plaintiff's objections:**

FRE 402/403 (relevance) to the extent Mr. Gardner's testimony is not relevant to any claim/defense in view of the Court's order denying summary judgment.

FRE 403 (duplicative) to the extent Mr. Gardner's testimony is duplicative of other witnesses' testimony.

FRE 801/802 (hearsay) to the extent Mr. Gardner testifies about statements made by others to prove the truth of the matter asserted in the statement.

FRE 602 (lack of personal knowledge) to the extent Mr. Gardner lacks personal knowledge of facts.

FRE 701 (expert opinion) to the extent Mr. Gardner offers expert opinions.

FRE 901 (authentication) to the extent Mr. Gardner relies on an unauthenticated documents.

*In Limine* to the extent any portion of Mr. Gardner's testimony is precluded by the Court's ruling on Plaintiff's anticipated motions *in limine*.


**David C. Coleman**: 30 Monument Square, Suite 105, Concord, Massachusetts, 01742

David Coleman is XOOM's designated expert witness. He has advised clients in the electric and natural gas industries for more than twenty years and his expertise is in market price forecasting, commodity risk management, asset valuation, and strategic analysis for clients in both the electric and natural gas industries.

Mr. Coleman will testify during XOOM's case-in-chief regarding the opinions discussed in the Expert Report of David C. Coleman on Behalf of XOOM Energy, LLC, and XOOM Energy New York, LLC, amended October 31, 2022, and the Rebuttal Report of David C. Coleman on Behalf of XOOM Energy, LLC, and XOOM Energy New York, LLC, dated November 4, 2022. More specifically, Mr. Coleman will testify about the background of deregulated energy markets and ESCOs' role within them and that: (1) a statistical correlation analysis of XOOM's electric supply costs and XOOM's historical SimpleFlex electric rates demonstrates that XOOM based its variable rates for retail electricity supply on its actual and estimated supply costs; (2) a statistical correlation analysis of XOOM's natural gas supply costs provided by XOOM and XOOM's historical SimpleFlex natural gas rates demonstrates that XOOM based its variable rates for natural gas supply on its actual and estimated supply costs; (3) Plaintiff (and all other variable rate customers) could have avoided any alleged harm by terminating their service with XOOM and returning to their Default Service product or by migrating to a different ESCO; and (4) no economic or market justification exists for imposing the same margin on all products encompassed in the Class throughout the entire Class period, and there are legitimate economic and market justifications for why margin would vary across products, utility zones, and time. Further, and subject to XOOM's *in limine* motions, Mr. Coleman will testify that: (5) Plaintiff's experts did not

try to answer the key question in the case—whether XOOM's rates were based on its actual and estimated supply costs; (6) Plaintiff's experts mistakenly conclude that XOOM did not consider prior period adjustments, when testimonial evidence and rate-setting data show that XOOM appropriately considered prior period adjustments when setting its variable rates; (7) Plaintiff's experts provide no economic or market justification for the suggestion that XOOM's margin should have been capped at XOOM's contemporaneous fixed-rate margin, and none exists; (8) Plaintiff's experts' damage models inappropriately assume that XOOM's margin should have been capped, adopting unsupported benchmarks for the highest acceptable rates XOOM should have been allowed to charge in the absence of any such express or implied restriction, and neglecting to measure the alleged harm resulting from XOOM's variable rates' supposedly not tracking XOOM's supply costs.

**Plaintiff's objections:**

To the extent Mr. Coleman's testimony goes beyond the reports he provided in this case.

To the extent Mr. Coleman bases his opinions on a construction of the Sales Agreement inconsistent the Court's construction.

*In Limine* to the extent any portion of Mr. Coleman testimony is precluded by the Court's ruling on Plaintiff's anticipated motions *in limine*.


**Derya Eryilmaz, PhD**: 466 Medford Street, Unit 2, Somerville, Massachusetts 02145

Derya Eryilmaz was one of Plaintiff's two designated expert witness. She professes to be an energy economist. She co-authored Plaintiff's original expert report and was primarily responsible for the data analysis and development of the quantitative damages model discussed in that report. XOOM will moving to exclude Dr. Eryilmaz's testimony and models, and believes she should not be permitted to testify at all. However, XOOM reserves the right to call Dr. Eryilmaz for rebuttal purposes if the Court permits Plaintiff's other expert, Seabron Adamson, to testify at trial or allows Plaintiff's damage models to be admitted at trial. If XOOM calls Dr. Eryilmaz, she will testify as to the methods she employed and her knowledge, or lack thereof, concerning pricing at XOOM and ESCOs more generally.

**Plaintiff's objections:**

To the extent XOOM seeks testimony on aspects of Plaintiff's original expert report that are not encompassed in Plaintiff's amended expert report.

FRE 402/403 (relevance) to the extent Dr. Eryilmaz's testimony is not relevant to any claim/defense in view of the Court's order denying summary judgment.

FRE 403 (duplicative) to the extent Dr. Eryilmaz's testimony is duplicative of other witnesses' testimony.

7

FRE 801/802 (hearsay) to the extent Dr. Eryilmaz testifies about statements made by others to prove the truth of the matter asserted in the statement.

FRE 602 (lack of personal knowledge) to the extent Dr. Eryilmaz lacks personal knowledge of facts.

Dr. Eryilmaz is no longer employed at the firm Plaintiff's expert Seabron Adamson is employed at and may be unavailable for trial.