# Exhibit 8

Plaintiff's Proposed Jury Instructions

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| |
|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC <br><br> Defendants. |

Case No. 18 Civ. 2949 (ARR) (JAM)

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Plaintiff requests that the following instructions be read to the jury.

## I.    Preliminary Instructions

### A.    Introduction[1]

Members of the jury: You are now the jury in this case.

It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions.

---

[1] In accordance with Your Honor's Individual Practices, Plaintiff proposes a complete set of jury instructions. Because the Court is likely to have standard instructions on general introductory points, we propose these instructions only in the event the Court does not have such instructions. Further, given that the Court's rulings on forthcoming motions in limine are likely to change the contours of trial, Plaintiff respectfully reserves the right to address those implications when appropriate.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**B.      Background of the Energy Industry**

This case is about customer contracts for electricity and natural gas supplied to New York residential and small commercial customers.  The energy we are talking about in this case is the electricity you use when you turn on a light in your home or the gas you use when you cook on a gas stove.

For over 100 years utilities generated electricity or extracted natural gas and sent it down power and gas lines to people's homes and businesses.  That's how the energy system was envisioned in the 1800s, and for the most part, it's how it continues to work today.  Beginning in the late 1990s, however, some states—including New York—began to deregulate their retail energy markets allowing consumers a choice: continue buying energy from their utility or buy it from a third-party energy services company, called an "ESCO."  XOOM is an ESCO.

In New York, if a customer chooses to buy their energy from an ESCO, the utility will still deliver the energy, send the customer the bill, and collect the customer's payment.  But the ESCO will purchase the energy on the open market for its customers, acting as an intermediary between the companies that generate the energy, and the local utility company that distributes it to customers.  In this scenario the ESCO sets the customer's rate.

For the end consumer choosing to buy their energy from an ESCO, nothing else changes with their current utility.  No new power lines, equipment or meters are needed.  The utility continues to service the customer, reads the meter, and maintains any service obligations.

Unlike utilities, ESCOs can offer a variety of rates, including fixed rates that stay the same over a given period or variable rates that may fluctuate on a monthly basis.

An ESCO customer's monthly bill (just like a utility customer's monthly bill) is calculated by multiplying the customer's monthly usage times the rate.  For electricity, the usage is measured in kilowatt hours.  For natural gas, the customer's usage is measured in therms.  So, for example, an electric customer is billed for the number of kilowatt hours they used in a month times the monthly energy rate.

**C.      Positions of the Parties**

The Plaintiff, Susanna Mirkin, contracted for electricity supply from Defendants for her residence in New York.  The Defendants are XOOM Energy, LLC and XOOM Energy New York, LLC, referred to collectively in these instructions and at trial as XOOM.  XOOM is an ESCO that supplied electricity to Ms. Mirkin's home for part of 2013.  This case is about the variable rates that XOOM charged its New York customers.

This case is also a class action.  The Court has determined that Ms. Mirkin is permitted to sue, not only for herself, but also on behalf of other persons who are similarly situated.  Ms. Mirkin represents herself and the Class Members who are defined as:

All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.[2]

There are 124,530 Class Members, meaning there are 124,530 New York XOOM accounts impacted by this action.

Here the contracts between XOOM and the Class Members state that each customer's monthly variable rate is "based on XOOM's actual and estimated supply costs which may include but not be limited to prior period adjustments, inventory and balancing costs."[3]

I have determined that the promise in XOOM's contract that XOOM's monthly variable rate will be "based on XOOM's actual and estimated supply costs" means that XOOM's rates must "be determined by XOOM's actual and estimated supply costs—and only those costs."[4]   "A variable rate that varies depending only on the actual and estimated supply costs must vary according to those costs, but it does not have to *equal* those costs."[5]   XOOM is entitled to charge a margin, but "the margin would have to remain proportionate, but not equal to the supply costs over time."[6] This means that XOOM's margin must have remained a fixed, specific percentage, rather than varying over time.  XOOM's margin also must be "reasonable."[7]  I have also already determined that the contract does not allow XOOM any price-setting discretion.[8]

Ms. Mirkin alleges that XOOM breached this contract by charging more than the contract allowed when it set her and other Class Members' monthly variable rates and that, as a result, XOOM's customers paid more than they should have if XOOM had set rates in accordance with the contract language.[9]  XOOM denies those claims.  XOOM denies this and asserts that it set rates according to the contract and that Ms. Mirkin and the Class Members were not overcharged.

---

[2] Order Certifying Class, ECF 152, at 18–19.

[3] Summary Judgment Order, ECF 151 at 2–3.

[4] *Id.* at 12.

[5] *Id.* at 13.

[6] *Id.* at 13.

[7] *Id.* at 12.

[8] Summary Judgment Order, ECF 151 at 14 ("I find that the contract required the variation in the variable rates to be determined solely by XOOM's actual and estimated supply costs.").  In *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 411 (2d Cir. 2023), the Second Circuit noted that whether an ESCO's contract specifically allows for rate-setting discretion is a "dispositive question" and that XOOM's contract here does not provide for any discretion.  The *Martinez* holding is consistent with Your Honor's prior conclusion that any variation in XOOM's variable rates must "be determined by XOOM's actual and estimated supply costs," meaning XOOM could not consider any subjective factors in its rate setting.

[9] Order Certifying Class, ECF 152, at 1.

In addition to the express terms of a contract, the law provides that every contract contains an implied covenant of good faith and fair dealing.[10]  This means that, even though not specifically stated in the contract, it is understood that each party to the contract must act in good faith and deal fairly with the other party.

To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the parties' reasonable expectations.  A contracting party must not act in bad faith, dishonestly, or with improper motive to diminish the right of the other party to receive the benefits or reasonable expectations of the contract.[11]

Plaintiff and the Class claim that XOOM breached the contract by failing to comply with the implied covenant of good faith and fair dealing.  Defendants deny this.

Ms. Mirkin has the burden of proving her claim, on behalf of the Class, by a preponderance of the evidence, which means you must be persuaded by the evidence that those claims are more likely true than not.[12]  If you find that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract, you must find in favor of the Class on the breach of contract claim.  But if you do not believe that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract, then you must find in favor of XOOM.

## D.    **Evidence Considered**

You should base your decision on all of the evidence, regardless of which party presented it.  The evidence you are to consider in deciding what the facts are consists of:

(1)    the sworn testimony of any witness, whether given live in Court or through a deposition;

(2)    the exhibits that are admitted into evidence;

(3)    any facts to which the lawyers have agreed; and

(4)    any facts that I may instruct you to accept as proved.

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at

---

[10] *Weyerhaeuser Co. v. Godwin Bldg. Supply Co., Inc.*, 253 S.E.3d 625, 627–28 (N.C. App. 1979); *see also Maglione v. Aegis Fam. Health Centers*, 607 S.E.2d 286, 291 (N.C. Ct. App. 2005) (granting new trial where breach of contract action did not include jury instruction on the breach of the duty of good faith and fair dealing).

[11] *Maglione*, 607 S.E.2d at 291.

[12] Plaintiff reserves the issue of the allocation of burdens pending the Court's determination on Plaintiff's forthcoming motion in limine on the issue.

4

other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may see or hear when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  You are permitted to draw from facts that you find have been proven such reasonable inferences or conclusions as seem justified in light of your experience and common sense.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

During the trial, you will hear and/or watch deposition testimony.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  Under certain circumstances, the deposition testimony of that person may be used at the trial.  Deposition testimony may also be used to question the credibility of a witness's testimony in court.

There are legal rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered, or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.  By overruling or sustaining an objection, I am not commenting on the merits of the case in any way or suggesting that the party who won or lost the objection is "winning" the case or has stronger position than the other party.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but you do not have to decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may at your discretion apply the principle that if a witness is dishonest in one respect, they lose credibility for all other matters. If you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

In this case, I have permitted certain witnesses to express their opinions about matters that are at issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing this opinion testimony, you may consider the witness's qualifications, their opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning their

opinion or because that the witness might be referred to as an "expert."  Nor should you substitute that person's opinion for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

**E.**     **Conduct As Jurors**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, blog, website or application, or any forms of social media.  This applies to communicating with your fellow jurors until I give the case to the jury for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide

the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony. If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you.

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**F.**     **Trial Procedure**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments. After that, you will go to the jury room to deliberate on your verdict.

## II.     Concluding Instructions

### A.     Introduction

Members of the Jury: Now that you have heard all of the evidence and arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

You shall diligently strive to reach agreement with all other jurors if you can do so.  Your verdict must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any blog, website or application, or any forms of social media.  This applies to communicating with everyone other than your fellow jury members, including your family members, your employer, the media or press, and the people involved in the trial.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court.

Because you have received all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the Court immediately.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the Court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

If you wish to have some part of the testimony repeated, or to see any of the exhibits, you may make that request. If you request to see all or some of the exhibits, we will send them into the jury room for you or make them available to you here in open court. If you request to hear certain testimony or to see the trial transcript regarding any matter, I will call you into court and have the court reporter read those portions of the testimony to you or send responsive portions of the trial transcript into the jury room. You can have any of the testimony read back to you or made available to you in transcript form. I suggest, however, that you be specific in your requests so as to avoid hearing testimony or receiving portions of the trial transcript that you do not need to assist you in your deliberations. If, in the course of your deliberations, you wish to hear any further explanation as to the law, you may send me a note telling me what you would like.

## B.   **Class Action**

This is a class action. The Court has determined that Ms. Mirkin may sue not only for herself, but on behalf of other persons who are similarly situated. Ms. Mirkin brings this action on behalf of herself and:

> All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.[13]

---

[13] Order Certifying Class, ECF 152, at 18–19. Excluded from the Class are the officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal

### C.    <u>**Breach of Contract**</u>

Ms. Mirkin asserts that XOOM breached its contract.  I have determined that the promise in XOOM's contract that XOOM's monthly variable rate will be "based on XOOM's actual and estimated supply costs" means that XOOM's rates must "be determined by XOOM's actual and estimated supply costs—and only those costs."[14]  "A variable rate that varies depending only on the actual and estimated supply costs must vary according to those costs, but it does not have to *equal* those costs."[15]   XOOM is entitled to charge a margin, but "the margin would have to remain proportionate, but not equal to the supply costs over time." [16]  This means that XOOM's margin must have remained a fixed, specific percentage, rather than varying over time.  XOOM's margin also must be "reasonable."[17]   I have also already determined that the contract does not allow XOOM any price-setting discretion.[18]

To find in favor of Ms. Mirkin and the Class, you must find that XOOM breached its contract, meaning its variable rates were not "determined by XOOM's actual and estimated supply costs—and only those costs."  You may find that XOOM's variable rates were not determined by its supply costs in any way supported by the evidence.[19]  As a reminder, a preponderance of the evidence means that Ms. Mirkin proved that it is more likely true than not true that XOOM breached its contract.[20]

Ms. Mirkin claims that XOOM breached the contract by failing to base its variable rates on XOOM's actual and estimated supply costs, plus a proportionate fixed margin.  XOOM denies this.  XOOM contends that the variable rates it charged Class Members were based on XOOM's actual and estimated supply costs, plus a proportionate fixed margin.

---

representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest, all federal, state and local government entities and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

[14] *Id.* at 12.

[15] *Id.* at 13.

[16] *Id.* at 13.

[17] *Id.* at 12.

[18] Summary Judgment Order, ECF 151 at 14 ("I find that the contract required the variation in the variable rates to be determined solely by XOOM's actual and estimated supply costs.").  In *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 411 (2d Cir. 2023), the Second Circuit noted that whether an ESCO's contract specifically allows for rate-setting discretion is a "dispositive question" and that XOOM's contract here does not provide for any discretion.  The *Martinez* holding is consistent with Your Honor's prior conclusion that any variation in XOOM's variable rates must "be determined by XOOM's actual and estimated supply costs," meaning XOOM could not consider any subjective factors in its rate setting.

[19] *See* Order Certifying Class, ECF 152, at 13 (citing Order on Summary Judgment, ECF 151, at 17)

[20] The parties have stipulated that they entered into a valid contract.

In addition to the express terms of a contract, the law provides that every contract contains an implied covenant of good faith and fair dealing.[21]  This means that it is understood that each party to the contract must act in good faith and deal fairly with the other party.

To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the parties' reasonable expectations.  A contracting party must not act in bad faith, dishonestly, or with improper motive to diminish the right of the other party to receive the benefits or reasonable expectations of the contract.[22]

There are many forms of conduct that might constitute a violation of good faith and fair dealing, but each case is fact-specific.  For you to find that there has been a breach of the implied covenant of good faith and fair dealing in this case, the Plaintiff must prove to you that the Defendants: (1) acted in bad faith, which can be inferred from evidence that XOOM's conduct was arbitrary or contrary to reasonable expectations, and (2) that conduct denied the Class the benefit of the bargain of XOOM's contract.[23]

In considering what constitutes bad faith, you should consider a number of factors, including the expectations of the parties and the purposes for which the contract was made.[24]  You should also consider the level of sophistication between the parties and whether the parties had unequal bargaining power.[25]

Plaintiff and the Class claim that XOOM breached the implied covenant of good faith and fair dealing.  Defendants deny this.

If you conclude that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the express terms of the contract, or that XOOM set its New York variable rates in violation of the duty of good faith and fair dealing, you must find that XOOM breached the contract with the Class.

If you find that Ms. Mirkin has not proven by a preponderance of the evidence that XOOM breached the express terms of the contract, or that XOOM set its New York variable rates in violation of the duty of good faith and fair dealing, you must find that XOOM did not breach the contract.

---

[21] *See Maglione*, 607 S.E.2d at 291 (granting new trial where breach of contract action did not include a jury instruction on the breach of the duty of good faith and fair dealing).

[22] *Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 729 (S.D.N.Y. 2020).

[23] *Id.*; *see also Maglione*, 607 S.E.2d at 291.

[24] *Maglione*, 607 S.E.2d at 291.

[25] *See Wiseman v. ING Groep, N.V.*, No. 16 Civ. 7587 (AJN), 2017 WL 4712417, at *8 (S.D.N.Y. Sept. 28, 2017); *see also Maglione*, 607 S.E.2d at 291 ("All parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose.").

### D.   **Damages**

If you find that XOOM breached its contract, you must then determine whether Ms. Mirkin and the Class Members were damaged.

Ms. Mirkin and the Class Members were damaged if they suffered economic loss due to the breach of contract. In other words, if you find that XOOM breached the contract, you must determine the amount of money that XOOM overcharged its customers, if any, by finding the difference between the amount the Class paid XOOM for electricity or natural gas and the amount the Class would have paid if XOOM's rates had complied with the contract.

Ms. Mirkin has the burden to prove the existence of any damages by a preponderance of the evidence. Any determination of damages must be based upon evidence, and not speculation or guesswork. You may consider the opinions, testimony, and all other evidence presented in this case.

In this case, XOOM claims that it charged a margin in compliance with the contract, and even if it did not do so, it is entitled to reduce the Class's damages by the margin that it would have been entitled to charge had it done so. XOOM has the burden of proving any such margin that it would have been entitled to charge that satisfied the contractual requirements of being fixed, reasonable, and determined only by its supply costs.[26]

I have determined that punitive damages are available in this case.[27] The purpose of punitive damages is to "punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts."[28] If you determine that it is appropriate to punish Defendants for egregious wrongful acts and to deter the Defendants and others from committing similar wrongful acts, you may find that the Class is entitled to punitive damages.

Punitive damages are available in a contract action "[w]hen the breach of contract also constitutes or is accompanied by an identifiable tortious act" and "the tortious conduct [is] accompanied by or partake[s] of some element of aggravation[.]"[29] "Aggravated conduct may be shown by fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights."[30] If you find that XOOM charged a rate that is not "based on" its actual and estimated supply costs, Plaintiff contends that same conduct constitutes deceptive advertising. If you find that XOOM deceptively advertised, and such deceptive advertising was accompanied by some form of aggravation, you may award punitive damages at your discretion.

---

[26] Subject to the Court's decision on a forthcoming motion *in limine*.

[27] *Shore v. Farmer*, 522 S.E.2d 73, 76 (N.C. 1999).

[28] N.C.G.S. § 1D-1; *see also Newton v. Standard Fire Ins. Co.*, 229 S.E.2d 297, 302 (N.C. 1976).

[29] *Shore*, 522 S.E.2d at 76; *see also Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp. 3d 531, 536 (E.D.N.C. 2023); *Gandecha v. Metro. Prop. & Cas. Ins. Co.*, No. 13 Civ. 688, 2014 WL 4243797, at *7 (E.D.N.C. Aug. 26, 2014).

[30] *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 185 (N.C. Ct. App. 1993), *aff'd*, 435 S.E.2d 71 (N.C. 1993).

A verdict form has been prepared for you.  The verdict form will ask you to determine whether XOOM breached its contract.  You should mark "yes" or "no" on the verdict form.  If you find that XOOM breached, the verdict form will ask you to determine damages.  You should write in the amount of damages on the verdict form.  You should also indicate the amount, if any, of punitive damages XOOM is liable for.

The verdict form contains further instructions to guide you as you move from one question to another.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the marshal that you are ready to return to the courtroom.