# Exhibit 9

# Defendants' Proposed Jury Instructions

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSANNA MIRKIN,<br>Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>XOOM ENERGY, LLC and<br>XOOM ENERGY NEW YORK, LLC<br><br>Defendants. | Case No. 18 Civ. 2949 (ARR) (JAM) |

## XOOM'S PROPOSED JURY INSTRUCTIONS[1]

Plaintiff requests that the following instructions be read to the jury.

**I.    Preliminary Instructions**

    **A.    Introduction**

Members of the jury: You are now the jury in this case.

It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

---

[1] XOOM submits its proposed Jury Instructions subject to its disagreement with the Court's orders on summary judgment and class certification. By submitting its proposed Jury Instructions, XOOM does not waive its objections to those orders here or on appeal.

1

### B.     Positions of the Parties

This case is about customer contracts for electricity and natural gas supplied to New York residential and small commercial customers. The energy we are talking about in this case is the electricity you use when you turn on a light in your home or the gas you use when you cook on a gas stove. The Plaintiff, Susanna Mirkin, contracted for electricity supply from Defendants for her residence in New York.  The Defendants are XOOM Energy, LLC and XOOM Energy New York, LLC, referred to collectively in these instructions and at trial as XOOM.  XOOM is an independent energy service company, "ESCO" for short, that supplied electricity to Ms. Mirkin's home for a few months in 2013.   ESCOs can offer a variety of rates to customers including fixed rates that stay the same over a set period and variable rates that may change each month.  This case is about XOOM's variable rates.

This case is also a class action. In a class action, plaintiffs like Ms. Mirkin are permitted to sue, not only for themselves, but also on behalf of other persons who are similarly situated.  Ms. Mirkin seeks to represent herself and the Class Members who are defined as:

> All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.[2]

Unlike the rates charged by New York utilities, ESCOs' rates are not regulated or set by the state. Rather, they are set according to the ESCO's contract terms. Here the contracts between XOOM and the Class Members state that the monthly variable rate is "based on XOOM's actual and estimated supply costs which may include but not be limited to prior period adjustments, inventory and balancing costs."[3]

The contracts also state that XOOM would provide certain services to its customer "for the purposes of (i) acquiring the supplies necessary to meet" the customer's needs for electricity or natural gas, "and (ii) arranging, contracting for and administering transportation and related services" needed to deliver electricity or natural gas to the customer's premises. These services were "provided on an arm's length basis and market-based compensation [was] included in the price" the customer agreed to pay for electricity or natural gas sold under their contract with XOOM.[4]

Ms. Mirkin alleges that XOOM breached the contracts by not following this language when it set her and other Class Members' monthly variable rates and that, as a result, XOOM's customers paid more than they should have if XOOM had set rates in accordance with the contract language.[5]

---

[2] Order Certifying Class, ECF 152, at 18–19.
[3] Summary Judgment Order, ECF 151 at 2–3.
[4] MSJ Ex. A-19, ECF 145-21 at 1, 2 (terms under headings "Agency" and "Price").
[5] Order Certifying Class, ECF 152, at 1.

XOOM denies those claims.  XOOM asserts that it did set rates according to the contracts and that Ms. Mirkin and the Class Members were not overcharged.

Ms. Mirkin has the burden of proving her claim and the claims of every Class Members by a preponderance of the evidence, which means you must be persuaded by the evidence that those claims are more likely true than not true.  If you find that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract for her rates, you must find in favor of Ms. Mirkin on her breach of contract claim. If you find that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract with every member of the Class, you must find in favor of the Class on their breach of contract claims. But if you do not believe that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract as to either Ms. Mirkin or every Class Member, then you must find that XOOM did not breach the contract.

### C. **Evidence Considered**

You should base your decision on all of the evidence, regardless of which party presented it.  The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness, whether given live in Court or through a deposition;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

3

  (4)  Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

  Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. You are permitted to draw from facts that you find have been proven such reasonable inferences or conclusions as seem justified in light of your experience and common sense. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

  Throughout the trial, you may hear or watch deposition testimony. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial. Deposition testimony may also be used to question the credibility of a witness's testimony in court.

  There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been. By overruling or sustaining an objection, I am not commenting on the merits of the case in any way or suggesting that the party who won or lost the objection is "winning" the case or has stronger position than the other party.

  Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

  In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

  (1)  the opportunity and ability of the witness to see or hear or know the things testified to;

  (2)  the witness's memory;

  (3)  the witness's manner while testifying;

  (4)  the witness's interest in the outcome of the case, if any;

  (5)  the witness's bias or prejudice, if any;

  (6)  whether other evidence contradicted the witness's testimony;

  (7)  the reasonableness of the witness's testimony in light of all the evidence; and

  (8)  any other factors that bear on believability.

  Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but you do not have to decide that testimony is untrue just because it differs from other testimony.

  However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. Likewise, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

  The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

  In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing this opinion testimony, you may consider the witness's qualifications, their opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning their opinion or because that the witness might be referred to as an "expert." Nor should you substitute that person's opinion for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

  **D.**  **Conduct As Jurors**

  I will now say a few words about your conduct as jurors.

  First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

  Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

5

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, blog, website or application, or any forms of social media. This applies to communicating with your fellow jurors until I give you the case to the jury for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony. If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you.

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

### E. Trial Procedure

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments. After that, you will go to the jury room to deliberate on your verdict.

## II. Concluding Instructions

### A. Introduction

Members of the Jury: Now that you have heard all of the evidence and arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

You shall diligently strive to reach agreement with all other jurors if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any blog, website or application, or any forms of social media. This applies to communicating with everyone other than your fellow jury members, including your family members, your employer, the media or press, and the people involved in the trial. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court.

> Because you have received all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the Court immediately.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the Court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

If you wish to have some part of the testimony repeated, or to see any of the exhibits, you may make that request. If you request to see all or some of the exhibits, we will send them into the jury room for you or make them available to you here in open court. If you request to hear certain testimony or to see the trial transcript regarding any matter, I will call you into court and have the court reporter read those portions of the testimony to you or send responsive portions of the trial transcript into the jury room. You can have any of the testimony read back to you or made available to you in transcript form. I suggest, however, that you be specific in your requests so as to avoid hearing testimony or receiving portions of the trial transcript that you do not need to assist you in your deliberations. If, in the course of your deliberations, you wish to hear any further explanation as to the law, you may send me a note telling me what you would like.

B.     **Class Action**

This is a class action. In a class action, plaintiffs are permitted to sue, not only for themselves, but on behalf of other persons who are similarly situated. Ms. Mirkin seeks to bring this action on behalf of herself and:

> All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.

Excluded from the Class are the officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest,

9

all federal, state and local government entities and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.[6]

Although there are many Class Members, it does not follow from that fact alone that if one Class Member is entitled to recover, they all are entitled to recover. XOOM is entitled to a fair consideration as to each Class Member, just as each Class Member is entitled to a fair consideration of his or her claim against XOOM. Unless otherwise stated, all instructions I give you govern the case as to each Class Member.[7]

It is the duty of the Court to instruct you about the law.

### C. Breach of Contract

Ms. Mirkin asserts that XOOM breached its contracts with her and the Class Members. To find in favor of Ms. Mirkin and the Class Members, you must find that she proved by a preponderance of the evidence that XOOM breached the contracts as to every variable rate included in the Class. As a reminder, preponderance of the evidence means that the Ms. Mirkin proved that it is more likely true than not true that XOOM breached the contracts as to every variable rate.[8]

XOOM's contract states that its variable rates will be "based on XOOM's actual and estimated supply costs which may include but not be limited to prior period adjustments, inventory and balancing costs." I have determined that this contract language requires that XOOM's monthly variable rate "be determined by XOOM's actual and estimated supply costs—and only those costs."[9] That does not mean that the variable rate must be *equal* to those costs. It is acceptable for the rate to vary from month to month, by product, and by utility zone. That is because, as you have heard, XOOM's actual and estimated supply costs varied from month to month, by product, and by utility zone. XOOM is also entitled to include an additional amount called a "margin" in its rates.[10] I have determined that any margin charged by XOOM must "remain proportionate, but not equal to the supply costs over time."[11] However, the contracts did not require XOOM to cap its margins at a certain level and Ms. Mirkin does not have a claim in this case that XOOM's margins or rates were unreasonable, so you may not find that the margin included in any rate was higher than the contract allowed.[12]

---

[6] Order Certifying Class, ECF 152, at 18–19.
[7] 3 Fed. Jury Prac. & Instr. § 103:13 (6th ed.) (modified), 3 Fed. Jury Prac. & Instr. § 103:13 (6th ed.); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 463 (2016) (stating that a class verdict requires evidence of "liability and damages" for "for each individual plaintiff").
[8] The parties have stipulated that they entered into a valid contract.
[9] Order on Summary Judgment, ECF 151, at 12. XOOM disagrees with the Court's contract construction. And by including it in these draft instructions XOOM is not waiving its objections to the construction here or on appeal.
[10] *Id.* at 13.
[11] *Id.* at 13.
[12] *Id.* at 13–14 (acknowledging that the contract "is silent as to an appropriate margin" and identifying the implied covenant of good faith and fair dealing as the only basis on which to cap

10

The following formula should be used to determine what XOOM's variable rates should have been under the contracts: XOOM's actual and estimated supply costs, plus a proportionate "margin." These inputs for any given month should be used to calculate the monthly rate XOOM was required to charge under the contracts for that rate. To illustrate:



Given my determination regarding the contract's meaning, you must make two findings before you can determine what rate the contract required in a particular instance: (1) the monetary amount of "actual and estimated supply costs" XOOM was required to consider in setting that rate; and (2) the monetary amount of the margin XOOM was allowed to add to those costs. You will need to determine the monthly costs and margins for each residential and small commercial XOOM variable-rate product (including every gas and electricity product) for each of the utilities served by XOOM in New York since January 1, 2013. In making these determinations, you must include "market-based compensation" in the price each Class Member paid for electricity or natural gas, either by including that compensation as a component of the costs or margin you use to determine the rate the contract required.[13]

The costs and margins for each month need not be the same for each utility zone or product, and the costs and margins need not be the same for each month. It is possible that you may conclude that XOOM's variable rates were based on actual and estimated supply costs (plus a proportionate margin) for some, but not all, months, products, and utility zones. The fact that XOOM may have charged different rates for the same products in different utility zones is not evidence that XOOM overcharged its customers.[14]

---

XOOM's margin); Mandate 3 n.1, Doc. 41-1 (affirming the dismissal with prejudice of Ms. Mirkin's implied covenant claim); *see also Day v. Moscow*, 955 F.2d 807, 812 (2d Cir. 1992) ("Where issues have been explicitly or implicitly decided on appeal, the law-of-the-case doctrine obliges the district court on remand to follow the decision of the court of appeals." (cleaned up)); *Premier Med. Sys., LLC v. NeuroLogica Corp.*, No. 1:21-CV-1337-GHW, 2022 WL 603999, at *7 (S.D.N.Y. Feb. 28, 2022) (refusing to consider an "entirely unpleaded" claim for breach of the implied covenant of good faith and fair dealing).

[13] *See* MSJ Ex. A-19, ECF 145-21 at 1, 2 (terms under headings "Agency" and "Price").

[14] *Tom-Lin Ent., Inc. v. Sunoco, Inc.*, 349 F.3d 277, 279 (6th Cir. 2003) (use of pricing zones can be part of commercially reasonable rate setting).

Ms. Mirkin claims that XOOM breached the contract by failing to base its variable rates on XOOM's actual and estimated supply costs, plus a proportionate margin. XOOM denies this. XOOM contends that the variable rates it charged Ms. Mirkin and the Class Members were based on XOOM's actual and estimated supply costs, plus a proportionate margin.

If you conclude that Ms. Mirkin has proven by a preponderance of the evidence that XOOM charged her and all the Class Members rates that were higher than the rates permitted under the contract, then you must find that XOOM breached its contract. If you find that Ms. Mirkin has *not* proven by a preponderance of the evidence that XOOM charged variable rates that included amounts other than XOOM's actual and estimated supply costs plus a proportionate margin for her or any Class Member, then you must find that XOOM did not breach the contract. If you are unable to determine what XOOM should have charged for any given rate, you must find that XOOM did not breach the contract by setting that rate.[15]

### D. **Damages**

If you find that XOOM breached the contract with Ms. Mirkin and all Class Members, you must then determine whether Ms. Mirkin and the Class Members were damaged.

Ms. Mirkin and the Class Members were damaged if they suffered economic loss due to the breach of contract. In other words, if you find that XOOM breached the contract, you must determine the amount of money that XOOM overcharged its customers, if any, by finding the difference between the amount the Class Members paid to XOOM for electricity or natural gas and the amount they would have paid if their rates had complied with the contract.[16]

You may conclude that that Ms. Mirkin and the Class Members suffered no damages. In that case, the amount of damages would be zero. It is possible that you may conclude that Ms. Mirkin and the Class Members suffered damages for some, but not all, months, products, and utility zones. It also is possible that you may conclude that Ms. Mirkin and the Class Members were undercharged for some months, products, and utility zones.[17]

Ms. Mirkin has the burden to prove the existence of any damages for herself and the Class Members by a preponderance of the evidence. Any determination of damages must be based upon evidence, and not speculation or guesswork. You may consider the opinions, testimony, and all other evidence presented in this case. If you conclude that XOOM overcharged Ms. Mirkin and the Class Members, you must not include in any damages award amounts that are unrelated to the amount of money that you conclude was overcharged on any account. You also must ensure that any damages award does not include amounts for Class Members who were *not* overcharged, and

---

[15] *Blalock Hardware Co. v. Seaboard Air Line Ry. Co.*, 86 S.E. 1025, 1026 (N.C. 1915) (a finding of liability on an overcharge claim requires proof "as to what is the correct . . . rate" that should have been charged).

[16] *Troitino v. Goodman*, 35 S.E.2d 277, 282 (N.C. 1945) (measuring damages in breach-of-contract cases as "the pecuniary difference between [the plaintiff's] position upon breach of the contract and what it would have been, had the contract been performed.").

[17] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, J., concurring).

that your award does not put any Class Member in a better position than they would have occupied if their rates had complied with the contract.[18]

A verdict form has been prepared for you. The verdict form will ask you to determine whether XOOM is liable or not liable for breach of contract as to Ms. Mirkin and the Class. If you find XOOM liable, the verdict form will ask you to determine damages, if any. The verdict form contains further instructions to guide you as you move from one question to another. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the marshal that you are ready to return to the courtroom.

---

[18] *Troitino v. Goodman*, 35 S.E.2d 277, 282 (N.C. 1945) (breach-of-contract plaintiffs are "not entitled to be enriched by the breach").

13