# Exhibit 13

Plaintiff's Memorandum of Law Addressing
Jury Instructions and Verdict Form Disputes

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

SUSANNA MIRKIN,
Individually and on Behalf of All Others
Similarly Situated,

                                    Plaintiff,

v.

XOOM ENERGY, LLC, and
XOOM ENERGY NEW YORK, LLC,

                                    Defendants.

Case No: 18 Civ. 2949 (ARR) (JAM)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S JURY INSTRUCTIONS

---

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
Steven L. Wittels
Ethan D. Roman
305 BROADWAY 7ᵀᴴ FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
slw@wittelslaw.com
edr@wittelslaw.com

**KHEYFITS BELENKY LLP**
Andrey Belenky
1140 AVENUE OF THE AMERICAS, 9ᵀᴴ FLOOR
NEW YORK, NEW YORK 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

**SCHLAM STONE & DOLAN LLP**
Richard Dolan
Bradley D. Simon
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

Dated:  May 10, 2024

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

I.      GOVERNING LAW FOR JURY INSTRUCTIONS ......................................... 1

II.     THE COURT SHOULD ADOPT PLAINTIFF'S JURY INSTRUCTIONS ................... 3

        A.      The Jury Should Be Provided Basic Background Regarding the Energy
                Industry and Instructed on the Parties' Positions ....................................... 3

        B.      The Jury Should Not Be Instructed on Irrelevant Contractual Language ............... 4

        C.      The Jury Should Be Instructed on the Court's Contract Construction ................. 4

        D.      The Jury Should Not Be Instructed to Decertify the Class ..................................... 6

        E.      The Jury Should Be Instructed About the Existence of an Implied
                Covenant of Good Faith and Fair Dealing In the Contract ................................... 8

        F.      XOOM Bears the Burden of Proof as to Supply Costs and Its Fixed Margin ........ 9

        G.      The Jury Should Not Be Instructed on an Unproven Defense ............................... 9

        H.      The Jury Should Not Be Instructed on Pre-Judgment Interest ........................... 10

        I.      The Verdict Form Should Be Clear and Concise .................................................. 10

CONCLUSION ....................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*Aniero Concrete Co. v. N.Y. City Const. Auth.*,
   308 F. Supp. 2d 164 (S.D.N.Y. 2003)................................................................. 9

*Barlow v. Liberty Maritime Corp.,*
   746 F.3d 518 (2d Cir. 2014)......................................................................... 2

*Boyce v. Soundview Tech. Grp., Inc.,*
   464 F.3d 376 (2d Cir. 2006)......................................................................... 1

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.,*
   930 F.2d 228 (2d Cir. 1991)......................................................................... 1

*Fed. Ins. Co. v. Sabine Towing & Transp. Co., Inc.,*
   783 F.2d 347 (2d Cir. 1986)......................................................................... 9

*Fleisher v. Phoenix Life Ins. Co.,*
   858 F. Supp. 2d 290 (S.D.N.Y. 2012)........................................................... 8

*Hochfelder v. Pac. Indem. Co.,*
   No. 22 Civ. 2012 (MKV), 2023 WL 2430497 (S.D.N.Y. Mar. 9, 2023) .................. 8

*In re Foreign Exch. Benchmark Rates Antitrust Litig.,*
   No. 13 Civ. 7789, ECF No. 1997 (S.D.N.Y. 2022) .......................................... 11

*Insight Health Corp. v. Marquis Diagnostic Imaging of N. Carolina, LLC,*
   No. 14 Civ. 1783, 2018 WL 2728782, at *19 (N.C. Super. June 5, 2018)............... 10

*Maglione v. Aegis Fam. Health Ctrs.,*
   607 S.E.2d 286 (N.C. App. 2005)................................................................. 8

*Martinez v. Agway Energy Servs., LLC,*
   88 F.4th 401, 411 (2d Cir. 2023) ................................................................. 5

*Parker v. Sony Pictures Entm't, Inc.,*
   260 F.3d 100 (2d Cir. 2001)......................................................................... 2

*Rezapour v. Earthlog Equity Grp., Inc.,*
   No. 12 Civ. 105, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013) ..................... 8

*Smith v. Waverly Partners, LLC,*
   No. 10 Civ. 28, 2014 WL 3105366, at *2 (W.D.N.C. July 7, 2014) ...................... 10

*Suntrust Bank v. Bryant/Sutphin Props., LLC,*
   732 S.E.2d 594, 603 (N.C. Ct. App. 2012).................................................... 8

*Taha v. Thompson*, ,
    120 N.C. App. 697, 702 (1995) ................................................................................ 10

*U.S. Sec. and Exch. Comm. v. Vali Mgmt. Partners,*
    No. 21-453, 2022 WL 2155094 (2d Cir. June 15, 2022) ........................................... 2

*Velez v. City of New York,*
    730 F.3d 128 (2d Cir. 2013) ................................................................................... 2

*Weyerhaeuser Co. v. Godwin Bldg. Supply Co., Inc.*,
    253 S.E.3d 625 (N.C. App. 1979) ............................................................................ 8

**Statutes**

N.C. Gen. Stat. § 24-1 ............................................................................................... 10

N.C. Gen. Stat. § 24-5 ............................................................................................... 10

Plaintiff and the Class ("Plaintiff") submit this memorandum of law pursuant to the Court's Individual Rule IV(A)(14), explaining why Plaintiff's proposed jury instructions and verdict form are correct and those proposed by Defendants XOOM Energy, LLC and XOOM Energy New York, LLC ("Defendants" or "XOOM") are not.

Plaintiff's proposed jury instructions accurately reflect the Court's rulings construing the contract and certifying the Class and will provide the jury a clear picture of the trial and allow the jury to focus on the disputed issues during deliberations. In contrast, XOOM's proposed instructions seek to relitigate settled matters and will mislead, confuse, and overwhelm the jury by distracting from the merits of the case.

As noted in Plaintiff's proposed instructions, the Court's rulings on the parties' forthcoming *in limine* motions will resolve or narrow many of the disputed legal issues regarding burden of proof, damages, and other matters. Those rulings will necessarily impact not only the evidence that may be received at trial, but also the theories of the case that the parties may pursue as well as the instructions to be given to the jury on the governing law. Accordingly, Plaintiff reserves the right to seek to revise her proposed instructions depending on the Court's ruling on the motions *in limine*. But even at this stage, it is clear that Plaintiff's proposed instructions correctly state the governing law while XOOM's do not.

## ARGUMENT

## I.     GOVERNING LAW FOR JURY INSTRUCTIONS

In the Second Circuit, the law is settled that "[a] litigant is entitled to have the jury instructed as to his claims and theories of law if supported by the evidence and brought to the attention of the court." *Boyce v. Soundview Tech. Grp., Inc.,* 464 F.3d 376, 389–90 (2d Cir. 2006) (quoting *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 230 (2d Cir. 1991). Thus,

"a jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *U.S. Sec. and Exch. Comm. v. Vali Mgmt. Partners,* No. 21-453, 2022 WL 2155094, at *1 (2d Cir. June 15, 2022), *quoting Velez v. City of New York,* 730 F.3d 128, 134 (2d Cir. 2013). Within those parameters, "district courts exercise broad discretion in formulating jury instructions . . . ." *Barlow v. Liberty Maritime Corp.,* 746 F.3d 518, 529 (2d Cir. 2014); *Boyce,* 464 F.3d at 389–90 (citing *Parker v. Sony Pictures Entm't, Inc*., 260 F.3d 100, 106–07 (2d Cir. 2001) ("a trial court has discretion in the style and wording of jury instructions so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or adequately inform the jury of the law.")).

Plaintiff's proposed instructions adhere to these general standards by strictly following the Court's prior rulings on summary judgment and class certification, which are the law of the case, and by concisely focusing the jury on the specific issues they will need to decide, such as whether XOOM's rates were "determined by XOOM's actual and estimated supply costs—and only those costs." Ex. 8, Pl.'s Proposed Instruction I.C, at 3 (citing ECF No. 151 at 12 ("MSJ Order")). In contrast, Defendants' proposed instructions disregard the Court's established legal findings by inviting the jury to reconsider issues already resolved, such as how to interpret the Contract and whether the Class can proceed as a whole. Defendants' instructions also include verbose and unnecessary discussions of irrelevant matters that only serve to confuse and mislead, and ask the jury to make unnecessary or incorrect factual determinations, such as asking for individual determinations on each Class Member (Ex. 9, Defs.' Proposed Instruction II.B, at 10), or instructing the jury that it cannot find that "the margin included in any rate was higher than the contract allowed" (Ex. 9, Defs.' Proposed Instruction II.C, at 10) and that it "must include 'market-

based compensation' in the price each Class Member paid for electricity or natural gas" (Ex. 9, Defs.' Proposed Instruction II.C, at 11).

## II.    THE COURT SHOULD ADOPT PLAINTIFF'S JURY INSTRUCTIONS

### A.    The Jury Should Be Provided Basic Background Regarding the Energy Industry and Instructed on the Parties' Positions

To ensure efficient use of trial time, Plaintiff proposes that the jury instructions contain a brief and neutral explanation of the energy industry and energy service companies ("ESCOs") like XOOM.  Ex. 8, Pl.'s Proposed Instruction I.B, at 2.  The purpose of including this background information is to provide basic context and help the jury understand the issues they will decide. Defendants' proposed instructions omit a comparable instruction.  However, without this instruction, the parties would need to spend additional time educating the jury on the issue through witness testimony, unnecessarily extending the trial.  The Court should include this explanation.

Similarly, Plaintiff proposes an instruction setting forth the parties' positions, as well as a brief description of the certified Class.  Ex. 8, Pl.'s Proposed Instruction I.C, at 2–3.  The purpose of including this information is to help focus the jury on the dispute at issue by clearly delineating both sides' arguments, and to ensure the jury understands who is included in the Class.  XOOM's proposed instruction not only omits this key information but instead seeks instructions regarding contract construction that disregard the Court's prior rulings and are otherwise incorrect.

More specifically, XOOM proposes that the jury be instructed that "[u]nlike the rates charged by New York utilities, ESCOs' rates are not regulated or set by the state.  Rather, they are set according to the ESCO's contract terms." Ex. 9, Defs.' Proposed Instruction I.B, at 2.  This is factually incorrect.  ESCOs' rates in New York were and are subject to regulation by the New York Public Service Commission.  The Court should omit this instruction.

### B.      The Jury Should Not Be Instructed on Irrelevant Contractual Language

XOOM proposes the following instruction:

> The contracts also state that XOOM would provide certain services to its customer "for the purposes of (i) acquiring the supplies necessary to meet" the customer's needs for electricity or natural gas, "and (ii) arranging, contracting for and administering transportation and related services" needed to deliver electricity or natural gas to the customer's premises. These services were "provided on an arm's length basis and market-based compensation [was] included in the price" the customer agreed to pay for electricity or natural gas sold under their contract with XOOM.[1]

Ex. 9, Defs.' Proposed Instruction I.B, at 2. This instruction improperly includes a contract construction the Court expressly rejected in its Summary Judgment Order, namely Defendants' argument that the "Agency" provision, which states that "market-based compensation is included in the price noted above," modifies the pricing term.  Defendants' attempt to revive this losing argument in the form of an incorrect jury instruction should be rejected because the Court clearly held that "the contract required the variation in the variable rates to be determined solely by XOOM's actual and estimated supply costs."  MSJ Order at 14.  Indeed, the Court specifically rejected XOOM's agency provision argument, *id.* at 13–14, and XOOM should not be permitted to confuse and mislead the jury by including an invalid contract construction in the jury instructions.

### C.      The Jury Should Be Instructed on the Court's Contract Construction

Plaintiff's proposed instructions strictly follow this Court's prior rulings on summary judgment and class certification—particularly the interpretation of the contract language—clearly laying out the specific issues the jury needs to decide.  In fact, Plaintiff's instructions essentially incorporate verbatim the Court's rulings on summary judgment clarifying as a matter of law what

---

[1] MSJ Ex. A-19, ECF 145-21 at 1, 2 (terms under headings "Agency" and "Price") (footnote included in Defendants' proposed instruction).

the Court described as vague contractual language.  Ex. 8, Pl.'s Proposed Instructions I.C, II.C at 3, 9 (quoting MSJ Order at 12–14).

In contrast, XOOM's instructions downplay and contradict these rulings, emphasizing the vague language while de-emphasizing the Court's construction.  XOOM proposes an instruction stating: "However, the contracts did not require XOOM to cap its margins at a certain level and Ms. Mirkin does not have a claim in this case that XOOM's margins or rates were unreasonable, so you may not find that the margin included in any rate was higher than the contract allowed." Ex. 9, Defs.' Proposed Instruction II.C, at 10.  Continuing in the same vein, XOOM attempts to revive arguments rejected at summary judgment and class certification by seeking an instruction regarding the "amount of 'actual and estimated supply costs' XOOM was required to ***consider*** in setting [its] rate . . . ."  *Id.* at 11 (emphasis added).  XOOM essentially asks the jury to disregard the Court's contract construction in favor of its own, which is wrong on the law, and asks the jury to disregard Plaintiff's claims regarding XOOM's margin, which is wrong on the facts.

On the law, the Court definitively construed the pricing term, stating that "the contract required the variation in the variable rates to be determined solely by XOOM's actual and estimated supply costs."  MSJ Order at 14.  If mere "consideration" of costs sufficed, XOOM's rate-setting process would be subjective and discretionary—which both the Court and the Second Circuit rejected.  *Id.* at 14; *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 411 (2d Cir. 2023) (noting that whether an ESCO's contract specifically allows for rate-setting discretion is a "dispositive question" and that XOOM's contract here does not provide for any discretion). Essentially, XOOM asks the jury to disregard the Court's contract construction and replace it with XOOM's own mistaken understanding.  As the Court already held, XOOM's contract "requires the monthly variable rates to be determined by XOOM's actual and estimated supply costs—and

only those costs." MSJ Order at 12.  Those rulings are the law of the case and define the scope of Plaintiff's breach of contract claim.

On the facts, Plaintiff has always maintained that XOOM's rates were unreasonable as well as barred by the contract.  *See* ECF No. 204 at 26–27 (explaining Plaintiff's contention that XOOM's margins were unreasonable).  Moreover, because XOOM's margin must "remain proportionate" and must have been set in "good faith," MSJ Order at 13–14, XOOM's margins and costs must be ***documented*** because otherwise XOOM would be giving itself the discretionary price-setting ability that the contract rules out.  The Court should therefore use Plaintiff's proposed jury instructions on the contract construction.

## D.  The Jury Should Not Be Instructed to Decertify the Class

The Court has already certified the Class.  Defendants sought a second bite at the apple by filing an unsuccessful  Rule 23(f) petition for interlocutory appeal of the Court's Certification Order, and a third bite by moving for decertification (which is actually a motion for reconsideration).  XOOM now seeks a fourth bite by proposing instructions that essentially ask the jury to decide the certification question yet again.  This effort should be rejected because it is a waste of time and resources—the jury should focus on the merits of the case, not re-litigating settled issues such as whether the class was certified.[2]

Specifically, XOOM proposes an instruction that would effectively decertify the Class:

> Although there are many Class Members, it does not follow from that fact alone that if one Class Member is entitled to recover, they all are entitled to recover.  XOOM is entitled to a fair consideration as to each Class Member, just as each Class Member is entitled to a fair consideration of his or her claim against XOOM.  Unless otherwise stated, all instructions I give you govern the case as to each Class Member.

---

[2] Indeed, and as more fully briefed in a forthcoming motion *in limine*, the Court should exclude under Federal Rules of Evidence 401 through 403 any argument or evidence offered for the purpose of attacking *any* of the Court's conclusions on the Rule 23 factors.

Ex. 9, Defs.' Proposed Instruction II.B, at 10.  This instruction is exactly the opposite of what the Court already found when it certified the Class and made clear that the "[C]lass will fail . . . [or] prevail together." ECF No. 152, at 13–14 ("Class Order").  Because the Class has been certified— and the Court already found that all Class members had contracts with identical pricing terms and that XOOM used the same rate-setting procedure for all such consumers—the jury need not make individualized liability determinations for each of the 124,530 Class Members, and any instruction to the contrary should be rejected.

Moreover, XOOM proposes to instruct the jury "to determine the monthly costs and margins for each residential and small commercial XOOM variable-rate product (including every gas and electricity product) for each of the utilities served by XOOM in New York since January 1, 2013."  Ex. 9, Defs.' Proposed Instruction II.C, at 11.  This instruction is based on the false premise that XOOM set rates differently in different utility zones—an argument the Court rejected when it certified the Class.  Class Order at 13–14.  The Class consists of "only individuals who entered a form contract containing identical pricing language."  *Id.* at 10.  The Court has already found, *id.* at 16—and XOOM has repeatedly admitted, Class Opp'n, ECF 134, at 9; Defs.' Br. in Support of Mot. for Sum. Judgment, ECF 14-1, at 18–19—that XOOM's rate-setting process for *all* Class Members was consistent throughout the Class period.  There is therefore no need for the jury to engage in the utility and product-specific calculation XOOM proposes.  Instead, Plaintiff will prove class-wide breach by proving that XOOM's rates were not based on its costs, those rates did not vary solely according to costs, and Plaintiff will then establish damages for each utility zone through her damages model and expert testimony.  Because XOOM's rate-setting process was the same for all New York utility zones, any variation in rates across different zones is a question of damages, not liability.

**E.     The Jury Should Be Instructed About the Existence of an Implied Covenant of Good Faith and Fair Dealing In the Contract**

North Carolina law recognizes that the implied covenant of good faith and fair dealing is contained in every contract. *Weyerhaeuser Co. v. Godwin Bldg. Supply Co., Inc.*, 253 S.E.3d 625, 627–28 (N.C. App. 1979). "[M]ore specifically, under such rule, the law will imply an agreement that neither party will do anything which will destroy or injure the right of the other to receive the benefits of the agreement." *Maglione v. Aegis Fam. Health Ctrs.*, 607 S.E.2d 286, 291–92 (N.C. App. 2005). Instructing the jury on this concept is essential to ensure a fair trial and failing to do so risks misleading the jury. *Id.*

XOOM opposes this instruction on the grounds that the Court previously dismissed a separate cause of action for breach of the covenant, Defs.' Trial Mem. § 2. This stance is unavailing: even where a separate claim for breach of the covenant is dismissed as redundant, Plaintiff may nevertheless argue that Defendants' breach of that implied covenant itself constitutes a breach of contract.[3] Accordingly, failing to instruct the jury about the existence of an implied covenant of good faith and fair dealing would be erroneous and would be grounds for a new trial. *Maglione*, 607 S.E.2d at 291–92 (granting new trial where plaintiff was not given the benefit of the breach of good faith and fair dealing instruction). This issue is further addressed in Plaintiff's Trial Memorandum.

---

[3] Separate causes of action for breach of the covenant are often dismissed where there is already a claim for breach of contract, but on grounds of redundancy rather than inadequacy. Indeed, the Court dismissed the covenant claim here finding that it should be "analyzed together" with the breach of contract claim. ECF No. 24 at 15. *See, e.g., Suntrust Bank v. Bryant/Sutphin Props., LLC*, 732 S.E.2d 594, 603 (N.C. Ct. App. 2012) (covenant claims rise or fall with breach of contract claims); *see also Rezapour v. Earthlog Equity Grp., Inc.*, No. 12 Civ. 105, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013) ("Where the claim for breach of good faith is 'part and parcel' of a similar claim for breach of an express term of the contract claim, that claim will rise and fall with the other breach of contract claim."); *see also Hochfelder v. Pac. Indem. Co.*, No. 22 Civ. 2012 (MKV), 2023 WL 2430497, at *3 (S.D.N.Y. Mar. 9, 2023) ("[A] claim for breach of the implied covenant 'will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.'" (quoting *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012))).

F.      **XOOM Bears the Burden of Proof as to Supply Costs and Its Fixed Margin**

The parties disagree about the burdens of proof, including for XOOM's margins.  Plaintiff maintains that XOOM bears the burden to show its variable rates included a proportionate fixed margin.  This is because the Court previously held that "under the controlling reading of the agreement, XOOM must show that its rates were determined by its actual and estimated supply costs," and must "adequately explain why the fluctuations in plaintiffs' variable rate did not directly correspond to XOOM's internal COGS metric."  MSJ Order at 15.  The burden of proof issue will be addressed more fully in upcoming motions *in limine*.

G.      **The Jury Should Not Be Instructed on an Unproven Defense**

The Court determined that XOOM was entitled to charge a reasonable, fixed margin, but only if the margin was "determined by XOOM's actual and estimated supply costs—and only those costs."  MSJ Order at 12.  Plaintiff will prove at trial that XOOM's rates violated this requirement.  Damages will be calculated as the difference between what XOOM charged Plaintiff and the Class, and what the contract allowed.  Plaintiff's proposed instructions accurately reflect this approach.  Ex. 8, Pl.'s Proposed Instruction II.D, at 13.

In contrast, XOOM proposes an instruction regarding whether the jury finds that Class Members were undercharged and the potential reductions in damages that would result.  Ex. 9, Defs.' Proposed Instruction II.D, at 12.  However, this instruction is erroneous because XOOM bears the burden of proving it is entitled to such a reduction, whether couched as a setoff or mitigation of damages.  *See Fed. Ins. Co. v. Sabine Towing & Transp. Co., Inc.*, 783 F.2d 347, 350 (2d Cir. 1986) ("The burden of showing that a plaintiff unreasonably failed to minimize damages rests with the wrongdoer."); *Aniero Concrete Co. v. N.Y. City Const. Auth.*, 308 F. Supp. 2d 164, 191 n.17 (S.D.N.Y. 2003) (because "the defendant wishes to reduce the amount of [plaintiff's] claim by asserting its right to a 'credit,' 'offset,' or 'setoff,' defendant bears the burden of proving

its entitlement by a preponderance of the evidence").   Moreover, XOOM is not entitled to a mitigation defense or any setoff, as will be further addressed in the parties' motions *in limine* regarding XOOM's affirmative defenses.

**H.      The Jury Should Not Be Instructed on Pre-Judgment Interest**

Because North Carolina law mandates pre-judgment interest[4] and calculating the amount of interest is a purely mathematical exercise, there is nothing for the jury to decide with respect to interest.  Plaintiff has not requested any instruction on the subject and none should be given.[5]

**I.      The Verdict Form Should Be Clear and Concise**

Plaintiff proposes a clear and concise two-page verdict form focusing on the core issues the jury will decide: (1) whether XOOM breached, and (2) if XOOM breached, the amount of compensatory and punitive damages it owes to the Class.  Ex. 11, Pl.'s Proposed Verdict Form. This aligns with the certified Class structure, as the evidence to be adduced at trial applies equally to all Class Members, including the Named Plaintiff.  Indeed, Plaintiff's verdict form is in accord with a recent verdict form used in a class action tried in the Southern District which did not

---

[4] *See* N.C. Gen. Stat. §§ 24-1, 24-5(a) (mandating pre-judgment interest at an 8% annual rate).

[5] *See, e.g.*, *Taha v. Thompson*, 120 N.C. App. 697, 702 (1995) ("The requirement that the jury distinguish between principal and interest obviously pertains only to those rare situations where evidence as to both principal and interest is submitted to the jury for their consideration.  In this case, the court instructed the jury only to find the amount of damages plaintiff suffered as a result of the breach.  There was no mention of interest.  Since the court and attorneys said nothing about interest, it is presumed that the jury did not include it in their award.  Therefore, as this Court previously found in *Dailey*, 'in this case, computing the interest due was a mere clerical matter, and it would have been an absurd, pointless waste of time to ask the jury to 'distinguish' between principal and interest.'" (cleaned up)); *Insight Health Corp. v. Marquis Diagnostic Imaging of N. Carolina, LLC*, No. 14 Civ. 1783, 2018 WL 2728782, at *19 (N.C. Super. June 5, 2018) ("The jury was not instructed to consider prejudgment interest on [defendant's] breach of contract, and evidence of interest was not submitted to the jury.  Thus, it is proper for the Court's judgment to add prejudgment and postjudgment interest to the jury's verdict on damages."); *Smith v. Waverly Partners, LLC*, No. 10 Civ. 28, 2014 WL 3105366, at *2 (W.D.N.C. July 7, 2014) ("Plaintiff will not be denied pre-judgment interest for failing to request submission of the issue of interest to the jury for determination. . . . Here, no evidence was presented to the jury as to interest.  Therefore, it would have been improper to submit the issue of interest to the jury.").

differentiate between the Class Representative and the Class on the verdict form, simplifying complex issues for the jury.  *See* **Ex. A** (Verdict Form, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), ECF No. 1997 (S.D.N.Y. 2022)).

In contrast, XOOM's proposed 39-page verdict form is confusing and misleading and incorporates arguments already rejected by the Court.  Ex. 12, Defs.' Proposed Verdict Form. There is no need for the jury to make separate findings for Ms. Mirkin and the Class on liability or damages.  Any such distinction only serves to confuse the jury because XOOM set its rates in the same way for all Class Members and accordingly, the claims of Ms. Mirkin and the Class rise or fall together.  Class Order at 13–14 ("If the contract allowed XOOM to incorporate prior period adjustments and other supply costs into the margin, and they in fact did so consistent with the contract, the class will fail together.  If XOOM did not incorporate prior period adjustments and other supply costs into the margin, or did so in violation of the contract, the class will prevail together.  Either way, the outcome will be determined by common evidence, rather than evidence that differs between class members.").

Further, XOOM seeks to have the jury attempt to perform their own complex calculations from XOOM's voluminous rate-setting workbooks and to do so for each product, each month, and each utility zone.  Ex. 12, Defs.' Proposed Verdict Form at 2, Chart A.  This is unworkable and unnecessary.  Again, the jury should determine rates in the same manner for all Class Members and Plaintiff's expert can provide updated calculations if the jury requires them.

XOOM's verdict form also seeks to repeat the preponderance of the evidence standard. Ex. 12, Defs.' Proposed Verdict Form at 2.  This is unnecessary as both parties propose instructing the jury on what that standard means.  The jury should receive a clear and concise verdict form to ensure they are able to focus on the essential questions in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court accept Plaintiff's proposed jury instructions and reject Defendants'.

Dated: May 10, 2024

**WITTELS MCINTURFF PALIKOVIC**

/s/ J. Burkett McInturff
J. Burkett McInturff
Steven L. Wittels
Ethan D. Roman
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
slw@wittelslaw.com
edr@wittelslaw.com

*Class Counsel for Plaintiff and the Class*

Richard Dolan
Bradley D. Simon
**SCHLAM STONE & DOLAN LLP**
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

Andrey Belenky
**KHEYFITS BELENKY LLP**
1140 AVENUE OF THE AMERICAS, 9TH FLOOR
NEW YORK, NY 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

*Co-Counsel for Plaintiff and the Class*

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                         :                 13 Civ. 7789 (LGS)
                                         :
IN RE FOREIGN EXCHANGE BENCHMARK  :
RATES ANTITRUST LITIGATION        :          **SPECIAL VERDICT**
                                         :                   **FORM**
------------------------------------------------------------- X

We, the jury, unanimously find as follows on the questions submitted to us:

**Question 1:**   Did Plaintiffs prove, by a preponderance of the evidence, the existence of a conspiracy to widen, fix, stabilize or maintain bid-ask spreads in the FX spot market?

               _____                   _____
                        Yes                                       No

*If you answered "Yes" to Question 1, please continue to Question 2.*

*If you answered "No" to Question 1, your deliberations are complete.*

**Question 2:**   Did Plaintiffs prove, by a preponderance of the evidence, that Credit Suisse knowingly participated in any conspiracy that you found in response to Question 1?

               _____                   _____
                        Yes                                         No

*If you answered "Yes" to Question 2, please continue to Question 3.*

*If you answered "No" to Question 2, your deliberations are complete.*

**Question 3:**   How many conspiracies do you find Plaintiffs have proven, by a preponderance of the evidence, that Credit Suisse knowingly participated in?     _____

*Please continue to Question 4.*

1

**Question 4:**   For the first (or only) conspiracy you found, please answer the following two questions:

> **Question 4A**: State the period of time that you found that the conspiracy existed: (*Circle or write in the dates*)

| December 1, 2007, to December 31, 2013 (inclusive) | *Or* | The following lesser period: _____ |
|---|---|---|

> **Question 4B:**  Circle every bank below that you found knowingly participated in the conspiracy with Credit Suisse:

| Bank of America | Bank of Tokyo-Mitsubishi | Barclays |
|---|---|---|
| BNP Paribas | Citigroup | Deutsche Bank |
| Goldman Sachs | HSBC | JPMorgan |
| Morgan Stanley | RBC | RBS |
| Société Générale | Standard Chartered | UBS |

*If you found only one conspiracy existed in which Credit Suisse knowingly participated (i.e. you answered "1" to Question 3), your deliberations are complete.*

*If you found that more than one conspiracy existed in which Credit Suisse knowingly participated, please proceed to answer Questions 5A and 5B for each of them.*

2

**Question 5:**     For the _____ (*e.g. second*) conspiracy you found in response to Question 3, please answer the following two questions:

    **Question 5A**: State the period of time that you found that the conspiracy existed: (*Circle or write in the dates*)

| December 1, 2007, to December 31, 2013 (inclusive) | *Or* | The following lesser period: _____ |
|---|---|---|

    **Question 5A:** Circle every bank below that you found knowingly participated in the conspiracy with Credit Suisse:

| Bank of America | Bank of Tokyo-Mitsubishi | Barclays |
|---|---|---|
| BNP Paribas | Citigroup | Deutsche Bank |
| Goldman Sachs | HSBC | JPMorgan |
| Morgan Stanley | RBC | RBS |
| Société Générale | Standard Chartered | UBS |

*If you have answered Questions 5A and 5B for every conspiracy that you found in which Credit Suisse knowingly participated, your deliberations are complete.*

*If you found more than two conspiracies in which Credit Suisse knowingly participated, please write out the answers Questions 5A and 5B for each remaining conspiracy on a new sheet of paper.*

Each juror should place his or her signature on the lines below.
I attest that the foregoing accurately reflects the jury's decision.

1. _____

2. _____

3. _____

4. _____

5. _____

6. _____

7. _____

8. _____

9. _____

10. _____

*Please print the name of the foreperson*: Mark Conn

Dated: 10/20, 2022

*You are finished. Please provide this completed form in a sealed envelope to the Court Security Officer.*