# Exhibit 14

XOOM's Memorandum of Law Addressing Jury Instructions and Verdict Form Disputes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SUSANNA MIRKIN and BORIS MIRKIN,
Individually and on Behalf of All Others
Similarly Situated,

                Plaintiffs,

v.

XOOM ENERGY, LLC and XOOM ENERGY
NEW YORK, LLC,

                Defendants.

No. 18 Civ. 2949 (ARR) (JAM)

## XOOM'S MEMORANDUM OF LAW ADDRESSING JURY INSTRUCTION AND VERDICT FORM DISPUTES

### Undisputed Jury Instructions

XOOM has no objection to Plaintiff's Jury Instructions I.A. (Introduction), I.D. (Evidence Considered), I.E. (Conduct as Jurors), I.F. (Trial Procedure), and II.A (Introduction), which are either virtually identical to XOOM's proposed Instructions or have limited, non-substantive variations from XOOM's corresponding Instructions.

### Dispute No.1:

#### Plaintiff's Proposed Instruction

This case is about customer contracts for electricity and natural gas supplied to New York residential and small commercial customers. The energy we are talking about in this case is the electricity you use when you turn on a light in your home or the gas you use when you cook on a gas stove.

For over 100 years utilities generated electricity or extracted natural gas and sent it down power and gas lines to people's homes and businesses. That's how the energy system was envisioned in the 1800s, and for the most part, it's how it continues to work today. Beginning in the late 1990s, however, some states—including New York—began to deregulate their retail energy markets allowing consumers a choice: continue buying energy from their utility or buy it from a third-party energy services company, called an "ESCO." XOOM is an ESCO.

In New York, if a customer chooses to buy their energy from an ESCO, the utility will still deliver the energy, send the customer the bill, and collect the

1

customer's payment.  But the ESCO will purchase the energy on the open market for its customers, acting as an intermediary between the companies that generate the energy, and the local utility company that distributes it to customers.  In this scenario the ESCO sets the customer's rate.

For the end consumer choosing to buy their energy from an ESCO, nothing else changes with their current utility.  No new power lines, equipment or meters are needed.  The utility continues to service the customer, reads the meter, and maintains any service obligations.

Unlike utilities, ESCOs can offer a variety of rates, including fixed rates that stay the same over a given period or variable rates that may fluctuate on a monthly basis.

An ESCO customer's monthly bill (just like a utility customer's monthly bill) is calculated by multiplying the customer's monthly usage times the rate.  For electricity, the usage is measured in kilowatt hours.  For natural gas, the customer's usage is measured in therms.  So, for example, an electric customer is billed for the number of kilowatt hours they used in a month times the monthly energy rate.

Plaintiff's Proposed Instructions Part I.B (footnotes omitted).

## XOOM's Proposed Revision

Omit.

## XOOM's Position

Plaintiff's lengthy description of the "background of the energy industry" does not include any legal instructions. Rather, it is a recitation of facts from Plaintiff's perspective that are largely irrelevant, disputed, misleading, speculative, or wrong.

For example, Plaintiff speculates that the "energy system was envisioned" in the 1800s to work a certain way, and her description of the way the system now works "for the most part" is inaccurate. Contrary to Plaintiff's assertion, utilities in New York and elsewhere in the U.S. do not "generate[] electricity or extract[] natural gas and sen[d] it down power and gas lines to people's homes and businesses." Rather, while utilities' roles vary based on state-specific laws and regulations, utilities generally deliver (and in some instances sell) electricity and natural gas generated or extracted by a variety of different sources, and those commodities are sold in wholesale markets and commingled on electricity grids or natural gas pipelines such that it is impossible for any utility to control which electrons and molecules a customer receives. Thus, in many ways, utilities "act[] as intermediar[ies]" to customers for delivery. ESCOs, on the other hand have an intermediary role between wholesalers and retail customers (who, by law, cannot buy directly from wholesalers). Plaintiff's background recitation also omits certain facts about New York's energy industry in a way that could suggest ESCOs operate without regulatory oversight. For example, it does not explain that ESCOs are licensed by the New York Public Service Commission (PSC), or that ESCO contracts are submitted to and approved by the PSC as

being in compliance with its regulations before they can be offered to customers. For all of these reasons, Plaintiff's factual description is inaccurate, misleading, and potentially prejudicial. Additionally, Plaintiff's proposed instruction inaccurately implies that natural gas usage is "measured in therms" for all New York customers when the truth is that the unit depends on the region. Many other statements in Plaintiff's proposed instruction are similarly wrong and misleading.

Accordingly, the Court should decline Plaintiff's proposed instruction regarding the "background of the energy industry." Plaintiff should have to provide that factual background, if she is able, by submitting relevant, admissible evidence in accordance with her burden of proof. *Knickerbocker Life Ins. Co. v. Foley*, 105 U.S. 350, 26 L. Ed. 1055 (1881) ("No instruction should be given which thus assumes, as a matter of fact, that which is not conceded or established by uncontradicted proof."); *Howard v. Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 236 (7th Cir. 1956) (same).

## Dispute No. 2

**Plaintiff's Proposed Instruction:**

> There are 124,530 Class Members, meaning there are 124,530 New York XOOM accounts impacted by this action.

Plaintiff's Proposed Instructions Part I.C (footnotes omitted).

**XOOM's Proposed Revision:**

> Omit.

**XOOM's Position**

XOOM "accounts" are not class members. Rather, the class is made of up "persons" who may have multiple accounts in their name. Accordingly, the Court should reject this instruction as factually inaccurate.

Additionally, the jury is not bound by factual findings the Court made in connection with class certification, so Plaintiff may not rely on those findings to avoid her burden of proof at trial. *See In re Initial Pub. Offerings Sec. Litig. ("IPO")*, 471 F.3d 24, 41 (2d Cir. 2006) ("[T]he determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts[.]"), *clarified as to other grounds on denial of reh'g*, 483 F.3d 70 (2d Cir. 2007); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("The jury or factfinder can be given free hand [at a class trial] to find all of the facts required to render a verdict on the merits, and if its finding on any fact differs from a finding made in connection with class action certification, the ultimate factfinder's finding on the merits will govern the judgment."); *Knickerbocker Life Ins. Co. v. Foley*, 105 U.S. 350, 26 L. Ed. 1055 (1881) ("No instruction should be given which thus assumes, as a matter of fact, that which is not conceded or established by uncontradicted proof.").

Accordingly, the Court should reject this instruction and the jury should be "given a free hand" to determine how many members are included in the class based on the evidence admitted at trial.

## Dispute No. 3

**Plaintiff's Proposed Instruction:**

Here the contracts between XOOM and the Class Members state that each customer's monthly variable rate is "based on XOOM's actual and estimated supply costs which may include but not be limited to prior period adjustments, inventory and balancing costs."

I have determined that the promise in XOOM's contract that XOOM's monthly variable rate will be "based on XOOM's actual and estimated supply costs" means that XOOM's rates must "be determined by XOOM's actual and estimated supply costs—and only those costs." "A variable rate that varies depending only on the actual and estimated supply costs must vary according to those costs, but it does not have to *equal* those costs." XOOM is entitled to charge a margin, but "the margin would have to remain proportionate, but not equal to the supply costs over time." This means that XOOM's margin must have remained a fixed, specific percentage, rather than varying over time. XOOM's margin also must be "reasonable." I have also already determined that the contract does not allow XOOM any price-setting discretion.

Ms. Mirkin alleges that XOOM breached this contract by charging more than the contract allowed when it set her and other Class Members' monthly variable rates and that, as a result, XOOM's customers paid more than they should have if XOOM had set rates in accordance with the contract language. XOOM denies those claims. XOOM denies this and asserts that it set rates according to the contract and that Ms. Mirkin and the Class Members were not overcharged.

Plaintiff's Proposed Instructions Part I.C (footnotes omitted).

**XOOM's Proposed Revision:**

Unlike the rates charged by New York utilities, ESCOs' rates are not regulated or set by the State. Rather, they are set according to each ESCO's contract terms. Here, the contracts between XOOM and the Class Members state that the monthly variable rate is "based on XOOM's actual and estimated supply costs which may include but not be limited to prior period adjustments, inventory and balancing costs."

The contracts also state that XOOM would provide certain services to its customer "for the purposes of (i) acquiring the supplies necessary to meet" the customer's needs for electricity or natural gas, "and (ii) arranging, contracting for and administering transportation and related services" needed to deliver electricity or natural gas to the customer's premises. These services were "provided on an arm's length basis and market-based compensation [was] included in the price" the customer agreed to pay for electricity or natural gas sold under their contract with XOOM.

Ms. Mirkin alleges that XOOM breached the contracts by not following this language when it set her and other Class Members' monthly variable rates and that, as a result, XOOM's customers paid more than they should have if XOOM had set rates in accordance with the contract language. XOOM denies those claims. XOOM asserts that it did set rates according to the contracts and that Ms. Mirkin and the Class Members were not overcharged.

XOOM's Proposed Instructions Part I.C (footnotes omitted).

**XOOM's Position**

Plaintiff's description of the parties' position omits the market-based compensation that XOOM was expressly entitled to include in the "price" the class members paid for electricity and natural gas. MSJ Ex. A-19, ECF 145-21 at 1, 2 (terms under headings "Agency" and "Price"). Nothing in the Court's summary judgment order justifies Plaintiff's omission of that term here. *See* SJ Order 13 (indicating that "market-based compensation" may plausibly be considered a component of costs or margin under the contract, but not suggesting that it is not a contractually required component of the class members' rates). Thus, the jury cannot assess Plaintiff's claims about what the class members' rates should have been under the contract without accounting for market-based compensation. Further, omitting XOOM's reference to market-based compensation here will suggest that the Court determined it should not be considered a component of costs or margin.

Additionally, Plaintiff's extended description of the Court's summary judgment ruling is unnecessary to describe the "position of the parties," and in any event inaccurate. The Court did not hold that the "margin must have remained a fixed, specific percentage," or that "the contract does not allow XOOM any price-setting discretion." Those are new interpretations Plaintiff is now advocating for. Rather, the Court merely held that the margin had to be "proportionate to costs" for the rates to remain "based on" XOOM's "actual and estimated supply costs," and that it must be "reasonable" because that the contract's "silence" with respect to a cap on margins "does not allow ***unbounded*** discretion." SJ Order 14.

Accordingly, the Court should decline Plaintiff's inaccurate description of the parties' positions and the Court's prior rulings, and adopt XOOM's position instead.[1]

---

[1] XOOM maintains its objection the legal determinations the Court made on summary judgment, including its interpretation of the contract. These instructions do not waive, forfeit, or abandon any objections to that construction, but rather intended only to accurately describe rulings the Court has already made. *See Dupree v. Younger*, 598 U.S. 729, 735 (2023) ("[A] district court's purely legal conclusions at summary judgment . . . merge into the final judgment, at which point they are reviewable on appeal.").

## Dispute No. 4

**Plaintiff's Proposed Instruction:**

In addition to the express terms of a contract, the law provides that every contract contains an implied covenant of good faith and fair dealing. This means that, even though not specifically stated in the contract, it is understood that each party to the contract must act in good faith and deal fairly with the other party.

To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the parties' reasonable expectations. A contracting party must not act in bad faith, dishonestly, or with improper motive to diminish the right of the other party to receive the benefits or reasonable expectations of the contract.

Plaintiff and the Class claim that XOOM breached the contract by failing to comply with the implied covenant of good faith and fair dealing.  Defendants deny this.

Plaintiff's Proposed Instructions Part I.C (footnotes omitted).

**Defendant's Proposed Revision:**

Omit.

**XOOM's Position**:

As XOOM will explain further in a motion *in limine*, the Second Circuit's mandate precludes Plaintiff from alleging or attempting to prove that XOOM breached the implied covenant of good faith and fair dealing. Plaintiff expressly declined to challenge the Court's dismissal of that claim on appeal from the Court's judgment of dismissal with prejudice, and the Second Circuit expressly affirmed that dismissal. See Mandate 3 n.1, Doc. 41-1 ("The dismissal of the implied covenant and unjust enrichment claims is not challenged on appeal. Accordingly, we affirm the District Court's dismissal of those claims."). That mandate conclusively forecloses Plaintiff's attempt to pursue her implied-covenant claim at trial. *See Day v. Moscow*, 955 F.2d 807, 812 (2d Cir. 1992) ("Where issues have been explicitly or implicitly decided on appeal, the law-of-the-case doctrine obliges the district court on remand to follow the decision of the court of appeals." (cleaned up)); *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 271 (2d Cir. 2012) (vacating a judgment in which a district court erroneously entertained arguments on remand from an appeal that "impliedly decided" the argument had been waived).

Accordingly, Plaintiff may not pursue that claim at trial or seek a jury question regarding the implied covenant. *See Travel Ctr. of Fairfield Cnty., Inc. v. Royal Cruise Line Ltd.*, 154 F. Supp. 2d 281, 289 (D. Conn. 2001) (declining a proposed jury instruction on an unpleaded claim for breach of the covenant of good faith and fair dealing), *aff'd*, 43 F. App'x 461 (2d Cir. 2002) (rejecting the plaintiff's appellate arguments "concerning the breach of the implied covenant of good faith and fair dealing" as "meritless").

## Dispute No. 5

**Plaintiff's Proposed Instruction:**

> Ms. Mirkin has the burden of proving her claim, on behalf of the Class, by a preponderance of the evidence, which means you must be persuaded by the evidence that those claims are more likely true than not. If you find that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract, you must find in favor of the Class on the breach of contract claim.  But if you do not believe that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract, then you must find in favor of XOOM.

Plaintiff's Proposed Instructions Part I.C (footnotes omitted).

**Defendant's Proposed Revision:**

> Ms. Mirkin has the burden of proving her claim and the claims of every Class Members by a preponderance of the evidence, which means you must be persuaded by the evidence that those claims are more likely true than not true.  If you find that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract for her rates, you must find in favor of Ms. Mirkin on her breach of contract claim. If you find that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract with every member of the Class, you must find in favor of the Class on their breach of contract claims. But if you do not believe that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the contract as to either Ms. Mirkin or every Class Member, then you must find that XOOM did not breach the contract.

XOOM's Proposed Instructions Part I.C (footnotes omitted).

**XOOM's Position:**

Plaintiff's proposed instruction urges the Court to adopt an incorrect statement of the law. Plaintiff has the burden to show liability as to herself **and** the Class Members. That Plaintiff may establish liability for some (or even all) months that she was a XOOM customer does not in itself establish that XOOM breached its contracts for all Class Members as to each product, month, and utility zone at issue during the Class Period. It therefore is incorrect to instruct the jury that, if they "conclude that Ms. Mirkin" establishes a breach of contract as to herself, that they "must find that XOOM breached the contract with the Class." Rather, a proper instruction should inform the jury that—consistent with Rule 23—Plaintiff must show breach as to both herself and "all the Class Members" collectively.

XOOM's proposed instruction correctly instructs the jury in accordance with Plaintiff's burden to prove liability with respect to every member of the proposed class as required by the Supreme Court and Second Circuit precedent to avoid unnecessary and protracted post-trial litigation.  *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, J.,

concurring) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand.").

## Dispute No.6

**Plaintiff's Proposed Instruction:**

This is a class action. The Court has determined that Ms. Mirkin may sue not only for herself, but on behalf of other persons who are similarly situated.  Ms. Mirkin brings this action on behalf of herself and:

> All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.

Plaintiff's Proposed Instructions Part II.B (footnotes omitted).

**XOOM's Proposed Revision:**

This is a class action.  In a class action, plaintiffs are permitted to sue, not only for themselves, but on behalf of other persons who are similarly situated.  Ms. Mirkin seeks to bring this action on behalf of herself and:

> All New York XOOM residential or small commercial customers who were charged a variable rate for electricity or natural gas under the operative 2013 XOOM New York variable rate sales contract or its equivalent language at any time from January 1, 2013 through and including the date of judgment.

Excluded from the Class are the officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest, all federal, state and local government entities and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

Although there are many Class Members, it does not follow from that fact alone that if one Class Member is entitled to recover, they all are entitled to recover. XOOM is entitled to a fair consideration as to each Class Member, just as each Class Member is entitled to a fair consideration of his or her claim against XOOM. Unless otherwise stated, all instructions I give you govern the case as to each Class Member.

It is the duty of the Court to instruct you about the law.

XOOM's Proposed Instructions Part II.B (footnotes omitted).

**XOOM's Position:**

Plaintiff's proposal to include a statement that "the Court has determined that Ms. Mirkin may sue not only for herself…" is potentially prejudicial because it could suggest to the jury that the Court already made a determination supporting the merits of Ms. Mirkin's and the classes claims. The jury is likely to misunderstand that class certification is only a procedural determination. So, Plaintiff's statement that a class exists based on the Court's determination should be omitted.

XOOM does not object to omitting its proposed paragraph about certain persons excluded from the Class Member definition, as set forth in the Order Certifying Class, ECF 152, at 18–19, or the concluding sentence about the duty of the Court to instruct the jury on the law, if the Court finds it appropriate to omit them.

XOOM does, however, believe that it is necessary to include its proposed paragraph explaining that a showing of liability and damages as to one Class Members does not establish class-wide liability and damages as to every Member of the Class. XOOM's proposed language comports with federal pattern jury instructions and implements admonitions from the Supreme Court about jury instructions and verdict forms that do not inform class-action juries that they must account for potentially unharmed class members. *See* 3 Fed. Jury Prac. & Instr. § 103:13 (6th ed.) (modified), 3 Fed. Jury Prac. & Instr. § 103:13 (6th ed.); *Tyson Foods*, 577 U.S. at 463 (stating that a class verdict requires evidence of "liability and damages" for "for each individual plaintiff"). As explained more fully in XOOM's Statement on Damages, Plaintiff's own (constantly shifting) theory of damages requires application of damage models that are highly likely to show that at least some Class Members were *undercharged* during the Class Period. The jury must therefore be instructed in such a way as to ensure that [any] damages award goes only to injured class members." *See, e.g., id.*, 577 U.S. at 466 (2016) (Roberts, C.J., concurring) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand.").

**Dispute No. 7**

**Plaintiff's Proposed Instruction:**

> Ms. Mirkin asserts that XOOM breached its contract. I have determined that the promise in XOOM's contract that XOOM's monthly variable rate will be "based on XOOM's actual and estimated supply costs" means that XOOM's rates must "be determined by XOOM's actual and estimated supply costs—and only those costs." "A variable rate that varies depending only on the actual and estimated supply costs must vary according to those costs, but it does not have to *equal* those costs." XOOM is entitled to charge a margin, but "the margin would have to remain proportionate, but not equal to the supply costs over time." This means that XOOM's margin must have remained a fixed, specific percentage, rather than varying over time. XOOM's margin also must be "reasonable." I have also already determined that the contract does not allow XOOM any price-setting discretion.

> To find in favor of Ms. Mirkin and the Class, you must find that XOOM breached its contract, meaning its variable rates were not "determined by XOOM's actual and estimated supply costs—and only those costs." You may find that XOOM's variable rates were not determined by its supply costs in any way supported by the evidence. As a reminder, a preponderance of the evidence means that Ms. Mirkin proved that it is more likely true than not true that XOOM breached its contract.

> Ms. Mirkin claims that XOOM breached the contract by failing to base its variable rates on XOOM's actual and estimated supply costs, plus a proportionate fixed margin. XOOM denies this. XOOM contends that the variable rates it charged Class Members were based on XOOM's actual and estimated supply costs, plus a proportionate fixed margin.

Plaintiff's Proposed Instructions Part II.C (footnotes omitted).

**XOOM's Proposed Revision:**

> Ms. Mirkin asserts that XOOM breached its contracts with her and the Class Members. To find in favor of Ms. Mirkin and the Class Members, you must find that she proved by a preponderance of the evidence that XOOM breached the contracts as to every variable rate included in the Class. As a reminder, preponderance of the evidence means that Ms. Mirkin proved that it is more likely true than not true that XOOM breached the contracts as to every variable rate.

> XOOM's contract states that its variable rates will be "based on XOOM's actual and estimated supply costs which may include but not be limited to prior period adjustments, inventory and balancing costs." I have determined that this contract language requires that XOOM's monthly variable rate "be determined by XOOM's actual and estimated supply costs—and only those costs." That does not mean that the variable rate must be *equal* to those costs.  It is acceptable for the rate

to vary from month to month, by product, and by utility zone.  That is because, as you have heard, XOOM's actual and estimated supply costs varied from month to month, by product, and by utility zone. XOOM is also entitled to include an additional amount called a "margin" in its rates.  I have determined that any margin charged by XOOM must "remain proportionate, but not equal to the supply costs over time." However, the contracts did not require XOOM to cap its margins at a certain level and Ms. Mirkin does not have a claim in this case that XOOM's margins or rates were unreasonable, so you may not find that the margin included in any rate was higher than the contract allowed.

The following formula should be used to determine what XOOM's variable rates should have been under the contracts: XOOM's actual and estimated supply costs, plus a proportionate "margin." These inputs for any given month should be used to calculate the monthly rate XOOM was required to charge under the contracts for that rate. To illustrate:



Given my determination regarding the contract's meaning, you must make two findings before you can determine what rate the contract required in a particular instance: (1) the monetary amount of "actual and estimated supply costs" XOOM was required to consider in setting that rate; and (2) the monetary amount of the margin XOOM was allowed to add to those costs.  You will need to determine the monthly costs and margins for each residential and small commercial XOOM variable-rate product (including every gas and electricity product) for each of the utilities served by XOOM in New York since January 1, 2013. In making these determinations, you must include "market-based compensation" in the price each Class Member paid for electricity or natural gas, either by including that compensation as a component of the costs or margin you use to determine the rate the contract required.

The costs and margins for each month need not be the same for each utility zone or product, and the costs and margins need not be the same for each month.  It is possible that you may conclude that XOOM's variable rates were based on actual and estimated supply costs (plus a proportionate margin) for some, but not all, months, products, and utility zones. The fact that XOOM may have charged

13

different rates for the same products in different utility zones is not evidence that XOOM overcharged its customers.

XOOM's Proposed Instructions Part II.C (footnotes omitted).

**XOOM's Position:**

Plaintiff's description of the Court's proportionate-margin construction of the contract is biased and inaccurate. The Court did not hold that the "margin must have remained a fixed, specific percentage," or that the contract does not allow XOOM any price-setting discretion. Again, those are new interpretations Plaintiff is now advocating for. At summary judgment, the Court merely held that the margin had to be "proportionate to costs" for the rates to remain "based on" XOOM's "actual and estimated supply costs." SJ Order 14. Plaintiff's new interpretation does not explain whether the "specific percentage" is a percentage of supply costs, a percentage of the rate, or a percentage of something else—because the Court's order did not address that either. In addition, the Court did state that the margin must be "reasonable" because that the contract's "silence" with respect to a cap on margins "does not allow **unbounded** discretion." SJ Order 14. However, the boundary on that discretion is based on the implied covenant of good faith and fair dealing, which is not at issue in this case, *see supra* Dispute No. 4, and the Court specifically held that the contract does **not** cap XOOM's margins at "a fixed, specific percentage." SJ Order 13–14.

Additionally, Plaintiff's description of the contract omits the market-based compensation that XOOM was expressly entitled to include the "price" the class members paid for electricity. MSJ Ex. A-19, ECF 145-21 at 1, 2 (terms under headings "Agency" and "Price"). Nothing in the Court's summary judgment order justifies Plaintiff's omission of that term here. *See* SJ Order 13 (indicating that "market-based compensation" may plausibly be considered a component of costs or margin under the contract, but not suggesting that it is not a contractually required component of the class members' rates). Thus, the jury cannot assess Plaintiff's claims about what the class members' rates allegedly should have been under the contract without accounting for including market-based compensation. Further, omitting XOOM's reference to market-based compensation here will suggest that the Court determined it should not be considered a component of costs or margin.

XOOM's proposal, by contrast, accurately describes the Court's contract construction while also informing the jury that the reasonableness of XOOM's rates or margins is **not** at issue due to Plaintiff's express abandonment of her implied covenant claim and the Second Circuit's affirmance of that claim's dismissal. *See supra* Dispute No. 4. Additionally, XOOM's instructions accurately inform the jury of the rate components XOOM was legally allowed (indeed, required) to include in the class members' rates, which the jury must know in order to determine what the rates should have been as a prerequisite to determining factual issues of liability and damages.

Accordingly, the Court should decline Plaintiff's inaccurate description of the parties' positions and adopt XOOM's position instead.

## Dispute No. 8

**<u>Plaintiff's Proposed Instruction</u>:**

In addition to the express terms of a contract, the law provides that every contract contains an implied covenant of good faith and fair dealing. This means that it is understood that each party to the contract must act in good faith and deal fairly with the other party.

To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the parties' reasonable expectations. A contracting party must not act in bad faith, dishonestly, or with improper motive to diminish the right of the other party to receive the benefits or reasonable expectations of the contract.

There are many forms of conduct that might constitute a violation of good faith and fair dealing, but each case is fact-specific. For you to find that there has been a breach of the implied covenant of good faith and fair dealing in this case, the Plaintiff must prove to you that the Defendants: (1) acted in bad faith, which can be inferred from evidence that XOOM's conduct was arbitrary or contrary to reasonable expectations, and (2) that conduct denied the Class the benefit of the bargain of XOOM's contract.

In considering what constitutes bad faith, you should consider a number of factors, including the expectations of the parties and the purposes for which the contract was made. You should also consider the level of sophistication between the parties and whether the parties had unequal bargaining power.

Plaintiff and the Class claim that XOOM breached the implied covenant of good faith and fair dealing.  Defendants deny this.

Plaintiff's Proposed Instructions Part II.C (footnotes omitted).

**<u>XOOM's Proposed Revision</u>:**

Omit.

**<u>XOOM's Position</u>**

As XOOM will explain further in a motion *in limine*, the Second Circuit's mandate precludes Plaintiff from pursuing her abandoned claim for breach of the implied covenant of good faith and fair dealing. Plaintiff expressly declined to challenge the Court's dismissal of that claim on appeal from the Court's judgment of dismissal with prejudice, and the Second Circuit expressly affirmed that dismissal. See Mandate 3 n.1, Doc. 41-1 ("The dismissal of the implied covenant and unjust enrichment claims is not challenged on appeal. Accordingly, we affirm the District Court's dismissal of those claims."). That mandate conclusively forecloses Plaintiff's attempt to pursue her implied-covenant claim at trial. *See Day*, 955 F.2d at 812 ("Where issues have been explicitly

15

or implicitly decided on appeal, the law-of-the-case doctrine obliges the district court on remand to follow the decision of the court of appeals." (cleaned up)); *Parmalat Cap. Fin. Ltd.*, 671 F.3d at 271 (vacating a judgment in which a district court erroneously entertained arguments on remand from an appeal that "impliedly decided" the argument had been waived).

Accordingly, Plaintiff may not pursue that claim at trial or seek a jury question regarding the implied covenant. *See Travel Ctr. of Fairfield Cnty.*, 154 F. Supp. 2d at 289 (declining a proposed jury instruction on an unpleaded claim for breach of the covenant of good faith and fair dealing), *aff'd*, 43 F. App'x 461 (2d Cir. 2002) (rejecting the plaintiff's appellate arguments "concerning the breach of the implied covenant of good faith and fair dealing" as "meritless").

**Dispute No. 9**

**Plaintiff's Proposed Instruction:**

> If you conclude that Ms. Mirkin has proven by a preponderance of the evidence that XOOM breached the express terms of the contract, or that XOOM set its New York variable rates in violation of the duty of good faith and fair dealing, you must find that XOOM breached the contract with the Class.

> If you find that Ms. Mirkin has not proven by a preponderance of the evidence that XOOM breached the express terms of the contract, or that XOOM set its New York variable rates in violation of the duty of good faith and fair dealing, you must find that XOOM did not breach the contract.

Plaintiff's Proposed Instructions Part II.C (footnotes omitted).

**XOOM's Proposed Revision:**

> If you conclude that Ms. Mirkin has proven by a preponderance of the evidence that XOOM charged her and all the Class Members rates that were higher than the rates permitted under the contract, then you must find that XOOM breached its contract. If you find that Ms. Mirkin has *not* proven by a preponderance of the evidence that XOOM charged variable rates that included amounts other than XOOM's actual and estimated supply costs plus a proportionate margin for her or any Class Member, then you must find that XOOM did not breach the contract. If you are unable to determine what XOOM should have charged for any given rate, you must find that XOOM did not breach the contract by setting that rate.

Defendant's Proposed Instructions Part II.C (footnotes omitted).

**XOOM's Position**

This portion of Plaintiff's Proposed Instructions continues to incorrectly assert that Plaintiff and the Class Members may recover on a claim for breach of the duty of good faith and fair dealing. But again, Plaintiff pleaded no such claim in her live complaint, and the Second Circuit's mandate precludes her from reviving that claim for reasons discussed above and in XOOM's forthcoming motion *in limine*.

Plaintiff's proposal also urges the Court to adopt an incorrect statement of the law. Plaintiff has the burden to show liability as to herself and the Class Members. If Plaintiff can establish liability for some (or even all months) that she was a XOOM customer, that does not in itself establish that XOOM breached its contracts for any other Class Member—much less for all Class Members as to each product, month, and utility zone at issue during the Class Period. It therefore is incorrect to instruct the jury that, if they "conclude that Ms. Mirkin" establishes a breach of contract as to herself, that they "must find that XOOM breached the contract with the Class." Rather, a proper instruction should inform the jury that—consistent with Rule 23—Plaintiff must show breach as to both herself and "all the Class Members" collectively.

XOOM further objects to Plaintiff's language that generically explains her liability theory as a "breach[] of the express terms of the contract" when her only alleged theory is a breach by overcharge. Plaintiff alleges that XOOM overcharged her and the Class Members by incorporating items into its variable rates beyond those permitted under the contracts. It therefore is clearer, more precise, and legally correct to instruct the jury that, to find that XOOM breached, Plaintiff must establish that "XOOM charged her and all the Class Members rates that were higher than the rates permitted under the contract."  The same is true for XOOM's proposed language for a no-breach finding, which comes directly from the Court's prior interpretation of the contracts to allow XOOM to charge variable rates that include actual and estimated supply costs plus a proportionate margin. *See, e.g.*, SJ Order 13.

Finally, the Court should use XOOM's proposed instruction about indeterminate liability. If the jury finds itself "unable to determine what XOOM should have charged for any given rate," then that necessarily means that the jury cannot find by a preponderance of the evidence that XOOM overcharged Plaintiff or any Class Member subject to that rate. This clarification is, again, a correct statement of the law and intended to prevent errors of the kind identified by the Supreme Court and Second Circuit precedent to require unnecessary and protracted post-trial litigation.  *See, e.g.*, *Tyson Foods*, 577 U.S. at 466 (Roberts, C.J., concurring) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand.").

## Dispute No. 10

**Plaintiff's Proposed Instruction:**

If you find that XOOM breached its contract, you must then determine whether Ms. Mirkin and the Class Members were damaged.

Ms. Mirkin and the Class Members were damaged if they suffered economic loss due to the breach of contract.  In other words, if you find that XOOM breached the contract, you must determine the amount of money that XOOM overcharged its customers, if any, by finding the difference between the amount the Class paid XOOM for electricity or natural gas and the amount the Class would have paid if XOOM's rates had complied with the contract.

Ms. Mirkin has the burden to prove the existence of any damages by a preponderance of the evidence.  Any determination of damages must be based upon evidence, and not speculation or guesswork.  You may consider the opinions, testimony, and all other evidence presented in this case.

In this case, XOOM claims that it charged a margin in compliance with the contract, and even if it did not do, it is entitled to reduce the Class's damages by the margin that it would have been entitled to charge had it done so.  XOOM has the burden of proving any such margin that it would have been entitled to charge that satisfied the contractual requirements of being fixed, reasonable, and determined only by its supply costs.

I have determined that punitive damages are available in this case.  The purpose of punitive damages is to "punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." If you determine that it is appropriate to punish Defendants for egregious wrongful acts and to deter the Defendants and others from committing similar wrongful acts, you may find that the Class is entitled to punitive damages.

Punitive damages are available in a contract action "[w]hen the breach of contract also constitutes or is accompanied by an identifiable tortious act" and "the tortious conduct [is] accompanied by or partake[s] of some element of aggravation[.]"  "Aggravated conduct may be shown by fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights."  If you find that XOOM charged a rate that is not "based on" its actual and estimated supply costs, Plaintiff contends that same conduct constitutes deceptive advertising.  If you find that XOOM deceptively advertised, and such deceptive advertising was accompanied by some form of aggravation, you may award punitive damages at your discretion.

A verdict form has been prepared for you.  The verdict form will ask you to determine whether XOOM breached its contract.  You should mark "yes" or "no"

on the verdict form.  If you find that XOOM breached, the verdict form will ask you to determine damages.  You should write in the amount of damages on the verdict form.  You should also indicate the amount, if any, of punitive damages XOOM is liable for.

The verdict form contains further instructions to guide you as you move from one question to another.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the marshal that you are ready to return to the courtroom.

Plaintiff's Proposed Instructions Part II.D (footnotes omitted).

**<u>XOOM's Proposed Revision</u>:**

If you find that XOOM breached the contract with Ms. Mirkin and all Class Members, you must then determine whether Ms. Mirkin and the Class Members were damaged.

Ms. Mirkin and the Class Members were damaged if they suffered economic loss due to the breach of contract.  In other words, if you find that XOOM breached the contract, you must determine the amount of money that XOOM overcharged its customers, if any, by finding the difference between the amount the Class Members paid to XOOM for electricity or natural gas and the amount they would have paid if their rates had complied with the contract.

You may conclude that that Ms. Mirkin and the Class Members suffered no damages.  In that case, the amount of damages would be zero.  It is possible that you may conclude that Ms. Mirkin and the Class Members suffered damages for some, but not all, months, products, and utility zones.  It also is possible that you may conclude that Ms. Mirkin and the Class Members were undercharged for some months, products, and utility zones.

Ms. Mirkin has the burden to prove the existence of any damages for herself and the Class Members by a preponderance of the evidence.  Any determination of damages must be based upon evidence, and not speculation or guesswork.  You may consider the opinions, testimony, and all other evidence presented in this case.  If you conclude that XOOM overcharged Ms. Mirkin and the Class Members, you must not include in any damages award amounts that are unrelated to the amount of money that you conclude was overcharged on any account.  You also must ensure that any damages award does not include amounts for Class Members who were *not* overcharged, and that your award does not put any Class Member in a better position than they would have occupied if their rates had complied with the contract.

A verdict form has been prepared for you.  The verdict form will ask you to determine whether XOOM is liable or not liable for breach of contract as to Ms. Mirkin and the Class.  If you find XOOM liable, the verdict form will ask you to determine damages, if any.  The verdict form contains further instructions to guide you as you move from one question to another.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the marshal that you are ready to return to the courtroom.

Plaintiff's Proposed Instructions Part II.D (footnotes omitted).

**<u>XOOM's Position:</u>**

XOOM has no objection to the second and third paragraphs of Plaintiff's proposed Instruction II.D, which are either virtually identical to XOOM's proposed Instructions or have limited, non-substantive variations from XOOM's corresponding proposed initial paragraphs for Instruction II.D.

XOOM objects to Plaintiff's remaining proposed Instruction II.D. on a number of grounds. To begin, language stating that the predicate breach of contract must be "with Ms. Mirkin and all Class Members" is necessary and omitting it will reduce risk the of the jury wrongly believing that a showing of liability as to one (or some) Class Members can establish class-wide liability as to every Member of the Class. XOOM's proposed language comports with federal pattern jury instructions and implements admonitions from the Supreme Court about jury instructions and verdict forms that do not inform class-action juries that they must account for potentially unharmed class members.  *See* 3 Fed. Jury Prac. & Instr. § 103:13 (6th ed.) (modified), 3 Fed. Jury Prac. & Instr. § 103:13 (6th ed.); *Tyson Foods*, 577 U.S. at 463 (stating that a class verdict requires evidence of "liability and damages" for "for each individual plaintiff"). As explained more fully in XOOM's Statement on Damages, Plaintiff's own (constantly shifting) theory of damages requires application of damage models that show many Class Members were ***undercharged*** during the Class Period, making such an instruction even more appropriate here. *See, e.g.*, *Tyson Foods*, 577 U.S. at 466  (Roberts, C.J., concurring) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand.").

For similar reasons, the Court should also include the following language from XOOM's proposed fourth paragraph:

> If you conclude that XOOM overcharged Ms. Mirkin and the Class Members, you must not include in any damages award amounts that are unrelated to the amount of money that you conclude was overcharged on any account.  You also must ensure that any damages award does not include amounts for Class Members who were not overcharged, and that your award does not put any Class Member in a better position than they would have occupied if their rates had complied with the contract.

21

As a matter of law, the jury cannot award damages that compensate Plaintiff or any Class Member in excess of the amount that individual was overcharged (if any). *Troitino*, 35 S.E.2d at 282 (measuring damages in breach-of-contract cases as "the pecuniary difference between [the plaintiff's] position upon breach of the contract and what it would have been, had the contract been performed."). Nor can any damage award be given to Plaintiff or the Class for any months in which they were undercharged. *See id.* at 282 (breach-of-contract plaintiffs are "not entitled to be enriched by the breach").

XOOM objects to Plaintiff's attempt to improperly shift her burden to show damages to XOOM with the following paragraph:

> In this case, XOOM claims that it charged a margin in compliance with the contract, and even if it did not do, it is entitled to reduce the Class's damages by the margin that it would have been entitled to charge had it done so. XOOM has the burden of proving any such margin that it would have been entitled to charge that satisfied the contractual requirements of being fixed, reasonable, and determined only by its supply costs.

The burden described in this proposed instruction belongs to Plaintiff. To prevail on her overcharge theory, she must establish that "the amount charged by [XOOM] was in excess" of the amount she should have been charged. *Blalock Hardware Co. v. Seaboard Air Line Ry. Co.*, 86 S.E. 1025, 1026 (N.C. 1915); *see also Troitino v. Goodman*, 35 S.E.2d 277, 282 (N.C. 1945) (measuring contract damages as "the pecuniary difference between [an injured party's] position upon breach of the contract and what it would have been, had the contract been performed"); *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 108–09 (N.C. 2019) (the "amount of damages" suffered by plaintiff is an essential element of a contract claim under North Carolina law). And to be awarded contract damages, North Carolina law squarely places "the burden of proving [her] losses with reasonable certainty" on Plaintiff, as "[t]he party claiming these damages[.]" *Matthews v. Davis*, 664 S.E.2d 16, 20 (N.C. App. 2008).

Accordingly, it is ***Plaintiff*** who must prove what reasonable and proportionate margins are under the contract, because only rates that incorporate a margin beyond that point would result in an overcharge (which, of course, is Plaintiff's burden to prove). That XOOM might use that margin—if actually proven by Plaintiff—as part of its defenses too does not mean that XOOM has the burden to show the highest margin that it could have permissibly incorporated into its variable rates.

XOOM also objects to any attempt by Plaintiff to instruct the jury on punitive damages. Plaintiff has not pleaded or pursued a theory of recovery based on punitive damages, *see* First Am. Compl. at 26, and Plaintiff freely admits that XOOM's contracts contain a punitive-damages waiver, *see* Part 8.A (Plaintiff's Statement on Damages). Nor has she requested leave to amend her Complaint at this late state to do so. And regardless, North Carolina law bars the recovery of punitive damages on breach of contract claims except in cases of a breach of contract to marry or where the plaintiff pleads and proves "the commission of an identifiable tort." *See, e.g.*, *SciGrip v. Osae*, 838 S.E.2d 334, 348–49 (N.C. 2020) (stating also that even an "intentional breach of contract does not constitute a separate tort"). Plaintiff never has pleaded or otherwise alleged that XOOM

engaged in tortious conduct, let alone identified a tort that XOOM may have committed in conjunction with an "aggravating element such as malice or recklessness," as required to recover punitive damages on a breach-of-contract claim under North Carolina law. *See Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 331 (4th Cir. 1994). Courts applying North Carolina law have not allowed plaintiffs to seek punitive damages on breach-of-contract claims even when tort claims were previously part of a case. *See Booker v. Washington Mut. Bank, F.A.*, 2007 WL 475330, at *6 (M.D.N.C. Feb. 9, 2007) (holding that plaintiff could not seek punitive damages without "stat[ing] a sufficient claim for an independent tort to accompany her breach of contract allegations"); *Deltacom, Inc. v. Budget Telecom, Inc.*, 2011 WL 2036676, at *8 (E.D.N.C. May 22, 2011) (dismissing punitive-damages claim given dismissal of tort claims); *Britt-Wagner v. D&B Enterprises of Florence, LLC*, 2022 WL 2651847, at *2 (E.D.N.C. July 8, 2022) (agreeing that, "with only a breach of contract claim remaining, plaintiff's claim for punitive damages fails as a matter of law"); *Great Am. Emu Co. v. E.J. McKernan Co.*, 509 F. Supp. 3d 528, 543 n.3 (E.D.N.C. 2020) ("[W]here plaintiff's tort claims have been dismissed, plaintiff may not assert punitive damages."). Here, Plaintiff never had (and still does not have) a pleaded tort claim.

To try to fill that gap, Plaintiff's proposed jury instructions suggest—for the first time— the idea that a breach of contract by XOOM could constitute "deceptive advertising." But North Carolina law does not recognize such a tort claim, and to be "identifiable," Plaintiff must rely on a cause of action that "exists under North Carolina law." *Strum*, 15 F.3d at 331 (plaintiff could not base breach-of-contract punitive damages request on allegation of "intentional damage to real property" where the plaintiff "points us to no cases recognizing such an action"). This Court has made the same point in considering the availability of punitive damages on a breach of contract claim under New York law, which is similar to North Carolina law on the same subject. *See Toussie v. Allstate Ins. Co.*, 2016 WL 6537670, at *3 (E.D.N.Y. Nov. 3, 2016) (Ross, J.) ("The first element requires pleading commission of an independent tort, such as fraud. Without such an allegation, plaintiffs' relief for a claim of denial of a valid insurance claim in New York is limited to breach of contract claims." (citation omitted)).

Nor could Plaintiff proceed on punitive damages even if, instead of the non-existent "deceptive advertising" claim, she intended to reference a claim under the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"). Such claims rely on "alleged misrepresentations and fraudulent statements" and are subject to Rule 9(b). *See Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, 2023 WL 6931787, at *7 (W.D.N.C. Oct. 19, 2023). But not only has Plaintiff never pleaded, pursued, or even hinted at such a claim—nor allowed XOOM to prepare a defense to such a theory—such claims "are 'not readily susceptible to classwide proof' because of the individual inquiry required." *TJF Servs., Inc. v. Transportation Media, Inc.*, 2020 WL 1870768, at *5 (E.D.N.C. Feb. 13, 2020) (collecting cases). Quite the opposite, Plaintiff justified class certification by arguing that her "straightforward breach of contract claim" would ***not*** "face the hurdles" of reliance and causation that arise in class actions involving tort and statutory claims based on allegedly deceptive advertising. *See* Pl.'s Class Cert. Mem. 1 n.3. And even if she had pleaded a UDTPA claim, Plaintiff could not rely on that claim to justify punitive damages on her contract claim because the statute "does not permit [Plaintiff] to transmute a breach of contract claim into" a UDTPA claim that could support "awarding punitive or treble damages." *Popper v. Hartford Fin. Servs. Grp., Inc.*, 682 F. Supp. 3d 469, 477 (E.D.N.C. 2023) (internal citations omitted), aff'd, No. 23-1450, 2024 WL 773581 (4th Cir. Feb. 26, 2024).

Plaintiff therefore must abandon either her belated attempt to seek punitive damages or her class-based approach to this litigation. If she does not, the Court should decertify the case, require Plaintiff to seek leave to amend her complaint to disclose the theory on which she claims punitive damages, and, if that request is granted, require Plaintiff to seek recertification if she thinks she can satisfy Rule 23's requirements on her new legal theory and believes she is entitled to make that request at this late juncture.[2]

---

[2] XOOM, of course, will oppose amendment and oppose certification on substantive, procedural, and timeliness grounds.

**Dispute No. 11: Competing Verdict Forms**

The Court should adopt XOOM's proposed verdict form for the reasons discussed above about the deficiencies and problems with Plaintiff's proposed jury instructions, and for the reasons further discussed in Part 6.B (XOOM's Trial Memorandum) and Part 8.B (XOOM's Statement on Damages). This case implicates 44 different rates charged monthly: two commodities (electricity and natural gas) across numerous utility zones (fifteen) for more than a decade. In total, that is more than 6,000 rates—and counting. The costs to provide those products also varied on a monthly basis. Yet Plaintiff's proposed verdict form contains just three questions, which ask the jury to decide liability, damages, and punitive damages as to Plaintiff and the Class Members in the aggregate. Such an approach is fatally defective.

Thus, under the circumstances, Plaintiff's proposed aggregate approach would "violate the Rules Enabling Act" and "result in inflated damage figures that do not accurately reflect the number of plaintiffs actually injured and bear little or no relationship to the amount of economic harm actually caused by defendants." *Hickory Sec. Ltd. v. Republic of Argentina*, 493 F. App'x 156, 159 (2d Cir. 2012) (cleaned up); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019) (rejecting class evidence that did not "preserve the defendants' Seventh Amendment and due process rights to contest every element of liability and to present every colorable defense" in a class action); Fed. R. Evid. 402, 403. Nor could an aggregate award be reverse-engineered to determine whether the jury found each rate to be an overcharge, undercharge, or the right amount. Part 8.B (XOOM's Statement on Damages).

On the other hand, XOOM's verdict form allows the jury to make individual determinations of whether each rate constituted an undercharge, overcharge, or the correct amount. Such findings are necessary to ensure that any damage award (1) does not require XOOM to pay compensatory damages to any class member who was not damaged, and (2) does not allow any class member to receive an award that would put them in a better position than they would have occupied if there had been no breach. *See Tyson Foods*, 577 U.S. at 458 ("Class certification is a procedural device that cannot "giv[e] plaintiffs and defendants different rights . . . than they could have asserted in an individual action."); *id.* at 463 (stating that a class verdict requires evidence of "liability and damages" for "for each individual plaintiff"); *id.* at 466 (Roberts, C.J., concurring) ("[I]f there is no way to ensure that the jury's damages award were only to injured class members, that award cannot stand."); *Troitino*, 35 S.E.2d at 282 (breach-of-contract plaintiffs are "not entitled to be enriched by the breach").

There is precedent for XOOM's approach. A federal district court presiding over a securities class action used a verdict form that incorporated a chart-based approach to liability and damages in *Jaffe v. Household International Inc.*, No. 02-CV-5893 (N.D. Ill. filed May 7, 2009) (Doc. 1611). Among other things, the verdict form allowed the jury to make findings as to approximately 40 individual statements on liability and monthly share-price determinations over a three-year period on damages. XOOM has attached a copy of *Jaffe* verdict form for reference.

Dated: May 10, 2024          MCDOWELL HETHERINGTON LLP

                                */s/ Michael D. Matthews, Jr*

Michael D. Matthews, Jr.
Diane S. Wizig (admitted *pro hac vice*)
James M. Chambers (admitted *pro hac vice*)
David L. Villarreal (admitted *pro hac vice*)
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com
james.chambers@mhllp.com
david.villarreal@mhllp.com

*Attorneys for Defendants XOOM Energy, LLC and XOOM Energy New York, LLC*

26