# EXHIBIT A-4

```
                                        Volume I
                                        Pages 1 to 102
                                        Exhibits None
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                                    :
 SUSANNA MIRKIN and BORIS           :
 MIRKIN, Individually and on        :
 Behalf of All Others               :
 Similarly Situated,                : Civil Action
              Plaintiffs,           : No. 18 Civ. 2949
                                    : (ARR)(RER)
        vs.                         :
                                    :
 XOOM ENERGY, LLC; and XOOM         :
 ENERGY NEW YORK, LLC,              :
              Defendants.           :
- - - - - - - - - - - - - - - - - -x
```

         VIDEOTAPED DEPOSITION OF DERYA ERYILMAZ, Ph.D., a witness called by the Defendant, taken pursuant to the Federal Rules of Civil Procedure, before Alexander K. Loos, Registered Diplomate Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Veritext Legal Solutions, 101 Arch Street, Suite 650, Boston, Massachusetts, on Tuesday, November 15, 2022, commencing at 10:25 a.m.

PRESENT:
    Wittels McInturff Palikovic
        (By Steven L. Wittels, Esq.; Steven D.
        Cohen, Esq. (Via videoconference); and
        Ethan D. Roman, Esq. (Via videoconference))
        E-mail:  Slw@wittelslaw.com
                 Sdc@wittelslaw.com
                 Edr@wittelslaw.com
        18 Half Mile Road
        Armonk, NY 10504
        914.775.8862
        for the Plaintiffs.

Page 1

Page 74

```
 1  utility rates, how they compare.  We presented that
 2  in our report.
 3        BY MR. MATTHEWS:
 4     Q.  Yes.  But the XOOM -- that's XOOM's
 5  reported supply costs compared to the utility's
 6  rate, right?
 7     A.  Utility, yeah.
 8     Q.  But you don't believe that a comparison of
 9  XOOM's rate to the utility's rate is relevant here?
10        MR. WITTELS:  Objection.
11        BY MR. MATTHEWS:
12     Q.  Right?
13     A.  No.  I guess we -- we -- we used that
14  Figure 1 to show what the utility in that territory
15  charged and what that compares to the total cost
16  of -- of the -- of XOOM.
17     Q.  But you're not offering any sort of damage
18  model that seeks to compare XOOM's rate to the
19  utility's rate, right?
20        MR. WITTELS:  Objection.
21        THE WITNESS:  We provided a cross-check
22  analysis on, you know, what would the overcharges
23  look like if XOOM has charged utility rates instead
24  of, you know, its total cost.  So that's the
```

Page 75

```
 1  cross-check analysis that we did in our report that
 2  yielded a little bit lower damages, I think 49
 3  million, about that.
 4        BY MR. MATTHEWS:
 5     Q.  Uh-huh.
 6        49 million under that model instead of 55
 7  and a half --
 8     A.  Yeah.
 9     Q.  -- right?
10     A.  So that was a cross-check analysis.  That
11  was not, you know, separate models.
12        We presented two methods only.  Uh-huh.
13     Q.  Right.  Meaning that if customers had
14  stayed with the utility -- I'm sorry.
15        Meaning that if -- XOOM variable-rate
16  customers would do better than they would have had
17  they just stayed with the utility, right?
18        MR. WITTELS:  Objection.
19        THE WITNESS:  I don't understand when you
20  say "better off."
21        BY MR. MATTHEWS:
22     Q.  If -- if XOOM's variable-rate customers
23  were awarded the damages that you have put forth
24  under model one, they would be better off than if
```

Page 76

```
 1  they had just stayed with the utility, right?
 2        MR. WITTELS:  Objection.
 3        THE WITNESS:  I guess that doesn't -- I
 4  mean, it's not to show that whether they better off,
 5  but it shows -- if the utility rate was charged to
 6  these customers --
 7        BY MR. MATTHEWS:
 8     Q.  Uh-huh.
 9     A.  -- against the rate that was -- that XOOM
10  was charging, that would be slightly lower because,
11  you know, the utility's rates were slightly higher
12  than the total cost that's presented in the XOOM's
13  rate-setting workbooks.
14     Q.  Right.  I understand the purpose for which
15  it was shown in the report.
16     A.  Uh-huh.
17     Q.  I'm asking factually, if the court awarded
18  the damages that you have advocated for under model
19  one, is it true that XOOM's variable-rate customers
20  would recoup more money than they would under the
21  damage model that you've illustrated using the
22  utility rate?
23        MR. WITTELS:  Objection.
24        THE WITNESS:  When you say "recoup more
```

Page 77

```
 1  money," is that like -- clearly, the calculation
 2  shows that utilities -- that the value that goes
 3  down to 49 million because utility's rate -- rates
 4  were slightly higher than the total cost.  So the
 5  damages would be slightly lower than the method one.
 6        And when you say recouped, the customers
 7  recoup, I don't know what you mean by that.
 8     Q.  Recoup, as in recover damages.
 9     A.  Yeah.  I mean --
10     Q.  Do you understand that?
11     A.  What is the question?  I guess I'm not
12  following the question.
13     Q.  I think we've got it.
14        Did you do any analysis of what other ESCOs
15  charged over the same time period?
16     A.  No.
17     Q.  And you don't know how XOOM's rates
18  compared to other ESCOs' rates during that time?
19     A.  No.  That's private information, so I
20  wouldn't be able to.
21     Q.  What's private information?
22     A.  I mean the other ESCOs' data was not
23  available to us, so I was not able to compare it to
24  the other.
```

```
 1  COMMONWEALTH OF MASSACHUSETTS)
 2  SUFFOLK, SS.            )
 3      I, Alexander K. Loos, RDR and Notary Public in
 4  and for the Commonwealth of Massachusetts, do hereby
 5  certify that there came before me on the 15th day of
 6  November, 2022, at 10:25 a.m., the person
 7  hereinbefore named, who was by me duly sworn to
 8  testify to the truth and nothing but the truth of
 9  her knowledge touching and concerning the matters in
10  controversy in this cause; that she was thereupon
11  examined upon her oath, and her examination reduced
12  to typewriting under my direction; and that the
13  deposition is a true record of the testimony given
14  by the witness.  I further certify that I am neither
15  attorney or counsel for, nor related to or employed
16  by, any attorney or counsel employed by the parties
17  hereto or financially interested in the action.
18                         ve hereunto set my hand
19                         l this 27th day of
20
21
22
23  Notary Public
24  Commission expires 5/5/28
```

Page 102

```
 1  Steven Wittles
 2  Slw@wittelslaw.com
 3                   November 28, 2022
 4  RE: Mirkin vs. XOOM Energy
 5  DEPOSITION OF: Derya Eryilmaz 5544030
 6      The above-referenced witness transcript is
 7  available for read and sign.
 8      Within the applicable timeframe, 30 days,  the witness
 9  should read the testimony to verify its accuracy. If
10  there are any changes, the witness should note those
11  on the attached Errata Sheet.
12      The witness should sign and notarize the
13  attached Errata pages and return to Veritext at
14  errata-tx@veritext.com.
15      According to applicable rules or agreements, if
16  the witness fails to do so within the time allotted,
17  a certified copy of the transcript may be used as if
18  signed.
19              Yours,
20              Veritext Legal Solutions
21
22
23
24
25
```

Page 103