# EXHIBIT A-7

```
                                        Volume I
                                        Pages 1 to 102
                                        Exhibits None
           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x
                                 :
 SUSANNA MIRKIN and BORIS        :
 MIRKIN, Individually and on     :
 Behalf of All Others            :
 Similarly Situated,             :   Civil Action
              Plaintiffs,        :   No. 18 Civ. 2949
                                 :   (ARR)(RER)
         vs.                     :
                                 :
 XOOM ENERGY, LLC; and XOOM      :
 ENERGY NEW YORK, LLC,           :
              Defendants.        :
- - - - - - - - - - - - - - - - -x
        VIDEOTAPED DEPOSITION OF DERYA ERYILMAZ,
Ph.D., a witness called by the Defendant, taken
pursuant to the Federal Rules of Civil Procedure,
before Alexander K. Loos, Registered Diplomate
Reporter and Notary Public in and for the
Commonwealth of Massachusetts, at the Offices of
Veritext Legal Solutions, 101 Arch Street, Suite
650, Boston, Massachusetts, on Tuesday, November 15,
2022, commencing at 10:25 a.m.
PRESENT:
    Wittels McInturff Palikovic
        (By Steven L. Wittels, Esq.; Steven D.
        Cohen, Esq. (Via videoconference); and
        Ethan D. Roman, Esq. (Via videoconference))
        E-mail:  Slw@wittelslaw.com
                 Sdc@wittelslaw.com
                 Edr@wittelslaw.com
        18 Half Mile Road
        Armonk, NY 10504
        914.775.8862
        for the Plaintiffs.
```

Page 1

**Page 22**

1 calculated method two.
2    Q. Understood.
3       And when you refer to "total cost" there,
4 what you are referring to is the supply cost
5 reported in the rate-setting workbooks, correct?
6    A. Correct.
7       It was labeled as "total cost," but that's
8 the -- the supply cost that's presented in the data.
9    Q. I think we're on the same page.
10      There's a column in the rate-setting
11 workbooks that says "total cost"?
12   A. Yes.
13   Q. And that's what you are referring to --
14   A. Exactly.
15   Q. -- as "total costs"?
16   A. That represents the supply cost of any
17 given month that's presented in those rate-setting
18 workbooks.
19   Q. Understood.
20      Okay. Thank you for explaining to me how
21 those models work.
22      Can you tell me how you decided to use
23 model one?
24   A. Well, obviously, as I mentioned, this was

**Page 23**

1 in discussions with Seab. But we looked at -- so
2 this is -- this case is about whether, you know,
3 XOOM charges rates according to its contract.
4       And when we look at the contract, it says,
5 you know, it should be based on XOOM's actual and
6 estimated supply costs.
7       So we wanted to check if that's the case.
8 So that's why we requested the actual and estimated
9 supply costs, and we asked for the rate that XOOM
10 charged. And if there was a discrep -- the
11 hypothesis that we tested is if there's a
12 discrepancy, then there should -- there's
13 potentially an overcharge.
14      So that's how we decided to show whether
15 XOOM actually charged its actual and estimated
16 supply costs to its customers.
17   Q. Okay. Okay. What about the rebuttal
18 report? What was your role in preparing that, if
19 any?
20   A. I guess I reviewed -- similar situation,
21 that we have our own discussions and sort of
22 identified key points that we would, you know, look
23 at.
24      And we reviewed Mr. Coleman's report and

**Page 24**

1 points about correlation analysis and -- and some
2 graphs that he presented that -- that's -- those are
3 the things that sort of I've summarized, and Seab
4 and I sort of have put that together in our rebuttal
5 report. That was more of, like, a per discussion we
6 put that together, but -- yeah.
7    Q. Okay. I probably asked an imprecise
8 question.
9       What I'm trying to learn is what your role
10 personally was in preparing the rebuttal report as
11 opposed to Mr. Adamson's.
12   A. I guess as an energy economist, I looked at
13 what Mr. Coleman's analysis was, and I was sort of
14 putting down what I think is not a sort of relevant
15 statistical analysis for -- for this case. So
16 that's sort of the section that I've put together.
17 Obviously with Seab -- Seabron Adamson.
18   Q. You drafted parts of the rebuttal report?
19   A. I -- because it's really difficult to --
20 you know, combined report. I guess there were parts
21 that I've written and then Seab might have edited.
22 So I can't really give you a clear, you know, answer
23 as to what paragraphs I drafted and which paragraphs
24 he did draft.

**Page 25**

1       So it was more of identifying the rebuttal
2 points and putting them together, so I can't really
3 tell you a specific answer on those are the
4 paragraphs I have put together.
5    Q. Sure.
6       Was your involvement with the rebuttal
7 report more in the nature of providing thoughts and
8 commentary to Mr. Adamson, and then he drafted --
9       MR. WITTELS: Objection.
10 BY MR. MATTHEWS:
11   Q. -- the rebuttal report?
12      MR. WITTELS: Objection.
13      THE WITNESS: I guess we can describe it
14 that way.
15      But my -- my input was more on the
16 statistical analysis conducted by Mr. Coleman.
17 BY MR. MATTHEWS:
18   Q. Did you -- you reviewed his statistical
19 analysis?
20   A. Yeah. I read his report.
21   Q. Did -- did you check his statistical
22 calculations?
23   A. I did not redo the analysis, but I've read
24 his report, and I have seen the correlation results.

```
 1   Q.  Do you disagree with any of the correlation
 2   results?
 3   A.  I mean, I didn't check his work, per se.  I
 4   didn't redo the analysis.  But conceptually,
 5   correlation analysis was done appropriately.
 6       It's just -- yeah.  I mean, the analysis
 7   itself seems to be right.
 8   Q.  Okay.  Have you done any correlation
 9   analysis of your own related to this lawsuit?
10   A.  Not related to this lawsuit, no.
11   Q.  You've done correlation analysis before in
12   your life?
13   A.  I did, yes.
14   Q.  Yes.
15   A.  Not in the context -- I mean not in the
16   matter.  But outside of this matter, I teach
17   correlation at Northeastern.
18   Q.  You're familiar with it?
19   A.  Yes.
20   Q.  You know how to do it?
21   A.  Yes.
22   Q.  Okay.  If you wanted to check Mr. Coleman's
23   calculations, you would be capable of doing that?
24   A.  Yes.  I would be.  But I didn't see the
```
Page 26

```
 1   necessity to do that.
 2   Q.  I understand.
 3       I would not.  I wouldn't know how to do it.
 4       But just that we're on the same page, you
 5   understand the concepts?
 6   A.  Yes.
 7   Q.  You didn't see any errors in his
 8   calculations?
 9   A.  As it's presented, it seems to be that he
10   presented the correlation coefficients, and that's
11   how a standard, you know, statistical analysis would
12   show.
13       But as I mentioned, I didn't redo the
14   analysis; so I can't validate whether the
15   percentages presented there are correctly done.
16   But, I mean, I guess I trust his work.
17   Q.  Understood.
18       Since CRA submitted its rebuttal report in
19   this case, have you personally formed any opinions
20   about this case beyond what is stated in the two CRA
21   reports?
22   A.  Not specifically I can think of.
23   Q.  Generally?
24   A.  Not really.
```
Page 27

```
 1   Q.  It's okay.  I'm just trying to understand
 2   whether you have formed any new opinions, or you
 3   have any different opinions since you submitted
 4   these reports?
 5   A.  No.
 6   Q.  Okay.  And since submitting the rebuttal
 7   report, have any of the opinions that you provided
 8   in the initial CRA report, or the rebuttal report,
 9   changed?
10   A.  No.
11   Q.  Is -- there's nothing in either report, the
12   CRA initial report or its rebuttal report, that you
13   feel differently about today?
14   A.  No.
15   Q.  Besides Mr. Coleman's rebuttal report, and
16   Mr. Adamson's deposition, have you reviewed any
17   additional documents since preparing your rebuttal
18   report beyond those that are explicitly referenced
19   in those documents?
20   A.  Not that I can think of.
21   Q.  Okay.  Are there any documents that you
22   have not yet reviewed that you intend to review?
23   You just haven't gotten to it yet, or you haven't
24   been able to get copies of them.
```
Page 28

```
 1   A.  I cannot think of anything.  I reviewed
 2   what was relevant to do the analysis, and that's the
 3   documents that I reviewed.
 4   Q.  In your opinion, the CRA reports, the
 5   initial report and the rebuttal report, represent
 6   the most complete and accurate information and
 7   opinions that you intend to offer in this case?
 8       MR. WITTELS:  Objection.
 9       You can answer.
10       THE WITNESS:  Yeah.  I mean -- yes.
11   BY MR. MATTHEWS:
12   Q.  Great.
13       You no longer work at CRA, correct?
14   A.  Yes.  I am -- although I have a contractor
15   position there.  So I'm not, like, a full-time
16   employee, but I have a contractual relationship to
17   be able to conduct this work.
18   Q.  Understood.
19       Are you currently doing any other work for
20   CRA that's not related to this lawsuit?
21   A.  There are some other, like, academic work
22   that I'm doing with some other staff, but this is
23   the only case right now I'm working with
24   Mr. Adamson.
```
Page 29

8 (Pages 26 - 29)

```
 1  COMMONWEALTH OF MASSACHUSETTS)
 2  SUFFOLK, SS.              )
 3     I, Alexander K. Loos, RDR and Notary Public in
 4  and for the Commonwealth of Massachusetts, do hereby
 5  certify that there came before me on the 15th day of
 6  November, 2022, at 10:25 a.m., the person
 7  hereinbefore named, who was by me duly sworn to
 8  testify to the truth and nothing but the truth of
 9  her knowledge touching and concerning the matters in
10  controversy in this cause; that she was thereupon
11  examined upon her oath, and her examination reduced
12  to typewriting under my direction; and that the
13  deposition is a true record of the testimony given
14  by the witness.  I further certify that I am neither
15  attorney or counsel for, nor related to or employed
16  by, any attorney or counsel employed by the parties
17  hereto or financially interested in the action.
18                          ve hereunto set my hand
19                          l this 27th day of
20
21
22
23  Notary Public
24  Commission expires 5/5/28
```
Page 102

```
 1  Steven Wittles
 2  Slw@wittelslaw.com
 3                     November 28, 2022
 4  RE: Mirkin vs. XOOM Energy
 5  DEPOSITION OF: Derya Eryilmaz 5544030
 6     The above-referenced witness transcript is
 7  available for read and sign.
 8     Within the applicable timeframe, 30 days,  the witness
 9  should read the testimony to verify its accuracy. If
10  there are any changes, the witness should note those
11  on the attached Errata Sheet.
12     The witness should sign and notarize the
13  attached Errata pages and return to Veritext at
14  errata-tx@veritext.com.
15     According to applicable rules or agreements, if
16  the witness fails to do so within the time allotted,
17  a certified copy of the transcript may be used as if
18  signed.
19                Yours,
20                Veritext Legal Solutions
21
22
23
24
25
```
Page 103

27 (Pages 102 - 103)