# EXHIBIT A-6

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSANNA MIRKIN and BORIS MIRKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>Defendants. | No. 18 Civ. 2949 (ARR) (RER)<br><br>**DEFENDANT XOOM ENERGY, LLC AND XOOM ENERGY NEW YORK, LLC'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION** |

TO:   Plaintiffs Susanna Mirkin and Boris Mirkin, by and through their attorneys of record, Steven L. Wittels and Steven D. Cohen, WITTELS LAW, P.C., 18 Half Mile Road, Armonk, NY 10504.

Defendants XOOM Energy, LLC and XOOM Energy New York, LLC hereby supplement their objections and responses to Plaintiffs' First Set of Requests for Admission as follows.

**SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION**

27.   Admit that for the period December 2012 through February 2016 XOOM's monthly energy variable rates for New York customers did not move in lockstep with XOOM's actual and estimated supply costs.

**RESPONSE: XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant or seeks information for which the burden or expense of such discovery far outweighs its likely benefit considering the needs of the case and the importance of such discovery in resolving the issues at stake in the case. XOOM further objects to the use of "move in lockstep" as vague and ambiguous, and susceptible to multiple interpretations. XOOM further objects to this Request to the extent it is based on the improper premise that XOOM's contracts obligated it to set its "monthly energy variable rates for New York customers" in a way that could be**

1

characterized as "mov[ing] in lockstep with XOOM's actual and estimated supply costs." Rather, the quoted contractual language "based on" means only that "XOOM's actual and estimated supply costs" would be an important factor in setting XOOM's variable rates for its residential electricity and natural gas customers in New York.

**Subject to and without waiving the foregoing objections, XOOM admits that its monthly energy variable rates for New York residential electricity and natural gas customers moved based on actual and estimated supply costs.**

28. Admit that for the period December 2012 through February 2016 XOOM did not intend to set monthly energy variable rates for New York customers that would move in lockstep with XOOM's actual and estimated supply costs.

**RESPONSE**: **XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant or seeks information for which the burden or expense of such discovery far outweighs its likely benefit considering the needs of the case and the importance of such discovery in resolving the issues at stake in the case. XOOM further objects to the use of "move in lockstep" as vague and ambiguous, and susceptible to multiple interpretations. XOOM further objects to this Request to the extent it is based on the improper premise that XOOM's contracts obligated it to set its "monthly energy variable rates for New York customers" in a way that could be characterized as "mov[ing] in lockstep with XOOM's actual and estimated supply costs," or that XOOM ever intended as much. Rather, the quoted contractual language "based on" means only that "XOOM's actual and estimated supply costs" would be an important factor in setting XOOM's variable rates for its residential electricity and natural gas customers in New York.**

**Subject to and without waiving the foregoing objections, XOOM admits that it intended to set its monthly energy variable rates for New York residential electricity and natural gas customers to move based on actual and estimated supply costs.**

29. Admit that for the period December 2012 through February 2016, in every month, XOOM's monthly energy variable rates for New York customers were higher than XOOM's actual and estimated supply costs (per kWh or per therm).

**RESPONSE**: **XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense.**

**Subject to and without waiving the foregoing objection, denied.**

31. Admit that during the period 2012 through the present XOOM's pricing team or pricing group reviewed competitive intelligence (including but not limited to the energy rates set by XOOM's competitors in the New York market) as part of its process of setting monthly energy rates in New York.

**RESPONSE: XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense. XOOM also objects to this Request to the extent it is based on the improper premise that XOOM is not permitted to consider "competitive intelligence" as part of its rate setting process. Instead, the use of "based on" in the contract means only that "XOOM's actual and estimated supply costs" were an important factor, not an exclusive limitation, in setting XOOM's residential variable rates for electricity and natural gas customers. XOOM further objects to this Request to the extent that its use of the term "process of setting monthly energy rates" suggests that "competitive intelligence" was considered on a uniform basis every month.**

**Subject to and without waiving the foregoing objection, and to the extent such "competitive intelligence" was available to XOOM in any given month, admitted.**

32. Admit that during the period 2012 through the present XOOM's pricing team or pricing group reviewed sales trends as part of its process of setting monthly energy rates in New York.

**RESPONSE: XOOM objects to the use of "sales trends" as vague and ambiguous, and susceptible to multiple interpretations. XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense. XOOM also objects to this Request to the extent it is based on the improper premise that XOOM is not permitted to consider "sales trends" as part of its rate setting process. Instead, the use of "based on" in the contract means only that "XOOM's actual and estimated supply costs" were an important factor, not an exclusive limitation, in setting XOOM's residential variable rates for electricity and natural gas customers. XOOM further objects to this Request to the extent that its use of the term "process of setting monthly energy rates" suggests that "sales trends" were considered on a uniform basis every month.**

**Subject to and without waiving the foregoing objections, and to the extent such "sales trends" were available to XOOM in any given month, admitted.**

3

33. Admit that during the period 2012 through the present XOOM's pricing team or pricing group reviewed customer attrition rates as part of its process of setting monthly energy rates in New York.

**RESPONSE: XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense. XOOM also objects to this Request to the extent it is based on the improper premise that XOOM is not permitted to consider "customer attrition rates" as part of its rate setting process. Instead, the use of "based on" in the contract means only that "XOOM's actual and estimated supply costs" were an important factor, not an exclusive limitation, in setting XOOM's residential variable rates for electricity and natural gas customers. XOOM further objects to this Request to the extent that its use of the term "process of setting monthly energy rates" suggests that "customer attrition rates" was considered on a uniform basis every month.**

**Subject to and without waiving the foregoing objections, and to the extent such "customer attrition rates" were available to XOOM in any given month, admitted.**

34. Admit that during the period 2012 through the present XOOM's pricing team or pricing group reviewed local utility rates as part of its process of setting monthly energy rates in New York.

**RESPONSE: XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense. XOOM also objects to this Request to the extent it is based on the improper premise that XOOM is not permitted to consider "local utility rates" as part of its rate setting process. Instead, the use of "based on" in the contract means only that "XOOM's actual and estimated supply costs" were an important factor, not an exclusive limitation, in setting XOOM's residential variable rates for electricity and natural gas customers. XOOM further objects to this Request to the extent that its use of the term "process of setting monthly energy rates" suggests that "local utility rates" were considered on a uniform basis every month.**

**Subject to and without waiving the foregoing objections, and to the extent such "local utility rates" were available to XOOM in any given month, admitted.**

35. Admit that during the period 2012 through the present XOOM's pricing team or pricing group reviewed XOOM's profit margin as part of its process of setting monthly energy rates in New York.

**RESPONSE: XOOM objects to the use of "profit margin" as vague and ambiguous, and susceptible to multiple interpretations. XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense. XOOM also objects to this Request to the extent it is based on the improper premise that XOOM is not permitted to consider "profit margin" as part of its rate setting process. Instead, the use of "based on" in the contract means only that "XOOM's actual and estimated supply costs" were an important factor, not an exclusive limitation, in setting XOOM's residential variable rates for electricity and natural gas customers. XOOM further objects to this Request to the extent that its use of the term "process of setting monthly energy rates" suggests that "profit margin" was considered on a uniform basis every month.**

**Subject to and without waiving the foregoing objections, admitted.**

36. Admit that during the period 2013 through the present XOOM's pricing team or pricing group considered the prior month's rate as part of its process of setting monthly energy rates in New York.

**RESPONSE: XOOM objects to this Request to the extent it is not limited to residential variable rate electricity and natural gas customers and, on that basis, objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense. XOOM also objects to this Request as based on the improper premise that XOOM is not permitted to consider "the prior month's rate" as part of its rate setting process. Instead, the use of "based on" in the contract means only that "XOOM's actual and estimated supply costs" were an important factor, not an exclusive limitation, in setting XOOM's residential variable rates for electricity and natural gas customers. XOOM further objects to this Request to the extent that its use of the term "process of setting monthly energy rates" suggests that "the prior month's rate" was considered on a uniform basis every month.**

**Subject to and without waiving the foregoing objections, admitted.**

Dated: December 8, 2021

By: */s/ Diane S. Wizig*
Michael D. Matthews, Jr.
Diane S. Wizig (admitted *pro hac vice*)

5

MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com

*Attorneys for Defendants XOOM Energy, LLC and XOOM Energy New York, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, a true and correct copy of the foregoing was served via electronic mail on all counsel of record.

*/s/ Diane S. Wizig*
Diane S. Wizig
