# EXHIBIT 8

1          COURT OF APPEALS FOR THE SECOND CIRCUIT

2

3

4              MIRKIN V. XOOM ENERGY, LLC

5

6                  CASE NO. 18-3138

7

8

9              ORAL ARGUMENT RECORDING

10                      ON

11              NOVEMBER 6, 2019

12

13

14

15

16

17

18   SPEAKERS:

19   JUDGE NEWMAN

20   JUDGE PARKER

21   JUDGE POOLER

22   BURKETT MCINTURFF, ESQUIRE, COUNSEL FOR THE PLAINTIFF

23   DAVID KOTT, ESQUIRE, COUNSEL FOR THE DEFENDANT

24

25

                                        Page 1

1   R E C O R D I N G

2        JUDGE: The next matter on our calendar is

3   Susanna Mirkin and others versus XOOM Energy, LLC.

4   Water. Just a little. Thank You. I'm so thirsty

5   today. Thank you. Thanks. Good morning. I said

6   good morning, counsel.

7        MR. MCINTURFF: Good morning, Your Honor.

8   Burkett McInturff, on behalf of Susanna and Boris

9   Mirkin and the proposed class. May it please the

10  Court, this is a simple breach of contract case. The

11  defendant's contract requires that their energy rates

12  be based on the defendant's supply costs.

13       JUDGE: That's not their only basis, but it

14  is the basis to start the calculation. Is that your

15  argument?

16       MR. MCINTURFF: No, Your Honor. That is the

17  only basis. The contract says it's based --

18       JUDGE: Don't they have other things that

19  they say will enter into the cost of the energy?

20       MR. MCINTURFF: No, Your Honor. The contract

21  says the -- and I'm pointing to page 12 in our opening

22  brief -- the customer's monthly variable rate is based

23  on XOOM's actual and estimated supply costs, which may

24  include, but not be limited to prior period

25  adjustments, inventory, and balancing costs. So it's

1   confined to the defendant's supply costs. That's --

2        JUDGE: Whatever balancing costs are, that

3   doesn't seem like it's a scientific term.

4        MR. MCINTURFF: Balancing costs are actually

5   included in the wholesale cost of energy when you

6   purchase energy.

7        JUDGE: What is a balancing cost?

8        MR. MCINTURFF: A balancing cost is one of

9   many subcategories of costs that are incorporated in

10  the wholesale rate. So the rate that is published in

11  -- that an energy company such as XOOM pays to

12  purchase energy is composed of dozens of components.

13  Though most of those components are regulated costs

14  and regulated components and a balancing cost is one

15  of those components.

16       JUDGE: Their profit, which they're allowed

17  to achieve, aren't they allowed a margin over and

18  above these costs?

19       MR. MCINTURFF: Again, Your Honor, we're not

20  taking the position that they're not allowed a margin.

21  We're taking the position that their rates have to be

22  tied to their supply costs, which is what their

23  contract --

24       JUDGE: Tied to, but not identical. Isn't

25  that what your argument is?

1        MR. MCINTURFF: No, Your Honor. Our argument

2   -- tied to but not identical. They must reflect their

3   costs. These companies are very lean businesses.

4   They're essentially brokers and traders. They have

5   very low overhead. They buy on the wholesale market

6   and they resale to consumers. So the wholesale --

7        JUDGE: The thing is that the ultimate price

8   to the consumer has to have some relationship to their

9   supply costs.

10       MR. MCINTURFF: Correct. And instead not

11  evidence, essentially, price gouging, margins that are

12  well in excess of the underlying costs.

13       JUDGE: May I ask, isn't this case decided by

14  Direct Energy?

15       MR. MCINTURFF: The -- this --

16       JUDGE: (Crosstalk).

17       MR. MCINTURFF: -- as Your Honor dissented,

18  this case is the opposite of Direct Energy. And

19  Direct Energy, the contract said that the defendant's

20  prices were to be based on business and market

21  conditions. The Court said, "Well, that's -- there's

22  significant leeway in here." The plaintiffs in that

23  case were trying to tie the company's rates to its

24  supply costs. That was their main argument.

25       This is the opposite. The company has bound

1   its costs, it's -- has bound its rates to its supply

2   costs. So we don't have the same problem that the

3   plaintiffs had in Direct Energy, where the Court was

4   able to say, "Well, there's these myriad of factors.

5   There's many things that can go into how the defendant

6   sets rate."

7        And in Direct Energy, the practices that were

8   challenged there are indicative of the practices of

9   this industry as a whole. And as pointed out by the

10  Public Service Commission staff recently, this is a

11  billion-dollar fraud that's being perpetrated on New

12  York consumers. Consumers can't compare their prices.

13  They can't tell that they're getting overcharged.

14       And the energy companies like defendants

15  here, they know it and they're charging much higher

16  rates than what they're paying for energy and

17  consumers are stuck.

18       JUDGE: The idea of allowing this kind of

19  industry was a consumer protection idea, so that there

20  would be negotiation, so that there would be

21  competition for the rate payer. So how did it go so

22  wrong?

23       MR. MCINTURFF: Well, as the PSC staff has

24  found that the industry has taken proactive steps to

25  obscure their pricing. It's not like when you drive

1 around and you purchase gas, you can look and see what
2 -- how much the gas is charging.  This is something
3 that is billed to you constantly as you use your
4 energy.  It comes a month later and it's very
5 difficult to compare prices, which is why companies
6 like XOOM make representations that their prices are
7 going to be tied to their costs.  They can get market
8 share that way.
9       JUDGE:  We haven't had discovery yet.  So you
10 don't know exactly the relationship between their
11 costs and the prices they charge.
12      MR. MCINTURFF:  That is true.  But we have a
13 very good idea because XOOM purchases on the wholesale
14 market.  This is simply a wholesaler.  They buy on the
15 wholesale market and they --
16      JUDGE:  Do you know the price they pay?
17      MR. MCINTURFF:  We basically know the price.
18 We don't know the exact price.  We don't know all of
19 their supply costs.  But again, they don't -- they're
20 very lean operations.  They don't have a lot of staff.
21 They certainly don't deliver or bill or do or generate
22 --
23      JUDGE:  What do they do, actually?
24      MR. MCINTURFF:  They're brokers.  They're
25 brokers and companies like XOOM, they even outsource

Page 6

1 their marketing.  They're --
2      JUDGE:  Call me all the time, these people.
3 They want me to change my supplier.  That -- they do
4 that.  So they have a marketing.
5      MR. MCINTURFF:  Well, not necessarily, Your
6 Honor.  The -- many of the marketing components are
7 outsourced.  But again, this is a product you sign up
8 once.  As Your Honor pointed out in Your Honor's
9 dissent in the Richards case, maybe you do some
10 diligence the first month.  You sign up the first
11 month.  But they trick you there.  They give you a
12 teaser rate.
13      So the month that you sign up, where you're
14 doing diligence, you're on a teaser rate, and then the
15 next months come and they raise your rate and raise
16 your rate and raise your rate, and all of a sudden
17 you're paying sometimes 30, 40, 50 percent more than
18 you would have paid your utility for the same energy.
19 It's the same stuff.  There's no difference.
20      And here the defendants have tied their
21 contract, their prices, to their underlying supply
22 costs.  We allege in the complaint, which must be
23 taken as true, and we show based on wholesale prices,
24 that the defendant's costs don't resemble their supply
25 costs.  In fact, they're taking 40, 50, 60 percent

Page 7

1 margins compared to what they're paying on wholesale.
2      That's not what you would pay with ConEd or
3 any other utility.  And here the contract requires
4 that costs be -- that the defendant's rates be based
5 on their supply costs.
6      JUDGE:  Well, let me ask you this, Your
7 Honor.  Time is running out.  But why do you believe
8 your implied covenant claim is viable?
9      MR. MCINTURFF:  Well, Your Honor, the
10 District Court dismissed the implied covenant claim as
11 duplicative of the contract claim.  We decided not to
12 challenge the implied covenant claim.  So at this
13 point, it's just breach of contract.
14      JUDGE:  Are you --
15      JUDGE:  So it's not unjust enrichment, and
16 it's not implied.
17      MR. MCINTURFF:  Those two claims were removed
18 from the proposed amended complaint because they were
19 dismissed.  Those -- the judge's ruling that those
20 claims were duplicative of the contract claim are not
21 the subject of our appeal.
22      JUDGE:  What is it that you propose to
23 include in your amended complaint that the Court below
24 rejected?
25      MR. MCINTURFF:  Well, the Court below faulted

Page 8

1 us for -- the perceived faults that the Court found
2 was, is that we didn't disclose our calculations
3 because it's a complaint, but we disclosed our
4 calculations so that the Court could see how the
5 various components added up and didn't equal anywhere
6 near what the prices XOOM's -- XOOM was charging.
7      The Court also found that we didn't specify
8 as clearly as the Court would have liked.  That XOOM
9 purchases on the wholesale market, which is key
10 because if XOOM says our rates are going to be based
11 on our costs, it's a fair point to say, well, what are
12 your costs?
13      Well, we found proof that XOOM is a
14 participant in New York's regulated wholesale energy
15 market, and so we're able to determine their costs.
16 And when you line up their costs for energy alongside
17 the rates they charge, it doesn't add up.  And it's
18 consistent with a pattern of behavior that has harmed
19 New York consumers to the tune of billions of dollars.
20      In this case it's just one of the many
21 consumer protection actions that are trying to bring
22 some oversight to this industry and protect New York
23 consumers, and we should have been allowed and should
24 be allowed to proceed to discovery.  Thank you.
25      JUDGE:  Are you here arguing the sufficiency

Page 9

3 (Pages 6 - 9)

| | |
|---|---|
| 1 of your first complaint or your amended complaint? | 1     JUDGE: So I -- that's why I don't |
| 2     MR. MCINTURFF: Both, Your Honor. The first | 2 understand. In your -- well, your first complaint |
| 3 complaint we believe was sufficient. It's a simple | 3 does talk about supply. But if your theory is they |
| 4 breach of contract case. The defendant's contract | 4 promise that the price to the consumer would vary |
| 5 says its prices are based on -- | 5 according to the wholesale price, then why not just |
| 6     JUDGE: Whether it's simple or not. You -- | 6 say that? Why do you then sort of use the more |
| 7 I'm a little surprised you're even invoking the first | 7 general terms supply? Because of -- they could get |
| 8 complaint. If you've got a second complaint in the | 8 supply theoretically on the retail market. They could |
| 9 record and that's the one that is limited to the | 9 go to another retailer. |
| 10 breach of contract and drops the others, I would have | 10     MR. MCINTURFF: Well, Your Honor, the |
| 11 thought you're here on the second complaint. | 11 contract bases the prices on the defendant's "supply |
| 12     MR. MCINTURFF: We're here on both because | 12 costs." And we know as we allege in the complaint |
| 13 it's at the -- we're at the pleading stage, Your | 13 that they buy wholesale. So we -- they don't buy from |
| 14 Honor, and we pled what XOOM's -- | 14 another retailer and we allege, and must be taken as |
| 15     JUDGE: Why do you want the first one if -- | 15 truth, they buy wholesale. They pay the wholesale |
| 16 which has three causes of action, two of which you | 16 price. And so, we know based on our experience in the |
| 17 just told us you dropped. So why should we look at | 17 industry that that's essentially all they do is they - |
| 18 something most of which is gone? | 18 - |
| 19     JUDGE: What's in the first that's not in the | 19     JUDGE: That's what's alleged? |
| 20 second? | 20     MR. MCINTURFF: -- buy wholesale. That's |
| 21     MR. MCINTURFF: Fair enough. If we have to | 21 what we allege, that is 90 percent of their -- |
| 22 stand on one complaint, we would stand on this. | 22     JUDGE: Is it fair to say -- |
| 23     JUDGE: It'd be the second one? | 23     MR. MCINTURFF: -- of their costs. |
| 24     MR. MCINTURFF: The second complaint. | 24     JUDGE: -- the class allegations have nothing |
| 25     JUDGE: All right. Now, and the District | 25 to do with any issue before us now? |
| Page 10 | Page 12 |

| | |
|---|---|
| 1 Court referred to the -- an allegation of wholesale | 1     MR. MCINTURFF: That's fair to say, Your |
| 2 costs being 90 percent of total costs. | 2 Honor. It was -- |
| 3     MR. MCINTURFF: That's correct. | 3     JUDGE: Well, then if we find the second |
| 4     JUDGE: Is that in the second complaint? | 4 complaint is sufficient, it will be up to the district |
| 5     MR. MCINTURFF: Yes, Your Honor. | 5 judge to decide in the first instance the class issue. |
| 6     JUDGE: Can you tell me -- do you know | 6     MR. MCINTURFF: That's correct, Your Honor. |
| 7 offhand or can you help me find which paragraph? | 7 We were dismissed on the pleadings. We haven't -- |
| 8     MR. MCINTURFF: Yes, Your Honor. I can. | 8 we've had no discovery. We haven't been permitted to |
| 9     JUDGE: I thought it was there. I just don't | 9 show that their prerequisites of Rule 23 have been |
| 10 see it as I look. Well, anyway, what -- you're | 10 met. |
| 11 satisfied it's in there somewhere? | 11     JUDGE: Reserve two minutes for rebuttal. |
| 12     MR. MCINTURFF: Yes, Your Honor. If you'd | 12     MR. MCINTURFF: Thank You, Your Honor. |
| 13 like, we can submit a letter -- | 13     JUDGE: We'll hear from XOOM. |
| 14     JUDGE: No. We're fine. If it's -- if you | 14     MR. KOTT: May it please the Court. My name |
| 15 say it's in there, well. | 15 is David Kott. I am the attorney for the defendant's |
| 16     MR. MCINTURFF: It's definitely in there. | 16 appellees. Here's what the contract says, and it's on |
| 17     JUDGE: (Crosstalk). | 17 page A94 of the appendix. |
| 18     MR. MCINTURFF: A term search would -- | 18     JUDGE: Ninety-four? |
| 19     JUDGE: All right. Now, you keep talking | 19     MR. KOTT: A94 of the appendix. The first |
| 20 about their supply costs, but in fact, your second | 20 paragraph of the contract says that the customer's |
| 21 complaints refers specifically to the fact that they - | 21 variable market rate will be "based upon actual and |
| 22 - the supply costs were based on their costs in the | 22 estimated, and estimated supply costs, which may |
| 23 wholesale market. | 23 include but not limited to, but not limited to, prior |
| 24     MR. MCINTURFF: That's correct. They buy on | 24 period adjustments, inventory and balancing costs." |
| 25 the wholesale market. So they -- again, they -- | 25 That's the contract provision we're dealing with on |
| Page 11 | Page 13 |

4 (Pages 10 - 13)

Page 14

1  this appeal.
2       And when you look at either the plaintiff's
3  initial complaint or the plaintiff's proposed amended
4  complaint, it has no allegations about the estimated
5  costs of XOOM.
6       JUDGE: Well, if you are --
7       JUDGE: But the prices you actually charge,
8  it seems to me, can't be divined or can't be matched
9  up with what you say you're going to do. You say that
10  it's based on the actual and estimated cost. Would
11  you agree that you're dealing with a commodity and you
12  are essentially a commodity broker?
13       MR. KOTT: Yeah. I think I would agree with
14  that Judge.
15       JUDGE: All right. So we start off in the --
16  you have this teaser rate. And, you know, the next
17  month you're charging 12.50 in the market is 11.89.
18  Then two months later you're 50 percent over the
19  market rate. The next month you're 45 percent over
20  the rate. The -- and by October you're 60 percent
21  over the rate.
22       I have a tough time understanding how in a
23  commodities business where, I mean, you're improving
24  on -- electricity is electricity. It's not even like
25  you're selling better electricity or anything like

Page 16

1  charge estimated costs.
2       JUDGE: But if you are any kind of business
3  people, the estimated costs should track the real
4  costs only be a lagging indicator --
5       MR. KOTT: Well --
6       JUDGE: -- correct?
7       MR. KOTT: Well, it would --
8       JUDGE: I mean, that -- isn't that what you
9  try to do, estimate accurately?
10       MR. KOTT: Of course. But we're in an
11  industry where you sometimes can get spikes in prices.
12  You can get the polar vortex where the energy soars
13  because everybody is very shivering in their home.
14       JUDGE: But that's all for trial. Maybe
15  you're going to show that in fact your rate did vary
16  according to the wholesale rate because it spiked, it
17  went down.
18       MR. KOTT: Uh-huh.
19       JUDGE: You may win. But right now you've
20  got a contract that says supply costs and they've
21  alleged your rate didn't vary with supply costs. That
22  in fact the wholesale rate was 90 percent of your
23  supply costs and it didn't vary with that.
24       MR. KOTT: Right. And I think we're back,
25  Judge Newman, to Iqbal and Twombly. They've alleged

Page 15

1  that. It seems to me you're just simply taking a
2  wholesale rate and tacking on a tremendous writeup,
3  which hard to believe, reflects any additional value
4  you add or anything you do.
5       MR. KOTT: Couple --
6       JUDGE: And so, it seems to me, once I look
7  at the chart, that your representations aren't what
8  you're really doing. And you may be able to win, but
9  this is just at a pleading stage.
10       MR. KOTT: Couple responses to that, Judge.
11       JUDGE: Please.
12       MR. KOTT: First, the market rate the Court
13  just referred to is a market rate calculated by the
14  plaintiffs unrelated to the costs set forth in the
15  contract that I just quoted. It --
16       JUDGE: Is that related to the wholesale
17  cost --
18       MR. KOTT: Not their market rate. They put
19  in the market rate. And that's what Judge Parker just
20  asked me. They put in the market rate. And when they
21  put in the elements of the market rate, which is what
22  the Court just asked me, comparing the market rate,
23  that's their market rate, that has elements that
24  aren't found anywhere in the contract. That's the
25  first thing. Second thing, the contracts allows us to

Page 17

1  90 percent conclusory terms.
2       JUDGE: That's a -- yeah. I understand. I
3  was curious about that. The District Court said that.
4  They said the nine -- the statement that more than 90
5  percent of defendant's supply costs come from its
6  purchase of wholesale energy. What's conclusory about
7  that?
8       MR. KOTT: Because they have no basis that
9  our supply costs, meaning XOOM's, are 90 percent.
10       JUDGE: Well, that's why they want discovery,
11  counsel.
12       MR. KOTT: And that's why I -- Judge Pooler,
13  that's why I said I think this is an Iqbal and
14  Twombly, because in Iqbal and Twombly, the Supreme
15  Court was clear, you must set forth a plausible cause
16  of action, not based on speculation, based on actual
17  facts before you --
18       JUDGE: (Crosstalk) conclusion. What is the
19  conclusion? What's conclusory rather as distinguished
20  from factual when you say more than 90 percent come
21  from the purchase of wholesale energy? Which word or
22  phrase is a naked conclusion?
23       MR. KOTT: The 90 percent because it's not
24  tethered --
25       JUDGE: That's not specific enough, 90

5 (Pages 14 - 17)

1 percent?
2      MR. KOTT:  It's not tethered to the contract.
3 The contract says we can take into account --
4      JUDGE:  It's tethered to the word supply.
5 That's in the contract, supply --
6      MR. KOTT:  Right.
7      JUDGE:  -- costs.
8      MR. KOTT:  Right.
9      JUDGE:  And that's the very same sentence.
10 90 percent of defendant's supply costs come from its
11 purchase of wholesale energy.
12      MR. KOTT:  Right.
13      JUDGE:  So again, where's the conclusory
14 statement?
15      MR. KOTT:  I would submit that the entire
16 sentence that the Court, Judge Newman, you just read
17 to me is conclusory.  There's nothing tied there to
18 the words of the contract, which means estimated
19 supply costs and which includes prior period.
20      JUDGE:  (Crosstalk) it said more than 90
21 percent of defendant's actual and estimated supply
22 costs, then it wouldn't have been conclusory?
23      MR. KOTT:  Taking into account other factors
24 such as prior period adjustments --
25      JUDGE:  You don't have to recite the whole

Page 18

1 contract every time they make an allegation.
2      MR. KOTT:  Well, I don't -- in the District
3 Court here, in her first motion to dismiss -- order
4 granting the motion to dismiss, was very clear and
5 gave a roadmap to the plaintiffs as to what the Court
6 thought was insufficiently pled under --
7      JUDGE:  (Crosstalk).
8      MR. KOTT:  -- Iqbal and Twombly.
9      JUDGE:  They didn't even use the word
10 wholesale the first time.
11      MR. KOTT:  Right.  Right.  And in the --
12      JUDGE:  They now come back and they say, "All
13 right, Judge.  You faulted us for not talking about
14 wholesale.  We'll talk about wholesale.  And we won't
15 just say it's in there somewhere, we'll say 90 percent
16 of it is wholesale."
17      MR. KOTT:  Right.
18      JUDGE:  You don't think that's specific?
19      MR. KOTT:  No.  I don't think under Iqbal and
20 Twombly because it's not tethered to the words of the
21 contract.  They don't explain where they get 90
22 percent.
23      JUDGE:  Conclusory is saying the Attorney
24 General did something wrong.
25      MR. KOTT:  Yeah.  I --

Page 19

1      JUDGE:  That's Iqbal?
2      MR. KOTT:  Yeah.  I do think it's just as --
3 I think the lesson of Iqbal and Twombly, and I know
4 Your Honors deal with it more than I do, you deal with
5 it every day, is you don't get to say -- and the
6 plaintiffs have done this.  If you look at page A83 of
7 the appendix in paragraph 58 of their proposed amended
8 complaint, they talk about if we could get additional
9 discovery, we could prove.
10      If you look at plaintiff's reply brief at
11 page 18, plaintiff's opening brief at page 16, it
12 talks about -- and I'm going to be very general.  It
13 talks -- yeah.  If we can get some more discovery, we
14 can fill in the holes that we have in our complaint.
15      JUDGE:  No.  I -- you know, you keep invoking
16 Iqbal and Twombly.  What seems to me to be plausibly
17 alleged from -- in this complaint is that you use a
18 teaser rate.  You say it's going to -- that the rates
19 going forward are going to be based on supply costs
20 and that's qualified with -- you know, may include but
21 not limited, prior period adjustments, inventory,
22 balancing costs and so forth.
23      And what you're doing here is, as soon as the
24 teaser rate is expired, you're jacking these rates way
25 up, hoping that people who are your customers aren't

Page 20

1 going to be sophisticated enough to decode their
2 utility to bill to see this wild variation, upward
3 variation, in the price of something that's
4 essentially a commodity which you buy as a broker in a
5 commodities market.
6      Seems misleading to me -- I don't mean
7 misleading to me, but it seems to me that is
8 essentially what they're alleging.  And I see nothing
9 implausible about that.  They may be wrong, they may
10 not be able to prove it, but it certainly seems
11 plausible to me.
12      MR. KOTT:  Judge Parker, I think that
13 ignores, right in the first page of the contract,
14 right in the middle where the contract states to the
15 customer, "We do not guarantee savings."  In the first
16 page of the contract under the term, the contract --
17 the customer can end this contract either in writing
18 or by calling a toll-free number.  In fact, we know
19 this customer --
20      JUDGE:  (Crosstalk).
21      MR. KOTT:  -- Mr. Mirkin, he's price
22 sensitive.  He's paying attention.  He's paying
23 attention.
24      JUDGE:  (Crosstalk) --
25      MR. KOTT:  He will --

Page 21

6 (Pages 18 - 21)

1        JUDGE: -- counsel eliminates the possibility
2    that you're -- that you've breached your contract?
3        MR. KOTT: Not at all. I'm simply responding
4    to Judge Parker's question that the consumer doesn't
5    know, and essentially, we take advantage of the
6    consumer by the teaser rate. Here we have a price
7    sensitive customer. We know that because of his other
8    class action brought by the same attorneys when he
9    bought energy like we did for Viridian.
10       JUDGE: You think you have a price sensitive
11   class?
12       MR. KOTT: I don't -- I hadn't anticipated
13   that question because class issues aren't here, Your
14   Honor. I will confess I had not thought about that.
15       JUDGE: I'll withdraw it.
16       MR. KOTT: But on this record, for who's in
17   the class, the people on the -- in the class, would be
18   people who would have received this contract, which
19   says, number one, we don't guarantee any savings. And
20   number two, you can leave whenever you want. Just
21   pick up the phone and dial an 800 number.
22       JUDGE: Well, I appreciate you don't
23   guarantee a saving because the wholesale price may go
24   way up, in which case the consumer price is going to
25   go way up. I get that. But isn't the customer

Page 22

1    entitled to think as the wholesale price varies since
2    it's 90 percent of your price, then my cost is going
3    to vary?
4        MR. KOTT: No --
5        JUDGE: That's not a fair inference?
6        MR. KOTT: No. Because we have prior period
7    adjustments. There might be adjustments that come in
8    that affect that. This customer was only with us for
9    about five months. We have balancing costs and we may
10   have other costs --
11       JUDGE: Even though this is 90 percent of the
12   price?
13       MR. KOTT: Well, again, I had the colloquy
14   earlier with the Court on my view on whether 90
15   percent is a conclusory allegation or not.
16       JUDGE: I understand you called it
17   conclusory.
18       MR. KOTT: Yeah.
19       JUDGE: Whether it's conclusory or not, it's
20   still 90 percent, which is a lot.
21       MR. KOTT: Right. But it doesn't --
22       JUDGE: Does a consumer then think that, "My
23   price is going to vary substantially with wholesale
24   costs"?
25       MR. KOTT: On this contract I don't think the

Page 23

1    consumer can have that expectation. I do not think
2    the consumer can have the --
3        JUDGE: Supposing, in fact, it was 98
4    percent, would the consumer then be entitled to think,
5    "Well, if wholesale costs vary, my costs are going to
6    vary"?
7        MR. KOTT: And we may be talking about a
8    different contract. A lot of the cases --
9        JUDGE: I'm just wondering if your problem is
10   with that 90 is too low a number, or you don't like
11   the whole concept of putting a percentage on it?
12       MR. KOTT: I don't like the concept --
13       JUDGE: That's what I thought.
14       MR. KOTT: Let me back up. I don't --
15       JUDGE: You're not really quarrelling with
16   90.
17       MR. KOTT: Well, there's nothing in this
18   record that supports 90 percent. Other than a --
19       JUDGE: Of course, there's not. Because they
20   haven't had a trial.
21       MR. KOTT: And --
22       JUDGE: They've pled 90 percent.
23       MR. KOTT: Right.
24       JUDGE: So to tell me there's nothing in the
25   record on a motion to dismiss is, if you'll forgive

Page 24

1    me, a bit disingenuous that there's nothing in the
2    record.
3        MR. KOTT: And I might have been overbroad.
4    There's nothing that supports the allegation of 90
5    percent in the record.
6        JUDGE: How would there be?
7        MR. KOTT: You could do it from other energy
8    companies. You could get the information from any --
9    this --
10       JUDGE: Why should you do that at the
11   pleading stage if you've said 90 percent?
12       MR. KOTT: Because I think under my reading
13   of the case law, that's what's required.
14       JUDGE: I see. Okay.
15       JUDGE: Thank you.
16       MR. KOTT: Thank you. We thank the Court.
17       JUDGE: Counsel, you've reserved two minutes
18   for rebuttal.
19       MR. MCINTURFF: Yes, Your Honor. Just
20   briefly. To Your Honor's prior question about the 90
21   percent allegation, that's on -- it's on page A64 of
22   the Appendix.
23       JUDGE: Sixty-four?
24       MR. MCINTURFF: Yes, Your Honor. It's
25   paragraph four in the proposed amended complaint.

Page 25

7 (Pages 22 - 25)

1    JUDGE:  Yeah.  Got it.
2    MR. MCINTURFF:  And just briefly to address
3  the defendant's point about prior period adjustments.
4  The charts that we put in the complaint show that the
5  wholesale costs during the relevant period are quite
6  stable.  And essentially what the defendants are
7  asking the Court do at the pleading stage is
8  assume that there was some prior period where
9  wholesale prices were very, very high and that they
10  were very positive.  They were -- the spikes were both
11  high and positive and they were prolonged.
12    And that's simply a question of fact that at
13  this stage of the litigation that can't be answered.
14  And we believe that we've met Twombly and Iqbal, we've
15  plausibly alleged that they're a wholesale market
16  participant.  They -- there's publicly available data
17  about their participation in the wholesale markets.
18  We're able to calculate the wholesale price for this
19  plaintiff during their exact billing cycles.
20    And when you compare the two -- the prices
21  that they paid for wholesale and that -- the
22  defendants paid for wholesale energy compared to what
23  the consumer paid, it simply doesn't add up.  It's the
24  prices that the defendants are charging are not
25  connected to their wholesale costs.  And we have

Page 26

1  therefore alleged a breach of contract.
2    JUDGE:  Also --
3    JUDGE:  Are you familiar --
4    JUDGE:  -- you were the attorney for the
5  Mirkins in their previous case against Viridian?
6    MR. MCINTURFF:  I was one of the attorneys,
7  Your Honor.
8    JUDGE:  You mentioned that the staff of the
9  Public Service Commission has now said this is a
10  billion-dollar scam.  What do you propose as a
11  solution?  Reregulation or what?
12    MR. MCINTURFF:  Well, Your Honor, if it was
13  up to me.  But --
14    JUDGE:  Well, I mean --
15    MR. MCINTURFF:  -- what the -- what is
16  currently proceeding in the Public Service Commission
17  is -- the Mirkins filed their first case against
18  Viridian Energy in 2014.  Late at the end of 2014, the
19  Public Service Commission announced a reset of the
20  market where they were deciding to hold a hearing
21  whether to evaluate whether all ESCOs could be
22  prohibited from providing variable rate products
23  unless they guaranteed to beat the utility.  And that
24  proceeding last summer proceeded to --
25    JUDGE:  Unless they guaranteed what?

Page 27

1    MR. MCINTURFF:  To beat the utility.  So
2  basically, you had to guarantee savings.
3    JUDGE:  You'd have to make money under that.
4  I mean, the consumer would have to save money.
5    MR. MCINTURFF:  Correct.  That was the only
6  way they would permit an ESCO like the defendants to
7  charge a variable energy rate.
8    JUDGE:  What happened with that?
9    MR. MCINTURFF:  So the hearing has occurred,
10  but the industry challenged the PSCs authority --
11    JUDGE:  I'm not surprised.
12    MR. MCINTURFF:  -- to issue the regulation.
13  And in May of this year, the New York Court of Appeals
14  upheld the PSC's authority to hold the hearing, but
15  the results of the hearing have not occurred.
16    JUDGE:  Oh, that's pending.
17    MR. MCINTURFF:  That is pending, Your Honor.
18    JUDGE:  They may change this whole industry.
19    MR. MCINTURFF:  Hopefully, Your Honor.
20    JUDGE:  Thank you.
21    JUDGE:  Are you familiar with the Erickson
22  case Supreme Court decided after Iqbal?
23    MR. MCINTURFF:  No, Your Honor.
24    JUDGE:  You might want to look.  It always
25  interests me that plaintiffs -- I understand the

Page 28

1  problem you're confronted with Iqbal and Twombly, and
2  so everybody says whether or not it meets Iqbal and
3  Twombly.  But within two weeks of those cases, they
4  reversed the District Court for throwing out a
5  complaint, a very short complaint.  Short, concise,
6  according to the rule, and they reinstated it.
7    So I don't understand why plaintiffs don't
8  say we are sufficient under the Twombly, Iqbal,
9  Erickson rule, which gets the full sequence.
10    MR. MCINTURFF:  I'll read it on the train,
11  Your Honor.
12    JUDGE:  Thank you.
13    JUDGE:  Thank you, counsel.
14    MR. MCINTURFF:  Thank you.
15    JUDGE:  Thank you both.  Lively discussion.
16    JUDGE:  Thank you all.
17    JUDGE:  Will reserve decision.
18
19
20
21
22
23
24
25

Page 29

8 (Pages 26 - 29)

```
1              CERTIFICATE OF TRANSCRIBER
2        I, RODIE DEAN, do hereby certify that this
3   transcript was prepared from the digital audio
4   recording of the foregoing proceeding, that said
5   transcript is a true and accurate record of the
6   proceedings to the best of my knowledge, skills, and
7   ability; that I am neither counsel for, related to,
8   nor employed by any of the parties to the action in
9   which this was taken; and, further, that I am not a
10  relative or employee of any counsel or attorney
11  employed by the parties hereto, nor financially or
12  otherwise interested in the outcome of this action.
13  Date:  6/13/2024
14
                    Rodie Dean

15                  RODIE DEAN
16
17
18
19
20
21
22
23
24
25
                                          Page 30
```

Veritext Legal Solutions
346-293-7000

**[11.89. - balancing]**

| 1 |
|---|
| **11.89.**  14:17 |
| **12**  2:21 |
| **12.50**  14:17 |
| **16**  20:11 |
| **18**  20:11 |
| **18-3138**  1:6 |
| **18266**  30:14 |

| 2 |
|---|
| **2014**  27:18,18 |
| **2019**  1:11 |
| **23**  13:9 |

| 3 |
|---|
| **30**  7:17 |

| 4 |
|---|
| **40**  7:17,25 |
| **45**  14:19 |

| 5 |
|---|
| **50**  7:17,25 |
| 14:18 |
| **58**  20:7 |

| 6 |
|---|
| **6**  1:11 |
| **6/13/2024** |
| 30:13 |
| **60**  7:25 14:20 |

| 8 |
|---|
| **800**  22:21 |

| 9 |
|---|
| **90**  11:2 12:21 |
| 16:22 17:1,4,9 |
| 17:20,23,25 |

18:10,20 19:15
19:21 23:2,11
23:14,20 24:10
24:16,18,22
25:4,11,20
**98**  24:3

| a |
|---|
| **a64**  25:21 |
| **a83**  20:6 |
| **a94**  13:17,19 |
| **ability**  30:7 |
| **able**  5:4 9:15 |
| 15:8 21:10 |
| 26:18 |
| **above**  3:18 |
| **account**  18:3 |
| 18:23 |
| **accurate**  30:5 |
| **accurately**  16:9 |
| **achieve**  3:17 |
| **action**  10:16 |
| 17:16 22:8 |
| 30:8,12 |
| **actions**  9:21 |
| **actual**  2:23 |
| 13:21 14:10 |
| 17:16 18:21 |
| **actually**  3:4 |
| 6:23 14:7 |
| **add**  9:17 15:4 |
| 26:23 |
| **added**  9:5 |
| **additional**  15:3 |
| 20:8 |

**address**  26:2
**adjustments**
2:25 13:24
18:24 20:21
23:7,7 26:3
**advantage**  22:5
**affect**  23:8
**agree**  14:11,13
**allegation**  11:1
19:1 23:15
25:4,21
**allegations**
12:24 14:4
**allege**  7:22
12:12,14,21
**alleged**  12:19
16:21,25 20:17
26:15 27:1
**alleging**  21:8
**allowed**  3:16
3:17,20 9:23
9:24
**allowing**  5:18
**allows**  15:25
**alongside**  9:16
**amended**  8:18
8:23 10:1 14:3
20:7 25:25
**announced**
27:19
**answered**
26:13
**anticipated**
22:12

**address**  26:2
**anyway**  11:10
**appeal**  8:21
14:1
**appeals**  1:1
28:13
**appellees**  13:16
**appendix**  13:17
13:19 20:7
25:22
**appreciate**
22:22
**arguing**  9:25
**argument**  1:9
2:15 3:25 4:1
4:24
**asked**  15:20,22
**asking**  26:7
**assume**  26:8
**attention**  21:22
21:23
**attorney**  13:15
19:23 27:4
30:10
**attorneys**  22:8
27:6
**audio**  30:3
**authority**  28:10
28:14
**available**  26:16

| b |
|---|
| **back**  16:24 |
| 19:12 24:14 |
| **balancing**  2:25 |
| 3:2,4,7,8,14 |
| 13:24 20:22 |

Page 1

**[balancing - components]**

23:9
**based** 2:12,17
2:22 4:20 7:23
8:4 9:10 10:5
11:22 12:16
13:21 14:10
17:16,16 20:19
**bases** 12:11
**basically** 6:17
28:2
**basis** 2:13,14
2:17 17:8
**beat** 27:23 28:1
**behalf** 2:8
**behavior** 9:18
**believe** 8:7 10:3
15:3 26:14
**best** 30:6
**better** 14:25
**bill** 6:21 21:2
**billed** 6:3
**billing** 26:19
**billion** 5:11
27:10
**billions** 9:19
**bit** 25:1
**boris** 2:8
**bought** 22:9
**bound** 4:25 5:1
**breach** 2:10
8:13 10:4,10
27:1
**breached** 22:2
**brief** 2:22
20:10,11

**briefly** 25:20
26:2
**bring** 9:21
**broker** 14:12
21:4
**brokers** 4:4
6:24,25
**brought** 22:8
**burkett** 1:22
2:8
**business** 4:20
14:23 16:2
**businesses** 4:3
**buy** 4:5 6:14
11:24 12:13,13
12:15,20 21:4

**c**

**c** 2:1
**calculate** 26:18
**calculated**
15:13
**calculation**
2:14
**calculations**
9:2,4
**calendar** 2:2
**call** 7:2
**called** 23:16
**calling** 21:18
**case** 1:6 2:10
4:13,18,23 7:9
9:20 10:4
22:24 25:13
27:5,17 28:22

**cases** 24:8 29:3
**cause** 17:15
**causes** 10:16
**certainly** 6:21
21:10
**certificate** 30:1
**certify** 30:2
**challenge** 8:12
**challenged** 5:8
28:10
**change** 7:3
28:18
**charge** 6:11
9:17 14:7 16:1
28:7
**charging** 5:15
6:2 9:6 14:17
26:24
**chart** 15:7
**charts** 26:4
**circuit** 1:1
**claim** 8:8,10,11
8:12,20
**claims** 8:17,20
**class** 2:9 12:24
13:5 22:8,11
22:13,17,17
**clear** 17:15
19:4
**clearly** 9:8
**colloquy** 23:13
**come** 7:15 17:5
17:20 18:10
19:12 23:7

**comes** 6:4
**commission**
5:10 27:9,16
27:19
**commodities**
14:23 21:5
**commodity**
14:11,12 21:4
**companies** 4:3
5:14 6:5,25
25:8
**company** 3:11
4:25
**company's**
4:23
**compare** 5:12
6:5 26:20
**compared** 8:1
26:22
**comparing**
15:22
**competition**
5:21
**complaint** 7:22
8:18,23 9:3
10:1,1,3,8,8,11
10:22,24 11:4
12:2,12 13:4
14:3,4 20:8,14
20:17 25:25
26:4 29:5,5
**complaints**
11:21
**components**
3:12,13,14,15

Page 2

**[components - direct]**

| | | | |
|---|---|---|---|
| 7:6 9:5 | 12:11 13:16,20 | 30:7,10 | **day** 20:5 |
| **composed** 3:12 | 13:25 15:15,24 | **couple** 15:5,10 | **deal** 20:4,4 |
| **concept** 24:11 | 16:20 18:2,3,5 | **course** 16:10 | **dealing** 13:25 |
| 24:12 | 18:18 19:1,21 | 24:19 | 14:11 |
| **concise** 29:5 | 21:13,14,16,16 | **court** 1:1 2:10 | **dean** 30:2,15 |
| **conclusion** | 21:17 22:2,18 | 4:21 5:3 8:10 | **decide** 13:5 |
| 17:18,19,22 | 23:25 24:8 | 8:23,25 9:1,4,7 | **decided** 4:13 |
| **conclusory** | 27:1 | 9:8 11:1 13:14 | 8:11 28:22 |
| 17:1,6,19 | **contracts** 15:25 | 15:12,22 17:3 | **deciding** 27:20 |
| 18:13,17,22 | **correct** 4:10 | 17:15 18:16 | **decision** 29:17 |
| 19:23 23:15,17 | 11:3,24 13:6 | 19:3,5 23:14 | **decode** 21:1 |
| 23:19 | 16:6 28:5 | 25:16 26:7 | **defendant** 1:23 |
| **conditions** 4:21 | **cost** 2:19 3:5,7 | 28:13,22 29:4 | 5:5 |
| **coned** 8:2 | 3:8,14 14:10 | **covenant** 8:8 | **defendant's** |
| **confess** 22:14 | 15:17 23:2 | 8:10,12 | 2:11,12 3:1 |
| **confined** 3:1 | **costs** 2:12,23 | **crosstalk** 4:16 | 4:19 7:24 8:4 |
| **confronted** | 2:25 3:1,2,4,9 | 11:17 17:18 | 10:4 12:11 |
| 29:1 | 3:13,18,22 4:3 | 18:20 19:7 | 13:15 17:5 |
| **connected** | 4:9,12,24 5:1,2 | 21:20,24 | 18:10,21 26:3 |
| 26:25 | 6:7,11,19 7:22 | **curious** 17:3 | **defendants** |
| **consistent** 9:18 | 7:24,25 8:4,5 | **currently** 27:16 | 5:14 7:20 26:6 |
| **constantly** 6:3 | 9:11,12,15,16 | **customer** 21:15 | 26:22,24 28:6 |
| **consumer** 4:8 | 11:2,2,20,22,22 | 21:17,19 22:7 | **definitely** 11:16 |
| 5:19 9:21 12:4 | 12:12,23 13:22 | 22:25 23:8 | **deliver** 6:21 |
| 22:4,6,24 | 13:24 14:5 | **customer's** | **determine** 9:15 |
| 23:22 24:1,2,4 | 15:14 16:1,3,4 | 2:22 13:20 | **dial** 22:21 |
| 26:23 28:4 | 16:20,21,23 | **customers** | **difference** 7:19 |
| **consumers** 4:6 | 17:5,9 18:7,10 | 20:25 | **different** 24:8 |
| 5:12,12,17 | 18:19,22 20:19 | **cycles** 26:19 | **difficult** 6:5 |
| 9:19,23 | 20:22 23:9,10 | | **digital** 30:3 |
| **contract** 2:10 | 23:24 24:5,5 | **d** | **diligence** 7:10 |
| 2:11,17,20 | 26:5,25 | | 7:14 |
| 3:23 4:19 7:21 | **counsel** 1:22,23 | **d** 2:1 | **direct** 4:14,18 |
| 8:3,11,13,20 | 2:6 17:11 22:1 | **data** 26:16 | 4:19 5:3,7 |
| 10:4,4,10 | 25:17 29:13 | **date** 30:13 | |
| | | **david** 1:23 | |
| | | 13:15 | |

**[disclose - further]**

| | | | |
|---|---|---|---|
| **disclose**  9:2 | **e** | **esquire**  1:22,23 | 23:5 |
| **disclosed**  9:3 | **e**  2:1 | **essentially**  4:4 | **familiar**  27:3 |
| **discovery**  6:9 | **earlier**  23:14 | 4:11 12:17 | 28:21 |
| 9:24 13:8 | **either**  14:2 | 14:12 21:4,8 | **faulted**  8:25 |
| 17:10 20:9,13 | 21:17 | 22:5 26:6 | 19:13 |
| **discussion** | **electricity** | **estimate**  16:9 | **faults**  9:1 |
| 29:15 | 14:24,24,25 | **estimated**  2:23 | **filed**  27:17 |
| **disingenuous** | **elements**  15:21 | 13:22,22 14:4 | **fill**  20:14 |
| 25:1 | 15:23 | 14:10 16:1,3 | **financially** |
| **dismiss**  19:3,4 | **eliminates**  22:1 | 18:18,21 | 30:11 |
| 24:25 | **employed**  30:8 | **evaluate**  27:21 | **find**  11:7 13:3 |
| **dismissed**  8:10 | 30:11 | **everybody** | **fine**  11:14 |
| 8:19 13:7 | **employee**  30:10 | 16:13 29:2 | **first**  7:10,10 |
| **dissent**  7:9 | **energy**  1:4 2:3 | **evidence**  4:11 | 10:1,2,7,15,19 |
| **dissented**  4:17 | 2:11,19 3:5,6 | **exact**  6:18 | 12:2 13:5,19 |
| **distinguished** | 3:11,12 4:14 | 26:19 | 15:12,25 19:3 |
| 17:19 | 4:18,19 5:3,7 | **exactly**  6:10 | 19:10 21:13,15 |
| **district**  8:10 | 5:14,16 6:4 | **excess**  4:12 | 27:17 |
| 10:25 13:4 | 7:18 9:14,16 | **expectation** | **five**  23:9 |
| 17:3 19:2 29:4 | 16:12 17:6,21 | 24:1 | **foregoing**  30:4 |
| **divined**  14:8 | 18:11 22:9 | **experience** | **forgive**  24:25 |
| **doing**  7:14 15:8 | 25:7 26:22 | 12:16 | **forth**  15:14 |
| 20:23 | 27:18 28:7 | **expired**  20:24 | 17:15 20:22 |
| **dollar**  5:11 | **enrichment** | **explain**  19:21 | **forward**  20:19 |
| 27:10 | 8:15 | **f** | **found**  5:24 9:1 |
| **dollars**  9:19 | **enter**  2:19 | **fact**  7:25 11:20 | 9:7,13 15:24 |
| **dozens**  3:12 | **entire**  18:15 | 11:21 16:15,22 | **four**  13:18 |
| **drive**  5:25 | **entitled**  23:1 | 21:18 24:3 | 25:23,25 |
| **dropped**  10:17 | 24:4 | 26:12 | **fraud**  5:11 |
| **drops**  10:10 | **equal**  9:5 | **factors**  5:4 | **free**  21:18 |
| **duplicative** | **erickson**  28:21 | 18:23 | **full**  29:9 |
| 8:11,20 | 29:9 | **facts**  17:17 | **further**  30:9 |
| | **esco**  28:6 | **factual**  17:20 | |
| | **escos**  27:21 | **fair**  9:11 10:21 | |
| | | 12:22 13:1 | |

Veritext Legal Solutions
346-293-7000

**[g - judge]**

| g | | | j |
|---|---|---|---|
| **g** 2:1 | **higher** 5:15 | 20:20 | **jacking** 20:24 |
| **gas** 6:1,2 | **hold** 27:20 | **included** 3:5 | **judge** 1:19,20 |
| **general** 12:7 | 28:14 | **includes** 18:19 | 1:21 2:2,13,18 |
| 19:24 20:12 | **holes** 20:14 | **incorporated** | 3:2,7,16,24 4:7 |
| **generate** 6:21 | **home** 16:13 | 3:9 | 4:13,16 5:18 |
| **getting** 5:13 | **honor** 2:7,16 | **indicative** 5:8 | 6:9,16,23 7:2 |
| **give** 7:11 | 2:20 3:19 4:1 | **indicator** 16:4 | 8:6,14,15,22 |
| **go** 5:5,21 12:9 | 4:17 7:6,8 8:7 | **industry** 5:9,19 | 9:25 10:6,15 |
| 22:23,25 | 8:9 10:2,14 | 5:24 9:22 | 10:19,23,25 |
| **going** 6:7 9:10 | 11:5,8,12 | 12:17 16:11 | 11:4,6,9,14,17 |
| 14:9 16:15 | 12:10 13:2,6 | 28:10,18 | 11:19 12:1,19 |
| 20:12,18,19,19 | 13:12 22:14 | **inference** 23:5 | 12:22,24 13:3 |
| 21:1 22:24 | 25:19,24 27:7 | **information** | 13:5,11,13,18 |
| 23:2,23 24:5 | 27:12 28:17,19 | 25:8 | 14:6,7,14,15 |
| **good** 2:5,6,7 | 28:23 29:11 | **initial** 14:3 | 15:6,10,11,16 |
| 6:13 | **honor's** 7:8 | **instance** 13:5 | 15:19 16:2,6,8 |
| **gouging** 4:11 | 25:20 | **insufficiently** | 16:14,19,25 |
| **granting** 19:4 | **honors** 20:4 | 19:6 | 17:2,10,12,18 |
| **guarantee** | **hopefully** 28:19 | **interested** | 17:25 18:4,7,9 |
| 21:15 22:19,23 | **hoping** 20:25 | 30:12 | 18:13,16,20,25 |
| 28:2 | **huh** 16:18 | **interests** 28:25 | 19:7,9,12,13,18 |
| **guaranteed** | | **inventory** 2:25 | 19:23 20:1,15 |
| 27:23,25 | i | 13:24 20:21 | 21:12,20,24 |
| | **idea** 5:18,19 | **invoking** 10:7 | 22:1,4,10,15,22 |
| h | 6:13 | 20:15 | 23:5,11,16,19 |
| **happened** 28:8 | **identical** 3:24 | **iqbal** 16:25 | 23:22 24:3,9 |
| **hard** 15:3 | 4:2 | 17:13,14 19:8 | 24:13,15,19,22 |
| **harmed** 9:18 | **ignores** 21:13 | 19:19 20:1,3 | 24:24 25:6,10 |
| **hear** 13:13 | **implausible** | 20:16 26:14 | 25:14,15,17,23 |
| **hearing** 27:20 | 21:9 | 28:22 29:1,2,8 | 26:1 27:2,3,4,8 |
| 28:9,14,15 | **implied** 8:8,10 | **issue** 12:25 | 27:14,25 28:3 |
| **help** 11:7 | 8:12,16 | 13:5 28:12 | 28:8,11,16,18 |
| **hereto** 30:11 | **improving** | **issues** 22:13 | 28:20,21,24 |
| **high** 26:9,11 | 14:23 | **it'd** 10:23 | 29:12,13,15,16 |
| | **include** 2:24 | | |
| | 8:23 13:23 | | |

Page 5

**[judge - nine]**

29:17
**judge's** 8:19

**k**

**keep** 11:19
20:15
**key** 9:9
**kind** 5:18 16:2
**know** 5:15 6:10
6:16,17,18,18
11:6 12:12,16
14:16 20:3,15
20:20 21:18
22:5,7
**knowledge**
30:6
**kott** 1:23 13:14
13:15,19 14:13
15:5,10,12,18
16:5,7,10,18,24
17:8,12,23
18:2,6,8,12,15
18:23 19:2,8
19:11,17,19,25
20:2 21:12,21
21:25 22:3,12
22:16 23:4,6
23:13,18,21,25
24:7,12,14,17
24:21,23 25:3
25:7,12,16

**l**

**lagging** 16:4
**late** 27:18

**law** 25:13
**lean** 4:3 6:20
**leave** 22:20
**leeway** 4:22
**lesson** 20:3
**letter** 11:13
**liked** 9:8
**limited** 2:24
10:9 13:23,23
20:21
**line** 9:16
**litigation** 26:13
**little** 2:4 10:7
**lively** 29:15
**llc** 1:4 2:3
**look** 6:1 10:17
11:10 14:2
15:6 20:6,10
28:24
**lot** 6:20 23:20
24:8
**low** 4:5 24:10

**m**

**main** 4:24
**make** 6:6 19:1
28:3
**margin** 3:17,20
**margins** 4:11
8:1
**market** 4:5,20
6:7,14,15 9:9
9:15 11:23,25
12:8 13:21
14:17,19 15:12
15:13,18,19,20

15:21,22,23
21:5 26:15
27:20
**marketing** 7:1
7:4,6
**markets** 26:17
**matched** 14:8
**matter** 2:2
**mcinturff** 1:22
2:7,8,16,20 3:4
3:8,19 4:1,10
4:15,17 5:23
6:12,17,24 7:5
8:9,17,25 10:2
10:12,21,24
11:3,5,8,12,16
11:18,24 12:10
12:20,23 13:1
13:6,12 25:19
25:24 26:2
27:6,12,15
28:1,5,9,12,17
28:19,23 29:10
29:14
**mean** 14:23
16:8 21:6
27:14 28:4
**meaning** 17:9
**means** 18:18
**meets** 29:2
**mentioned** 27:8
**met** 13:10
26:14
**middle** 21:14

**minutes** 13:11
25:17
**mirkin** 1:4 2:3
2:9 21:21
**mirkins** 27:5
27:17
**misleading**
21:6,7
**money** 28:3,4
**month** 6:4 7:10
7:11,13 14:17
14:19
**monthly** 2:22
**months** 7:15
14:18 23:9
**morning** 2:5,6
2:7
**motion** 19:3,4
24:25
**myriad** 5:4

**n**

**n** 2:1
**naked** 17:22
**name** 13:14
**near** 9:6
**necessarily** 7:5
**negotiation**
5:20
**neither** 30:7
**new** 5:11 9:14
9:19,22 28:13
**newman** 1:19
16:25 18:16
**nine** 17:4

Page 6

**[ninety - prior]**

**ninety**  13:18
**november**  1:11
**number**  21:18
  22:19,20,21
  24:10

**o**

**o**  2:1
**obscure**  5:25
**occurred**  28:9
  28:15
**october**  14:20
**offhand**  11:7
**oh**  28:16
**okay**  25:14
**once**  7:8 15:6
**opening**  2:21
  20:11
**operations**  6:20
**opposite**  4:18
  4:25
**oral**  1:9
**order**  19:3
**outcome**  30:12
**outsource**  6:25
**outsourced**  7:7
**overbroad**  25:3
**overcharged**
  5:13
**overhead**  4:5
**oversight**  9:22

**p**

**page**  2:21
  13:17 20:6,11
  20:11 21:13,16

25:21
**paid**  7:18 26:21
  26:22,23
**paragraph**
  11:7 13:20
  20:7 25:25
**parker**  1:20
  15:19 21:12
**parker's**  22:4
**participant**
  9:14 26:16
**participation**
  26:17
**parties**  30:8,11
**pattern**  9:18
**pay**  6:16 8:2
  12:15
**payer**  5:21
**paying**  5:16
  7:17 8:1 21:22
  21:22
**pays**  3:11
**pending**  28:16
  28:17
**people**  7:2 16:3
  20:25 22:17,18
**perceived**  9:1
**percent**  7:17,25
  11:2 12:21
  14:18,19,20
  16:22 17:1,5,9
  17:20,23 18:1
  18:10,21 19:15
  19:22 23:2,11
  23:15,20 24:4

24:18,22 25:5
  25:11,21
**percentage**
  24:11
**period**  2:24
  13:24 18:19,24
  20:21 23:6
  26:3,5,8
**permit**  28:6
**permitted**  13:8
**perpetrated**
  5:11
**phone**  22:21
**phrase**  17:22
**pick**  22:21
**plaintiff**  1:22
  26:19
**plaintiff's**  14:2
  14:3 20:10,11
**plaintiffs**  4:22
  5:3 15:14 19:5
  20:6 28:25
  29:7
**plausible**  17:15
  21:11
**plausibly**  20:16
  26:15
**pleading**  10:13
  15:9 25:11
  26:7
**pleadings**  13:7
**please**  2:9
  13:14 15:11
**pled**  10:14 19:6
  24:22

**point**  8:13 9:11
  26:3
**pointed**  5:9 7:8
**pointing**  2:21
**polar**  16:12
**pooler**  1:21
  17:12
**position**  3:20
  3:21
**positive**  26:10
  26:11
**possibility**  22:1
**practices**  5:7,8
**prepared**  30:3
**prerequisites**
  13:9
**previous**  27:5
**price**  4:7,11
  6:16,17,18
  12:4,5,16 21:3
  21:21 22:6,10
  22:23,24 23:1
  23:2,12,23
  26:18
**prices**  4:20
  5:12 6:5,6,11
  7:21,23 9:6
  10:5 12:11
  14:7 16:11
  26:9,20,24
**pricing**  5:25
**prior**  2:24
  13:23 18:19,24
  20:21 23:6
  25:20 26:3,8

Veritext Legal Solutions
346-293-7000

**[proactive - right]**

**proactive** 5:24
**problem** 5:2
  24:9 29:1
**proceed** 9:24
**proceeded**
  27:24
**proceeding**
  27:16,24 30:4
**proceedings**
  30:6
**product** 7:7
**products** 27:22
**profit** 3:16
**prohibited**
  27:22
**prolonged**
  26:11
**promise** 12:4
**proof** 9:13
**propose** 8:22
  27:10
**proposed** 2:9
  8:18 14:3 20:7
  25:25
**protect** 9:22
**protection** 5:19
  9:21
**prove** 20:9
  21:10
**providing**
  27:22
**provision** 13:25
**psc** 5:23
**psc's** 28:14

**pscs** 28:10
**public** 5:10
  27:9,16,19
**publicly** 26:16
**published** 3:10
**purchase** 3:6
  3:12 6:1 17:6
  17:21 18:11
**purchases** 6:13
  9:9
**put** 15:18,20,21
  26:4
**putting** 24:11

**q**

**qualified** 20:20
**quarrelling**
  24:15
**question** 22:4
  22:13 25:20
  26:12
**quite** 26:5
**quoted** 15:15

**r**

**r** 2:1,1
**raise** 7:15,15
  7:16
**rate** 2:22 3:10
  3:10 5:6,21
  7:12,14,15,16
  7:16 13:21
  14:16,19,20,21
  15:2,12,13,18
  15:19,20,21,22
  15:23 16:15,16

16:21,22 20:18
20:24 22:6
27:22 28:7
**rates** 2:11 3:21
  4:23 5:1,16 8:4
  9:10,17 20:18
  20:24
**rather** 17:19
**read** 18:16
  29:10
**reading** 25:12
**real** 16:3
**really** 15:8
  24:15
**rebuttal** 13:11
  25:18
**received** 22:18
**recently** 5:10
**recite** 18:25
**record** 10:9
  22:16 24:18,25
  25:2,5 30:5
**recording** 1:9
  30:4
**referred** 11:1
  15:13
**refers** 11:21
**reflect** 4:2
**reflects** 15:3
**regulated** 3:13
  3:14 9:14
**regulation**
  28:12
**reinstated** 29:6

**rejected** 8:24
**related** 15:16
  30:7
**relationship**
  4:8 6:10
**relative** 30:10
**relevant** 26:5
**removed** 8:17
**reply** 20:10
**representations**
  6:6 15:7
**required** 25:13
**requires** 2:11
  8:3
**reregulation**
  27:11
**resale** 4:6
**resemble** 7:24
**reserve** 13:11
  29:17
**reserved** 25:17
**reset** 27:19
**responding**
  22:3
**responses**
  15:10
**results** 28:15
**retail** 12:8
**retailer** 12:9,14
**reversed** 29:4
**richards** 7:9
**right** 10:25
  11:19 14:15
  16:19,24 18:6
  18:8,12 19:11

Veritext Legal Solutions
346-293-7000

**[right - tell]**

19:11,13,17
21:13,14 23:21
24:23
**roadmap** 19:5
**rodie** 30:2,15
**rule** 13:9 29:6,9
**ruling** 8:19
**running** 8:7

**s**

**satisfied** 11:11
**save** 28:4
**saving** 22:23
**savings** 21:15
22:19 28:2
**saying** 19:23
**says** 2:17,21
9:10 10:5
13:16,20 16:20
18:3 22:19
29:2
**scam** 27:10
**scientific** 3:3
**search** 11:18
**second** 1:1 10:8
10:11,20,23,24
11:4,20 13:3
15:25
**see** 6:1 9:4
11:10 21:2,8
25:14
**seem** 3:3
**seems** 14:8 15:1
15:6 20:16
21:6,7,10

**selling** 14:25
**sensitive** 21:22
22:7,10
**sentence** 18:9
18:16
**sequence** 29:9
**service** 5:10
27:9,16,19
**set** 15:14 17:15
**sets** 5:6
**share** 6:8
**shivering** 16:13
**short** 29:5,5
**show** 7:23 13:9
16:15 26:4
**sign** 7:7,10,13
**signature** 30:14
**significant** 4:22
**simple** 2:10
10:3,6
**simply** 6:14
15:1 22:3
26:12,23
**sixty** 25:23
**skills** 30:6
**soars** 16:12
**solution** 27:11
**soon** 20:23
**sophisticated**
21:1
**sort** 12:6
**speakers** 1:18
**specific** 17:25
19:18

**specifically**
11:21
**specify** 9:7
**speculation**
17:16
**spiked** 16:16
**spikes** 16:11
26:10
**stable** 26:6
**staff** 5:10,23
6:20 27:8
**stage** 10:13
15:9 25:11
26:7,13
**stand** 10:22,22
**start** 2:14
14:15
**statement** 17:4
18:14
**states** 21:14
**steps** 5:24
**stuck** 5:17
**stuff** 7:19
**subcategories**
3:9
**subject** 8:21
**submit** 11:13
18:15
**substantially**
23:23
**sudden** 7:16
**sufficiency**
9:25
**sufficient** 10:3
13:4 29:8

**summer** 27:24
**supplier** 7:3
**supply** 2:12,23
3:1,22 4:9,24
5:1 6:19 7:21
7:24 8:5 11:20
11:22 12:3,7,8
12:11 13:22
16:20,21,23
17:5,9 18:4,5
18:10,19,21
20:19
**supports** 24:18
25:4
**supposing** 24:3
**supreme** 17:14
28:22
**surprised** 10:7
28:11
**susanna** 2:3,8

**t**

**tacking** 15:2
**take** 18:3 22:5
**taken** 5:24 7:23
12:14 30:9
**talk** 12:3 19:14
20:8
**talking** 11:19
19:13 24:7
**talks** 20:12,13
**teaser** 7:12,14
14:16 20:18,24
22:6
**tell** 5:13 11:6
24:24

Page 9

**[term - wholesaler]**

| | | u | vary 12:4 16:15 |
|---|---|---|---|

**term** 3:3 11:18
  21:16
**terms** 12:7 17:1
**tethered** 17:24
  18:2,4 19:20
**thank** 2:4,5
  9:24 13:12
  25:15,16,16
  28:20 29:12,13
  29:14,15,16
**thanks** 2:5
**theoretically**
  12:8
**theory** 12:3
**thing** 4:7 15:25
  15:25
**things** 2:18 5:5
**think** 14:13
  16:24 17:13
  19:18,19 20:2
  20:3 21:12
  22:10 23:1,22
  23:25 24:1,4
  25:12
**thirsty** 2:4
**thought** 10:11
  11:9 19:6
  22:14 24:13
**three** 10:16
**throwing** 29:4
**tie** 4:23
**tied** 3:22,24 4:2
  6:7 7:20 18:17
**time** 7:2 8:7
  14:22 19:1,10

**today** 2:5
**told** 10:17
**toll** 21:18
**total** 11:2
**tough** 14:22
**track** 16:3
**traders** 4:4
**train** 29:10
**transcriber**
  30:1
**transcript** 30:3
  30:5
**tremendous**
  15:2
**trial** 16:14
  24:20
**trick** 7:11
**true** 6:12 7:23
  30:5
**truth** 12:15
**try** 16:9
**trying** 4:23
  9:21
**tune** 9:19
**two** 8:17 10:16
  13:11 14:18
  22:20 25:17
  26:20 29:3
**twombly** 16:25
  17:14,14 19:8
  19:20 20:3,16
  26:14 29:1,3,8

**u**

**uh** 16:18
**ultimate** 4:7
**under** 19:6,19
  21:16 25:12
  28:3 29:8
**underlying**
  4:12 7:21
**understand**
  12:2 17:2
  23:16 28:25
  29:7
**understanding**
  14:22
**unjust** 8:15
**unrelated**
  15:14
**upheld** 28:14
**upward** 21:2
**use** 6:3 12:6
  19:9 20:17
**utility** 7:18 8:3
  21:2 27:23
  28:1

**v**

**v** 1:4
**value** 15:3
**variable** 2:22
  13:21 27:22
  28:7
**variation** 21:2
  21:3
**varies** 23:1
**various** 9:5

**vary** 12:4 16:15
  16:21,23 23:3
  23:23 24:5,6
**versus** 2:3
**viable** 8:8
**view** 23:14
**viridian** 22:9
  27:5,18
**vortex** 16:12

**w**

**want** 7:3 10:15
  17:10 22:20
  28:24
**water** 2:4
**way** 6:8 20:24
  22:24,25 28:6
**we've** 13:8
  26:14,14
**weeks** 29:3
**went** 16:17
**wholesale** 3:5
  3:10 4:5,6 6:13
  6:15 7:23 8:1
  9:9,14 11:1,23
  11:25 12:5,13
  12:15,15,20
  15:2,16 16:16
  16:22 17:6,21
  18:11 19:10,14
  19:14,16 22:23
  23:1,23 24:5
  26:5,9,15,17,18
  26:21,22,25
**wholesaler**
  6:14

Veritext Legal Solutions
346-293-7000

**[wild - york's]**

**wild**   21:2
**win**   15:8 16:19
**withdraw**
   22:15
**wondering**
   24:9
**word**   17:21
   18:4 19:9
**words**   18:18
   19:20
**writeup**   15:2
**writing**   21:17
**wrong**   5:22
   19:24 21:9

**x**

**xoom**   1:4 2:3
   3:11 6:6,13,25
   9:6,8,10,13
   13:13 14:5
**xoom's**   2:23 9:6
   10:14 17:9

**y**

**yeah**   14:13
   17:2 19:25
   20:2,13 23:18
   26:1
**year**   28:13
**york**   5:12 9:19
   9:22 28:13
**york's**   9:14

Page 11