**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated

Plaintiff,

v.

XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,

Defendants.

Case No.: 18 Civ. 2949 (ARR) (JAM)

---

**PLAINTIFF SUSANNA MIRKIN AND THE CERTIFIED CLASS'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DAVID COLEMAN**

---

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
Ethan D. Roman
Steven L. Wittels
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com
slw@wittelslaw.com

**SCHLAM STONE & DOLAN LLP**
Richard Dolan
Bradley D. Simon
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

**KHEYFITS BELENKY LLP**
Andrey Belenky
1140 AVENUE OF THE AMERICAS, 9TH FLOOR
NEW YORK, NEW YORK 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

Dated:   July 1, 2024

**TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................. 1

**ARGUMENT** ........................................................................................................................ 3

    I.    MR. COLEMAN'S TESTIMONY IS PREMISED ON A REJECTION OF THE
           COURT'S CONSTRUCTION OF THE GOVERNING CONTRACT.............................. 3

          A.    The Contract Required Variable Rates to Be Determined Solely by Actual
               and Estimated Supply Costs ....................................................................... 4

          B.    XOOM Did Not Have Discretion in Setting Its Margins ........................... 6

    II.   MR. COLEMAN'S TESTIMONY ABOUT DIFFERENCES BETWEEN
           NATURAL GAS AND ELECTRIC SERVICE IS IRRELEVANT AND
           PREJUDICIAL............................................................................................... 8

    III.  MR. COLEMAN'S TESTIMONY ABOUT MITIGATION IS IRRELEVANT
           AND PREJUDICIAL...................................................................................... 9

    IV.  PLAINTIFF IS ENTITLED TO OFFER THE ADMISSIONS IN COLEMAN'S
           REPORT AND DEPOSITION TESTIMONY AGAINST XOOM AT TRIAL............... 10

**CONCLUSION** ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Clerveaux v. E. Ramapo Cent. Sch. Dist.*,
  984 F.3d 213 (2d Cir. 2021).................................................................................................. 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)....................................................................................................... 1, 6

*Hygh v. Jacobs*,
  961 F.2d 359 (2d Cir. 1992)................................................................................................ 10

*Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*,
  645 F. Supp. 3d 95 (E.D.N.Y. 2022) .................................................................................. 8

*New York v. United States Dep't of Com.*,
  351 8 F. Supp. 3d 502 (S.D.N.Y. 2019)............................................................................. 6

*Veeco Inst. v. SGL Carbon*,
  No. 17 Civ. 2217 (PKC), 2017 WL 8676438 (E.D.N.Y. Dec. 26, 2017) ................................ 6

**Rules**

Fed. R. Civ. P. 32 ............................................................................................................ 11

Fed. R. Evid. 403 ............................................................................................................. 8

Fed. R. Evid. 702 ...................................................................................................... 1, 7, 10

Fed. R. Evid. 801 ............................................................................................................. 10

Plaintiff and the Class respectfully submit this reply brief in further support of their motion to exclude the testimony of David Coleman, the expert retained by Defendants XOOM Energy, LLC and XOOM Energy New York, LLC ("Defendants" or "XOOM").

## INTRODUCTION

Plaintiff moved to exclude Mr. Coleman's report and proposed testimony because they are based on (i) a correlation analysis intended to show that XOOM's variable rates fluctuated more or less in tandem with its supply costs; and (ii) the premise that XOOM's contract with Plaintiff did not impose any cap or limitations on the margin XOOM could charge. In her initial motion papers, Plaintiff explained that the Court's binding contract construction in its summary judgment ruling renders Mr. Coleman's correlation analysis and his views on an allowable margin irrelevant and misleading. Throughout its opposition to this motion, XOOM repeatedly claims that Plaintiff misreads the Court's decision, just as Plaintiff states that Mr. Coleman's proposed testimony contradicts the Court's prior ruling. Thus, the central disagreement between the parties on this motion turns almost entirely on the correct interpretation of the Court's construction of the contract in its prior rulings. Critically, XOOM never contends in its opposition that, if Plaintiff's understanding of the Court's prior rulings construing the contract is correct, Mr. Coleman's testimony nevertheless passes muster under Rule 702 and basic *Daubert* principles. Accordingly, if the Court agrees with Plaintiff's interpretation of the Court's Orders, there are no grounds to admit the report or testimony of Mr. Coleman, and XOOM provides none.

Plaintiff believes the Court meant what it said when it held that the relevant contract required XOOM's rates to be "determined solely" by its supply costs "and only those costs," MSJ Order at 12, 14. In addition to recapturing its supply costs, XOOM was permitted to add a margin that was fixed, proportionate to its costs, and reasonable. Mr. Coleman's proposed testimony is

1

premised on his view that the Court's construction of the contract permitted XOOM to charge rates that were merely "correlated" or "associated" with its supply costs, to which XOOM could add whatever margin it deemed appropriate in light of XOOM's competitive pressures and profit strategies.[1]

But mere correlation between supply costs and rates has no probative value in determining XOOM's compliance with the contract. The Court ruled that rates must be determined solely by supply costs plus a fixed and reasonable margin. Mr. Coleman's correlation analysis has no bearing on (1) whether rates were determined solely by supply costs, or (2) whether XOOM's proportionate margin was fixed and reasonable. Put differently, if XOOM consistently breached the contract by considering non-supply costs in addition to supply costs when setting rates—as in fact it did—Mr. Coleman would still be able to suggest some degree of correlation between costs and rates. And conversely, even if XOOM actually did charge rates based solely on its supply costs, a correlation analysis would not show whether XOOM's margin was fixed and reasonable. In that scenario, a changing margin would not eliminate the correlation between supply costs and rates: whether XOOM's variable rates were two, five, or ten times XOOM's actual and estimated supply costs, Mr. Coleman's analysis would nevertheless show correlation. Indeed, if XOOM's spin on the Court's contract construction were true, any separate analysis of XOOM's margin would become completely meaningless. Thus, the existence of a correlation is not probative of

---

[1] XOOM has been consistent in its litigation strategy of ignoring the Court's orders. In Plaintiff's MIL No. 5, Plaintiff seeks to preclude XOOM from offering evidence and argument that XOOM complied with the contract because it subjectively considered supply costs. The Court rejected this argument at summary judgment, yet XOOM intends to reargue it to the jury. For the reasons described in that MIL, XOOM's mere consideration of supply costs is not sufficient under the contract. Likewise, rates that are merely correlated with supply costs are not sufficient. Because Mr. Coleman's entire analysis is premised on the false notion that XOOM could comply with the contract merely by having its rates correlate to its costs, the Court should exclude the report and his testimony as irrelevant and misleading.

2

(i) whether XOOM rates were determined solely by supply costs, or (ii) whether XOOM's margin was fixed and reasonable, and it should be excluded.[2]

Mr. Coleman's correlation analysis is diametrically at odds with the Court's construction of XOOM's contract because it implies that XOOM could comply with the contract (i) even if it considered non-supply costs in setting rates, and (ii) no matter how high or how varying its margins were.  Neither of those impermissible pricing practices would defeat the correlation between supply costs and rates but each would contradict the rulings by this Court and the Second Circuit that the contract did not grant XOOM any discretion in pricing.  Here, as elsewhere throughout XOOM's pre-trial briefing, the fundamental difference between the parties is whether XOOM is free to recast the Court's prior rulings on summary judgment and at class certification in such a way as to make them effectively meaningless.  The Court should reject XOOM's efforts and grant Plaintiff's motion in full.

## ARGUMENT

### I.    MR. COLEMAN'S TESTIMONY IS PREMISED ON A REJECTION OF THE COURT'S CONSTRUCTION OF THE GOVERNING CONTRACT
*(Responding to Defs.' Opp'n at 6–10, 13–15)*

In trying to justify Mr. Coleman's correlation analysis, XOOM resorts to contract interpretation arguments the Court already rejected.  According to XOOM, Mr. Coleman "compared changes in XOOM's variable prices to corresponding changes in supply costs," "analyzed XOOM's variable prices in comparison to its reported supply costs," and concluded that

---

[2] XOOM also contends that there was a near-perfect correlation between supply costs and rates.  Not so. Mr. Coleman's correlation coefficient—the number expressing how strongly correlated variables are— ranges between 47% and 72% (with 100% being a perfect correlation).  ECF 133-29, Expert Rebuttal Report of Derya Eryilmaz and Seabron Adamson, ¶ 9.  These "are not high correlation coefficients." *Id.* ¶ 10. Indeed, rates and supply costs did not always move in tandem.  For example, in March 2018, XOOM's residential electricity rate in the Niagara Mohawk region increased from \$0.0999/kWh to \$0.1099/kWh, even when its Total Cost was nearly cut in half from \$0.792/kWh to \$0.430/kWh. *Id.*

"the probability that [Plaintiff's variable rates] did not 'rise and fall' with XOOM's supply costs . . . is less that 1-in-400, or only about .24%." Defs.' Br. at 1–3.  This analysis does not take account of (i) whether XOOM set rates based on factors other than supply costs, or (ii) whether XOOM charged a permissible margin.   Instead, Mr. Coleman's analysis assumes that mere correlation of rates and supply costs is sufficient under the contract, no matter whether XOOM considered factors other than supply costs in setting rates or whether it charged impermissible margins.  The Court has been clear on both points.  The contract did not permit XOOM to consider factors other than supply costs in setting rates.  *See* Decert. Denial Order at 4 ("[T]he central dispute [is] whether XOOM indeed considered factors beyond its actual and estimated supply costs in setting variable rates[.]"); *see also* MSJ Order at 14 ("I find that the contract required the variation in the variable rates to be determined solely by XOOM's actual and estimated supply costs.").  And the Court was equally clear that the only component XOOM was allowed to add to its supply costs was a fixed, proportionate, and reasonable margin.  *See* MSJ Order at 14 (rejecting XOOM's argument that the contract "allow[ed] unbounded discretion" in setting margins); Decert. Denial Order at 13 (same).

## A. The Contract Required Variable Rates to Be Determined Solely by Actual and Estimated Supply Costs

When the Court ruled that XOOM's rate must be "determined" by its supply costs, and only those supply costs, the Court flatly rejected the notion that XOOM could consider factors other than supply costs.  In reaching that contract construction, the Court expressly resolved the vagueness in the contract's use of the phrase "based on."  Yet that language remains XOOM's predicate for arguing that the contract permitted it unbounded discretion in its pricing decisions so long as it "considered" its supply costs along the way.  Because the contract required XOOM's rates to be determined by its supply costs "and only those costs," nothing in the contract permitted

XOOM to augment those costs at will.  And the Court was especially clear that mere consideration of supply costs was insufficient in setting rates.  *See* MSJ Order at 15 ("XOOM's arguments and evidence certainly show that it considered its supply costs when calculating the Mirkins' monthly rates.  And if all XOOM had to do under the contract was consider and incorporate its supply costs into the final rate, it would likely prevail.  But under the controlling reading of the agreement, XOOM must show that its rates were determined by its actual and estimated supply costs. XOOM has not done so.").  Yet XOOM repeats the same legal arguments the Court has long since rejected.

Because the issue for the jury is whether XOOM's variable rates were "determined solely by XOOM's estimated and actual supply costs – and only those costs," MSJ Order at 12, Mr. Coleman's proposed testimony that XOOM's rates fluctuated more or less in tandem with its supply costs is irrelevant.  As the Court noted, Mr. Coleman's "statistical correlation seems to prove at most that XOOM incorporated its internal costs into the rate." *Id.* at 17.  But a showing that XOOM "incorporated" those costs is not what the contract required.

Defendants' fallback argument that Mr. Coleman's correlation analysis is nevertheless admissible if it "addresses some contractual rate-setting components and not others," Defs.' Br at 7, is equally meritless.   According to XOOM, Mr. Coleman's testimony "corroborates unquestionably relevant witness testimony about the association between XOOM's supply costs and its variable rates." *Id.* at 8.  But nothing in the contract turns on any "association" between XOOM's costs and rates.  Here as elsewhere, XOOM argues that its rates were "associated" with its costs, and that this alleged "association" is relevant to showing that its rates were "based on" its costs.  But the jury will need to conclude whether XOOM's rates were "determined solely by XOOM's actual and estimated supply costs – and only those costs."  MSJ Order at 12.  No part of XOOM's syllogism works, and all of it is directly contrary to the Court's contract construction.

In other words, it is not as though Mr. Coleman's testimony is helpful for the jury to determine some inputs of a proper rate-setting algorithm.  Rather, Mr. Coleman's testimony is irrelevant because it supports an entirely different algorithm—one expressly rejected by the Court.[3]

Even worse than its obvious irrelevance, Mr. Coleman's proposed testimony is plainly intended to mislead the jury by suggesting to them that any rate in proportion to or "associated with" XOOM's supply costs and which remained more or less consistent with those costs over time satisfied the contract's requirements.  Consistent with its litigation strategy, XOOM hopes the jury will come to its own conclusion of law regarding contract interpretation because XOOM is dissatisfied with the Court's construction.

### B.  XOOM Did Not Have Discretion in Setting Its Margins

XOOM makes no substantive response to Plaintiff's showing that Mr. Coleman's proposed testimony about XOOM's margins is irrelevant.  Defs.' Br. at 4.  Mr. Coleman's proposed testimony is based on his view that XOOM was under no restrictions as to "the gross margin it could include in its" variable rates.  Indeed, XOOM goes so far as to claim that "the Court *agreed* with Coleman" on that point because the contract was "silent as to the margin."  Defs.' Br. at 9

---

[3] None of the three cases XOOM cites in support of its argument hold otherwise.  To begin with, two of the cases do not involve motions to exclude.  *See Veeco Inst. v. SGL Carbon*, No. 17 Civ. 2217 (PKC), 2017 WL 8676438, at *1 (E.D.N.Y. Dec. 26, 2017) (ruling on a motion to stay pending appeal); *New York v. U.S. Dep't of Com.*, 351 8 F. Supp. 3d 502, 516 (S.D.N.Y. 2019) (findings of fact and conclusions of law following bench trial).  Moreover, all three are inapposite because they concern the relationship between causation and correlation in entirely different contexts.  *See Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 239 (2d Cir. 2021) (finding correlation analysis in conjunction with other evidence of causation was probative of subjective intentions in racial discrimination case); *Veeco Inst.*, 2017 WL 8676438, at *2 (finding that correlation of market share by time was "one factor in assessing the causal nexus" of harm caused by patent infringement); *New York v. U.S. Dep't of Com.*, 351 8 F. Supp. 3d at 591 (explaining, in the context of alleged discriminatory practices in census design, that correlation alone cannot establish causation).  But the question of correlation versus causation is not the issue here.  Instead, the issue here is whether a correlation analysis has any probative value or passes muster under *Daubert* in light of the Court's express ruling that correlation is not sufficient to establish that XOOM complied with the contract.  Because the Court ruled that the central issue is *not* whether XOOM's supply costs and rates were correlated, such correlation analysis is irrelevant and risks misleading the jury.

(quoting MSJ Order at 14). What XOOM leaves out is what came after the Court observed that the contract was silent as to the margin—the Court's construction that any margin must be fixed and "remain proportionate" to XOOM's costs and must be "reasonable." MSJ Order at 12–13; Class Order at 3, 14. Of course, the Court's discussion of the allowable margin was premised on the underlying express provision that any rate must be "determined solely" by XOOM's costs.

XOOM's response that Mr. Coleman proposes to testify only that "XOOM's margin was not capped *at any particular level*," Defs.' Br. at 10 (emphasis added), adds nothing. The test under the Court's construction is that XOOM's variable rate must have been "determined solely by XOOM's actual and estimated supply costs – and only those costs," while the margin must be fixed, proportionate to XOOM's costs, and reasonable. MSJ Order at 12. Mr. Coleman rejects that entire framework, and instead proposes to go off in a completely different direction by discussing what XOOM "considered," how its resulting rates were "associated with" and "proportionate" to XOOM's costs, given XOOM's discretion to set margins as it sees fit. Mr. Coleman's suggestion that XOOM had discretion in setting its margins is wrong and irrelevant.

Likewise, Mr. Coleman's proposal to use margins supposedly charged by companies in the Dow Jones Industrial Average, in circumstances where those companies were not subject to pricing constraints remotely comparable to those in XOOM's contract with Plaintiff, is patently irrelevant. XOOM's answer that "the critical fact" here is that "the DJIA analysis is offered in rebuttal" is a wholesale invention unsupported by Rule 702 or any judicial decision applying it, which explains why XOOM cites none. Rule 702 simply does not draw any distinction between the requirements for an acceptable expert opinion when offered at trial for rebuttal purposes versus any other purpose at trial. Quite the opposite: "It remains incumbent upon [the proponent] to demonstrate that the testimony of any expert, affirmative or rebuttal, complies with Rule 702."

*Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*, 645 F. Supp. 3d 95, 110 (E.D.N.Y. 2022). XOOM cannot attack the "comparators" used by Plaintiff with an obviously irrelevant analysis of margin rates charged by the DJIA companies operating in different industries without any contractual limitations on their pricing decisions comparable to those applicable to XOOM here.[4]

XOOM also claims that its misleading graphics are admissible because Plaintiff can correct the confusion they cause on cross examination. But this ignores Rule 403, under which these graphs should be excluded because they artificially make XOOM's rates appear closer to its supply costs than they are. It also ignores Plaintiff's demonstration of the feasibility of including accurate graphical representations, *see* Br. at 13–14, which shows that the only possible reason for designing the graph in the way Mr. Coleman did is to mislead the jury into thinking that the rates were closer to supply costs than they actually were. Tellingly, XOOM fails to substantively address the issue or point to a permissible reason for designing the graphs in this misleading way.

For the reasons discussed in Plaintiff's opening brief, *see* Br. at 12–17, Mr. Coleman's report and anticipated testimony are not relevant to the issues before the jury. XOOM does not dispute the irrelevance of Mr. Coleman's report and anticipated testimony under Plaintiff's understanding of the Court's Orders. Thus, if the Court concurs with Plaintiff's interpretation of the Court's Orders, it should preclude XOOM from offering Mr. Coleman's report or testimony.

## II. MR. COLEMAN'S TESTIMONY ABOUT DIFFERENCES BETWEEN NATURAL GAS AND ELECTRIC SERVICE IS IRRELEVANT AND PREJUDICIAL
*(Responding to Defs.' Opp'n at 10–11)*

XOOM defends Mr. Coleman's proposed testimony about supposed differences relating to the prices XOOM charged for natural gas and electrical service with the claim that "among these

---

[4] Moreover, such evidence should be excluded under Rule 403 for its likelihood to confuse the issues or waste time. If XOOM were to offer the margins of the DJIA companies, Plaintiff would need to have mini-trials on the propriety of the margins for each company within their prospective industries.

differences is the way in which energy suppliers purchase wholesale electricity and natural gas," Defs.' Br. at 10.  Even more important, says XOOM, is that Mr. Coleman's testimony is relevant because it will address "***what*** factors were considered" by XOOM in its rate-setting process and "***how*** to ultimately determine variable rates."  Defs.' Br. at 10.  But it is already settled that in setting its variable rate, the only "factor" XOOM was permitted to "consider" was its supply costs—"and only those costs," MSJ Order at 12; and "how" to consider them was by having them "determine" the variable rate before adding to them a fixed, proportionate and reasonable margin. *Id.*   In other words, the rate-setting algorithm was objective, and Mr. Coleman's subjective opinions about what costs should be included or how rates should be set are irrelevant.  Moreover, the Court has already determined that the rate-setting process was not different for electricity and natural gas customers.  *See* Decert. Denial Order at 5 ("I rejected XOOM's argument that plaintiff was atypical because she received only electric service, noting that the form contracts for electric and natural gas customers were identical and that XOOM did not claim to have used a different rate-setting process for electric and natural gas customers.").

## III.    MR. COLEMAN'S TESTIMONY ABOUT MITIGATION IS IRRELEVANT AND PREJUDICIAL
*(Responding to Defs.' Opp'n at 11–13)*

Mr. Coleman's proposed testimony about an imagined mitigation defense is similarly irrelevant.[5]  First, with respect to his view that consumers "could shop for a better rate and switch energy providers at any time," Defs.' Br. at 11, even if such a factual argument were permissible at trial, XOOM would not be permitted to present it as a matter of expertise because it is not informed by any expertise Mr. Coleman claims to possess.  Mr. Coleman's background does not include consumer behavior or any other subject that might conceivably bear on the issue of whether

---

[5] Indeed, the entire subject is irrelevant for the reasons explained in Plaintiff's MIL No. 12 seeking to dismiss XOOM's mitigation defense.

XOOM's customers could be charged with sufficient information to understand whether they were being overcharged.  Accordingly, Mr. Coleman's proposed testimony on the subject is not the product of any "scientific, technical or other specialized knowledge" that might "help [the jury] understand the evidence," within the meaning of Rule 702.

But more fundamentally, Mr. Coleman's proposed testimony is a legal opinion.  The issue is not whether Plaintiff or other Class Members could, in some theoretical sense, have switched providers—indeed, no expertise is needed for the jury to understand whether this was possible. Instead, Mr. Coleman's proposed testimony is based on the notion that Plaintiff and other Class Members were under some legal duty to switch providers to claim damages in this case.  That is a legal opinion about imagined legal duties, which is both wrong (for the reasons stated in Plaintiff's MIL No. 12), and an impermissible subject for expert testimony.  *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.").  Contrary to XOOM's claim, Mr. Coleman's proposed testimony about "retail energy deregulation in New York" compounds that problem rather than removing it.  Whatever deregulation may entail, Mr. Coleman cannot testify about imagined legal duties or obligations incumbent upon consumers because of deregulation, and even less, whether any of that supports a mitigation defense.[6]

## IV.   PLAINTIFF IS ENTITLED TO OFFER THE ADMISSIONS IN COLEMAN'S REPORT AND DEPOSITION TESTIMONY AGAINST XOOM AT TRIAL
*(Responding to Defs.' Opp'n at 16–19)*

Mr. Coleman made many factual admissions in his report and those admissions are now chargeable against XOOM under Rule 801.  Accordingly, Plaintiff intends to offer them as part of her case-in-chief.  XOOM contends that, regardless of whether Mr. Coleman's statements are

---

[6] XOOM also fails to respond to Plaintiff's point that Mr. Coleman's opening report contained factually incorrect information about the regulatory landscape for ESCOs in New York.  *See* Br. at 18 n.6.

admissions under Rule 801(d)(2)(C), Rule 32 precludes the offer of them as admissions because Mr. Coleman will attend the trial and thus be "available."  Plaintiff has already answered that argument in Plaintiff's MIL No. 9 as well as her opposition to XOOM's MIL No. 14.  XOOM's argument in opposition to Plaintiff's use at trial of the admissions by Mr. Coleman in his report and deposition testimony merely repeats its argument under Rule 32 that is already fully answered in briefing in support of Plaintiff's MIL No. 9 and in opposition to Defendants' MIL No. 14.

In addition, in its opposition here, XOOM quibbles with various specific instances of Mr. Coleman's admissions.  But each of those objections can be addressed at trial.  Assuming XOOM calls Mr. Coleman during its case-in-chief, he will have an opportunity to explain to the jury why he no longer supports what he said earlier in his report or deposition testimony.

## CONCLUSION

For the reasons stated herein, Plaintiff requests that the Court grant Plaintiff's motion *in limine* in full.

Dated: July 1, 2024

                                               **WITTELS MCINTURFF PALIKOVIC**

                                               /s/ J. Burkett McInturff

                                               J. Burkett McInturff
Ethan D. Roman
Steven L. Wittels
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com
slw@wittelslaw.com

*Class Counsel for Plaintiff and the Class*

Richard Dolan
Bradley D. Simon
**SCHLAM STONE & DOLAN LLP**
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

Andrey Belenky
**KHEYFITS BELENKY LLP**
1140 AVENUE OF THE AMERICAS, 9TH FLOOR
NEW YORK, NY 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

*Co-Counsel for Plaintiff and the Class*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2024, the foregoing was served via email on all counsel of

record.

By:     /s/ J. Burkett McInturff
              J. Burkett McInturff