Reply
Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSANNA MIRKIN AND BORIS MIRKIN, Individually and on Behalf of All Others Similarly Situated,<br><br><br>                                            Plaintiffs,<br><br>                      v.<br><br>XOOM ENERGY, LLC, and XOOM ENERGY NEW YORK, LLC,<br><br>                                            Defendants. | Case No: 18 Civ. 2949 (ARR) (RER) |

**PLAINTIFFS' FIRST REQUESTS FOR THE PRODUCTION
OF DOCUMENTS TO ALL DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiffs Susanna and Boris Mirkin ("Plaintiffs") hereby request that Xoom Energy, LLC and Xoom Energy New York, LLC ("Xoom" or "Defendants") produce the following documents and things within thirty (30) days from the date of service of this Plaintiffs' First Requests for the Production of Documents at the offices of Wittels Law, P.C., 18 Half Mile Road, Armonk, New York, 10504.

**PLEASE TAKE NOTICE THAT OBJECTIONS WILL BE MADE AT THE TIME OF TRIAL IF DEFENDANTS ATTEMPT TO INTRODUCE EVIDENCE SOUGHT BY PLAINTIFFS' DOCUMENT REQUESTS WHICH DEFENDANTS HAVE NOT PROVIDED IN RESPONSE TO PLAINTIFFS' REQUESTS.**

**Documents produced in response to these Documents Requests must be organized and labeled to correspond with each Document Request.**

## DEFINITIONS

Plaintiffs' First Requests for the Production of Documents (these "Document Requests") incorporates by reference and uses the definitions set forth in Rule 34 of the Federal Rules of Civil Procedure and the Uniform Definitions for all Discovery Requests set forth in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

"**Class Member**" means all individuals who are members of the proposed class(es) defined in the operative complaint.

"**communication**" means the transmission of information, in the form of facts, ideas, inquiries or otherwise.

"**customers**" or "**consumers**" refers to persons who purchased energy from you.

"**document**," in addition to the definitions provided in Local Rule 26.3, shall have the broadest meaning ascribed to it by Rule 34 of the Federal Rules of Civil Procedure, including but not limited to all writings in any form, notes, memoranda, manuals, reports, records, communications, correspondence, drawings, graphs, charts, photographs, phone records, spreadsheet files, including but not limited to Microsoft Excel files, flat-file database files, geodatabase files, geographic information systems ("GIS"), and relational database files, data compilations of whatever nature (including those from which information can be obtained or translated if necessary), and audio tapes. The definition of "document" also includes information stored in or retrievable from equipment or media that includes:

2

i.   Desktop personal computers or workstations; minicomputers, or mainframes used as file servers, application servers, or electronic mail servers; other minicomputers and mainframes; laptop, notebook, handheld, and other portable computers, including personal digital assistants, BlackBerrys, electronic appointment books and cell phones, whether assigned to individuals or in pools available for shared use; and home computers and cell phones used for work-related purposes;

ii.  Backup disks and tapes, archival disks and tapes, and other forms of off-line storage, whether stored on-site with the computers used to generate them or off-site in another computer facility or by a third party;

iii. Electronic mail messages, even if available only on backup or archive disks or tapes; and

iv.  Text messages, SMS messages, Tweets, Facebook messages, chat messages, Facebook wall posts, Facebook chat messages, messages sent and received using an Instant Messaging software, Skype conversations, email-based or web-based chat messaging, including but not limited to Google Chat, Snapchat, WhatsApp, and telephone records.

The definition of "document" also includes all originals (as well as all versions, variants, reports, exported files or subsets thereof) of any nature whatsoever and all non-identical copies thereof, when different from the originals.

"**energy**" refers to natural gas and/or electricity.

"**identify**" when referring to a person means, unless otherwise specified, to give, to the extent known, the person's full name, present or last known address, current or last

known telephone number, current or last known email address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

"**identify**" when referring to documents means, unless otherwise specified, to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s).

"**person**" means and refers to any natural person or any business, legal or governmental entity, or association.

"**Plaintiffs**" means Susanna and Boris Mirkin and any other individual who joins this action as a representative Plaintiff.

"**possession**" when used in relation to the term "document(s)" means documents that are in your possession, custody or control and/or your agents or attorneys, including attorneys representing you in other actions.

"**prepare**" means and refers to writing, creating, proposing, drafting, editing, ghostwriting, advance knowledge, revising, or advising as to the contents or drafting of a document.

"**provide**" means to provide, to procure, to render, to furnish, to make available, to get, or to supply what is desired or needed.

"**related to**," "**relating to**," "**in relation to**," "**regarding**," and "**concerning**" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, describing, constituting, supporting,

4

contradicting or having any logical or factual connection with the matter identified, in whole or in part.

"**utility**" refers to companies that distribute energy to your customers such as, for example, Consolidated Edison and National Grid in New York.

"**you**," "**your**," "**Defendants**," "**Company**," and "**Xoom**" refers to the entities named in this action and each and every one of their predecessors or successors in interest, local, regional, national and/or executive offices, divisions, or parents, affiliates (foreign and domestic), segments, or divisions thereof, any of their subsidiaries, special purpose entities, divisions or affiliates, and all of their present and former officers, directors, employees, consultants, agents, attorneys, accountants, advisors, independent contractors, and all other persons acting or purporting to act on your behalf.

## <u>INSTRUCTIONS</u>

The following instructions shall govern your responses and production of documents:

1.     Except where expressly stated, the relevant time period for these Document Requests is January 1, 2011 through the present and continuing to trial.

2.     These Document Requests are continuing.  If, after producing documents, you obtain or become aware of any further documents responsive to these Document Requests, you must produce such additional documents as required by Fed. R. Civ. P. 26(e).

3.     In response to these Document Requests you are required to produce all documents in your possession, custody, or control, including documents in the possession

of, or available or accessible to, you or any of your agents, attorneys, employees, divisions, or representatives within (30) days of receipt of these Document Requests.

4.      Documents shall be produced in their entirety with all enclosures and attachments.  Documents attached to each other, including but not limited to by staple, clip, tape, email attachment, or "Post-It" note, should not be separated.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the documents.

5.      If you object to a portion or an aspect of a Document Request, you are required to state the grounds for your objection with specificity within 30 days of these Document Requests and to respond as to any portions of the Document Request concerning which you have not propounded such objection.  Further, Fed. R. Civ. P. 34, as amended on December 15, 2015, prohibits boilerplate objections to discovery requests and requires that objections must "state with specificity the grounds for objecting, including the reasons" and "whether any responsive materials are being withheld."  The Committee notes on Rule 34 further specify that "[a]n objection may state that a request is overbroad, but . . . should state the scope that is not overbroad."  The Committee also noted that the December 15, 2015 amendments to Rule 34 are "aimed at reducing the potential to impose unreasonable burdens by objections to requests to produce."

6.      You shall produce any and all drafts and copies of each document responsive to any Document Request, and all copies of such documents that are not identical, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.

7.      In the event that any document called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that document is to be identified as completely as possible, including, without limitation, by a description containing the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the document, and identify its last known location and the reason it is no longer in existence.

8.      If any document cannot be produced in full, produce to the extent possible, specifying the reasons for the inability to produce the remainder.

9.      If any requested document was formerly in your possession, custody, and control but no longer is in your possession, custody, and control, state when and what disposition was made of the document, and what efforts, if any, you have made to obtain each such document in response hereto.  Further, if any such document is not in your possession, custody, or control but you know the identity of the entity or person currently with possession, custody, or control of such document, identify the entity or person who has the document, including the address and telephone number of the entity or person.

10.      If with respect to any Document Request there are no responsive documents, so state in writing.

11.      Responsive documents, including electronically stored information, shall be produced in accordance with the specifications attached hereto as Exhibit A.

12.      If any document, or portion thereof, is withheld because you claim that such information is protected under any privilege, work product doctrine, or any other privilege or doctrine, within 30 days of these Document Requests you are required to

provide a privilege log, specifying for each such document or withheld information: (i) the type of document, e.g., email with counsel or legal memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author of the document, (v) the addressees of the document, (vi) any other recipients, and, (vii) where not apparent, the relationship of the author, addressees, and recipients to each other.

13.     If, in answering these requests, you object to the production of any document requested on a ground other than any privilege, work product doctrine, or any other privilege or doctrine, identify the document with respect to which the objection is made by nature, date, title, current custodian, addressee(s), author(s) or sender(s), recipient(s), and length or pages, or other physical descriptions sufficient to permit accurate identification, a general description of its subject matter, and state the grounds for the objection.

14.     If you claim that a portion of a document is protected from disclosure for any reason, produce such document with redaction of only the portion claimed to be protected.  Any document produced in redacted form should clearly indicate on its face that it has been redacted.

15.     The following rules of construction apply to all Document Requests:

a.  Each of these Document Requests should be construed to exclude publicly disclosed and available court filings made in this action.

b.  The terms "any," "all," "each," and "every" should be understood in either their most or least inclusive sense as necessary to bring within the scope of the Document Requests all responses that might otherwise be construed to be outside of their scope.

c.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document Requests all responses that might otherwise be construed outside of their scope.

d.  The use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural.

e.  The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the document requests all responses that might otherwise be construed to be outside of their scope.

f.  Each paragraph and subparagraph herein should be construed independently and not by reference to any other paragraph or subparagraph of these requests for purposes of limitation.

16.  Defined terms may be capitalized or emphasized for convenience; the definitions herein apply whether or not the term is so capitalized or emphasized.

17.  Except where expressly stated, these Document Requests are not limited in any way by geography.

18.  Any request for "documents" also requests "communications" as the term "document" is defined herein to include *inter alia* "communications."

19.  Each request which seeks information relating in any way to communications from or within a business or corporate entity, is hereby designated to

demand and should be construed to include all communications by and between representatives, employees, or agents of the business or corporate entity.

20.      Each request should be responded to separately.  However, a document which is responsive to more than one request, may, if the relevant portion is marked or indexed, be produced and referred to in a later response.

21.      Pursuant to Fed. R. Civ. P. 34(b), all documents produced shall be segregated and identified by the request to which they are primarily responsive.  Where required by a particular subparagraph of these Document Requests, documents produced shall be further segregated by the subparagraph to which they are primarily responsive.

## DOCUMENT DEMANDS AND THINGS TO BE PRODUCED

**Documents and Communications Related to Plaintiffs**

1.      All documents related to Plaintiffs, including without limitation copies of all documents allegedly sent to or received by Plaintiffs and all communications related to Plaintiffs and/or this lawsuit.

**Customer Contracts**

2.      Exemplars of all contracts (including drafts) applicable to Class Members.

3.      Exemplars of all contracts applicable to Class Members that were acquired from other energy suppliers, if any.

**Documents and Communications with Third Parties**

4.      All documents concerning your energy rates, marketing, contracts, or sales practices from, with, or related to the Federal Energy Regulatory Commission or other federal authorities, state utility regulators or other state authorities, consumers' attorneys, competitors, consumer advocates, and trade groups.

5.      All documents produced in any regulatory matter, enforcement action, litigation, or arbitration related to Xoom's variable rate pricing practices.

6.      All documents concerning the way Xoom resolves disputes with its customers (including without limitation mandatory arbitration and bans on class actions) from, with, or related to the Federal Energy Regulatory Commission or other federal authorities, state utility regulators or other state authorities, consumers' attorneys, competitors, consumer advocates, and trade groups.

7.      All documents and communications concerning your energy rates, marketing, customers, contracts, or sales practices from, to, or related to journalists or news organizations.

8.      All documents and communications concerning any audits regarding your energy rates, marketing, customers, contracts, or sales practices.

**Energy Rate Documents and Communications**

9.      All strategies, methods, formulas or models related to your energy rates.

10.     Data or documents sufficient to identify Xoom's variable rates charged to Class Members, including rates sheets or other documents or data sufficient to identify all changes in those rates.

11.     All documents reflecting any reports, reviews, audits, studies, or other analyses relating to or analyzing Xoom's rates including without limitation Xoom's variable, introductory, fixed, or promotional rates.

12.     All data or documents concerning the rates other ESCOs or utilities charge for energy.

13.     All communications sent to or received from Xoom directors, officers, employees, and representatives concerning Xoom's methods, formulas, or models related to Xoom's variable, introductory, fixed, or promotional rates.

**Marketing Materials and Related Documents and Communications**

14.     All documents that identify or describe your policies, procedures, and strategies concerning your marketing or advertising of energy to consumers.

15.     Exemplars of all marketing materials directed at Class Members.

16.     Documents sufficient to identify the mailing, posting, circulation, or distribution dates for all marketing materials directed at Class Members.

17.     Exemplars of all pages on Xoom's website, including prior versions sufficient to show all changes to Xoom's website.

18.     Exemplars of all form documents produced for distribution to Class Members, including without limitation welcome letters, emails, enrollment forms, renewal letters, renewal notices, renewal envelopes, checklists, multiple meter forms, and disclosure materials.

19.     Exemplars of all scripts, telephone scripts, training materials, and any other documents used by Xoom in marketing to current or prospective customers.

20.     Exemplars of all scripts, telephone scripts, training materials, and any other documents used by Xoom in speaking to customers about its energy rates.

21.     All documents concerning Xoom's cessation of use of, or recall of, marketing materials, form documents, scripts, telephone scripts, training materials, and any other documents used to communicate with current or prospective customers.

22.     Exemplars of all third-party verifications of customer enrollments, including but not limited to versions of the texts or scripts used in such verifications.

**Customer Complaints**

23.     Documents sufficient to show which department, division, team, etc., at Xoom handles inquiries regarding your energy plans, rates, monthly bills, and changes from fixed, introductory, or promotional rates to a variable rate including refund requests, concerns, complaints, and/or cancellations.

24.     Exemplars of all manuals, memos, guidelines, directives, instructions, communications, emails, or other documents relating to how to handle complaints from customers, including without limitation:

      i.     who should handle customer complaints;

      ii.     what department, division, team, etc., at Xoom should handle customer complaints; and

      iii.     scripts or other outlines to follow when responding to customer complaints.

25.     All complaints, in whatever form (written or oral), received by Xoom from customers related to your business practices or rates, including without limitation recordings, transcriptions of phone calls of any such complaints, emails to Xoom, and customer service records.

26.     All documents related to consumers' response to Xoom's business practices or rates, including without limitation customer complaints, customer service databases, and documents and communications concerning the propriety, ethics, and/or legality of Xoom's business practices or rates.

Please note that this request includes without limitation: (i) all intra-company or inter-company communications; and (ii) communications with non-parties (e.g.,

consumers' attorneys, competitors, consumer advocates, trade groups, regulatory bodies, etc.).

27.     All complaints and/or reports of complaints received from or responding to any Xoom officer, director, manager, employee, representative, independent contractor, or consultant concerning Xoom's business practices or rates, including without limitation any response to such complaints.

28.     All communications concerning Xoom's business practices or rates received from or responding to a governmental or administrative entity or agency including without limitation the Federal Trade Commission, the Federal Energy Regulatory Commission, a state attorney general, a state utility regulator, law enforcement, or any other official body.

29.     All communications concerning Xoom's business practices or rates received from or responding to a Better Business Bureau(s), competitor, consumer group, or other private entity.

30.     Produce the pleadings and all other non-privileged documents in any individual or class action lawsuits or arbitrations that involve Xoom's business practices or rates, including any and all litigation or non-litigation documents and communications.

31.     Produce the transcripts of all testimony given by Xoom in matters that involve Xoom's business practices or rates, including in lawsuits, arbitrations, state or federal investigations, inquiries, or proceedings.

Please note this request includes testimony of any Xoom officer, director, manager, employee, representative, independent contractor, or consultant.

32.     Produce all documents produced by Xoom in any matters related to Xoom's business practices or rates, including in lawsuits, arbitrations, or regulatory, municipal, state, or federal investigations, inquiries, or proceedings.

14

**Refunds and/or Re-Rates**

33.     All communications from or to Xoom's customers who requested a refund and/or re-rate for partial or full amounts paid for Xoom's variable rate energy, including without limitation recordings, transcriptions, email correspondence, and letters.

34.     All documents tabulating, itemizing, recording, listing, summarizing and/or totaling the amount of money refunded or re-rated to customers who purchased your variable rate energy.

35.     Exemplars of all manuals, policies, guidelines, or other documents for issuing refunds and/or re-rates to customers who purchased your variable rate energy.

36.     All communications concerning Xoom's manuals, policies, guidelines, or other documents for issuing refunds and/or re-rates to customers who purchased your variable rate energy.

**Documents and Communications Related to Xoom's Supply Costs and Pricing**

37.     All documents concerning agreements for the purchase of energy for Xoom's customers including without limitation day-ahead and real-time agreements, agreements concerning capacity and ancillary services, virtual energy, and derivatives (including but not limited to virtual transactions, financial transmission rights, and forward reserves, etc.).

> Please note that this request includes all documents and communications concerning agreements you entered into for the purchase of energy including for hedging and/or investment purposes.

38.     All documents (including but not limited to invoices and bills) concerning amounts you paid for energy, including but not limited to amounts paid for day-ahead and real-time energy, capacity and/or ancillary services, virtual energy, and derivatives (including virtual transactions, financial transmission rights, forward reserves, etc.).

Please note that this request includes all documents and communications concerning amounts you paid for energy including for hedging and/or investment purposes.

39.     All documents concerning Xoom's hedging or investment methods, formulas, or models and the relationship thereof to energy sold to Xoom's customers.

40.     All documents concerning the volumes of energy you purchased on a periodic basis (daily, monthly, and annual), including the units purchased and the price paid per unit in each period.

41.     All documents concerning Xoom's unit costs and prices of energy, Xoom's estimates or determinations of its costs and prices, and Xoom's strategies, methods, formulas, and/or models related to its costs and prices, including but not limited to documents and communications concerning day-ahead and real-time energy, capacity and/or ancillary services, virtual energy, and energy derivatives (including virtual transactions, financial transmission rights, operating reserves, etc.).

Please note that this request includes all documents and communications concerning costs and prices of energy including for hedging and/or investment purposes.

42.     All documents concerning Xoom's costs for energy sold to customers, including without limitation monthly supply costs, hedging, and any other component of Xoom's cost of goods sold.

43.     All documents concerning Xoom's costs for renewable energy, including without limitation documents and communications related to Xoom's purchases of renewable energy certificates.

44.     All documents concerning any sales and marketing costs that affect or concern the rates charged to Xoom's customers.

45.     All documents concerning any general and administrative costs that affect or concern the rates charged to Xoom's customers.

46.     All documents concerning any operating costs that affect or concern the rates charged to Xoom's customers.

47.     All documents concerning any other costs that affect or concern the rates charged to Xoom's customers.

48.     All documents comparing Xoom's profits from sales to fixed, introductory, or promotional rate customers versus variable rate customers.

49.     All documents concerning the profitability of Xoom's sales to its variable rate customers.

50.     All documents concerning Xoom's expected and actual profit or income from the sale of energy.

**Documents and Communications Related to NRG's Acquisition of Xoom**

51.     All documents exchanged with NRG Energy related to Xoom's energy rates, marketing, contracts, customer complaints, or sales practices.

52.     Produce the contract and all related attachments for NRG Energy's acquisition of Xoom.

**Documents and Communications Related to Utilities**

53.     All communications with utilities concerning Xoom's business practices or rates.

54.     All Xoom contracts with utilities.

55.     All documents concerning complaints from Xoom customers to their utilities about Xoom's rates or business practices.

**Documents and Communications Related to Load**

56.     All documents concerning load profiles for Xoom's customers, either on an individual or aggregate basis (including customers on Xoom's fixed introductory, promotional, or variable rate), and/or any strategies, methods, formulas, or models related thereto.

**Documents and Communications Related to Xoom's Financial Strategies**

57.     All strategies, methods, formulas, or models concerning credit or financial risks related to the purchase or sale of energy.

**Corporate Structure**

58.     All corporate organization documents, including corporate organization charts, filings, phone directories, or other documents showing the relationship between Defendants and any of their parent, subsidiary, or affiliate companies or entities, including without limitation all departments and divisions.

59.     All organization charts, contact lists, phone lists, or other organizational documents containing any information about the officers, managers, employees, team(s), department(s), group(s) and division(s) involved in any facet of setting Xoom's energy rates, marketing, customer service, contracts, or sales practices, including all such revisions to the aforementioned documents.

60.     All documents that constitute or reflect the management structure of each Defendant and any affiliate companies or entities.

61.     All board and governing documents, including without limitation meeting minutes, board books, binders, pre-meeting documents, resolutions, and bylaws related to Xoom's energy rates, marketing, customer service, contracts, or sales practices.

62.     Documents sufficient to identify all Xoom directors, officers, or employees involved in setting variable energy rates.

63.     Documents sufficient to identify all Xoom directors, officers, or employees involved in consumer marketing or sales practices.

64.     Documents sufficient to identify all Xoom directors, officers, or employees involved in customer service.

**Record-Keeping Procedures and IT Documents**

65.     All policies or procedures concerning the retention and/or destruction of documents.

66.     All documents concerning Defendants' system schematics, network topology, system restart procedures, email retention policies, and each Defendant's disaster recovery plan.

67.     All documents concerning Defendants' information technology (IT) and information services (IS) or equivalent divisions or departments, including but not limited to any documents detailing each Defendant's IT structure, data locations ("data map") incident response teams, and data recovery units.

68.     All documents concerning the use of loose or removable media in workstations, computers, and networks.

69.     All documents concerning each Defendant's networks or groups of connected computers, including local area networks (LANs), wide area networks (WANs), storage area networks (SANs), peer-to-peer networks, integrated services digital networks, or VPNs.

70.     All documents concerning Defendants' email systems, including current, backed-up, or archived programs, accounts, unified messaging, server-based email, web-based email, outlook email, exchange servers, SQL servers, domain names, and addresses.

71.     All documents concerning corporate level file shares; i.e., where all documents including Word documents, Excel Spreadsheets, and PowerPoint, are stored.

72.     All documents concerning each Defendant's networks, including information exchange components such as, Ethernet, token-ring, or network interface cards.

73.     All documents concerning Defendants' billing mechanisms.

74.     All litigation hold documents, including the metadata of such litigation hold documents.

75.     All database data regarding your customers, including field trees for all databases.

**Corporate Documents**

76.     A copy of (1) each net worth or financial statement prepared by or on behalf of and Xoom at any time since January 1, 2011, including but not limited to any loan applications, credit applications, or refinancing applications; (2) Xoom's tax returns from January 1, 2011 to the present; (3) all appraisals conducted at any time since January 1, 2011 of all real property held in part or in full by Xoom; and (4) all account statements from January 1, 2011 to the present reflecting the account number and balance of accounts held by Xoom, including savings, checking, annuities, or mutual, stock, bond funds, or any other financial accounts.

77.     Xoom's books and records from January 1, 2011 to the present.

78.     All codes of business practices or corporate integrity statements.

79.     All employee handbooks, or other documents given to or made available to new employees or independent contractors.

80.     All documents, communications, or presentations to actual or prospective investors that contain information concerning Xoom's energy rates, marketing, customers, contracts, or sales practices.

**Statements/Experts/Defenses**

81.     All documents relating to or evidencing any written statements, affidavits, declarations, and/or responses to questionnaires or any other documents that you and/or your agents obtained from any persons with knowledge of any facts, claims, and/or allegations made in this matter, and any drafts of these documents.

82.     All settlement agreements or other document(s) resolving any claims brought against Xoom relating to its energy rates, marketing, customers, contracts, or sales practices.

83.     All documents relating to this matter received pursuant to any Freedom of Information Act request or subpoena *duces tecum* issued to any third parties.

84.     As to each person who will or may be called as an expert to give an opinion and testimony in the trial in this matter, provide all documents provided to such persons by your agents, attorneys, representatives, and/or other persons acting on your behalf.

85.     As to each person whom you will or may call as an expert to give an opinion and testimony in the trial of this matter, provide the following:

      i.        a complete and current version of such person's curriculum vitae, and a complete listing of every article, published or unpublished, authored, co-authored or edited by that person, in whole or in part;

      ii.       copies of all books, treatises, texts, articles, and all other materials relied upon by that person in rendering his or her opinion in this matter;

      iii.     all transcripts or recordings of that person's testimony at deposition or trial in a lawsuit, administrative proceeding, arbitration proceeding, or other judicial or quasi-judicial proceeding before any governmental agency, administrative agency or court, in which that person has testified as an expert for the past four years;

      iv.     copies of such person's speeches, presentations at seminars, meetings and conferences, and the like that refer or relate in any way to the subject about which that person is expected to testify in this case; and

      v.     all documents referring or relating to monies paid to such person or his or her designee, by you or by any agent, paralegal or attorney representing you, including, without limitation, bills, statements of services, invoices and checks.

86.    To the extent not otherwise produced in response to these Document Requests, produce any and all documents and communications relating to (1) this lawsuit, (2) the allegations and/or claims asserted in this lawsuit, (3) Plaintiffs and potential Class Members, and/or (4) any damages claimed in this lawsuit.

87.    All documents that you plan to introduce at the trial of this action.

88.    All documents which you believe support any and all denials of the allegations in the operative complaint.

89.    All documents which you believe support any affirmative defense in this action.

90.     Any and all documents not specifically requested in the foregoing Document Requests which you believe will support or in any way relate to your defenses in this action.

**Former Employees**

91.     For any former employee whose job involved or touched on any aspect of Xoom's rates, marketing, customer service, contracts, or sales practices in any way, including without limitation responding to customer concerns, designing, marketing or training materials, or developing financial strategies regarding Xoom's rates, produce documents sufficient to identify that former employee's (1) name, (2) last known contact information (including address, phone, mobile, and email, where available), and (3) titles held at Xoom.

**Agency and Veil Piercing Discovery**

92.     All documents relating to Xoom Energy New York, LLC's role in developing, implementing and/or modifying any marketing strategy directed at customers in New York.

93.     All documents relating to Xoom Energy New York, LLC's role in developing, implementing and/or modifying any energy rates of New York consumers.

94.     All documents related to any actions taken by, or at the direction of Xoom Energy New York, LLC concerning Defendants' marketing and promotion, enrollment, energy rates, benchmarks or other data or bases used to calculate Defendants' energy rates.

95.     All documents relating to the ownership, staff and operation of any Xoom call center, facility, office, or Defendants' executive offices, including representative samples of leases, deeds, tax returns, employment agreements, and employee policies.

96.     A copy of (1) each net worth or financial statement prepared by or on behalf of Xoom Energy New York, LLC at any time since January 1, 2011, including but not limited to any loan applications, credit applications, or refinancing applications; (2) Xoom Energy New York, LLC's tax returns from January 1, 2011 to the present; (3) all appraisals conducted at any time since January 1, 2011 of all real property held in part or in full by Xoom Energy New York, LLC; and (4) all account statements from January 1, 2011 to the present reflecting the account number and balance of accounts held by Xoom Energy New York, LLC, including savings, checking, annuities, or mutual, stock, bond funds, or any other financial accounts.

97.     All communications concerning Xoom Energy New York, LLC's finances, including without limitation communications regarding applications for financing, and financing agreements.

98.     Documents sufficient to identify all Xoom Energy New York, LLC's officers, directors, and employees and indicate the primary office location of those officers, directors, and employees and whether they serve as officers or directors of any other entity.

99.     All employee handbooks, or other documents given to or made available to Xoom Energy New York, LLC's new employees or independent contractors.

100.     All forms that new or existing employees or independent contractors must sign as a condition of work at Xoom Energy New York, LLC.

101.    All communications sent to or received from Xoom Energy New York, LLC's directors, officers, and employees concerning Xoom's variable, introductory, fixed, or promotional rates.

102.    All powers of attorney or similar written authorization executed by or on behalf of Xoom Energy New York, LLC granting authority to any other entity to act for, or on behalf of, it concerning the marketing and sale of residential gas and electricity in New York.

103.    All documents relating to each meeting of Xoom Energy New York, LLC board of directors or any of its committees, including minutes of each such meeting, notes taken in preparation for, at, or after each such meeting, written presentations prepared for or made at each such meeting, resolutions passed, and any other documents that discuss Xoom Energy New York, LLC's purpose, authority, functions, or activities.

104.    All corporate organization documents for Xoom Energy New York, LLC, including corporate organization charts, filings, phone directories, or other documents showing the relationship between Xoom Energy New York, LLC and any of its parent, subsidiary, or affiliate companies or entities, including without limitation all departments and divisions.

105.    All organization charts, contact lists, phone lists, or other organizational documents containing any information about Xoom Energy New York, LLC's officers, managers, employees, team(s), department(s), group(s) and division(s), including all such revisions to the aforementioned documents.

106.    All Xoom Energy New York, LLC's codes of business practices or corporate integrity statements.

107.    Documents sufficient to identify all individuals and entities that own Xoom Energy New York, LLC as well as their respective ownership interests from January 1, 2011 to the present.

108.    Documents sufficient to identify all transactions between Xoom Energy New York, LLC and Xoom Energy, LLC from January 1, 2011 to the present.

109.    All documents related to Xoom Energy, LLC's role in the selection and assignment of Xoom Energy New York, LLC's personnel.

110.    All contracts, memoranda of understanding, operating agreements or similar documents where Xoom Energy New York, LLC and Xoom Energy, LLC are parties thereto.


Dated:  September 4, 2019
        Armonk, New York


By:     /s/ Steven L. Wittels
        Steven L. Wittels
        J. Burkett McInturff
        Tiasha Palikovic

        **WITTELS LAW, P.C.**
        18 HALF MILE ROAD
        ARMONK, NEW YORK 10504
        Telephone: (914) 319-9945
        Facsimile: (914) 273-2563
        slw@wittelslaw.com
        jbm@wittelslaw.com
        tpalikovic@wittelslaw.com

        *Attorneys for Plaintiffs and the Class*

Daniel Hymowitz
**HYMOWITZ LAW GROUP, PLLC**
1629 Sheepshead Bay Road
Brooklyn, NY 11235
Telephone: (718) 807-9900
Facsimile: (866) 521-6040
daniel@hymowitzlaw.com

Andrey Belenky
Dmitry Kheyfits
**KHEYFITS BELENKY LLP**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Phone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com
dkheyfits@kblit.com

*Co-Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served by email upon the

attorneys of record for Defendants, this 4th day of September, 2019.

/s/ Steven L. Wittels
Steven L. Wittels

Exhibit A

## **PRODUCTION SPECIFICATIONS**

I. **DEFINITIONS**

A. **"Document"** shall be interpreted to include all paper documents, communications, or electronically stored information ("ESI") existing in any medium from which information can be obtained or translated into reasonably usable form.

B. **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer-generated information or data of any kind, documents stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices or media.

C. **"Native file(s)"** means ESI in the file type for the application in which such ESI is normally created, viewed, and/or modified.

D. **"Metadata"** means: (i) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

E. **"Load file"** means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A load/unitization file will also contain data relevant to the individual documents, such as agreed-upon metadata, coded data, and OCR or extracted text.

F. **"OCR"** means the optical character recognition file, which is created by software used in conjunction with a scanner that is capable of reading image-based documents and making such documents searchable using appropriate software.

G. **"Extracted text"** means the text extracted from a native file and includes all header, footer, and document body information.

II. **PRODUCTION FORMAT**

Except as detailed below, all scanned paper and ESI should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. All native files for ESI will be provided in their original native format (emails in MSG format) unless redactions are required.

**A.     Global De-Duplication**

Defendant shall de-duplicate ESI to avoid substantially duplicative productions. Defendant will globally de-duplicate as follows:

1.     Electronic files: Electronic files will be de-duplicated based upon calculated MD5 Hash values for binary file content.

2.     Emails: Emails will be de-duplicated based upon MD5 Hash values for the email family, including parent object and attachments.  The following fields will be used to create the unique value for each email: To; From; CC; BCC; MsgID; Subject; Body; and MD5 Hash values for all attachments, in attachment order.  Emails will be de-duplicated at a family level, including the message and attachment(s).

3.     Documents will be de-duplicated against the entire population and all custodians of a de-duplicated document will be listed in a "Custodial De-dupe" field.

**B.     Bates Numbering Documents**

1.     All images must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

2.     If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing Party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

**C.     Images**

1.     Images should be single-page, Group IV TIFF files, scanned at 300 x 300 dpi resolution.

2.     File names cannot contain embedded spaces.

3.     Bates numbers should be endorsed on the lower right corner of all images.

4.     The number of TIFF files per folder should not exceed 1,000 files.

5.     PowerPoint: All pages of the file should be scanned in notes view with one slide per page and the corresponding notes below the slide.

6.     All TIFF images shall display tracked changes, comments and other rich data as displayed in the document, if the track changes were visible in the last saved version of the document.

7.      All TIFF-formatted documents will be produced in black and white.  The producing party will comply with reasonable requests to produce particularly identified ESI in the original, color image of specific documents (*e.g.*, where the color is relevant to the interpretation of the document).  If a dispute arises as to the reasonableness of the request, the parties shall meet and confer in an effort to resolve their differences.

**D.    Text**

1.      Searchable text of the entire document must be provided for every record, at the document level.  Extracted text must be provided for all documents that originated in electronic format, and electronic text must be extracted directly from the native electronic file unless it is a redacted document, an image file, or a hard copy document.  In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.  The text file name shall be the same as the Bates number of the first page of the document.  File names shall not have any special characters or embedded spaces.

**E.    Paper Documents**

1.      Paper documents, including spreadsheets maintained in paper form[1], shall be produced as TIFF images (consistent with the specifications in Section II.C.)  The production will include the appropriate load file which will, at a minimum, contain the following fields (described in detail in Section II.I.7.):

(a)      Beginning Production Number (PRODBEGBATES)

(b)      Ending Production Number (PRODENDBATES)

(c)      Beginning Attachment Production Number (PRODBEGATTACH)

(d)      Ending Attachment Production Number (PRODENDATTACH)

(e)      Custodian

(f)      Confidentiality

(g)      Page Counts (PGCOUNT)

(h)      Text Path (TEXTPATH).

---

[1] If spreadsheets are maintained in native form, the producing party may not intentionally produce them in paper form only.

2.     In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized).

## F.     Production and Use of Native Files

### 1.     Production of Native Files

(a)     All ESI shall be produced in native format unless redactions are required, in which case the ESI will be produced in TIFF pursuant to Section II.C.

(b)     The full path of the native file, as it exists in the production, must be provided in the .DAT file for the NATIVEFILELINK field.

(c)     The number of native files per folder should not exceed 1,000 files.

(d)     For files not also imaged to TIFF format, a placeholder image that identifies the Bates number and confidentiality designation associated with the native document must be provided in lieu of a TIFF image.  The file name of the native file produced shall be the Bates number of the corresponding TIFF slip sheet.  Produce the following documents in native format with an image placeholder unless redactions are required:

(i)     Microsoft Excel documents (with all data unhidden) including CSV files that are not easily converted to TIFF images; and

(ii)     Multimedia files (audio, visual, etc.).

(e)     To the extent a native file produced cannot be rendered or viewed without the use of proprietary third-party software, the parties shall meet and confer to discuss options.

## G.     Social Media

1.     Linkedin - Export out profile to a PDF and then OCR it to make the PDF searchable.

2.     Facebook - Capture information on a screen shot and convert same into a searchable PDF.

3.     Twitter - Capture information on a screen shot and convert same into a searchable PDF.

4.     All Others - The parties agree to meet and confer regarding the production parameters for any additional social media.

H.    **Image Load File**

The image key shall be named the same as the Bates number of the page. The image cross-reference file is needed to link the images to the database.  It is a comma-delimited file consisting of seven fields per line.  There must be a line in the cross-reference file for every image in the database.  The name of the image load file shall mirror the name of the delivery volume and should have an .opt extension (e.g., ABC001.opt).  The volume names shall be consecutive (e.g., ABC001, ABC002, *et. seq.*).

The format is as follows:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

*ImageID*: The unique designation that *Concordance®* and *Concordance Image®* use to identify an image.

***Note***: *This imageID key **must** be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. The format should be a 7 digit number to allow for the possible increase in the size of a production.*

*VolumeLabel*: Optional

*ImageFilePath*: The full path to the image file.

*DocumentBreak*: The letter "Y" denotes the first page of a document.  If this field is blank, then the page is not the first page of a document.

*FolderBreak*: Leave empty

*BoxBreak*: Leave empty

*PageCount*: Optional

I.    **Metadata**

1.    The metadata load file shall use the following standard Concordance delimiters:

   (a)    Comma: ¶ (ASCII 20)

   (b)    Quote: þ (ASCII 254)

   (c)    Newline: ® (ASCII 174)

   (d)    Multi-line: ; (ASCII 59)

2.    All date fields shall be produced in "mm/dd/yyyy."

3.     A carriage-return line-feed shall be used to indicate the start of the next record.

4.     Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.) – *i.e.*, a separate volume shall be created for each piece of media delivered.

5.     The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat extension (*i.e.*, ABC001.dat).

6.     The volume names shall be consecutive for each produced source. (*i.e.*, ABC001, ABC002, *et. seq.*

7.     The first record shall contain the field names in order of the data set forth in the chart below.  The text and metadata of email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below.

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| PRODBEGBATES | EDC0000001 | Beginning Bates number (production number) | All |
| PRODENDBATES | EDC0000001 | Ending Bates number (production number)<br><br>**The PRODENDBATES field should be populated for single page documents/emails. | All |
| PRODBEGATTACH | EDC0000001 | First Bates number of family range (*i.e.*, Bates number of the first page of the parent email) | All |
| PRODENDATTACH | EDC0000015 | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment) | All |
| CUSTODIAN | Smith, John | Name of person or data source from where documents/files are produced | All |
| CUSTODIAN_DEDUPE | Smith, John; Thomas, Sue | Name(s) of all custodian(s) that possessed the document; includes any custodian(s) whose duplicate file(s) was removed during processing | Email and Electronic documents ("E-docs") |

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| EMAIL FROM | John Smith | Sender | Email |
| EMAIL TO | Coffman, Janice; LeeW [mailto:LeeW @MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries | Email |
| EMAIL CC | Frank Thompson [mailto: frank_Thomps on@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries | Email |
| EMAIL BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries | Email |
| EMAIL SUBJECT | Board Meeting Minutes | Subject line of the email | Email |
| EMAIL DATE_SENT | 10/12/2010 | Date the email was sent | Email |
| FILENAME | OctoberAgend a.doc | Original file name | E-docs |
| FILE_EXTEN | MSG | The file type extension | Email and E-docs |
| TITLE | Board Meeting Minutes | Title provided by user within the metadata of the document | E-docs |
| AUTHOR | John Smith | Creator of the document | E-docs |
| DATE_CREATED | 10/10/2010 | Date the document was created | E-docs |
| DATE_MOD | 10/12/2010 | Date the document was last modified | E-docs |
| TIME_MOD | 7:00 PM | Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field | E-docs |
| DATE_ACCESSD | 10/12/2010 | Date the document was last accessed | E-docs |

8

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| TIME_ACCESSD | 7:00 PM | Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field | E-docs |
| PRINTED_DATE | 10/12/2010 | Date the document was last printed | E-docs |
| FILE_SIZE | 5,952 | Size of the file in KB | Email and E-docs |
| PGCOUNT | 1 | Number of produced pages | All |
| ORIGINAL FILEPATH | J:\Shared\SmithJ\October Agenda.doc | File source path which includes location, folder name and file extension. | Email and E-docs |
| MSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Unique Message ID from the parent email | Email |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab5871246 7eab4004583e b 8fb7f89 | MD5 Hash value of the document | Email and E-docs |
| CONFIDENTIALITY | Confidential | Indicates if the document has been designated as "Confidential" or "Confidential-Attorney Eyes Only" pursuant to any applicable Protective Order.  A blank indicates those documents that are not so designated. | All |
| REDACTION | Redacted | Indicates if the document has been redacted prior to production.  A blank indicates that the document contains no redactions. | All |
| TEXTPATH | .\ABC-002\TEXT\TEXT001\EDC-0000001.txt | Full path for OCR or extracted text files on producing media | All |

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| NATIVEFILELINK | .\ABC-001\NATIVES\NATIVES001\EDC-0000001_Confidential.xls | Full path for documents provided in native format on producing media | Email and E-docs |

      8.     Electronic file collection will be "De-NISTed," removing commercially available operating system and application files contained on the current NIST file list.  Identification of NIST list matches will be through MD5 Hash values.

**J.**      **Databases**:  To the extent a response to discovery requires production of information contained in databases, the parties will meet and confer to discuss an appropriate production protocol for information from such databases.

**K.**      **Embedded Objects**: Embedded files in Microsoft Office and .RTF files will be extracted as separate files and produced as attachments to the file in which they were embedded.

**L.**      **Compressed files**: Compression file types (*i.e.*, .CAB, .GZ, .TAR., .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**M.**      **Replacement files**: Any documents that are replaced in later productions shall be clearly designated as such, by appending a "- R" to the production prefix and by a letter accompanying the production clearly designating such documents as replacements.

**N.**      **Time Zone**: The preferred time zone of processing ESI is UTC.  Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI  The producing party shall consistently produce all ESI processed using the same time zone.