# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>Defendants. | Case No.: 18 Civ. 2949 (ARR) (JAM)<br><br>**ORAL ARGUMENT REQUESTED** |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF AND RELIEF FROM THE COURT'S SEPTEMBER 11, 2024 ORDER (DKT. NO. 267), AND BRIEFING ON WHY THIS CASE CAN PROCEED ON A CLASSWIDE BASIS**

---

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman
J. Burkett McInturff
Steven L. Wittels
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
slw@wittelslaw.com

**SCHLAM STONE & DOLAN LLP**
Richard Dolan
Bradley D. Simon
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

**KHEYFITS BELENKY LLP**
Andrey Belenky
1140 AVENUE OF THE AMERICAS 9TH FLOOR
NEW YORK, NEW YORK 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

Dated:   October 4, 2024

## **TABLE OF CONTENTS**

MOTION FOR RECONSIDERATION ........................................................................... 1

LEGAL STANDARD.................................................................................................... 1

ARGUMENT ............................................................................................................... 2

  I.    MODEL 2 IS CONSISTENT WITH PLAINTIFF'S THEORY OF LIABILITY, BUT CONTAINS A CALCULATION ERROR............................................... 2

  II.   EXCLUDING BOTH REPORTS IS TOO HARSH A SANCTION .............................. 5

      A.    XOOM Was on Notice That Plaintiff Planned to Supplement the Original Report in September 2023 ........................................................................ 6

      B.    Any Prejudice to XOOM Can Be Cured........................................................ 7

      C.    Submitting Model C or a Corrected Model 2 Does Not Require Relitigating Issues Already Decided by the Court .................................... 9

CLASSWIDE PROCEEDINGS REMAIN VIABLE EVEN IF THE COURT EXCLUDES BOTH EXPERT REPORTS FOR DAMAGES PURPOSES............................. 11

  I.    COURTS HAVE SUBSTANTIAL FLEXIBILITY IN MANAGING CLASS ACTIONS ....................................................................................................... 11

  II.   A DAMAGES EXPERT IS NOT A PREREQUISITE TO CLASS TREATMENT AND THE CLASS CAN REMAIN CERTIFIED UNDER *COMCAST* ......................... 12

  III.  THE COURT CAN BIFURCATE LIABILITY AND DAMAGES PROCEEDINGS AND APPOINT A SPECIAL MASTER TO CALCULATE DAMAGES..................... 16

CONCLUSION............................................................................................................. 19

# **TABLE OF AUTHORITIES**

**Cases**

*Beastie Boys v. Monster Energy Co.*,
    No. 12 Civ. 6065 (PAE), 2014 WL 888235 (S.D.N.Y. Mar. 6, 2014) ...................................... 3

*Bozick v. Conagra Foods, Inc.*,
    No. 19 Civ. 4045, 2021 WL 1198320 (S.D.N.Y. Mar. 30, 2021) ............................................ 4

*Capstone Logistics Holdings, Inc. v. Navarrete*,
    No. 17 Civ. 4819 (GBD) (BCM), 2019 WL 12239656 (S.D.N.Y. Mar. 19, 2019).................. 8

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................................... 11

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
    No. 01 Civ. 11295, 2003 WL 22471909 (S.D.N.Y. Oct. 31, 2003) ........................................ 8

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ................................................................................... 17, 18

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ....................................................................................................... 12, 13

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
    138 F. Supp. 3d 352 (S.D.N.Y. 2015) ................................................................................. 5, 9

*Cummings v. Standard Reg. Co.*,
    265 F.3d 56 (1st Cir. 2001) ................................................................................................... 3

*E.E.O.C. v. Mavis Discount Tire, Inc.*,
    129 F. Supp. 3d 90 (S.D.N.Y. 2015) .................................................................................... 17

*Enron Oil Corp. v. Diakuhara*,
    10 F.3d 90 (2d Cir. 1993) .................................................................................................... 12

*Grand River Enters. Six Nations, Ltd. v. King*,
    783 F. Supp. 2d 516 (S.D.N.Y. 2011) ................................................................................... 3

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) ......................................................................................... 14

*In re Adelphia Commc'ns Corp.*,
    638 B.R. 506 (S.D.N.Y. 2022) ............................................................................................ 17

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    No. 14 Civ. 6549, 2022 WL 3362429 (CM) (RWL) (S.D.N.Y. Aug. 15, 2022)..................... 17

*In re Nassau Cnty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ................................................................. 12, 17

*In re September 11 Litig.*,
  802 F.3d 314 (2d Cir. 2015) ...................................................................... 16

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ...................................................................... 16

*Jackson v. Bloomberg*, L.P.,
  298 F.R.D. 152 (S.D.N.Y. 2014) ............................................................... 15

*Janes v. Triborough Bridge & Tunnel Auth.*,
  No. 06 Civ. 1427 (BSJ) (HBP), 2011 WL 10885430 (S.D.N.Y. Oct. 5, 2011)................. 17, 19

*Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*,
  No. 20 Civ. 4984 (GHW), 2021 WL 706646 (S.D.N.Y. Feb. 22, 2021)................................ 17

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................... 3, 9

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*,
  No. 06 Civ. 1066 (PJH) (EMC), 2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) ...................... 9

*Miller v. McCalla*,
  198 F.R.D. 503 (N.D. Ill. 2001)................................................................. 12

*Papyrus Tech. Corp. v. New York Stock Exch., LLC*,
  257 F.R.D. 39 (S.D.N.Y. 2009) .................................................................... 5

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)................................................................................ 12

*Ravina v. Columbia Univ.*,
  No. 16 Civ. 2137 (RA), 2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020) ..................................... 17

*Redcell Corp. v. A. J. Trucco, Inc.*,
  No. 20 Civ. 18 (AT) (SLC), 2022 WL 3700148 (S.D.N.Y. Aug. 26, 2022) ............................ 3

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ...................................................................... 16

*S.W. v. City of New York*,
  No. 09 Civ. 1777 (ENV) (MDG), 2011 WL 3038776 (E.D.N.Y. July 25, 2011) ...................... 8

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ......................................................................... 1

*Sibley v. Sprint Nextel Corp.*,
 No. 08 Civ. 2063, 2013 WL 1819773 (D. Kan. Apr. 30, 2013) ................................................ 3

*Simon v. Philip Morris Inc.*,
 200 F.R.D. 21 (E.D.N.Y. 2001) ................................................................................................ 16

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
 --- F. Supp. 3d ---, 2024 WL 1208778 (S.D.N.Y. Mar. 21, 2024) ................................. 1, 8, 9, 17

*Sykes v. Mel S. Harris & Assocs. LLC*,
 780 F.3d 70 (2d Cir. 2015) ...................................................................................................... 14

*Torres v. Dematteo Salvage Co. Inc.*,
 No. 14 Civ. 774 (ADS) (AKT), 2016 WL 845326 (E.D.N.Y. Mar. 2, 2016) ......................... 5, 8

*United States v. City of New York*,
 No. 07 Civ. 2067 (NGG) (RLM), 2011 WL 3174084 (E.D.N.Y. July 8, 2011) ...................... 18

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................................. 5, 16

Fed. R. Civ. P. 16 ............................................................................................................................... 16

Fed. R. Civ. P. 23 ............................................................................................................................ 12, 16, 19

Fed. R. Civ. P. 26 ................................................................................................................................. 4

Fed. R. Civ. P. 42 ............................................................................................................................ 16, 17

Fed. R. Civ. P. 49 ............................................................................................................................... 16

Fed. R. Civ. P. 60 ................................................................................................................................. 1

L. Civ. R. 6.3 ....................................................................................................................................... 1

## MOTION FOR RECONSIDERATION

On September 11, 2024, the Court entered an Order excluding Plaintiff's original expert report ("Original Report") (Dkt. No. 215) with respect to damages and excluding Plaintiff's amended expert report ("Amended Report") (Dkt. No. 229) in its entirety. Op. & Order, Dkt. No. 267 ("Order"). Although the Order correctly notes that the Original Report's Model 2 contains *calculation* errors in Exhibit 5, it overlooks that Model 2's *theory of damages* is consistent with Plaintiff's theory of liability. The calculation error—which Class Counsel was not previously aware of—can be corrected without prejudicing XOOM. Because the Amended Report's Model C lacked this error (unbeknownst to Class Counsel), the Order found that the Amended Report offered an untimely new opinion. Order at 19. Because Model 2's calculation error can be corrected, Plaintiff respectfully requests that the Court reconsider the Order and permit Plaintiff to either: (1) correct Model 2's calculation error and update it to incorporate XOOM's supplemental Class data production; or (2) present Model C to the jury.

## LEGAL STANDARD

Local Rule 6.3 permits parties to move for reconsideration, setting forth "the matters or controlling decisions which counsel believes the court has overlooked." Federal Rule 60(b)(1) allows courts to "relieve a party" from an order for the reasons of "mistake, inadvertence, surprise, or excusable neglect," while Rule 60(b)(6)'s catchall provision allows courts to grant motions for reconsideration for "any other reason that justifies relief." The moving party must "point to controlling decisions or data that the court overlooked—matters [] that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The Court has "broad discretion" in considering such a motion. *Sjunde AP-Fonden v. Gen. Elec. Co.*, --- F. Supp. 3d ---, 2024 WL 1208778, at *2 (S.D.N.Y. Mar. 21, 2024).

**ARGUMENT**

I.    **MODEL 2 IS CONSISTENT WITH PLAINTIFF'S THEORY OF LIABILITY, BUT CONTAINS A CALCULATION ERROR**

Model 2's damages theory is the same as Plaintiff's liability theory: it "allows XOOM *a margin over Total Cost* that equates to the fixed rate margin[.]" Original Report ¶ 73 (emphasis added). The classwide damages calculations in Exhibit 5 that supposedly represented how Model 2 works however, were incorrect. Contrary to the Original Report's text, Exhibit 5 calculated damages as a percentage of rates rather than costs. *See* Order at 13. XOOM did not raise this calculation error in its briefing at summary judgment, class certification, stay, decertification, and the Rule 23(f) appeal. Instead XOOM argued that Model 2 did not use a proportionate margin, used an inappropriate reasonable alternative (*i.e.*, XOOM's fixed rate margins), and did not use XOOM's actual costs. *See, e.g.*, Dkt. No. 197 at 13–21; *see also* Order at 9 (there was "no contrary argument from XOOM as to the workings of the Original Report's damages model"); *id.* at 29 (at class certification and decertification, the Court did not examine the calculation error because "XOOM did not argue 'that the [formula] itself [wa]s faulty.'" (citations omitted)).

And, like the Court prior to the Order, Class Counsel never noticed the calculation mistake. Notably, the mistake undercalculates damages. Plaintiff had nothing to gain by proffering calculations that significantly undercount damages. The Court identified this issue too. *See* Order at 12 (Your Honor observing that if prices increased but supply costs remained constant, Exhibit 5's calculations would undercount damages).

XOOM repeated its earlier criticisms in its motion to exclude the Original Report, but also for the first time noted (in a single paragraph) that "Model [2]'s *algorithm* lacks any data about costs, using rates and margins as the only inputs." Dkt. No. 215 at 21 (emphasis added); *see also* Order at 18 ("The Amended Report's *Calculation of Damages* from the Fixed-Rate Margin Relies

on a Different Formula . . . ." (emphasis in original)); *id.* at 29 ("XOOM's motion to exclude has now revealed that the report's ***formula*** is faulty" (emphasis added)). The Court then concluded that Model 2's ***calculations*** were "disconnected from changes in XOOM's costs" because they "determine[] XOOM's 'reasonable margin' solely by reference to XOOM's actual prices[.]" Order at 12–13. Plaintiff acknowledges this error in Model 2's calculations and that those calculations do not match the model's theory of damages.

But the critical point here is that the Original Report's damages ***theory*** perfectly matches Plaintiff's "straightforward" liability theory—that XOOM was required "to charge prices that were directly proportional to its supply costs, and therefore the contract effectively capped XOOM's prices at a reasonable percentage over cost." Order at 8 (cleaned up); *see also* Original Report ¶ 73 (Model 2 "allows XOOM a margin over Total Cost that equates to the fixed rate margin[.]" Class Counsel thought the calculations in Exhibit 5 of the Original Report reflected the report's words and was unaware of the error prior to the Order. *See* Order at 19 (quoting Plaintiff's opposition to decertification).

This flaw, however, is purely mathematical, not conceptual. "[A]s numerous courts in this Circuit have concluded, 'mistakes in arithmetic can be corrected[.]'" Order at 23 (quoting *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 657 (S.D.N.Y. 2007).[1] Such correctible mistakes include instances, like here, where the wrong variable is used. *See, e.g.*, *Beastie Boys v. Monster Energy Co.*, No. 12 Civ. 6065 (PAE), 2014 WL 888235, at *3 (S.D.N.Y. Mar. 6, 2014)

---

[1] *See also Redcell Corp. v. A. J. Trucco, Inc.*, No. 20 Civ. 18 (AT) (SLC), 2022 WL 3700148, at *9 (S.D.N.Y. Aug. 26, 2022) ("The Court finds that neither [the expert's] computational errors nor his choice of variables warrants exclusion[.]"); *Grand River Enters. Six Nations, Ltd. v. King*, 783 F. Supp. 2d 516, 527 (S.D.N.Y. 2011) (declining to exclude "mathematical errors" that could be corrected). Courts outside this Circuit are in accord. *See, e.g.*, *Cummings v. Standard Reg. Co.*, 265 F.3d 56, 65 (1st Cir. 2001) (allowing expert to correct mathematical error in damages calculation rather than exclude testimony where such error was "revealed" and "corrected"); *Sibley v. Sprint Nextel Corp.*, No. 08 Civ. 2063, 2013 WL 1819773, at *3–4 (D. Kan. Apr. 30, 2013) (permitting revised coding in supplemental expert report as "corrections to inaccuracies").

(damages calculations based on market value for use of infringed work in perpetuity rather than proper 5-week period were "eminently correctible"). Indeed, Rule 26(e)(1) requires such corrections: a party must "supplement or correct" expert disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect"—the exact scenario present here. Plaintiff now seeks to correct Model 2's calculations, not modify its damages theory or methodology.

The Amended Report's Model C asserts the same damages theory as Model 2, but its calculations do not repeat the calculation error in applying that theory.[2] Order at 21 ("[T]he Amended Report's model adds its calculation of XOOM's reasonable margin to XOOM's actual costs, thereby determining a dollar value for XOOM's reasonable price—XOOM's costs plus a reasonable margin proportionate those costs."). Moreover, Model C's fixed-rate margin-over-cost percentage (its input for a reasonable margin) can be converted into a margin-over-price percentage (Model 2's input) according to a set equation. Order at 18. That is another way of saying that the error was in the application of the damages theory rather than the theory itself.

Here, both Model 2 and Model C are based on the same liability and damages theory, but Model C does not contain the calculation error. Because: (1) Model 2's only error is in its calculations and not its damages theory; and (2) the error was undiscovered prior to *Daubert* briefing—after Plaintiff served the Amended Report—this is ***not*** a situation where Plaintiff seeks "to offer a new theory out of time when the responding party has demonstrated that the disclosing party's initial theory is incorrect." *See* Order at 23 (quoting *Bozick v. Conagra Foods, Inc.*, No. 19

---

[2] Plaintiff submitted Model C to account for updated Class data and to conform to the Court's construction of the contract as requiring a consistent fixed rate margin rather than Model 2's month-by-month comparison. Class Counsel was unaware of Model 2's calculation error or the fact that Model C corrected it. Plaintiff's expert used XOOM's supplemental data production from March 2024 to run the damages calculations afresh rather than importing Model 2's calculations and therefore did not carry over the same calculation error into Model C.

Civ. 4045, 2021 WL 1198320, at *3 (S.D.N.Y. Mar. 30, 2021)); *see also* Order at 30. Rather, Plaintiff seeks to use the theory set forth in Model 2 with corrected calculations.

Given that Model 2's only deficiency is a calculation error, Plaintiff respectfully requests that the Court allow Plaintiff to either correct Model 2's calculations, updated with XOOM's subsequent data production, or present Model C to the jury. As described below, excluding both Model 2 and Model C for damages would cause extreme prejudice to the Class.

## II.    EXCLUDING BOTH REPORTS IS TOO HARSH A SANCTION

"[E]xcluding expert testimony is a drastic remedy and should be used sparingly," because exclusion "frustrate[s] the Federal Rules' overarching objective of doing substantial justice to litigants." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 398–99 (S.D.N.Y. 2015) (cleaned up); *see also Torres v. Dematteo Salvage Co. Inc.*, No. 14 Civ. 774 (ADS) (AKT), 2016 WL 845326, at *3 (E.D.N.Y. Mar. 2, 2016) ("[T]he exclusion of expert testimony should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." (quotation omitted)); *Papyrus Tech. Corp. v. New York Stock Exch., LLC*, 257 F.R.D. 39, 45 (S.D.N.Y. 2009) ("[E]xclusion of the [expert materials] would lead to a result where the client's right to a correct and just decision may have been seriously undermined."); Fed. R. Civ. P. 1. Courts in this Circuit routinely allow corrections of expert mathematical errors under similar circumstances, especially where those corrections resolve other concerns under *Daubert* or *Comcast*. *See* Order at 19 ("[T]he Amended Report now properly measures the difference between the variable price and XOOM's supply costs plus a reasonable and proportionate margin." (cleaned up)); *see also supra* pp. 3–5.

Here, there are less draconian remedies short of preclusion that more equitably balance the potential harm to XOOM against the severe harm of preclusion to the Class. Any prejudice to Defendants can be eliminated by giving XOOM the opportunity to conduct reasonable expert

discovery at Plaintiff's expense and preserving XOOM's right to cross-examine Plaintiff's expert about the error at trial, allowing this case to be decided on the merits. Further, XOOM was on notice of Plaintiff's planned supplement in September 2023, which further mitigates any prejudice, and the calculation error will not require the parties to relitigate issues already decided.

### A.    XOOM Was on Notice That Plaintiff Planned to Supplement the Original Report in September 2023

On April 1, 2024, Plaintiff requested leave to serve the Amended Report in a joint letter. Dkt. No. 187. XOOM argued that the contemplated report was in response to arguments from XOOM's motion to decertify that it had "raised [for] seven months," including in XOOM's Rule 23(f) petition, motion to stay, and motion to decertify the Class. *Id.* at 4. The Court granted Plaintiff's request, ordering that "any supplementation or amendment of information included in plaintiff's expert report must [] be disclosed by May 10, 2024." April 15, 2024 Text Order.

The Amended Report was served on May 10, 2024 and (unbeknownst to Class Counsel) corrected Model 2's calculation error. Contrary to the Court's concerns, Order at 23, 30, the Amended Report was not drafted to address a critique levied by XOOM. In fact, XOOM did not raise the calculation error until its May 20, 2024 *Daubert* motion—10 days ***after*** the Amended Report was served.

Moreover, the Amended Report was contemplated immediately after the Court's summary judgment and class certification orders, months before the April 1 letter. Exactly one day after the Court's certification order, Plaintiff requested production of additional charging data for the purpose of supplementing Plaintiff's expert report. *See* Dkt. No. 157 at 2 ("[T]here are more than three years of Class Member charging data that need to be produced and incorporated into Plaintiff's damages model in advance of trial."). XOOM was thus aware in September 2023 that Plaintiff intended to supplement the Original Report. The parties agreed that XOOM would

6

produce supplemental data in March 2024. Dkt. No. 159. After that agreement, the parties set aside expert discovery issues to, *inter alia*, brief XOOM's Rule 23(f) petition, *see* Dkt. No. 153-1, motion to stay, Dkt. Nos. 166–73, and motion to decertify, Dkt. Nos. 180, 194–197, 204–05, 211–12, as well as implement Class notice, Dkt. Nos. 156, 160, 182. These submissions were all made without either party or the Court's appreciating Model 2's calculation error. *Supra* pp. 2–3.[3]

Because then-Magistrate Judge Reyes handled all expert discovery, the parties addressed the joint letter on the Amended Report to Magistrate Judge Marutollo, who had just days earlier overseen the parties' mediation, *see* Mar. 19, 2024 Text Order. Nevertheless, Your Honor granted Plaintiff's application and Class Counsel understood the Court's April 15, 2024 Order to authorize exactly what Class Counsel understood Model C to do—supplement Model 2. Contrary to the Court's Order, Plaintiff did not "fail to disclose her intention to advance new opinions and methodologies," Order at 27, but instead failed to appreciate that Model C had fixed a calculation error in Model 2 that Class Counsel had not spotted.

### B.    Any Prejudice to XOOM Can Be Cured

Both expert reports rely on the same damages theory—the only difference is the Amended Report fixed the calculation error, as the Court itself noted. *See* ECF No. 267 at 21 ("The Amended Report's measurement—the overcharge to XOOM's customers—is certainly a more accurate reflection of plaintiff's theory of injury than that advanced in her Original Report."). In other words, Plaintiff's theory of liability and damages has been consistent throughout this litigation.

---

[3] The Court notes that Plaintiff "represented that her expert reports reflected" her liability theory in prior briefing. *See* Order at 25–26. As noted above, Class Counsel was unaware of the calculation error because the Original Report described the liability and damages theories correctly. Nor was it ever in Plaintiff's interest to use erroneous calculations in applying that theory; indeed, Model 2's calculations significantly undercount damages. That the error went undiscovered is further reflected in the Court's statement that it "issued several decisions premised on the notion that plaintiff's Original Report was consistent with her theory of liability and damages," as "XOOM did not argue 'that the [formula] itself [wa]s faulty.'" Order at 29.

Excluding both Model 2 and Model C while denying Plaintiff the opportunity to correct Model 2's error could cause significant prejudice to the Class and the public at large by potentially hamstringing Plaintiff's ability to show the tens of millions of dollars XOOM overcharged its customers in violation of its contract. In contrast, XOOM is not significantly prejudiced by correcting Model 2's calculation error or allowing Model C to be used at trial, and any prejudice that may exist can be cured by allowing additional expert discovery at Plaintiff's expense.

First, no trial date has been set and therefore additional expert discovery would not cause substantial delay. *See S.W. v. City of New York*, No. 09 Civ. 1777 (ENV) (MDG), 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011) (no prejudice from submission of late expert materials where no trial date had been set); *see also Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17 Civ. 4819 (GBD) (BCM), 2019 WL 12239656, at *4 (S.D.N.Y. Mar. 19, 2019) (same).[4]

Second, XOOM can depose Plaintiff's expert again. This cures any potential prejudice. *See Torres*, 2016 WL 845326, at *5 ("[C]ourts in the Second Circuit . . . have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial." (quotation omitted)); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01 Civ. 11295, 2003 WL 22471909, at *2 (S.D.N.Y. Oct. 31, 2003) ("[P]otential prejudice to defendants is cured by allowing them to depose [plaintiff's expert] before trial if they believe it is necessary.").

Third, Plaintiff will pay XOOM's reasonable attorneys' fees and costs for additional expert discovery, thus eliminating any prejudice for resources already expended. The reasoning of Judge Furman in a recent, highly analogous situation is pertinent here. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, --- F. Supp. 3d ---, 2024 WL 1208778, at *2 (S.D.N.Y. Mar. 21, 2024) (paying expenses for expert deposition ameliorates prejudice of untimely disclosure). In *Sjunde*, the Court originally

---

[4] Conversely, as described below, although this six-year-old case can still proceed as a class action, excluding both expert reports for damages purposes will cause some delay after the Class prevails on liability.

granted a motion to exclude a defense expert on both substantive and timeliness grounds. *See id.* at *1. After the defendant moved for reconsideration, the Court "st[ood] by most of what it said," but ultimately concluded that striking the report was "unwarranted because there are remedies short of total preclusion that would address the prejudice[]: namely, allowing Plaintiffs to re-depose [the expert] and permit Plaintiffs' expert . . . to go beyond the scope of his reports in his testimony at trial to address the issues in [the expert's] declaration." *Id.* at *2 (cleaned up); *see also Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. 06 Civ. 1066 (PJH) (EMC), 2008 WL 4601038, at *2–3 (N.D. Cal. Oct. 15, 2008) (holding supplemental expert report that "merely corrects numerical errors" was not a new opinion and curing prejudice by requiring offering party to pay cost of subsequent expert deposition, including reasonable attorneys' fees).

Fourth, XOOM will have the opportunity to cross-examine Plaintiff's expert at trial on the calculation error so the jury can weigh the expert's testimony accordingly. *See Malletier*, 525 F. Supp. 2d at 657 (arithmetic mistakes "present questions of weight and not admissibility").

Here, the remedy of allowing additional reasonable expert discovery at Plaintiff's expense and permitting XOOM to cross-examine Plaintiff's expert at trial with respect to the calculation error will cure any prejudice to XOOM and serves the "overarching objective of doing substantial justice to litigants." *Congregation Rabbinical Coll.*, 138 F. Supp. 3d at 398–99.

### C.    Submitting Model C or a Corrected Model 2 Does Not Require Relitigating Issues Already Decided by the Court

The Order posits that XOOM would be prejudiced by corrected calculations because the class certification and decertification orders and XOOM's pre-trial filings depended on the Original Report. Order at 29–31. But using correct calculations will not require rewinding the litigation. Model 2 and Model C advance the same theory of liability and damages—Model C simply fixes the math error. Nor did XOOM raise the error in any of its briefing prior to its May

20 *Daubert* motion. *See id.* at 9. Therefore, allowing Plaintiff to present Model C or a corrected Model 2 will not disturb the Court's prior class decisions or XOOM's pre-trial filings.

Indeed, class certification need not be relitigated if Plaintiff is permitted to correct Model 2 or submit Model C. The Court's certification and decertification decisions noted that Model 2 operated as described in the Original Report rather than the erroneous math underlying it. Order at 9, 29. Thus, rather than contradicting the Court's prior rulings, correcting the calculation error to conform Model 2's calculations to its damages theory will bring the math in line with the Court's prior understanding that this case is "particularly well-suited for class certification." Dkt. No. 152 at 10. This likewise applies to XOOM's motion to decertify.[5]

XOOM's pre-trial filings are likewise unaffected. Plaintiff is not seeking to add additional exhibits due to the Amended Report, and XOOM already moved to exclude the New York Public Service Commission documents referenced in both reports. Indeed, Model 2's calculation error is not mentioned in XOOM's pre-trial submissions, with both parties' submissions premised on the understanding that Model 2's calculations implemented its stated damages model, *i.e.*, one that "allow[ed] XOOM a margin over Total Cost that equates to the fixed rate margin[.]" Original Report ¶ 73. Thus, allowing Plaintiff to correct the calculation error in Model 2 or present Model C to the jury would ***better*** accord with the parties' understandings in their pre-trial submissions.

For the foregoing reasons, Plaintiff respectfully asks that the Court grant Plaintiff's Motion for Reconsideration and allow Plaintiff to either: (1) correct Model 2's calculation errors, or (2) present Model C as evidence of damages, and direct that Plaintiff pay Defendants' costs and reasonable attorney's fees attendant to any further requested deposition of Plaintiff's expert.

---

[5] Because the Original Report is admissible to prove liability, Order 13–15, the calculation error has no bearing on the disputed material facts regarding liability. Indeed, the central issue in the summary judgment decision was contract construction, which would not be changed by correcting Model 2's calculations.

**CLASSWIDE PROCEEDINGS REMAIN VIABLE EVEN IF THE COURT EXCLUDES BOTH EXPERT REPORTS FOR DAMAGES PURPOSES**

The Order directed "supplemental briefing on whether or not classwide proceedings remain viable in this case." Order at 32. For the reasons stated above, the Court should allow Plaintiff to present Model C or a corrected Model 2 to the jury. But even if the Court excludes Plaintiff's damages models, this case can still proceed to trial on a class basis. Courts have substantial flexibility in managing class actions, and XOOM should not get the $68,826,139 windfall of a *de facto* victory occasioned by decertification due to an easily corrected calculation error.[6] Indeed, longstanding case law demonstrates that although expert testimony explaining a damages model is helpful to the jury's understanding of the issues, it is not necessary to determine liability or certify the Class. Instead, the Court can bifurcate liability and damages proceedings, and after XOOM is found liable, appoint a special master to perform the purely mathematical damages calculations.

## I.    COURTS HAVE SUBSTANTIAL FLEXIBILITY IN MANAGING CLASS ACTIONS

"This case involves a large class with small individual claims that become significant only in the aggregate. The class action mechanism is meant for this very situation[.]" Class Order, Dkt. No. 152, at 18. Regardless of the outcome of Plaintiff's motion for reconsideration, the Court can and should use the tools at its disposal to maintain this case as a class action because decertification effectively grants XOOM judgment on the merits. "The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc*., 376 F.3d 656, 661 (7th Cir. 2004) (emphasis in original). "[I]f

---

[6] Because Model C reflects XOOM's most recent Class data production that runs only through the end of December 2023 and XOOM's wrongful charges are ongoing, the damages figure is undoubtedly larger today and damages calculations will need to be updated again before trial.

class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on." *Miller v. McCalla*, 198 F.R.D. 503, 506 (N.D. Ill. 2001); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and "most of the plaintiffs would have no realistic day in court if a class action were not available.").

Under Rule 23(d), "there are a number of management tools available to a district court" in a class action. *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006). The Court should use its broad authority to allow this case to be adjudicated substantively, which is in line with the Second Circuit's "oft-stated preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). As described below, exclusion of damages testimony does not disturb the Court's *Comcast* rulings and the Court can bifurcate liability and damages proceedings, adjudicating damages issues after XOOM's liability is established.

## II.    A DAMAGES EXPERT IS NOT A PREREQUISITE TO CLASS TREATMENT AND THE CLASS CAN REMAIN CERTIFIED UNDER *COMCAST*

Exclusion of expert testimony on damages does not disturb the Court's finding that the Class here satisfies *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Here, once the jury determines the components of the rate XOOM's contract promised—XOOM's supply costs and the appropriate variable rate margin—damages are a matter of mere arithmetic. All parties and the Court agree that the proper damages model is the difference between the rates XOOM actually charged and the rates XOOM should have charged. *See* Decertification Denial Order, Dkt. No. 246, at 4 (damages can be calculated "by looking at the difference between the variable rates

on the one hand and XOOM's actual and estimated supply costs (reflected in the Total Cost) plus a reasonable and proportionate margin on the other hand."); Defs.' Proposed Jury Instructions at 12, Dkt. No. 210-9 (damages calculated by the difference between what XOOM charged and "XOOM's actual and estimated supply costs, plus a proportionate 'margin'"); Plaintiff's Trial Memorandum, Dkt. No. 210 at 9 ("Damages will be measured by the amount charged to Plaintiff and the Class that exceeded the amount XOOM was entitled to charge under the contract.").

XOOM's New York variable rates are undisputed. The formula XOOM should have used to calculate its rates is also undisputed—indeed, it is in the contract itself. As the Court explained, the contract required XOOM "to determine its monthly variable rates using only its actual and estimated supply costs, subject to a reasonable and proportionate margin." Decertification Denial Order, Dkt. No. 246, at 3. Calculating the correct rate is simple math. Although Model 2's aggregate damages calculations contain a mathematical error, there is no dispute about ***how*** to calculate damages. Accordingly, this case does not present the problem addressed in *Comcast*.

The issue in *Comcast* was whether the plaintiff could "establish[] that damages are ***capable*** of measurement on a classwide basis." *Comcast*, 569 U.S. at 34 (emphasis added). In *Comcast*, the plaintiff pursued four theories of liability, but the district court found that three of the four "could not be determined in a manner common to all the class plaintiffs." *Id.* at 31 n.3. Even though three of the four theories of liability were rejected, the damages "model assumed the validity of all four theories[.]" *Id.* at 36. Therefore, the model "failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised." *Id.* at 35. Accordingly, the *Comcast* plaintiff's model "identifie[d] damages that [we]re not the result of the wrong" and because of the number of class members and potential forms of injury, the

13

"permutations involving four theories of liability and 2 million subscribers located in 16 counties [we]re nearly endless." *Id.* at 37–38. These concerns are not present here.

First, there is only one theory of liability here—XOOM breached the contract by charging rates that do not follow the contract's rate-setting formula. That breach affects all Class Members in the same way. Unlike in *Comcast*, the class damages theory does not involve multiple theories of liability, let alone theories previously rejected by the Court.

Second, while Plaintiff's expert made an error in his damages calculations, the damages theory is the same as the liability theory. Model 2 states it plainly: it "allows XOOM a margin over Total Cost that equates to the fixed rate margin[.]" Original Report ¶ 73. This damages theory, while executed improperly in Exhibit 5 of the Original Report, is identical to Plaintiff's liability theory.

Third, unlike in *Comcast*, even if the expert's damages testimony is excluded, Plaintiff can still prove damages in a way that is consistent with her theory of liability. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015) ("All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability."); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 275 (E.D.N.Y. 2019) ("At the class certification stage, the plaintiffs' burden is not to prove the element of injury, instead it is to show that class-wide injury or impact is capable of proof at trial through evidence that is common to the class rather than individual to its members." (citations omitted)). The only inputs necessary to prove damages—even without expert damages testimony—are the rates XOOM charged, XOOM's supply costs, and the appropriate margin. The Court has already so held and even XOOM admits this. *See* Defs.' Br. in Support of Decertification, Dkt. No. 197, at 1 ("The Court held that the Contract allows three components to determine XOOM's variable rates:

14

(1) estimated supply costs, (2) actual supply costs, including prior period adjustments and balancing costs, and (3) a 'reasonable' and 'proportionate' margin.'"); *see also id.* at 10–11 (explaining XOOM's position that Plaintiff must prove the difference between what she was charged and what she should have been charged). The rates XOOM actually charged are undisputed, and this Court has already held that the jury will need to determine XOOM's supply costs and appropriate margin. *See* Decertification Denial Order, Dkt. No. 246, at 12 ("If a jury decides that the Total Cost figure is synonymous with XOOM's actual and estimated supply costs then plaintiff can easily provide the input for XOOM's actual and estimated supply costs by supplying the Total Cost numbers in XOOM's rate-setting workbooks, which were produced during discovery."); *id.* at 13 ("A jury can determine a reasonable and proportionate margin."). Once the jury determines XOOM's actual supply costs and the appropriate margin, the only remaining task is to do the math to determine damages, which can be done without an expert.

At a liability trial, the jury can be asked to make those findings by using a special verdict form.[7] Once the jury does so, a classwide damages model or expert opinion testimony is not strictly necessary. Damages can be later calculated—as a matter of arithmetic—in accordance with Plaintiff's theory of liability. While this solution takes more time than allowing Plaintiff to correct Model 2's damages calculations or present Model C to the jury—subject to XOOM's cross-examination—this is a viable alternative for determining classwide damages.

Therefore, this case does not present the same concerns as *Comcast*. *See, e.g.*, *Jackson v. Bloomberg*, L.P., 298 F.R.D. 152, 168 (S.D.N.Y. 2014) (rejecting *Comcast* concerns because "[t]his is not a case where Plaintiff has failed to offer a methodology for calculating damages that

---

[7] XOOM effectively concedes this, as it contends that "findings in a special verdict are necessary to facilitate distribution of any damage award[.]" Jt. Pre-Trial Order, Dkt. No. 210 at 21. In other words, XOOM argues that a special verdict form is required to specifically find the inputs of the rate formula specified in the contract.

15

is tied to the class's theory of liability."); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) ("Accordingly, because we do not read *Comcast* as precluding class certification where damages are not capable of measurement on a classwide basis, we reject the district court's sole reason for denying Plaintiffs' motion for class certification."). Because *Comcast* concerns are absent here, the Class should remain certified.

### III. THE COURT CAN BIFURCATE LIABILITY AND DAMAGES PROCEEDINGS AND APPOINT A SPECIAL MASTER TO CALCULATE DAMAGES

If the Court declines to reconsider its Order excluding Plaintiff's expert's damages testimony, it should bifurcate liability and damages proceedings, and at the liability trial pose special verdict questions to the jury pursuant to Rule 49.[8] "The language and spirit of the Federal Rules of Civil Procedure not only permit trial judges to sever issues for trial, they encourage them to employ this procedure where it would facilitate Rule 23's purpose of 'achieving economies of time, effort, and expense, and promoting uniformity of decision as to persons similarly situated' as well as Rule 1's overarching goal of ensuring a fair and efficient remedy for every wrong." *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 29 (E.D.N.Y. 2001).

The Court has broad discretion whether to bifurcate the trial, *In re September 11 Litig.*, 802 F.3d 314, 339 (2d Cir. 2015), which is expressly permitted by Rule 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). The Second Circuit has expressly approved this approach. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) ("[B]ifurcating liability and damage trials with the same or different juries"

---

[8] This is expressly permitted by the Federal Rules. Rule 23(d)(2) authorizes the Court to manage a class action in combination "with an order under Rule 16." Rule 16(c)(2)(M) authorizes a court to order separate trials under Rule 42(b). Rule 42(b) allows a court to hold a trial on the issue of liability. Rule 49 separately allows a court to "require a jury to return only a special verdict in the form of a special written finding on each issue of fact."

and "appointing a magistrate judge or special master to preside over individual damages proceedings" are "management tools available to a district court" in a class action.); *see also In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 226 ("[A] court may properly employ this technique to separate the issue of liability from damages."); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 243 (S.D.N.Y. 2010) ("The Second Circuit has endorsed several such solutions, including: appointing a magistrate judge or special master to preside over individual damages proceedings[.]" (cleaned up)). Therefore, "[t]he prospect of separate proceedings to determine damages, however, need not defeat class treatment[.]" *Id.*

Under Rule 42(b), bifurcation is appropriate for "convenience, to avoid prejudice, or to expedite and economize." "[O]nly one of the three conditions specified in the rule . . . [is] needed to justify ordering separate trials." *Sjunde AP-Fonden v. Gen. Elec. Co.*, --- F. Supp. 3d ---, 2024 WL 1208778, at *2 (S.D.N.Y. Mar. 21, 2024), 2024 WL 1208778, at *2 (quoting *Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, No. 20 Civ. 4984 (GHW), 2021 WL 706646, at *4 n.2 (S.D.N.Y. Feb. 22, 2021). Here, as explained below, bifurcation advances all three.

First, many Courts in this Circuit appreciate the convenience of bifurcating liability and damages proceedings in class actions. *See, e.g.*, *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 14 Civ. 6549, 2022 WL 3362429, at *6 (CM) (RWL) (S.D.N.Y. Aug. 15, 2022) (noting that liability and damages will "certainly" be bifurcated); *In re Adelphia Commc'ns Corp.*, 638 B.R. 506, 509 n.2 (S.D.N.Y. 2022) ("the issues have been bifurcated between coverage and damages"); *Ravina v. Columbia Univ.*, No. 16 Civ. 2137 (RA), 2020 WL 1080780, at *2 (S.D.N.Y. Mar. 6, 2020) (noting the trial "was bifurcated into a liability phase and a damages phase); *E.E.O.C. v. Mavis Discount Tire, Inc.*, 129 F. Supp. 3d 90, 119 (S.D.N.Y. 2015) ("[T]he Court finds that bifurcation of the liability and remedial portions of the trial is appropriate."); *Janes v. Triborough*

17

*Bridge & Tunnel Auth.*, No. 06 Civ. 1427 (BSJ) (HBP), 2011 WL 10885430, at *6 (S.D.N.Y. Oct. 5, 2011) ("Accordingly, the Court orders that the proceedings be bifurcated into a liability phase (in which the constitutional claims will be tried) and a damages phase (in which the state law claims will be tried)."); *United States v. City of New York*, No. 07 Civ. 2067 (NGG) (RLM), 2011 WL 3174084, at *33 (E.D.N.Y. July 8, 2011) ("[A] special master is one of the tools available to the court to make class actions more manageable."); *Charron*, 269 F.R.D. at 243 ("Here, should the Liability Class succeed in proving that [Defendant's] alleged scheme violated RICO and/or the NYCPA, the Court will consider all such management tools for addressing individualized issues of causation and damages.").

If the Court denies reconsideration, this case would be well suited for a bifurcated liability-only trial with special verdict questions posed to the jury. The factual disputes for the jury's resolution are: (1) whether XOOM "considered factors beyond its actual and estimated supply costs in setting variable rates;" (2) XOOM's total costs; and (3) the reasonable and proportionate margin XOOM should have charged. Decertification Denial Order, at 4, Dkt. No. 246. These factual disputes can be answered for the entire class in one stroke. Once a jury answers them, all the inputs needed to calculate damages will be established. Indeed, because the parties agree on the proper equation for the calculation of damages, there can be no genuine dispute about damages after the jury determines the inputs of the equation.[9]

Second, if reconsideration is denied, bifurcation is appropriate and avoids unfair prejudice to Plaintiff and absent Class Members if the Class were decertified in lieu of bifurcation. Third, if liability and damages are bifurcated, determining damages would be economized and simplified

---

[9] Although there may be legal issues pertaining to XOOM's affirmative defenses, such as setoff, the Court will resolve those regardless of whether Plaintiff's expert's damages testimony is excluded. There can be no factual disputes regarding the mathematical calculations that would remain in such a scenario so a special master or magistrate is able to oversee those calculations.

by appointing a special master to oversee the damages phase and implement the purely mathematical calculations based on the jury's findings for the formula's inputs.

In sum, bifurcating liability and damages proceedings is a longstanding practice in which the Class can remain certified, is consistent with *Comcast*, and allows the jury to decide the outstanding disputed facts on the merits.[10]

## **CONCLUSION**

For the foregoing reasons, the Court should reconsider the Order and permit Plaintiff to either: (1) correct Model 2's calculation error and update it to incorporate XOOM's supplemental Class data production; or (2) present Model C to the jury. In the event that the Court does not permit Plaintiff to correct the calculation errors in Model 2 or present Model C as evidence of damages, the Class should remain certified and this case can proceed on a classwide basis.

Dated: October 4, 2024
      New York, New York

Respectfully submitted,

 /s/ Ethan D. Roman      
Ethan D. Roman

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
Steven L. Wittels
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
slw@wittelslaw.com

*Class Counsel for Plaintiff and the Class*

Richard Dolan
Bradley D. Simon

---

[10] In addition, Rule 23(c)(4) allows the court to certify a class only with "respect to particular issues." *Janes*, 2011 WL 10885430, at *6. This is unnecessary, but such a class could proceed to a classwide liability trial.

**SCHLAM STONE & DOLAN LLP**
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

Andrey Belenky
**KHEYFITS BELENKY LLP**
1140 AVENUE OF THE AMERICAS, 9TH FLOOR
NEW YORK, NY 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

*Co-Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2024, the foregoing was served via email on all counsel of record.

By:    /s/ Ethan D. Roman____
          Ethan D. Roman