**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSANNA MIRKIN,<br>Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>Defendants. | No. 18 Civ. 2949 (ARR) (JAM) |

**XOOM'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION AND
PLAINTIFF'S MEMORANDUM OF LAW ON CONTINUED CLASS TREATMENT**

# TABLE OF CONTENTS

I.   Plaintiff's Motion for Reconsideration Should Be Denied ................................................... 1

   A.   Model 2: The Court excluded it for a flaw in its "methodology" because it purported to be cost-based when it was in fact a rate-based formula........................................... 1

   B.   Model C: Plaintiff offers no reason to reconsider exclusion under Rule 37................ 3

      1.   Plaintiff's claimed misunderstanding of Model 2 would not warrant reconsideration even if that claim was true (which it is not). ................................ 4

      2.   Plaintiff's arguments regarding prejudice do not warrant reconsideration either... 8

II.  The Case Can No Longer Proceed on a Class Basis (If at All)...........................................11

   A.   Plaintiff Does Not Even Try to Carry Her Rule 23 Burden on Commonality or Predominance....................................................................................................... 14

      1.   Plaintiff cannot meet her burden with respect to any overcharge class. ............... 15

         a.   Without a damage model, the certified overcharge class fails........................ 15

         b.   Without proof of an overcharge, Plaintiff now cannot prove breach either.... 19

      2.   The case cannot proceed on a class basis on a technical breach theory seeking nominal damages. ...................................................................................... 22

   B.   Plaintiff's brief does not address Rule 23's adequacy requirement. .......................... 24

   C.   The Court Should Revisit Summary Judgment. ....................................................... 27

Conclusion ......................................................................................................................... 28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Avery-Dennison Corp.*,
2005 WL 6019652 (D. Minn. Oct. 21, 2005) ..........................................................................7

*3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*,
2005 WL 6007042 (D. Minn. Aug. 29, 2005) .........................................................................4

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
301 F.R.D. 31 (S.D.N.Y.),
*objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014) ...........................................................9

*In re Amla Litig.*,
320 F. Supp. 578 (S.D.N.Y. 2018) ........................................................................................13

*Anthem, Inc. v. Express Scripts, Inc.*,
660 F. Supp. 3d 169 (S.D.N.Y. 2023)....................................................................................10

*Ault v. J.M. Smucker Co.*,
310 F.R.D. 59 (S.D.N.Y. 2015) .............................................................................................14

*Beastie Boys v. Monster Energy Co.*,
2014 WL 888235 (S.D.N.Y. Mar. 6, 2014) .............................................................................2

*Blalock Hardware Co. v. Seaboard Air Line Ry. Co.*,
86 S.E. 1025 (N.C. 1915)................................................................................................15, 16

*Boesen v. United Sports Publ'ns, Ltd.*,
2020 WL 7625222 (E.D.N.Y. Dec. 22, 2020) (Ross, J.) .........................................................1

*Bowen v. Fid. Bank*,
183 S.E. 266 (N.C. 1936).......................................................................................................22

*Bozick v. Conagra Foods, Inc.*,
2021 WL 1198320 (S.D.N.Y. Mar. 30, 2021) .........................................................................3

*Brazil v. Dole Packaged Foods, LLC*,
2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ........................................................................22

*Callahan v. Wallace*,
466 F.2d 59 (5th Cir. 1972) ...................................................................................................24

*Campbell v. United States*,
2011 WL 588344 (E.D. Va. Feb. 8, 2011),
*aff'd*, 470 F. App'x 153 (4th Cir. 2012).................................................................................4

*Capstone Logistics Hldgs. v. Navarrete*,
    2019 WL 12239656 (S.D.N.Y. Mar. 19, 2019) ...................................................................9

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
    2003 WL 22471909 (S.D.N.Y. Oct. 31, 2003) .................................................................9

*Comcast Corporation v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................ *passim*

*Commerzbank AG v. U.S. Bank, N.A.*,
    100 F.4th 362 (2d Cir. 2024) ..........................................................................................1

*In re Credit Suisse First Bos. Corp. (Lantronix, Inc.) Analyst Sec. Litig.*,
    250 F.R.D. 137 (S.D.N.Y. 2008) ..................................................................................15

*Cummings v. Connell*,
    402 F.3d 936 (9th Cir. 2005),
    *amended*, 2005 WL 1154321 (9th Cir. May 17, 2005)..................................................24

*Cummings v. Standard Reg. Co.*,
    265 F.3d 56 (1st Cir. 2001) .............................................................................................2

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006)........................................................................................8, 9

*Gouger & Veno, Inc. v. Diamondhead Corp.*,
    224 S.E.2d 278 (N.C. App. 1976) ................................................................................24

*Grand River Enters. Six Nations, Ltd. v. King*,
    783 F. Supp. 2d 516 (S.D.N.Y. 2011)............................................................................2

*Intersal, Inc. v. Hamilton*,
    373 N.C. 89 (N.C. 2019) .........................................................................................16, 19

*Jin v. Shanghai Original, Inc.*,
    2019 WL 11816612 (E.D.N.Y. July 10, 2019),
    *aff'd*, 990 F.3d 251 (2d Cir. 2021) ..........................................................................24, 27

*Kronenberg v. Allstate Ins. Co.*,
    -- F. Supp. 3d --, 2024 WL 4126306 (E.D.N.Y. Aug. 5, 2024)................................21, 23, 24

*Lara v. First Nat'l Ins. Co. of Am.*,
    25 F.4th 1134 (9th Cir. 2022) .......................................................................................19

*Lesch v. United States*,
    372 F. App'x 182 (2d Cir. 2010) .....................................................................................3

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007)...........................................................................2

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016)..................................................................14, 15, 23

*Morritt v. Stryker Corp.*,
  2011 WL 3876960 (E.D.N.Y. Sept. 1, 2011) ............................................................8

*Norwood v. Bain*,
  166 F.3d 243 (4th Cir. 1999) ......................................................................................24

*In re Pfizer Inc. Sec. Litig.*,
  819 F.3d 642 (2d Cir. 2016)..........................................................................................3

*Phillips v. City of New York*,
  775 F.3d 538 (2d Cir. 2015).......................................................................................10

*In re POM Wonderful LLC*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .........................................................14

*Redcell Corp. v. A. J. Trucco, Inc.*,
  2022 WL 3700148 (S.D.N.Y. Aug. 26, 2022) ............................................................2

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*,
  2011 WL 1239867 (E.D.N.Y. Mar. 30, 2011) ............................................................8

*S.W. v. City of New York*,
  2011 WL 3038776 (E.D.N.Y. July 25, 2011) .........................................................1, 9

*Sampson v. United Servs. Auto. Ass'n*,
  83 F.4th 414 (5th Cir. 2023) ...........................................................................19, 20, 21

*Samsung Elecs. Co. v. Nvidia Corp.*,
  314 F.R.D. 190 (E.D. Va. 2016) ..................................................................................4

*Sibley v. Sprint Nextel Corp.*,
  2013 WL 1819773 (D. Kan. Apr. 30, 2013) ..............................................................2

*Sitts v. Dairy Farmers of Am.*,
  2020 WL 3467993 (D. Vt. June 24, 2020) ................................................................2

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
  2024 WL 1208778 (S.D.N.Y. Mar. 21, 2024) ...........................................................9

*Smith v. Hamrick*,
  583 S.E.2d 676 (N.C. 2003)................................................................................22, 24

*Troitino v. Goodman*,
  35 S.E.2d 277 (N.C. 1945)................................................................................................15

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ........................................................13

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 26 ....................................................................................................2, 4

Fed. R. Civ. P. 37 .................................................................................................3, 4, 8

Fed. R. Civ. P. 53 .....................................................................................................18

Fed. R. Evid. 702 .......................................................................................................3

## I.     **PLAINTIFF'S MOTION FOR RECONSIDERATION SHOULD BE DENIED**

Plaintiff's motion is not a proper reconsideration request. It cites no new evidence or law, no clear error, and no manifest injustice—nothing "that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (cleaned up). Instead, it wrongly contends that: as to Model 2, the Court's *Daubert* Order "overlooks" that its **stated** alignment with Plaintiff's liability theory means its (now admitted) **formulaic** failure to apply that theory can be excused as a simple "calculation error;" and as to the new Model C, excluding it is too harsh a sanction because (1) Plaintiff's counsel did not understand the problem with Model 2 until the *Daubert* Order explained it, and (2) prejudice to XOOM can be cured by a continuance and shifting future discovery costs.[1] Because the Court already considered and rightly rejected each of Plaintiff's arguments, her "extraordinary request" for reconsideration should be denied. *Boesen v. United Sports Publ'ns, Ltd.*, 2020 WL 7625222, at *1 (E.D.N.Y. Dec. 22, 2020) (Ross, J.).

### A.     **Model 2: The Court excluded it for a flaw in its "methodology" because it purported to be cost-based when it was in fact a rate-based formula.**

Plaintiff first argues that the Court erred by "overlook[ing] that Model 2's [stated] **theory of damages** is consistent with Plaintiff's theory of liability," Pl. Mem. 1, though its formula was not. But the Court was fully aware of that disconnect between Model 2's stated and formulaic theories. Indeed, that flaw was the Court's basis for exclusion: "the Original Report simply does not measure what plaintiff's expert claimed that it measured." *Id.* 23. The Court explained that although "Model C in the Amended Report relies upon **the same underlying opinion** as Model 2

---

[1] Plaintiff does not ask the Court to reconsider its decision to exclude Model 1 or Methods A or B. But she does seek **new** relief: leave to update Model 2 to conform it to Method C. Of course, that relief would simply undo the Court's careful rulings. And because Plaintiff wholly fails to offer a reason why she could not request that relief earlier, it should be rejected out of hand.

1

in the Original Report . . . the two reports rely on different formulas." *Id.* 17. The discrepancy between Model 2's stated **cost-based theory** of liability and its formula's **rate-based calculation** was "a fundamental mismatch" requiring exclusion as proof of damages because it failed to "measure damages that result from the class's theory of injury." *Id.* (citations omitted).

Plaintiff no longer denies that mismatch. She now admits that Model 2's and Model C's formulas are not the same—and that Model 2's formula "do[es] not match the model's theory of damages." Pl. Mem. 3. Plaintiff's admission that the Court got it right is dispositive.

Plaintiff nonetheless urges the Court to excuse Model 2's flaw as a simple "calculation error."[2] But the Court expressly considered and rejected that idea already, stating that "[t]he failure of plaintiff's damages model extends beyond a purely mathematical flaw in its methodology." Doc. 267, *Daubert* Order 23; *see id.* 19 ("Despite plaintiff's efforts to mask the flaws in her Original Report, and its distinguishability from the Amended Report, . . . the alterations to the Original Report are too great for the former to 'supplement' the latter under Rule 26."); *id.* 22 ("[T]he reports use different formulas and [] the outputs created from those formulas measure different concepts."); *id.* 24 (noting that Model C "relies on an entirely new methodology"). Indeed, the Court attributed Plaintiff's previous attempt to downplay the differences in her models' formulas

---

[2] Plaintiff's cited cases involved **technical** errors, not methodological errors like hers. *See Sitts v. Dairy Farmers of Am.*, 2020 WL 3467993, at *3 (D. Vt. June 24, 2020) (correcting processing error allowed where expert "applied the **same regression methodology** he previously employed" (emphasis added)); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 656–57 (S.D.N.Y. 2007) (correcting data entry errors like "treat[ing] a negative as a positive"); *Sibley v. Sprint Nextel Corp.*, 2013 WL 1819773, at *3 (D. Kan. Apr. 30, 2013) (same, for coding error); *Cummings v. Standard Reg. Co.*, 265 F.3d 56, 65 (1st Cir. 2001) (same, for purely computational error); *Beastie Boys v. Monster Energy Co.*, 2014 WL 888235, at *3 (S.D.N.Y. Mar. 6, 2014) (expert's incorrect assumption about duration could be corrected); *accord Grand River Enters. Six Nations, Ltd. v. King*, 783 F. Supp. 2d 516, 527 (S.D.N.Y. 2011) (expert used "textbook economic methodologies which are generally accepted and widely used" and defendants only "question[ed] certain data [the expert] used"); *Redcell Corp. v. A. J. Trucco, Inc.*, 2022 WL 3700148, *9 (S.D.N.Y. Aug. 26, 2022) (whether expert averaged correct sets of numbers was jury issue).

to either a failure to understand them or, worse, an effort to mislead the Court. *Id.* 28. Plaintiff's current characterization of Model 2's flaw as a "calculation error" is no different.

Moreover, Plaintiff's argument that the flaw in Model 2's methodology is an excusable "calculation error" suggests that as long as an expert's advertised theory is consistent with a plaintiff's liability case, a failure to translate the theory to a model is subject to correction at any time. That suggestion directly contravenes *Comcast Corporation v. Behrend*, 569 U.S. 27, 38 (2013) ("The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." (emphasis in original)). And as this Court stated, the purpose of a *Daubert* motion is to assess both "'the principles and methodology employed by the expert, . . . [to] assess[] whether the expert ***appl[ied] his stated methodology reliably*** to the facts of the case[.]'" *Daubert* Order 7 (quoting *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 662 (2d Cir. 2016) (emphasis added)). When an expert does not apply his stated methodology to the facts of the case, as Plaintiff now admits happened here, "*Daubert* and Rule 702 ***mandate*** [its] exclusion [.]" *Pfizer*, 819 F.3d at 662 (cleaned up, emphasis added). Thus, a disconnect between a liability theory and a damage model is no mere "calculation error;" it is a fundamental flaw that prohibits use of the model. *See id.* Plaintiff is not entitled "to offer a new theory out of time when [XOOM] has demonstrated that [Plaintiff's] initial theory is incorrect." *Daubert* Order 23 (quoting *Bozick v. Conagra Foods, Inc.*, 2021 WL 1198320, at *3 (S.D.N.Y. Mar. 30, 2021)).

In sum, because Plaintiff presents no argument that the *Daubert* Order did not fully consider, reconsideration as to Model 2 is not warranted. *See Lesch v. United States*, 372 F. App'x 182, 183 (2d Cir. 2010) ("[A] motion to reconsider should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided.").

**B.    Model C: Plaintiff offers no reason to reconsider exclusion under Rule 37.**

Plaintiff's arguments do not justify reconsidering the Court's exclusion of her untimely

Model C.  They were wrong when originally urged and do not satisfy the "strict" reconsideration standard either. The Court already considered and rightly rejected each of her arguments.

1.  <u>Plaintiff's claimed misunderstanding of Model 2 would not warrant reconsideration even if that claim was true (which it is not).</u>

Plaintiff's first argument for why it is unfair to exclude Model C is that her lawyers did not understand that Model 2 used a rate-based formula until the Court explained that fact in its *Daubert* Order: "Class Counsel thought the calculations in [Model 2] of the Original Report reflected the report's words and was unaware of the error prior to the Order." Pl. Mem. 3; *see id.* 4, n.2 ("Class Counsel was unaware of Model 2's calculation error or the fact that Model C corrected it."); *id.* 7 (Counsel "failed to appreciate that Model C had fixed a calculation in Model 2 that Class Counsel had not spotted."). Even if that was true, it would be no basis for reconsideration. The Court already considered the possibility that "plaintiff's counsel and her expert do not fully understand their own models"—and found that that would not be "'substantial' justification for plaintiff's untimely disclosure under Rule 37." *Daubert* Order 28. Plaintiff presents no reason to reconsider that conclusion.[3]

Rather than support reconsideration, counsel's assertions that they did not understand the mismatch between Model 2's words and formula and were "unaware of the error prior to the Order" only strengthens the Court's decision because those assertions are not true. Plaintiff's combined

---

[3] Case law amply supports the Court's conclusion. *See 3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*, 2005 WL 6007042, at *4 (D. Minn. Aug. 29, 2005) ("Rule 26 provides 'no safe harbor' for a party's 'lack of diligence.'"); *Campbell v. United States*, 2011 WL 588344, at *4 (E.D. Va. Feb. 8, 2011) ("Eventually counsel took the blame for the report's failure [but] the explanation does not substantially justify the report's deficiencies nor render them harmless. . . . [D]isqualification is the proper sanction for [plaintiff]'s failure."), *aff'd*, 470 F. App'x 153, 156 (4th Cir. 2012). Lawyers have an "obligation" to "fully understand what their retained experts are doing and to make Rule 26 disclosures accordingly." *Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 201 (E.D. Va. 2016). Plaintiff also acknowledged that "[]familiarity with the suit" and "[]willingness to learn about the facts underlying their claims" are minimal requirements to represent a class. Doc. 132, Pl. Class Cert. Mem. 28–29.

opposition to XOOM's expert motions explained in detail that while Model 2's formula had been rate-based, it was amended in Model C to align with Model 2's cost-based theory and the Court's contract construction:

> ***Model Two calculated XOOM's margin as a function of XOOM's rate***. Model Two and the Court's proportionate margin construction requires a percentage adder be added to XOOM's ***costs***. That requires calculating XOOM's margin as a function of XOOM's ***costs***, which is what the Amended Report does."

Doc. 248, Pl. Exp. Opp. 24 (emphasis in original). Plaintiff's counsel unquestionably knew about the disconnect between Model 2's liability theory and its formula—and Model C's attempt to correct it—"prior to the Order." An amended report with Model C was offered for those very reasons.

Plaintiff's expert Seabron Adamson explained that in even greater detail in his declaration attached to Plaintiff's opposition brief. He said that he changed the methodology for Model C ***because*** "Class Counsel" told him that "the Court's construction of the [agreement]'s pricing term require[d]" a cost-based margin. Doc. 248-1, Adamson Decl. ¶ 5 ("I understand from Class Counsel that the Summary Judgment Order requires XOOM's margin be proportionate to the supply costs in XOOM's rate-setting workbooks (RSWs). . . . [B]oth XOOM and the placeholder fixed margins used in the Original Report calculated margin by reference to XOOM's ultimate rate, this is a 'price-based' margin." (emphasis added)); *id.* ¶ 12 ("The difference in the Amended Report is that it now removes the placeholder contemporaneous 'price-based' margins and [*sic*] consistent with the court's August 2023 ruling and replaces it with a margin that is proportionate to cost (not rate), i.e., a margin that is a cost-based margin, as ***I understand from Class Counsel*** the Court's construction of the SA's pricing term requires." (emphasis added)).

Mr. Adamson's declaration includes two pages explaining (and illustrating with mathematical formulas) the methodological differences between Model 2 and Model C. *Id.* ¶¶ 7-

12. Plaintiff's counsel cited those sections of the declaration extensively—and demonstrated that they fully understood the distinction between Model 2's rate-based formula and Model C's cost-based formula by further explaining it in their opposition to XOOM's expert motions. *See, e.g.*, Pl. Exp. Opp. 24 (explaining that "Model Two calculated XOOM's margin as a function of XOOM's **rate**," and "what the Amended Report does" is "calculate[e] XOOM's margin as a function of XOOM's **costs**" (citing Adamson Decl. ¶¶ 6–7, 10–12)); Pl. Exp. Opp. 25 ("The reason[] the margin figure changed is because . . . the margin is now expressed in terms of cost." (citing Amended Report ¶¶ 73, 108–109; Adamson Decl. ¶ 11–12, 19.)); Pl. Exp. Opp. 31 ("Method C . . . exchanges the Original Report's placeholder margins that XOOM had calculated as a function of rate with a proportionate margin calculated as a function of XOOM's costs." (citing Adamson Decl. ¶ 38)); Pl. Exp. Opp. 44 (acknowledging that Model C "express[es] the combination of cost, rate, and margin in a way that differs from Model Two"); *id.* 45 ("[T]he Amended Report now simply replaces the placeholder (price-based) fixed rate margins used in Model 2 with the (cost-based) proposed reasonable margins outlined in Methods A–C."); *id.* 48 n.22 (attributing differences between Model 2 and Model C margin inputs and outputs to "swapping price-based margins for cost-based margins"); *id.* 56–57 (twice acknowledging the "price based placeholder inputs of Model Two" and the "cost-based ***methodology*** of the model itself").[4] Plaintiff's expert's and lawyers' own words thus show that they fully understood before the Order that Model C changed Model 2's formula.

It is reasonably clear that Plaintiff's expert and lawyers knew or should have known about

---

[4] Plaintiff also asserts that "[c]ontrary to the Court's Order, Plaintiff did not 'fail to disclose her intention to advance new opinions and methodologies,' . . . but instead failed to appreciate that Model C had fixed a calculation error in Model Two that Class Counsel had not spotted." Pl. Mem. 7. Even if Plaintiff did not know Model 2 worked differently than advertised, the Court correctly found she failed to disclose her intention to advance new opinions and methodologies.

the disconnect between her liability theory and Model 2's formula at least months earlier. XOOM's March 1 decertification motion explained that Model 2's calculations were "not based on or in proportion to costs" and that "[b]ecause **Model Two does not attempt to calculate margins that are proportionate to XOOM's costs**, it is incompatible with the Court's proportionate-margin construction." Doc. 197, Def. Decert. Mot. 13-14 (emphasis added). A few weeks later, Plaintiff first stated her intention to amend her report and model to conform them to the Court's contract construction.[5] *See* Doc. 187, Apr. 1, Ltr. ("[T]he amended report will account for . . . Judge Ross's August 2023 construction (for the first time) of the contract term at the center of this breach of contract case[.]"). And as Plaintiff's expert's declaration explained, conforming the model to the Court's construction meant changing the rate-based margin to a cost-based one. *See* Adamson Decl. ¶¶ 5–12 ("[T]he Amended Report . . . now removes the placeholder contemporaneous 'price-based' margins and [*sic*] consistent with the court's August 2023 ruling and replaces it with a margin that is proportionate to cost (not rate)[.]"); *see also id.* ¶¶ 18, 38–39, 59–62.

But again, even if Plaintiff was ignorant about Model 2's deficiencies or their significance until the *Daubert* Order issued, it would not matter. As the Court stated, there is "no justification" for Plaintiff's "failure to inform her expert" about her theory of liability. *Daubert* Order 26 (citing *3M Innovative Props. Co. v. Avery-Dennison Corp.*, 2005 WL 6019652, at *1 (D. Minn. Oct. 21, 2005)). Whether "plaintiff's counsel and her expert d[id] not fully understand their own models," as they now claim, or whether, as their earlier filings show, "they kn[e]w that the Original Report is flawed and that the Amended Report corrects its flaws, but attempted to mislead [the Court] into

---

[5] Plaintiff claims that her models did not change in response to XOOM's arguments because her **lawyers** did not know how her model worked prior to the Court's Order (or, perhaps, not until XOOM filed its expert challenge). But Plaintiff makes no such claim on behalf of the **experts** who purportedly "r[a]n the damages calculations afresh rather than importing model 2's calculations and therefore did not carry over the same calculation error into Model C." Pl. Mem. 4 n.2.

believing that the two models are identical," reconsideration is not appropriate. *Daubert* Order 28. The Court already considered each possibility and concluded that "[t]he former is plainly not a 'substantial' justification for plaintiff's untimely disclosure under Rule 37, whereas the latter amply supports the issuance of sanctions." *Id.* (citing Fed. R. Civ. P. 37(c)(1); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294, 296 (2d Cir. 2006)).

### 2. Plaintiff's arguments regarding prejudice do not warrant reconsideration either.

Plaintiff also asks for reconsideration of the Court's Rule 37 exclusion sanction based on arguments about prejudice to the class and XOOM. But these arguments are just a rehash of those in her combined opposition to XOOM's expert motions and do not call for reconsideration.

First, Plaintiff's protest against making the class bear the consequences of counsel's failings is not new and does not justify reconsideration. That this is a class action does not warrant special leniency. To the contrary, as the Court expressly noted, "[t]he *Daubert* analysis applies ***with special force*** to mathematical models purporting to serve as evidence of damages in [a] class action," as such a model must "measure only those damages attributable to t[he plaintiff's] theory' of injury." *Daubert* Order 7 (quoting *Comcast*, 569 U.S. at 35, emphasis added). And the importance of the evidence to the class "only serves to underscore that [Plaintiff's] delayed submission is inexcusable." *Id.* 28.

Second, the Court already rejected the argument that "a continuance" to allow XOOM to "re-depose" Plaintiff's expert would cure any prejudice to XOOM. A deposition would be just the first step in a process that would include a new rebuttal report by XOOM and a second *Daubert* motion, this time "to exclude the Amended Report, all of which w[ould] prolong this litigation and sap the parties' financial resources." *Daubert* Order 30 (citing *Morritt v. Stryker Corp.*, 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011); *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, 2011 WL 1239867 (E.D.N.Y. Mar. 30, 2011)). Plaintiff's presumption that Model

C can substitute for Model 2 without the need for another *Daubert* challenge, Pl. Mem. 8–9, directly contravenes the Order. *See Daubert* Order 30 ("XOOM's prejudice cannot be fully mitigated by simply rewinding the litigation to the class certification stage and concluding that plaintiff's Amended Report corrects the methodological flaw. . . . [T]he Amended Report may have introduced other flaws that have yet to be clearly raised or identified.").

Further, none of Plaintiff's cited cases were as far along as this one and the prejudice to the defendant would have been far less severe. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 2024 WL 1208778, *2 (S.D.N.Y. Mar. 21, 2024) (allowing expert deposition at other party's expense to cure the ***only*** prejudice where new opinions were submitted ***at summary judgment***); *S.W. v. City of New York*, 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011) (expert depositions had not occurred and new opinions were "clearly responsive to defendants' expert reports" and not a "surprise"); *Capstone Logistics Hldgs. v. Navarrete*, 2019 WL 12239656, at *5 (S.D.N.Y. Mar. 19, 2019) (report served ***one month*** after expert disclosure deadline and before discovery closed); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2003 WL 22471909, *1–2 (S.D.N.Y. Oct. 31, 2003) (expert reports submitted just after discovery closed).

By contrast, here, the Court's prior summary judgment, certification, and decertification decisions may now need to be "revisit[ed]," and Plaintiff's excessive delay "itself results in prejudice" that cannot be cured.[6] *Daubert* Order 29 (citing *Design Strategy, Inc.*, 469 F.3d at 297; *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y.), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014)). The Court also rightly observed that Plaintiff's changing her report and models in ***response*** to XOOM's arguments distinguishes it from cases

---

[6] Plaintiff asserts that "XOOM was on notice of Plaintiff's planned supplement in September 2023," Pl. Mem. 6. But XOOM only expected Plaintiff to update Model 2 to include recent charge ***data***—not to replace Model 2 with a new model and different formula.

involving mere delay and is itself prejudicial: "The disclosure of expert reports is not an opportunity for the proponent to seek their opponents' constructive feedback and to untimely reconfigure the expert's methodology to rebut any errors revealed by the opponent." *Daubert* Order 30; *see also id.* (quoting *Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169, 185 (S.D.N.Y. 2023)) (finding it improper to offer a new, untimely theory "when the responding party has demonstrated that the disclosing party's initial theory is incorrect").

Finally, as the Court recognized, if Model C is not excluded, XOOM's pending motions *in limine* and pretrial order submissions (which include stipulations, proposed findings of fact and law, jury instructions, and verdict forms) will need to be revisited and revised. *Daubert* Order 31.[7] Plaintiff's conclusory assertion to the contrary is a rehash and baseless. Plaintiff cannot predict what discovery would show about Model C, how XOOM would rebut and challenge it, how the Court would rule on those challenges, or how all of those matters would impact the parties' voluminous pretrial submissions.

In short, the Court properly recognized that everything from summary judgment onward would have to be redone, and that prejudice cannot be remedied. Thus, Plaintiff's suggestion that she pay for the costs of additional (but limited) "discovery" alone[8] is no basis for reconsideration— or any other relief.

---

[7] Some prejudice to XOOM might have been avoided had Plaintiff agreed to resolve XOOM's expert and decertification motions before setting a Joint Pretrial Order schedule. But Plaintiff opposed XOOM's request and "disagree[d]" with XOOM's expert arguments that she now admits were right all along. Doc. 229-8, Jan. 19 Tr. 9:6-9.

[8] This argument can also be summarily rejected because it was not raised in the first instance. *See Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) ("[A]rguments 'raised for the first time in [a] motion for reconsideration' are 'not properly presented to the district court' and, absent a reason to excuse the untimeliness, are waived by the party."). In fact, Plaintiff argued only that XOOM had waived the right to any additional expert discovery. Pl. Exp. Opp. 36–38.

## II.    THE CASE CAN NO LONGER PROCEED ON A CLASS BASIS (IF AT ALL).

The Court's exclusion of Plaintiff's damage models forecloses continued class treatment. To satisfy Rule 23's requirements, Plaintiff must have a damage model "'consistent with [her] liability case.'" *Comcast*, 569 U.S. at 35 (citation omitted). Plaintiff previously carried that burden by persuading the Court that her overcharge theory was backed by supposedly "precise" damage models. *See, e.g.*, Doc. 132, Pl. Cert. Mot. 3–4 (contending Plaintiff had "common proof [of] what the potential overcharge damages are" in the form of a "class-wide damages model"); Doc. 147, Pl. SJ Resp. 45 (arguing Model 2 "addresse[]s the fact that a rate 'based on' XOOM's [supply costs] must at least be proportional to XOOM's supply costs"). But with that Model 2 excluded as proof of damages, her Rule 23 foundation is gone and the grounds for certification necessarily collapse.

The Court certified the class based on the idea that Model 2 was "entirely consistent with plaintiff's theory" and could provide classwide proof of the rates XOOM's customers should have been charged. Doc. 152, Cert. Order 14. The Court denied XOOM's motion to decertify for the same reason. *See* Doc. 246, Decert. Order 15 ("[P]laintiff's experts have made clear that the overcharge model can accommodate a jury's assessment of what a reasonable margin would have been . . . ."); *see also* Doc. 200, Pl. Decert. Opp. 23 (contending that XOOM's decertification arguments provided "no basis for reconsideration" of class certification because "the class will rely on the approved Model Two" (emphasis removed)).

Things have changed significantly. Plaintiff abandoned her no-margin Model 1 at summary judgment and the Court noted in its *Daubert* Order that Model 1 does not accurately estimate damages. The Court's *Daubert* Order also established that "a fundamental mismatch" in Plaintiff's Model 2 precludes it from determining what XOOM's rates should have been on an overcharge

11

theory, *Daubert* Order 13, 23, and the Order entirely excluded the Amended Report's untimely Models A, B, and C, *see id.* 15–31.

Plaintiff therefore cannot calculate an overcharge. In other words, she has no way "to bridge the difference between" showing that XOOM's rates exceeded its costs (which under the Court's interpretation is permissible to some degree) and establishing the point at which a higher-than-cost rate became an impermissible overcharge. *See Comcast*, 569 U.S. at 38.

With a critical Rule 23 element now missing from Plaintiff's case, the Court ordered "supplemental briefing on whether or not classwide proceedings remain viable." *Daubert* Order 32. Given Plaintiff's continuing Rule 23 burden, that order made it incumbent on Plaintiff to show that Rule 23's factors remain satisfied. But her brief does not even try to address Rule 23, her burden, or explain how the class remains viable following the *Daubert* Order and its reasoning. She cites no authority—not one case in any jurisdiction—for allowing a Rule 23(b)(3) class to proceed without a damage model, let alone after exclusion of the model that served as the lynchpin for class certification and surviving summary judgment. Generic agreement about how an overcharge could hypothetically be calculated—the only real basis for Plaintiff's entire argument—cannot fill that void. Plaintiff seemingly knows this, summarizing her new position with the unsupported, *Comcast*-denying assertion that "a classwide damages model or expert opinion testimony is not **strictly** necessary."[9] Pl. Mem. 15 (emphasis added); *cf.* Decert. Order 6–7 ("Under *Comcast*, at the class certification stage, 'any model supporting a plaintiff's damages

---

[9] Plaintiff simultaneously agrees for the first time that any trial should use a special verdict form. Pl. Mem. 16. In doing so, she tacitly admits that any factfinding must occur at a more granular (and individualized) level than she previously acknowledged. *See* Doc. 210, Def.'s Proposed Jury Instr. & Verdict Form, Joint Pretrial Order; *cf.* Decert. Order 12 (explaining that if Model 2 works as Plaintiff claimed it would, "there will be no need for the sort of individualized analysis that XOOM insists is inevitable"). That alone belies Plaintiff's assertion that any "factual disputes can be answered for the entire class in one stroke." Pl. Mem. 18.

case must be consistent with its liability case." (quoting *Comcast*, 569 U.S. at 35)). That is entirely wrong.

Incredibly, Plaintiff further says that her experts and their damage models have always been superfluous because class damages are simply "a matter of mere arithmetic" that can be decided without any expert involvement at all. Pl. Mem. 12. Of course, she never said that in response to XOOM's certification, Rule 23(f), decertification, or *Daubert* arguments. And she does not explain why she never said so until now, or why the parties and Court spent years and significant resources on litigation that presumed otherwise. Instead, she proposes to simply offload all damage calculation matters to a special master—without indicating how Plaintiff would first prove those overcharges and damages—or how a special master could then calculate them. If what she means is that a special master should be allowed to use her excluded Model 2 or Model C, she is again wrong. Plaintiff cites no precedent authorizing that approach. That is unsurprising since it would constitute an implausible *Comcast* and *Daubert* loophole that would abrogate swaths of class-action precedent and allow plaintiffs to proceed to trial on a suggestion that a special master will smooth over any fundamental flaws in a critical (untested and excluded) damage model—all without being subjected to discovery or a *Daubert* challenge.

At this juncture, there is only one way forward: decertification. Plaintiff's lack of a viable damage model means she has no common proof of an overcharge or damages. That lack of common proof, in turn, necessarily requires decertification of any overcharge class—the only kind of class Plaintiff moved to certify. *Comcast*, 569 U.S. at 38 ("'The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.'" (citation omitted)); *see also In re Amla Litig.*, 320 F. Supp. 578, 591 (S.D.N.Y. 2018) (decertifying class after exclusion of expert conclusions because "there [was] no evidence in the

record" to support "any other theory of classwide relief"); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *7–14 (N.D. Cal. Dec. 15, 2014) (same, where untimely "supplemental" report tried to fix fatal errors in methodology); *In re POM Wonderful LLC*, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014) (same, where it became clear that expert's methodology could not "answer the critical question of why [a] price difference existed, or to what extent it was a result of [defendant's improper] actions"); *cf. Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 68 (S.D.N.Y. 2015) (denying certification because proposed methodology requirement "ma[de] no attempt to calculate the amount that consumers actually overpaid").

Moreover, as the Court observed, Plaintiff's inability to prove a reasonable and proportionate margin renders her unable to "reliably measur[e] [her] injury," *Daubert* Order 13–14, an intertwined issue of liability that forecloses Plaintiff from establishing an essential element of her overcharge claim and that XOOM respectfully submits also makes summary judgment appropriate as to both Plaintiff's and the class's overcharge claims. If Plaintiff can continue as to liability at all (i.e., if she can show breach without being able to show damages), it is only on a nominal damages theory. But Plaintiff does not argue for certification of a nominal damages class, much less carry a Rule 23 burden to show that class treatment of such a limited claim would be appropriate.

A.    **Plaintiff Does Not Even Try to Carry Her Rule 23 Burden on Commonality or Predominance.**

Pursuant to its "affirmative duty" to ensure class proceedings continue to satisfy Rule 23's requirements, *see, e.g.*, *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016), the Court ordered the parties to address whether "classwide proceedings remain viable" given the wholesale exclusion of Plaintiff's models as proof of damages, *Daubert* Order 32, and the Court's conclusion that Model 2 "cannot estimate the reasonable margins and prices proportionate to XOOM's costs

that plaintiff claims she should have been charged," *id.* 13. The burden to establish that class treatment remains appropriate falls first to Plaintiff, just as it did at class certification. *See, e.g.*, *Mazzei*, 829 F.3d at 266; *In re Credit Suisse First Bos. Corp. (Lantronix, Inc.) Analyst Sec. Litig.*, 250 F.R.D. 137, 140 (S.D.N.Y. 2008) ("In order to decide whether or not to decertify this class, the Court must determine whether Plaintiff has carried his burden of demonstrating that each element of Rule 23 is met by a preponderance of the evidence.").

      1.   <u>Plaintiff cannot meet her burden with respect to any overcharge class.</u>

         *a.  Without a damage model, the certified overcharge class fails.*

Plaintiff knows that the viability of her damage models is critical to the Rule 23 inquiry. At class certification, she expressly acknowledged that the existence of a valid "damages model is clearly a classwide issue" going to predominance. Doc. 135, Pl. Class Cert. Reply 7. And she argued that she met the predominance factor by "retain[ing] experienced energy economists" who would "determine an appropriate measure of damages" by "build[ing] models showing what XOOM's rates should have been." Pl. Class. Cert. Mem. 4. Plaintiff left no doubt about the centrality of this expert evidence to her case, emphasizing the "very technical" nature of the subject matter, *id.*, and touting the experts' "combined 35+ years of experience in the field of energy economics," as well as their "two detailed reports" and "deposition testimony" that "describ[ed] how they (i) calculated each Class Member's damages using common evidence and standardized damages models, and (2) determined the Class's total damages," *id.* 21.

Plaintiff's overcharge-based contract claim hinges on such evidence. Under North Carolina law, a plaintiff claiming to have been overcharged—like Plaintiff here—must present proof that "the amount charged by a defendant was in excess" of the amount she should have been charged. *Blalock Hardware Co. v. Seaboard Air Line Ry. Co.*, 86 S.E. 1025, 1026 (N.C. 1915); *see also Troitino v. Goodman*, 35 S.E.2d 277, 282 (N.C. 1945) (measuring contract damages as "the

pecuniary difference between [an injured party's] position upon breach of the contract and what it would have been, had the contract been performed"). Indeed, the "amount" of damages is a critical component of a North Carolina breach-of-contract claim. *See Intersal, Inc. v. Hamilton*, 373 N.C. 89, 108–09 (N.C. 2019) (listing "the amount of damages resulting to plaintiff" among the "necessary allegations for a breach-of-contract claim" and holding that "fail[ure] to allege an amount of damages" meant there was no viable contract claim under North Carolina law). That means Plaintiff cannot prevail on an overcharge claim merely by complaining about ***how*** her rates were set; instead, she must prove ***the amount she should have been charged***. Decert. Order 11 ("Under North Carolina law, 'the burden is upon the plaintiff to show that the amount charged by defendant was in excess of the rate' permitted by the contract.'" (cleaned up, quoting *Blalock*, 86 S.E. at 1026)). Without that proof, Plaintiff cannot establish liability, let alone damages. *Id.*; *Intersal*, 373 N.C. at 109.

Despite her prior acknowledgments of these standards and the Court's direct invitation to justify continued class certification, Plaintiff is silent as to how—without her models—she can still show what rates XOOM should have charged. Instead, she spends the bulk of her brief asking the Court to reconsider excluding Model 2 or Model C, all but conceding the appropriateness of decertifying the damages class without those two models. *See, e.g.*, Pl. Mem. 10 ("[C]lass certification need not be relitigated if Plaintiff is permitted to correct Model 2 or submit Model C.").

Beyond that, Plaintiff merely reiterates the three inputs the Court identified as part of the overcharge formula at summary judgment (estimated supply costs, actual supply costs, plus a reasonable and proportionate margin) and insists that they are all a lay factfinder needs to do the work that (until now) Plaintiff demurred was the province of trained economists. *See, e.g.*, Pl.

Mem. 13. That is not only implausible on its face, it still does not answer how a factfinder (much less Plaintiff's newly and cursorily suggested special master) can determine what margins XOOM should have used, measure them against XOOM's actual and estimated supply costs for a twelve-year period, and thus identify the "portion of XOOM's price that it never should have charged its customers." *Daubert* Order 13.

Plaintiff previously avoided decertification on that point because she convinced the Court that her expert could make that showing with common proof via Model 2. *See, e.g.*, Decert. Order 13–14. Now that Model 2 has been exposed as "faulty" and Plaintiff is "no longer . . . capable of accurately measuring damages on a class-wide basis," *id.* 16, the overcharge class cannot stand, *cf. Daubert* Order 13–14 ("[T]he Original Report cannot determine *how excessive* those prices were in comparison to the prices that the class should have been charged and is therefore incapable of reliably measuring plaintiff's injury."); *id.* 29 (XOOM's motion to exclude Plaintiff's Original Report has now revealed that the report's formula is faulty[.]").

So, what substitute does Plaintiff offer for Model 2 now? None.

That inability to ***prove*** an overcharge renders premature—if not moot—any discussion of bifurcating trial or appointing a special master to ***calculate*** damages. Plaintiff's brief provides no substantive reason to think either is necessary or appropriate. As to bifurcation, Plaintiff does little more than quote language from cases indicating courts have found bifurcation to be a helpful tool in managing class actions. Pl. Mem. 16–17. She also offers up the blanket statement that bifurcation "avoids unfair prejudice to Plaintiff and absent Class Members if the Class were decertified." *Id.* 18. None of this addresses how she can proceed with separate trials on liability and damages without a damage model or any proof of an overcharge. She cannot because, as discussed above, liability itself turns on proof of overcharge under the only theory she advances.

Plaintiff's special-master suggestion fares no better. She offers just one conclusory sentence to support it. *See id.* 18–19 ("[I]f, liability and damages are bifurcated, determining damages would be economized and simplified by appointing a special master to oversee the damages phase and implement the purely mathematical calculations based on the jury's findings and the formula's inputs."). That argument fails Rule 53's standard for appointment of special masters. Plaintiff identifies no "exceptional condition" to "warrant[]" such an action, Fed. R. Civ. P. 53(a)(1)(B)(i), and although the *Daubert* Order and Plaintiff's counsel's claimed ignorance about their damage models may be significant intervening events, they are not appropriate reasons to appoint a special master. Nor has Plaintiff explained why a special master is necessary "to perform an accounting or resolve a difficult computation of damages." Fed. R. Civ. P. 53(a)(1)(B)(ii). Indeed, the idea that this case involves difficult computational issues contradicts Plaintiff's new position that damages are simply an arithmetical matter for which no expert treatment is required.

Plaintiff also sheds no light on what exactly a special master would do with "the jury's findings and the formula's inputs," unless she intends to use the appointment of a master as a backdoor way to utilize the now-excluded Model C. That would perpetuate the "gamesmanship" the Court identified in the *Daubert* Order (at 23) and still force the parties to engage in another round of expert discovery. As the Court stated, it did not rule on "the accuracy or admissibility of plaintiff's Amended Report on its merits." *Daubert* Order 21. Rather, the Court recognized that "the Amended Report may have introduced other flaws that have yet to be clearly raised or identified," and "XOOM [did] not have sufficient time to fully investigate the Amended Report" given "plaintiff's excessive delay in producing" it. *Id.* 30.

18

As Plaintiff once recognized, what she really needs is an expert and a viable damage model, not a special master. But what Plaintiff seemingly suggests is to allow a special master to use the untimely and untested Model C that her expert cannot. That suggestion is entirely inappropriate and unprecedented. Plaintiff should not be allowed to do indirectly through a special master what the Court precluded her from doing directly with her expert.

>   b.  *Without proof of an overcharge, Plaintiff now cannot prove breach either.*

The exclusion of Plaintiff's putative proof of classwide damages means there is another fundamental deficiency in her case: she cannot show injury in the form of classwide proof of an overcharge. The *Daubert* Order highlights this when it concludes that, although the Original Report can show that XOOM's prices exceeded the amount of its estimated costs, it "cannot determine *how excessive* those prices were in comparison to the prices that the class should have been charged and is therefore incapable of reliably measuring plaintiff's injury." *Daubert* Order 13–14.

Plaintiff's inability to use common proof to show the existence of an overcharge is not just a problem for measuring damages. It is also a merits issue going to injury and thus breach under her overcharge theory. *See, e.g.*, *Intersal*, 373 N.C. at 108–09 (holding that the "**amount** of damages resulting to plaintiff" is an essential element of a contract claim (emphasis added)). If Plaintiff is to maintain even a liability class on an overcharge claim—the only liability class she certified and the only one she seeks continued certification of—then her ability to prove an overcharge classwide with common proof must be established now. *See Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414, 422 (5th Cir. 2023) (The suggestion that "individualized issues of harm are 'damages issues' that can be tried separately" is "not right either: if there's no injury, then the breach of contract . . . claim[] must fail. That's not a damages issue; that's a merits issue." (cleaned

up; citing *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022)). She cannot do so without a model that can measure an overcharge.

In *Sampson*, the Fifth Circuit vacated certification of a class when the plaintiffs (similarly) did not supply a model for measuring an underpayment. There, the district court certified a class of automobile insurance customers who argued that their insurer used a relatively rare methodology to value totaled vehicles that resulted in systematic underpayment on claims compared to more widely used valuation methods. *See* 83 F.4th at 417. The value of the vehicles thus was a key component of the underpayment calculation for both liability and damages. But the *Sampson* plaintiffs did not provide a ***model*** that measured their value. Instead, they offered multiple potential valuation methods "as equally legal and legitimate alternatives." *Id.* The Fifth Circuit held that the plaintiffs' "fail[ure] to put forward evidence or a theory that coherently indicates . . . *the* measure of [value] . . . [wa]s a serious concern that cannot be ignored by simply describing it as a 'merits' issue" and vacated class certification.[10] *Id.* at 421–22.Plaintiff's overcharge case suffers from the same flaw as the underpayment case in *Sampson*. Much as the *Sampson* plaintiffs did not supply a model to show what the defendant should have paid (to prove the alleged undercharge), Plaintiff here has not—and cannot—provide a model for measuring what XOOM should have charged (to prove the alleged overcharge).[11] Model 2 does not show a

---

[10] The *Sampson* Court also explained that class treatment was inappropriate because establishing a vehicle's actual cash value "depends on such things as *how damaged it is*," an individualized question that "creates an explosion of predominance issues" regardless of which model the plaintiffs ultimately used. *See* 83 F.4th at 419–20. Although the Fifth Circuit could have stopped there, it went on to analyze "a more fundamental problem" going to liability, "grant[ing] *arguendo* that the district court did not reversibly err by choosing an imperfect damages model at the class certification stage." *Id.* at 421. Plaintiffs therefore cannot brush *Sampson* aside by simply pointing to the individualized vehicle-valuations central to the theory of liability in that case.

[11] XOOM recognizes the Court's prior determinations that selecting an "input" margin value presents a disputed fact question appropriate for trial. *See, e.g.*, Decert. Order 5 ("I have not addressed the accuracy of the damage model's inputs, meanwhile, because I have determined that

reasonable and proportionate margin. *Daubert* Order 13 (Model 2 "cannot estimate the reasonable margins and prices proportionate to XOOM's costs that plaintiff claims she should have been charged"). So, her inability to measure an overcharge is not just "'a damages issue; [it's] a merits issue'" because "[t]here must be 'proof that there has been some damage,' i.e., 'that damage has actually occurred, before there is discretion to assess the *amount* of damages.'" *Sampson*, 83 F.4th at 422 (citation omitted).

Indeed, a court in this district considering a case similar to *Sampson* recently declined to certify a class for the same reason after it became clear that the plaintiff's "theory of injury [was] pegged" to a particular variable as to which the expert's "damages model [was] silent." *See Kronenberg v. Allstate Ins. Co.*, -- F. Supp. 3d --, 2024 WL 4126306, at *21 (E.D.N.Y. Aug. 5, 2024) (expert's "'proposed measure of harm [was] the difference between actual settlement payment and a counterfactual settlement payment free of unlawful adjustments'" (citation omitted)).[12]

Accordingly, even if Plaintiff can determine costs via classwide proof (despite her concession that the "Total Costs" in XOOM's rate-setting workbooks does ***not*** reflect its actual costs, Doc. 265, XOOM Ltr. Re: Doc. 264, Pl. Ltr. Mot.), Plaintiff has no viable classwide

---

two of those inputs [for actual costs and margin] are fact questions for the jury."). But now Plaintiff lacks a model capable of using any margin input to determine what rates XOOM should have charged. XOOM respectfully submits this presents a different issue than the one the Court previously addressed.

[12] As in *Sampson*, the *Kronenberg* court first concluded that "individual liability issues" relevant to setting the actual cash value for each class member's vehicle were themselves "sufficient to defeat predominance," but rather than "end there," went on to explain how flaws in the damage models at issue independently "also undermine[d] predominance" in ways that foreclosed class treatment on liability and damages grounds. *See* 2024 WL 4126306, at *21; *see also id.* at *12–13 (discussing *Sampson*).

methodology to determine an overcharge and thus classwide injury or damages, rendering her further unable to establish predominance under *Comcast*. *See* 569 U.S. at 35–36.

2. The case cannot proceed on a class basis on a technical breach theory seeking nominal damages.

That leaves the *Daubert* Order's suggestion (at 13–15) that a liability class may still exist on a non-overcharge theory, which the Court also alluded to in its order denying XOOM's decertification motion, *see* Decert. Order 16 n.9. Plaintiff briefly suggested in her decertification opposition that she could seek nominal damages as an alternative to actual damages. Pl. MOL in Opp. to Decert. Mot. 39–40. But she did not move for certification of a nominal damages class originally. And her brief on continued certification does not discuss nominal damages at all. Plaintiff's failure to request certification of a class to pursue a technical breach-of-contract theory and nominal damages (as opposed to her long-pursued overcharge theory with corresponding damages) means it need not be addressed at all.

And in any event, there is "no authority to suggest that a damages class should remain certified solely because nominal damages may be available, even though the class would otherwise be properly decertified." *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014). In *Brazil*, although the plaintiff (unlike Plaintiff here) did request continued certification of a class on a nominal damages theory, the district court still granted decertification because there was no authority to support a contrary result. *Id.*

XOOM of course disputes any breach but acknowledges the theoretical possibility of a non-overcharge technical breach claim premised on allegations that it incorporated factors beyond costs and margin into its rate-setting process. Doc. 151, SJ Order 19 (finding issue of fact "as to whether XOOM set the Mirkins' rates based on supply costs or based on other considerations"). Under North Carolina law, establishing the breach of contractual duties can qualify plaintiffs for

nominal damages awards if (as here) they are unable to establish compensatory damages. *See, e.g.*, *Bowen v. Fid. Bank*, 183 S.E. 266, 268 (N.C. 1936). But such awards are limited to "some trivial amount such as one dollar in recognition of a technical injury to the plaintiff." *Smith v. Hamrick*, 583 S.E.2d 676, 679 (N.C. 2003) (affirming use of pattern jury instruction on nominal damages).

If Plaintiff now desires to proceed on that theory, however, she must separately seek certification of a technical-breach and nominal-damages class and establish that such a class would satisfy Rule 23.[13] She cannot rest on the Court's prior order granting certification of the overcharge class when she has never carried her Rule 23 burden to show that a nominal damages class should be certified. *See* Pl. Decert Opp. 40 n. 30–31. The burden to certify any class always remains on Plaintiff. *See, e.g., Mazzei*, 829 F.3d at 270.

*Kronenberg* is again instructive. *See* 2024 WL 4126306, at *22–23. After finding that individual liability issues independently precluded class treatment, the *Kronenberg* court still went on to analyze whether the damages model at issue "also undermine[d] predominance" of its own accord, *id.* at *21, ultimately concluding that the model failed because it was "silent" on the correct baseline value upon which to calculate damages on an underpayment theory, *id.* at *21–22. The court therefore denied class certification. *Id.* at *23.

In doing so, the court discussed the possibility of a nominal-damages class based solely upon a technical breach of the plaintiff's contracts with their insurer. *See id.* at *22–23. But it "decline[d]" to do so *sua sponte* because (as here) the plaintiffs neither "invoke[d] nominal damages as a basis for establishing liability as to their breach of contract claim" nor "account[ed] for [nominal damages] at all" in their damages model. *Id.* at *22; *see also id.* at *23 (noting that

---

[13] Respectfully, XOOM also maintains that a nominal damages class is unavailable because Plaintiff has not pleaded a claim for nominal damages or sought leave to do so.

plaintiffs also had not "specifically pleaded" a nominal-damages theory or request). Rather than "resolve these hypothetical issues" on its own, the court "allow[ed]" the plaintiffs to seek certification under a nominal-damages theory—and solely that theory—in a second round of certification briefing. *Id.* at *23 ("emphasiz[ing] that this leave to renew [was] limited").[14]

*Kronenberg*'s approach not only is legally correct, it makes sense. A nominal-damages class presents different considerations than an overcharge class. For example, the rigorous analysis required by Rule 23 may show that class counsel could not responsibly argue for certification of a nominal-damages class given the likely *de minimis* amount of any class recovery. *See Hamrick*, 583 S.E.2d at 679–80 (nominal damages of $1); *Gouger & Veno, Inc. v. Diamondhead Corp.*, 224 S.E.2d 278, 279–80 (N.C. App. 1976) (one cent). It is possible that each class member could receive nominal damages, as the Ninth Circuit concluded in a case alleging constitutional violations. *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005), *amended*, 2005 WL 1154321 (9th Cir. May 17, 2005). On the other hand, the class could receive nominal damages of only $1 in total, as the Fourth Circuit directed in *Norwood v. Bain*, 166 F.3d 243, 245 (4th Cir. 1999). Either way, it is hard to imagine that any such recovery would be in class members' best interests or superior to other alternatives. Notably, the Fifth Circuit declined to award nominal damages at all in a Section 1983 class action because of "the difficulty of administering an award of a small amount to each of some 50,000 persons." *Callahan v. Wallace*, 466 F.2d 59, 62 (5th Cir. 1972).

## B.    Plaintiff's brief does not address Rule 23's adequacy requirement.

The Court's *Daubert* Order has implications beyond predominance and commonality. Its reasoning provides justification to re-examine the adequacy of class counsel in this case. *See, e.g.*, *Jin v. Shanghai Original, Inc.*, 2019 WL 11816612, at *2–3 (E.D.N.Y. July 10, 2019), *aff'd*, 990

---

[14] In response, the plaintiff dismissed the relevant defendant. No. 1:18-cv-06899, Doc. 149.

F.3d 251, 261–63 (2d Cir. 2021). Those concerns are heightened by Plaintiff's brief here, which downplays the critical mismatch between Model 2 and Model C as a math error—despite the Court's express holding that the "failure of plaintiff's damages model extends beyond a purely mathematical flaw in its methodology" and its criticism of Plaintiff's "counsel's and expert's attempt to mask the meaningful differences between the two reports' methodology." *Daubert* Order 12, 19. Indeed, Plaintiff's brief makes the false statement that counsel thought Model 2's formula "reflected the [Original Report's] words and was unaware of the error prior to the Order." Pl. Mem. 3. The brief also treats the Court's *Daubert* Order as an invitation to abandon Plaintiff's longstanding reliance on expert evidence and disavow its necessity in the first instance, begging the question why Plaintiff grounded her case on expert theories for almost six years and stubbornly resisted testing their validity for much of this year. Neither approach mitigates the Court's intuition that counsel either (1) did not (or still do not) "fully understand their own models," or (2) knew that the Amended Report attempted to correct the Original Reports "flaws," but nonetheless tried to pass them off as "identical" even though Model 2's rate-based formula (as they knew) differed from Model C's cost-based formula. *Id.* 28.

It is possible that Plaintiff's counsel meant to say they understood that a change in methodology had occurred, but simply failed to understand its significance until the *Daubert* Order issued. But even that possibility seems unlikely given the relevant chronology. Counsel avers that they "contemplated" the Amended Report's necessity "immediately after the Court's summary judgment and class certification orders." Pl. Mem. 6. But they did not mention anything to XOOM besides updating Model 2's calculations with the most recent charge data. They never mentioned a new report to XOOM until seven months later, on March 26, 2024, shortly after XOOM's motion to decertify argued that "[b]ecause Model 2 does not attempt to calculate margins that are

proportionate to XOOM's costs, it is incompatible with the Court's proportionate-margin construction." Def. Decert. Mot. 13–14.

On March 26, Plaintiff unexpectedly asked XOOM to agree to two brand new pretrial deadlines: (1) a deadline for Plaintiff to serve an "updated" expert report a month later, and a deadline for "further expert depositions" a month after that. Ex. 1, Plaintiff's email.[15] Those new events and deadlines had never been discussed, and suggested to XOOM that Plaintiff planned more than refreshed calculations. XOOM then asked whether the planned expert changes went beyond an update in "math," and Plaintiff's counsel responded that the proposed report would contain both a data update *and* change how she was drawing the comparable-fixed rate margin in Model 2. XOOM would agree only to an updated calculation, not any change in methodology. So, the parties' April 1 letter to the Court followed. *See* Ex. 2, XOOM email.

Plaintiff could have disclosed her intention to advance new opinions and methodologies at that time but did not. *See Daubert* Order 26-27. Instead, she made the decision to wait until May 10 to "belatedly offer[] an Amended Report that attempts to correct [errors in the Original Report] by substituting a different formula." *Id.* 23. By then, as the *Daubert* Order recounts, the parties had engaged in further (and extensive briefing) on decertification, motions *in limine*, and had filed the Joint Pretrial Order (which included, *e.g.*, XOOM's trial memorandum, proposed findings of fact and conclusions of law, deposition designations, jury instructions, and verdict form). XOOM's challenges to Model 2 featured prominently in these filings. Through it all, Plaintiff continued to vigorously defend Model 2 rather than forthrightly admit that its algorithm started from the wrong

---

[15] Exhibits referenced here are annexed to the accompanying Declaration of Michael D. Matthews, Jr.

place. She instead argued that "Model Two never had 'problems' and Models A–C merely update its accepted damages methodology." Pl. Exp. Opp. 26; *see also id.* 36.

Only in the wake of the *Daubert* Order has Plaintiff's counsel acknowledged that Model 2 is flawed. But they cannot tell a straight story about when they learned of Model 2's shortcomings, variously stating in the brief that they learned Model 2 needed to be changed either after summary judgment (at 6), after XOOM's *Daubert* filing (at 6), or after the *Daubert* Order (at 1).

Regardless of when they knew, counsel's litigation conduct necessitated redundant and wasteful litigation that has burdened XOOM and the Court and left Plaintiff and the class facing decertification with no way to prove damages or an injury. The Court should require Plaintiff to show—because it is ***her*** burden—that the adequacy requirements of Rule 23(a)(4) continue to be satisfied at this juncture. *See Jin*, 2019 WL 11816612, at *3 (collecting authorities explaining that the adequacy inquiry includes assessing whether counsel can "competently, responsibly, and vigorously prosecute the suit," with, *inter alia*, "integrity" and "loyalty" (citations omitted)).

### C.    The Court Should Revisit Summary Judgment.

Finally, the *Daubert* Order observed that the failure of Model 2 "may require that [the Court] now revisit the validity of [its] prior orders" that presumed Model 2's viability. *Daubert* Order 29. XOOM respectfully submits that the Summary Judgment Order should be among the matters revisited. The *Daubert* Order reasons that the Original Report "remains admissible as evidence of liability" and breach even though it "is fatally flawed as a measure of damages." *Id.* 13. At the same time, the *Daubert* Order concludes that Plaintiff can no longer "determine *how excessive* [XOOM's] prices were in comparison to the prices that the class should have been charged and is therefore incapable of reliably measuring plaintiff's injury." *Id.* 14.

For the reasons explained above, Plaintiff's inability to show damages—in an overcharge case—also speaks directly to injury and breach. Under the operative construction of the contract's

pricing term, XOOM was allowed to charge its customers a reasonable and proportionate margin over and above the value of its estimated and actual supply costs. Plaintiff's breach-of-contract case therefore depended on her ability to show the point at which an otherwise permissible margin became excessive—i.e., an overcharge. If "the Original Report shows that XOOM's actual prices were excessive in comparison to its costs," that is not indicative of overcharge liability. It shows only that XOOM was charging its customers a margin. So, allowing Plaintiff's expert to suggest that any margin above costs could be evidence of liability would effectively allow Plaintiff to use the no-margin Model 1 that she abandoned at summary judgment and the Court later excluded. And Plaintiffs' expert, for his part, testified that he did not view Model 2 as addressing liability. *See* Ex. 3, Adamson Dep. 94:13–95:2 (declining to say that Model 2 represents breach of the contract); *cf. id.* at 88:4–10 (testifying that ***Model 1*** is "consistent with the contract language").

After the *Daubert* Order, Plaintiff has no evidence of (1) where a margin stops being "reasonable and proportionate," or (2) the extent of any overcharge. Accordingly, XOOM asks the Court to also consider whether Plaintiff's overcharge case may be maintained at all, and respectfully submits that Plaintiff's lack of evidence as to both a methodology and an essential input should result in summary judgment for XOOM on Plaintiff's overcharge claim.

## CONCLUSION

Plaintiff's motion for reconsideration should be denied in its entirety and, because Plaintiff has no model capable of proving classwide damages, the Court should decertify the class.

Dated: November 1, 2024                    MCDOWELL HETHERINGTON LLP

                                           */s/ Michael D. Matthews, Jr*
                                           Michael D. Matthews, Jr.
                                           Diane S. Wizig (admitted *pro hac vice*)
                                           David L. Villarreal (admitted *pro hac vice*)
                                           Netra Sreeprakash

Justin R. Chapa (*pro hac* forthcoming)
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com
david.villarreal@mhllp.com
netra.sreeprakash@mhllp.com
justin.chapa@mhllp.com

*Attorneys for Defendants XOOM Energy, LLC and XOOM Energy New York, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the 1st day of November, 2024, via email on all counsel of record.

/s/*Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.

29