# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>Defendants. | Case No.: 18 Civ. 2949 (ARR) (JAM)<br><br>**ORAL ARGUMENT REQUESTED** |

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR RECONSIDERATION OF AND RELIEF FROM
THE COURT'S SEPTEMBER 11, 2024 ORDER (DKT. NO. 267),
AND BRIEFING ON WHY THIS CASE CAN PROCEED ON A CLASSWIDE BASIS**

---

WITTELS MCINTURFF PALIKOVIC
Ethan D. Roman
J. Burkett McInturff
Steven L. Wittels
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
slw@wittelslaw.com

**KHEYFITS BELENKY LLP**
Andrey Belenky
1140 AVENUE OF THE AMERICAS 9TH FLOOR
NEW YORK, NEW YORK 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

**SCHLAM STONE & DOLAN LLP**
Richard Dolan
Bradley D. Simon
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

Dated:  November 22, 2024

## <u>TABLE OF CONTENTS</u>

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION ............................................... 1

I.   MODEL 2'S METHODOLOGY IS CONSISTENT WITH PLAINTIFF'S THEORY OF LIABILITY, BUT IT CONTAINED A MATHEMATICAL ERROR ....... 1

II.   AN EXPERT'S MATHEMATICAL ERRORS ARE CORRECTIBLE ........................... 3

III.   EXCLUDING BOTH REPORTS IS TOO HARSH A SANCTION AND PLAINTIFF'S PROPOSED REMEDY CURES ANY PREJUDICE TO XOOM ........... 4

CLASSWIDE PROCEEDINGS REMAIN VIABLE EVEN IF THE COURT EXCLUDES BOTH EXPERT REPORTS FOR DAMAGES PURPOSES ........................................................ 6

I.   THE CLASS SHOULD REMAIN CERTIFIED UNDER *COMCAST* ............................. 6

    A.   *Comcast* Does Not Require Decertification Without a Class Damages Model ........ 6

    B.   Plaintiff Can Prove Liability Using Model 2 ........................................................ 8

    C.   Common Issues Continue to Predominate ............................................................. 10

II.   THE COURT CAN BIFURCATE LIABILITY AND DAMAGES PROCEEDINGS .... 12

III.   THERE IS NO NEED TO RELITIGATE THE RULE 23 REQUIREMENTS ............... 14

IV.   THERE IS NO NEED TO RELITIGATE SUMMARY JUDGMENT ........................... 16

CONCLUSION ...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*,
   No. 03 Civ. 3364 (MJD) (JGL), 2005 WL 6007042 (D. Minn. Aug. 29, 2005) ...................... 2

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ................................................................................ 4

*Ault v. J.M. Smucker Co.*,
   310 F.R.D. 59 (S.D.N.Y. 2015) .......................................................................... 8

*Beastie Boys v. Monster Energy Co.*,
   No. 12 Civ. 6065 (PAE), 2014 WL 888235 (S.D.N.Y. Mar. 6, 2014) ...................... 3

*Bethea v. Merchants Com. Bank*,
   No. 11 Civ. 51, 2014 WL 2903459 (D.V.I. June 26, 2014) ..................................... 5

*Buffington v. Progressive Advanced Ins. Co.*,
   342 F.R.D. 66 (S.D.N.Y. 2022) ....................................................................... 6, 8

*Campbell v. United States*,
   No. 10 Civ. 363, 2011 WL 588344 (E.D. Va. Feb. 8, 2011) ................................... 2

*Capstone Logistics Holdings, Inc. v. Navarrete*,
   No. 17 Civ. 4819 (GBD) (BCM), 2019 WL 12239656 (S.D.N.Y. Mar. 19, 2019) ................... 5

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
   No. 01 Civ. 11295, 2003 WL 22471909 (S.D.N.Y. Oct. 31, 2003) ......................... 5

*Coggon v. Fry's Elecs., Inc.*,
   No. 17 Civ. 3189 (SCJ), 2019 WL 2137465 (N.D. Ga. Feb. 6, 2019) ...................... 4

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ......................................................................................... 4, 7

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ................................................................................ 15

*In re Amla Litig.*,
   320 F. Supp. 3d 578 (S.D.N.Y. 2018) .................................................................. 8

*In re POM Wonderful LLC*,
   No. 10 MDL 02199 (DDP), 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .............. 8

*Jianmin Jin v. Shanghai Original, Inc.*,
   No. 16 Civ. 5633 (ARR) (JO), 2019 WL 11816612 (E.D.N.Y. July 10, 2019) ...................... 15

*Jin v. Shanghai Original, Inc.*,
 990 F.3d 251 (2d Cir. 2021) ............................................................... 15, 16

*Kronenberg v. Allstate Ins. Co.*,
 No. 18 Civ. 6899 (HG) (TAM), 2024 WL 4126306 (E.D.N.Y. Aug. 5, 2024) ...................... 10

*Malletier v. Dooney & Bourke, Inc.*,
 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................... 4

*Nelson v. Thurston Cty.*,
 No. 18 Civ. 5184 (RSL), 2022 WL 4598474 (W.D. Wash. Sept. 30, 2022) .............................. 3

*Roach v. T.L. Cannon Corp.*,
 778 F.3d 401 (2d Cir. 2015) ............................................................... 6, 12

*S.W. v. City of New York*,
 No. 09 Civ. 1777 (ENV) (MDG), 2011 WL 3038776 (E.D.N.Y. July 25, 2011) ..................... 5

*Sampson v. United Servs. Auto. Ass'n*,
 83 F.4th 414 (5th Cir. 2023) ............................................................... 9, 10

*Samsung Elecs. Co., Ltd. v. Nvidia Corp.*,
 314 F.R.D. 190 (E.D. Va. 2016) ........................................................... 2

*Sibley v. Sprint Nextel Corp.*,
 No. 08 Civ. 2063 (KHV), 2013 WL 1819773 (D. Kan. Apr. 30, 2013) ................................ 4

*Sitts v. Dairy Farmers of Am.*,
 No. 16 Civ. 287, 2020 WL 3467993 (D. Vt. June 24, 2020) .................................... 4

*TERA II, LLC v. Rice Drilling D, LLC*,
 No. 19 Civ. 2221, 2024 WL 621002 (S.D. Ohio Feb. 14, 2024) ................................ 5

*Torres v. DeMatteo Salvage Co. Inc.*,
 No. 14 Civ. 774 (ADS) (AKT), 2016 WL 845326 (E.D.N.Y. Mar. 2, 2016) ........................... 5

*Werdebaugh v. Blue Diamond Growers*,
 No. 12 Civ. 2724 (LHK), 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ................................ 8

**Rules**

Fed. R. Civ. P. 23 ............................................................................ 6, 8, 12, 15

Fed. R. Civ. P. 37 ............................................................................ 4

Fed. R. Civ. P. 53 ............................................................................ 14

## REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

**I.   MODEL 2'S METHODOLOGY IS CONSISTENT WITH PLAINTIFF'S THEORY OF LIABILITY, BUT IT CONTAINED A MATHEMATICAL ERROR**

There is no dispute that damages in this case should be measured by the difference between XOOM's variable rates and its supply costs, plus a reasonable, proportionate margin. Model 2 does this. It "allows XOOM *a margin over Total Cost* that equates to the fixed rate margin[.]" Original Report ¶ 73 (emphasis added).[1] In executing Model 2, however, Plaintiff's expert used an incorrect variable and miscalculated damages by using XOOM's rates, not its costs. *See* Order at 11–13. Class Counsel was unaware of the error, which undercounted damages. The Order then correctly identified this *execution* error, but when the Court excluded Model 2 it overlooked that Model 2's *methodology* perfectly matches Plaintiff's liability theory. XOOM claims this motion "is not a proper reconsideration request" because "[i]t cites no new evidence or law, no clear error, and no manifest injustice." Dkt. 272, Defs.' Br. in Opp'n ("Opp'n") at 1. But *neither party appreciated* Model 2's execution error until the Court spotted the mistake. *See* Pl.'s Br. at 2–3, 7. That mistake is eminently correctable, and excluding Model 2 was therefore improper.

XOOM devotes much of its brief to reciting the difference between cost- and price-based margins and accusing Class Counsel of deceit. *See* Opp'n at 1–7. Class Counsel did not lie, and margin conversion is not what is at issue here. Reconsideration is appropriate because the error consists of an easily correctible damages calculation, not an inconsistent damages theory.

XOOM cites Plaintiff's *Daubert* opposition and claims it is "not true" that Class Counsel did not appreciate the error. *See* Opp'n at 4–5. Plaintiff would not knowingly undercount damages. Pl.'s Br. at 7 n.3. Moreover, XOOM's protest merely establishes that Class Counsel believed

---

[1] This reply incorporates the facts and arguments set forth in Plaintiff's opening memorandum of law, Dkt. 271 ("Pl.'s Br.") and adopts the same shorthand and definitions.

Model 2 applied a rate-based margin to XOOM's costs. And although Plaintiff updated Model 2's rate-based margin to Model C's cost-based margin pursuant to the MSJ Order's contract construction, the Court found this difference immaterial. *See* Order at 18 ("[T]he Amended Report's fixed-rate margin-over-cost percentage . . . can be converted into a margin-over-price percentage . . . according to a set equation."). Unbeknownst to Class Counsel, however, Model C also corrected Model 2's execution error. Had XOOM realized the error before it was called out in the Order, XOOM would have mentioned as much in its prior summary judgment, class certification, Rule 23(f), decertification, *Daubert* briefing, and expert rebuttal report. That these papers were silent on the error confirms that XOOM too was unaware of it.[2]

XOOM also cites portions of Plaintiff's expert's declaration acknowledging that Model C swapped a price-based margin for a cost-based one. *See* Opp'n at 5–7. But this merely references the same issue the Court found immaterial. *See* Order at 18. XOOM then claims it argued at decertification that Model 2's calculations were "not based on or in proportion to costs," meaning Model 2 was "incompatible with the Court's proportionate-margin construction." Opp'n at 7 (citing Dkt. 197 at 13–14). But this again shows only that Model 2 used a price-based margin instead of the cost-based margin. Due to this margin conversion, Model 2 and Model C's formulas *look* different (*i.e.*, they have different mathematical expressions), *see* Opp'n at 6, but this does not show that Class Counsel appreciated the math error. Class Counsel had not realized that Model 2's *execution* was erroneous, nor that Model C corrected it. Class Counsel instead believed

---

[2] XOOM claims Plaintiff's lack of appreciation of Model 2's error does not warrant reconsideration, Opp'n at 4 & n.3, but its case citations involve extreme circumstances with entirely new expert analyses, *3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*, No. 03 Civ. 3364 (MJD) (JGL), 2005 WL 6007042, at *3 (D. Minn. Aug. 29, 2005) (expert conducted new round of testing and submitted supplement that was "effectively a red-lined version of [the expert's] original deposition"), or failed to comply with Rule 26's explicit mandates, *Campbell v. United States*, No. 10 Civ. 363, 2011 WL 588344, at *3 (E.D. Va. Feb. 8, 2011) (report omitted "a complete statement of [the expert's] opinions and his reasons for them," "the facts [] considered in forming his opinion," and "the number of times [expert] has been deposed in the last four years"); *Samsung Elecs. Co., Ltd. v. Nvidia Corp.*, 314 F.R.D. 190, 196–98 (E.D. Va. 2016) (party failed to disclose images that expert relied on).

that Model C simply changed the price-based margin to a cost-based one, akin to converting a distance in miles to kilometers. This was an honest mistake and XOOM's accusations are meritless. Had Plaintiff realized the error prior to the Order, she would have immediately addressed it as there was no advantage in propounding artificially low damages.

## II.    AN EXPERT'S MATHEMATICAL ERRORS ARE CORRECTIBLE

Courts routinely allow parties to correct the kinds of mathematical errors contained in Model 2. *See* Pl.'s Br. at 3–4 & n.1. XOOM emphasizes the Order's statement that "[t]he failure of plaintiff's damages model extends beyond a purely mathematical flaw in its methodology." Opp'n at 2 (quoting Order at 23). But the methodology for calculating damages is set by the contract as construed in the Court's MSJ Order. Although Plaintiff's expert made a mathematical error in executing the damages model, the model itself follows the contract's equation. This is not a scenario where Plaintiff's expert created a novel damages model with a flawed methodology.

XOOM attempts to distinguish the circumstances here from the myriad cases allowing corrections to an expert's mathematical errors. *See* Opp'n at 2 n.2. But Model 2's error—using an incorrect variable in executing a correct damages model—is precisely the kind of error that can be fixed. *See, e.g.*, *Nelson v. Thurston Cty.*, No. 18 Civ. 5184 (RSL), 2022 WL 4598474, at *1–2 (W.D. Wash. Sept. 30, 2022) (errors in variables that inflated damages could be corrected two years after discovery deadline where defendants did "not take issue with the methodology" and trial date was not set); *Beastie Boys v. Monster Energy Co.*, No. 12 Civ. 6065 (PAE), 2014 WL 888235, at *2–3 (S.D.N.Y. Mar. 6, 2014) (erroneous variable was not a "minor flaw" but was

3

"eminently correctible").[3] Plaintiff should be permitted to correct the error or present Model C—which is equivalent to Model 2 without the error—to the jury.

## III.   EXCLUDING BOTH REPORTS IS TOO HARSH A SANCTION AND PLAINTIFF'S PROPOSED REMEDY CURES ANY PREJUDICE TO XOOM

XOOM makes three claims as to prejudice: (1) *Comcast* precludes correcting mathematical errors; (2) a correction would cause delay; and (3) Plaintiff is attempting to "reconfigure the expert's methodology to rebut any errors revealed by the opponent." Opp'n at 8–10. All three claims fail. Any prejudice can be cured by permitting XOOM to conduct additional expert discovery at Plaintiff's expense. Pl.'s Br. at 7–10; *see also* Fed. R. Civ. P. 37(c)(1)(A) (in similar situations courts may "order payment of the reasonable expenses, including attorney's fees").

***First***, *Comcast* did not address mathematical errors. *Comcast* turned on an incorrect damages model, which premised damages on three invalid liability theories. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Here, Model 2 seeks to measure damages in the manner that all parties agree is correct: a proportionate and reasonable "***margin over Total Cost***." Original Report ¶ 73 (emphasis added). Plaintiff does not seek to calculate damages using an invalid theory.

***Second***, XOOM's claims of delay are wholly speculative and unsubstantiated. *See* Opp'n at 9–10. XOOM is wrong to assert that Plaintiff's supporting cases were not "as far along as this one and the prejudice to the defendant would have been far less severe." *Id.* at 9. In each of those

---

[3] *See also Sitts v. Dairy Farmers of Am.*, No. 16 Civ. 287, 2020 WL 3467993, at *3 (D. Vt. June 24, 2020) (where expert corrected error with "the same regression methodology he previously employed," such error was "fodder for cross-examination." (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002))); *Coggon v. Fry's Elecs., Inc.*, No. 17 Civ. 3189 (SCJ), 2019 WL 2137465, at *3 (N.D. Ga. Feb. 6, 2019) ("[T]here is an important distinction between scrutinizing the reliability of an expert opinion's underlying methodology . . . and scrutinizing the expert's ***application of that methodology***. Challenging the underlying methodology in general is an admissibility issue; challenging the expert's application of that methodology is an ***accuracy issue***. . . . [which is] best resolved through cross-examination and the adversarial process.") (emphasis added and cleaned up); *Sibley v. Sprint Nextel Corp.*, No. 08 Civ. 2063 (KHV), 2013 WL 1819773, at *2, 4 (D. Kan. Apr. 30, 2013) (correcting variables in "five of the six stages" of model were "corrections to inaccuracies," not "changes to [] methodology"); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 656–57 (S.D.N.Y. 2007) ("mistakes in arithmetic c[ould] be corrected" where defendant did "not seriously challenge" methodology).

cases where, as here, a trial date had not yet been set, the court found either no prejudice, curable prejudice, or that any prejudice was curable by additional expert discovery or cross-examination.[4] Moreover, Plaintiff has sought to advance this case to trial, with XOOM seeking delay. *See, e.g.*, Dkt. 177 (XOOM disputing prior pretrial order deadline and stating that "no pretrial order deadline exists because the case is not yet proceeding to trial[.]"); Dkt. 180 at 4 (describing XOOM's delay, including appealing certification, and delaying class notice and the joint pretrial order).

**Third**, XOOM wrongly claims that Plaintiff seeks to revise her expert report due to XOOM's criticisms. Opp'n at 9–10. Not so. Neither party appreciated Model 2's error before the Order. XOOM did not address it in numerous heavily contested motions, expert discovery, or in its pre-trial submissions beyond a single paragraph in its *Daubert* motion addressing Model 2's "algorithm," not its methodology. *See* Pl.'s Br. at 2–3.[5]

Plaintiff therefore requests that the Court grant Plaintiff's motion and allow Plaintiff to either: (1) correct Model 2's calculation errors, or (2) present Model C as evidence of damages, and if occasioned, direct that Plaintiff pay Defendants' costs and reasonable attorney's fees attendant to any further requested deposition of Plaintiff's expert or response to Models 2 or C.

---

[4] *See S.W. v. City of New York*, No. 09 Civ. 1777 (ENV) (MDG), 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011) (no prejudice from late expert materials where trial was not set); *see also Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17 Civ. 4819 (GBD) (BCM), 2019 WL 12239656, at *4 (S.D.N.Y. Mar. 19, 2019) (same); *Torres v. DeMatteo Salvage Co. Inc.*, No. 14 Civ. 774 (ADS) (AKT), 2016 WL 845326, at *5 (E.D.N.Y. Mar. 2, 2016) ("[C]ourts in the Second Circuit . . . have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial." (quotation omitted)); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01 Civ. 11295, 2003 WL 22471909, at *2 (S.D.N.Y. Oct. 31, 2003) ("[P]otential prejudice to defendants is cured by allowing them to depose [plaintiff's expert] before trial if they believe it is necessary."). Indeed, this principle is widely applied. *See, e.g.*, *TERA II, LLC v. Rice Drilling D, LLC*, No. 19 Civ. 2221, 2024 WL 621002, at *9 (S.D. Ohio Feb. 14, 2024) (no prejudice by supplemental and amended reports "approximately three months before trial is anticipated to begin . . . especially given [the expert] did not change his methodology"); *Bethea v. Merchants Com. Bank*, No. 11 Civ. 51, 2014 WL 2903459, at *4 (D.V.I. June 26, 2014) (mathematical error corrections in expert report not excluded because "[t]here is no disruption to the orderly and efficient trial of this case as no trial date has yet been set").

[5] XOOM further conclusorily claims that its motions *in limine* and pretrial order submissions "will need to be revisited and revised" without explaining why revisions are needed or identifying any proposed changes. Opp'n at 10. Plaintiff is not seeking to admit new exhibits and XOOM's pre-trial submissions were all made before either party appreciated the mathematical error. Pl.'s Br. at 10. XOOM's contrary claim is hyperbole and speculation. *See* Opp'n at 10 (noting an inability to "predict" how the *Daubert* ruling "would impact the parties' voluminous pretrial submissions").

## CLASSWIDE PROCEEDINGS REMAIN VIABLE EVEN IF THE COURT EXCLUDES BOTH EXPERT REPORTS FOR DAMAGES PURPOSES

Seeking to dismiss this case, XOOM asks the Court—with no support in statute, rule, or case law—to invent a new per se rule that a class action plaintiff must use an expert to calculate damages. Tellingly, XOOM offers no support for its new rule. Instead, XOOM misreads *Comcast*'s requirement of consistency between damages and liability theories to mean that an expert is required to prove that consistency. But the alignment of theories is an issue of law for the Court, not one of fact for the jury. And "while a damages expert may be useful to the Court in determining class members' damages, ***it is not required by Rule 23(b)***." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 73 (S.D.N.Y. 2022) (emphasis added); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) ("*Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury; but the Court did not hold that proponents of class certification must rely upon a classwide damages model . . . .").

Given that the Court has already certified the Class, the Second Circuit denied XOOM's Rule 23(f) petition, and this Court then denied XOOM's motion to decertify, there is no need to revisit class treatment. Rather, if the Court denies Plaintiff's motion for reconsideration, there are several tools the Court may use to manage this case through the class action trial.

## I.    THE CLASS SHOULD REMAIN CERTIFIED UNDER *COMCAST*

### A.    *Comcast* Does Not Require Decertification Without a Class Damages Model

Even if the Court maintains its *Daubert* rulings, the Class should remain certified because the proper calculation of damages is supplied by the contract itself, clearly distinguishing this case from *Comcast*. Tellingly, XOOM ignores this crucial fact. The damages model at issue in *Comcast* incorporated three dismissed liability theories, meaning the model "failed to measure damages

resulting from the particular antitrust injury on which petitioners' liability in this action is premised." *Comcast*, 569 U.S. at 36. In other words, the damages model was inconsistent with the theory of liability.

Here, the opposite is true: the damages model correctly follows from the theory of liability because both come directly from the contract. The following aspects of that model are undisputed: (1) the rates XOOM actually charged; (2) the formula for the rate XOOM should have charged, as contained in the contract; and (3) the proper measure of damages (the difference between (1) and (2)). XOOM concedes that this is the proper damages equation. *See* Opp'n at 12 (noting "[g]eneric agreement about how an overcharge could hypothetically be calculated"). These undisputed facts form the basis of both Plaintiff's liability and damages theories.

Accordingly, there is no mismatch between Plaintiff's damages and liability theories. Where a damages theory relies on complex and subjective economic analyses of antitrust injury as in *Comcast*, an expert is likely needed to prove damages. But here, the parties agree on the proper and objective measure of damages. Indeed, the only remaining disputed factual issues are the inputs for XOOM's actual supply costs and the appropriate margin it should have charged. The Court has already found that a jury must determine those inputs. *See* Decertification Denial Order, Dkt. 246 at 8 ("I have not addressed the accuracy of the damages model's inputs, meanwhile, because I have determined that two of those inputs are fact questions for the jury."). Moreover, these inputs are admissible as proof of liability on a classwide basis. Once the inputs are established, it makes no difference whether an expert or a calculator does the arithmetic to

determine damages.[6] Therefore, damages can be calculated without an expert. XOOM's case citations are in accord.[7]

XOOM skates past the critical difference between *Comcast* and this case, and instead asks the Court to decertify the Class solely because the Order found that Plaintiff's expert report is inadmissible to show damages. Opp'n at 13. But XOOM's per se damages expert requirement is plucked from thin air. Again, a damages expert "is not required by Rule 23(b)." *Buffington*, 342 F.R.D. at 73. XOOM's arguments that the Class should be decertified under *Comcast* and that Plaintiff cannot calculate a classwide overcharge amount to a request that this Court invent a rule that only an expert can solve a simple algebraic equation.[8]

## B.    Plaintiff Can Prove Liability Using Model 2

XOOM argues that Plaintiff cannot prove damages and this is fatal to her liability claim. Opp'n at 15–17. XOOM is wrong for two reasons. First, as described above, Plaintiff can prove damages (or more accurately, damages would be undisputed after the jury resolves the disputed formula inputs). Second, the Court's Order expressly held that "[t]he Original Report is admissible

---

[6] For example, an expert would not be required to solve the equation 'Damages = $x - 20$' where a jury has determined '$x$' equals 50. The same is true here.

[7] Each of XOOM's cases involved complex, subjective economic analyses not needed here. *See In re Amla Litig.*, 320 F. Supp. 3d 578, 591 (S.D.N.Y. 2018) (under price premium damages theory for unjust enrichment, excluding expert testimony meant there was no evidence about value of defective scalp protector in hair treatment kit containing admittedly effective conditioner, shampoo, and moisturizer); *Werdebaugh v. Blue Diamond Growers*, No. 12 Civ. 2724 (LHK), 2014 WL 7148923, at *7–14 (N.D. Cal. Dec. 15, 2014) (rejecting "fundamentally different" regression analysis that changed six key coefficients); *In re POM Wonderful LLC*, No. 10 MDL 02199 (DDP), 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014) (price premium analysis showed only that juice product at issue was more expensive than certain other juices and attributed 100% of that difference to alleged misrepresentations); *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 68 (S.D.N.Y. 2015) (expert survey failed to identify alternate product to determine what plaintiff would have paid absent alleged misrepresentation). Here, the parties agree on how to calculate damages and simply need the jury to provide the appropriate inputs.

[8] XOOM also contends that Plaintiff is insincere when she argues that an expert is not necessary. *See* Opp'n at 13 ("And she does not explain why she never said so until now, or why the parties and Court spent years and significant resources on litigation that presumed otherwise."). While not ***required***, a damages expert would of course be helpful for the jury to understand the scope of the damages at issue. For that reason, while Plaintiff maintains that her damages expert is not necessary for continued class treatment, she has moved for reconsideration to admit her expert's damages testimony regarding a corrected Model 2 or Model C as a helpful aid for the jury and to simplify the ultimate adjudication of this action. *See* Pl.'s Br. at 11.

as part of plaintiff's liability case under Rule 702 and *Daubert*, as it is sufficiently reliable evidence that XOOM's costs did not justify its prices." Order at 31. Accordingly, the Order does not disturb the viability of class proceedings with respect to liability.

Dissatisfied, XOOM argues that Plaintiff "still does not answer how a factfinder . . . can determine what margins XOOM should have used[.]" Opp'n at 17. XOOM then posits that because a jury cannot determine the appropriate margin, Plaintiff cannot prove there was an overcharge. But the Court has already rejected this recycled argument at decertification. *See* Decertification Denial Order, Dkt. 246 at 11 ("[A] jury will need to decide . . . what would constitute a reasonable and proportionate margin.").

Further, XOOM's unconvincing liability argument is nothing more than a repackaging of its doomed *Comcast* arguments. XOOM cites *Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414, 422 (5th Cir. 2023), where the plaintiff did not present a damages model that accurately provided a valuation for totaled vehicles, defeating his liability case. The critical difference here is the nature of the expert reports. A damages model that relies on the valuation of a totaled vehicle necessarily requires a model to value the vehicle. Here, the damages model is objective and supplied by the contract itself. Neither Plaintiff nor her expert purports to create a new or subjective methodology to calculate the delta between the rate XOOM charged and the one it was contractually required to charge. Instead, Plaintiff can calculate damages using the undisputed rate formula in the contract.

In addition, the individualized damages issues caused by the expert's failure in *Sampson* are not present here. In *Sampson*, the court identified "an explosion of predominance issues" caused by the expert's multiple possible methods of measuring damages, leaving the defendant with a "due process right to argue, for each individual plaintiff, that damages should be determined by a different legally permissible method that would produce lower damages." *Id.* at 420. Here,

***all parties agree*** on the appropriate measure of damages, so there is no concern that XOOM could apply different damages calculations to individual Class Members. The underlying damages calculation is derived directly from the contract. XOOM agrees. *See* Opp'n at 12 (noting "[g]eneric agreement about how an overcharge could hypothetically be calculated").

Similarly misplaced is XOOM's reliance on *Kronenberg v. Allstate Ins. Co.*, No. 18 Civ. 6899 (HG) (TAM), 2024 WL 4126306 (E.D.N.Y. Aug. 5, 2024). There, the plaintiffs' damages theory failed *Comcast* because although their liability theory hinged on a particular valuation variable, the damages model was "silent" as to that variable. *Id.* at *21. Specifically, the *Kronenberg* plaintiffs offered "no articulation of how the injury [was] tied to the very cause of action in which the predominance analysis [was] grounded" and the plaintiffs "[did] not even try to adduce classwide proof on th[eir] theory of injury." *Id.* at *17. Accordingly, there was a mismatch between the liability and damages theories. Like in *Comcast* and *Sampson*, *Kronenberg* involved a subjective damages model to account for complex valuation factors, but the plaintiffs' novel damages theory did not align with their liability theory. *See id.* at *21. Here, again, all parties agree on the appropriate variables and the damages equation. There is no mismatch between Plaintiff's liability and damages theory, which both rely on the same formula set forth in the contract. Nor are the individualized damages issues in *Kronenberg* present here. There, the plaintiff advanced a misrepresentation theory but could not "complete the causal chain needed to establish liability [because] they cannot show on a classwide basis that the class members 'were personally misled of deceived.'" *Id.* at *19. No similar circumstances exist here and XOOM's liability under its nonnegotiable form contract can be determined by the jury in one stroke.

### C.    Common Issues Continue to Predominate

XOOM argues that the Order means that individual issues predominate and the Class should be decertified. Opp'n at 14–21. XOOM is again wrong on both the facts and law.

With respect to the facts, common issues predominate. The issues for the jury will be "(1) whether the Total Cost listed in XOOM's rate-setting workbooks reflects XOOM's actual and estimated supply costs and (2) what would constitute a reasonable and proportionate margin." Decertification Denial Order, Dkt. 246 at 11.[9] These issues can be decided in one stroke. Class Order, Dkt. 152 at 13–14.[10] Moreover, Model 2 is admissible for liability purposes and the "central dispute [is] whether XOOM indeed considered factors beyond its actual and estimated supply costs in setting variable rates." Decertification Denial Order, Dkt. 246 at 4. That issue is a common Class issue that predominates, and XOOM offers no basis to conclude that individual issues would overtake that central disputed issue.

XOOM next claims that Plaintiff will not be able to prove "the amount she should have been charged." Opp'n at 16. That is a red herring. Plaintiff can and will prove the amounts that should have been charged, with or without a damages model. Once the jury resolves the outstanding factual disputes, the amount customers should have been charged becomes a matter of arithmetic. For example, if Plaintiff proves that XOOM's "actual and estimated supply costs" were $100 and the appropriate margin was 5%, Plaintiff has proved the rate the customer should have been charged ($105), regardless of whether expert testimony is admissible to perform the basic underlying math.

---

[9] Contrary to XOOM's assertion, Plaintiff does not "conce[de]" this figure does not "reflect [XOOM's] actual costs," Opp'n at 21, but rather has consistently shown that the "Total Cost" from XOOM's workbooks is the only location XOOM documented its supply costs. *See* MSJ Order, Dkt. 151 at 16 ("XOOM presents ample testimonial evidence supporting the general proposition that prior period adjustments were included in the margin and therefore responsible for rate fluctuations, [] but ***no documentary evidence*** demonstrating how non-COGS supply costs actually impacted the Mirkins' rates.") (emphasis added).

[10] XOOM claims that because Plaintiff has suggested using a special verdict form, this "admits that any factfinding must occur at a more granular (and individualized) level than she previously acknowledged." Opp'n at 12 n.9. Not so. An appropriate special verdict form could simply seek the jury's input on the (classwide) disputed inputs for the damages calculations: whether (and how much) XOOM's claimed practice of incorporating supply costs into margin affected the "Total Cost" from its rate-setting workbooks, and the appropriate margin the contract permitted XOOM to charge. Both these inputs can be found classwide in one stroke.

XOOM is thus wrong to assert that Plaintiff avoided decertification on this issue due to the Court's reliance on Model 2. *See id.* at 17. The Court noted at decertification that Plaintiff would rely on fact evidence, such as New York Public Service Commission documents, to establish a reasonable margin. Decertification Denial Order, Dkt. 246 at 14. Moreover, establishing an appropriate margin is part of Plaintiff's liability case, and the Court did not exclude the Original Report for liability purposes. Therefore, the Order does not disturb Plaintiff's ability to prove an appropriate margin.

With respect to the law, XOOM misstates case law by again claiming that the absence of a classwide damages model defeats predominance. Opp'n at 14–15. This is again incorrect. Instead, "proponents of class certification" need not "rely upon a classwide damages model to demonstrate predominance." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).[11] Accordingly, classwide issues predominate here. The Order does not change that conclusion, and XOOM presents no compelling reason to disturb class certification.[12,13]

## II.    THE COURT CAN BIFURCATE LIABILITY AND DAMAGES PROCEEDINGS

This Court has the authority to bifurcate proceedings. *See* Pl.'s Br. at 16–19. XOOM does not dispute the Court's authority to oversee a liability-only trial, leaving damages to be resolved

---

[11] To the extent individual damages calculations may be required, such "determinations alone cannot preclude certification under Rule 23(b)(3)." *Id.* at 409.

[12] XOOM makes two fleeting references to Plaintiff's supposed inability to prove commonality. However, apart from mentioning the word "commonality," XOOM does not explain why this would be the case. Nothing about the Order changes the underlying merits of the case, and Plaintiff's claims are common to the Class. The common issues are whether XOOM's rates incorporated factors beyond its "actual and estimated supply costs," and the appropriate margin XOOM should have charged. Those issues will be resolved in one stroke. The Order does not change the liability evidence Plaintiff will present on those common issues.

[13] Seeking to muddy the waters, XOOM argues that Plaintiff cannot proceed on a nominal damages theory because "she did not move for certification of a nominal damages class originally." Opp'n at 22–24. The Court already resolved this issue at decertification: "To the extent that XOOM suggests that plaintiff is categorically barred from recovering nominal damages, however, XOOM is mistaken." Decertification Denial Order, Dkt. 246 at 16 n.9. XOOM's argument is nothing more than an effort to bypass the Court's authority to bifurcate liability proceedings. However, as described below and in Plaintiff's opening brief, the Court can bifurcate liability proceedings and leave damages to be resolved by special master, agreement of the parties, or the Court.

later.[14] XOOM instead objects to using a special master to calculate damages. However, XOOM's argument is wrong on the law and provides a further basis to reconsider the Order.

XOOM argues that the Court cannot "allow a special master to use the untimely and untested Model C that [Plaintiff's] expert cannot" use. Opp'n at 19. But XOOM's argument highlights that the math needed to calculate the damages *is in the contract itself*. It is not a novel methodology devised by Plaintiff's expert, or one requiring his subjective expertise for application.[15]

Regardless of who executes the math, all parties agree that once a jury determines XOOM's "actual and estimated supply costs" and its margin, the math is not complex, subjective, or reasonably disputable. XOOM tries to spin the Order to mean that doing the math is now somehow completely off limits, and it therefore prevails on a technicality and reaps an eight-figure windfall. While Plaintiff's expert made a mathematical error in executing Model 2, the fact remains: the proper methodology for calculating damages is written right in the contract. The only question now is who conducts that math, whether that is an expert, a special master, the Court, or the parties.

For the reasons stated above, Plaintiff believes her expert should be able to either correct Model 2's mathematical error in accordance with the formula in the contract (and Model 2's theory of liability and damages), or present Model C, which fixed the math error. However, if the Court does not allow this method of calculating damages, a special master, the Court, or the parties themselves should perform the math.

---

[14] XOOM claims as a throwaway that the Court should not allow a liability-only trial because Plaintiff loses on liability, but the Court already denied XOOM's summary judgment motion on liability and Model 2 is admissible to prove liability. Order at 13–15. XOOM thus offers no basis to conclude the Court cannot conduct a liability-only trial.

[15] Because the damages formula is set forth by the contract itself (which XOOM drafted), rather than created by an expert, it is not subject to *Daubert* review.

XOOM's legal argument against appointing a special master fares no better. It contends that appointing a special master would not pass muster under Rule 53(a)(1)(B)(ii) because Plaintiff cannot point to a "difficult computation of damages." Opp'n at 18. In other words, XOOM wants to have its cake and eat it too. According to XOOM, the damages calculations are so complicated that only an expert can do them, but at the same time, the damages calculations are so simplistic that appointing a special master fails Rule 53. This "heads-I-win, tails-you-lose" argument is not serious. If the damages calculations are simple enough that Rule 53(a)(1)(B)(ii) does not apply, the parties or the Court could resolve all damages issues. If they are too complex, then a special master can execute the contract's undisputed equation.

Therefore, even if the Court declines to appoint a special master, a straightforward path for calculating damages is available. The parties can present the arithmetic to the Court once the jury makes its factual findings as to the supply costs and margin. Then, because the damages formula is undisputed, the Court could enter judgment for damages. As Plaintiff explained in her opening brief, "because the parties agree on the proper equation for the calculation of damages, there can be no genuine dispute about damages after the jury determines the inputs of the equation." Pl.'s Br. at 18. Tellingly, XOOM does not dispute this. Thus, if the Court does not grant Plaintiff's motion for reconsideration, it should hold a liability-only trial and reserve damages calculations, whether by special master, or the Court, or the parties, for after liability is determined.

## III.    THERE IS NO NEED TO RELITIGATE THE RULE 23 REQUIREMENTS

Class treatment of this case has already been thoroughly litigated. Plaintiff prevailed on class certification, XOOM's Rule 23(f) petition, and XOOM's decertification motion. XOOM argues that "Plaintiff does not even try to carry her Rule 23 burden." Opp'n at 14. However, the Court did not ask the parties to address Rule 23 generally, but instead directed the parties "to provide supplemental briefing on whether or not classwide proceedings remain viable in this case."

Order at 32. There is no need to address issues not impacted by the Order and no basis to fault Plaintiff for not addressing every Rule 23 requirement.

XOOM tries to create an additional issue by questioning Class Counsel's adequacy, but there is no reason to revisit adequacy. The Court found Class Counsel are adequate because they "are well-qualified and experienced in litigating class actions, including similar cases against ESCOs." Dkt. 152 ("Class Order") at 17. Indeed, adequacy requires only that "plaintiff's attorneys are 'qualified, experienced and able to conduct the litigation.'" *Id.* at 16 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). XOOM has not pointed to a single fact that would undercut Class Counsel's qualifications, experience, or ability to conduct this litigation.

XOOM instead posits that an adverse *Daubert* ruling is sufficient to decertify on adequacy grounds. Opp'n at 24–27. However, XOOM provides no authority supporting that proposition. Instead, XOOM relies solely on a readily distinguishable case which Your Honor oversaw, *Jianmin Jin v. Shanghai Original, Inc.*, No. 16 Civ. 5633 (ARR) (JO), 2019 WL 11816612, at *3 (E.D.N.Y. July 10, 2019), *aff'd sub nom. Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021). That case is inapposite for two reasons. First, it had nothing to do with an adverse *Daubert* ruling. Second, unlike here, the plaintiff's attorney in that case demonstrated repeated and flagrant shortcomings that caused substantial prejudice to the class. As the Second Circuit described:

> The record is replete with counsel's shortcomings before the class was decertified: class counsel (1) attempted numerous times to delay trial without any meritorious basis; (2) had the court reopen discovery to conduct twenty-eight depositions related to the Owners' alleged misconduct but conducted only three and failed to inform the court until over a month after they abandoned depositions; (3) repeatedly failed to submit a witness list that complied with Judge Ross's instructions; and (4) in its final revised list, indicated they would only call two class members as witnesses despite indications in the JPTO of the significance of class-member testimony. Counsel's representation of the class fell woefully short of the skilled

and zealous representation expected of class counsel under Rule 23(g), justifying decertification.

*Jin*, 990 F.3d at 263.

None of the factors cited by the Second Circuit are present here. Indeed, the record shows that Class Counsel have been zealously and tirelessly litigating this case for over six years. And unlike in *Jin*, decertification would cause significant prejudice to the Class, as the individual claims are economically infeasible to litigate on an individual basis. As the Court already explained when it certified the Class, "[g]iven the size of these claims, any individual class member would have very little interest in spending the time and resources to litigate a claim individually. Thus, it is not surprising that I am aware of no individual litigation already initiated against XOOM by anyone covered under the proposed class definition." Class Order, Dkt. 152 at 18.

Decertification on this basis would be an extreme measure not justified by the record in this case. Even if the Court denies Plaintiff's reconsideration motion, the Class should remain certified and Class Counsel expect and intend to achieve the best possible result for the Class.

## IV.    THERE IS NO NEED TO RELITIGATE SUMMARY JUDGMENT

In denying XOOM's motion for summary judgment, the Court construed the contract's pricing term and identified two disputed material facts—the composition of XOOM's "actual and estimated supply costs" and a reasonable proportionate margin. The Order does not disturb those findings, which did not rest on opinions proffered by Plaintiff's expert. MSJ Order at 17–19. XOOM argues that the Court should revisit summary judgment because "Plaintiff has no evidence of (1) where a margin stops being 'reasonable and proportionate,' or (2) the extent of any overcharge." The Court has already determined that these are issues for the jury and nothing in the Order states, or even suggests, otherwise.

First, the Order expressly found Model 2 admissible for liability purposes. Order at 13–15. That fact alone dispatches XOOM's argument. Because Model 2 is admissible to prove liability, including to "show[] that XOOM's actual prices were excessive in comparison to its costs," *id.* at 13, the Order does not bear on the Court's MSJ Order. Then, as shown above, determining the extent of XOOM's overcharges is a matter of simple arithmetic.

Second, XOOM fails to specify which summary judgment holdings would need to be revisited. As the Court explained at summary judgment, "XOOM's arguments and evidence certainly show that it considered its supply costs when calculating the Mirkins' monthly rates. And if all XOOM had to do under the contract was consider and incorporate its supply costs into the final rate, it would likely prevail. But under the controlling reading of the agreement, XOOM must show that its rates were determined by its actual and estimated supply costs. XOOM has not done so." MSJ Order at 15. Nothing in the Order disturbs that conclusion.

Indeed, in the entire MSJ Order, Your Honor ***never once referred to Plaintiff's expert or his damages models***. Because the MSJ Order did not rely on or even mention Plaintiff's expert, excluding the Original Report for evidence of damages does not warrant revisiting summary judgment. In short, the Class should be allowed to proceed to trial on its claim that XOOM charged variable rates that did not follow the contract's pricing formula.

## CONCLUSION

For the foregoing reasons, the Court should reconsider the Order and permit Plaintiff to either: (1) correct Model 2's calculation error and update it to incorporate XOOM's supplemental Class data production; or (2) present Model C to the jury. In the event that the Court does not permit Plaintiff to correct the calculation errors in Model 2 or present Model C as evidence of damages, the Class should remain certified and the Court should hold the class action trial.

Dated: November 22, 2024
      New York, New York

Respectfully submitted,

 /s/ Ethan D. Roman      
Ethan D. Roman

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
Steven L. Wittels
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
slw@wittelslaw.com

*Class Counsel for Plaintiff and the Class*

Richard Dolan
Bradley D. Simon
**SCHLAM STONE & DOLAN LLP**
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

Andrey Belenky
**KHEYFITS BELENKY LLP**
1140 AVENUE OF THE AMERICAS, 9TH FLOOR
NEW YORK, NY 10036
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024, the foregoing was served via ECF on all counsel of record.

By:     /s/ Ethan D. Roman
         Ethan D. Roman