UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUSANNA MIRKIN, Individually and on Behalf of All
Others Similarly Situated,

                              *Plaintiffs,*

        -against-

XOOM ENERGY, LLC, and XOOM ENERGY NEW
YORK, LLC,

                              *Defendants*.

18-CV-2949 (ARR) (JAM)

**OPINION & ORDER**

On September 11, 2024, I entered an Order excluding plaintiff's original expert report ("Original Report") with respect to damages and excluding plaintiff's amended expert report ("Amended Report") in its entirety. Op. & Order ("Exclusion Order"), ECF No. 267. I also requested briefing on the continued viability of class proceedings in this case. *Id*. at 32. Before me now are plaintiff's motion for reconsideration of the Exclusion Order and the parties' joint briefing on class proceedings. For the reasons set forth below, I deny plaintiff's motion for reconsideration, but conclude that decertification of the class is unwarranted at this time.

## DISCUSSION

### I.    Classwide Proceedings Are Warranted Without a Damages Model.

Under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), "a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). However, "[t]he Supreme Court did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations," *id*. at 408, and "it remains the black letter rule that a class may obtain certification under Rule

1

23(b)(3) when liability questions common to the class predominate over damages questions unique to class members," *id*. (internal quotation marks and citation omitted). In other words, *Comcast* describes when a damages model may properly serve as common proof of damages, but does not require the class to offer such a model to proceed as a class. *See id*. The failure of plaintiff's damages model, standing alone, is therefore insufficient to warrant decertification.

Instead, the issue of class certification continues to turn on whether (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As I have previously explained, "[a] common issue is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof,' as opposed to individual issues, where 'members of a proposed class will need to present evidence that varies from member to member.'" Order Granting Class Cert. ("Class Cert. Order") at 12, ECF No. 152 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

XOOM's primary argument for decertification is that, without a damages model, plaintiff lacks any method common to all class members of calculating the reasonable price that XOOM should have charged and the amount by which XOOM's actual prices exceeded that reasonable price. *See* Def.'s Mem. Opp. Pl.'s Mot. Recons. ("Opp.") at 13, ECF No. 272. That argument fails for a variety of reasons.

First, the uniform pricing term in XOOM's contracts required XOOM to "determine its monthly variable rates using only its actual and estimated supply costs, subject to a reasonable and proportionate margin." Op. & Order ("Decert. Order") at 3, ECF No. 246. Thus, as plaintiff notes, XOOM's contracts dictate an objective formula for XOOM's maximum reasonable price

that does not vary between class members, who all signed contracts with XOOM containing identical or substantially similar language. *See* Pl.'s Reply Mem. Supp. Mot. Recons. ("Reply") at 9, ECF No. 274. The formula that calculates damages from those inputs was set by XOOM's uniform contract language, *see* Exclusion Order at 19, rather than any method devised by plaintiff's expert. Thus, the core factual disputes in this case center around the proper values for the inputs—XOOM's (1) "actual and estimated supply costs" and (2) reasonable and proportionate margin—which I have repeatedly held will be determined by the jury. Summ. J. Op. at 13–14, 16–17, ECF No. 151. If and when the jury determines the correct inputs for XOOM's supply costs and reasonable margins, damages can be calculated using simple and objective (albeit tedious) arithmetic under the formula required by XOOM's contracts.

Second, the inputs necessary to resolve liability and determine damages are subject to generalized, class-wide proof. *See* Class Cert. Order at 13 (noting that "[t]he central issue common to all class members is the constitution of supply costs" and that the answer to that question will be resolved through common evidence "related to the rate-setting process."). The numbers for XOOM's supply costs and reasonable margin, as well as the evidence offered to prove them, may vary depending on the particular *product* at issue. Nonetheless, determination of those inputs does not rely upon individualized evidence specific to any individual *customer* of those products.

The crux of XOOM's argument is not that its supply cost and reasonable margins are *insusceptible* to common proof, but that plaintiff *lacks sufficient* common proof. But that argument fails, as plaintiff's ability (or inability) to prove XOOM's "actual and estimated supply costs" will turn on the jury's evaluation of the evidence at trial. Class Cert. Order at 13–14. The class will fail or prevail together, but "[e]ither way, the outcome will be determined by common

evidence, rather than evidence that differs between class members." *Id*. at 14. Even if XOOM is correct that the class likely lacks sufficient common proof to carry its burden, that does not render that proof any less common, and "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); Advisory Committee's 2003 Note on subd. (c)(1) of Fed. R. Civ. P. 23, 28 U.S.C. App., p. 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.").

In conclusion, the exclusion of plaintiff's damages model does not alter my prior conclusion that the case should be tried as a class action. It would have been helpful for plaintiff to have offered a timely damages model that summarized the calculations, as that would have saved the jury, or perhaps this court, from conducting the calculations by hand. *See, e.g., Artica v. J.B. Custom Masonry & Concrete, Inc.*, No. 09-CV-3796, 2012 WL 13102524, at *5 (E.D.N.Y. June 4, 2012) (calculating damages from post-trial briefing after jury rendered special verdict). Nonetheless, even without a damages model, "generalized evidence [will still] be offered" to calculate damages and "individualized proof will [not] be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (internal quotation marks omitted).

## II.    Plaintiff's Damages Model Remains Excluded

Plaintiff requests that I reconsider my exclusion of her Amended Report. *See* Pl.'s Mem. Supp. Mot. Recons. ("Pl. Br.") at 5–10, ECF No. 271. As set forth in the Exclusion Order, I excluded plaintiff's Original Report as to damages, as its formula calculated XOOM's reasonable price, and the resulting damages therefrom, in a manner untethered to plaintiff's theory of liability. Exclusion Order at 12. Meanwhile, I found that plaintiff's Amended Report

contained a wholesale substitution of her Original Report's damages formula. Although the Amended Report corrected the flaws in the Original Report, I concluded that the Amended Report should be excluded as an undisclosed and untimely new set of opinions. *Id*. at 23.

### A.    Legal Standards

Generally, a motion for consideration should be denied "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995) (citation omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Thus, a "motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr*., 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).

### B.    The Amended Report is More than an Error in Calculation

Plaintiff "acknowledges th[e] error" that I identified in the Original Report's model and that it "do[es] not match" her theory of damages, but asserts that those errors are mistakes in arithmetic that may permissibly be corrected by supplementation of her expert report. Pl. Br. at 3. I have already addressed this argument, and plaintiff's arguments do not change my conclusion.

"[M]istakes in arithmetic can be corrected," but "the mistake of using an unreliable methodology" cannot. *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 656–57 (S.D.N.Y. 2007). The flaw in plaintiff's formula is a methodological error—it affects *how* her

expert calculated damages. The cases in which courts have permitted correction and supplementation involved technical errors and are inapposite. Exclusion Order at 23 (collecting cases); *see also Malletier*, 525 F. Supp. 2d at 656–57 (permitting supplementation of expert report that "mistakenly treated a negative as a positive" for some data entries); *Sitts v. Dairy Farmers of Am., Inc.*, No. 16-CV-287, 2020 WL 3467993, at *3 (D. Vt. June 24, 2020) (permitting supplementation of expert report to correct error caused by missing entries in the dataset where expert used the "same regression methodology" as the prior report).

In response, plaintiff asserts that the Amended Report permissibly supplements the Original Report because the Original Report's text purported to apply the correct formula contained in the Amended Report, despite the fact that the Original Report's actual calculations did not apply that formula. Pl. Br. at 3. That contention is meritless. Her expert applied the wrong methodology to generate his conclusions. Nothing in case law or in the Federal Rules supports her contention that an expert may purport to apply a stated methodology, while in fact relying upon an entirely different methodology, and then "correct" or "supplement" their opinions with the advertised methodology at a later date.

### C.    Exclusion of the Amended Report Remains Warranted

Exclusion of expert testimony is "a drastic remedy" that "should be used sparingly." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 398 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). Plaintiff asserts that exclusion of her damages report is too harsh of a sanction, and that any prejudice may be cured by her offer to "pay XOOM's reasonable attorneys' fees and costs for additional expert discovery." Pl. Br. at 8; *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296–97 (2d Cir. 2006) (noting that

prejudice suffered by the opposing party from the new testimony is a factor that courts must consider in imposing discovery sanctions).

Plaintiff's arguments are unconvincing, and I have already rejected most of them in the Exclusion Order. First, plaintiff again asserts that any prejudice to XOOM is mitigated because "XOOM was on notice" as early as September 2023 that she intended to supplement the Original Report to incorporate XOOM's additional data production. Pl. Br. at 6. However, as I previously stated, plaintiff offers no justification for why she waited until April 2024 to notify XOOM that she also intended to alter her model to a cost-based margin calculation. Exclusion Order at 26–27. Given that plaintiff's counsel purportedly made that alteration in response to my August 2023 adoption of her contract interpretation, counsel should have known of the need to correct her models at that time even if they did not fully understand the need to do so until much later. *Id.*

Second, plaintiff asserts that her counsel failed to appreciate or "was unaware of Model 2's calculation error or the fact that Model C corrected it" until I issued the Exclusion Order. Pl. Br. at 4 n.2. In response, XOOM contends that plaintiff's counsel was fully aware of that error and intentionally disguised it. Opp. at 1–7. Ultimately, the parties' dispute on this question makes little difference to my exclusion analysis. Plaintiff's counsel bore the "obligation . . . to fully understand what their retained experts are doing and to make Rule 26 disclosures accordingly." *Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 200 (E.D. Va. 2016). As stated in my prior order, the failure of plaintiff's counsel to "fully understand their own model . . . is plainly not a 'substantial' justification for plaintiff's untimely disclosure." Exclusion Order at 28 (quoting Fed. R. Civ. P. 37(c)(1)).

Third, plaintiff argues that additional expert discovery would not cause substantial prejudice, and that any prejudice will be mitigated by her offer to pay XOOM's reasonable

attorneys' fees and costs in re-deposing her expert. Pl. Br. at 8. I addressed those contentions in my prior order, Exclusion Order at 30–31, and my conclusion remains the same. Reopening discovery to admit the Amended Report would entail another deposition of plaintiff's expert, production of a new rebuttal report, and yet another round of *Daubert* briefing on those reports, as the Amended Report "may have introduced other flaws that have yet to be clearly raised or identified." *Id*. at 30. Plaintiff's proposal to pay XOOM's deposition fees and costs would not cover many of those expenses. Moreover, given the aggressive approach that both parties have adopted in the present litigation, I have little doubt that entering such an order would lead to further disputes over the reasonableness of XOOM's fees and costs, further delaying the resolution of this case.

Finally, I note that the parties' briefing has revealed that plaintiff's "damages model" is ultimately not that important to plaintiff's case. *See Design Strategy, Inc*., 469 F.3d at 296 (noting that the "importance" of the evidence is a factor in the exclusion analysis). As discussed above, the formula for calculating damages *from* XOOM's costs, reasonable margin, and actual prices is set by XOOM's contracts and does not require interpretation by plaintiff's expert. What remains to be resolved at trial are the inputs which will be fed into that formula—that is, what XOOM's supply costs and reasonable margins actually *were*. Summ. J. Op. at 13–14, 16–17. All of plaintiff's models assume that XOOM's supply costs were equivalent to the "Total Cost" in the rate-setting workbooks. However, should the jury disagree with that assumption, the models do not themselves calculate, or provide a method by which to calculate, XOOM's costs. Moreover, plaintiff has repeatedly acknowledged that her model would need to be "updated" to accommodate the jury's determination of the supply cost and reasonable margin inputs. *See* Decert. Order at 13.

### III.    I Order Further Briefing on the Parties Motions in Limine.

Having resolved the instant motions, I will now turn to the parties' remaining *in limine* motions, which raise various disputes regarding the scope and volume of evidence to be permitted at trial. *See* Pl.'s Mot. in Lim., ECF No. 221; Def.'s Mot. in Lim., ECF No. 227. As the Second Circuit has explained, the purpose of these motions is to "aid the trial process" by allowing me to rule on evidentiary disputes in advance of trial. *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Seeing as the parties have proposed 1,254 joint exhibits, and defendants also seek to admit an additional 1,474 defense exhibits, *see* Proposed Pretrial Order, ECF No. 210, I am particularly attentive to my responsibility to ensure that the evidence is presented in a clear and streamlined manner that the jury can understand. *See* Fed. R. Civ. Procedure 16(c)(2); Fed. R. Evid. 611.

As discussed above, one of the key issues to be decided at trial is whether, and to what extent, XOOM's prices reflected supply costs beyond those included in the estimated "Total Cost" values set forth in XOOM's rate-setting workbooks. Class Cert. Order at 4. From the parties' briefing, I gather that many of XOOM's proposed exhibits are offered as proof of those other costs. However, many of the exhibits consist of indecipherable spreadsheets containing numbers categorized under technical terms, abbreviations, or undefined acronyms. Without additional information regarding the content of XOOM's proposed exhibits, as well as the relationship between different categories of documents it seeks to admit, I am unable to evaluate the parties' arguments regarding the value and cumulative effect of the evidence.

Therefore, to aid my evaluation of the motions *in limine*, Xoom is ordered to provide the following supplemental information regarding its purported supply costs and the documentary evidence thereof:

(1)     A complete list of actual costs that, in XOOM's view, constituted permissible supply costs under the contract.

(2)     For each cost identified in response to (1), a list of the documentary exhibits that XOOM intends to offer as evidence that it did, in fact, incur that cost.

(3)     For each exhibit identified in (2), a brief description of the document, an identification of the specific portion or feature of the document and its relevance to XOOM's supply costs, and an explanation of how it will impact the supply cost figures that XOOM plans to present at trial.

Plaintiff, if she so desires, may file a brief in response as to (1) whether those categories of other costs were permissible "supply costs" under XOOM's contracts and (2) the import and relevance of XOOMs' exhibits offered to prove those costs. In preparing these submissions, the parties are encouraged to enter any additional stipulations of fact that could streamline the presentation of evidence and mitigate evidentiary disputes at trial. Defendant's brief shall be filed by January 17, 2024, and plaintiff's response, if any, shall be filed by February 7, 2024.


SO ORDERED.

                                        _____/s/_____
                                        Allyne R. Ross
                                        United States District Judge


Dated:              December 15, 2024
                    Brooklyn, New York