UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>Defendants. | No. 18 Civ. 2949 (ARR) (JAM) |

**XOOM'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF CONTINUED CLASS TREATMENT**

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. LEGAL STANDARD ......................................................................................................... 3

III. ARGUMENT ....................................................................................................................... 3

    A. Factual Error: Plaintiff's expert's concession that the RSWs' Total Costs are *not* equal to XOOM's actual and estimated supply costs alters the Order's conclusion ... 4

    B. Legal Error: A rigorous analysis of the Rule 23 factors in light of the current evidentiary record alters the Order's conclusion .......................................................... 6

IV. CONCLUSION .................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Pages**

*Artica v. J.B. Custom Masonry & Concrete, Inc.*,
    2012 WL 13102524 (E.D.N.Y. June 4, 2012) .......................................................................... 7, 8

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................................. 6

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ................................................................................................... 10

*Gregory v. Chohan*,
    670 S.W.3d 546 (Tex. 2023) ................................................................................................ 10

*In re Aluminum Warehousing Antitrust Litig.*,
    336 F.R.D. 5, 44 (S.D.N.Y. 2020) ........................................................................................ 10

*In re EPDM Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009) ........................................................................................ 9, 10

*In re Hydrogen Peroxide*,
    552 F.3d 305 (3d Cir. 2008) ................................................................................................... 4

*In re IPOs Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ..................................................................................................... 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ............................................................................................. 10

*Intersal, Inc. v. Hamilton*,
    373 N.C. 89 (N.C. 2019) .................................................................................................. 7, 10

*Laumann v. NHL*,
    105 F. Supp. 3d 384  (S.D.N.Y. 2015) ................................................................................. 10

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016) ............................................................................................... 6, 7

*Roach v. T.L. Cannon Corp.*,
    2017 WL 11529679 (N.D.N.Y. Sept. 27, 2017) ..................................................................... 8

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ............................................................................................... 2, 7

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ............................................................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, (2011) ........................................................................................................ 6

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

Fed. R. Civ. P. 60 ..................................................................................................................... 3

XOOM respectfully requests that the Court reconsider its decision that an overcharge class remains viable, Doc. 276 (the "Order"). XOOM appreciates the extraordinary nature of its request but firmly believes that "controlling decisions [and] data that the court overlooked…'might reasonably be expected to alter the conclusion reached by the court.'" *id.* at 5 (citation omitted).

## I.  PRELIMINARY STATEMENT

The Order concluded that "the failure of plaintiff's damages model, standing alone, is . . . insufficient to warrant decertification," *id.* at 2, reasoning that the models were "ultimately not that important to plaintiff's case" as they "do not themselves calculate, or provide a method by which to calculate, XOOM's costs," *id.* at 8. The Order thus did not re-analyze Rule 23 commonality and predominance in any detail because, "[e]ven if XOOM is correct that the class likely lacks sufficient common proof to carry its burden," the Court believed considering that issue would improperly "engage in free-ranging merits inquiries" at this juncture. *Id.* at 4 (citations omitted).

But the recognition that Plaintiff's models never did the important task of measuring XOOM's supply costs does not mean that decertification is unwarranted; it means that certification of Plaintiff's North Carolina overcharge claim was not appropriate in the first instance.

The conclusion that certification remains appropriate stems from fundamental errors of fact and law. As a factual matter, the Order's reasoning depends on the flawed assumption that XOOM's rate-setting workbooks (RSWs) might still provide proof of XOOM's "actual and estimated supply costs," as the Summary Judgment and Certification Orders assumed. But the Order overlooked the fact that its assumption is now incorrect because there is no longer a "core factual dispute[]" as to whether the RSWs' Total Cost figure represents XOOM's actual and estimated supply costs. Order 3. There is no factual dispute on that issue at all.

Now, every witness will testify that the RSWs do *not* reflect actual and estimated supply

1

costs. Plaintiff's expert—the only potential source of contrary testimony—now admits the RSWs have estimated costs only, so no witness will say otherwise. That evidentiary development is critical. On Decertification, the Court held that Plaintiff's ability to "provide common evidence of [XOOM's] actual and estimated supply costs" would "hinge[] on the jury's assessment of *whether the Total Cost figure equals XOOM's actual and estimated supply costs.*" Decert. Order 12. Now, without anything for the jury to assess, it is clear Plaintiff does not have common evidence to "satisfy her burden" under Rule 23 or on the merits. What she has always needed is cost evidence a reasonable juror could conclude "equals," can "actually represent," or "is synonymous with actual and estimated supply costs." *Id.* at 11–12. Her continued reliance on RSWs as her sole cost evidence is thus fatal because it means she cannot meet her "burden of proving that she [or the class] was overcharged." *Id.* at 10. Absent that evidence, no trial is viable, much less a class trial.

      The Order's fundamental legal error is that it does not follow Supreme Court and Second Circuit precedent holding that a rigorous analysis is an ongoing, affirmative duty that obligates courts to decide putative merits issues if necessary to determining whether a plaintiff has carried her Rule 23 burden. In *Roach*, that analysis required the district court to consider whether an FLSA class could proceed absent a damage model. In this overcharge context, it requires the Court to assess whether Plaintiff can present common proof of the *amount* she and the class purportedly overpaid for each rate. Decert. Order 11. Because of the complex nature of such questions, overcharge plaintiffs typically satisfy predominance by using expert-created, data-aggregating models to show injury and damages. The failure of such a model means there is no common proof. Plaintiff understood the importance of having a model. That is why she attempted to correct one of Model 2's flaws eighteen months too late. But shorn of generalized evidence reflecting XOOM's actual and estimated supply costs—having only RSWs that everyone agrees contain estimates only

2

and the excluded models summarizing that same data—Plaintiff has no (common) proof of overcharge injury or damages as a matter of law. Reaching that conclusion does not demand an improper merits inquiry; it is the inevitable result of a rigorous analysis.

XOOM acknowledges the Court's skepticism of this motion, especially with its heavy caseload and limited resources. XOOM thus carefully addresses only the Order's errors, and not issues already considered or rejected.[1] XOOM is duty-bound to raise these problems now to prevent the public, the Court, and the parties from shouldering the enormous burden of an unworkable class trial. Waiting until the end of Plaintiff's case to make the inevitable determination that there is *no evidence* the RSWs contain XOOM's actual and estimated supply costs, and thus that Plaintiff has no common proof, would be wasteful for all. The Court should decertify now.

## II.     LEGAL STANDARD

Rule 60(b) allows a party to move the Court to reconsider an order based on, *inter alia*, "mistake [or] inadvertence" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (b)(6). To prevail, XOOM must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Order 5 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## III.    ARGUMENT

The Order overlooks a fundamental change since briefing on Plaintiff's certification motion and XOOM's decertification motion: Plaintiff and her expert abandoned their contention

---

[1] For example, this motion accepts the Court's determination that, at an earlier stage, the jury theoretically could have decided "whether the Total Cost equals XOOM's actual and estimated supply costs." *See* Doc. 246, Decert. Order. But it is the factual error addressed here that shows that task is now impossible: no witness or document will say the RSWs' Total Cost figure is equal to XOOM's actual and estimated supply costs—including Plaintiff's expert. Moreover, XOOM's position that the jury cannot determine a reasonable margin—both because it is not a triable issue and because Plaintiff has no admissible evidence of a reasonable margin—is omitted here as the Court has not yet resolved the parties' motions in limine on those points. *See id.* at 14 n. 7.

3

that the RSWs' Total Cost figures represent XOOM's actual and estimated supply costs, admitting that those figures show estimated costs only and that XOOM's "'actual costs are *not reflected* in [its] rate-setting workbooks,'" CRA New Rep. ¶ 18(e) (emphasis added). This puts the Order in irreconcilable conflict with the Court's prior (correct) determination that if "the Total Cost figure is [] *not reflective* of XOOM's actual and estimated supply costs," then "plaintiff cannot provide common evidence of its actual and estimated supply costs[.]" Decert. Order. 12 (emphasis added).

That conflict cannot be ignored simply because it relates to a merits issue. Controlling Supreme Court and Second Circuit precedent demand a rigorous analysis of the Rule 23 factors, including analysis of "all relevant evidence," even where the Court may be forced to resolve factual and merits issues that "overlap" or are "identical with a Rule 23 requirement." *In re IPOs Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *see In re Hydrogen Peroxide*, 552 F.3d 305, 320 (3d Cir. 2008) ("[A] district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the [Rule 23] requirements."). Here, a rigorous analysis would have considered the now-undisputed fact that the RSWs are not evidence of XOOM's actual and estimated supply costs. Failure to engage in that analysis is legal error warranting reconsideration.

**A.    Factual Error: Plaintiff's expert's concession that the RSWs' Total Costs are *not* equal to XOOM's actual and estimated supply costs alters the Order's conclusion.**

The Order's brief Rule 23 analysis is premised on the incorrect assumption that there remains a live jury issue on whether Total Cost "equals," can "actually represent," or "is synonymous with actual and estimated supply costs." Decert. Order 12; Order 3 ("*if* and when the jury determines the correct inputs for XOOM's supply costs" (emphasis added)); *id.* ("plaintiff's ability (or inability) to prove XOOM's 'actual and estimated supply costs' will turn on the evaluation of the evidence at trial"); *id.* at 8 ("*should* the jury disagree with [the] assumption" that

4

"XOOM's supply costs were equivalent to the 'Total Cost' in the rate-setting workbooks" (emphasis added)). But there is no such fact issue.

Plaintiff's expert now concedes that XOOM's "'actual costs are *not reflected* in [its] rate-setting workbooks,'" CRA New Rep. ¶ 18(e) (emphasis added); *see* Doc. 245, Adamson Decl. ¶ 40 (admitting the RSWs reflect estimated, not actual, supply costs). Plaintiff, for her part, has made similar concessions that the RSWs reflect XOOM's estimated supply costs only—not XOOM's actual supply costs that are admittedly different figures. *See, e.g.,* Doc. 233, Pl. MIL Mem. 3 (acknowledging "variations" between "XOOM's monthly COGS estimates from its workbooks" and "XOOM's actual supply costs"). Plaintiff knows she has an evidentiary problem, which is why she unsuccessfully argued on decertification and in a separate limine motion that XOOM bears the burden of proving its actual costs. *See* Doc. 222, Pl. MIL Mem. 8; Doc. 257 (withdrawing Plaintiff's burden-shifting motion in limine). Every witness on Plaintiff's list either has no knowledge of the constitution of XOOM's supply costs (like Plaintiff and her husband) or will testify that the RSWs do not reflect XOOM's actual and estimated supply costs (like Plaintiff's expert, XOOM's expert, and XOOM's employees). The jury will not be told otherwise by anyone.

Thus, contrary to the Order's assumption, there is no disputed fact for the jury to resolve on this issue. The Total Cost figures *do not* "equal," *cannot* "actually represent," and *are not* "synonymous with actual and estimated supply costs." Decert. Order 12. In other words, it is undisputed that "the Total Cost figure is [] *not* reflective of XOOM's actual and estimated supply costs," and so "plaintiff cannot provide common evidence of its actual and estimated supply costs," *id.*, nor can she meet her "burden of proving that she was overcharged[,]" *id.* at 10.

The Court should correct this factual error now in the interests of justice. Otherwise, the Court and the parties will collectively expend countless hours and at least hundreds of thousands

5

of dollars preparing for a trial that will inevitably end prematurely at the conclusion of Plaintiff's presentation. That unnecessary exercise can be avoided through the Court's reconsideration of the Order. When the Order's factual error is corrected, its reasoning cannot hold. Because Plaintiff has no common evidence of actual and estimated supply costs, Rule 23's commonality and predominance requirements are not satisfied, and the class must be decertified.

**B.      Legal Error: A rigorous analysis of the Rule 23 factors in light of the current evidentiary record alters the Order's conclusion.**

District courts have "the affirmative duty of monitoring [their] class decisions in light of the evidentiary development of the case." *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016). Respectfully, the Order does not meet that duty, relying on previous analyses in the Certification and Decertification Orders (despite significant evidentiary developments) in lieu of conducting the "rigorous analysis" anew as Rule 23 and the Second Circuit require. *See id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (same). The Order also does not address the applicable "preponderance of the evidence" standard of proof that Plaintiff had to meet for continued certification. *Mazzei*, 829 F.3d at 268.

The Order's incorporation-by-reference approach led to three errors of law that independently resulted in an incorrect outcome. First, the Order overlooks the recent evidentiary development of the case in contravention of the Court's ongoing "affirmative duty." *Cf. Mazzei*, 829 F.3d at 266. That legal error, in turn, led to the dispositive factual error already discussed: an assumption that there remains a disputed fact issue regarding Total Costs for the jury to resolve.

Relatedly, the Order's second error of law is not re-examining the viability of the RSWs as Plaintiff's supposedly common proof of XOOM's supply costs, mistakenly concluding that doing so would be a "free-ranging merits inquir[y]" on the "probable outcome" of a merits issue. Order 4 (citation omitted). But whether the RSWs' Total Cost equals XOOM's actual and estimated

6

supply costs is not a disputed issue with a probable outcome; it is an undisputed issue with a certain outcome. And in any event, district courts must make fact determinations relevant to the Rule 23 analysis "based on the preponderance of the evidence, even if they overlap with the merits of the case." *Mazzei*, 829 F.3d at 268.[2] Correcting these errors with a rigorous analysis of the evidentiary developments would show that Plaintiff has no common proof of XOOM's supply costs. Rule 23(a)(2) commonality is no longer satisfied (if it ever was). *See infra* Part III.A.

Third, *even if* the jury could determine the RSWs are common proof of XOOM's actual and estimated supply costs, the Order commits a separate error of law by contravening controlling authority that Plaintiff's overcharge claim merges liability and damages into a single issue. *See Intersal, Inc. v. Hamilton*, 373 N.C. 89, 108–09 (N.C. 2019) (listing "the amount of damages resulting to plaintiff" among the "necessary allegations for a breach-of-contract claim" and holding that "fail[ure] to allege an amount of damages" meant there was no viable contract claim). Thus, the Order's suggestion that a class trial remains workable in the absence of a damage model because "the jury, or perhaps [the] court" can "conduct[] the calculations by hand[,]" following a liability phase or perhaps a jury-rendered "special verdict," Order 4, is wrong as a matter of law.

The Court relied on two FLSA cases for its faulty conclusion: *Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015), and *Artica v. J.B. Custom Masonry & Concrete, Inc.*, 2012 WL 13102524 (E.D.N.Y. June 4, 2012). Neither is relevant, and both show why continued certification cannot be sustained here. Unlike this overcharge case where a proper damage model would have served as proof of both liability and damages, FLSA cases involve discrete issues of liability separate from individualized damage assessments. In that FLSA context where liability and

---

[2] The Court's fact-finding duty when conducting a Rule 23 analysis does not usurp a jury's fact-finding role at trial on disputed issues because the Court's Rule 23 "findings do not bind the trier of fact." *Mazzei*, 829 F.3d at 268. But again, the fact issue relevant here is now undisputed.

7

damages can be bifurcated, the Second Circuit's *Roach* decision reiterated that failure of a damage model and resulting "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," and remanded for the district court to conduct a full Rule 23 rigorous analysis, including an "evaluat[ion] of whether individualized damage calculations would predominate over common questions of liability," 778 F.3d at 410.

Moreover, FLSA matters typically involve classes only a fraction of the size of this one or use easily extrapolatable representative data: *Roach* involved a class of 155 affected employees during a sampled two-month time period, *Roach v. T.L. Cannon Corp.*, 2017 WL 11529679, at *9 (N.D.N.Y. Sept. 27, 2017), while *Artica* never certified a Rule 23 class and involved only a few dozen employees, *see* Special Verdict Form, Doc. 144, No. 1:09-CV-03796-RER (E.D.N.Y. filed Mar. 23, 2012); J. and Damages Summ. Form, Doc. 166, 166-1 (E.D.N.Y. filed July 20, 2012). Here, by contrast, the *thousands* of overcharge calculations necessary to adjudicate classwide liability will precede and be in addition to the *millions* of individualized damages calculations required month-by-month and customer-by-customer.

Looking at a single month for Plaintiff's individual claim shows the infeasible nature of this task. For June 2013, her only evidence of XOOM's supply costs is an RSW reflecting XOOM's estimated costs as projected in May 2013. Those figures do not take into account: a report showing a negative margin in May due to NYISO costs (DX 799; Doc. 195-49); the May 2013 Consolidated Financial Statement showing PPAs were higher than forecast and that there was an unfavorable variance due in part "to the NYISO capacity cost of approximately $250K," and a "March 2013 PPA adjustment of $655k" (DX 1381; Doc. 195-47); a June 2013 report showing a drop in unit margins for NYISO from $10.02 to $2.81 (DX 802); and a June 2013 Consolidated Financial Statement showing actual costs exceeding the forecast, with higher than estimated costs for both

8

power and gas, including due to a "variance . . . attributed to the NYISO capacity cost of approximately $175K" (DX 1382; Doc. 195-48). That is just the documentary (not testimonial) evidence that the jury will be asked to consider to determine what the actual and estimated supply costs were for just one of Plaintiff's six rates.

Any one of these pieces of evidence could change the jury's overcharge calculation significantly. For example, the June 2013 Consolidated Financial Statement shows that XOOM's actual supply costs were 7.23% higher than the original estimates in the RSWs. The jury would have to determine how to incorporate that variation into the supply cost figure, and so on for each piece of documentary evidence reflecting actual supply costs that deviated from estimated costs.

Nor would the work end there. Even if the jury provided a cost and margin input for every rate despite the laboriousness of such an undertaking, that would not be enough to prove damages for any given customer. The jury or the Court would then have to take the rates XOOM should have charged as determined by the factfinder and apply those rates to the appropriate customer charge data XOOM has supplied for each of the 135,191 class members—totaling 3,660,545 calculations to adjudicate individualized damages. *See* PX 65–74. This is simply not a task that a jury or the Court could accomplish without the aid of an expert.

This arduous inquiry is precisely why overcharge cases like this one invariably rely on expert models for predominance. Complex economic and mathematical projections are necessary to show common proof "that the class plaintiffs paid higher actual prices" than they should have. *In re EPDM Antitrust Litig.*, 256 F.R.D. 82, 88 (D. Conn. 2009) (noting typical use of "econometric regression models" for common proof of overcharge elements (citation omitted)).

As a result, the exclusion of an expert model in an overcharge case forecloses certification

9

for failure to satisfy predominance.[3] That is true even though it theoretically is possible a jury could analyze disaggregated data and pick numbers to plug into a generic formula.[4] As the D.C. Circuit put it, in overcharge cases: "No damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013)); *see, e.g.*, *Aluminum Warehousing,* 336 F.R.D. at 43–51 (holding that flaws in expert model meant plaintiffs lacked common proof of classwide overcharge injury and "lay evidence . . . developed in discovery" was no substitute); *Laumann v. NHL*, 105 F. Supp. 3d 384, 398–99 & n.57 (S.D.N.Y. 2015) (declining to certify overcharge class where expert "model was the common evidence [of overcharge]—and the model [had] been excluded").

So too here. The evidentiary developments in the case—including the Court's exclusion of Plaintiff's expert models—require that the class be decertified.

## IV.    CONCLUSION

Based on the foregoing, XOOM respectfully requests that the Court reconsider its decision that decertifying the class is unwarranted at this time.

---

[3] Overcharge claims often appear in the antitrust context, which are subject to essentially the same three elements as North Carolina overcharge claims. *Compare In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 44 (S.D.N.Y. 2020) (listing elements), *with Intersal,* 373 N.C. at 108–09 (same). In both contexts, "injury-in-fact and damages are often determined by comparing the 'but-for' price—the price a customer would have paid in the absence of the [breach of legal duty or anticompetitive conduct]—and the actual price paid." *In re EPDM*, 256 F.R.D. at 88 (citing *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107 (2d Cir. 2007)).

[4] Overcharge cases should not proceed down such a path because, without common expert evidence of what the overcharge inputs should be, the factfinder risks engaging in speculative factfinding. That violates fundamental due process and evidentiary principles "[n]o matter the cause of action." *Gregory v. Chohan*, 670 S.W.3d 546, 551 (Tex. 2023) ("'Juries cannot simply pick a number and put it in the blank.'" (citation omitted)).

10

| | |
|---|---|
| Dated: December 30, 2024 | MCDOWELL HETHERINGTON LLP |
| | |
| | /s/ Michael D. Matthews, Jr. |
| | Michael D. Matthews, Jr. |
| | Diane S. Wizig (admitted *pro hac vice*) |
| | David L. Villarreal (admitted *pro hac vice*) |
| | Netra Sreeprakash |
| | Justin R. Chapa (*pro hac* forthcoming) |
| | MCDOWELL HETHERINGTON LLP |
| | 1001 Fannin Street, Suite 2400 |
| | Houston, Texas 77002 |
| | Telephone: (713) 337-5580 |
| | Facsimile: (713) 337-8850 |
| | matt.matthews@mhllp.com |
| | diane.wizig@mhllp.com |
| | david.villarreal@mhllp.com |
| | netra.sreeprakash@mhllp.com |
| | justin.chapa@mhllp.com |
| | |
| | *Attorneys for Defendants XOOM Energy, LLC and XOOM Energy New York, LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the 30th day of December, 2024, via CM/ECF on all counsel of record.

/s/*Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.