## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

SUSANNA MIRKIN, Individually and on
Behalf of All Others Similarly Situated

    Plaintiff,

    v.

XOOM ENERGY, LLC and XOOM
ENERGY NEW YORK, LLC,

    Defendants.

Case No.: 18 Civ. 2949 (ARR) (JAM)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO XOOM'S MOTION FOR RECONSIDERATION OF CONTINUED CLASS TREATMENT

---

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman
J. Burkett McInturff
Steven L. Wittels
Andrey Belenky
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
slw@wittelslaw.com
abelenky@wittelslaw.com

**SCHLAM STONE & DOLAN LLP**
Richard Dolan
Bradley D. Simon
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

Dated: January 13, 2025

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL STANDARD................................................................................................................. 2

ARGUMENT .............................................................................................................................. 2

   I.   THERE IS NO FACTUAL ERROR IN THE ORDER: AMPLE COMMON
       PROOF SHOWS THAT XOOM'S SUPPLY COSTS ARE SYNONYMOUS WITH
       THE TOTAL COST IN ITS RSWS ................................................................................ 2

       A.   In Context, XOOM's Quoted Snippet Supports Plaintiff's Claim that the
           RSWs Set Forth XOOM's "Actual and Estimated Supply Costs.".......................... 3

       B.   Plaintiff Can Call at Least Four Witnesses to Prove that XOOM's RSWs Are
           Synonymous with Its "Actual and Estimated Supply Costs.".................................. 4

   II.   THERE ARE NO LEGAL ERRORS IN THE ORDER.................................................... 6

       A.   The Order Conducted a Rigorous Analysis of the Relevant Rule 23 Factors. ......... 6

       B.   The RSWs Can Serve as Common Proof of Supply Costs. ..................................... 6

       C.   Liability and Damages Do Not Merge.................................................................... 7

       D.   Individualized Damages Issues Are No Barrier to Class Treatment. ....................... 9

       E.   This Is Not an Antitrust Case................................................................................. 10

CONCLUSION.......................................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012) ................................................................................. 2

*Artica v. J.B. Custom Masonry & Concrete, Inc.*,
   No. 09-CV-3796, 2012 WL 13102524 (E.D.N.Y. June 4, 2012) ............................................ 9

*Crosby v. City of Gastonia*,
   635 F.3d 634 (4th Cir. 2011) ................................................................................. 7

*Gregory v. Chohan*,
   670 S.W.3d 546 (Tex. 2023) ................................................................................. 10

*Harewood v. APL Ltd.*,
   No. 14-CV-1668 (ARR) (VMS), 2015 WL 12591648 (E.D.N.Y. Aug. 24, 2015) .................. 8

*In re Aluminum Warehousing Antitrust Litig.*,
   336 F.R.D. 5 (S.D.N.Y. 2020) ................................................................................. 10

*In re EPDM Antitrust Litig.*,
   256 F.R.D. 82 (D. Conn. 2009) ................................................................................. 10

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000) ................................................................................. 2

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F. 3d 244 (D.C. Cir. 2013) ................................................................................. 10

*Intersal, Inc. v. Hamilton*,
   373 N.C. 89 (N.C. 2019) ................................................................................. 7

*Laumann v. Nat'l Hockey League*,
   105 F. Supp. 3d 384 (S.D.N.Y. 2015) ................................................................................. 10

*Mazzei v. Money Store*,
   829 F.3d 260 (2d Cir. 2016) ................................................................................. 6

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ................................................................................. 8

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ................................................................................. 9, 10

Plaintiff Susanna Mirkin and the Class ("Plaintiff") respectfully submit this Opposition to Defendants XOOM Energy, LLC and XOOM Energy New York LLC's ("Defendants" or "XOOM") motion for reconsideration of the Order dated December 19, 2024 finding decertification unwarranted. Dkt. No. 276 ("Order").

## PRELIMINARY STATEMENT

XOOM fails to identify any legitimate legal or factual errors in the Order. Its motion instead asks the Court to ignore the voluminous common proof of Plaintiff's claim and upend the Court's repeated holdings on the disputed issues the jury will decide. There is no reason for the Court to indulge this request, not least because it relies on unsound reasoning and inapposite caselaw.

Pointing to a single factual "error"—an out-of-context, incorrect, and improperly-interpreted quote from Plaintiff's expert's (excluded) Amended Report—XOOM claims no witness will testify that its rate-setting workbooks' ("RSWs") "Total Cost" figures represent XOOM's actual and estimated supply costs. Not so. In the proper context that quote (and Plaintiff's expert's admissible testimony) stands for the exact opposite proposition: that Total Costs in the RSWs represent XOOM's actual and estimated supply costs. Moreover, XOOM executives, its corporate representative, and its own expert, can provide supporting testimony, including XOOM's admission that the RSWs are **_over 99% accurate_**.

XOOM's complaints of purported legal errors are likewise without merit. XOOM mistakenly faults the Order for failing to **_re_**consider each Rule 23 factor, even though the Court's rigorous analysis of those factors was not impacted by its subsequent *Daubert* order. XOOM's claim that Plaintiff has no common proof of XOOM's supply costs fares no better in light of the testimony from multiple witnesses noted above. The law of this case and judicial estoppel prevent XOOM from arguing that computation of damages—which it claims must be carried out by an expert—is a required element of breach of contract. But even if the Court delves into the merits of

this argument, liability and damages need not "merge" and the Court's proposed staging—having the jury decide the disputed inputs for XOOM's contractual formula, followed by damages calculations—is appropriate here. XOOM's argument regarding individual damages calculations likewise misses the mark. There is no need to conduct calculations to determine liability and well-settled law consistently finds that individual damages calculations are no barrier to class treatment. Last, XOOM's attempt to conflate breach of contract claims with antitrust litigation fails to appreciate a key distinction: while computation of antitrust damages typically requires a regression analysis requiring specialized expertise, the damages here "can be calculated using simple and objective (albeit tedious) arithmetic under the formula required by XOOM's contracts" Order at 3. In sum, XOOM offers no reason for the extraordinary remedy of reconsidering the Order.

## LEGAL STANDARD

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Dec. 19, 2024 Text Order (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Such a motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Order at 5 (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

## ARGUMENT

## I. THERE IS NO FACTUAL ERROR IN THE ORDER: AMPLE COMMON PROOF SHOWS THAT XOOM'S SUPPLY COSTS ARE SYNONYMOUS WITH THE TOTAL COST IN ITS RSWS
*(Responding to Defs.' Point III.A, Defs.' Br. at 4–6)*

XOOM argues that the Court made a single factual error: overlooking a supposed concession in Plaintiff's (excluded) amended expert report. To this end, XOOM claims that "Plaintiff's expert now concedes that XOOM's 'actual costs are *not reflected* in [its] rate-setting

workbooks,'" and that there is no witness who could tell the jury otherwise. Dkt. No. 279, Defs.'
Mem. of Law in Supp. of Mot. ("Defs.' Br.") at 5. This is doubly incorrect. First, Plaintiff's expert
made no such admission; XOOM's claim to the contrary relies on an incorrect and out-of-context
snippet from his excluded report. Second, both Plaintiff's expert and several other witnesses,
including XOOM's executives, its expert, and its corporate representative, have already provided
testimony supporting a finding that the RSWs set forth XOOM's actual and estimated supply costs.

A.    **In Context, XOOM's Quoted Snippet Supports Plaintiff's Claim that the RSWs Set Forth XOOM's "Actual and Estimated Supply Costs."**

XOOM claims that Plaintiff's expert admitted that "actual [sic] costs are *not reflected* in
rate-setting workbooks." Defs.' Br. at 3 (emphasis XOOM's). Rather, Plaintiff's expert was
responding to XOOM's contention that it incorporated "'actual' supply costs" into its ***margins***:

> I understand that XOOM has claimed that its variable rate margins fluctuated based
> on supposed "actual" supply costs that were allegedly incorporated into those
> margins. I could not identify any substantiation in the data or documents that
> XOOM provided in discovery that XOOM included or used actual supply costs as
> part of a rate setting formula. . . . I also note that XOOM's own Rule 30(b)(6)
> testimony shows that the estimated supply costs in XOOM's rate-setting
> workbooks and other materials were highly accurate. Thus the differences between
> "actual" and "estimated" supply costs on average over time may not have been
> material from a business perspective. This likely explains why "actual" costs are
> not reflected in XOOM's rate-setting workbooks.

Amended Report ¶ 18(e) (footnotes omitted). XOOM also omits the quotes surrounding "actual,"
deliberately stripping the word of context that plainly shows Plaintiff's expert was referring to and
rejecting XOOM's claim that it inexplicably included actual costs in its margins. *Id.* In context,
the quote forms part of a larger point: the RSWs' Total Costs (or COGS) were so accurate that any
difference between them and supposed "actual" costs was immaterial. *Id.* In other words,
Plaintiff's expert deemed the RSWs' Total Costs synonymous with "actual and estimated supply
costs." XOOM's claim that these are only estimated costs is a distinction without a difference.

3

Even assuming the fact finder will accept XOOM's reading of the statement, Plaintiff's expert's admissible Original Report repeatedly makes clear that the RSWs' Total Cost figures are synonymous with XOOM's "actual and estimated supply costs." *See, e.g.*, Dkt. No. 147-3 ("Original Report") ¶ 47 ("The ***actual costs calculated (i.e., "Total Cost")*** are much lower than the variable rates that XOOM actually charged its New York customers.") (emphasis added); *see also id.* ¶ 23(h) ("XOOM's own calculations of its actual and estimated supply costs [are] labeled by XOOM in its data as "Total Cost"); *id.* ¶ 52 ("XOOM simply calculated and reported its actual costs of supplying electricity and gas as a sum total called "Total Cost."). These opinions negate XOOM's claim that an out-of-context quote is a case-ending admission—or, at best, renders that quote fodder for cross-examination.

### B. Plaintiff Can Call at Least Four Witnesses to Prove that XOOM's RSWs Are Synonymous with Its "Actual and Estimated Supply Costs."

XOOM claims that given Plaintiff's expert's so-called concession, "every witness will testify that the RSWs do *not* reflect actual and estimated supply costs." Defs.' Br. at 1. This is far from true. Plaintiff can call at least four witnesses who would testify that the RSW's Total Cost figure is synonymous with XOOM's "actual and estimated supply costs."

***First***, as noted above, Plaintiff's expert testimony can confirm that the Total Cost figures are XOOM's actual costs. *See, e.g.*, Original Report ¶¶ 23(h), 47, 52. ***Second***, Plaintiff can call Jason Loehde, XOOM's Director of Pricing and Structuring and its corporate representative, who admitted that the Total Cost figures are "highly accurate." *See* Dkt. No. 201-2, XOOM 30(b)(6) Tr. 126:17–127:1. Andrew Coppola, former SVP of Energy Supply and Pricing, similarly admitted that these cost figures are accurate to "within three standard deviations, 99 percent certainty." Dkt.

4

No. 201-4, Coppola Tr. 252:5–20.[1] ***Third***, the jury can hear XOOM's own expert's opinion that the Total Cost figure represents "actual and estimated supply costs." Specifically, he stated that "XOOM produced historical data related to its electric rates and its actual and estimated supply costs, known as COGS, in Discovery. . . . I was able to use this historical data to illustrate how XOOM's SimpleFlex electric rate changed over time relative to its ***actual and estimated supply costs, as represented by its COGS***," Dkt. No. 139-2, Coleman Report at 20 (emphasis added), and also used COGS from RSWs as XOOM's "actual and estimated supply costs," *id.* at 14. In other words, XOOM's claim that "there is *no evidence* the RSWs contain XOOM's actual and estimated supply costs," Defs.' Br. at 3 (emphasis in original) is undermined by its these admissions. Thus, the jury can hear ample testimony supporting Plaintiff's claim that the COGS from the RSWs are synonymous with or representative of XOOM's actual and estimated supply costs.

In citing Plaintiff's expert's supposed concession, XOOM merely seeks support for its repeated argument that Plaintiff lacks sufficient common proof. But even aside from being untrue, this "concession" is not an impediment to class treatment. "The crux of XOOM's argument is not that its supply cost and reasonable margins are *insusceptible* to common proof, but that plaintiff *lacks sufficient* common proof. But that argument fails, as plaintiff's ability (or inability) to prove XOOM's 'actual and estimated supply costs' will turn on the jury's evaluation of the evidence at trial.'" Order at 3 (quoting Dkt. No. 152 ("Class Order") at 13–14). The supposed concession the sole factual error XOOM identifies—does not render supply costs insusceptible to common proof.

In sum, Plaintiff's expert testimony, and XOOM's witness and expert admissions regarding rate-setting can establish that the Total Cost figures in the RSWs are "synonymous" with XOOM's actual and estimated supply costs. The Order thus contains no factual error that needs correcting.

---

[1] Assuming a standard distribution, and there is no reason to doubt that is the case with XOOM's RSWs, accuracy to three standard deviations is 99.7%. *See* https://www.investopedia.com/terms/e/empirical-rule.asp.

## II.    THERE ARE NO LEGAL ERRORS IN THE ORDER
### *(Responding to Defs.' Point III.B, Defs.' Br. at 6–10)*

XOOM identifies three purported legal errors in the Order: (1) failing to meet the Court's "ongoing 'affirmative duty'" to assess class treatment; (2) rejecting XOOM's merits argument that there is no common proof of supply costs; and (3) failing to merge liability and damages "into a single issue." Defs.' Br. at 6–7. Although not identified as such, XOOM also claims the Order legally erred by: (4) failing to consider individualized damages; and (5) improperly construing this breach of contract claim differently from an antitrust one, *id.* at 8–10. None pass muster.

### A.    The Order Conducted a Rigorous Analysis of the Relevant Rule 23 Factors.

XOOM first claims that because the Order incorporated reasoning from prior rulings and failed to use the magic words "preponderance of the evidence," it did not conduct a "rigorous analysis" of the Rule 23 factors. Defs.' Br. at 6. However, the Order properly addressed only those factors potentially impacted by the Court's *Daubert* Order. The Order correctly found that because the damages formula here is contained in XOOM's "uniform contract language," the "core factual disputes" the jury must resolve "are subject to generalized, class-wide proof" and remain unchanged: "XOOM's (1) 'actual and estimated supply costs' and (2) reasonable and proportionate margin." *Id.* at 3. The Court's reassessment of predominance following its *Daubert* order plainly meets the Court's "affirmative duty" to monitor its decision to certify the Class set forth in *Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016). The other Rule 23 factors remain unaffected by the *Daubert* Order and the rigorous analysis of these factors in the Court's certification and decertification Orders continues to apply.

### B.    The RSWs Can Serve as Common Proof of Supply Costs.

Next, XOOM claims the Order overlooked evidentiary developments, declaring that whether the RSWs can serve as common proof of XOOM's supply costs is "an undisputed issue

with a certain outcome." Defs.' Br. at 6–7. But as noted above, no such "evidentiary development" exists despite XOOM's spin: Plaintiff's expert opined—and can testify—that the Total Cost figures from the RSWs **are** XOOM's "actual supply costs." *See* § I.A *supra*. As discussed above, Plaintiff can also present additional testimony from XOOM's employees and its own expert who have made admissions that provide ample additional evidence that the RSWs Total Cost figures equal or are synonymous with XOOM's "actual and estimated supply costs."

Thus, XOOM's motion merely re-attempts to circumvent the Court's ruling that the jury, not XOOM, should decide the crucial issue: "The crux of XOOM's argument is not that its supply cost and reasonable margins are *insusceptible* to common proof, but that plaintiff *lacks sufficient* common proof. But that argument fails, as plaintiff's ability (or inability) to prove XOOM's 'actual and estimated supply costs' will turn on the jury's evaluation of the evidence at trial." Order at 3.

### C.    Liability and Damages Do Not Merge.

XOOM claims the Order "contravene[es] controlling authority that Plaintiff's overcharge claim merges liability and damages into a single issue." Defs.' Br. at 7. XOOM relies on *Intersal, Inc. v. Hamilton*, 373 N.C. 89 (N.C. 2019) to argue that "the amount of damages" is a necessary element of a breach-of-contract claim.[2] And, according to XOOM, a class trial would be unworkable in the absence of expert testimony on damages. This argument does not carry the day.

First, XOOM is judicially estopped from making it. At summary judgment, XOOM argued and the Court agreed that "a claim for breach of contract has two elements: (1) existence of a valid contract and (2) breach of the terms of that contract." Dkt. No. 145-1 at 14; Dkt. No. 151, MSJ Order at 8 (citing *Crosby v. City of Gastonia*, 635 F.3d 634, 645 (4th Cir. 2011)).

---

[2] *Intersal* evaluated a *res judicata* issue, specifically whether a prior judgment in a case involving a contract barred a subsequent breach of contract claim. *Id.* at 108. XOOM is yet again "overreading" a case, hoping to find a silver bullet where none exists. *See* Dkt. No. 151, MSJ Order at 14

7

Judicial estoppel applies where: "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *Harewood v. APL Ltd.*, No. 14-CV-1668 (ARR) (VMS), 2015 WL 12591648, at *4 (E.D.N.Y. Aug. 24, 2015) (Ross, J.) (citation omitted). All three requirements are met here. First, XOOM's new position (claiming damages calculations are an indispensable element of breach of contract) is plainly inconsistent with its earlier one. *See* Dkt. No. 145-1 at 14. Second, the Court adopted XOOM's prior position in its MSJ Order. Third, XOOM would gain an unfair advantage should the Court adopt its new position. Accordingly, this is the law of the case. *See Harewood*, at *3 ("Where a litigant 'assumes a certain position in a legal proceeding, and succeeds in maintaining that position,' judicial estoppel may prevent him from later 'assum[ing] a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

Second, the damages calculation will be conducted based on the formula laid out in XOOM's contract. "If and when the jury determines the correct inputs for XOOM's supply costs and reasonable margins, damages can be calculated using simple and objective (albeit tedious) arithmetic under the formula required by XOOM's contracts." Order at 3. The Order does not dispose of the damages calculations. And XOOM cites no case in support of its sweeping claim that conducting a case in this manner is impermissible. Contrary to XOOM's position, *Intersal* does not prohibit bifurcation or hold that damages calculations merge into the liability case.

XOOM next criticizes the Order for citing FLSA cases because damages and liability issues do not "merge" in that context, Defs.' Br. at 7–8. But as explained above, they do not "merge"

here either.[3] The FLSA cases cited in the Order support the proposition that "it remains the black letter rule that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

XOOM then incorrectly claims that "thousands" of calculations are necessary to determine *liability*. Defs.' Br. at 8. But the Court already found that a decision on the inputs for those calculations "may be made by the factfinder at trial in one stroke." Class Order at 13 (citation omitted). XOOM also overlooks that the Court did not exclude the liability portions of Plaintiff's Original Expert Report.

**D.     Individualized Damages Issues Are No Barrier to Class Treatment.**

XOOM argues the court did not consider individualized damages issues, citing what it claims are "actual" supply costs from non-RSW 2013 documents.[4] Defs.' Br. at 8–9. This puts the cart before the horse. XOOM's argument assumes that the jury will reject the ample common proof that the Total Cost figures from XOOM's RSWs are synonymous with actual and estimated supply costs and instead find credible XOOM's post-hoc justification for its rates—that undocumented supply costs are included in the RSWs' margins. Instead, "plaintiff's ability (or inability) to prove XOOM's 'actual and estimated supply costs' will turn on the jury's evaluation of the evidence at trial." Order at 3. In other words, this issue will be decided on the merits.

XOOM likewise claims that the *volume* of calculations defeats predominance because it "is simply not a task that a jury or the Court could complete without the aid of an expert." Defs.'

---

[3] Nor is either case FLSA-specific. *Artica v. J.B. Custom Masonry & Concrete, Inc.*, No. 09-CV-3796, 2012 WL 13102524 (E.D.N.Y. June 4, 2012), serves as an example of damages calculations performed after trial, and *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) is an accord with the Order, finding *Comcast* "did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis."

[4] Plaintiff objects to introducing these documents into evidence on the basis of relevance.

Br. at 9. XOOM cites no case law for this proposition, and in any event, a special master can perform any required arithmetical calculations using the same contractual formula for all Class Members. The Order is in accord. Order at 8 ("[T]he formula for calculating damages *from* XOOM's costs, reasonable margin, and actual prices is set by XOOM's contracts and does not require interpretation by plaintiff's expert." (emphasis in original)). As to the "millions" of damages calculations for the Class, Defs.' Br. at 8, such individualized damages calculations are "no barrier to class certification." Class Order at 15 (citing *Roach*, 778 F.3d at 408). Indeed, once a jury determines the appropriate inputs for supply costs and the appropriate margin, damages can be calculated by a single equation applied to all rates charged by XOOM during the Class Period.

### E.    This Is Not an Antitrust Case.

XOOM concludes by attempting to conflate this breach of contract case with highly complex antitrust litigation. *See* Defs.' Br. at 9–10. This ignores a key difference in antitrust cases: the complexity of determining damages and the need for expert testimony. In this case, because the jury can provide the inputs for XOOM's contractual formula, there is no need for expert involvement to establish liability. *See* Order at 8. Conversely, XOOM's cited cases all involved highly complex regression models necessitating expert testimony regarding damages, and even then those cases did not preclude predominance absent expert testimony in all circumstances.[5] In this case, there is no need for expert testimony to apply the simple contractual formula and the Order properly rejected XOOM's argument to the contrary. Order at 8.

---

[5] *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F. 3d 244, 252–53 (D.C. Cir. 2013) (where damages model was "essential" to common evidence of classwide injury, exclusion of model merited decertification and further analysis by trial court); *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 49 (S.D.N.Y. 2020) ("where an expert's model of classwide injury fails, ***absent alternative common proof of class impact***, such deficiencies will preclude class certification") (emphasis added); *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 398–99 (S.D.N.Y. 2015) (excluded damages model was only common evidence of injury); *In re EPDM Antitrust Litig.*, 256 F.R.D. 82, 95–96 (D. Conn. 2009) (noting that regression model is "one way" of demonstrating predominance, but is not required). The plaintiff in *Gregory v. Chohan*, 670 S.W.3d 546, 551 (Tex. 2023), failed to adduce any evidence quantifying compensatory damages from mental anguish in a wrongful death action and the case is thus inapposite.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion.


Dated: January 13, 2025                    Respectfully submitted,
      New York, New York

                                      /s/ Ethan D. Roman
                                      Ethan D. Roman

                                    **WITTELS MCINTURFF PALIKOVIC**
                                    J. Burkett McInturff
                                    Steven L. Wittels
                                    Andrey Belenky

305 Broadway 7ᵀᴴ Floor
New York, New York 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
slw@wittelslaw.com
abelenky@wittelslaw.com

*Class Counsel for Plaintiff and the Class*

Richard Dolan
Bradley D. Simon
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025, the foregoing was served via ECF on all counsel of record.

By:    /s/ Ethan D. Roman
            Ethan D. Roman