UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>      Defendants. | No. 18 Civ. 2949 (ARR) (JAM) |

**XOOM'S REPLY IN SUPPORT OF ITS
MOTION FOR RECONSIDERATION OF CONTINUED CLASS TREATMENT**

Plaintiff's response does not identify any witness or exhibit that can support a finding that "the Total Cost figure equals XOOM's actual and estimated supply costs." Decert. Order 12. There is no longer a dispute on that issue following her expert's changed understanding of the RSWs. Plaintiff therefore tries to reframe the issue more flexibly, arguing her expert's acknowledgment that actual costs "are not reflected in XOOM's [RSWs]" is offset by his speculation that the admitted differences "over time may not have been material from a business perspective" and by XOOM witnesses saying the company was good at estimating its costs. But even if Plaintiff's characterizations of XOOM's testimony were accurate (they are not), there will still be no witness to say the RSWs' Total Cost figures "actually represent" actual and estimated supply costs. *Id.*

Contrary to Plaintiff's suggestion, the standard the Court has defined is not 'similar' or 'close enough.' All trial witnesses—including Plaintiff's expert—now agree that RSWs reflect estimates only. And absent a jury issue on the composition of the RSWs' cost figures, Plaintiff has no proof of XOOM's actual and estimated supply costs nor any way to prove the rates XOOM should have charged, as the Court has said she must. XOOM's actual supply costs, as most recently shown in its January 17 submission, are not reflected in the RSWs and are thus not contained in any of Plaintiff's evidence. A trial on the overcharge claim is not viable at this point.

### A. Factual Error: The RSWs indisputably are *not* equal to actual and estimated costs.

The Court previously determined that Plaintiff's ability to prove an overcharge "hinges on the jury's assessment of *whether* the Total Cost figure equals XOOM's actual and estimated supply costs[,]" *id.,* due to conflicting evidence: Plaintiff's expert Seabron Adamson said in his Original Report that the RSWs showed XOOM's actual and estimated supply costs, while XOOM's expert and fact witnesses said they were estimates only. Since then, Mr. Adamson reviewed XOOM's evidence of actual supply costs and attempted to "replace[]" his Original Report with a New Report and sworn declaration that concede XOOM's witnesses were right. Thus, a jury issue on whether

1

the RSWs reflect or equal XOOM's actual and estimated supply costs no longer exists.

Plaintiff tries to show otherwise by citing XOOM testimony she says can "support[] a finding that the RSWs set forth XOOM's actual and estimated supply costs." Pl. Resp. 3. But no witness suggested the RSWs represent "actual and estimated supply costs." Every witness said they were estimates and that actual costs could not be known until weeks or months later.

The testimony Plaintiff cites shows the RSWs contained good data *for making estimates*. Mr. Loehde said the RSW figures were "highly accurate" in response to a question about "systemic errors" in the data, not as an indication that the estimates correctly predicted actual supply costs. *See* Doc. 201-2 (Loehde Dep.) 126:16–127:1 ("Q:…have you had a lot of problems with data errors in them? A: Not at all. I found in general them to be highly accurate."); *see also* Doc. 195 (Loehde Decl.) (explaining the documentary evidence of actual costs not captured in RSWs). Mr. Coppola's "99 percent" statement is from testimony that the RSWs contained "actual *anticipated* costs" that were "99 percent certainty *of certain costs*." Doc. 201-4 (Coppola Dep.) 282:12–20. His next three answers reiterated that actual costs settled over months and "there [are] times when the company's actual costs turn out to be different from what its earlier estimates were," *id.* at 282:22–283:24. With respect to Mr. Coleman, he has always said that actual supply costs necessarily are not reflected in the RSWs because they are not known when rates are set. *See* Doc. 196-4 (Coleman Reb. Rep.) 8–9; *see also* Doc. 229-11 (Coleman Decl.) ¶ 7.

As for Mr. Adamson, Plaintiff tries to deal with his changed testimony by re-embracing statements from the Original Report that he "replace[d]," and by claiming XOOM took his new position out of context.[1] But the record proves that Mr. Adamson now rightly acknowledges that

---

[1] XOOM welcomes the Court's review of the full passage as replicated by Plaintiff. It shows Mr. Adamson acknowledges both that: (1) the RSWs contain estimates only, and (2) there are differences between XOOM's estimated supply costs and its actual supply costs.

2

the RSWs' Total Cost figures are *not* the same as XOOM's actual and estimated supply costs.

XOOM highlighted this change when moving to exclude his models, arguing they must be excluded because the RSW data they rely on admittedly do not account for actual costs. *See* Docs. 229-1 (Def. Daubert MOL), 229-11 (Coleman Decl.), Doc. 262 (Def. Daubert Reply). Plaintiff's response did not argue that XOOM was wrong about Mr. Adamson's new understanding, nor did it argue that a factfinder could use his Original Report to find Total Costs are synonymous with actual and estimated costs. Rather, Plaintiff submitted a declaration from Mr. Adamson *confirming* his changed position. *See* Doc. 258-1 (Adamson Decl.) ¶ 40 ("Again, XOOM's aggregated *estimated* supply costs were taken directly from XOOM's RSWs. . . . Mr. Coleman in his rebuttal to my Original Report did not offer any calculations using the *actual* costs . . . ." (emphasis added)).

Plaintiff then addressed Mr. Adamson's shift in an August letter to the Court, in which she conceded the change but dismissed its significance, claiming XOOM was wrong to say "the jury must find as a matter of fact that Total Cost accounts for all XOOM supply costs (both actual and estimated)," and arguing "that is not what the Court has asked the jury to do." Doc 264 at 4.

But that is precisely what the Court's June 20 Decertification Order and its recent December 16 Order on continued class treatment said the jury must do. So now, faced with two orders defining the jury issue, Plaintiff pivots and contends Mr. Adamson's admission is a nullity because his New Report was excluded—that his understanding did not really change and that his prior (replaced) statement was correct all along. She even claims that he will somehow be able to swear to his old statements under oath at trial. It is telling that he has not said so. Nor could he.

Mr. Adamson has instead repeatedly acknowledged that XOOM could not have known its actual costs when compiling RSWs, and that there are "differences" between the estimated costs in the RSWs and its separately documented actual supply costs that were learned later. *See* CRA

3

New Rep. ¶ 18(i); *see also id.* ¶ 72 and n. 70 ("I have seen XOOM financial reporting spreadsheets [] that apparently *show aggregated differences between estimated and actual supply costs*, but this is not even broken down by state, much less by customer class. Hence, I do not see any way in which these costs could be attributed specifically to categories of New York customers. (emphasis added)).[2] His contention is not that the RSWs did not differ from actual supply costs, but that he does not know *how* they differed. Plaintiff suggests Mr. Adamson's unfounded theory that the differences "over time may not have been material from a business perspective" is enough for the jury to affirmatively conclude there were no differences at all. She is incorrect. The question the Court framed—and necessarily so because of the precise inputs Plaintiff must prove to establish an overcharge—is whether they were equal or synonymous, not just similar enough.[3]

Thus, Mr. Adamson's changed testimony means the RSWs' Total Costs indisputably do not "equal," cannot "actually represent," and are not "synonymous with actual and estimated supply costs." Decert. Order 12. The Court should correct the Order and decertify the class.

**B.  Legal Error: A rigorous analysis uncovers the factual error and forces decertification.**

Plaintiff asks that the Court take a "wait-and-see" at trial approach in lieu of a rigorous analysis now. But Second Circuit precedent demands that the Court re-evaluate now whether the RSWs can serve as proof of XOOM's costs "in light of the evidentiary development of the case."

---

[2] Mr. Adamson's unfamiliarity with a method by which actual supply costs could be attributed to specific rates does not mean the task is impossible. As XOOM's January 17 submission shows, XOOM produced ample documentary evidence of actual costs and their variations from estimated costs. Plaintiff could have engaged another expert (e.g., an accountant) to analyze them but instead chose to ignore them, hoping she could make it XOOM's problem.

[3] The Court has consistently said similar does not mean the same—when holding that rates must be based *solely* on supply costs, when emphasizing Total Costs must *equal* "actual and estimated supply costs" for Plaintiff to meet her burden, and most recently when excluding evidence of a strong correlation so the jury did not confuse it with based-solely-on. By the same token, the Court must decertify now to prevent the jury from accepting the Total Cost figures as similar enough to actual and estimated supply costs, though they are admittedly not the same.

4

*Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016). As shown above and in XOOM's January 17 submission, *see* Doc. No. 284, a rigorous analysis reveals the RSWs cannot serve as evidence of actual and estimated supply costs. Decertification is warranted for that reason alone.

Even if there were a live dispute on the composition of Total Costs (and there is not), the Order would still need to be corrected to account for controlling law holding that a North Carolina overcharge claim merges issues of liability and damages.[4] That merger means that the amount of overcharge per rate and per class member are questions of *liability* not just damages. There is not a single case allowing class treatment under Rule 23 with individualized questions of *liability*, and there is no reason that this case involving thousands of rate-based liability determinations (and millions for the class members) should be the first. Class treatment simply is not appropriate here.

The remainder of Plaintiff's arguments are mere misdirection. They all rely on the Court's Class Order that, in turn, relied on Mr. Adamson's prior misunderstanding to assume the RSWs might reflect XOOM's actual and estimated supply costs. The current evidentiary record—including Mr. Adamson's changed testimony—must be accounted for in a renewed Rule 23 inquiry. And as XOOM explained, this change means thousands of decisions on the correct inputs for "actual and estimated supply costs" will be necessary no matter who ultimately performs the formula's arithmetic.[5] Thus, this case is akin to the antitrust context requiring a sophisticated model, not FLSA cases. Plaintiff could have (but chose not to) propose a method to quantify XOOM's actual supply costs across the class period. Her decision not to precludes class treatment.

---

[4] Plaintiff's judicial estoppel argument can be dismissed easily because XOOM's position at summary judgment and now are consistent, XOOM did not prevail at summary judgment, and the Court has since held it is Plaintiff's burden to prove an overcharge, *see* Decert. Order 10–11.

[5] This is true regardless of whether a Special Master is brought in and regardless of Model 2's use as proof of liability. Because Model 2 cannot measure an overcharge, there is no tool (common or otherwise) that would allow the jury (or the Court) to perform that task in one stroke.

5

| | |
|---|---|
| Dated: January 21, 2025 | MCDOWELL HETHERINGTON LLP<br><br>/s/ Michael D. Matthews, Jr<br>Michael D. Matthews, Jr.<br>Diane S. Wizig (admitted *pro hac vice*)<br>David L. Villarreal (admitted *pro hac vice*)<br>Netra Sreeprakash<br>Justin R. Chapa (*pro hac* forthcoming)<br>MCDOWELL HETHERINGTON LLP<br>1001 Fannin Street, Suite 2400<br>Houston, Texas 77002<br>Telephone: (713) 337-5580<br>Facsimile: (713) 337-8850<br>matt.matthews@mhllp.com<br>diane.wizig@mhllp.com<br>david.villarreal@mhllp.com<br>netra.sreeprakash@mhllp.com<br>justin.chapa@mhllp.com<br><br>*Attorneys for Defendants XOOM Energy, LLC and XOOM Energy New York, LLC* |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the 21st day of January, 2025, via CM/ECF on all counsel of record.

/s/*Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.