Exhibit A

1

```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2         - - - - - - - - - - - - - - - X
                                        :
3         SUSANNA MIRKIN AND BORIS      :   18-CV-2949(RPK)
          MIRKIN, Individually and      :
4         on Behalf of All Others       :
          Similarly Situated,           :   United States Courthouse
5                                        :   Brooklyn, New York
                    Plaintiffs,          :
6                                        :
               -against-                 :   March 26, 2025
7                                        :   10:00 a.m.
          XOOM ENERGY, LLC, and XOOM    :
8         ENERGY NEW YORK, LLC,          :
                                         :
9                    Defendants.         :
                                         :
10        - - - - - - - - - - - - - - - X
```

---

```
11
              TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
12               BEFORE THE HONORABLE RACHEL P. KOVNER
                     UNITED STATES DISTRICT JUDGE
13
```

---

```
14

15                     A P P E A R A N C E S:

16   For Plaintiffs:      SCHLAM STONE & DOLAN LLP
                               26 Broadway, 19th Floor
17                             New York, New York 10004
                         BY:   RICHARD DOLAN, ESQ.
18                             BRADLEY SIMON, ESQ.

19                        WITTELS McINTURFF PALIKOVIC
                               18 Half Mile Road
20                             Armonk, New York 10504
                         BY:   STEVEN WITTELS, ESQ.
21                             J. BURKETT McINTURFF, ESQ.

22                        WITTELS McINTURFF PALIKOVIC
                               305 Broadway, 7th Floor
23                             New York, New York 10007
                         BY:   ANDREY BELENKY, ESQ.
24                             ETHAN ROMAN, ESQ.

25
```

PROCEEDINGS                                    2

1          A P P E A R A N C E S:   (Cont'd)

2
For Defendants:        McDOWELL HETHERINGTON LLP
3                             1001 Fannin Street, Suite 2400
                           Houston, Texas 77002
4                      BY:   MICHAEL D. MATTHEWS, JR., ESQ.
                           DIANE WIZIG, ESQ.
5                           NETRA SREEPRAKASH, ESQ.

6
REPORTED BY:
7
Kristi Cruz, RMR, CRR, RPR
8   Official Court Reporter
kristi.edny@gmail.com
9
Proceedings recorded by computerized stenography.  Transcript produced by
10  Computer-Aided Transcription.

11

12                   *     *     *     *     *

13

14          (In open court.)

15          THE COURTROOM DEPUTY:  *Mirkin, et al. v. XOOM*

16  *Energy, LLC*, et al.

17          Counsel, please state your name for the record.

18          MR. DOLAN:  Good morning, Your Honor.

19          Richard Dolan and Brad Simon from Schlam Stone &

20  Dolan.  I'll let the others introduce themselves for the

21  plaintiff.

22          MR. McINTURFF:  Good morning, Your Honor.

23          Burkett McInturff from Wittels McInturff

24  Palikovic, on behalf of plaintiff and the class.  And I have

25  with me my colleagues Andrey Belenky, Steven Wittels, and

PROCEEDINGS                                        3

1   Ethan Roman.

2              THE COURT:  Good morning.

3              MR. MATTHEWS:  Good morning, Your Honor.

4              Matt Matthews for the defendant XOOM Energy.

5              MS. WIZIG:  Diane Wizig for defendant XOOM Energy.

6              MS. SREEPRAKASH:  Good morning, Your Honor.

7              Netra Sreeprakash for defendant XOOM Energy.

8              THE COURT:  Great.  So good morning, everybody.

9              I'm new to this case.  It seems like there's a lot

10  going on here.  Maybe the best way to start off would be

11  asking, from your perspective, on where things stand in this

12  case.  I know there are a number of motions in front of me.

13  What I've got is motions *in limine* from plaintiff and from

14  defendants, and also a motion for reconsideration of

15  continued class treatment.

16             Is that what's on your list at this point?

17             MR. DOLAN:  Yes, Your Honor.

18             And protocol, do you want us to address you from

19  the table, the podium, sitting, standing?

20             THE COURT:  I would definitely stay at the table,

21  and whatever you all want in terms of sitting or standing is

22  fine with me.  Sometimes people find it's easier to sit with

23  the mics.

24             MR. DOLAN:  Yes, and some of us are old fashioned

25  and we tend to stand.  But whatever.

PROCEEDINGS                                    4

1          THE COURT:  It doesn't matter to me at all.

2          MR. DOLAN:  In terms of -- yes, I regret to say, I

3    think there are 34 motions pending in front of you.

4          THE COURT:  It sounds like I undercounted by about

5    three, then.

6          MR. DOLAN:  The reality is I think they circle

7    around the same basic themes and they come out in different

8    ways.  My suspicion is when Your Honor gets into them,

9    you'll find that once you've done a couple of them, you're

10   going to find it fairly easy to get through most of them.

11         Our perspective on this case is it's a fairly

12   straightforward contract case.  Judge Ross has already

13   construed the contract.  It's basically a cost-plus

14   contract.  The dispute really is about the inputs onto the

15   contract in the formula; what are the costs, what's the

16   margin, what's the rate.  And there's only so much we can

17   say about that stuff.

18         I know you wanted to talk about the length of the

19   trial, and that will depend in part on what you do with

20   these motions because that impacts on the evidence that will

21   be allowed and the length and so on.  We expect that

22   plaintiff's case will be fairly brief.  We have basically

23   two live witnesses.  Again, depending on what happens in all

24   these motions, that may change a little, but I'm not

25   expecting it.  There will be some deposition read-in, there

PROCEEDINGS                                5

1   will be a lot of admissions and so on.  Maybe three or four

2   days, that kind of thing.  The real unknown is the length of

3   the defense case, and that will depend critically on what

4   Your Honor does with these motions.

5            We think that once the Court has gotten through

6   the major ones and we know where you're coming from, because

7   I don't know if you're going to issue one decision on a

8   whole bunch of them or you're going to do them seriatim, we

9   will have to update the pretrial order.  The reality is when

10  both sides did this order back in I think May of 2024, we

11  were expecting the trial to look a little differently.

12  Since then, the experts have been largely cut back.  There

13  may not be a damages case given how the judge has set it up,

14  and that has some wrinkles to it as well.  The jury

15  instructions -- everything would basically have to be

16  re-tailored.

17           I took a look at Your Honor's instructions as to

18  how you want trials done.  You want everything in binders.

19  It turns out a lot of the exhibits are these gigantic

20  spreadsheets.  We can't possibly -- I mean, if we put them

21  in a binder, they're incomprehensible.

22           THE COURT:  Yes, that's fine.

23           MR. DOLAN:  My thought would be we would end up

24  loading them on a laptop or more than one laptop and giving

25  them to a jury because they're just incomprehensible to

PROCEEDINGS                                    6

1    jurors otherwise.  So there would be practical issues like

2    that, and I suspect the way to deal with that would be after

3    you've done what you're going to do, we have a Pretrial

4    Conference and we work out some of these practicalities.

5            In terms of when, again, a lot will depend on when

6    Your Honor can get to these things.  I suspect that we're

7    not your only case -- that's just a guess -- and that you

8    have other dogs that are barking.  I don't think it would

9    take long to get the pretrial order and all this other stuff

10   in shape, the instructions, get it all to Your Honor.  We

11   would very much like a trial, if we could have one, maybe

12   this summer.  Again, we'll have to play with that in terms

13   of how -- I realize we're at the end of March.  It's not

14   that far from now.

15           I don't want to presume about, you know, what the

16   Court will be able to do and when you'll be able to do it,

17   but I do think that the case can be truncated and dealt with

18   in much -- the defense is talking about seven weeks for

19   their case.  I don't think that's remotely realistic, and I

20   think once we have your rulings we'll be able to have a much

21   better -- my suspicion is it will be, max, a two-week trial.

22           THE COURT:  Okay.

23           MR. DOLAN:  Do you need anything else from me,

24   Judge?

25           THE COURT:  No.  That's helpful.

1          MR. MATTHEWS:  Good morning, Your Honor.  Matt

2    Matthews.  First let me say I appreciate plaintiff's counsel

3    and the Court's courtesy in moving the conference back based

4    on my conflict.

5          In terms of where we are, I think Mr. Dolan's

6    correct in saying the motion for reconsideration and then

7    the *limines*, from defense point of view, a lot of the

8    *limines* have been resolved by rulings that Judge Ross issued

9    after the *limines* were filed.  There are I believe, let's

10   see, eight -- I'm sorry, seven from the defense perspective

11   that Judge Ross's decision that plaintiffs' expert's model

12   were excluded and her decision that good faith is not at

13   issue, we believe there's all seven of those motions.

14         With respect to defense motions and also because

15   of those rulings, we think at least six of those are

16   potentially dispositive.

17         THE COURT:  What do you mean by "dispositive"?

18         MR. MATTHEWS:  In terms of if good faith is not at

19   issue --

20         THE COURT:  That those rulings are dispositive of

21   the motions that are pending.

22         MR. MATTHEWS:  And potentially the case.  If

23   reasonableness is not at issue, then an overcharge cannot be

24   proved.

25         THE COURT:  This seems like a summary judgment

PROCEEDINGS                                    8

1    issue.  This doesn't seem like a motion *in limine* issue,

2    right?

3              MR. MATTHEWS:  It was an issue -- the Court hadn't

4    construed the contract until summary judgment, and so that's

5    why these motions came subsequent to that.  But based on the

6    Court's determination -- construction of the contract and

7    then her determination that good faith was not at issue,

8    that's what gave rise to those motions.

9              THE COURT:  Got it.  But you filed motion for

10   summary judgment at some point in the case?

11             MR. MATTHEWS:  Yes.

12             THE COURT:  And summary judgment, I take it, was

13   denied because we're here?

14             MR. MATTHEWS:  It was denied.

15             THE COURT:  I guess I'm just not seeing how there

16   could be a motion that is dispositive of the case at this

17   point.  That sounds like a summary judgment motion or

18   conceivably a motion to dismiss.

19             MR. MATTHEWS:  I think it could be construed that

20   way, for sure.  For example, the plaintiffs don't have an

21   implied -- if I can --

22             THE COURT:  Yes, go ahead.

23             MR. MATTHEWS:  The plaintiffs don't have an

24   implied covenant claim; it was dismissed.  They disclaimed

25   it at the Second Circuit.  They said they were not pursuing

1    that and they were not pursuing any claim that was based on

2    the reasonableness of XOOM's conduct or good faith.  The

3    Second Circuit affirmed that dismissal.

4           So now we're back here with a construction of the

5    contract that says that XOOM's rate will be based on its

6    actual and estimated supply cost and a reasonable and

7    proportion at margin.  But the only source of that

8    reasonableness is the implied covenant.  It's not expressly

9    in the contract.

10          And so while the implied covenant always exists in

11   a contract, that doesn't necessarily mean that you always

12   have a claim on it.  If that reasonableness claim can't be

13   put forward to the jury because it's been dismissed and

14   affirmed by the Second Circuit, then they can't offer

15   evidence of whether or not XOOM's margins were reasonable,

16   which means necessarily they can't prove an overcharge under

17   the Court's contract construction.

18          THE COURT:  Did you present this argument in your

19   summary judgment motion?

20          MR. MATTHEWS:  The Court hadn't construed the

21   contract at that point.

22          THE COURT:  But, I mean, I guess you could present

23   your theory of what the contrat is in your summary judgment

24   motion, right?

25          MR. MATTHEWS:  We argued for a different contract

1  construction than the one that the Court ultimately ruled

2  on.

3         THE COURT:  I see.

4         MR. MATTHEWS:  So that issue touches on defense's

5  five different motions *in limine* --

6         THE COURT:  I guess I'm just not seeing how this

7  is a motion -- if it's a motion that plaintiff loses and you

8  win, I'm just not seeing how this is presented as a motion

9  *in limine*.  What you would like me to exclude -- ultimately

10  what you want is not the exclusion of evidence, right?

11        MR. MATTHEWS:  It is the exclusion of evidence;

12  reasonability as to the margin.

13        THE COURT:  Okay.  Well, if it's a motion about

14  exclusion of evidence, that's a fine motion *in limine*.  If

15  it's a motion that you win, that's not a motion *in limine* to

16  me.

17        MR. MATTHEWS:  We'd be happy to file a limited

18  summary judgment on that issue, if the Court would entertain

19  it.

20        THE COURT:  Well, I'm not sure that this is the

21  time for that.  It seems like you should have filed your

22  summary judgment motion when you did file your summary

23  judgment motion.

24        MR. MATTHEWS:  We did file by the deadline.

25        THE COURT:  Right.

PROCEEDINGS                              11

1        MR. MATTHEWS:  If the Court believes it is better

2   construed as a motion for summary judgment and would like a

3   briefing from both parties on that issue --

4        THE COURT:  Well, I don't know enough about this

5   to suggest something like that.  I'm just trying to sort of

6   wrap my head around the case so that I can deal with this

7   case in the most efficient way possible.  So kind of where I

8   thought we were when I was assigned this case is pretty

9   close to trial, with some evidentiary disputes to resolve

10  before trial.  And so it just worries me when somebody tells

11  me a version somewhat different.

12       MR. MATTHEWS:  I understand.  I think this is a

13  product of the series of the Court's rulings and Judge

14  Ross's ruling excluding plaintiffs' expert, and also said

15  that she -- it made reference to revisiting earlier rulings.

16  So that's, I think --

17       THE COURT:  What do you mean made reference to it?

18       MR. MATTHEWS:  She said this may mean -- she

19  didn't say it definitely means, but she said this ruling may

20  mean that the Court should revisit earlier rulings.

21       THE COURT:  I see.  Okay.

22       MR. MATTHEWS:  She did not, but that would be the

23  basis for rearguing this issue as a summary judgment.

24       THE COURT:  Okay.  Can I ask, what I think I have

25  pending are a motion for reconsideration related to class

1    treatment and some motions *in limine*, which are things that

2    I understand to be about the inclusion or exclusion of

3    evidence at trial.  Is that what you agree is on my plate?

4    And the next thing to do in this case is going to be to

5    resolve that set of motions, and then after that we're going

6    to try this case?

7                MR. MATTHEWS:  That's correct.  We don't believe

8    it should be tried, but yes, that is the order of operation.

9                THE COURT:  Well, I know that you don't and you

10   moved for summary judgment.  But if you are anticipating a

11   whole bunch of additional briefing on something, and I'm not

12   sure if that's timely or appropriate now, but I would

13   definitely want to know that, which is something that I'm

14   kind of getting from what you're saying, right?  That Judge

15   Ross issued this order which suggested the position should

16   be resisted, but you haven't filed a motion that actually

17   seeks to revisit them, and then you actually think that the

18   motions *in limine* present grounds for dismissing plaintiffs'

19   claims, actually granting summary judgment on the claims.

20               I'm just having a hard time aligning your

21   description of the case with what I've actually got in front

22   of me.  What I'd like to do in this case is resolve what

23   I've got in front of me and then try the case.  If you'd

24   like to do something different, I'd like to resolve that

25   today.

1          MR. MATTHEWS:  If the Court believes that those

2    issues are better briefed in a motion for summary judgment,

3    then I'll ask for leave to file summary judgment on that

4    issue, with Judge Ross's statement that her rulings might

5    make revisiting summary judgment appropriate.

6          THE COURT:  Okay.  And I think as you probably

7    have a sense, I don't know nearly about the case as you

8    guys.  I know pretty little about the case at this point.  I

9    held this conference as much as anything to get a better

10   sense of where we are.

11         So I'm not expressing a view on whether a motion

12   for summary judgment would be appropriate.  I'm just

13   expressing the view that in considering a motion *in limine*,

14   the outcomes I would contemplate are granting a motion to

15   exclude the evidence that's discussed in the motion or

16   denying that, or conversely, if it's a motion to offer some

17   evidence, saying it can come in or it can't.  So these are

18   the outcomes that I think are on the table at this point,

19   and then reconsideration of class treatment.

20         If there's a different outcome that you are

21   looking for in this case, I do think you would need to file

22   a different type of motion.  And I'm not expressing a view

23   on whether that is timely.  I'm expressing probably a little

24   skepticism about whether that's timely.  But I'm just not as

25   familiar with the case.

1      MR. MATTHEWS:  I understand.  The motion for

2  reconsideration did ask that the Court revisit summary

3  judgment, that we bring it up at that point.

4      THE COURT:  Okay.  So you think that's

5  encompassed?  It might be.  You think it's encompassed in

6  your class treatment motion already, so you don't need to

7  file a separate motion about it?

8      MR. MATTHEWS:  That's right.

9      THE COURT:  Okay.

10      MR. MATTHEWS:  Real briefly on the other issue of

11  timing that Mr. Dolan raised, we agree that the joint

12  pretrial report would be best amended to clean things up;

13  not to add.  But just once the Court has ruled on

14  reconsideration and the *limines*, we can confer, clean that

15  up, and refile.  And then in terms of the timing of that, I

16  think we can talk about it, but I would imagine we could get

17  that on file within 60 days after the Court had ruled on all

18  the motions given all the back and forth that we'll have to

19  go through on that.  We haven't discussed that yet.

20      THE COURT:  Have you thought about the timing of

21  trial from your perspective?  I'm not making any promises

22  about the summer, but if you both told me you wanted the

23  summer, that would be something I would see if I could do.

24      The thing is that if you tell me that you're going

25  to need 60 days to file a revised Joint Pretrial Order after

1    I issue decisions, and then I think we have to talk about

2    the length of the defense case.  Those are not things that

3    are not going to be compatible with a summer trial, I think,

4    right?  Because if I issued decisions on in this two

5    weeks -- which is not going to happen, that's too soon --

6    then 60 days from then we would be basically at June 1st,

7    and that's not going to give us enough time to try the case

8    in the summer, I think.  And also if you were really telling

9    me you were going to have a six-week case, and I don't

10   really see that from who you've told me about who your

11   witnesses are in the Joint Pretrial Order, I don't think

12   that's going to happen in the summer.  I just don't think I

13   can squeeze it in.

14            MR. MATTHEWS:  In terms of the trial lengths, the

15   Joint Pretrial Order was filed a year ago and there have

16   been a lot of big rulings since then.  So given those

17   rulings and just given some of the disciplined review that

18   we did of our own exhibits given Judge Ross's orders about

19   supplementing information on that evidence, we've thought

20   hard about it and believe that we can present it in a much

21   shorter fashion.

22            The case is -- I mean, I would disagree with

23   Mr. Dolan that it's simple and straightforward.  It's an

24   overcharge case.  It involves monthly rate decisions for 44

25   different rates over 12 years and, you know, hundreds of

PROCEEDINGS                          16

1   rate-setting workbooks, and as the Court has seen from our

2   evidentiary submissions, hundreds of other documents that

3   bear on the actual cost.

4            But we don't plan to torture the jury with a

5   monthly presentation of every single meeting.  We would take

6   representative examples from different points in time.  I

7   think it would, of course, be impacted by the Court's

8   rulings on some of these other motions, but I think that we

9   could do that in two weeks; two to three.

10           THE COURT:  Okay.  So I think the ball's really in

11  my court to resolve these motions next.  I don't think I can

12  set a trial date as we sit here today because it sounds like

13  there's a lot of variables about what the trial is going to

14  look like that depend on resolving the motions, and then

15  you're all giving me a revised Joint Pretrial Order.  So

16  I'll resolve those motions as soon as I can.

17           I'm taking your representation that you don't

18  think we need a round of additional briefing on some other

19  issue.  Please don't tell me after I resolve the motions *in*

20  *limine* that you want to brief some of the other stuff.  Now

21  would be the time to tell me that you want to brief some

22  other stuff, because I want to move this case towards trial.

23           MR. MATTHEWS:  Can I confer with my colleagues

24  briefly?

25           THE COURT:  Yes.

1          MR. MATTHEWS:  Thank you.

2          (Pause in proceedings.)

3          MR. MATTHEWS:  Judge, I think if the Court were to

4    rule our way on the motions *in limine*, then we would -- from

5    our point of view, the plaintiff would have no evidence of

6    key elements of their case.  Well, on the motion for

7    reconsideration, it would mean they have no -- there's no

8    fact question on actual costs or whether the rate-setting

9    workbooks represented both estimated and actual.  And on

10   motions *in limine* 1 through 5, it would mean that they don't

11   have evidence of a reasonable margin and that would be

12   dispositive.  I think at that point, and I know you said you

13   don't know about that timing, but that a summary judgment

14   would be appropriate at that point if they don't

15   have evidence of --

16          THE COURT:  I'm pretty skeptical that -- I mean,

17   that's just not how I think these things normally unfold.

18   You don't normally do motions *in limine* and then do summary

19   judgment briefing after that.  You might do a summary

20   judgment motion at the outset that says -- that's basically

21   what a summary judgment motion is, right, that there's no

22   admissible evidence that your opponent would offer.  So I

23   get it that maybe they won't be able to -- they'll stand up

24   and they'll say we think you should find X, but we have no

25   evidence of X --

1          MR. MATTHEWS:  I guess if motions *in limine* 1

2     through 5 are granted, then the jury wouldn't even be told

3     that a reasonable margin had to be part of the contract.

4     Again, as I said, the order of this is -- we didn't argue

5     for that contract construction in summary judgment.  It's

6     something that came afterwards.

7          THE COURT:  Yes.  Okay.  What I'm hearing is you

8     don't want to file additional motions, and so I'm going to

9     move to deciding the motions *in limine*.  I guess if we reach

10    a point where plaintiffs' evidence was excluded, I guess we

11    can talk about what happens at that point.  But I am not

12    going to have an additional round of summary judgment

13    briefing at that point.  It's too late in the case at that

14    point.  So if that's the stage you want to revisit, I'm not

15    sure I would revisit it, but I want to do it now before I do

16    motions *in limine* and trial.

17          I think we kind of beat this horse a bunch, but

18    that's where I am.  So I'm going to decide the motions *in*

19    *limine,* and then I'm going to assume the next thing is going

20    to be a trial in this case.

21          MR. MATTHEWS:  If the motion for reconsideration

22    is not --

23          THE COURT:  Right.

24          Okay.  Anything else we should talk about?

25          MR. DOLAN:  From our perspective, Judge, we look

PROCEEDINGS                                    19

1   forward to seeing you after the motions are decided, and I

2   think at this point we'll have a lot to talk about.  But

3   today, probably not.

4            MR. MATTHEWS:  If the Court would like argument on

5   any of the pending motions, the reconsideration motion or

6   any of the *limines*, we're prepared to do that.

7            THE COURT:  Fair enough.  And if I get to a point

8   where that would be helpful, I will arrange that.  I

9   generally don't do arguments on motions.  It's kind of only

10  if there's something that, after reading all the briefing, I

11  feel like wasn't explored in the briefing, which I have a

12  sense is not going to be the case here.  So just for

13  you-all's planning, it's generally not my practice, but

14  could be because this case is complicated.

15           MR. MATTHEWS:  Thank you, Your Honor.  We

16  appreciate that.

17           THE COURT:  So I think the idea of submitting a

18  revised Joint Pretrial Order down the road makes a lot of

19  sense.  My kind of ask in advance is, please try to work

20  with each other on both having your list of exhibits and

21  that everybody is giving their sort of good faith version,

22  not like every document in the case just in case.

23           And then also then on objections, please give

24  reasonable objections.  Sometimes, and I think in what I've

25  seen here there's some of the, like, we object to every

PROCEEDINGS                                    20

1    witness on relevance and also they might try to offer a

2    document that's inadmissible, and that's just not that

3    helpful.

4            So if you guys can narrow things down a little bit

5    in the Joint Pretrial Order, it just makes everything

6    easier.  I'm sure you will do that, but just flagging my own

7    strong preference.

8            MS. WIZIG:  Your Honor, I just want to clarify

9    that you want the next version of the Joint Pretrial Order

10   to be somewhat of a subset of the prior one, and that

11   neither party is allowed to add witnesses or exhibits.  Is

12   that accurate?

13           THE COURT:  I wasn't anticipating that you would

14   be.  What you both have described to me is that Judge Ross's

15   rulings have narrowed the case and so you-all think you can

16   give me a more refined Joint Pretrial Order, and I would be

17   surprised if either party came in and said that we have a

18   whole bunch of additional witnesses and exhibits.  That's

19   not what I'm getting from you-all.  But I'm not making a

20   ruling on what would happen if you did.  It doesn't seem

21   like it would be a great idea.  I mean, the idea of a Joint

22   Pretrial Order, which you've given me, is to narrow the case

23   a little bit.

24           MS. WIZIG:  That would absolutely be our

25   intention, would be to narrow it.

PROCEEDINGS                              21

1         MR. DOLAN:  Judge, all I can say is we're talking

2    about events that we -- we don't know what you're going to

3    say in those motions.

4         THE COURT:  Yes.

5         MR. DOLAN:  And if you say you can't do it this

6    way, maybe you'll do it a different way.  You saw that,

7    frankly, when Judge Ross issued one of her rulings excluding

8    the second report of our expert, and then she called for

9    briefing.  Just reading between the lines, maybe there was a

10   slight degree of skepticism by the judge that it would

11   continue, and then we convinced her it should.  I don't know

12   that that will happen when you issue rulings.

13        But the future -- as some wise men said,

14   predictions are hard, especially about the future.  That's

15   what we're dealing with right now.  The exhibits may change.

16   They may change.

17        THE COURT:  I think we shouldn't fight over this

18   now because it's all hypothetical.  If you have a bunch of

19   new exhibits, we can talk about it when you offer those.

20        MR. DOLAN:  Sure.

21        MS. WIZIG:  Understood.

22        THE COURT:  I'll try to get to this as soon as I

23   can.  It's going to take me a little time to really get up

24   to speed on what's going on in this case since there's a lot

25   of water under the bridge and it's got some complexity to

PROCEEDINGS                          22

1   it.  But I appreciate you-all coming in and helping me

2   understand where we are.

3              Thank you.

4              MR. DOLAN:  Thank you, Judge.

5              MR. MATTHEWS:  Thank you, Judge.

6              (Matter adjourned.)

7

8                           *   *   *

9

10                  CERTIFICATE OF REPORTER

11

12   I certify that the foregoing is a correct transcript of the

     record of proceedings in the above-entitled matter.
13

14

     /s/ Kristi Cruz
15   _____
     Kristi Cruz RMR, CRR, RPR
16   Official Court Reporter

17

18

19

20

21

22

23

24

25