**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC, <br><br> Defendants. | No. 18 Civ. 2949-RPK-JAM |

**<u>XOOM'S RESPONSE TO "NOTICE OF ADDITIONAL SUPPORTING EVIDENCE"</u>**

Plaintiff's "notice" attempts to put trial issues ahead of threshold merits issues. As XOOM stated at the March 26, 2025, Pretrial Conference, its pending Motion for Reconsideration of Class Treatment is dispositive. *See* Dkt. 279.[1] That motion explains why Judge Ross's exclusion of Plaintiff's damages models means the class necessarily must be decertified and summary judgment revisited. The Court should resolve the reconsideration motion before reaching any trial issues— which are likely to be moot. Moreover, the New York PSC proceeding that is the subject of Plaintiff's notice is irrelevant and inadmissible. It does not involve anything related to the contract breach alleged here.[2]

A brief overview of the relevant procedural history puts Plaintiff's notice in context. In 2023 and 2024, Judge Ross issued a series of orders bearing on the pending motions:

**Summary Judgment and Class Certification (Aug. 2023).** Judge Ross denied XOOM's summary judgment motion, construing the contract to require rates set using "only [XOOM's] actual and estimated supply costs, subject to a reasonable and proportionate

---

[1] XOOM's MIL Nos. 1–5 are effectively dispositive too. If they are reached and granted, Plaintiff will be unable to meet her evidentiary burden to prove the rates XOOM allegedly should have charged. *See* Dkt. 227 at 1–16.

[2] *See* Dkt. 227 at 30–40 (XOOM's MIL No. 12, moving to exclude the regulatory and legislative orders and proceedings on Plaintiff's exhibit list as irrelevant and prejudicial).

margin." Dkt. 151. Judge Ross then granted class certification, relying on Plaintiff's expert's damages model ("Model 2"), including its assertion that XOOM's "Total Cost" figure in pricing spreadsheets equaled its "actual and estimated supply costs." Dkt. 152.

**Plaintiff's Attempted "Amended Expert Report" (May 2024).** After XOOM highlighted Model 2's flaws in its decertification motion, Plaintiff untimely tried to amend her expert report. In that new report, her expert admitted that "Total Cost" ***does not*** equal XOOM's "actual and estimated supply costs" and offered three new damage models.

**Daubert/Exclusion Order (Sept. 2024).** Judge Ross entered a pivotal order excluding Model 2 as proof of damages because it did not calculate overcharges as Plaintiff had represented. The Court also excluded the new report in its entirety under Rules 26 and 37 as an untimely and undisclosed new set of opinions. The Court directed supplemental briefing on whether classwide proceedings remained viable. Dkt. 267.

**Order Denying Reconsideration but Maintaining Class (Dec. 2024).** Judge Ross denied Plaintiff's motion to reconsider exclusion of the damages models, and reaffirmed that Model 2's flaw was methodological, not an arithmetic error. Still, the Court held the failure of Plaintiff's damages model did not warrant decertification because a jury could use XOOM's rates and Total Cost figures to calculate any overcharges themselves. Dkt. 276.

**XOOM's Pending Motion for Reconsideration of Continued Class Treatment (Dec. 2024–Jan. 2025).** XOOM moved for reconsideration of the Court's decision to maintain the class, arguing that a critical evidentiary development—Plaintiff's expert's concession that the "Total Cost" figures are ***not*** equal to XOOM's actual and estimated supply costs— is incompatible with the Court's conclusion that the class could present common proof. XOOM also argued that, without evidence of XOOM's "actual and estimated supply costs," summary judgment should be revisited too. Dkt. 279.

XOOM's reconsideration motion confirms that Plaintiff has no viable claim—individually or on behalf of others. Her notice therefore seeks to divert the Court's attention to trial issues, specifically her eve-of-trial request for *punitive* damages in this *contract* case made through an *in limine* motion. Plaintiff's MIL No. 13 asks for a jury instruction on unpleaded punitive damages based on an unpleaded GBL 349 claim. As XOOM explained in its own MIL No. 13 and in response to Plaintiff's reciprocal MIL No. 13, the punitive damages request is meritless for multiple reasons and should be excluded from trial. *See* Dkt. 227 at 41–44; Dkt. 242 at 66–73.[3]

Plaintiff now seeks to justify her belated and improper punitive damages request with a

---

[3] Rather than add to the voluminous briefing before Your Honor, XOOM incorporates by reference the arguments made in its prior briefing opposing the belated request for punitive damages.

settlement resolving disputed regulatory-compliance allegations not at issue in this case. If the regulatory settlement has any bearing, it is only insofar as the refunds XOOM issues to customers under it may offset any damages those customers try to recover under a different theory here. It does not support Plaintiff's frivolous demand for punitive damages.

Plaintiff does not try to claim the settlement is relevant or admissible—nor can she. First, it addresses different conduct in a different time period. The regulatory proceeding had to do with an alleged failure to comply with the PSC's interpretation of an order that became effective in *April 2021*, years after Plaintiff was a customer in 2013. Second, it has no bearing on whether XOOM's variable rates were "based on" its actual and estimated supply costs at any time. The PSC alleged that XOOM did not transition certain customers to contracts that guaranteed savings or provided renewable energy, purchased some renewable energy credits outside New York, and offered non-energy-related rewards program incentives to customers. The lack of relevance means it will be excluded under Rule 403 because it unquestionably is unduly prejudicial, for the same reasons discussed in XOOM's MIL No. 12. *See* Dkt. 227 at 30–40. Presenting a $50 million settlement borne largely not by XOOM but by XOOM affiliates could lead the jury to make improper inferences.

Moreover, introduction of the settlement into evidence would contravene Rule 408. Even if the issues were related (again, they are not), the settlement would constitute evidence of "furnishing, promising, or offering. . . a valuable consideration in compromising or attempting to compromise the claim," and therefore would not be "admissible . . . to prove . . . the validity or amount of a disputed claim . . . ." Fed. R. Evid. 408. The settlement makes clear it is a compromise, stating that nothing in it "shall be construed as an admission by the Affiliated ESCOs of any liability or wrongdoing," and that the ESCOs "specifically deny" the allegations. Dkt. 301, Ex. 3,

App'x 1 at 6. Rule 408 "bars evidence of a compromise," such as a "civil consent decree," "to prove liability for the claim." *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981). Thus, the Second Circuit has permitted introduction of a settlement for only such purposes as "demonstrat[ing] that a defendant was aware of its legal obligations." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008). Plaintiff does not seek to enter the settlement for any such purpose. Nor can she—whether XOOM implemented regulatory changes in accordance with the PSC's interpretation of a Reset Order issued in 2019, six years after she was a customer, has nothing to do with whether XOOM set her variable rates in accordance with her contract. *See, e.g., In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2022 WL 4087842, at *1 (S.D.N.Y. Sept. 6, 2022) (granting motion to exclude consent order that "focuses on conduct excluded from the class definition, or conduct with no bearing on the two issues to be tried," noting that "[a]ny small probative value would be substantially outweighed by the risk of prejudice—placing the regulator's imprimatur on Plaintiffs' view of the evidence or suggesting that [defendant] is a generally bad actor—and confusion of the issues by introducing extraneous [] conduct").

For these reasons and those in XOOM's prior submissions, the Court should grant XOOM's reconsideration motion, decertify the class, and grant summary judgment. And if the Court reaches the motions *in limine*, XOOM's should be granted and Plaintiff's denied.

Dated: May 14, 2026

McDOWELL HETHERINGTON LLP

*/s/ Michael D. Matthews, Jr*
Michael D. Matthews, Jr.
Diane S. Wizig (admitted *pro hac vice*)
Netra Sreeprakash
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400

Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com
netra.sreeprakash@mhllp.com

*Attorneys for Defendants XOOM Energy, LLC and XOOM Energy New York, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via CM/ECF on all counsel of record on this 14th day of May, 2026.

/s/*Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.

5