# EXHIBIT 1

Case 1:18-cv-02949-RPK-JAM    Document 303-1    Filed 08/14/26    Page 2 of 8 PageID #: 14904

2026 WL 2244207

2026 WL 2244207
Only the Westlaw citation is currently available.
United States Court of Appeals, Fifth Circuit.

FINITE UTILITY CONSULTING, L.L.C.,
Plaintiff—Appellant/Cross-Appellee,

v.

TAWA, INCORPORATED (RETAIL), also
known as TAWA; TAWA SUPERMARKET,
INCORPORATED; TAWA SERVICES,
INCORPORATED; WELCOME MARKET,
INCORPORATED; WELCOME SERVICES,
INCORPORATED; WALONG MARKETING,
INCORPORATED, also known as WALONG
CORPORATION, Defendants—Appellees,
TAWA RETAIL GROUP, INCORPORATED,
also known as WELCOME CALIFORNIA
MARKET, INCORPORATED
Defendant—Appellee/Cross-Appellant.

No. 25-20396
|
Filed: 08/04/2026

Appeal from the United States District Court for the Southern District of Texas USDC No. 4:23-CV-432

Before WILLETT, ENGELHARDT, and DOUGLAS, Circuit Judges.

**Opinion**

PER CURIAM:[*]

 **\*1**  This appeal and cross-appeal arise from a soured relationship between an energy broker and its supermarket client. Finite Utility Consulting, L.L.C. challenges the exclusion of two witnesses and the resulting summary judgment on its claims. Various Tawa Retail Group, Incorporated entities (Tawa) cross-appeal the summary judgment dismissing their counterclaims. We AFFIRM in full.

## I. BACKGROUND

Tawa owns and operates supermarkets nationwide. Finite is a Texas-based energy broker that earns commissions from electricity and natural gas suppliers by negotiating energy-supply contracts with energy suppliers for its clients.

The parties executed three client-representation agreements (CRA): one in December 2019 and two more in March and August 2020. The later CRAs named Finite as Tawa's "sole and exclusive consultant" for Tawa's "energy related initiatives" and authorized Finite to obtain "price quotes and evaluate competing offers and services." The December 2019 CRA, however, contained no exclusivity provision.

The relationship began on December 20, 2019, when Tawa's licensing manager Cristina Chang asked Thomas Lee—Finite's vice president and principal employee—to obtain energy pricing for a new store in Quincy, Massachusetts. After several weeks of emails about pricing, Finite sent a Letter of Assurance (LOA) to Tawa regarding the Massachusetts store. Although the January 7, 2020 LOA stated that Finite would "assure the energy supply rate" for the store, it also stated that the LOA "shall in no way be considered a guarantee of the contracted rate by the Supplier." On February 14, 2020, with Finite acting as a broker, Tawa entered an 18-month supply agreement with Constellation New Energy – Texas (CNE-TX) for the Massachusetts store.

Tawa's first CNE-TX bill was much higher than expected. In response to Tawa's inquiry, Finite attributed the difference to mandatory Massachusetts market charges that it had "underestimat[ed]"—charges that Finite described as "the highest [Finite] ha[d] ever seen." In mid-April 2020, Finite said it would continue tracking the account and, "if insufficient, provide appropriate reimbursement." No reimbursement followed.

On April 20, 2021, Tawa revoked Finite's authority to negotiate supply contracts on its behalf. Tawa later entered or extended energy-supply agreements with other suppliers, without Finite, during 2021 and 2022.

Finite sued Tawa in Texas state court on January 6, 2023, alleging that Tawa had breached the CRAs by negotiating directly with suppliers or using other brokers. Tawa removed the case based on diversity jurisdiction.[1] It then counterclaimed for breach of contract, promissory

Case 1:18-cv-02949-RPK-JAM    Document 303-1    Filed 08/14/26    Page 3 of 8 PageID #: 14905

FINITE UTILITY CONSULTING, L.L.C., Plaintiff—Appellant/Cross-Appellee, v. TAWA,..., Not Reported in Fed. Rptr. (2026)

2026 WL 2244207

estoppel, negligent misrepresentation, and unjust enrichment. The district court converted Finite's motion to dismiss those counterclaims into a motion for summary judgment.

Two Finite witnesses matter here. First, Finite designated German Ibanez as its sole damages expert. Ibanez ultimately opined that Tawa's alleged breaches cost Finite more than $2.5 million in commissions over three years. Second, Finite designated Lee as a nonretained expert on various aspects of Finite's business.

**\*2** Tawa designated Udit Patel as an expert witness on April 2, 2024, to address the CRAs, industry practice, the conditions under which brokers earn commissions, and customary commission ranges. Patel's April 2, 2024 report accompanied Tawa's designation. Finite served Ibanez's rebuttal report on April 30, 2024. Then, on May 23, it amended Lee's disclosure; as the magistrate judge described it, Finite's amended disclosure added "entirely new opinions" that expressly "rejoin[ed] and rebut[ted]" Patel.

Discovery closed on June 7, 2024—about two weeks after the amended Lee disclosure. One week later, Tawa moved to exclude Ibanez and Lee and for summary judgment on Finite's claims. The magistrate judge recommended granting all three motions, and the district court adopted that recommendation.

Considering Finite's summary-judgment motion regarding Tawa's counterclaims, the magistrate judge recommended judgment in Finite's favor. The district court agreed, dismissing the claims with prejudice. Final judgment followed, and both sides appealed.

## II. FINITE'S APPEAL

We begin with Finite's appeal. The district court did not abuse its discretion by excluding either Ibanez or Lee, and without evidence of lost commissions, Finite's claims cannot survive summary judgment.[2]

### A. Exclusion of Ibanez's Testimony

We review the exclusion of expert testimony for abuse of discretion, disturbing the ruling only if it is manifestly erroneous. *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 369 (5th Cir. 2016); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

*Daubert* requires the district court to screen expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Watkins*, 121 F.3d at 988–89. Ordinarily, objections to an opinion's factual basis affect weight, not admissibility. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

But not always. When an opinion rests on a source "of such little weight" that it would not help the jury reach "an intelligent and sound verdict," exclusion is proper. *Id.* A "fundamentally unsupported" opinion supplies "no expert assistance to the jury," and "its lack of reliable support may render it more prejudicial than probative." *Id.*

Ibanez's model had three inputs: Tawa's estimated energy usage, an assumed broker fee, and an assumed three-year contract term. The broker fee—the commission paid by the supplier—was the model's linchpin. Ibanez acknowledged that the actual fee would depend on the energy market, the supplier's offered price, and the customer's willingness to pay. Small changes mattered enormously: using the maximum fee could inflate the model tenfold.

Yet Ibanez considered none of those market variables. He relied instead on a single California-focused agreement between Finite and Direct Energy, another energy supplier, that permitted fees "up to $0.010 per kWh" for electricity and "up to $0.50 per DTh" for natural gas.

The agreement set ceilings, not expected commissions. Ibanez conceded that an actual fee need not equal the maximum and would turn on market conditions *and* customer demand. Still, he used both maximums—$0.01 and $0.50—without consulting other documents, market data, or other brokers. His explanation was candid: he "liked the maximum amount of the contract."

**\*3** The assumed three-year term was no better grounded. Ibanez relied on the parties' discussion of three-year contracts and a spreadsheet Finite supplied. But he knew the parties had discussed contracts of different lengths and that Tawa's other supply agreements ranged from 12 to 36 months. By Ibanez's own admission, he considered neither fact.

Ibanez's rebuttal report offered three post hoc defenses. First, he asserted that California commissions are higher and that much of Finite's work for Tawa concerned California. He supplied no analysis linking that assertion to the market

2026 WL 2244207

variables that determine a fee, and Tawa's contemplated contracts were not confined to California.

Second, Ibanez reasoned that Finite deserved a higher commission because it provided both electric and natural-gas services. But the record showed that those services generate two separate commissions, not one enhanced commission. Ibanez never explained why each commission should nevertheless be *set* at the maximum.

Third, Ibanez invoked Finite's advice about California's Direct Access classification, "which would allow the store to get better electricity pricing." But Tawa never agreed to pay separately for that advice, and Ibanez did *not* know how much work Finite performed on it. Again, assertion substituted for analysis.

\* \* \*

As the magistrate judge aptly explained, "Ibanez's approach is akin to equating the *asking* price for a single house with the market value of a similar home, regardless of whether the listed house ultimately *sold* for less than its asking price, and regardless of what other comparable houses sold for in the same area." Although flaws in an expert's basis usually go to weight rather than admissibility, our court has long recognized that some foundations are too insubstantial to reach a jury. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) ("In some cases ... the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.").

This is such a case. By his own admission, Ibanez chose the highest possible commission and a three-year term while disregarding the very facts that he admitted would determine both inputs. His model did not analyze the market; it assumed the answer.

This is unsupported *ipse dixit*, not reliable damages analysis. The district court therefore acted within its discretion in excluding the opinion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (courts need not admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (explaining that an expert opinion, "to have evidentiary relevance and reliability, must be based on scientifically valid principles" rather than unsupported assertions).[3]

## B. Exclusion of Lee's Testimony

We likewise review the exclusion of Lee's late-disclosed expert opinions for abuse of discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).

Rule 26 requires rebuttal expert testimony—testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party"—to be disclosed "within 30 days after the other party's disclosure." FED. R. CIV. P. 26(a)(2)(D)(ii). Tawa disclosed Patel's report on April 2, 2024, so Finite's rebuttal disclosure was due May 2. Finite did not amend Lee's disclosure until May 23.

**\*4** Lee's amended opinions were rebuttal opinions by *design*. Six of the seven categories named Patel. Lee would explain why Patel's commission ranges did not reflect what Finite likely would have earned and why Patel's experience was not universally applicable. Finite itself says the testimony would "rebut Mr. Patel's damages opinion."

Finite responds that the subject matter of the amended disclosure overlapped with its timely January disclosure. That misses the question. Rule 26 turns on the purpose of the later opinions, not whether they shared some subject matter with the earlier disclosure.

The comparison confirms the distinction. The January disclosure broadly identified Finite's operations, business model, agreements, communications, supplier relationships, and other matters raised in the case. The May disclosure added opinions aimed specifically at Patel's methodology and conclusions.

Only "broker licensure and operations in various states" plausibly supplemented the original subjects. The other categories introduced new topics, repeatedly named Patel, and expressly sought to discredit his testimony. As the magistrate judge put it, calling the amended disclosure a supplement "does not pass the straight face test."

Rule 37 ordinarily bars an undisclosed witness or opinion "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1); *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d at 372. To determine that, we consider four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman*, 893 F.2d at

2026 WL 2244207

791. We review the district court's conclusions in this context for abuse of discretion. *Id.*

The first factor favors exclusion. Finite says it thought Lee's amended opinions merely covered "similar areas" to the January disclosure. But the text and timing of the amendment reveal its rebuttal purpose. The district court did not have to credit an explanation that the disclosure itself contradicted. *See Newsome v. Int'l Paper Co.*, 123 F.4th 754, 766 (5th Cir. 2024) ("Whether [Finite] gave the district court—which is far closer to the parties than we are—a sufficient explanation is soundly within the district court's broad discretion.").

The second factor favors Finite because Tawa does not dispute that Lee's testimony mattered. But importance cannot by itself override scheduling orders—particularly when the testimony's importance underscores the need for timely disclosure. *Geiserman*, 893 F.2d at 792.[4]

The third factor favors exclusion. Tawa had already deposed Lee. The late amendment introduced a new set of expert opinions in summary form, requiring a second deposition to discover both the opinions and their bases. As the magistrate judge noted, Rule 26 does not shift to the opposing party the burden of "gap-fill[ing]" a conclusory disclosure through deposition. The district court reasonably concluded that Finite's amended disclosure prejudiced Tawa. *See Newsome*, 123 F.4th at 767 ("the district court here retain[s] broad discretion to control scheduling and to sanction failures to follow its scheduling order").

**\*5** The fourth factor—the possibility of a continuance—likewise supports exclusion. Discovery closed two weeks after the amendment, and dispositive motions followed. A continuance could have reopened the schedule, but the district court reasonably concluded that doing so would reward the unjustified delay and undermine enforcement of its deadlines. *See, e.g., Bradley v. United States*, 866 F.2d 120, 126 (5th Cir. 1989) (per curiam) (noting that "a continuance would neither punish the government for its conduct nor deter similar behavior in the future"); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 573 (5th Cir. 1996) (quoting *Bradley*).

\* \* \*

Three of the four factors favor exclusion. The district court therefore did not abuse its discretion in barring Lee's late-disclosed rebuttal opinions.

### C. Grant of Summary Judgment

We review summary judgment de novo, "applying the same standard used by the district court." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (per curiam). It is proper when no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is genuine only if a reasonable jury could find for the nonmovant, *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam), and "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation" will not suffice. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

Once the movant identifies the absence of evidence on an essential element, "the nonmovant must go beyond the pleadings and designate *specific facts* showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis added) (per curiam). A genuine dispute exists only "when both parties have submitted evidence of contradictory facts. We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis omitted).

Finite designated Ibanez as its sole damages expert. Once his testimony was excluded, Finite lacked admissible evidence quantifying its alleged lost commissions. Because damages are essential to its claims, that failure is fatal unless other record evidence supplies the missing proof. *See Little*, 37 F.3d at 1075.

Finite points first to the rule that expert testimony on damages is unnecessary when damages are not "highly technical." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 171 (5th Cir. 2010) (quoting *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 532 n. 1 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). Perhaps so. But dispensing with an expert does not dispense with evidence. Finite still had to offer a nonspeculative basis for calculating its loss. *Little*, 37 F.3d at 1075.

Lee's testimony cannot fill the gap because the district court properly excluded his new expert opinions. Nor does Finite's redacted list of commissions from other customers. The list identifies clients, suppliers, and commission rates, but

Case 1:18-cv-02949-RPK-JAM    Document 303-1    Filed 08/14/26    Page 6 of 8 PageID
#: 14908

FINITE UTILITY CONSULTING, L.L.C., Plaintiff—Appellant/Cross-Appellee, v. TAWA,..., Not Reported in Fed.
Rptr. (2026)

2026 WL 2244207

offers no facts showing that those transactions resembled the hypothetical Tawa contracts—no comparable markets, supplier pricing, customer demand, contract terms, or services. A collection of unexplained numbers does not permit a reasonable damages estimate. *See Brown*, 337 F.3d at 541.

Finally, Finite cites Patel's statement that commissions of $0.010 to $0.015 per kWh are possible. But Patel was discussing Finite's agreements with other customers, *not* the commissions that Tawa would have generated. And he testified that "Finite is not entitled to any damages whatsoever." His testimony therefore creates no genuine dispute of material fact.

\* \* \*

**\*6** Finite offered no admissible, nonspeculative evidence from which a jury could calculate its lost commissions. The district court properly granted summary judgment on Finite's claims.

## III. TAWA'S CROSS-APPEAL

Tawa cross-appeals the summary judgment dismissing its counterclaims for breach of contract, promissory estoppel, negligent misrepresentation, and unjust enrichment. Our review is de novo. *Luna*, 59 F.4th at 715.

The counterclaims stem from the Massachusetts-store transaction for which Tawa asked Finite to obtain pricing. Finite sent the LOA, and Tawa entered into the CNE-TX supply agreement. The LOA said Finite would "assure the energy supply rate" but also disclaimed any "guarantee of the contracted rate by the Supplier."

When Tawa's first bill came in at roughly twice the expected amount, Finite explained that it had "underestimate[ed]" mandatory market charges. It promised to keep track of the "energy plan performance against the benchmark and if insufficient, provide appropriate reimbursement," but made no payment.

### A. Breach of Contract
A Texas breach-of-contract claim requires (1) a valid contract, (2) performance, (3) breach, and (4) damages.[5] *Taylor v. Root*

*Ins. Co.*, 109 F.4th 806, 809 (5th Cir. 2024). Tawa has not produced evidence from which a reasonable jury could find either breach or recoverable damages.

We begin, as we must, with the LOA's text, reading the document as a whole and harmonizing its provisions. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). Tawa emphasizes the opening statement that Finite would "assure the energy supply rate." But the same document twice limits that assurance: Finite would use "best efforts" to resolve rate issues, and the LOA "shall in no way be considered a guarantee of the contracted rate by the Supplier."

Those provisions cannot be reconciled with Tawa's theory that Finite guaranteed the store's total, all-in bill. The LOA contemplated that the contracted rate might increase and required Tawa to cooperate with Finite's efforts to resolve the problem. It promised effort and assistance, not an invariant bottom-line price: "Finite shall use its best efforts to resolve any rate issues between [Tawa] and the Supplier, but this letter of assurance shall in no way be considered a guarantee of the contracted rate by the Supplier."

Tawa also invokes the parties' pre-LOA emails. Even assuming those emails form part of the agreement—a question we do not decide today—they reinforce rather than undermine the LOA.[6]

Lee "stress[ed]" that the "total all-in price" was "an estimate only." He separately explained that the estimated total "rough[ly] approximat[ed] all other costs of the bill besides Energy Supply."[7] The correspondence thus distinguished the contracted energy-supply rate from the additional charges that ultimately produced the higher bill. No reasonable jury could read it as an unconditional guarantee of the all-in price.

**\*7** Tawa's damages theories fare no better. Its own manager reported that, even after the unexpected charges, "we are still saving money": Tawa paid an average of $0.167/kWh under the new arrangement, compared with $0.207/kWh before it. That evidence defeats Tawa's claim that it would have been better off simply retaining its former provider.

Tawa alternatively characterizes its loss as the commission it would not have paid absent Finite's alleged promise. But it identifies no evidence that, had it known the ultimate charges, it would have rejected a transaction that still lowered its total energy costs—or that another available transaction

Case 1:18-cv-02949-RPK-JAM    Document 303-1    Filed 08/14/26    Page 7 of 8 PageID #: 14909

FINITE UTILITY CONSULTING, L.L.C., Plaintiff—Appellant/Cross-Appellee, v. TAWA,..., Not Reported in Fed. Rptr. (2026)

2026 WL 2244207

would have produced a better result. That theory remains speculative. *See Brown*, 337 F.3d at 541.

\* \* \*

Because the record supports neither Tawa's asserted breach nor its damages theories, summary judgment was proper on the contract claim.

### B. Promissory Estoppel

Promissory estoppel under Texas law requires a promise, foreseeable and substantial reliance, and detriment. *Universal Truckload, Inc. v. Dalton Logistics, Inc.*, 946 F.3d 689, 695 (5th Cir. 2020). Although justifiable reliance is ordinarily a fact issue, a person does not justifiably rely on a representation as a matter of law if there are red flags indicating that such reliance is not warranted. *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 811 (5th Cir. 2017). And recovery is limited to reliance damages—enough to restore the promisee to the position it occupied before relying. *Spicer, Tr. for Est. of Brady v. Maxus Healthcare Partners, LLC*, 616 S.W.3d 59, 123 (Tex. App.—Fort Worth 2020, no pet.).

Tawa first relies on the alleged promise of a fixed all-in price. But the LOA and accompanying emails expressly described the all-in figure as an estimate and disclaimed a guaranteed supplier rate. An estimate of future charges is not the definite promise that promissory estoppel requires. *See Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 305 (Tex. App.—Dallas 2009, no pet.) ("A promise must also be more than speculation of future events, a statement of hope, an expression of opinion, an expectation, or an assumption.").

Tawa next invokes Finite's promise to conduct a "full Commercial and Legal review" of the supply agreement. Even assuming a sufficiently definite promise and deficient review, Tawa identifies no detrimental change in position attributable to it. The only comparative evidence shows that the resulting arrangement reduced Tawa's energy costs. And Finite's later statement about "appropriate reimbursement" came after Tawa signed the supply agreement; Tawa identifies no new action it took in reliance on that statement. Summary judgment was therefore proper.

### C. Negligent Misrepresentation

Texas negligent-misrepresentation law has four elements: "(1) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018) (internal quotation marks omitted) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1992)).

**\*8** Tawa cannot satisfy the fourth element. The written materials repeatedly identified the all-in price as an estimate and disclaimed a guarantee. Reliance on a contrary representation was therefore unjustified. *See JPMorgan Chase Bank*, 546 S.W.3d at 658–60. And for the reasons already explained, Tawa has not produced evidence of pecuniary loss. Its negligent misrepresentation claim fails on both grounds.

### D. Unjust Enrichment

The district court gave three reasons for rejecting unjust enrichment: (1) the express-contract doctrine bars Tawa's claim[8]; (2) Finite made no false promise of a guaranteed rate; and (3) Finite realized net savings under the transaction. The parties dispute whether Texas or Massachusetts law governs and whether the express-contract doctrine applies. We need not resolve that choice-of-law issue because the claim fails under either State's law.

Both jurisdictions require not merely a benefit, but an unjustly retained benefit. *Argyle Indep. Sch. Dist. ex rel. Bd. of Trs. v. Wolf*, 234 S.W.3d 229, 247 (Tex. App.—Fort Worth 2007, no pet.) ("To recover under an unjust enrichment theory, the benefits to the other party must be actually unjust under the principles of equity."). *See also Metro. Life Ins. Co. v. Cotter*, 984 N.E.2d 835, 850 (Mass. 2013). Finite brokered an agreement that lowered Tawa's energy costs, and it never promised that mandatory market charges could not alter the estimated all-in bill. On this record, allowing Finite to retain its commission is not inequitable.

### IV. CONCLUSION

The judgment of the district court is AFFIRMED.

2026 WL 2244207

**All Citations**

Not Reported in Fed. Rptr., 2026 WL 2244207

Footnotes

*    This opinion is not designated for publication. See 5TH CIR. R. 47.5.

1    *See* 28 U.S.C. § 1441.

2    The parties dispute whether Texas or California law governs Finite's request for attorney fees. We need not decide. Because Finite does not prevail on any claim, it is not entitled to attorney fees under either State's laws.

3    Tawa identifies additional flaws that it says further undermine Ibanez's model. Because the unsupported broker-fee assumption independently justifies exclusion, we need not address those additional grounds.

4    Indeed, the importance of Lee's testimony cuts both ways: it favors admission, but it also "underscores the need" to comply with deadlines or alert the court that compliance is impossible. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996). *See also Newsome*, 123 F.4th at 767 (quoting *Barrett*).

5    The district court applied Texas law because the parties identified no conflict between Texas and Massachusetts law. Except as to unjust enrichment, neither side challenges that choice on appeal. We therefore apply Texas law to Tawa's counterclaims.

6    We therefore need not decide whether Texas or Massachusetts law treats the emails as part of the LOA.

7    Even if Lee's statement could be read to guarantee the base energy-supply rate, it expressly characterized "all other costs of the bill besides Energy Supply" as estimated.

8    Under Texas's express-contract doctrine, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.