**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>Defendants. | Case No.: 18-CV-2949-RPK-JAM |

**PLAINTIFF'S RESPONSE TO XOOM'S AUGUST 14, 2026 NOTICE OF SUPPLEMENTAL AUTHORITY**

The Fifth Circuit's opinion in *Finite Utility Consulting, L.L.C. v. Tawa, Inc.*, No. 25-20396, 2026 WL 2244207 (Aug. 4, 2026), is not on point, and the Court should disregard XOOM's Notice of Supplemental Authority (ECF 303, "Notice"). *Finite* is an unpublished out-of-circuit case that is neither authoritative nor informative of the Court's assessment of the outstanding issues.

By way of brief background, at the March 26, 2025 pretrial conference, Your Honor confirmed with all parties that the motions the Court has "pending are a motion for reconsideration related to class treatment and some motions *in limine*, which are things that I understand to be about the inclusion or exclusion of evidence at trial." ECF 300, Mar. 26, 2025 Hr.'g Tr. ("3/26/25 Tr.") 11:25–12:3. The Court made clear that "the next thing to do in this case is going to be to resolve that set of motions," and that "after that we're going to try this case." *Id.* at 12:4-5. Class Counsel and XOOM's counsel each agreed. *See id.* at 3:17 (Class Counsel), 12:7 (XOOM).

XOOM's counsel also suggested that if XOOM prevailed on certain *in limine* motions, "summary judgment would be appropriate[.]" *Id.* at 17:13–14. The Court was "pretty skeptical"

because "that's just not how . . . these things normally unfold. You don't normally do motions *in limine* and then do summary judgment briefing after that." *Id.* at 17:17–19.

The issues before this Court are thus: (1) whether XOOM has met the stringent burden for the Court to reconsider its prior ruling affirming continued class treatment (*see* ECF 276, Op. & Order Maintaining Class Certification ("Cont. Cert. Order")); and (2) resolving pre-trial evidentiary issues, including the *in limine* motions and the Court's two requests for XOOM to provide "supplemental information regarding its purported supply costs and the documentary evidence thereof" so the Court could better evaluate the *in limine* motions. Cont. Cert. Order at 10; *see also* ECF 284, 287, 291, 295, 297 (filings regarding the documentary evidence of XOOM's purported supply costs).

XOOM's Notice informs none of those issues. Instead, the Notice is merely another salvo in XOOM's effort to change its defense after the Court's summary judgment ruling construed XOOM's contract as a cost-plus contract. *See, e.g.*, 3/26/25 Tr. at 9:25–10:2 (XOOM admitting to Your Honor that "[w]e argued for a different contract construction than the one that the Court ultimately ruled on."). To support its new defense that Plaintiff lacks proof of XOOM's costs and a reasonable margin, XOOM's Notice is premised on the false claim that the partial exclusion of Plaintiff's expert's original report "left Plaintiff with no admissible evidence of her (or the class's) alleged overcharge, so her contract claim fails as a matter of law." Notice at 2. Not so.

The Court has repeatedly made clear that "XOOM's contracts dictate an objective formula for XOOM's maximum reasonable price" and that the "formula that calculates damages" is "set by XOOM's uniform contract language, rather than any method devised by plaintiff's expert." Cont. Cert. Order at 2–3. The Court has also found that "the inputs necessary to resolve liability and determine damages are subject to generalized, class-wide proof." *Id.* at 3. And, "[i]f and when

the jury determines the correct inputs for XOOM's supply costs and reasonable margins, damages can be calculated using simple and objective (albeit tedious) arithmetic under the formula required by XOOM's contracts." *Id.*; *see also id.* at 8 (recognizing that the excluded expert calculations are "ultimately not that important to plaintiff's case," that the "formula for calculating damages . . . does not require interpretation by plaintiff's expert," and that damages calculations can be "'updated' to accommodate the jury's determination of the supply cost and reasonable margin inputs" (citing ECF 246 at 13)).

XOOM's Notice is also based on the incorrect proposition that the Court's exclusion of certain of Plaintiff's expert's opinions was also an invitation for XOOM to seek summary judgment on its brand-new defense. Notice at 1 (citing ECF 267 at 29, the "Exclusion Order"). Yet the Exclusion Order itself made clear that the only affected prior order was its ruling on class certification. Exclusion Order at 32. The Court then ordered briefing on the issue of continued class treatment (*id.*), received that briefing (ECF 271–72, 274), and then reaffirmed its class certification order. Cont. Cert. Order at 4 ("[T]he exclusion of plaintiff's damages model does not alter my prior conclusion that the case should be tried as a class action."). The Court then continued advancing the case to trial by twice calling for additional briefing on XOOM's proposed trial exhibits, *id.* at 9–10; ECF 287, and excluding XOOM's expert opinions almost *in toto*, ECF 280. If the Exclusion Order meant that Plaintiff now lacked any way to establish the rates XOOM contracted to charge, the Court would have said so. And the Court certainly would not have later reaffirmed its "conclusion that the case should be tried as a class action." Cont. Cert. Order at 4.

Nor does *Finite* hold that partial exclusion of an expert report "effectively creates a rebuttal [*sic*] presumption that a defendant's summary judgment motion should be granted." Notice at 2. *Finite* merely shows that an exclusion order may have ramifications for other aspects of a case.

Here, the Court already assessed any potential ramifications, including whether class treatment remained appropriate, and kept this action on a path to trial.

It is true that once the *Finite* expert's proposed broker fee and three-year hypothetical contract term was excluded as "too insubstantial to reach a jury," the plaintiff lacked a "nonspeculative basis for calculating its loss." *Finite*, 2026 WL 2244207, at *3–5. But this was because the *Finite* plaintiff lacked essential evidence of "comparable markets, supplier pricing, customer demand, contract terms, or services." *Id.* at 5. Here, there are no "essential elements" of Plaintiff's case that lack evidence. *Id.* at 4. "The formula for calculating damages *from* XOOM's costs, reasonable margin, and actual prices is set by XOOM's contracts and does not require interpretation by plaintiff's expert. What remains to be resolved at trial are the inputs which will be fed into that formula—that is, what XOOM's supply costs and reasonable margins actually *were*." Cont. Cert. Order at 8 (emphasis original). The calculations can be conducted "by hand" without an expert. *Id.* at 4. In *Finite*, the Fifth Circuit noted "the rule that expert testimony on damages is unnecessary when damages are not 'highly technical.'" 2026 WL 2244207, at *5. In contrast with this case, where the data necessary to establish liability and calculate damages come directly from XOOM's own records produced in discovery, in *Finite*, after excluding the expert, the only remaining damages evidence was noncomparable data points that did "not permit a reasonable damages estimate." *Id.* at *5–6.

XOOM's Notice tries to link this case to *Finite* by claiming Plaintiff has no admissible evidence from which a jury could determine either input into the contractual rate-setting formula: "(1) XOOM's "actual and estimated supply costs, and (2) a reasonable margin." Notice at 2–3 (citing ECF 246). The Court has already rejected the notion that there is a lack of admissible evidence of XOOM's actual and estimated supply costs. "Plaintiff's ability (or inability) to prove

XOOM's 'actual and estimated supply costs' will turn on the jury's evaluation of the evidence at trial." Cont. Cert. Order at 3 (citation modified).

As XOOM itself argued in its summary judgment motion before adopting its new defense, XOOM's Rate-Setting Workbooks ("RSWs") contain its actual and estimated costs:

> Not one person testified that XOOM ever set variable rates—in any month—without using the detailed supply cost information in its monthly [RSWs]. Every witness said those supply costs were always the starting point, the primary consideration, and the main component of XOOM's variable rates. No document . . . suggests that XOOM ever did anything but methodically consider its supply costs and then set a rate that was based on them. And a correlation analysis by XOOM's expert shows that contrary to the complaint's allegations, Susanna's variable rate ***always*** rose and fell with XOOM's supply costs.

ECF 145-1, XOOM's Summ. J. Mot. at 2 (emphasis original); *see also id.* at 7 (same, calculating XOOM's margin using RSW "supply costs"); *id.* at 8 ("XOOM's rates are based on detailed supply cost data in monthly rate-setting workbooks," showing image of RSW, and admitting that this "spreadsheet-based model" was what "XOOM used to set rates based on its actual and estimated supply costs"); *id.* at 18–20 (equating RSW figures with "actual and estimated supply costs").

Plaintiff also has at least four witnesses (including Plaintiff's expert based on non-stricken portions of his original report, XOOM executives, and XOOM's own expert) who have already testified, and would testify at trial, that the RSWs' "Total Cost" figure is synonymous with XOOM's "actual and estimated supply costs." ECF 282 at 4–5. As the Court has already noted, "[i]f a jury decides that the Total Cost figure [in the RSWs] is synonymous with XOOM's actual and estimated supply costs then plaintiff can easily provide the input for XOOM's actual and estimated supply costs by supplying the Total Cost numbers in XOOM's rate-setting workbooks, which were produced during discovery." ECF 246 at 12.[1]

[1] XOOM's Notice also claims in footnote 1 that Plaintiff's expert changed his testimony regarding the constitution of XOOM's actual and estimated supply costs. That claim is frivolous. *See* ECF 282 at 3–4 (correcting XOOM's mischaracterization).

As to the "reasonable margin" input, Plaintiff likewise has ample admissible evidence the jury can use to set a reasonable margin. For example, XOOM's fixed-rate plans expose it to greater financial risks than its variable-rate plans, and the margin XOOM charges on its fixed rates is probative of the reasonable margin for its variable-rate products. To this end, Plaintiff's expert's original report discusses the relative risk of the fixed- and variable-rate plans, including admissions by XOOM's pricing personnel and internal documents that fixed-rate plans were riskier, that variable-rate margins were nonetheless substantially higher, and that both fixed- and variable-rate plans were profitable. ECF 138-3 at 18–20. The report also contains evidence of XOOM's fixed-rate margins. *Id.* at 24–25. The Court did not exclude these opinions and approved of Plaintiff using "the average fixed-rate margin" to prove both breach and liability. Exclusion Order at 14; *see also id.* at 18 (recognizing the conversion "according to a set equation" of the price-based margin held to be admissible for liability into the cost-based fixed rate margin input); ECF 152 at 9, 14 (the Court's initial class certification ruling finding that XOOM's average fixed rate margin is "entirely consistent with plaintiff's theory of breach"); ECF 226-4, Dep. Tr. of Pl.'s expert Seabron Adamson, dated Nov. 8, 2022 at 98:13–23 (testifying that it would be unreasonable for XOOM to charge a higher margin for variable rates than for fixed rates).

Additionally, the New York Public Service Commission's ("NYPSC") December 2019 regulatory order—which stemmed from a two-year investigation into improper practices by retail energy suppliers like XOOM and culminated in a 10-day evidentiary hearing—not only banned the exact type of variable-rate plans at issue here absent guaranteed savings compared to the utility but also set a 5% ceiling on ESCO fixed-rate markups over the utility rate. This order is on Plaintiff's exhibit list and is further evidence of a reasonable margin. The Court has already noted this. *See* ECF 246 at 14 ("Plaintiff also intends to offer evidence of a lower bound of a reasonable

margin by pointing to the [NYPSC's] 2019 assessment that 'a reasonable price premium associated with fixed-rate [energy service company] products would be 5%.'").[2, 3] *Finite* is thus inapposite.

In sum, because Plaintiff has proffered "objective facts, figures, [and] data" to enable the jury to determine both breach and damages, Notice, Ex. 2 (2025 WL 490483 at *19), XOOM's Notice should be disregarded and its reconsideration motion denied, and the parties should resume the process of preparing this case for trial.

Dated: August 25, 2026
New York, New York

Respectfully submitted,

/s/ J. Burkett McInturff
J. Burkett McInturff

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman
Andrey Belenky
305 BROADWAY 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com
abelenky@wittelslaw.com

*Counsel for Plaintiff and the Certified Class*

[2] Footnote 4 in XOOM's Notice is thus wrong to claim that its motions *in limine* 4, 5, and 12 establish that Plaintiff lacks admissible evidence of a reasonable variable-rate margin. XOOM also cites its motions *in limine* 1–3, which attempt to prevent the jury from even setting the reasonable margin input. But those motions directly conflict with the Court's rulings. *See, e.g.*, Cont. Cert. Order at 3 (the Court has "repeatedly held" XOOM's reasonable margin "will be determined by the jury"); ECF 246 at 13–15 (header: "A jury can determine a reasonable and proportionate margin" and noting that "XOOM recognizes, my summary judgment opinion left it to a jury to decide whether XOOM charged a permissible margin.").

[3] Notice footnote 5 misleadingly claims that Plaintiff's margin benchmarks "relied exclusively" on the now-excluded amended expert report. The motions *in limine* were briefed ***before*** the Exclusion Order and the Continued Certification Order, which permit Plaintiff's fixed rate margin exemplar. Further, because the motions *in limine* were briefed first, Plaintiff has not yet had the opportunity to cite additional admissible evidence regarding margin. As was discussed at the March 26, 2025 pretrial conference, the parties agree that the May 2024 proposed Pretrial Order (ECF No. 210) will have to be revised and resubmitted. 3/26/25 Tr. at 5:5–16, 20:8-21:21; *see also id.* at 19:17–19 ("THE COURT: So I think the idea of submitting a revised Joint Pretrial Order down the road makes a lot of sense.").

Richard Dolan
Bradley D. Simon
**SCHLAM STONE & DOLAN LLP**
26 BROADWAY
NEW YORK, NEW YORK 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
rdolan@schlamstone.com
bsimon@schlamstone.com

*Co-Counsel for Plaintiff and the Certified Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2026, the foregoing was served via ECF on all counsel of record.

By: /s/ J. Burkett McInturff
J. Burkett McInturff