UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSANNA MIRKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>XOOM ENERGY, LLC and XOOM ENERGY NEW YORK, LLC,<br><br>Defendants. | No. 18 Civ. 2949-RPK-JAM |

**XOOM'S REPLY RE: NOTICE OF SUPPLEMENTAL AUTHORITY**

XOOM's three-page notice addressed a recent Fifth Circuit opinion supporting XOOM's position that Plaintiff's expert's post-certification change in testimony and Judge Ross's order excluding all Plaintiff's models as proof of damages require the Court to revisit class certification and summary judgment. *See* Dkt. 303 (Def. Notice). Plaintiff's "Response" consists of six-plus pages of broad argument, most of which is unrelated to XOOM's notice. *See* Dkt. 304 (Pl. Resp.).

It also contains misstatements of fact that XOOM must correct because they give the false impression this case can be submitted to a jury. Judge Ross said a jury would answer two questions: "[T]he proper values" for XOOM's "(1) 'actual and estimated supply costs' and (2) reasonable and proportionate margin[.]" Dkt. 276 (Cont. Cert. Order) at 3. Once Plaintiff's misstatements are corrected, it is clear neither question can be submitted to a jury.

**I. Question One: The New Expert Report Removes Any Dispute That XOOM's Rate-Setting Workbooks May Reflect Its Actual Supply Costs.**

Reply to misstatements regarding proof of "actual" supply costs. Pl. Resp. at 4–5.

Plaintiff supported class certification and opposed summary judgment by relying on her expert Seabron Adamson's original opinion that the "Total Cost" column in XOOM's rate-setting

workbooks (RSWs) represented actual costs. She therefore argued—and Judge Ross accordingly concluded—that the RSWs could be common proof of XOOM's "actual and estimated supply costs." However, Mr. Adamson's amended "replace[ment]" report and subsequent declaration admit that the RSWs reflect estimated costs only, and that XOOM's "'actual costs ***are not reflected*** in [its] rate-setting workbooks,'" Dkt. 229-5, CRA New Rep. ¶ 18(e) (emphasis added); Dkt. 248-1, Adamson Decl. ¶ 40 (admitting the RSWs reflect estimated, not actual, supply costs).

Mr. Adamson's testimony now matches the position XOOM has taken consistently: The RSWs' Total Cost figure is an estimate of costs only and does not account for XOOM's actual supply costs. *See* Dkt. 139 (Def. Class Resp.) at 12 ("By necessity, [RSWs] make predictions about the future that cannot reflect [PPAs] or XOOM's ultimate costs."); Dkt. 145-1 (Def. MSJ) at 8 (quoting XOOM testimony to show that RSWs are a "best estimate" of its then-known supply costs). No witness says otherwise. So, Mr. Adamson's change in testimony is fatal to class treatment because, as Judge Ross recognized, if the RSWs' "Total Cost figure is [] ***not reflective*** of XOOM's actual and estimated supply costs," then "plaintiff cannot provide common evidence of its actual and estimated supply costs[.]" Dkt. 246 (Decert. Order) at 12 (emphasis added).

It also fully undermines Judge Ross's basis for denying summary judgment. *See id.* ("whether the Total Cost is equal to XOOM's actual and estimated supply costs" is a fact question); *see also* Dkt. 151 (MSJ Order) at 4 ("It is important to clarify that the 'Total Cost' or COGS number may not represent XOOM's 'actual and estimated supply costs,' as that term is used in the contract, because the parties dispute whether all supply cost components were included in the Total Cost."). There is no such fact question any longer—if one ever existed.

Plaintiff's only rejoinder is that the Total Cost figures in the RSWs are, in effect, close enough because XOOM employees testified that their estimates of supply costs generally were

accurate. Pl. Resp. at 5.[1] But XOOM's witnesses only testified that the RSWs contain good data for making estimates, not that they accurately predicted actual costs. *See* Dkt. 285 at 2 (quoting testimony). And the key question is whether Plaintiff has proof of XOOM's "actual ***and*** estimated costs" for each monthly rate. She does not, so she cannot prove her claim—or that of the class.

## II. Question Two: Plaintiff Abandoned Her Right to Enforce the Implied Covenant and Has No Admissible Evidence of a Reasonable Margin in Any Event.

Reply to misstatements regarding "reasonable margin." Resp. at 6.

Plaintiff also misstates the facts as to the "reasonable margin" XOOM was allowed to charge. Legally, there can be no jury question as to a reasonable margin because Plaintiff abandoned her implied-covenant claim before the Second Circuit. As a result, good faith and fair dealing is "an issue that is not before [the Court] in this case," Decert. Order at 14, and Plaintiff cannot argue that XOOM breached the implied covenant. Dkts. 227 (MIL) and 254 (MIL Reply), MIL No. 1. Nor has Plaintiff identified any other legal basis to enforce the unwritten margin cap she seeks to impose here. *Id.*, MIL No. 2.

And even if the question of a reasonable margin were at issue, Plaintiff has no competent evidence of a reasonable margin:

- Plaintiff has no evidence of what margins other ESCOs charged for variable rates—the only appropriate comparator. *See* MIL Nos. 2, 3; *see also* MIL No. 7 (Plaintiff never produced any evidence of other ESCO rates in discovery and insofar as any such rates would reflect their fixed, rather than variable, rates they would be irrelevant); *cf.* Resp. at 4 (attempting to distinguish *Finite Utility Consulting, L.L.C. v. Tawa, Inc.*, No. 25-20396, 2026 WL 2244207 (5th Cir. Aug. 4, 2026) on the ground that the plaintiff there "lacked essential evidence of '***comparable markets***'" (emphasis added));

- XOOM's fixed-rate margin is not proof of a reasonable variable-rate margin. MIL No. 4.

---

[1] Such speculative and irrelevant testimony—and her now superseded and replaced expert report—are all Plaintiff cites as purported evidence of XOOM's actual supply costs. But her assertion that any witness would testify that the "RSWs' 'Total Cost' figure is synonymous with XOOM's 'actual and estimated supply costs'" is false and directly contradicted by those same witnesses' full testimony. *See* Dkt. 285 at 1–2.

- Plaintiff's arguments relating to the New York Public Service Commission's 2019 Reset Order and related proceedings or filings are irrelevant, highly prejudicial, and inadmissible hearsay, and such material cannot serve the function of expert evidence. *Id.*, MIL 12.

In short, Plaintiff has no admissible evidence (much less common admissible evidence) to prove XOOM's actual and estimated supply costs or a reasonable margin—the two inputs that Judge Ross held the jury would decide. *See* Cont. Cert. Order at 3. As a result, she cannot prove any overcharge for herself or class-wide. The class must be decertified and its claims dismissed. *See Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (class certification must be re-examined "in light of the evidentiary development of the case").

* * *

Your Honor was correct that "[y]ou don't normally do motions *in limine* and then do summary judgment briefing after that." Pl.'s Resp. at 2 (quoting Dkt. 300, Mar. 26, 2025 Conf. Tr., at 17:17-9). But it also not normal for a plaintiff's damage models to be excluded in full—in a case hinging on whether the plaintiff and the class members were ***overcharged***—months after summary judgment was denied and motions in limine were filed. That exclusion warrants granting the relief XOOM's pending Reconsideration Motion and Motions in Limine seek: decertifying the class.[2] It also warrants revisiting summary judgment and dismissing this case with prejudice.

Dated: October 5, 2026

MCDOWELL HETHERINGTON LLP

*/s/ Michael D. Matthews, Jr*
Michael D. Matthews, Jr.
Diane S. Wizig (admitted *pro hac vice*)

[2] The class should also be decertified because, as a practical matter, exclusion of the models also means that a jury cannot feasibly determine the rates that XOOM should have charged (i.e. overcharge) or damages. The overcharge calculation will have to be performed for each of more than 7,400 monthly rates (44 different rates every month for more than fourteen years and counting). That is just to prove overcharge across the class, *i.e.*, breach. To calculate class damages, the monthly overcharge must be applied to each class members' usage and charge history. That is ***millions*** of calculations. Without an expert model, these tasks will not be feasible.

In a class action that turns on allegations of overcharge like this, the model is what supplies the common evidence to determine breach and damages. Without a model, there can be no class.

Netra Sreeprakash
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com
netra.sreeprakash@mhllp.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via CM/ECF on all counsel of record on this 5th day of October, 2026.

/s/*Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.